UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## EMERGENCY MOTION TO MODIFY AUTOMATIC STAY

NOW COMES Alleged Debtor, Westborough SPE LLC ("WSPE"), by its manager, Lolonyon Akouete, respectfully moves this Honorable Court to enter an Order modifying the automatic stay for the sole purpose of allowing the alleged debtor to commence legal action in the California Superior Court, Sacramento to recover unclaimed funds. The alleged debtor further seeks permission to continue its civil action case number 4:2023cv12017 currently pending in the United States District Court for the District of Massachusetts, seeking declaratory and other relief against the Town of Westborough.

In support of this Motion, WSPE states as follows:

**1. Urgency to File Complaint:** WSPE needs to file its complaint within the time prescribed in Section 1541 - Action to establish claim, Cal. Code Civ. Proc. § 1541. See Exhibit #1, Controller is no longer responding to WSPE communications. Relevant precedent - Golden State Pharm. v. Yee.

**2. Exclusive Jurisdiction of California State Court:** According to the Controller, § 106(a)(4) of the UPL mandates that denials of claims to escheated property be exclusively heard in a California state court.

**3. Purpose of California's Unclaimed Property Law (UPL):** California's Unclaimed Property Law (UPL) serves two purposes: (1) to protect unknown owners by locating and returning their property and (2) to allow the state, rather than the holders of unclaimed property, to benefit from its use, especially when it is unlikely to be claimed.

**4. Relevant Precedent - In re Death Row Records, Inc., BAP CC-11-1186-HPePa:** In the case of In re Death Row Records, Inc., BAP CC-11-1186-HPePa, the Trustee sought the return of escheated funds under California's Unclaimed Property Law (UPL), Cal. Civ. Proc. Code § 1500, et seq. However, the Controller's office issued a letter on May 26, 2010, partially granting and partially denying the Trustee's claim. The Controller's long-standing policy stated that once property escheated to California, bankruptcy trustees representing a bankruptcy estate or debtor could not claim it. The Controller's explanation was based on the definition of "owner" under Cal. Civ. Proc. Code § 1540, subdivision (d), which referred to the person with a legal right to the property before escheat. Since the property vested in California, it was not considered property of the debtor, making it ineligible for a bankruptcy trustee's claim.

**5. Cause Under Section 362(d)(1):** The foregoing constitutes "cause" within the meaning of Section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to permit WSPE to take those steps described in the preceding paragraph.

**6. Resolution of Related Claims:** Granting relief from stay will result in a partial or complete resolution of the California unclaimed funds claim and the District Court litigation since both cases are connected. See Exhibit #2,

**7. No Prejudice to Creditors or Bankruptcy Estate:** The complaint to recover escheated property in California and the continuation of the civil action in the Massachusetts District court will not interfere with the administration of this bankruptcy case. In fact, WSPE did not refuse to pay its debts, so the litigation in another forum would not prejudice the interests of any creditors. Allowing the proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, will serve the interest of judicial economy and the expeditious and economical determination of litigation for the parties. This also relieves the bankruptcy court from many duties that may be handled elsewhere, leaving the parties to their chosen forum.

WHEREFORE, WSPE prays that this Honorable Court will grant its motion and modify the stay in the manner requested so that it may commence legal action in the California Superior Court, Sacramento and continue its civil action Case number 4:2023cv12017 in the United States District Court for the District of Massachusetts, seeking declaratory and other relief against the Town of Westborough.

DATED: September 25, 2023                          Respectfully submitted:

                                                   WESTBOROUGH SPE, LLC
                                                   By its manager,


                                                   _____
                                                   Lolonyon Akouete
                                                   Manager of Westborough SPE, LLC
                                                   1241 Deer Park Ave., Suite 1, #1051
                                                   North Babylon, NY 11703
                                                   info@smartinvestorsllc.com
                                                   (443) 447-3276


<u>CERTIFICATE OF SERVICE</u>

I, Lolonyon Akouete, manager for the Debtor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners          WESTBOROUGH SPE, LLC
(Email: sgordon@gordonfirm.com)                          By its manager,
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

                                                         _____
Scott A. Schlager on behalf of,                          Lolonyon Akouete
Nathanson & Goldberg, P.C., a creditor.                  1241 Deer Park Ave., Suite 1,
(Email: sas@natgolaw.com)                                #1051
183 State Street, 5th Floor Boston, MA 02109             North Babylon, NY 11703
                                                         info@smartinvestorsllc.com
Assistant U.S. Trustee                                   (443) 447-3276
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

# Exhibit 1
Email to state counsel requesting an update on the claim.

              **Lolonyon Akouete <loloact2@gmail.com>**

---

## Complaint to Recover Escheated Property - ID: 1019294209

---

**Lolonyon Akouete** <loloact2@gmail.com>          Sun, Sep 17, 2023 at 6:20 PM
To: rchivaro@sco.ca.gov
Cc: "Nakhwal, Harpreet" <hnakhwal@sco.ca.gov>

Dear Ms. Chivaro,

My name is Lolonyon Akouete, and I am the manager of Westborough SPE LLC, a Delaware limited liability company. On June 15, 2022, MUFG UNION BANK N A reported an abandoned checking account belonging to Westborough SPE LLC, with a balance of $1,293,646.83. The funds are now being held with the State Controller Property ID# 1019294209.

We have requested an expedited claim process for Property ID# 1019294209, which was approved on December 13, 2022. However, the claim was denied by Harpreet Nakhwal in the legal department based on inaccurate information.

On July 13, 2023, we provided updated information and documentation and requested a reevaluation of the claim. Attorney Nakhwal advised us that she would get back to us in 30 days, but we have not received any response to the claim.

The delay in processing the claim has caused Westborough SPE LLC to be unable to pay its debts, and creditors have filed an involuntary Chapter 7 bankruptcy case against the entity (Case No. 23-40709-CJP). The debt of Westborough SPE LLC includes $918,314.60 in Tax Lien, $140,507.83 in attorney fees, and $356,681.00 in CAM Charges.

Before filing a complaint against an agency, the attorney general website advises trying to resolve the matter with the agency first.

Code of Civil Procedure sections 1540 and 1541 establish a procedure for owners of unclaimed property held by the State to submit a claim for the property's return. Section 1540 requires the Controller to consider a submitted claim within 180 days of its submission, and section 1541 authorizes a claimant to file a civil action if the Controller does not decide the claim within that 180-day timeframe.

We would like to get an update on the reevaluation of the claim, Property ID# 1019294209.

We have attached the updated documents that we provided to Harpreet Nakhwal for the reevaluation of the claim.

Thank you.

Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276


Our claim was initially denied due to false information claiming that F. Jan Blaustein Scholes is under Guardianship/Conservatorship. However, Jan Blaustein Scholes has been residing at 7501 E Thompson Peak Pkwy, Scottsdale, Arizona, since the end of 2019, and there is no Guardianship/Conservatorship proceeding in Arizona or in California, where Jan used to live.

Jan had a stroke while living briefly in Hawaii, and her son Peter was appointed as her conservator. However, she has since recovered and no longer lives in Hawaii.

According to the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act (28 U.S.C. Section 1738A), specifically Section 1738A(h), "a foreign guardianship or protective order [from outside the state] is not entitled to full

faith and credit in this state until it is registered in this state." No foreign registration occurred in Arizona or California pursuant to A.R.S. Section 14-12401.

---

**5 attachments**

**Westborough SPE LLC Operating Agreement.pdf**
886K

**Certificate of Revival and Good Standing.pdf**
1045K

**Durable Power of Attorney and  Written Consent of Manager signed by Ms. Scholes.pdf**
5085K

**BBAS Inc to BBAS LLC to BBPM LLC.pdf**
764K

**Claim Affirmation Form -Claim ID 21014485.pdf**
2035K

# **Exhibit 2**

Civil Action Case Number 4:2023cv12017 Pending in US District Court for District of Massachusetts, Seeks Relief Against Town of Westborough.

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MASSACHUSETTS

--------------------------------X

|  |  |
|---|---|
| **WESTBOROUGH SPE LLC**, a Delaware limited liability company, | : | Civil Action #: |
| | : | _____ |
| *Plaintiff.* | : | |
| v. | : | |
| **TOWN OF WESTBOROUGH**, *a municipal corporation of The Commonwealth of Massachusetts*; **SHELBY MARSHALL**, *individually and in the official capacity as Select Board Member*; **IAN JOHNSON**, *individually and in the official capacity as Select Board Member*; **ALLEN EDINBERG**, *individually and in the official capacity as Select Board Member*; **SEAN KEOGH**, *individually and in the official capacity as Select Board Chair*; **PATRICK WELCH**, *individually and in the official capacity as Select Board Vice-Chair*; **PETER BLAUSTEIN**, *individually,* | : | |
| *Defendants.* | : | **JURY TRIAL DEMANDED** |

--------------------------------X


## VERIFIED COMPLAINT FOR DECLARATORY AND OTHER RELIEF

Plaintiff Westborough SPE LLC ("**Plaintiff**") brings this Verified Complaint for declaratory and other relief, including under 42 U.S.C. §1983, and alleges, on knowledge as to its own actions, and otherwise upon information and belief:

# 1. PRELIMINARY STATEMENT

1.      This civil action seeks to vindicate Plaintiff's constitutional and common law rights and hold responsible municipal defendants and co-conspirators accountable for their unlawful actions that deprived Plaintiff of 100% of its commercial real property located at 231 Turnpike Road, Westborough, Massachusetts ("**Locus**").

2.      This lawsuit also seeks declaratory relief as to the constitutionality of M.G.L. c. 60, §§28 and 64, and actions of the Massachusetts Land Court vis-à-vis the tax title foreclosure process as applied to the Plaintiff.

3.      Massachusetts tax deeds fail federal and Massachusetts due process scrutiny for two reasons. First, they allow municipalities like the Town of Westborough to keep property that is far beyond the amount for which they have a claim in violation of the Supreme Court's holding in *Tyler v. Hennepin Cty. Minnesota*, 598 U.S. 631 (2023). Second, they allow a municipality to take title from the taxpayer without providing a pre-seizure hearing. Neither problem is acceptable under constitutional analysis.

4.      This case arises out of an actual case and controversy. The Town of Westborough, Massachusetts ("**Town of Westborough**") seized Plaintiff's commercial real property having an approximate fair market value of $5,235,000.00 ($9,264,800.00 assessed value) as payment for tax debt of $119,628.17 in 2018, without a hearing, in a tax foreclosure process saddled with constitutional due process violations.

5.      The Town of Westborough violated the Takings Clause of the United States Constitution when it took the Plaintiff's real property without compensation, and a property owner may bring a Fifth Amendment claim under §1983 at such time. *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2164 (2019) citing *Jacobs v. United States*, 290 U.S. 13 (1933).

