UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

| In re:<br><br>WESTBOROUGH SPE LLC | TOWN OF WESTBOROUGH'S MOTION FOR RELIEF FROM AUTOMATIC STAY AND OPPOSITION TO APPOINTMENT OF A BANKRUPTCY TRUSTEE |
|---|---|

      The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby moves the Court for an order providing relief from the automatic stay provisions of 11 U.S.C. § 362(a) to the extent those provisions stay the cases of Town of Westborough v. Westborough SPE, LLC, et al. (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action") and Westborough SPE, LLC v. Town of Westborough, et al. (D. Mass. No. 4:23-cv-12017-MRG) (the "Civil Action").  As set forth below, the former is a tax title foreclosure action between the Town and the Debtor currently underway in the Massachusetts Land Court, in which judgment had already entered against the Debtor long before the commencement of this bankruptcy proceeding, but which judgment the Debtor was seeking to vacate.  The latter is an action the Debtor filed—through the law firm listed as a petitioning creditor here—in U.S. District Court on the very same day that creditor (and another) commenced this involuntary Chapter 7 proceeding.

      For the reasons discussed herein, if either action (or both) is covered by the automatic stay, relief is appropriate to allow the actions to proceed so as to allow the Town to dispose of the property subject to the Tax Foreclosure Action through a long-awaited sale and to deposit the surplus proceeds into the court for the Debtor (or anyone else claiming a right to them, including the Debtor's apparent former owners) to claim in light of Tyler v. Hennepin County, 598 U.S. 631

1

(2023). For those same reasons, the Town opposes the appointment of a bankruptcy trustee with respect to disposition of that property, including an interim trustee as requested by the Debtor's Motion to Appoint Interim Trustee (Doc. No. 10).[1]

## BACKGROUND

In 1997, the Debtor acquired real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"). The Debtor withdrew from doing business in Massachusetts in 2007 and was administratively dissolved in 2014 for failure to pay taxes in the State of Delaware. See Exhibits A (MA Certificate of Withdrawal) and B (DE Administrative Dissolution). Notwithstanding the dissolution of the Debtor, the lessee of the Property (Regal Cinemas) continued to lease the Property and pay property taxes to the Town. See Declaration of Kristi Williams ("Williams Decl.") at ¶ 5. However, when the lease expired in late 2017, the lessee vacated the Property and stopped making tax payments. See id. at ¶ 6. Subsequently, property taxes on the Property accrued, and at the Town's Annual Town Meeting in March 2018, Town Meeting voted to authorize the Town to acquire and dispose of the Property. See id. at ¶ 7; Exhibit C (2018 ATM Results) at pp. 13-14. As noted in the Town Manager's Statement for the article in question, the Town intended to act proactively "to ensure that the [Property] does not become a blight to the neighborhood … because of neglect, vandalism and/or exposure to the elements" and "to put the [Property] to productive use and to contribute again to the Town's tax revenue." See id. Unfortunately, as discussed below, the Town's efforts have been hampered, in large part due to the actions of the Debtor and its counsel.

---

[1] The Town was not served with a copy of the Debtor's motion when it was filed on September 11, 2023.

After the March 2018 Town Meeting vote, the Town issued a Request for Proposals to sell the Property.  See Williams Decl. at ¶ 8.[2]  The Town's Select Board voted to accept the proposal of Lax Media LLC ("Lax Media") on November 20, 2018, issued a notice of award to Lax Media on November 28, 2018, and notified the other bidders of the Town's selection on December 3, 2018.  See id. at ¶ 9.  On December 28, 2018, the Town recorded an instrument of taking on the Property and all improvements thereon pursuant to G.L. c. 60, §§ 53-54 as a result of unpaid FY2018 taxes in the amount of $106,944.99.  See Exhibit D (Instrument of Taking).  Subsequently, the Town incurred certain costs of insuring, securing, and maintaining the Property.  See Williams Decl. at ¶ 10.  The Town is also responsible, to the extent provided by G.L. c. 60, § 77, for payment of a portion of common area maintenance and snow removal to The MobileStreet Trust, the owner of two abutting parcels that, with the Property, are all subject to a Declaration of Reciprocal Covenants, Easements and Restrictions (the "Reciprocal Agreement").  See Exhibit E (Reciprocal Agreement) at § 3.1.

