# Appendix

2023 WL 5733164
Only the Westlaw citation is currently available.
United States Court of Appeals, Sixth Circuit.

Donald FREED,
Plaintiff-Appellant/Cross-Appellee,
v.
Michelle THOMAS, Defendant-Appellee,
County of Gratiot, Michigan,
Defendant-Appellee/Cross-Appellant,
Michigan Department of Attorney
General, Intervenor-Appellee.

Nos. 21-1248/1288/1339
|
Argued: August 1, 2023
|
Decided and Filed: September 6, 2023

**Synopsis**
**Background:** Property owner brought § 1983 action
against county and county treasurer in her individual
capacity, asserting a taking in violation of Fifth
Amendment and an excessive fine in violation of Eighth
Amendment after county foreclosed on property for
unpaid taxes and, after selling property at auction,
retained the entire proceeds. The United States District
Court for the Eastern District of Michigan, No.
1:17-cv-13519, Bernard A. Friedman, Senior District
Judge, 2018 WL 5831013, dismissed for lack of subject
matter jurisdiction. Owner appealed. The Court of
Appeals, 976 F.3d 729, reversed and remanded. On
remand, the District Court granted summary judgment to
owner on takings claim but declined to award amount of
damages sought by owner, and it also held that claims
against county treasurer were barred by qualified
immunity. Owner appealed and county cross-appealed.

**Holdings:** The Court of Appeals, Siler, Circuit Judge,
held that:

under Fifth Amendment's takings clause, compensation
which county was required to make to owner was not
required to include the difference between property's
asserted value and the amount that it actually sold for at
auction;

foreclosure was not an excessive fine in violation of
Eighth Amendment even if sale at auction "destroyed"
taxpayer's equity far in excess of tax delinquency;

treasurer's conduct did not violate clearly established law,
and thus treasurer had qualified immunity to owner's
takings claim; and

county's policy of prohibiting the refunding of surplus
proceeds to property owners following foreclosure sale of
properties for unpaid taxes had direct causal link to the
unconstitutional taking, and thus county could be subject
to liability under § 1983.

Affirmed.

Appeal from the United States District Court for the
Eastern District of Michigan at Bay City. No.
1:17-cv-13519—Bernard A. Friedman, District Judge.

**Attorneys and Law Firms**

ARGUED: Philip L. Ellison, OUTSIDE LEGAL
COUNSEL PLC, Hemlock, Michigan, for
Appellant/Cross-Appellee. Douglas J. Curlew,
CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C.,
Livonia, Michigan, for Appellee and
Appellee/Cross-Appellant. Matthew B. Hodges,
MICHIGAN ATTORNEY GENERAL'S OFFICE,
Lansing, Michigan, for Intervenor-Appellee. Theodore W.
Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan,
for Amicus Curiae. ON BRIEF: Philip L. Ellison,
OUTSIDE LEGAL COUNSEL PLC, Hemlock,
Michigan, for Appellant/Cross-Appellee. Douglas J.
Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO,
P.L.C., Livonia, Michigan, for Appellee and
Appellee/Cross-Appellant. Matthew B. Hodges,
MICHIGAN ATTORNEY GENERAL'S OFFICE,
Lansing, Michigan, for Intervenor-Appellee. Theodore W.
Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan,
for Amicus Curiae.

Before: SILER, GIBBONS, and LARSEN, Circuit
Judges.

**OPINION**

SILER, Circuit Judge.

**\*1** Although Plaintiff Donald Freed prevailed on his Fifth Amendment claim before the district court, he appeals because the district court declined to award him the fair market value of his property minus his debt. Freed argues that the district court erred by (1) violating his Fifth or Eighth Amendment rights by awarding him "the difference between the foreclosure sale and [his] debt" instead of the fair market value of his property; (2) granting qualified immunity to Michelle Thomas, Gratiot County's ("the County") treasurer; and (3) denying without prejudice his motion for attorney's fees. The County cross-appeals, arguing that the district court improperly held it liable for Freed's 42 U.S.C. § 1983 claims. We affirm.

## I.

After Freed fell behind approximately $1,100 on his property taxes, Thomas, acting on behalf of the County and pursuant to Michigan's General Property Tax Act (GPTA), foreclosed on Freed's property and sold it at a public auction for $42,000. The County retained the entire proceeds. Freed sued the County and Thomas under § 1983, alleging (1) an unconstitutional taking under the Fifth and Fourteenth Amendments by state and local officials; and (2) an unconstitutional excessive fine under the Eighth Amendment. The district court, applying *Wayside Church v. Van Buren County*, 847 F.3d 812 (6th Cir. 2017), dismissed Freed's complaint for lack of subject matter jurisdiction, finding that the Tax Injunction Act (TIA) and principles of comity prevented it from hearing the case.