6.    In *Wayside Church v. Van Buren S.*, 847 F.3d 812, 823 (6th Cir. 2017), Justice Kethledge stated in his dissent: "In this case the defendant Van Buren County took property worth $206,000 to satisfy a $16,750 debt, and then refused to refund any of the difference. In some legal precincts that sort of behavior is called theft." A footnote in *Tallage Lincoln, LLC v. Williams*, 485 Mass. 449, 453 n.4 (2020), framed the constitutional issue this way:

> Several of our sister States have determined that excess value from a tax taking must be made available to the taxpayer as a matter of constitutional law. *See, e.g., Thomas Tool Servs., Inc. v. Croydon*, 145 N.H. 218, 220 (2000) (tax lien procedure resulting in equity windfall to purchaser of tax deed violated takings clause of New Hampshire Constitution); *Bogie v. Barnet*, 129 Vt. 46, 55 (1970) (retention of excess value by town amounts to unlawful taking for public use without compensation contrary to Vermont Constitution).

> In *Kelly v. Boston*, 348 Mass. 385, 388 (1965), [the Supreme Judicial Court ("SJC")] considered the legislative history of the statutory scheme governing tax lien foreclosures and determined that the Legislature intended that the process result in forfeiture of the taxpayer's equity to the municipality. The parties in that case did not raise any constitutional challenge, and [the SJC] did not address the constitutionality of the statutory scheme.

7.    As acknowledged in the quotation above from *Tallage Lincoln, LLC v. Williams, supra*, at least two other New England states have recognized that the tax lien and foreclosure process still used in Massachusetts is an unconstitutional taking of private property. Vermont led the way in *Bogie v. Town of Barnet*, 129 Vt. 46, 55, 270 A.2d 898 (1970). The Vermont Constitution, Chapter 1, Article 2, requires that "whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money." The court in *Bogie v. Barnet* held as follows (129 Vt. at 49, 270 A.2d at 900):

> A policy which encouraged municipal governments to promote situations where it was authorized to acquire the property of its own taxpayers at unconscionable discounts, to the enrichment of the town treasury or enlargement of its land holdings, is fraught with danger and we find not contemplated by the legislative enactment.

8.    The Supreme Court recognized the unconstitutionality of equity theft as far back as the 1800s in *United States v. Lawton*, 110 U.S. 146, (1884), when it said, in connection with a similar direct bidding-off by the United States in a tax sale:

To withhold the surplus from the owner would be to violate the fifth amendment to the constitution, and deprive him of his property without due process of law or take his property for public use without just compensation. If he affirms the propriety of selling or taking more than enough of his land to pay the tax and penalty and interest and costs, and applies for the surplus money, he must receive at least that.

The corresponding rights under the Vermont Constitution upon a taking by public authority appear in Chapter I, Article 2. Satisfaction of the statutory procedures, although they may meet the test of due process, does not negate the obligation to account for the excess proceeds received from the sale.

9.     U.S. Constitution, Amend. 5, states that: "No person shall be … deprived of … property, without due process of law; nor shall private property be taken for public use, without just compensation."

10.     Massachusetts Courts are left with no option but to enforce Massachusetts law on tax title foreclosures and permit "equity theft", because the legislature has failed to act quickly in response to newly enacted Supreme Court precedent established in *Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023) ("**Tyler**").

11.     The federal excessive fines standard under U.S. Const. Amend 8 ("Excessive bail shall not be required, nor excessive fines imposed ….") is laid out in *United States v. Bajakajian*, 524 U.S. 321, 327–28 (1998). A fine is excessive when it is punitive and grossly disproportionate to the offense. *Id*. at 333–34. The law already gives municipalities, like the Town of Westborough in this case, a right to collect a tax debt with substantial interest and costs. Taking more than that is grossly disproportionate to the non-criminal failure to pay a debt, especially where the failure arises from poverty, medical problems, or lack of knowledge.

12.     The Supreme Court is the "ultimate interpreter of the Constitution" and the United States Constitution is the "supreme law of the land." *Baker v. Carr*, 369 U.S. 186, 211 (1962); *Cooper v. Aaron*, 358 U.S. 1, 18-20 (1958); U.S. Const. art. VI (Supremacy Clause).

4

13.    Thus, it would be constitutional error to assert that the Massachusetts Land Court ("**Land Court**") can stand by and wait for remedial state legislative action when it is required to implement the holding of *Tyler* immediately, especially as to Plaintiff's dispute with the Town of Westborough.

14.    The Land Court has an unfettered constitutional obligation, under the Due Process, Takings, and Supremacy Clauses of the United States Constitution, to cure the scourge of real property equity theft no matter if the Massachusetts General Court ("Legislature") ever enacts any legislation.

15.    The Land Court's standard form tax lien complaint, employed by municipal tax lien foreclosure claimants as the starting point in any tax lien foreclosure case, awards successful claimants with "absolute title" to real property irrespective of how minimal the taxes owed are and how substantial the homeowner's equity is when the Land Court judgment is entered. This directly contravenes the May 25, 2023 ruling in *Tyler*, the Takings Clause of the United States Constitution, and abridges fundamental constitutional property rights of real property holders, including those rights secured under the Due Process, Takings, and Supremacy Clauses of the United States Constitution.

16.    By statute, M.G.L. c. 60, § 50B, every community in Massachusetts must include in its annual budget the necessary monies to pay for tax foreclosure proceedings. This appropriation is estimated by the municipal treasurer and must be at least $80 for each tax title ripe for foreclosure held by the community involving property having a current assessed valuation greater than $100,000.00. Massachusetts has ingrained and granted its imprimatur to the tax foreclosure practice as currently implemented through statutory enactment.

## 2. JURISDICTION

17.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C.

§ 1331, in that this is a civil action arising under rights conferred by the United States Constitution

and the Civil Rights Act of 1871, 42 U.S. Code §§ 1983 and 1988 to redress the deprivation under

color of state law of rights secured by the United States Constitution, under 42 U.S.C. §§ 1985(2)

and 1986, and federal law.

18.     This Court also has original subject matter jurisdiction under 28 U.S.C. §

1343(a)(2).

19.     This Court has ancillary jurisdiction over Massachusetts state-law claims under 28

U.S.C. § 1367.

20.     This Court has subject matter jurisdiction over Plaintiff's declaratory judgment

claims under 28 U.S.C. § 2201(a), 28 U.S.C. § 2202, and Fed. R. Civ. P. 57.

21.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C § 1332. A

limited liability company (LLC) is a citizen of all states in which each of its members is a citizen

(*see Mgmt. Nominees, Inc. v. Alderney Investments, LLC*, 813 F.3d 1321, 1325 (10th Cir. 2016)).

The 100% Member of Plaintiff is Mignonette Investments Limited, a British Virgin Islands limited

partnership and thus the Plaintiff is only a citizen of the British Virgin Islands.

22.     No Defendant has a citizenship of the British Virgin Islands and thus there is

complete diversity.

23.     The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

24.     This Court has the authority to provide preliminary and permanent injunctive

relief under Rule 65 of the Federal Rules of Civil Procedure.

25.     This Court has personal jurisdiction over all defendants because they have made and established contacts within The Commonwealth of Massachusetts to permit the exercise of personal jurisdiction over them.

### 3.  VENUE

26.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that at least one defendant has its principal place of business in Boston, Suffolk County, Massachusetts and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

### 4.  PARTIES

27.     Plaintiff Westborough SPE LLC ("**Plaintiff**") is a limited liability company formed under the laws of the State of Delaware and does business in Westborough, Massachusetts. Plaintiff has a single 100% member: Mignonette Investments Limited — a British Virgin Islands limited partnership. Plaintiff was the record owner of the real property located at the Locus before the Town of Westborough's unlawful actions.

28.     Defendant Town of Westborough is a Massachusetts municipal corporation ("**Town of Westborough**") having a usual place of business at 34 West Main Street, Westborough, Massachusetts 01581.

29.     Upon information and belief, Defendant Shelby Marshall ("**Marshall**"), individually and in the official capacity as Select Board Member resides at 7 Charles Street, Westborough, Massachusetts 01581.

30.     Upon information and belief, Defendant Ian Johnson ("**Johnson**"), individually and in the official capacity as Select Board Member resides at 9 Bertis Adams Way, Westborough, Massachusetts 01581.

31.    Upon information and belief, Defendant Allen Edinberg ("**Edinberg**"), individually and in the official capacity as Select Board Member resides at 8 Nash Street, Westborough, Massachusetts 01581.

32.    Upon information and belief, Defendant Sean Keogh ("**Keogh**"), individually and in the official capacity as Select Board Chair resides at 28 Longmeadow Road, Westborough, Massachusetts 01581.

33.    Upon information and belief, Defendant Patrick Welch ("**Welch**"), individually and in the official capacity as Select Board Vice-Chair resides at 15 Chauncy Circle, Westborough, Massachusetts 01581.

34.    Defendants Marshall, Johnson, Edinberg, Keogh, and Welch are collectively referred to as the ("**Select Board**").

35.    Upon information and belief, Defendant Peter Blaustein ("**Mr. Blaustein**"), individually, resides at 950 Vista Road, Hillsborough, California 94010. Mr. Blaustein is the son of F. Jan Blaustein Scholes, a former general counsel and executive at Babcock & Brown Administrative Services, Inc. and manager of Babcock & Brown Parallel Member LLC, its successor in interest and who transferred her manager role to Lolonyon Akouete and Denise Edwards by written agreement in accordance with the Plaintiff's LLC Operating Agreement.

## 5.  RIPENESS/STANDING

36.    This case is ripe for adjudication because it has created a direct and immediate dilemma for the parties—the Town of Westborough has foreclosed on the Locus.

37.    Plaintiff meets all three Article III standing requirements under *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff has a personal stake in the outcome of this litigation because its real property (its most significant financial asset) has been improperly seized

by the Town of Westborough for the nonpayment of property taxes. The improper foreclosure of Plaintiff's real property at the Locus constitutes an injury in fact that this Court can redress. The Land Court, Judge Locke (given his control over the Trial Court), the Attorney General, and the Town of Westborough have the power to prevent the Town of Westborough's unlawful taking of Plaintiff's real property at the Locus.

38.    The constitutional injuries endured by the Plaintiff, as detailed here, are directly traceable to Town of Westborough actors.

## 6. FACTS

### a. <u>TOWN OF WESTBOROUGH'S PREMATURE AND UNLAWFUL REQUEST FOR PROPOSAL ("RFP")</u>.

39.    In or about early June 2022, the Town of Westborough issued an RFP by which it solicited offers to purchase the former Regal Cinema property located at the Locus, consisting of a lot of around 29 acres and containing a structure that was formerly used as a movie theater, which the Town of Westborough had acquired by foreclosure of a tax lien ("**RFP**").