On or about April 3, 2019, the Town Manager's office received an email from an attorney representing the successor-in-interest of Babcock and Brown Administrative Services, Inc. ("Babcock & Brown"), the company that had been the Debtor's manager, requesting information concerning the Property and indicating their client may have a claim to the Property.  See Williams Decl. at ¶ 11.  The Town elected not to proceed with its acquisition of the Property at that time in light of the potential claim to the Property and identification of a party that may be able to pay the outstanding tax liabilities on the Property.  See id. at ¶ 12.  On April 30, 2019, the Select Board

---

[2] The RFP provided that "Proposers are advised that the Town intends to acquire title to the Premises prior to or simultaneously with the closing.  The Board of Selectmen has been authorized by Town Meeting to acquire the Premises."

3

voted to authorize Town Counsel to terminate the pending purchase and sale agreement with Lax Media. See id. at ¶ 13.

However, neither Babcock & Brown nor its successor-in-interest paid off the outstanding taxes on the Property. See Williams Decl. at ¶ 14. As a result, since six months had passed after the Town's recording of the instrument of taking without the Debtor redeeming the Property, the Town commenced the Tax Foreclosure Action in the Massachusetts Land Court on July 8, 2019 to foreclose the Debtor's right of redemption. See Exhibit F (Tax Foreclosure Complaint). On January 5, 2022, the Land Court entered judgment in favor of the Town and against the Debtor.[3] See Exhibit G (Tax Foreclosure Judgment).

On May 26, 2022, the Town issued a new request for proposals for the purchase and redevelopment of the Property. See Williams Decl. at ¶ 15. The Town received three proposals, including one from Lax Media. See id. at ¶ 16. Lax Media offered a purchase price of $2,500,001, which was higher than the estimated fair market value of the Property ($2,082,000). See id. at ¶ 17.[4] The Town's Select Board evaluated the proposals based on five categories and selected Lax Media's proposal, which received the score of "highly advantageous" in three categories and "advantageous" in the remaining two. See id. at ¶ 18.[5]

---

[3] Thus, the Land Court judgment issued more than a year before the U.S. Supreme Court's May 2023 decision in Tyler, discussed further below.

[4] The Debtor's Schedule A/B (Doc. No. 8) lists a purported current value of $7,942,000 for the Property, based upon the highest bid that the Town received. As a Massachusetts Superior Court judge noted in a related proceeding to which the Debtor is not a party, that bid sought "to raze the existing structure and build 108 condominium units," which was not feasible because "[t]here was a moratorium on additional water and sewer connections in Westborough due to capacity constraints that [the bidder] would have to overcome." See Memorandum of Decision and Order on Plaintiff's Motion for Preliminary Injunction, at pp. 2-3, Ferris Development Group, LLC v. Town of Westborough, et al., No. 2285CV02181 (Mass. Superior Ct. Jan. 13, 2023); see also, infra, note 5. The Town rejected the highest bid because the water moratorium precluded the proposed development.

[5] In November 2022, one of the other bidders filed suit against the Town and Lax Media in Massachusetts Superior Court for breach of implied contract, declaratory judgment, and injunctive relief as a result of the Town's awarding the bid to Lax Media. See Ferris Development Group, LLC v. Town of Westborough, et al., Mass. Superior Court Case No. 2285CV01281. The Superior Court denied the plaintiff's motion for preliminary injunction, finding that plaintiff failed to show a likelihood of success on the merits. Memorandum of Decision and Order on Plaintiff's

On December 22, 2022, the Debtor (under the purported control of two new managers) applied for registration to do business in Massachusetts. See Exhibit H (Application for Registration). On January 4, 2023—which was one day short of the first year anniversary of the issuance of the judgment entered in the Tax Foreclosure Action and the final day to petition to vacate the judgment (see G.L. c. 60, § 69)the Debtor filed a motion with the Land Court to vacate the judgment. See Exhibit I (Motion to Vacate).[6] The Town opposed the motion to vacate[7] for various reasons, including the significant questions that the Town had regarding the ownership and identity of the Debtor, including whether the individuals purporting to own the Debtor and advancing the motion to vacate (Lolonyon Akouete and Denise Edwards) had actually acquired the Debtor, much less any interest in the Property. After several extensions, the Land Court was prepared to hold an evidentiary hearing "to determine whether Westborough SPE, LCC [sic], having appeared in this case, is the taxpayer who has the right to redeem the subject property" and a pre-hearing conference was scheduled for August 31, 2023 to determine the hearing schedule. See Exhibit J (Land Court Docket) at May 16, 2023 entry.