We reversed and remanded. *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020), *reh'g en banc denied* (Nov. 4, 2020). We held that (1) the TIA did "not preclude the exercise of federal jurisdiction ... because Freed is not attempting to enjoin Michigan's assessment, levy, or collection of a state tax"; (2) the doctrine of comity did not prevent this suit from proceeding "because Freed is not challenging the validity of Michigan's tax procedures"; and (3) we were not bound by *Wayside Church* because the opinion's discussion of the TIA and comity issues was simply "persuasive dictum." *Id.* at 734, 737–38, 740. We also noted that the Supreme Court overruled *Wayside Church*'s subject matter jurisdiction analysis when it held "that [a] property owner may bring a takings claim [in federal court] under § 1983 upon the taking of his property without just compensation by a local government." *Id.* at 733–34 (quoting *Knick v. Township of*

*Scott*, ––– U.S. ––––, 139 S. Ct. 2162, 2179, 204 L.Ed.2d 558 (2019)) (alterations in original).

On remand, the district court granted summary judgment in favor of Freed on his Fifth Amendment claim and denied summary judgment on his Eighth Amendment claim. It rejected Freed's argument that he was entitled to the fair market value of his property, minus his debt, and instead held that Freed was "owed just compensation in the amount of the difference between the foreclosure sale and [his] debt, plus interest on this amount from the date of the foreclosure sale." This meant that Freed was owed about $40,900 plus interest—approximately $56,800 less than he was seeking. The court also held that Freed's claims against Thomas were barred by qualified immunity.

**\*2** Freed appealed, and the County cross-appealed. Freed also filed a motion for attorney's fees following the entry of judgment, which the district court denied without prejudice under Federal Rule of Civil Procedure 54(d)(2)(B). It noted that "it would be premature to decide plaintiff's motion" pending the appeal and ordered the period for filing a motion for attorney's fees be extended until fourteen days after the appeal mandate is issued. Freed appealed the denial of his attorney's fees motion.

## II.

We review a district court's grant of summary judgment de novo. *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021).

### A.

### 1.

Freed first argues that the district court should have awarded him the fair market value of his property pursuant to either the Fifth or the Eighth Amendment.

### a.

The Supreme Court recently resolved a case with similar facts. Hennepin County, Minnesota, sold the delinquent

Freed v. Thomas, --- F.4th ---- (2023)

taxpayer's house "for $40,000 to satisfy a $15,000 tax bill" and kept the remaining $25,000. *Tyler v. Hennepin County*, 598 U.S. 631, 634, 143 S.Ct. 1369, 215 L.Ed.2d 564 (2023). The district court there dismissed for failure to state a claim, and the Eighth Circuit affirmed. *Id.* at 636, 143 S.Ct. 1369. The Supreme Court unanimously reversed, affirming "the principle that a taxpayer is entitled to the surplus in excess of the debt owed." *Id.* at 642, 143 S.Ct. 1369.

Here, the district court held at the motion for summary judgment stage that Freed's Fifth Amendment rights were violated, and it held that Freed was owed the difference between the foreclosure sale amount and his debt, plus interest. This holding squares with *Tyler*. Freed asserts though that he is entitled to an additional $56,800 because the purported fair market value of the property was $98,800 and the property sold for only $42,000. However, neither this court nor the Supreme Court has ever held that a plaintiff whose property is foreclosed and sold at a public auction for failure to pay taxes is entitled to recoup the fair market value of the property. *Cf. United States v. Davis*, 815 F.3d 253, 260 (6th Cir. 2016) (holding that the government does not violate the Fifth Amendment by selling a property at a public auction, even if the property sells for less than its fair market value). Furthermore, the best evidence of a foreclosed property's value is the property's sales price, not what it was worth before the foreclosure.[1] *See BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 548–49, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

[1]   Freed stated at oral argument that although the property was sold at a public auction, the procedures used by the county restricted who could bid on the property and in what manner, and this caused the property to sell for less than it was worth. But Freed did not make this argument before the district court or in his opening brief, and it is therefore waived. *Amezola-Garcia v. Lynch*, 846 F.3d 135, 139 n.1 (6th Cir. 2016) ("[A]rguments not raised in a party's opening brief are deemed waived.").

The Michigan Supreme Court, in addressing this exact issue, held that awarding the fair market value of a property instead of the price obtained at a public tax foreclosure sale "would run contrary to the general principle that just compensation is measured by the value of the property *taken*" and would "not only ... [take] money away from the public" but would also allow plaintiffs to "benefit from their tax delinquency." *Rafaeli, LLC v. Oakland County*, 505 Mich. 429, 952 N.W.2d 434, 465–66 (2020). Freed is entitled to the amount of the sale above his debt and no more. *See Hall v. Meisner*, 51 F.4th 185, 194 (6th Cir. 2022) (explaining the longstanding principle that following a public sale, a debtor is "entitled

to any surplus proceeds from the sale, which represented the value of the equitable title thus extinguished" (citing *Resol. Tr. Corp.*, 511 U.S. at 541, 114 S.Ct. 1757)). This is precisely what the district court held, and Freed's Fifth Amendment takings argument is therefore meritless.

**b.**

**\*3** Freed's Eighth Amendment argument fares no better. He argues that Defendants "destroy[ed] [his] equity far in excess of the tax delinquency" in violation of the Eighth Amendment.