40.    The Select Board of the Town of Westborough ("**Select Board**") scored the proposals as "highly advantageous", "advantageous", or "least favorable" with respect to each of the five above criteria.

41.    Question 5 in the RFP Addendum asked: Will the closing happen after the redemption period expires?" The Town of Westborough answered: "The Town is willing to consider closing on the property after the redemption period has expired, provided the closing occurs no later than January 30, 2023, and, further, that **the Town may give preference to proposers who are willing to close on the property prior to the expiration of the redemption period**." (Emphasis added).

42.     Since the judgment of foreclosure in the tax lien case (Land Court Case # 19 TL 000768-HPS), issued on January 5, 2022, Plaintiff could petition the Land Court to redeem he property until January 5, 2023, which Plaintiff indeed did.

43.     The Town of Westborough received three proposals to its RFP by the due date of July 25, 2022.

(a)     The high bidder was Pulte Homes of New England, LLC, which offered $7,942,000.00 and proposed to raze the existing movie theater structure and replace it with 108 non-age-restricted residential condominium units ("**Pulte Proposal**"). The Select Board for the Town of Westborough ultimately rejected this proposal.

(b)     The other two proposals were commercial in nature:

(i)     Lax Media LLC and its Massachusetts subsidiary proposed to re-open a movie theater.

(ii)     Ferris Development proposed to make the property the second of its "Beehive" locations, an innovative approach to workspace for tradespeople. Beehive sites offer physical space for everyday trades (such as electricians, plumbers, painters, and carpenters). Ferris Development offered to pay $2,875,000. Lax Media LLC and its Massachusetts subsidiaries proposed $2,500,001.

44.     According to the minutes and agendas of the Town of Westborough Select Board, they met in executive session to discuss the RFP matter at least seven times after receiving the RFP proposals. These executive sessions took place on August 2nd, August 23rd, September 6th, September 13th, September 27th, October 11th, and October 26th, 2022.

45.     On November 2, 2022, the Town of Westborough Select Board met in open session to discuss the RFP matter. They took less than five minutes to announce that they had given Lax

three ratings of "highly advantageous" and two of "advantageous (without specifying which of the criteria won each rating); Ferris Development received two (2) ratings of "highly advantageous", three (3) ratings of "advantageous", and Pulte received two (2) ratings of "highly advantageous", one (1) rating of "advantageous", and two (2) ratings of "least advantageous".

46.     The Select Board then voted on November 2, 2022 to award the purchase and sale agreement to the Lax entities. Under the terms of the RFP, The Town of Westborough and Lax were to enter into a purchase and sale agreement within 30 days from the date of the vote.

47.     The Town of Westborough, going through the RFP process highlighted above, shows that the Town of Westborough initially decided not to sell the property through the tax title process described in M.G.L. c. 60.

48.     The Town of Westborough's action of going through the RFP and selecting the Lax Entities as the winning bidder illustrates that the Town of Westborough, its Select Board, Attorney, Town Manager, and Chief Assessor have recklessly disregarded their obligation to pay fair market value for the taken property. By not selecting the highest bidder Pulte, the Town has sought to minimize the value paid to the Plaintiff in violation of law.

49.     The Town of Westborough through their RFP process failed to follow their own criteria. "A public authority [like the Select Board of the Town of Westborough] inviting bids may not, like Humpty Dumpty, choose to let words it uses in an invitation mean what the public authority chooses those words to mean. When words in an invitation are invested with a meaning known only to the issuer of the invitation to bid, the legislative aims that bids be submitted on a common basis is thwarted. Fairness and equality require that bidders have the opportunity to bid in the same way and on the same information such that they bear the same risk of rejection." *See White's Farm Dairy, Inc. v. City of New Bedford*, 1999 Mass. Super. LEXIS 294 at *34-35.

50.    The Town of Westborough flouted their legal duty by offering the Locus up for sale before adjudication of Plaintiff's property rights.

51.    The Select Board for the Town of Westborough rated the Lax Entities' proposal higher than that of Ferris Development because the Town expected that the Lax entities' proposal would generate higher tax revenue than that of Ferris Development.

52.    The property valuations relied upon by the Town of Westborough in determining projected tax revenue are facially suspect. The assessors claimed to estimate that Lax Entities' proposal would yield a property worth $9,329,750, while Ferris Development's would produce a fair market value of only $5,501,830. It strains credulity to suggest that Ferris Development would invest $2,875,000 to purchase the property and another $2 million +/- to develop it only to be content with a resulting parcel worth scantly more than the purchase and development cost. Given the contraction in the movie theater use segment in recent years, and the example of the failure of a cinema use on the very site that was at issue, it is unlikely that Lax entities could almost quadruple its purchase money investment by continuing a movie theater use. No real estate valuation professional in the United States would assign a higher valuation or capitalization rate to a movie theater than to a shared work storage space or housing units.

53.    This constitutes prima facie evidence that the Town of Westborough was covering up a process that did not follow its own RFP, that violated the Plaintiff's constitutional rights, and that defies economic logic—seeking to resume a prior failed use of the property as a movie theater.

54.    While "The town has broad power to control and dispose of real property on the terms and conditions it deems appropriate," and is not required to "transfer land to the highest bidder" (*see Mangano v. Town of Wilmington*, 51 Mass. App. Ct. 857, 859 (2001)), Towns must not violate bedrock constitutional principles in the exercise of their discretion.

12

55.    The Town of Westborough has stated on the record in a Plymouth County Superior

Court proceeding:

> "the Town had a rational basis for accepting Lax Media's proposal over that of [Ferris
> Development Group] because Lax Media's proposal provided greater financial benefits to
> the Town and was able to proceed more quickly than FDG's, even if FDG's proposal
> reflected greater financial resources.  Because Lax Media and FDG received the same score
> on price proposal and sustainability, and the Select Board reasonably determined Lax
> Media's proposal was better than FDG's on two of the three remaining criteria, the Town's
> decision was not arbitrary and the Court should not substitute its judgment for that of the
> Select Board.  Because the Select Board's decision was based on grounds upon which
> reasonable persons would rely, FDG does not have a likelihood of success on the merits of
> its claims here."

> *See* Opposition of the Town of Westburgh, *Ferris Development Group, LLC v.
> Town of Westborough et als.*, Superior Court Dept. Civil Action #2285cv01281 (Worcester
> Cty.) at pp. 12-13.

56.    <u>Furthermore, the Chief Assessor for the Town of Westborough stated</u>:

"The Assessor estimated Lax Media's use of the Property as a cinema would produce an
estimated $192,507.33 in tax revenue annually, which was significantly more than [Ferris
Development Group's] estimated annual tax revenue of $101,821.29 because of the more
developed state the facility would be in as a cinema as opposed to a warehouse and meeting
place for tradespeople…Moreover, the cinema use would also bring in tax revenue through
ticket sales and meals taxes and personal property taxes on the high-technology fixtures
installed…The cinema use would provide an evening destination for the entire community,
stimulating nearby restaurants, whereas [Ferris Development Group's] proposal is an
untested experiment following in the footsteps of the failed WeWork business
model…[Ferris Development Group's] dismissal of the number of jobs Lax Media's
cinema use would create is remarkable given that the cinema was estimated to create 10
full-time jobs, 20 part-time jobs, and several seasonal jobs…"

*See Id*. at pages 13-14.

57.    The Town of Westborough has a self-interest that it believes contravenes Plaintiff's

constitutional rights—generating increased tax revenues for the Town of Westborough (which are

suspect and speculative justifications), creating jobs, and continuing a prior use as it will have a

lower effect on municipal services. This is all to the detriment of Plaintiff's Constitutional rights.

**b.  <u>The Town of Westborough and Its Agents Engaged in An Unconstitutional Taking of
Property Without Just Compensation</u>**.

58.    The Land Court, by request of the Town of Westborough, has granted official imprimatur to an unconstitutional practice. It is the practice—sanctioned by statute[1]—of using unpaid real estate property taxes to seize real property for a municipality's own benefit, selling (or attempting to sell) it for amounts that far exceed the amount of unpaid taxes, retaining not just the amount owed for unpaid taxes, but all of the sale proceeds, including all of the property owner's equity in the real property. This is the practice of "equity theft".

59.    The Town of Westborough's desire to retain the value of sale proceeds in excess of the unpaid taxes due on real property and associated charges violates the United States Constitution's prohibitions on the taking of private property for public use without just compensation and constitutes an excessive fine for the nonpayment of property taxes.

60.    The willful intent has been manifested not only by the Town of Westborough Select Board, but also by and through its attorneys, treasurer/collector, and Town of Westborough officials and agents. This intent has been publicly broadcast in newspapers throughout Massachusetts.                    *See*,                                        *e.g.*,

---

[1] M.G.L. c. 60, § 53 provides, "If a tax on land is not paid within fourteen days after demand therefor and remains unpaid at the date of taking, the collector may take such land for the town, first giving fourteen days' notice of his intention to exercise such power of taking, which notice may be served in the manner required by law for the service of subpoenas on witnesses in civil cases or may be published, and shall conform to the requirements of section forty five. He shall also, fourteen days before the taking, post a notice so conforming in two or more convenient and public places . . ."

M.G.L. c. 60, § 54 provides in pertinent part, "The instrument of taking shall be under the hand and seal of the collector and shall contain a statement of the cause of taking, a substantially accurate description of each parcel of land taken, the name of the person to whom the same was assessed, the amount of the tax thereon, and the incidental expenses and costs to the date of taking. Such an instrument of taking shall not be valid unless recorded within sixty days of the date of taking. If so recorded it shall be prima facie evidence of all facts essential to the validity of the title so taken . . . ."

https://www.metrowestdailynews.com/story/news/2022/08/05/westborough-ma-fields-proposals-

former-regal-cinemas-property/10230187002/ (accessed August 17, 2023).

61.    The Land Court has refused to impose any administrative orders or a moratorium

on tax title foreclosure cases in The Commonwealth based on the United States Supreme Court

*Tyler* decision.

62.    The Land Court has stated that if a municipality or other plaintiff in a tax

foreclosure case seeks to foreclose on a tax title, that Massachusetts law permits this to occur and

that any resulting risk of liability, including for compensation owed to the former owner, is for the

municipality to consider and assess in proceeding. Accordingly, the Massachusetts Land Court has

vitiated the central holding of *Tyler* which prohibits municipalities from confiscating equity after

conducting tax lien foreclosure sales.

63.    The Land Court has refused to immediately honor the *Tyler* ruling and has

continually issued *absolute* titles in violation of federal law and Supreme Court precedent,

especially in 19 TL 000768-HPS that applies to the Plaintiff.