Lax Media has been holding its bid firm and keeping its terms in place pending the outcome of the Tax Foreclosure Action. See Williams Decl. at ¶ 19. Despite the Town's efforts to secure and maintain the Property since the time that Regal Cinemas vacated it, the Property has been vandalized and has experienced burst pipes. See id. at ¶ 20. The Debtor does not dispute the condition of the property and, in fact, explicitly references the deterioration of the Property in its

---

Motion for Preliminary Injunction, at pp. 9-11, Ferris Development Group, LLC v. Town of Westborough, et al., No. 2285CV02181 (Mass. Superior Ct. Jan. 13, 2023). As the Debtor is not a party to the Superior Court action, that action is not subject to the automatic stay.

[6] Although the Debtor is a limited liability company, its motion was not signed by an attorney, which is impermissible under Massachusetts law. See Dickey v. Inspectional Servs. Dep't of Boston, 482 Mass. 1003, 1004 (2019).

[7] As noted therein, the tax title account balance on the Property as of the date of the Town's opposition was $638,755.20, exclusive of expenses incurred under the Reciprocal Agreement.

5

motion for appointment of a trustee. See Doc. No. 8 at p. 1 & Ex. 1. As of May 3, 2023, the Town's tax title account for the Property reflects an amount of $918,314.60 due to the Town, exclusive of expenses under the Reciprocal Agreement. See id. at Ex. 2.

On August 31, 2023, petitioner Nathanson & Goldberg, P.C. (which has represented the Debtor in the Tax Foreclosure Action since February 22, 2023) and The MobileStreet Trust (which is the other party subject to the Reciprocal Agreement) filed an involuntary Chapter 7 petition against the Debtor, commencing these proceedings. The Land Court cancelled the pre-hearing conference on the Debtor's motion to vacate, which was scheduled for 2:00 pm that same day, and ordered the Debtor to file a status report by October 31, 2023 (with additional status reports due every 60 days thereafter). See Exhibit J (Land Court Docket) at August 31, 2023 entry.

On the same day (August 31, 2023), the Debtor—through Nathanson & Goldberg, P.C. (one of the petitioners here)—commenced the Civil Action. In the Civil Action, the Debtor seeks declaratory relief and other relief relating to the surplus proceeds of the Town's sale of the Property (which has not occurred because of the Debtor's actions in the Tax Foreclosure Action) under Tyler. See Exhibit K (Civil Action Complaint). The Debtor also filed a suggestion of bankruptcy in the Civil Action on August 31, 2023. See Exhibit L (Civil Action Suggestion).

**ARGUMENT**

I. **RELIEF FROM THE STAY IS APPROPRIATE TO ALLOW THE TOWN TO BRING THE TAX FORECLOSURE ACTION TO A CONCLUSION**

   A. **Relief for Cause Is Warranted**

There is cause under 11 U.S.C. § 362(d)(1) to relieve the Town from the automatic stay with respect to the Tax Foreclosure Action (and the Civil Action, should the Court find that the stay applies). The Bankruptcy Code does not provide a definition of what constitutes "cause," and therefore, courts have discretion to determine when relief is appropriate on a case-by-case basis.

6

In re Hurvitz, 554 B.R. 35, 40 (Bankr. D. Mass. 2016).  Courts consider three factors to determine "whether cause exists to lift the automatic stay to permit the continuation of pending litigation," namely "(1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of a civil suit; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor; and (3) whether the creditor has a probability of prevailing on the merits of his case."  Id. (formatting and quotations omitted).

Here, all three factors weigh heavily in favor of lifting the automatic stay for the Town.  Permitting the Tax Foreclosure Action to proceed will not prejudice the Debtor or the bankruptcy estate because the Property is not an asset of the estate and one of the creditors represents the Debtor in that action.  On the other hand, the Town will suffer great hardship as a result of the stay, as it will be unable to bring the tax recovery process (which started in 2018) to a conclusion, return the Property to the tax rolls and productive use, and cease incurring significant expenses to maintain the Property.  Finally, the Town has a strong probability of prevailing in the Tax Foreclosure Action, as it has already obtained judgment in its favor and the Debtor's motion to vacate that judgment rests on extremely dubious grounds, both procedurally (having been brought by an unrepresented LLC) and substantively (given the questions surrounding the Debtor's ownership and the fact that the Town provided the Debtor sufficient notice in line with the applicable statutes and the Land Court's directions).