The Eighth Amendment protects "against excessive fines [and] guards against abuses of [the] government's punitive or criminal-law-enforcement authority." *Timbs v. Indiana*, —— U.S. ——, 139 S. Ct. 682, 686, 203 L.Ed.2d 11 (2019). However, in *Hall*, we affirmed the district court's dismissal of the plaintiffs' Eighth Amendment Excessive Fines claim on the ground that the GPTA is not punitive. *See Hall*, 51 F.4th at 196–97 (adopting district court's reasoning as the panel's own); *Hall v. Meisner*, No. 20-12230, 2021 WL 2042298, at \*14 (E.D. Mich. May 21, 2021) (concluding that the GPTA is not punitive); *see also Rafaeli*, 952 N.W.2d at 447 (holding that the GPTA "is not punitive in nature" because "[i]ts aim is to encourage the timely payment of property taxes and to return tax-delinquent properties to their tax-generating status, not necessarily to punish property owners for failing to pay their property taxes"). The Supreme Court did not reach the merits of the Eighth Amendment claim in *Tyler*. *See* 598 U.S. at 647–48, 143 S.Ct. 1369. *But see id.* at 648–50, 143 S.Ct. 1369 (Gorsuch, J., concurring). Accordingly, our holding in *Hall* remains binding. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (A prior published "decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." (citation omitted)). Therefore, Freed's arguments that he is owed the fair market value of the property under either the Fifth Amendment or the Eighth Amendment fail, and we affirm.

**2.**

The district court granted qualified immunity to Thomas in her individual capacity because it found that she "did

not violate a right that was 'clearly established at the time of defendant['s] alleged misconduct.' "[2] To overcome Thomas's claim of qualified immunity, Freed "must show that (1) the [officials] violated one of [his] constitutional rights and (2) that right was clearly established." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 317 (6th Cir. 2023) (citation omitted). The clearly established prong is the only one at issue here. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 317–18 (citation omitted).

[2]    The district court also granted qualified immunity to Thomas in her official capacity because "the claims against defendant Thomas [are] duplicative of those against the county."

At the time the lawsuit was filed, the contested provisions of the GPTA had been enforced as written for nearly two decades, and "[s]tate statutes, like federal ones, are entitled to the presumption of constitutionality until their invalidity is judicially declared." *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 153, 64 S.Ct. 474, 88 L.Ed. 635 (1944). The Michigan Supreme Court held that Michigan's retention of surplus proceeds was an unconstitutional taking several years *after* Freed filed this lawsuit. *See Rafaeli*, 952 N.W.2d at 466. And "the Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016).

*4 The only support on which Freed relies to argue that Thomas's conduct violated a clearly established right is *United States v. Lawton*, 110 U.S. 146, 3 S.Ct. 545, 28 L.Ed. 100 (1884). However, *Lawton* pertained to a statute requiring that surplus proceeds from a tax sale "be paid to the owner of the property." *United States v. Taylor*, 104 U.S. 216, 218, 26 L.Ed. 721 (1881). The GPTA, on the other hand, did not provide that surplus proceeds would be returned to the owner. *Rafaeli*, 952 N.W.2d at 452–53. Freed has failed to demonstrate that *Lawton*, which was premised on a statutory right to recover surplus proceeds, sufficiently put Thomas on notice that her administration of the GPTA was unconstitutional.[3] Therefore, the district court did not err by granting qualified immunity to Thomas, and we affirm.

[3]    Although *Lawton* notes that withholding surplus from an owner when the owner is statutorily entitled to it would violate the Fifth Amendment, the Court held that "this case was governed by the rulings of this court in *U.S. v. Taylor.*" 110 U.S. at 149, 3 S.Ct. 545. In *Taylor*, the Supreme Court held that the appellee was entitled to

surplus proceeds because the government statutorily required it, not because it would be unconstitutional to withhold the surplus proceeds. 104 U.S. at 218, 222. And Freed cannot rely on the Supreme Court's recent opinion in *Tyler* for qualified immunity purposes because the events in this case occurred well before *Tyler* was decided. *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.").

**3.**

Following the district court's opinion and order holding that Freed's Fifth Amendment rights had been violated, Freed filed a motion for attorney's fees which the court denied without prejudice. Freed argues that the court "should have render[ed] a timely and normal decision on the motion."

The court's order denying Freed's attorney's fees motion, however, is not appealable because it is "not a 'final decision' under 28 U.S.C. § 1291." *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1104, 1107 (6th Cir. 2019) (holding that a district court's order on attorney's fees made "where the post-judgment proceedings are *ongoing*," is not a final, appealable order). We therefore dismiss Freed's attorney's fees appeal for lack of jurisdiction.[4]

[4]    Freed also asks us to remand this matter to the district court with instructions to enter judgment against the state because the district court failed to explicitly name Michigan as a party in the judgment. Michigan joined this case solely for the purpose of defending the constitutionality of the statute and participated in all stages of the litigation; the district court correctly permitted intervention, pursuant to 28 U.S.C. § 2403(b), which provides that "[t]he State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party *as to court costs* to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality." (emphasis added). And the district court did not err by omitting Michigan from the judgment. *See Tennessee v. Garner*, 471 U.S. 1, 22, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("The State is a party only by virtue of 28 U.S.C. § 2403(b) and is not subject to liability").