64.    Since the Land Court has exclusive statutory jurisdiction over all tax lien

foreclosure cases in Massachusetts, these cases must be litigated exclusively in the Land Court,

which controls discovery, the course of proceedings, and enters judgments which have violated

the core tenets of *Tyler*, especially through the foreclosure final judgment issued in *Town of

Westborough v. Westborough SPE, LLC, et als.*, 19 TL 000768 (Land Ct. applies

65.    The Land Court's standard form tax lien complaint is unconstitutional because it

seeks to award "absolute title" which violates *Tyler*.

66.    Every "absolute title" awarded by the Land Court, through judgments entered upon

standard form tax lien complaints from May 25, 2023 to present date and beyond, is and will be

void ab initio—and of no legal force and effect. All such judgments, and the land titles to which they relate, will be subject to collateral attack for years to come because the Land Court has refused to comply with *Tyler* from the decision date. If "the court which renders judgment has no jurisdiction to render it, either because the proceedings, or the law under which they are taken, are unconstitutional, or for any other reason, the judgment is void and may be questioned collaterally…" *In re Neilson*, 131 U.S. 176, 182 (1889).

67.    These tax title foreclosure judgments and land title litigations will continue for years and will infect thousands of land titles going forward, opening the floodgates to litigation on this issue.

68.    By adhering to the rule of law announced in *Tyler*, the Land Court could minimize these invalid judgments and land titles.

69.    The Land Court's obligation to uphold constitutional rulings of the United States Supreme Court is not subject to or conditioned upon any antecedent action by the Massachusetts General Court ("Legislature") or any other legislative body. No legislative action is required to implement the core *Tyler* ruling given the Land Court's exclusive jurisdiction over tax lien foreclosure cases and its mechanical and administrative ability to ensure that no municipal tax lien claimant is ever awarded with any tax lien judgment which embeds the right to "take" real property equity.

70.    Courts, such as the Land Court, cannot stand idle and watch municipalities like the Town of Westborough violate the United States Constitution based on the inaction of a legislative body, especially where there is an active case and controversy.

**The Town of Westborough Initiates a Tax Taking Against Plaintiff**

71.     On January 16, 2019, the Town of Westborough recorded an instrument of Tax Taking under M.G.L. c. 60, §§ 53 and 54 against the Locus for nonpayment of property taxes.

72.     On July 8, 2019, the Town of Westborough commenced the action to foreclose the tax lien (*Town of Westborough v. Westborough SPE, LLC, et als.*, Massachusetts Land Court, Case # 19 TL 000768-HPS).

73.     On July 24, 2019, a Notice of the foreclosure action was recorded in the Worcester District Registry of Deeds at Book 60751, Page 221.

74.     On August 26, 2019, a Land Court Title Examiner, Michael H. Delaney, Esq. ("Attorney Delaney"), completed and subsequently filed a Title Report under M.G.L. c. 60, § 66, and reported that the parties interested and entitle to notice were "Westborough SPE, LLC c/o Babcock & Brown Administrative Services, Inc….Att'n Dyann Blaine and/or F. Jan Bluestein" and "Interstate Theaters Corporation".

75.     Plaintiff acquired its ownership interest in the Locus by Quitclaim Deed recorded at Book 19369, Page 75 in the Worcester District Registry of Deeds on November 21, 1997 ("Deed"). The Deed stated that the grantee was Westborough SPE LLC, a Delaware limited liability company with a principal place of business at c/o Babcock & Brown Administrative Services, Inc., Two Harrison Street, San Francisco, CA 94105. Westborough SPE LLC paid $9,151,449.00 in consideration for the Locus in 1997.

76.     Upon information and belief, Attorney Delaney searched the online records of The Secretary of The Commonwealth of Massachusetts Corporations Division ("MA Corporations Division") for Westborough SPE LLC. The MA Corporations Division is a mere repository of corporate filings and no one at the MA Corporations Division can confirm or deny the accuracy of any document filed with it, except to confirm the date and time said document was filed.

17

77.     Upon information and belief, Attorney Delaney did not search any records of the Secretary of State for the State of Delaware Corporations Division.

78.     Had Attorney Delaney searched he would have discovered that Babcock and Brown Administrative Services, Inc. had become Babcock and Brown Administrative Services LLC which later merged into Babcock and Brown Parallel Member LLC, a Delaware limited liability company.

79.     Thus, Babcock and Brown Parallel Member LLC was the successor-in-interest manager to Babcock and Brown Administrative Services, Inc.

80.     Babcock and Brown Parallel Member LLC was never provided notice of the foreclosure.

81.     When the Town of Westborough "took" Plaintiff's Property with the judgment of foreclosure entering on January 5, 2022, through a tax taking that violated due process (including, but not limited to improper notice), it did not pay for said property.

82.     Plaintiff has been deprived of all use and benefit of its real property at the Locus since the Town of Westborough's tax title foreclosure, and Plaintiff has received no compensation whatsoever. The only thing that the Town of Westborough has done was force Plaintiff to have incurred significant legal expenses because of the Town of Westborough and their agents' unconstitutional actions.

83.     The Town, through its Tax Collector/Treasurer, asserted that it is due the sum of $918,314.60 for taxes, interest, and incidental expenses as through May 16, 2023. *See* **Exhibit A** attached and incorporated by reference. The Tax Collector in the affidavit readily concedes though that this sum is no longer accurate. On May 3, 2023, Linda A. Smith, Treasurer/Collector for the Town of Westborough ("Town Treasurer") certified that as of May 16, 2023 ("**Town's**

18

Certification"), a grand total of $918,314.60 was owed, consisting of: $119,628.17 (2018 Taxes), $103,133.80 (2019 Taxes), $10-2,963.48 (2020 Taxes), $55,915.95 (2021 Taxes), $36,885.70 (2021 Taxes), and $35,183.54 (2023 Taxes). It also included interest in the amount of $239,341.73, $58,138.22 in legal fees owed to KP Law and The Law Offices of Iris A. Leahy, Esq., miscellaneous water and sewer liens, NSTAR lien, $14,438.55 to Boston Board Up, $109,882.55 in insurance costs, $6000 in appraisal costs, $20,591.22 for a Request for Proposal (RFP) bid process to sell the Locus, and other miscellaneous recording costs and fees as Itemized in **Exhibit A**.

84.      The Town Treasurer certified in the Town's Certification that the 2023 assessed value of the Property is currently $2,082,000.00 compared with $9,264,800.00 in 2018. According to the Town of Westborough's Appraisal, the market value of the Locus is $4,790,000 as of August 3, 2018 as determined by Mark S. Reenstierna, Massachusetts Certified General Real Estate Appraiser #3803 communicated to Jonathan Steinberg, MAA, Chief Assessor for the Town of Westborough on September 4, 2018. A second appraisal was performed by William J. Pastuszek, Jr., MAI, SRA, MRA, Massachusetts Certified General Real Estate Appraiser License #10 on behalf of Shepherd Associates, LLC for the Town of Westborough and determined that the as-is opinion of value of the fee simple interest in the Locus as of January 28, 2018 was $5,500,000 to $6,000,000.

85.      Attorney Iris A. Leahy ("**Attorney Leahy**") and attorneys from KP Law, P.C. ("**KP Law**"), acting on behalf of the Town of Westborough, were encouraged to allow the Town of Westborough's tax title foreclosure of the Locus, because they have earned and continue to earn substantial legal fees stemming from the Plaintiff's challenge.

86.     The Locus consists of a parcel of land containing about 29.34 acres (around 1,277,876 square feet) improved with a single-story movie theater.

87.     On March 16, 2023, David M. Ferris, Esq. on behalf of Ferris Development Group, LLC executed a contingent Offer to Purchase the Locus for $2,400,000.00 ("**Minimum Current Market Price**").

88.     The Town's Certification stated that the assessed value of the Locus for 2023 is $2,082,000.00. Current Minimum Market Price is $2,400,000.00. The surplus ("**Surplus**"), consisting of the market value less outstanding taxes, interest, charges of keeping, and charges of sale, as of May 16, 2023, exceeded $918,314.60 (minimum amount of "equity theft") as alleged in the Town's Certification. See M.G.L. c. 60, § 28.

89.     Assuming arguendo that the Town decided to proceed with Pulte's offer during the RFP of nearly $7 Million, the resultant "equity theft" as of May 16, 2023 would have been nearly $6,081,685.40.

90.     Under current Massachusetts law, the Town of Westborough is entitled to this Surplus when and if the Town sells the Property subject only to additional permissible deductions, under M.G.L. c. 60, § 28, due, once again, to the mere passage of time.

91.     The Town of Westborough has stated that it refuses to release the proceeds to Westborough SPE LLC's duly authorized successor managers, Lolonyon Akouete, and Denise Edwards according to the records of the Massachusetts Secretary of The Commonwealth Corporations Division and the Secretary of State for the State of Delaware Corporations Division, the Durable Power of Attorney (governed by Delaware law) executed by F. Jan Blaustein Scholes as Manager ("Ms. Scholes")  of Babcock and Brown Parallel Member LLC as successor in interest

to Babcock and Brown Administrative Services, Inc. and a Written Consent of Manager signed by

Ms. Scholes.

92.     Ms. Scholes executed and had notarized the Durable Power of Attorney and Written

Consent of Manager in Maricopa County, Arizona.

93.     Plaintiff's LLC Operating Agreement is governed by Delaware law and allows for

an existing manager to transfer the role of manager to another manager or co-manager.

94.     Plaintiff's LLC Operating Agreement does not allow a Manager to resign as

Manager without Member Consent.

95.     No Member Consent was ever provided for the resignation of any manager by

Mignonette Investments Limited.

**The Town of Westborough Has Informed Plaintiff's Managers That It Will Refuse to Tender Proceeds to the Plaintiff**

96.     The command of M.G.L. c. 60, § 28 is clear: "The collector shall *upon demand* give

a written account of every sale on distress or seizure and charges, and pay to the owner any surplus

above the taxes, interest and charges of keeping and sale."

97.     The Town of Westborough has stated that it will refuse to tender sale proceeds to

Plaintiff's Managers even though Plaintiff is a manager-managed LLC.

98.     Since Plaintiff timely made a statutory demand, it is entitled to "any surplus" after

payment of the expenses under M.G.L. c. 60, §28. Attempts to place a contrary construction upon

M.G.L. c. 60, §28 would violate the Due Process Clause since "the touchstone of due process is

the protection against the arbitrary action of the government…" *Wolf v. McDonnell*, 418 U.S. 539,

558 (1974).

99.     There is no legal, equitable, or factual base on which the Town of Westborough

could assert that it may retain any surplus from a sale for itself.