The conduct of the Debtor and the Debtor's litigation counsel, one of the petitioners here, has caused the Town to lose municipal revenue and to incur unnecessary expense.  The Town has not received real estate tax or water/sewer fees on the Property since 2017.  With interest, this amounts to $695,620.24 due and owing to the Town as of May 3, 2023.  See Doc. No. 8 at Ex. 2.  This lack of payment establishes that the Town is not adequately protected, justifying relief from

7

the stay. See McCullough v. Horne (In re McCullough), 495 B.R. 692, 695-696 (Bankr. W.D.N.C. 2013) (history of lack of prepetition payments to creditor combined with insufficient postpetition payments left creditor inadequately protected). Additionally, since the tax taking in 2018 and, in particular, since the Land Court entered judgment foreclosing the Debtor's right of redemption in January 2022, the Town has incurred significant costs to maintain the Property. See Doc. No. 8 at Ex. 2. For example, the Town has expended over $109,000 to insure the Property. See id. The Town has also paid almost $15,000 to board the Property and over $10,000 in utility costs, despite the fact that the building on the Property is vacant. See id. Additionally, the Town is responsible, to the extent provided by G.L. c. 60, § 77, to The MobileStreet Trust for payment of a portion of common area maintenance and snow removal under the Reciprocal Agreement. The Town continues to bear these costs and will continue to do so until it sells the Property, thereby recouping the outstanding tax title balance inclusive of expenses.[8]

That sale cannot happen until the Land Court adjudicates the Debtor's motion to vacate in the Tax Foreclosure Action. Absent the delays caused by the Debtor and the Debtor's litigation counsel, the Land Court could have disposed of the Debtor's motion to vacate long ago. Assuming that the Land Court denied that motion and allowed the Town's judgment to stand, the Town could have consummated the sale of the Property. Instead, that sale has been—and continues to be—delayed as a result of the Debtor's actions. Indeed, the involuntary petition in this matter, filed on behalf of the Debtor's Land Court counsel (Nathanson & Goldberg) mere hours before the Land Court pre-hearing conference on the motion to vacate in the Tax Foreclosure Action (at which it

---

[8] The Town has also spent $6,000 to have the Property appraised, over $20,000 preparing the RFPs on the Property, and almost $60,000 in legal fees for the tax title matter. See Doc. No. 8 at Ex. 2.

was expected that the Court would establish the hearing schedule), was a desperate attempt to delay the Land Court conference.

These delays have been made all the more glaring in light of the Debtor's filings in the Civil Action. Although the Debtor spent the past eight months contesting the Town's right to sell the Property in the Land Court, the Debtor now asks the U.S. District Court to hold that surplus sales proceeds from the Town's sale of the Property belong to Debtor under Tyler. Specifically, the Debtor alleges that it demands payment of surplus proceeds "[u]pon any sale of the Property by the Town." See Ex. K at ¶ 107. The Debtor continues by alleging that it "is entitled to a declaration that if the Town … sells the [Property] that [the Debtor] is entitled to the difference between the amount owed and what the property sells for." Id. at ¶ 109.[9]

Allowing the Tax Foreclosure Action to proceed is not inconsistent with the purposes of the automatic stay. The stay is designed to allow "debtors to resolve their debts in a more orderly fashion, ... and at the same time safeguard[] their creditors by preventing 'different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets.'" Heaney v. Lamento (In re Whiz Kids Dev., LLC), 576 B.R. 731, 760 (Bankr. D. Mass. 2017), quoting Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997). The Tax Foreclosure Action has nothing to do with capturing the debtor's assets, however.

Rather, the Tax Foreclosure Action was a statutory action by which the Town sought to foreclose the Debtor's right of redemption in the tax title to the Property (see G.L. c. 60, § 65) in

---

[9] As the Sixth Circuit recently recognized, "the Supreme Court has [never] held that a plaintiff whose property is foreclosed and sold at a public auction for failure to pay taxes is entitled to recoup the fair market value of the property," and Tyler does not change that. Freed v. Thomas, --- F.4th ----, 2023 WL 5733164, at *2 (6th Cir. Sept. 6, 2023). Thus the Debtor's claims in the Civil Action relating to the alleged fair market value of the Property are misplaced, even if the Debtor (or whomever properly "owns" the Debtor) is entitled to the difference between the sale price and the tax title account balance.