Freed v. Thomas, --- F.4th ---- (2023)

**B.**

In its cross-appeal, the County argues that the district court erred in holding that it was liable for Freed's constitutional claims under § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In municipal liability cases under § 1983, "the question [is] whether there is a direct causal link between a municipal [or county] policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

**\*5** The policy at issue here is the prohibition on refunding surplus proceeds to property owners under MCL § 211.78, which Defendants acknowledge was unconstitutional. That leaves the question of whether the County was responsible for the constitutional violation.

The County argues that it was merely following a state statute when it foreclosed on Freed's home and thus it cannot be said that the County had a custom or policy that led to the unconstitutional taking. We disagree. The statute here provides that "foreclosure of forfeited property by a county is voluntary." MCL § 211.78(6).

And as the district court correctly points out, the County, through its treasurer, repeatedly "chose to act as the foreclosing governmental unit and ... retained the proceeds of [Freed's] foreclosure sale." The County's decision to voluntarily and repeatedly serve as the foreclosing governmental unit and retain the proceeds was a policy decision with a "direct causal link" to the constitutional violation in this case. *Harris*, 489 U.S. at 385, 109 S.Ct. 1197; *see also DePiero v. City of Macedonia*, 180 F.3d 770, 787 (6th Cir. 1999) (finding municipal liability where a state statute authorized but did not require a city to take a certain action); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (recognizing that a municipality may be subject to *Monell* liability where it makes a deliberate choice beyond what a statute requires). We hold that the district court did not err in finding the County liable.

**AFFIRMED.**

**All Citations**

--- F.4th ----, 2023 WL 5733164

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4322404
Only the Westlaw citation is currently available.
United States Bankruptcy Court, D. Massachusetts.

In re Joyce TOMASELLI, Debtor.

No. 14–10736–JNF.
|
Signed Aug. 29, 2014.

**Attorneys and Law Firms**

Kevin W. Lawless, Newburyport, MA, for Debtor.

**MEMORANDUM**

JOAN N. FEENEY, United States Bankruptcy Judge.

**\*1** Whereas, Joyce Tomaselli (the "Debtor") filed a voluntary Chapter 7 petition on February 27, 2014; and

Whereas, the Debtor filed an Application for Waiver of Chapter 7 Filing Fee disclosing that her monthly income was $600; and

Whereas, John Aquino was appointed Chapter 7 Trustee; and

Whereas, the Debtor filed Schedules and a Statement of Financial Affairs on February 27, 2014; and

Whereas, on Schedule A–Real Property, the Debtor listed a co-ownership interest in property located at "113–115 North End Boulevard, Salisbury, MA 01952" (the "Property"), which she valued at $499,000.00, subject to a secured claim in the sum of $251,680.00; and

Whereas, the Debtor owns the Property as a joint tenant with the right of survivorship with her sister, Gracemarie Tomaselli, who also is a Chapter 7 debtor in Case No. 13–15744–JNF; and

Whereas, in addition to the Property, the Debtor listed on Schedule A a distressed, uninhabited property located at 125 Haverhill Street, Lawrence, Massachusetts, and unimproved land in Rockland, Maine; and

Whereas, on Schedule B–Personal Property, the Debtor listed exempt assets and miscellaneous assets with minimal value, but she did not disclose any claims or defenses that she may have against the Town of Salisbury; and

Whereas, on Schedule on Schedule C–Property Claimed as Exempt, the Debtor claimed an exemption in the Property pursuant to 11 U.S.C. § 522(d)(1) in the sum of $132,000;[1] and

[1]    The Chapter 7 Trustee filed a Limited Objection to the Debtor's original claim of exemption in the Property on Schedule C as the amount claimed by the Debtor exceeded the statutory exemption amount of $22, 975. The Debtor subsequently amended her claim of exemption in the Property claiming an exemption under 11 U.S.C. § 522(d)(1) in the sum of $22,975. On June 18, 2014, the Debtor withdrew her amended Schedule C, leaving the originally filed Schedule C in its place. On August 7, 2014, the Debtor filed another amended Schedule C, claiming a homestead under Mass. Gen. Laws Ch. 188, § 1. On August 12, 2014, the Court determined that the Trustee's Objection was moot because the Debtor filed an amended Schedule C claiming a homestead exemption in property located in Lawrence, Massachusetts pursuant to Mass. Gen. Laws ch. 188, § 1. On August 11, 2014, the Trustee filed an Objection to that claim of exemption, setting forth numerous reasons why his Objection to the Debtor's newly minted claim of exemption should be sustained, including her testimony under oath at the meeting of creditors that she intended to live at the Property. On August 20, 2014, the Court sustained the Trustee's Objection.