21

100.    The Town of Westborough's actions to seize the Surplus violates the Fifth Amendment, Due Process Clause, Federal Civil Rights Act (42 U.S.C. § 1983), M.G.L. c. 60, § 28, and common law (including, but not limited to conversion, fraud, and deceit), and the retention of any such Surplus, within the meaning of M.G.L. c. 60, § 28, would violate Massachusetts criminal larceny statutes. *See* M.G.L. c. 266, § 30(1).

## C. Unconstitutional Documents/Postings by The Land Court.

101.    The Home Page of the Land Court website, which upon information and belief is operated by the Land Court, states: "A tax lien foreclosure is a type of court case in which a city or town (or sometimes a third party) can seek to obtain <u>full ownership</u> of property if the property taxes, water bills, or sewer bills are not paid…" (Emphasis added). See Land Court Website, https://www.mass.gov/land-court-tax-lien-foreclosure-cases-resources#:~:text=The%20Land%20Court%20has%20jurisdiction%20over%20all%20tax%20lien%20foreclosures%20in%20Massachusetts (accessed August 14, 2023).

102.    Land Court websites have spread false information that contradicts the Supreme Court's holding in *Tyler* and that the Town of Westborough and other municipalities rely contradicts.

103.    The Land Court Homepage Link - "Simple Chart of the Tax Lien Foreclosure Process" states at Section #8: "If you do not pay the amount back by a certain date, the plaintiff can file a motion for judgment and hearing notice. The Court will schedule a hearing on the Motion for Judgment. At this hearing, the Court may make a judgment of foreclosure. *If the Court makes a judgment of foreclosure, your ability to get the property back ends, and the plaintiff gets full ownership of the property. <u>You will lose the whole property, even if it is worth much more than you owe</u>.* (See FAQ #18 and FAQ #19)". See https://www.mass.gov/doc/simple-introductory-tax-lien-flowchart/download (Accessed August 14, 2023) which is incorporated by reference.

104.    The Massachusetts Standard Form Tax Lien Complaint – Form TL-5 (04-2021) at Section #5 states: "Plaintiff(s) requests that the Court enter judgment foreclosing all rights of all persons entitled to redeem and declaring that title to the described real estate is **absolute** and that all rights of redemption are barred.  Plaintiff(s) requests such other and further relief as the Court deems proper." (Emphasis Added). *See* https://www.mass.gov/doc/tax-lien-complaint/download (Accessed August 14, 2023) which is incorporated by reference.

105.    The Land Court's online Tax lien foreclosure informational outline states: "A tax lien foreclosure is a process through which you can lose ownership of your property if you do not pay your real estate taxes or water/sewer bill. This can result in you losing all of your property's value, even if the amount you owe is much less than your property's value." *See* https://www.mass.gov/info-details/tax-lien-foreclosure-informational-outline (Accessed August 14, 2023) which is incorporated by reference.

## COUNT ONE
## DECLARATORY RELIEF

106.    Plaintiff repeats and realleges the paragraphs above.

107.    Upon any sale of the Property by the Town of Westborough, if it effects such a sale, it is demanded that the Town and its Treasurer/Tax Collector, comply with the dictate of M.G.L. c. 60, § 28. The cited statutory subsection embeds the constitutional requirements of the Takings Clause of the Fifth Amendment to the United States Constitution ("Fifth Amendment") into it. "The Takings Clause of the Fifth Amendment states that 'private property [shall not] be taken for public use, without just compensation.'" *Knick v. Scott*, 588 U.S.___ (2019) Slip. Op. at p. 1. (brackets in original). "A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id.*, 588 U.S. ___ at 2. The "property

owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation…" *Id*.

108.    On January 05, 2022, Final Judgment entered as to tax-taking by the Town of Westborough in the Land Court case (19 TL 000768-HPS) at the Locus.

109.    Plaintiff is entitled to a declaration that if the Town of Westborough sells the Locus that Plaintiff is entitled to the difference between the amount owed and what the property sells for.

110.    Plaintiff is entitled to a declaration that as a result of the Town of Westborough and its agents' unconstitutional behavior that it must forfeit any interest on amounts owed by Plaintiff for property taxes.

111.    Plaintiff is entitled to a declaration that as a result of the Town of Westborough and its agents' unconstitutional behavior that it shall not be entitled to collect legal fees and costs incurred by Attorney Leahy and KP Law.

112.    Plaintiff is entitled to a declaration as to the rights and obligations of Plaintiff and Defendants vis-à-vis the constitutionality of holding an RFP prior to expiration of Plaintiff's right of redemption period.

113.    Plaintiff is entitled to a declaration as to the constitutionality of the Massachusetts tax-title foreclosure process as it has been directly applied by the Town of Westborough to Plaintiff.

## **<u>COUNT TWO</u>**

### **UNCONSTITUTIONAL TAKING UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION; VIOLATION OF 42 U.S.C. § 1983**

114.    Plaintiff repeats and realleges the paragraphs above.

115.    Defendants at all times relevant to this action were acting under color of state law.

116.    Defendants unlawfully deprived Plaintiff of 100% of its real property located at the Locus without just compensation and without due process of law, all in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

117.    This claim is being made pursuant to 42 U.S.C. § 1983 and § 1988.

118.    The Fifth Amendment of the United States Constitution, made applicable to the states via the Fourteenth Amendment, is a constitutional provision and right requiring the payment of just compensation upon a taking of private property by Defendants. *See Knick v. Twp. Of Scott*, 588 U.S. ____ (2019).

119.    The Town of Westborough's actions and those of the 1983 Defendants vis-à-vis tax title foreclosure of the Locus have constituted a complete taking of Plaintiff's real property without any compensation for such taking.

120.    James Malloy, the former Town Manager for the Town of Westborough stated in a November 29, 2018 article in the Westboro Telegram & Gazette "the town will have to hold on to the money from the new owner for three years in case a claim is filed against the town…[Malloy] said that would not stop the selling and development of the property." *See* **Exhibit B** attached and incorporated by reference. The Town of Westborough had actual knowledge that selling the Locus in an RFP could subject the Town of Westborough to liability.

121.    At all times relevant hereto, the defendants acted under a policy or custom of the Town of Westborough of depriving real property owners that owe unpaid property taxes of their real property to avoid having to pay compensation in an eminent domain proceeding.

122.    In an Affidavit dated May 14, 2020, by Shirin Everett, Esq. of KP Law, P.C., legal counsel to the Town of Westborough, Attorney Shirin stated: "We advised the Town Manager that if real estate taxes were not being paid [at the Locus], the Town [of Westborough] could eventually acquire the title to the Property through a Land Court foreclosure process. We advised the Town

as to the steps the Town needs to take to demand payment of WSPE [Plaintiff], to record an Instrument of Taking after waiting the statutory 14-day period, and filing a petition to foreclose on the Property in Land Court." *See* **Exhibit C** at Paragraph #6, attached and incorporated by reference for the Affidavit of Shirin Everett, Esq. ("**Attorney Affidavit**").

123.    Attorney Shirin further notesd that "[a] vote taken under Article 18 of the March 6, 2018 Annual Town Meeting, authorized the Board of Selectmen [for the Town of Westborough] to acquire the Property [the Locus] by eminent domain for economic revitalization and general municipal purposes, and appropriated the sum of $6,000,000 to pay damages for the Property and to pay for costs incidental or related thereto. It was the Town's intent that, should it take the Property by eminent domain rather than through the tax-foreclosure process, it would pay damages to WSPE [Plaintiff] or to any other entity or person that established that it owned the Property." *nonpayment* at Paragraph #10.

124.    The Town of Westborough's unconstitutional municipal policy, practice, and custom vis-à-vis tax-title foreclosure in-lieu of condemnation proceedings to avoid having to pay just compensation for the taking of real property ("**Tax-Title Foreclosure Policy**") was the moving force of the constitutional violation suffered by the Plaintiff. *See Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694-95 (1978).

125.    Not only was the Town of Westborough's formal Tax-Title Foreclosure Policy caused the violation of Plaintiff's constitutional rights, but also it was designated employees with final policymaking authority that caused the rights violation, including Attorney Everett (KP Law), the Town Manager, and the Board of Selectmen.

126.    All these aforementioned parties were either employees of the Town of Westborough, engaged in the business of the municipality, or were acting with the authority granted to them by the Town of Westborough.

127.    Attorney Everett (KP Law) acted jointly with the Town of Westborough and acted under an engagement letter authorized by the Town of Westborough.

128.    Peter Blaustein acted jointly with the government and was under the Town of Westborough's control, where Town Counsel, Attorney Leahy, drafted a "Waiver of Notice and Assent to the Entry of Judgment" for Peter Blaustein to sign, have notarized, and which was filed in Land Court proceeding 19 TL 000768-HPS on May 4, 2023. In that document, Peter Blaustein claimed to be a "Party of Interest by and/or through a Power of Attorney, as Court-Appointed Guardian, and as Conservator for F. Jan Blaustein a/k/a Jan Blaustein Scholes, in the above-referenced tax lien case, hereby waives her right to notice and assents to the previous entry of judgment with regards to the parcel listed below [Locus]". *See* **Exhibit D** attached and incorporated by reference. This document had a prejudicial effect on the Land Court proceeding and Plaintiff through its legal counsel moved to strike said document, but the Land Court Judge refused to strike said document from the Docket.

129.    Defendants' actions did not substantially advance a legitimate state interest.

130.    Defendants' policy and practice regarding tax title foreclosure of the Locus has denied Plaintiff any viable use of their property.

131.    The Town of Westborough has taken Plaintiff's property for public use without providing just compensation.

132.    The Town of Westborough provided no compensation to Plaintiff for the taking of their real property, thereby depriving Plaintiff of their constitutional rights in violation of the Fifth Amendment of the United States Constitution.

133.    The Town of Westborough interfered with Plaintiff's distinct, investment-backed expectations as to their business and real property.

134.    As a result of Defendants' actions and failure to pay just compensation, Plaintiff has been injured and suffered damages in an amount to be determined at trial.

135.    Defendants cannot assert a compelling interest for disregarding Plaintiff's long-established constitutional property rights.

136.    The Land Court's conduct has caused and will continue to cause Plaintiff to suffer immediate and irreparable harm to its constitutional rights to due process. No money damages can remedy this harm because real property is unique, and Plaintiff has no legal avenue by which to recover any money damages against the Town of Westborough.

## <u>COUNT THREE</u>

## **VIOLATION OF 42 U.S.C. §§ 1985(2) and 1986**

142.    Plaintiff repeats and realleges the paragraphs above.

143.    The first clause of § 1985(2) permits an action for damages when:

> "two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified."

144.    § 1986 permits damages against any:

> "person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do."