9

order to permit the Town to recover the tax title balance (caused by the Debtor's failure to pay taxes on the Property) through a sale to a third party. As the Supreme Judicial Court has explained, "[w]hen a tax collector conducts a tax taking, … the municipality obtains 'tax title' to the property, which is best understood as legal ownership of the property subject to the owner's right of redemption." Tallage Lincoln, LLC v. Williams, 485 Mass. 449, 451 (2020). Because the Land Court had entered judgment in favor of the Town and against the Debtor foreclosing the right of redemption prior to the filing of the bankruptcy petition, the Debtor did not own the Property at the time of the filing of the bankruptcy action (assuming that the Debtor, in its current form with questionable ownership of the LLC, had any ownership interest in the Property to begin with). See id. at 452 ("Upon entry of such judgment, the municipality … takes absolute title to the property."). As the SJC has explained, a tax title foreclosure "extinguishes the taxpayer's remaining interest in the property—the right of redemption—and converts the municipality's … tax title into absolute title … free and clear of all encumbrances, including mortgages and other liens," such that "the taxpayer loses any equity he or she has accrued in the property, no matter how small the amount of taxes due or how large the amount of equity." Id. at 452-453.[10]

Thus, permitting the Land Court to bring that action to final resolution by adjudicating the Debtor's motion to vacate the foreclosure judgment will neither imperil the Debtor's assets nor the rights of other creditors. Allowing a creditor relief from the automatic stay to proceed with its state law remedies under such circumstances is entirely appropriate. See Bushnell v. Bank of the West (In re Bushnell), 469 B.R. 306, 309-310 (B.A.P. 8th Cir. 2012) (affirming lifting of stay to

---

[10] This is now modified by Tyler, which held that "a taxpayer is entitled to the surplus in excess of the debt owed" when real property is taken and sold pursuant to a tax title statute. See 598 U.S. at 642. Nevertheless, the Debtor's potential right to the surplus of proceeds from the sale of the Property (which the Town questions given its concerns about the present ownership of the Debtor) does not give it equity in the Property itself. Thus, the Land Court should be allowed to conclude the Tax Foreclosure Action so that the Town can sell the Property and deposit the surplus proceeds into the court (potentially in the Civil Action) for determination of who is entitled to those surplus proceeds.

10

allow bank holding foreclosure deed to evict debtor that had improperly reentered property). As the Land Court has spent the past several years presiding over the disposition of the Property and, absent the stay, will soon conclude that action, there is no benefit to anyone in having the issue transferred to this Court and incurring additional legal expense as a result of the automatic stay.

Indeed, this Court has provided relief from the automatic stay to allow similar proceedings to conclude post-petition, even where the Town had not yet succeeded in obtaining judgment foreclosing the debtor's right of redemption. See In re Tomaselli, No. 14-10736-JNF, 2014 WL 4322404, at *5 (Bankr. D. Mass. Aug. 29, 2014). As Judge Feeney explained in Tomaselli, the "[Bankruptcy] Court is not the appropriate forum for the Debtor to raise specialized state law issues involving betterment liens and tax liens that have been the subject of prior rulings in other courts," such as the Land Court. Id. at *7. Given that the Town here has obtained judgment foreclosing the Debtor's right of redemption, and the only thing left for the Land Court to do in the Tax Foreclosure Action is to adjudicate the Debtor's dubious motion to vacate, the reasoning of Tomaselli applies even more so here.

Cause for relief from stay is not limited to a lack of adequate protection or a finding of bad faith motive for filing the bankruptcy case. In re Shady Grove Tech Ctr. Assocs. Ltd. P'shp, 216 B.R. 386, 388 (Bankr. D. Md. 1998) (internal quotations and citations omitted). Here, cause exists to grant the Town relief from the automatic stay to the extent it applies to the Tax Foreclosure Action and the Civil Action.

### B. Relief Is Appropriate Because the Debtor Has No Equity in the Property

The Court may also lift the automatic stay "with respect to ... an act against property … if the debtor does not have an equity in such property; and … such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). As discussed above, whatever equity the Debtor ever had or has in the Property was extinguished on January 5, 2022 when the Land Court entered

11

judgment in the Tax Foreclosure Action. Although the Debtor seeks to vacate that judgment, until such time as the judgment is vacated (which cannot happen while the stay is in effect with respect to the Tax Foreclosure Action), the Debtor lacks any equity or ownership interest in the Property.