Whereas, on Schedule D–Creditors Holding Secured Claims, despite the reference to secured claims on Schedule A, the Debtor did not list any creditors with claims secured by the Property; and

Whereas, on Schedule E–Creditors Holding Unsecured Priority Claims, the Debtor listed the Rockland Maine Tax Collector and the Town of Salisbury, Massachusetts as holding two claims, one for "1993–2000; ad valorem real estate tax and disputed betterment charges, disputed sewer user [sic] charges, dispute water charges and all related interest charges" in the amount of $25,880.00 of which $21,336.00 was entitled to priority, and one for "1993–2000; ad valorem real estate tax and disputed betterment charges, disputed sewer user [sic] charges, disputed water charges and all related interest charges," in the amount of $225,800.00, of which $19,024.00 was

entitled to priority; and

Whereas, on Schedule F–Creditors Holding Unsecured Nonpriority Claims, the Debtor listed two law firms with claims for attorneys' fees relating to a case pending in the Land Court, Department of the Massachusetts Trial Court, i.e., Kopelman and Paige, P.C. and Coppola and Coppola, as well as the Penobscot Bay Road Maintenance Association with a $400 claim for road maintenance; and

Whereas, on Schedule H–Codebtors, the Debtor listed Gracemarie Tomaselli with respect to the creditors listed on Schedules E and F; and

Whereas, on her Statement of Financial Affairs, in response to question 4 regarding suits and administrative proceedings pending within one year preceding the filing, the Debtor listed a proceeding in the Land Court, captioned *Town of Salisbury v. Gracemarie R. Tomaselli and Joyce Tomaselli,* Case No. 06 TL 133120, which she described as a "Tax Lien Case–Complaint to Foreclose Right of Redemption; and

**\*2** Whereas, the Debtor further described the proceeding as follows:

> Debtor ordered to pay a disputed tax balance of $250,000 on or before September 30, 2013 or her right to redeem will be extinguished and Town of Salisbury may foreclose on property and Debtor would lose over $250,000 in equity in property;

and

Whereas, the Debtor disclosed three additional cases, including an adversary proceeding in the case of Gracemarie Tomaselli (Case No. 13–15744–JNF); and

Whereas, except for Schedule C, the Debtor has never amended her Schedules or Statement of Financial Affairs; and

Whereas, on March 20, 2014, the Town of Salisbury filed a Motion for Relief from the Automatic Stay asserting that the Property has a current assessed valuation of $287,500 and seeking permission to continue a foreclosure proceeding affecting the Property pending in the Land Court;[2] and

[2] The Court granted the Town of Salisbury relief from the automatic stay in Gracemarie Tomaselli's case on January 13, 2014.

Whereas, the Town of Salisbury attached to its Motion the docket of proceedings in the Land Court, as well as copies

of documents filed by the parties in the Land Court proceeding, including a 21–page decision containing detailed findings of fact and an analysis of applicable law, *see Town of Salisbury v. Tomaselli,* No. 06 TL 133120(GHP), 2013 WL 142831 (Mass.Land Ct. Jan.14, 2013), and an "Order on Plaintiff's Motion for Finding and Legal Fees, and on Defendants' Motion to Strike," dated August 2, 2013, in which the Land Court stated:

> If the Town elects not to file a request for a higher finding amount, the defendants may redeem by paying good funds in the amount of the $250,889.32 [sic] on or before Monday, September 30, 2013; if they do not timely redeem by making that payment by that date, judgment will enter upon the request of the Town, forever barring the defendants' right of redemption;"

and

Whereas, implicit in the Land Court's ruling is a determination that the Town of Salisbury's betterment lien against the Property is valid; and

Whereas, on April 3, 2014, the Debtor filed an Opposition to the Motion for Relief from the Automatic Stay, asserting among other things, that "the amount outstanding [for] taxes, betterment fees, sewer fees, statutory interest and fines claimed by the Town of $212,828.35 is grossly excessive, arbitrary, inaccurate, invalid and without any logical or justifiable factual foundation;" and

Whereas, on April 15, 2014, the Debtor filed an Amended Opposition reiterating the above objection; and

Whereas, on April 16, 2014, the Court conducted a hearing on the Motion for Relief from the Automatic Stay and the Debtor's Opposition, ordered the parties to submit supplemental papers by April 28, 2014 and continued the hearing to April 30, 2014; and

Whereas, the parties complied with the Court's order and supplemented the record; and

Whereas, on April 29, 2014, the Court ordered the Chapter 7 Trustee to personally appear at the April 30, 2014 hearing to report the results of his investigation of the Debtor's assets; and

**\*3** Whereas, on April 30, 2014, the Court entered the following order:

> [T]he Court directs both parties to file by May 7, 2014 at 4:30 p.m. all documents they rely on in support of their respective positions and to serve them on the Chapter 7 Trustee. In addition, the parties shall brief

the issue of the effect of 11 U.S.C. § 108(b) on the debtor's interest in the Salisbury property in light of the Land Court's order. A continued hearing shall be held on June 11, 2014 at 1:30 p.m.; and

Whereas, on June 11, 2014, the Court continued the hearing on the Town of Salisbury's Motion to June 25, 2014 and, thereafter, until August 12, 2014 to afford the Chapter 7 Trustee an opportunity to review the voluminous submissions and determine his position with respect to the merits of the lift stay motion; and