145.    § 1985(2), "contain[s] no language requiring that the conspirators act with intent to deprive their victims of [constitutional rights]." *Kush v. Rutledge*, 460 U.S. 719, 725 (1983).

146.    The Town of Westborough, Town of Westborough Select Board, Attorney Leahy, KP Law, Peter Blaustein, Dyann Blaine, and Walter Horst conspired to deter, by force, intimidation, and threats, F. Jan Blaustein Scholes from testifying freely, fully, and truthfully.

147.    Furthermore, upon information and belief, Peter Blaustein has told F. Jan Blaustein Scholes that he would not allow her to move to a nicer nursing home facility if she continued "cooperating" with Lolonyon Akouete and Denise Edwards, the successor managers of the Plaintiff. Mr. Akouete an Ms. Edwards owe a fiduciary duty to the Plaintiff to ensure that its greatest asset—real property at the Locus—is not wrongfully seized by the Town of Westborough for payment of outstanding tax obligations amounting to a mere fraction of the real property's value.

148.    Upon information and belief, the Select Board and KP Law had actual knowledge of Attorney Leahy's actions in wrongfully contacting Mr. Horst, Ms. Blaine, Peter Blaustein, and F. Jan Blaustein Scholes, witnesses in the Land Court proceeding (19 TL 000768-HPS).

149.    Neither the Select Board nor KP Law, who had the power to stop Attorney Leahy's improper actions, acted to so stop Attorney Leahy.

150.    As a result of defendants' conduct, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT FOUR

**EXCESSIVE FINES VIOLATION OF THE UNITED STATES CONSTITUTION**

**(AGAINST TOWN OF WESTBOROUGH)**

151.     Plaintiff repeats and realleges the paragraphs above.

152.     The Eighth Amendment to the United States Constitution prohibits the imposition of excessive fines.

153.     Confiscating the entire value of Plaintiff's real property, including the excess or surplus equity in Plaintiff's property because of non-payments of real estate taxes is an excessive fine under the Eighth Amendment to the United States Constitution.

154.     Defendant is engaged in assessing and collecting prohibited excessive fines.

155.     Plaintiff faces a threat of irreparable harm if, after a trial on the merits, a permanent injunction is not granted, in that there is a threat that its property rights will continue to be violated by Defendant.

156.     Plaintiff has no adequate legal remedy to protect their property interests from the ongoing unconstitutional and unlawful conduct herein described.

157.     Plaintiff has been injured and damaged by the unlawful excessive fines under the United States Constitution and is entitled to relief as a result.

**WHEREFORE**, Plaintiff requests judgment as follows:

A.     Enter an order that the Defendants have violated Plaintiff's constitutional rights by taking its real property for public use without just compensation and violating Plaintiff's due process rights;

B.     Enter an order for damages and/or compensation for the value of the real property taken by Defendants;

C.      Enter an order for all damages available under federal law as applicable, including, but not limited to, an award for nominal and punitive damages;

D.      Issue a Declaratory Judgment that M.G.L. c. 60, § 28 is unconstitutional as applied and/or facially;

E.      Issue a Declaratory Judgment that M.G.L. c. 60, §§ 53 and 54 are unconstitutional as applied and/or facially;

F.      Issue a Declaratory Judgment that Massachusetts' statutory scheme of tax title takings and allowance for "equity theft" is unconstitutional;

G.      Issue a Declaratory Judgment that the Town of Westborough's appropriation of Plaintiff's real estate equity is an excessive fine in violation of the United States Constitution;

H.      Issue a Declaratory Judgment that as a result of the Town of Westborough's actions, by and through its Select Board, and agents, that legal fees paid to further the Town's unconstitutional and/or unlawful actions should be removed from amounts Plaintiff owes to the Town;

I.      Issue preliminary and permanent injunctions enjoining the Land Court, Town of Westborough, and Judges of the Trial Courts of The Commonwealth of Massachusetts from enforcing the foregoing challenged statutory provisions until further order of this Court.

J.      Issue such other declarations as are necessary and proper for a full adjudication of this matter as presented to the Court;

31

K.    Award Plaintiff costs and attorneys' fees under 42 U.S.C. § 1988, or under any

other applicable statute or authority.

L.    Grant Plaintiff any other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**Dated**: August 31st, 2023

Respectfully submitted,

**WESTBOROUGH SPE LLC**, Plaintiff,

By its attorneys,

*Scott A. Schlager*

By: _____
Scott A. Schlager, BBO#695421
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
Tel. (617) 909-4511
Fax. (617) 210-4824
sas@natgolaw.com

**VERIFICATION**

I, Lolonyon Akouete, declare as follows:

1. I am the co-Manager of Westborough SPE LLC, a Delaware limited liability company, Plaintiff in the above-captioned case. I have authorized the filing of this complaint and in accordance with the limited liability company operating agreement of Plaintiff.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Other Relief, and if called on to testify I would competently testify about these matters.

3. I have personal knowledge of Westborough SPE LLC, its activities, and its intentions, including those set out in the foregoing Verified Complaint for Declaratory and Other Relief, and if called on to testify I would competently testify about these matters.

4. I verify under penalty of perjury under the laws of the United States that the factual statements in this Complaint about myself, my activities, and my intentions are true and correct, as are the factual statements about Plaintiff, its activities, and its intentions. I have reviewed the allegations made in the complaint. As to those allegations of which I do not have personal knowledge, I rely on information and belief, and I believe them to be true. 28 U.S.C. § 1746.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 31st DAY OF AUGUST 2023.**

*/s/ Lolonyon Akouete*

_____

Lolonyon Akouete, Manager

33

**VERIFICATION**

Denise Edwards, being duly sworn, deposes and says:

1.  I am the co-Manager of Westborough SPE LLC, a Delaware limited liability company, Plaintiff in the above-captioned case. I have authorized the filing of this complaint and in accordance with the limited liability company operating agreement of Plaintiff.

2.  I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Other Relief, and if called on to testify I would competently testify about these matters.

3.  I have personal knowledge of Westborough SPE LLC, its activities, and its intentions, including those set out in the foregoing Verified Complaint for Declaratory and Other Relief, and if called on to testify I would competently testify about these matters.

4.  I verify under penalty of perjury under the laws of the United States that the factual statements in this Complaint about myself, my activities, and my intentions are true and correct, as are the factual statements about Plaintiff, its activities, and its intentions. I have reviewed the allegations made in the complaint. As to those allegations of which I do not have personal knowledge, I rely on information and belief, and I believe them to be true. 28 U.S.C. § 1746.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 31st DAY OF AUGUST 2023.**

*Denise Edwards*

_____
Denise Edwards, Manager

34

# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MASSACHUSETTS

---------------------------------X

**WESTBOROUGH SPE LLC**, a Delaware limited
liability company,

                          *Plaintiff.*

                              v.

**TOWN OF WESTBOROUGH**, *a
municipal corporation of The
Commonwealth of Massachusetts*;
**SHELBY MARSHALL**, *individually and
in the official capacity as Select Board
Member*; **IAN JOHNSON**, *individually
and in the official capacity as Select Board
Member*; **ALLEN EDINBERG**,
*individually and in the official capacity as
Select Board Member*; **SEAN KEOGH**,
*individually and in the official capacity as
Select Board Chair*; **PATRICK WELCH**,
*individually and in the official capacity as
Select Board Vice-Chair*; **PETER
BLAUSTEIN**, *individually,*

                          Defendants.

Civil Action #:

_____

**JURY TRIAL DEMANDED**

---------------------------------X

## RULE 7.1 DISCLOSURE STATEMENT

Pursuant to Rule 7.1(a)(1) of the Federal Rules of Civil Procedure, Plaintiff hereby states that it is

a limited liability company formed under the laws of the State of Delaware. Westborough SPE LLC has

one member: Mignonette Investments Limited, a British Virgin Islands limited partnership.

Respectfully submitted,

**WESTBOROUGH SPE LLC**, Plaintiff,

By its attorneys,

*/s/ Scott A. Schlager*

By: _____

Scott A. Schlager, BBO#695421
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
Tel. (617) 909-4511
Fax. (617) 210-4824
sas@natgolaw.com

## CERTIFICATE OF SERVICE

I, Scott A. Schlager, Esq., hereby certify that a copy of the above-captioned document was served upon counsel of record in the above-captioned matter via the ECF system on August 31, 2023.

**/s/ Scott A. Schlager, BBO#695421**



# TOWN OF WESTBOROUGH
## MASSACHUSETTS



PLAINTIFF'S
EXHIBIT
A

OFFICE OF THE TREASURER/COLLECTOR
34 WEST MAIN STREET
WESTBOROUGH, MA 01581-1998
LINDA A. SMITH

TELEPHONE
(508)871-5142
FAX
(508)366-3099

231 TURNPIKE ROAD, WESTBOROUGH, MA
PARCEL: 32-48-0          BOOK/PAGE: 66983-53

16% interest to 5/16/23

| | | TOTALS | | | VALUE |
|---|---|---|---|---|---|
| 2018 Tax Title Lien | $ 119,628.17 | | | pd Q1/1/2 Q2 | $ 9,264,800.00 |
| interest | $ 93,956.04 | | | | |
| Water Lien | | | | | water/sewer included in tax lien |
| Sewer Lien | | | | | |
| Interest | | $ 213,584.21 | | | |
| Per Diem | | | 52.44 | | |
| 2019 Tax Title Lien | $ 103,133.80 | | | | $ 5,239,100.00 |
| interest | $ 64,197.28 | | | | |
| Water Lien | | | | | water/sewer included in tax lien |
| Sewer Lien | | | | | |
| interest | | | | | |
| No Income | $      250.00 | $ 167,581.08 | | | |
| Per Diem | | | 45.21 | | |
| 2020 Tax Title Lien | $ 102,963.48 | | | | $ 5,239,100.00 |
| interest | $ 48,068.54 | | | | |
| Water Lien | | | | | water/sewer included in tax lien |
| Sewer Lien | | | | | |
| interest | | | | | |
| No Income | $      250.00 | $ 151,282.02 | | | |
| Per Diem | | | 45.14 | | |
| 2021 Tax Title Lien | $ 55,915.95 | | | | $ 2,622,100.00 |
| interest | $ 17,108.72 | | | | |
| Water Lien | | | | | water/sewer included in tax lien |
| Sewer Lien | | | | | |
| interest | | | | | |
| No Income | $      250.00 | $ 73,274.67 | | | |
| Per Diem | | | 24.51 | | |
| 2022 RE | $ 36,885.70 | | | | $ 1,994,900.00 |
| interest | $ 11,075.82 | | | | |
| Water Lien | $      198.36 | | | | |
| Sewer Lien | $      208.44 | | | | |
| interest | $      268.00 | | | | |
| No Income | $      250.00 | $ 48,886.32 | | | |
| Per Diem | | | 16.17 | | |
| 2023 RE | $ 35,183.54 | | | | $ 2,082,000.00 |
| interest | $   4,935.33 | | | | |
| Water Lien | $      198.36 | | | | |
| Sewer Lien | $      208.44 | | | | |
| interest | $      236.26 | | | | |
| Per Diem | | | 15.42 | | |