Indeed, because the Debtor's right of redemption on the Property was foreclosed and absolute title to the Property transferred to the Town prior to the commencement of this proceeding, the Property itself is not even part of the Debtor's bankruptcy estate, such that the stay should not apply to the Property at all. See U.S. Bank, N.A. v. Vertullo (In re Vertullo), 610 B.R. 399, 404 (B.A.P. 1st Cir. 2020) ("For property to be protected by the automatic stay, it must be property of the bankruptcy estate."). Nor does the fact that the Debtor may have a pending petition pursuant to G.L. c. 60, § 69, or an interest in any surplus sale proceeds under Tyler change the fact that the Debtor lacks equity in the Property itself. Finally, the Property is not necessary for reorganizing the Debtor as this is not a Chapter 11 proceeding. Thus, the Court should also lift the stay under subsection (d)(2).

C. **Relief for Single Asset Real Estate Is Warranted**

Additionally, relief from the stay should be granted to the Town pursuant to 11 U.S.C. § 362(d)(3) because the Town's claim concerns a single asset real estate. Under the Bankruptcy Code, the term "single asset real estate" means "real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental." 11 U.S.C. § 101(51B). The Property meets this definition, as

it appears that the Property (which is commercial real estate) was the sole income-generating asset of the Debtor prior to its administrative dissolution.[11]

Under subsection (d)(3), the Court may provide relief "with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless" the Debtor "has commenced monthly payments that … are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate" within 90 days of the order of relief. 11 U.S.C. § 362(d)(3).[12] Relief from the automatic stay for single asset real estate may be granted in Chapter 7 cases, such as this one, where the debtor has not made interest payments to a secured creditor within 90 days.[13] See Suntrust Bank v. Global One, L.L.C. (In re Global One, L.L.C.), 411 B.R. 524, 528-529 (Bankr. S.D. Ga. 2009). As discussed above, it is undisputed that the Debtor has not paid the Town interest on the tax lien (much less the principal) for several years and has not established any ability (or legal right) to make such payments going forward should the Court enter an order of relief pursuant to 11 U.S.C. § 303(h). Thus, relief from the stay is appropriate under subsection (d)(3), as well.

## II. THE STAY DOES NOT APPLY TO THE DEBTOR'S CIVIL ACTION

The automatic stay provisions of 11 U.S.C. § 362 typically apply to "judicial, administrative, or other action[s] or proceeding[s] against the debtor." 11 U.S.C. § 362(a)(1)

---

[11] In its schedules, the Debtor lists the Property as its sole asset exclusive of an unspecified unclaimed checking account in California. See Doc. No. 8 at p. 7-8. Although the Debtor states that it is the "Owner" of the Property in its schedules, as discussed above, absolute title to the Property transferred to the Town upon the Land Court's entry of judgment in the Tax Foreclosure Action.

[12] Interest accrues on a municipal tax title account at a rate of 14% per annum from delinquency to taking and a rate of 16% per annum after taking. G.L. c. 59, § 57; G.L. c. 60, § 62.

[13] Although the statute allows a debtor to avoid such relief from the stay by alternatively filing "a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time" within the 90-day period, such alternative does not apply in a Chapter 7 proceeding. See 11 U.S.C. § 362(d)(3)(A).

13

(emphasis added); see, e.g., id. § 362(a)(2) (staying "the enforcement, against the debtor or against property of the estate, of a judgment"); id. §§ 362(a)(4)-(5) (staying acts "to create, perfect, or enforce" liens against property of the estate or the debtor). The automatic stay thus "does not freeze litigation where the debtor is the plaintiff." Worth v. Tamarack Am., Div. of Great Am. Ins. Co., 47 F. Supp. 2d 1087, 1099 n.9 (S.D. Ind. 1999); see 4Kids Entertainment, Inc. v. Upper Deck Co., 797 F. Supp. 2d 236, 241 (S.D.N.Y. 2011) ("automatic stay does not extend to claims brought by the debtors against other parties"); cf. Roberts v. C.I.R., 175 F.3d 889, 894-896 (11th Cir. 1999). As the First Circuit has explained, the filing of a bankruptcy petition "has absolutely no effect on the debtors' ability to bring suit against other parties." DiMaio Family Pizza & Luncheonette, Inc. v. The Charter Oak Fire Ins. Co., 448 F.3d 460, 463 (1st Cir. 2006); see Pinpoint IT Servs., LLC v. Atlas IT Export, LLC (In re Atlas IT Export, LLC), 491 B.R. 192, 195 (B.A.P. 1st Cir. 2013) (noting that "claims asserted by the debtor may continue" no matter how closely related to stayed claims against the debtor).