Whereas, at the August 12, 2014 hearing the Court took the lift stay motion under advisement; and

Whereas, the Trustee has not filed an objection to the Motion for Relief from Stay or contested the validity of the betterment lien; and

Whereas, in *In re Tomaselli,* Case No. 13–15744–JNF, Slip op. at 4 (Bankr.D.Mass. Jan. 13, 2014), the bankruptcy case filed by the Debtor's sister, Gracemarie Tomaselli, the Court set forth litigation involving the Debtor and her sister which has generated published decisions, including but not limited to, the following:

*Tomaselli v. Town of Salisbury,* 439 Mass. 1107, 790 N.E.2d 1090 (Mass.2003), *denying appeal from Town of Salisbury v. Tomaselli,* 57 Mass.App.Ct. 1116, 786 N.E.2d 437 (Mass.App.Ct.2003)(affirming directed verdict in favor of the Town of Salisbury regarding an action arising from the termination of an alcoholic beverage license for a restaurant operated by the Debtor and her sister at the Property);

*Tomaselli v. Board of Assessors of Salisbury,* 455 Mass. 1102, 914 N.E.2d 331 (2009), *denying appeal from Tomaselli v. Board of Assessors of Salisbury,* 74 Mass.App.Ct. 1104, 903 N.E.2d 1144 (Mass.App.Ct.2009) (affirming a decision of the Appellate Tax Board, which dismissed the Debtor's appeal regarding betterment assessments);

*Tomaselli v. Beaulieu,* No. 08–10666, 2010 WL 1460261 (D. Mass. April 1, 2010) (adopting Report and Recommendation of Magistrate Dein, No. 08–10666, 2010 WL 1460259 (D.Mass. Mar.10, 2010) (holding counsel to the Town of Salisbury, Kopelman and Paige, P.C. and two of its attorneys, were entitled to absolute immunity to law suit in action removed from the Essex Superior Court);

*Tomaselli v. Beaulieu,* No. 08–10666, 2010 WL 2105347 (D.Mass. May 7, 2010, 2010) (adopting

Report and Recommendation of Magistrate Dein, No. 08–10666 (holding counsel who represented the Town of Salisbury in the Land Court proceeding, Coppola and Coppola and two of its attorneys, were entitled to absolute immunity to law suit in action removed from the Essex Superior Court);

*Tomaselli v. Beaulieu,* 967 F.Supp.2d 423, 2013 WL 4780085, (D.Mass. August 30, 2013)(overruling the Tomasellis's objections to the Magistrate Judge's Report and Recommendation and sustaining the Defendants' objection to the Report and Recommendation which contained a recommendation that the Tomasellis'state claims not be decided on the merits and dismissing the Tomasellis' complaint in its entirety with prejudice);

**\*4** Slip op. at 4; and

Whereas, in *Tomaselli v. Beaulieu,* the District Court stated:

Given the age of the underlying dispute, the effort expended in litigating it by all parties and the court, and the fact that the Magistrate Judge did address the merits of the state law claims, it is appropriate that the court exercise its discretion to reach a final judgment on the entire dispute. Moreover, this court is in full agreement with the recommendations pertaining to the merits of the state claims. Accordingly, the motion to dismiss the complaint is allowed as to all claims contained therein. *Tomaselli v. Beaulieu,* 967 F.Supp.2d 423, 432–33 (D.Mass.2013); and

Whereas, the Debtor disclosed only some of those actions in her bankruptcy filings; and

Whereas, the United States Magistrate Judge, whose Report and Recommendation was adopted by the District Court on August 30, 2013, *see Tomaselli v. Beaulieu,* 967 F.Supp.2d 423 (D.Mass.2013), set forth, in detail, the history of the "long-running dispute between the plaintiffs, Gracemarie Tomaselli and Joyce Tomaselli, and the Town of Salisbury, Massachusetts, relating to a sewer betterment assessment that was imposed by the Town in 1992 and the manner in which the Town calculated the related sewer user fees," *Id.* at 433 (footnote omitted), as well as the claims asserted by the Debtor and her sister, which were dismissed, namely,

claims pursuant to 42 U.S.C. § 1983 alleging violations of their First, Fifth and Fourteenth Amendment due process and equal protection rights and their comparable rights under the Massachusetts Declaration of Rights (Counts I–V), claims of unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch.