No Income      $    250.00   $  41,011.94

$ 695,620.24    $  695,620.24

| | | |
|---|---|---:|
| NSTAR Lien | $ | 9,900.53 |
| Boston Board Up | $ | 14,438.55 |
| Ins. costs to date | $ | 109,882.92 |
| EverSource costs | $ | 2,757.92 |
| Appraisal | $ | 6,000.00 |
| Legal fees: KP Law thru 2/28/23 - tax title | $ | 24,110.75 |
| RFP | $ | 20,591.22 |
| Legal fees: Iris Leahy thru 4/28/23 tax title | $ | 34,027.47 |
| Filing fee | $ | 515.00 |
| withdrawal ?? | $ | 365.00 |
| recording fee?? | $ | 105.00 |
| | $ | 222,694.36 |

**GRAND TOTAL**   $ 918,314.60

** there could be additional charges in the days to come that could get added on, legal etc...

*Linda A. Smith*      5/3/2023
LINDA A SMITH                    DATE
TREASURER/COLLECTOR

COMMONWEALTH OF MASSACHUSETTS
Worcester, ss
On this 3rd day of May 2023 before me, the undersigned notary public, Linda Smith, Treasurer Collector personally appeared, provide to me through satisfactory evidence of identification, which were personally known to me, to be the person who signed the preceding or attached document in my presence and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge and belief.

_____(official signature and seal of notary public)

My Commission Expires: April 7, 2028



Westboro accepts $5M bid for cinema https://www.telegram.com/story/news/local/east-valley/2018/11/28/wes...



**telegram.com** | TELEGRAM & GAZETTE

---

EAST/VALLEY

# Westboro accepts $5M bid for cinema

**Elaine Thompson** elaine.thompson@telegram.com
Published 5:00 p.m. ET Nov. 28, 2018 | Updated 4:55 a.m. ET Nov. 29, 2018

WESTBORO – The Board of Selectmen has accepted a $5 million bid from a Walpole-based media corporation to purchase and operate a cinema at the long-vacant Regal Cinemas building on Route 9.

LAX Media LLC, which operates Apple Cinemas in Cambridge, and Waterbury and Barkhamsted, Connecticut, submitted the high bid of $5,005,005. Two other bids that included maintaining a movie theater on the property came from Grossman Development of Southboro for $4 million; and $3.1 million from Florida-based Cinema World of Florida, which operates Lincoln Mall 16 & Cinema World & Games in Lincoln, Rhode Island. The fourth and lowest bid, at $2.5 million, came from Black Socks Corp., based in Marlboro, which proposed building a regional grocery store on the site.

Selectmen held a short meeting Nov. 20 to award the bid to LAX Media. Chairman Leigh Emery said it offered the most advantageous economic benefit to the town.

The bid "is a million dollars over the nearest other proposal; it is above the appraised value; it closes 30-60 days earlier," Ms. Emery said. "It's a business model that we think fits best with our strategic planning that the Board of Selectmen has worked out the past six months or so and voted as a plan for moving forward for keeping our community a family-friendly town with recreation activities available for all age groups in an affordable fashion."

The 12-screen theater was the only cinema in town. It was built in 1997, on a 29-acre parcel at 231 Turnpike Rd. (Route 9) in Stagecoach Plaza. The theater abruptly closed its doors last fall, less than a month before the 20-year lease was to expire. The property is appraised at $4.79 million.

The town, however, has been unable to find the owner. The original landlord, Westboro

Westboro accepts $3M bid for cinema                                                                    https://www.telegram.com/story/news/local/east-valley/2018/11/28/wes...

SPE LLC, registered in Delaware, administratively dissolved and withdrew its registration to do business in Massachusetts in 2007. The limited liability company was an entity created by Babcock & Brown, an Australian company that went out of business in 2009. Westboro SPE's purchase loan on the property from U.S. Bank was satisfied around the time of the theater closing. The bank has said it does not have contact information for the landlord.

James Malloy, the former town manager who left in October to become town manager in Lexington, said the town will have to hold on to the money from the new owner for three years in case a claim is filed against the town. But he said that would not stop the selling and development of the property.

The new owner did not reply to an email asking about plans for renovations and when the cinema will open.

PLAINTIFF'S
EXHIBIT

## AFFIDAVIT

I, Shirin Everett, Esq., of Boston, and being counsel to the Town of Westborough, Massachusetts, having personal knowledge of the facts herein stated, under oath depose and say that:

1.  My firm, KP Law, P.C., is Town Counsel to the Town of Westborough, Massachusetts (the "Town").

2.  I was contacted on October 31, 2017 by Mr. James Malloy, the then-Town Manager, to discuss the property at 231 Turnpike Road, Westborough, MA and owned of record by Westborough SPE LLC (the "WSPE") by deed recorded with the Worcester South District Registry of Deeds in Book 19369, Page 75 (the "Property").

3.  The Town Manager informed me that the Property was formerly leased to and occupied by Regal Cinemas; that although Regal Cinemas wanted to extend the term of the Lease, Regal was unsuccessful in trying to locate WSPE, and therefore vacated the Property in November, 2017. Since Regal Cinemas paid taxes to the Town, the Town Manager said that taxes were unpaid since November, 2017, and was concerned about the condition of the Property if it fell into disrepair. The Town Manager asked what the Town could do to prevent the empty building on the Property from becoming vandalized and a blight to the neighborhood.

4.  The Town Manager informed me that the Town had made many attempts to locate WSPE. The Chief Assessor reviewed the Secretary of State's records, which showed that WSPE had a principal office c/o Babcock & Brown Administrative Services, Inc. ("Babcock") and that Babcock was WSPE's Manager. The Secretary's records indicated that Dyann Blaine and F. Jan Bluestein, having the same address as Babcock, could sign real estate documents on behalf of the Record Owner. WSPE was registered in Massachusetts as a foreign limited liability company in 1997, filed annual reports until 2006, and withdrew its Massachusetts registration in 2007 "because it is not doing business in the Commonwealth of Massachusetts." Similarly, Babcock was registered to do business in Massachusetts in 1997 and it too filed a Certificate of Withdrawal in 2008, stating that Babcock was no longer transacting business in Massachusetts. The Chief Assessor also learned through an internet search that Babcock Administrative Services may be affiliated to Babcock & Brown LP, an Australian firm, which went through a liquidation in 2009.

5.  The Town, through its Chief Assessor, contacted a representatives of Deloitte Financial Advisory Pvt. Ltd, which acted as a liquidator of Babcock & Brown LP and represented the holding company, who in turn directed the Town to contact Michael Larkin, the CEO

of Babcock & Brown International Pvt. Ltd, who in turn led the Town to Walter Horst, the CFO. These individuals stated that the entities they represented did not have an interest in the Property and they did not know WSPE's successors or assigns.

6.  We advised the Town Manager that if real estate taxes were not being paid, the Town could eventually acquire the title to the Property through a Land Court foreclosure process. We advised the Town as to the steps the Town needs to take to demand payment of WSPE, to record an Instrument of Taking after waiting the statutory 14-day period, and filing a petition to foreclose on the Property in Land Court.

7.  We advised the Town Manager that it could take 1-2 years to foreclose on its tax title and rights of redemption. The Town Manager, the Chief Assessor, and other Town officials were concerned that the building on the Property could suffer significant and immediate damage in the winter if the building was not heated.

8.  The Town considered whether the Town could obtain control of the Property sooner by exercising its eminent domain powers, as an eminent domain taking would vest title to the Town immediately following the recording of an Order of Taking provided that the Order of Taking identified parties who have an interest in the Property and the Order is recorded in the chain of title to the Property. The Town considered the purposes for which the Property would be taken (possibly for economic revitalization purposes) and the damages to be paid by the Town. In July, 2018, the Town retained an appraiser to value the Property. In its report of September 8, 2018, the Town's appraiser stated that the Property was valued at $4,790,000 as of August 3, 2018.

9.  The Town decided it would proceed on parallel tracks, one to acquire the Property through a tax taking and also to seek authorization to obtain the Property by eminent domain.

10.  A vote taken under Article 18 of the March 6, 2018 Annual Town Meeting, , authorized the Board of Selectmen to acquire the Property by eminent domain for economic revitalization and general municipal purposes, and appropriated the sum of $6,000,000 to pay damages for the Property and to pay for costs incidental or related thereto. It was the Town's intent that, should it take the Property by eminent domain rather than through the tax-foreclosure process, it would pay damages to WSPE or to any other entity or person that established that it owned the Property.

11.  On October 10, 2018, the Town Treasurer/Collector sent a letter to WSPE, c/o Babcock, as to the amount of outstanding taxes and informed WSPE that if taxes were not paid by October 26, 2018, the Town will place a lien on the Property.

12.  On January 16, 2019, the Town recorded an Instrument of Taking in Book 59943, Page 371, and the Town Treasurer/Collector promptly sent a demand letter to WSPE, c/o

Babcock, stating that the Town has recorded an instrument of taking, and directed WSPE to turn on the heat, pay outstanding sums to the utility company, and to take other steps to protect the Property from further deterioration.

13. Due to concerns about the condition of the Property, the Town acquired a temporary easement by Order of Taking recorded with the Registry on November 21, 2018 for the purpose of entering the building, turning on the heat, and taking other steps to protect the building from the elements. The Town took another temporary easement on the Property by Order of Taking recorded on January 14, 2019 to enter the property for the purpose of conducting surveys and other property inspections. Both Orders identified the parties having an interest in the Property as WSPE, Babcock, F. Jan Bluestein, and Dyanne Blaine. The Town sent a Notice of Taking dated March 18, 2019 addressed to WSPE and F. Jan Bluestein c/o Babcock at the San Francisco address, and to Dyann Blaine in Orinda, California. The Town did not receive any response.

14. By letter dated March 18, 2019, I informed WSPE of the temporary easements acquired by the Town and expressed the Town's interest in acquiring the Property. The letter, addressed to WSPE c/o Babcock, requested a response by April 3, 2019. No response was received.