The automatic stay thus does not apply to the Civil Action. The Debtor brought the Civil Action against the Town. Regardless of how related the Debtor's claims may be to the issues being litigated in the Tax Foreclosure Action (as discussed above), the commencement of this involuntary bankruptcy proceeding does not stay the Civil Action.

**III.    APPOINTMENT OF A BANKRUPTCY TRUSTEE IS UNNECESSARY TO THE DISPOSITION OF THE PROPERTY**

Appointment of a bankruptcy trustee is not automatic in an involuntary Chapter 7 proceeding such as this one. Specifically, 11 U.S.C. § 303 provides that:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

14

11 U.S.C. § 303(g) (emphasis added). The relief that the Debtor requests pursuant to this provision—appointment of an interim trustee—is extremely rare. In re Diamondhead Casino Corp., 540 B.R. 499, 505 (Bankr. D. Del. 2015) ("a request for an interim trustee should be denied in the absence of an exceptionally strong need for doing so or where no facts are alleged showing a necessity for the appointment.") (quotations and citations omitted). The Debtor has not demonstrated why such appointment is necessary in this case.

Indeed, appointment of a trustee is not necessary to preserve the Property, for the reasons discussed above. A bankruptcy "trustee can only exercise the same right to redeem that the bankrupt had." Town of Agawam v. Connors, 159 F.2d 360, 364 (1st Cir. 1947). Here, the Debtor no longer had any right to redeem the Property and was, at most, left with the statutory right to request vacatur of the Land Court's judgment within one year.[14] Because the Debtor no longer possesses a right to redeem the Property, the same would be true of any trustee appointed in this proceeding. At most, the trustee (like the Debtor) would have the right to have the Debtor's motion to vacate adjudicated in the Land Court. Given that the Debtor was prepared to do just that before its counsel in the Land Court commenced this proceeding, the Court should simply allow the Land Court to proceed without appointing a trustee.

## CONCLUSION

For the foregoing reasons, the Court should grant the Town relief from the automatic stay and order that the stay does not bar the Tax Foreclosure Action or the Civil Action from proceeding. Additionally, the Court should decline to appoint a trustee in this proceeding with respect to the Property.

---

[14] As noted above, the Debtor's motion was filed on the last day of the one year in question but was not signed by an attorney, calling its validity into question.

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

_____
Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
 Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: October 3, 2023

882073/WEST/0042

**CERTIFICATE OF CONFERENCE HELD PURSUANT TO MLBR 9013-1(b)**

I, Roger L. Smerage, hereby state that on October 3, 2023, I attempted in good faith to confer with Attorney Stephen Gordon (counsel for the Petitioning Creditors) regarding this Motion for Relief from the Automatic Stay filed by the Town of Westborough by telephone and email. No resolution has been reached as of today's date.

TOWN OF WESTBOROUGH,

By its attorney,

/s/ Roger L. Smerage

Roger L. Smerage
KP Law, P.C.
 Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007

Date:  October 3, 2023

CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Motion for Relief from Automatic Stay and Opposition to Appointment of a Bankruptcy Trustee to be served through the Court's CM/ECF system to the following counsel of record or by U.S. mail to the following unregistered parties:

> Stephen F. Gordon
> The Gordon Law Firm LLP
> River Place
> 57 River Street
> Wellesley, MA 02481
> sgordon@gordonfirm.com
> *Attorney for Petitioning Creditors*
>
> Scott A. Schlager
> Nathanson & Goldberg, P.C.
> 183 State Street, 5th Floor
> Boston, MA 02109
> sas@natgolaw.com
> *Attorney for Creditor Nathanson & Goldberg, P.C.*
>
> Richard King
> Office of US. Trustee
> 446 Main Street
> 14th Floor
> Worcester, MA 01608
> *Attorney for the U.S. Trustee*
>
> Westborough SPE, LLC
> c/o Lolonyon Akouete
> 1241 Deer Park Ave., Suite 1, #1051
> North Babylon, NY 11703
> *Debtor*

Dated: October 3, 2023

_____
Roger L. Smerage