93A (Counts VI and VII), claims that the defendants engaged in or conspired to enter into a criminal enterprise in violation of the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 (Counts VIII and IX), and a claim of conspiracy to commit and the commission of conversion, defamation, intentional infliction of emotional distress, abuse of process, invasion of privacy, intentional interference with advantageous business relations, misrepresentation and negligent misrepresentation (Count X),

*Id.;* and

Whereas, the Court takes judicial notice of the history of litigation between the Debtor and the Town of Salisbury set forth in *Tomaselli v. Beaulieu,* 967 F.Supp.2d 423 (D.Mass.2013); and

Whereas, in the case of Gracemarie Tomaselli, the Chapter 7 Trustee abandoned the debtor's interest in the Property; and

Whereas, in *Grella v. Salem Five Cent Savs. Bank,* 42 F.3d 26 (1st Cir.1994), the First Circuit stated:

[T]he hearing on a motion for relief from stay is meant to be a summary proceeding, and the statute requires the bankruptcy court's action to be quick .... *see* 11 U.S.C. § 362(e). Section § 362(e) provides that a bankruptcy court must hold a preliminary hearing on a motion to lift the stay within thirty days from the date the motion is filed, or the stay will be considered lifted. A final hearing must be commenced within thirty days after the preliminary hearing. *[S]ee* 11 U.S.C. § 362(e).

**\*5** The limited grounds set forth in the statutory language, read in the context of the overall scheme of § 362, and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate.

*Grella,* 42 F.3d at 31–32 (case citations omitted); and

Now, therefore, based upon its review of the record of proceedings in the Land Court, and the absence of an objection filed by the Chapter 7 Trustee, as well as the decisions issued by other state and federal courts, the Court concludes that the Town of Salisbury has stated a colorable claim to relief and has established "cause" within the meaning of 11 U.S.C. § 362(d)(1) for relief from the automatic stay to proceed with its foreclosure of the Debtor's right of redemption with respect to the

Property which has been taken for nonpayment of taxes, municipal charges and assessments. *See Town of Salisbury v. Tomaselli,* No. 06–TL 133120, 2013 WL 142831 (Land Court Jan. 14, 2014). Thus, the Court grants it relief from the automatic stay to proceed with the action pending in the Land Court.

A party is entitled to relief under § 362(d)(1) for "cause," which includes lack of adequate protection. *See* 11 U.S.C. § 362(d)(1). Under 11 U.S.C. § 362(g), in any hearing under subsection (d) or (e) of this section concerning relief from the stay "(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g).

The Property is a vacant building that has no water or sewer service. The Land Court entered an order providing that the Debtor and Gracemarie Tomaselli could redeem the Property with a payment of $212,828.35 with interest allowed by statute from the date of the court's finding to the date of payment. *See Town of Salisbury v. Tomaselli,* No. 06–TL 133120, 2013 WL 142831 (Land Court Jan. 14, 2014). In so doing, it stated:

Our Supreme Judicial Court has, however, recognized a limited exception to this otherwise firm principle. In *Norwood v. Norwood Civic Ass'n,* the court found that the remedy provided for in G.L. c. 60, § 98, may in certain limited circumstances be asserted as a defense to foreclosure proceedings under G.L. c. 60, § 65. 340 Mass. 518, 524, 165 N.E.2d 124 (1960). Under the exception outlined in *Norwood,* a party who has not paid the tax up front, and who has not already commenced a separate action under G.L. c. 60, § 98, may respond to foreclosure proceedings brought by the municipality by raising the defense, "in order to avoid circuity of action." *Id.* If the party is able to establish facts demonstrating that the tax on which the foreclosure rests is wholly void, the tax is treated as eliminated from the tax title account, and the action for foreclosure of the resultant tax taking by definition cannot proceed. *Id.*

**\*6** This judicially created exception, however, is painfully narrow, and strictly applied. It is only available in an instance where the illegality or void nature of the assessment is entire, and so renders the underlying tax wholly void. The Norwood exception was applied in that case where it was asserted that the real estate involved was unlawfully taxed because it was by statute fully exempt from taxation. The Norwood exception to the need to bring a separate and timely Superior Court action under section 98 does not exist where some of the tax amounts underlying the

foreclosure are due, and others not. In addition, on similar reasoning, the exception is available only "[w]here a taxpayer owns in the town no real estate subject to taxation...." *Id.* at 523, 340 Mass. 518, 165 N.E.2d 124. For if there is some real estate lawfully taxed to some degree in the municipality, the Land Court foreclosure proceeding cannot be used to adjudicate the validity or the amount of less than all the taxes due to the town. If the party assessed owns any taxable real estate in the municipality, or if any part of the tax assessed is legally due, the rule is that the claimed 'illegal tax' is to be treated as merely excessive; the exclusive remedy for an excessive tax is abatement under G.L. c. 59, § 59. *Sears, Roebuck and Co. v. Somerville,* 363 Mass. 756, 757–58, 298 N.E.2d 693 (1973); *Norwood,* 340 Mass. at 523, 165 N.E.2d 124; *Harron Communications Corp. v. Bourne,* 40 Mass.App.Ct. 83, 87, 661 N.E.2d 667 (1996). "It is immaterial whether there has been ... the calculation of the tax upon a wrong or an inapplicable principle, or other invalidity, the statute afford ample means for obtaining relief and securing justice by a complaint for abatement." *Sears, Roebuck and Co.,* 363 Mass. at 757–758, n. 3, 298 N.E.2d 693.