15. The Town received a letter dated April 4, 2019 from Mr. Joseph Scarcella, of Johnson Winter & Slattery, a firm located in Sydney, Australia, stating that the firm represented David Howe, the liquidator of Babcock & Brown Limited (In Liquidation), the successor in title to Babcock, and asked if the Town owed the Property. By letter dated April 11, 2019, I informed Mr. Scarcella that the Town does not own the Property but, rather, has a lien on the Property for outstanding taxes. By follow-up letter dated May 6, 2019, I informed Mr. Scarcella of the amount of taxes owed, the Town's lien on the Property, the taking of the temporary easements, and asked that Babcock & Brown Limited (In Liquidation) inform the Town if it had any rights in the Property. By letter dated June 25, 2019, Mr. Scarcella again asked if the Town had acquired the Property.

16. The Town filed a complaint with the Land Court on July 8, 2019 to foreclose on the tax lien, notice of which was recorded with the Registry on July 24, 2019 in Book 60751, Page 221.

17. The Town recorded another Order of Taking on January 31, 2020, taking temporary easements in the Property for the purpose of turning on the heat and taking other steps to protect the Property from the elements.

18. To date, the Town has not heard from WSPE or received notice from any party claiming to own the Property. The Town has not exercised its eminent domain powers.

Signed under the penalties of perjury this 14th day of May, 2020.

Shirin Everett, Esq.
KP Law, P.C., Town Counsel

COMMONWEALTH OF MASSACHUSETTS

Suffolk , ss.

On this 14th day of May, 2020, before me, the undersigned notary public, personally appeared Shirin Everett, who proved to me through satisfactory evidence of identification, which was _personal knowledge_, to be the person whose name is listed above, and acknowledged to me that she signed the foregoing instrument voluntarily for its stated purpose as Town Counsel for the Town of Westborough.

Notary Public
My Commission Expires:

713726/WBOR/0027



## COMMONWEALTH OF MASSACHUSETTS
### TRIAL COURT
### LAND COURT DEPARTMENT

**TAX LIEN CASE NO: 19 TL 000768**

TOWN OF WESTBOROUGH          )
      **Plaintiff**          )
   v.          )
                )
WESTBOROUGH SPE, LLC, et al.          )
      **Defendant**          )

> **PLAINTIFF'S EXHIBIT**
> D

### WAIVER OF NOTICE AND ASSENT TO THE ENTRY OF JUDGMENT

I, _____ Peter Blaustein _____, as

Party of Interest by and/or through a Power of Attorney, as Court-Appointed Guardian, and as Conservator for F. Jan Blaustein a/k/a Jan Blaustein Scholes, in the above-referenced tax lien case, hereby waives her right to notice and assents to the previous entry of judgment with regards to the parcel listed below:

DESCRIPTION OF PROPERTY:

PROPERTY: Land and any building(s) thereon     CONTAINING: 29.336 AC (more or less)
LOCATION: 231 Turnpike Road
ASSESSORS: 32-48-0
REGISTRY: Worcester District Registry of Deeds Book 19369, Page 75

WHEREFORE, I respectfully move this Honorable Court to enter an order allowing this waiver of notice and assent to the entry of judgment in favor of the Plaintiff.

Dated: _May 3, 2023_

Respectfully submitted by

_Peter Blaustein_
Printed Name                Title

_____
Signature

State of California, County of San Mateo )ss.
On _May 3rd_, 20 23 before me Dina N. Kolesnikov,
Notary Public, personally appeared _Peter Blaustein_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument. I certify under
PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct. WITNESS my hand and official seal.
Notary Signature _____

> DINA N. KOLESNIKOV
> COMM. #2386495
> Notary Public - California
> San Mateo County
> My Comm. Expires Dec. 12, 2025

# UNITED STATES DISTRICT COURT

for the

## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **WESTBOROUGH SPE LLC** | |
| *Plaintiff* | Civil Action No.: |
| v. | **1:23−CV−12017−MJJ** |
| **TOWN OF WESTBOROUGH, ET AL.** | |
| *Defendant* | |

# SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) −−− or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) −−− you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

*CLERK OF COURT*

 **/s/ − Savannah Cook**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2023−08−31 14:16:19**, Clerk USDC DMA

Civil Action No.: **1:23–CV–12017–MJJ**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____
Date

_____
*Server's Signature*

_____
*Printed name and title*

_____
*Server's Address*

Additional information regarding attempted service, etc:

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Westborough SPE LLC, a Delaware limited liability company. | TOWN OF WESTBOROUGH, a municipal corporation of The Commonwealth of Massachusetts. |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott A. Schlager, BBO#695421
Nathanson & Goldberg, P.C.,183 State Street, 5th Floor
Boston, MA 02109 | (617) 909-4511

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [x] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1331; 42 U.S. Code §§ 1983 and 1988; 42 U.S.C. §§ 1985(2) and 1986; 8 U.S.C. § 1343(a)(2); 28 U.S.C. § 2201(a); 28 U.S.C. § 2202

Brief description of cause:
Plaintiff seeks to vindicate its constitutional and common law rights and redress unlawful actions that have deprived Plaintiff of 100% of real property

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
$5,000,000.00+

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Aug 31, 2023 | /s/ Scott A. Schlager |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 398 (Rev. 12/93)

# NOTICE OF LAWSUIT AND REQUEST FOR
# WAIVER OF SERVICE OF SUMMONS

TO:  (A)  _____

as    (B)  _____  of (C)  _____

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed).  A copy of the complaint is attached to this notice.  It has been filed in the United States District Court for the
(D)  _____  District of  _____
and has been assigned docket number (E)  _____ .

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint.  The cost of service will be avoided if I receive a signed copy of the waiver
within (F)  _____ days after the date designated below as the date on which this Notice and Request is sent.  I enclose a stamped and addressed envelope (or other means of cost-free return) for your use.  An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you.  The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service.  In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this  _____ day of _____ , _____ .

*Scott A. Schoyer*
_____
Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—District
E—Docket number of action
F—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

AO 458 (Rev. 06/09)  Appearance of Counsel

# UNITED STATES DISTRICT COURT
### for the
District of Massachusetts

| | | | |
|---|---|---|---|
| Westborough SPE LLC | ) | | |
| *Plaintiff* | ) | | |
| v. | ) | Case No. | 1:23-12017 |
| Town of Westborough | ) | | |
| *Defendant* | ) | | |

## APPEARANCE OF COUNSEL

To:     The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Westborough SPE LLC                                                                                      .

Date:    08/31/2023                                           /s/ Scott A. Schlager
                                                              *Attorney's signature*

                                                    Scott A. Schlager, BBO#695421
                                                     *Printed name and bar number*
                                                     Nathanson & Goldberg, P.C.
                                                      183 State Street, 5th Floor
                                                     Boston, Massachusetts 02109

                                                              *Address*

                                                        sas@natgolaw.com
                                                         *E-mail address*

                                                         (617) 909-4511
                                                        *Telephone number*

                                                         (617) 210-4824
                                                          *FAX number*

# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | | |
|---|---|---|
| **WESTBOROUGH SPE LLC**, a Delaware limited liability company, | : | Civil Action #: |
| | : | _____ |
| *Plaintiff.* | : | |
| v. | : | |
| **TOWN OF WESTBOROUGH**, *a municipal corporation of The Commonwealth of Massachusetts*; **SHELBY MARSHALL**, *individually and in the official capacity as Select Board Member*; **IAN JOHNSON**, *individually and in the official capacity as Select Board Member*; **ALLEN EDINBERG**, *individually and in the official capacity as Select Board Member*; **SEAN KEOGH**, *individually and in the official capacity as Select Board Chair*; **PATRICK WELCH**, *individually and in the official capacity as Select Board Vice-Chair*; **PETER BLAUSTEIN**, *individually,* | : : : : : : : : : : : : : : : : | |
| Defendants. | : | **JURY TRIAL DEMANDED** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## NOTICE OF STATUTORY ATTORNEY LIEN BY NATHANSON & GOLDBERG, P.C.

Pursuant to M.G.L. Chapter 221, § 50, notice is hereby given that counsel for Westborough SPE LLC seeks to recover legal fees and costs in connection with the representation of the Plaintiff in the above-captioned lawsuit in the United States District Court.

This lien applies to any amount payable to the Plaintiff, or to its successors-at-law, out of the total recovery or recoveries collected or to be collected, whether by judgment, settlement, or

compromise, from the liable person/people or his/her/their insurer under the above-captioned matter.

"The attorney's lien statute, M.G. L. c. 221, § 50, provides 'attorneys [with] a statutory right to assert a charging lien securing compensation for their legal services.'" *Northeastern Avionics, Inc. v. Westfield*, 63 Mass. App. Ct. 509, 512 (2005), *quoting Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 244 (1993). As "a tool for recovery of legal fees," *Boswell*, supra at 248, the statute is designed to protect "a lawyer's labor in the client's cause." *Cohen v. Lindsey*, 38 Mass. App. Ct. 1, 5 (1995).

At the conclusion of this case or upon request of this Court, Nathanson & Goldberg, P.C. will submit a sworn affidavit of the amounts owed along with copies of the invoices. As of August 31, 2023, $37,601.50 has been incurred to date in legal fees plus $402.00 in filing fees.

Signed under the pains and penalties of perjury this 31st day of August, 2023.

NATHANSON & GOLDBERG, P.C.

*/s/ Scott A. Schlager*

_____
Scott A. Schlager, BBO#695421
NATHANSON & GOLDBERG, P.C.
183 State Street, 5th Floor
Boston, MA 02109
Tel:    617-909-4511
Fax:   617-210-4824
sas@natgolaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS (WORCESTER)

Case # 4:23-cv-12017-MRG

WESTBOROUGH SPE LLC,                    )
                                        )
                    Plaintiff,          )
v.                                      )
                                        )
TOWN OF WESTBOROUGH                     )
et als.                                 )
                                        )
                    Defendant.          )
                                        )

## SUGGESTION OF BANKRUPTCY

An Involuntary Petition under Chapter 7 of the United States Bankruptcy Code has been filed with the United States Bankruptcy Court for the District of Massachusetts as of 10:32 AM Eastern Time on Thursday, August 31, 2023 that has been assigned case number 23-40709 and suggests that this action has been stayed by the operation of Title 11 U.S.C. § 362.

The undersigned certifies that a copy hereof has been furnished to counsel of record via the electronic filing system on August 31, 2023.

**I declare under penalty of perjury that the foregoing is true and correct**.

DEFENDANT WESTBOROUGH SPE LLC,

By its attorneys,

*/s/ Scott A. Schlager*

_____
Scott A. Schlager, BBO#695421
NATHANSON & GOLDBERG, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
Tel:    617-909-4511 | Fax:   617-210-4824 | sas@natgolaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Scott A. Schlager, Esq. hereby certify that a copy of the above Suggestion of Bankruptcy was served electronically to all parties of record via the ECF filing system on Thursday, August 31, 2023.

**<u>/s/ Scott A. Schlager, BBO#695421</u>**