*Town of Salisbury v. Tomasellis,* 2013 WL 142831 at *7.[3]

[3]    In *Tomaselli v. Bd. of Assessors of Salisbury,* 74 Mass.App.Ct. 1104 (2009), *review denied,* 455 Mass. 1102, 914 N.E.2d 331 (2009), the Massachusetts Appellate Court affirmed the determination of the Appellate Tax Board denying the Debtor and her sister relief from betterment assessments and sewer user charges imposed upon them by the Town of Salisbury. The court rejected the Property owners' argument "that the board should not have dismissed their appeal with respect to the betterment assessments, that the board erroneously decided their sewer user appeal, and that the board committed due process violations. The Appellate Court stated:

   The appellate route from the refusal to abate a betterment assessment is to the Superior Court pursuant to G.L. c. 80, § 7, or, pursuant to § 10, to the county commissioners. Neither c. 80, nor G.L.c. 58A, § 6, which establish the board's jurisdiction, confers jurisdiction upon the board over betterment assessments.

   The Tomasellis' characterization of the betterment assessments as an "illegal tax" does not affect this analysis. To the extent that the Tomasellis are attempting to assert illegality as a defense to the assessment, the board's overall lack of jurisdiction over betterment assessments precludes consideration of the issue. To the extent that the Tomasellis are attempting to assert a separate claim, the remedy for assessment of an illegal tax is through an action at law pursuant to G.L. c. 60, § 98, and is subject to the requirements set forth in that section.

       * * *

The town appears to concede on appeal that the Tomasellis' application for abatement and ensuing appeal of the sewer user charge were timely. Appellees' brief at 31 n. 3. However, the Tomasellis' arguments fail on their merits.
There was substantial evidence to support the conclusion that the $280.60 sewer usage charge in question was assessed correctly. The Tomasellis did not demonstrate that the method used by the town to calculate the charge was unlawful.

74 Mass.App.Ct. at 1104 (footnotes omitted).

The Debtor referenced a broker's comparative market analysis indicating potential equity in the Property but did not offer adequate protection payments or any evidence that the vacant Property is insured or maintained in a good state of repair. In opposing the Motion, she relies solely on the alleged illegality of the Town's betterment lien on the Property. As noted above, the Debtor has raised this argument before, and it has been uniformly rejected by all of the courts in which she raised it.

Section 362(g)(2) of the Bankruptcy Code places the burden on the debtor of proving the absence of cause, and cause includes lack of adequate protection. The Court finds that the Debtor did not prove the absence of cause, as she continues to rely on the illegality of the Town's betterment assessment and failure to comply with statutory requirements, issues which have been addressed in numerous prior court actions, including the Land Court.

In addition, the Debtor did not establish her standing to contest the Town of Salisbury's Motion for Relief from Stay. She no longer claims an exemption in the Property and has failed to argue or establish that her Chapter 7 case will likely yield a surplus entitling her to a distribution after payment of all allowed claims in full. *See generally Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136 (1st Cir.1992); *In re Choquette,* 290 B.R. 183 (Bankr.D.Mass.2002). Moreover, the claims asserted by the Debtor as a defense to the Motion for Relief from the Automatic Stay mirror those asserted by Gracemarie Tomaselli in her earlier bankruptcy case where the Court granted relief from the automatic stay despite claims that the Debtor and her sister have asserted in state and federal courts spanning many years. The Debtor has failed to advance any persuasive legal or factual authority for the Court to find that the Town of Salisbury has not set forth a colorable claim to relief or that its lien is invalid as a result of a successful action at law under Mass. Gen. Laws ch. 60, § 98.

**\*7** Significantly, the Trustee failed to object to the lift stay motion, signaling his likely intention not to market

and sell or otherwise administer the Property such that it will be deemed abandoned upon the closing of the case. The Debtor originally claimed her interest in the Property as totally exempt on Schedule C, although her initial claim of exemption exceeded the statutory amount. The Debtor has attempted to amend her exemptions to claim the Lawrence property as her homestead. The Court, however, has sustained the Trustee's Objection to the validity of her claimed exemption in the distressed real estate in Lawrence, Massachusetts. Moreover, any claims and defenses that the Debtor may have against the Town of Salisbury now belong to the Trustee and the Debtor's bankruptcy estate, although they were not disclosed on Schedule B. Accordingly, to the extent that the Debtor continues to maintain that the actions of the Town of Salisbury over the past twenty plus years have been wrongful, those claims belong to the Trustee until such time as the Trustee indicates an intention to abandon them.

Not only has the Town of Salisbury stated a colorable claim for relief, the elements required for abstention also are present here. *See generally* 11 U.S.C. § 1334(c)(1). In view of the protracted litigation in state and federal courts and the Trustee's failure to object to the Motion for Relief from the Automatic Stay, the Land Court (or any other state court) is better positioned to resolve the remaining issues, if any, involving the Debtor's rights with respect to the Property. Indeed, this Court is not the appropriate forum for the Debtor to raise specialized state law issues involving betterment liens and tax liens that have been the subject of prior rulings in other courts.

For those reasons, the Court shall enter an order granting the Motion for Relief from the Automatic Stay filed by the Town of Salisbury and overruling the Debtor's Opposition.

**All Citations**

Not Reported in B.R., 2014 WL 4322404

End of Document                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.