# Exhibit C

# ANNUAL TOWN MEETING
## MARCH 17, 2018
### The Town of Westborough

Pledge of Allegiance.

1:02 pm          Mr. John Arnold, Moderator, declared the meeting in session.

*Narrative:*

"I am John Arnold, our elected Moderator. I hereby call to order the 2018 Annual Town Meeting. I want to thank everyone for coming today. We need four things in order to have a Town Meeting. 1) a Moderator, I'm John E. Arnold of 251 West Main St.; 2) our elected Town Clerk, Wendy Mickel; 3) a signed Warrant posted with a return of service dated February 28, 2018; and 4) a quorum. Our bylaws state that this being our Annual Town Meeting, no quorum is necessary, therefore I declare the meeting in session.

"Before us, we have the Board of Selectmen, our executive branch of government, and various Department heads, Town Counsel, The Planning Board, the DPW, and our Police & Fire Chiefs. At the table up front, to the right we have the Advisory Finance Committee, appointed by me, a group of 9 citizens, who report and recommend to this legislative body, and this Town Meeting. They review and report on all the warrant articles.

Please be sure to pick up The AFC booklet that is available just beyond check-in and any other information from different boards and committees on the table as well. Printing is not free, so please take one copy to keep for the entire meeting.

I'd like to thank Mark Stockman, Steve Masciarelli and Westborough TV for their technology services. The Women's Club has their table of snacks and drinks available. Also, there is babysitting available. If you need to come and go during the meeting please do so quietly as there are rules about disrupting the meeting. It is required that if you leave the premises/lobby check-in area, you must turn in your voting device. You are allowed to leave and return but, you cannot take the device with you. You will be issued a new one when you return to the meeting.

As my first duty, Our Town Bylaws require me, to nominate a Deputy Moderator who will preside if I am unable to serve or if we need to use additional rooms. I will nominate and recommend former Moderator, Joseph Harrington, 4 Jefferson Rd. who has been briefed and is ready to serve as the Deputy Moderator. It is the meeting who will decide by vote who will serve as Deputy Moderator. I only nominate.

This will be our first chance to try out the electronic voting devices. Every voter should have a device if you are a voter. It should be already turned on with some numbers on it. For any motions when we take a vote, pressing number 1 on the device is a vote of YES, (you are in favor of the motion) and pressing number 2 on the device is a vote of NO (that you oppose the motion). When voting begins the green light goes on for a voting time of 15 seconds; after 15 seconds, voting ends. It takes a few seconds to register on the screen that the Town Clerk and I share and we will agree on the vote total on the screen and then I will read aloud. If you accidentally press the wrong number all you have to do is press the correct number you want. The last number you press is the vote that is accepted.

This would be the first chance to try out our devices; the Nomination of Joseph Harrington. When I say voting begins, you may press 1 or 2. Once your device says <u>received</u> the network system has received your vote. When the light goes off, voting has ended.

The vote for Mr. Harrington was: **114 in favor and 2 opposed**. The nomination carries. Mr. Harrington is now our Deputy Moderator.

Mr. Harrington will you please stand and raise your right hand while I give The Oath of Office: Mr. Harrington, do you solemnly swear that having been appointed Deputy Moderator, you will faithfully and impartially perform the duties of this office, so help you God? Mr. Harrington responded with a Yes.

I will hold off on the teller nominations as we have electronic voting. I will do that if we for some reason do not have the electronic voting service.

It is now the time to act on the admission of non-voters to the town meeting floor. The rules of town meeting are that any registered voter may attend and any registered voter may ask to speak, however, if a non-voter wishes to speak it needs town meeting approval.

I have not received any requests from non-voters to speak on specific articles for this Town Meeting.

I want to point out the Non-Voter section in the balcony. No one sitting in that section will be recognized. If you are a voter and wish to speak then you must move from that section to be recognized. There is also a section in the front for the Press.

Are there any first time voters? Any who have attended for 50 or more years. Any for 25 or more. Thank you all for your interest and attendance at this Town Meeting.

I want to thank the Boy Scouts for providing the microphone service. We have 2 standing microphones. You have the option to stand at a microphone or raise your hand and a Boy Scout will bring you a microphone. I will try to pick those sitting if I am aware of you needing a microphone.

Finally, about the cell phones. I ask you to please put them on mute, vibrate or turn off. Please take any calls to the lobby as not to disrupt the meeting.

I want to now do a quick review of the <u>Rules of Town Meeting</u>. The rules relating to Town Meeting indicate we are taking votes on those who are present and voting. That means that only registered voters who have checked-in with the Town Clerk's staff are eligible to vote. When you leave the hall, you are no longer eligible to vote. If you leave the room briefly, take your voting device with you, show it to the Town Clerk's staff. If at any time you are going to leave the building, you must turn in your electronic device to the check-in tellers. When you return, you will get another device. You personally are responsible for your handset. It's very important if you leave you return the device. You must be in the room when voting.

The rules are very simple. You must raise your hand to speak and I will recognize you. Only one person at a time is allowed to speak. For a person making a presentation, you are allowed to speak for no more than 10 minutes. For a voter who wishes to comment or speak to a motion, you are limited to no more than 2 minutes. Each person is allowed to speak no more than two times on an article without the vote of town meeting, unless you are directed to answer a question. Discussion and deliberations is limited to the topic in the motion. If you have comments about other topics about town meeting there are other forums to speak to that. Please ask and I can direct you to the other forums. We are here today acting as the town's legislature, and our deliberations are by design focused on the items before us, however if at any time you have a question about Town Meeting you may rise and say Point of Order, state you question and I will help you as best as I can.

In the event of an Emergency, Emergency personnel are here to help and assist as needed. Please stay quiet and wait for instructions from Emergency personnel. Emergency exits are in the rear of the room. Please only use in an emergency.

**Article One** was the election of town officers. 11 people ran for 9 positions. I ask anyone who ran to please stand and be thanked for serving. We have two new Selectmen, which is unusual; Shelby Marshall & Syed Hashmi, I ask you both to stand. Also, anyone whose term ended but you chose not to run again, please stand and be recognized for your service. From the elected boards and the townspeople of Westborough, we thank you for your service. And at this time I think it would be appropriate to introduce Westborough's new Police Chief. Chief Jeffrey Lourie is down front; please stand as we welcome you. I realized that I failed to introduce our Fire Chief when I was first Elected and a new moderator. Here is our new Fire Chief, Chief Purcell. Please stand. And a special thank you to outgoing Selectmen; Denzil Drewry and George Barrette and our newly retired Police Chief Al Gordon. Thank you all for your service.

And now we move on to **Article 2**."

2

# COMMONWEALTH OF MASSACHUSETTS
## WORCESTER, SS

TO ANY CONSTABLE IN THE TOWN OF WESTBOROUGH, IN THE COUNTY OF WORCESTER, GREETINGS:

In the name of the Commonwealth of Massachusetts, you are directed to notify and warn the inhabitants of the Town of Westborough, qualified to vote in elections and town affairs, to meet in various precincts in Westborough on Tuesday, the 6th day of March, 2018 at 8:00 A.M. for the following purposes:

**ARTICLE 1:  Annual Town Election (Board of Selectmen)**
To bring in their votes for:

| | | |
|---|---|---|
| Two | (2) | Selectman (3 years) |
| One | (1) | Planning Board member (5 years) |
| One | (1) | School Committee members (3 years) |
| Three | (3) | Trustees of Public Library (3 years) |
| One | (1) | Trustees of Public Library (1 year) |
| One | (1) | Westborough Housing Authority (5 years) |

Polls will be open from 8 A.M. to 8 P.M. in the following places:

Precincts l – 5 Westborough High School, 90 West Main Street

And to act on the following articles at the adjourned session of said meeting on March 17, 2018, at 1:00 P.M. in the Westborough High School Auditorium and Gymnasium on West Main Street.

The Town Manager's Statements printed in italics are not part of the formal articles of the warrant. They constitute additional information offered for the benefit of the voters, true and correct as of the time of posting of the warrant, but subject to change as called for.  They are not to be construed so as to broaden or limit the scope of the formal articles.

**ARTICLE 2:  Town Reports (Advisory Finance Committee)**
To see if the Town will vote to hear the reports of the several town officers and committees, and to dissolve any committees established by Town Meeting that have fulfilled their mission, or take any other action thereon.

*<u>Hank Rauch, Advisory Finance Committee</u> - Motion:  I move that the town vote to receive the reports of the various officers and committees and that the report of the Advisory Finance Committee be acted upon item by item under the various articles of the warrant.*

**Vote:**
**Yes=137**
**No=1**

The Moderator noted to "Please notice the 2017 Annual Report is dedicated to Polly Howard.  She served on the Advisory Finance Committee and many other boards and committees. Also, included with the dedication to Polly are those who have served our Town and recently passed away; a moment of silence, please."

Mr. Malloy, Town Manager gave the "State of the Town" presentation

**ARTICLE 3:  Fiscal Year 2019 Operating Budgets (Board of Selectmen)**
To see what sums the Town will vote to raise and appropriate for the support of the several offices, departments, boards and commissions of the Town of Westborough for Fiscal Year 2019 beginning July 1, 2018, and ending June 30, 2019, or take any other action thereon.

*Town Manager's Statement – The Town budgets, including all expenses are estimated to increase/decrease as follows:*

| *Fund* | | *FY18* | | *FY19* | | *$ Increase* | *% Increase* |
|---|---|---|---|---|---|---|---|
| *General* | $ | *88,499,236* | $ | *93,543,074* | $ | *5,043,838* | *5.7%* |
| *Water* | $ | *3,887,847* | $ | *4,012,808* | $ | *124,961* | *3.2%* |
| *Sewer* | $ | *1,939,985* | $ | *1,972,721* | $ | *32,736* | *1.7%* |
| *Wastewater* | $ | *4,155,382* | $ | *4,441,321* | $ | *285,939* | *6.9%* |
| *Country Club* | $ | *415,000* | $ | *427,567* | $ | *12,567* | *3.0%* |
| | | | | | | | |
| *Total* | $ | *98,897,450* | $ | *104,397,491* | $ | *5,500,041* | *5.6%* |

*Town Manager's Statement*
*The motion for this article is a simple majority vote.*

<u>*Hank Rauch, Advisory Finance Committee*</u> - *Motion:  I move that the town vote to raise and appropriate such sums of money as may be necessary to defray the expenses of the several town departments for the ensuing fiscal year and that each total read by the Moderator be considered a separate motion made for each of the line items making up that total in the column marked FY19 AFC Rec Budget.  I further move that the total amount raised be reduced by the transfer from Country Club Retained Earnings of $50,000 and that the balance be raised and appropriated.*

(1:43 pm)
**Vote: all line items not questioned Yes=173**
**No=11**
**Motion carries**
_____

**Question:  Treasurer/Collector – Expenses**
**Yes=185**
**No=13**
**Motion carries**

**Question:  Insurance – Expenses**
**Yes=189**
**No=22**
**Motion carries**

**Question:  Fire Dept/Ambulance - Expenses**
**Yes=195**
**No=10**
**Motion carries**

**Question:  Wastewater Treatment Plant - Expenses**
**Yes=197**
**No=15**
**Motion carries.**

**Question:  Westborough School Dept. Budget**

<u>Dominic Capriole -  motion</u> to amend the school budget to a reduction in the school budget of 1% = $50,765,755.

Mrs. Kung, moved the question
Yes=204
No=30
Debate has ended.

The Town Bylaw requires that a Vote to the amendment that is less than the higher amount; the rules are that we vote on the higher amount first.  If that fails, then we vote to the lesser.

**Vote: to the original motion $51,278,540**
**Yes=162**
**No=71**
**Motion carries**

4

**ARTICLE 4:  Regularly Recurring Articles (Town Manager)**
To see what action the Town may take on the following items, **A** through **C,** which may be voted as a block, or singly, or in any combination, but however voted, will be treated for accounting purposes as if each item were voted as a separate article:

**A. Reserve Funds (Advisory Finance Committee)** To see if the Town will vote to raise and appropriate the sum of Two Hundred Fifty Thousand Dollars ($250,000) or such other amount as the Town Meeting may approve, for the Finance Committee General Reserve Fund, transfer Fifty Thousand Dollars ($50,000), or such other amount as the Town Meeting may approve, from Water retained earnings for the Water Enterprise Reserve Fund, transfer Fifty Thousand Dollars ($50,000), or such other amount as the Town Meeting may approve, from Sewer retained earnings for the Sewer Enterprise Reserve Fund, and transfer Twenty Thousand Dollars ($20,000) from Country Club retained earnings for the Country Club Enterprise Reserve Fund, or such other amounts as the Town Meeting may approve, in accordance with Section 6 of Chapter 40 of the Massachusetts General Laws, or take any other action thereon.

*Town Manager's Statement – These accounts provide funding for unforeseen expenses during the year through various reserve funds.  The motion for this article is a simple majority vote.*

**B.  Reconstruction and Improvement of Town Roads (Chapter 90) (DPW)** To see if the Town will vote to transfer from available funds the sum of Seven Hundred Eighty Nine Thousand Six Hundred and Thirty Four Dollars ($789,634) or such other amount as the Town Meeting may approve, to construct, reconstruct, or improve the town roads, and further, to authorize the Board of Selectmen to apply for and accept a grant in this full amount, more or less, which is to be the State's contribution and/or reimbursement under chapter 90 of the Massachusetts General Laws for work done under this article, or to take any other action thereon.

*Town Manager's Statement – This article allows the Town to borrow from itself thus avoiding interest costs to pay the upfront costs under the Chapter 90 funds (which is a reimbursable program) from Mass DOT for the purpose of repairing town roads.  The Town undertakes an annual study that establishes the Town needs to be spending $1.1 million to maintain streets in Town.  This means the Town is approximately $300,000 short of funding necessary maintenance on town streets. The motion for this article is a simple majority vote.*

**C.  Healthcare Reimbursement Account   (Town Manager)** To see if the Town will vote to raise and appropriate the sum of Twenty Thousand Dollars ($20,000) or such other amount as the Town Meeting may approve, to fund the Healthcare Reimbursement Account as agreed with the Town's Collective Bargaining Units, or take any other action thereon.

*Town Manager's Statement – This article funds the Town's Healthcare Reimbursement Account by setting aside an estimated amount (based on use through January) to allow the Town to meet its obligation to the Collective Bargaining Units in exchange for various health insurance plan design changes.  The Town funds the amount that was estimated to be used during the current fiscal year to replenish the fund.  The motion for this article is a simple majority vote.*

**D.  Re-Stocking Sandra Pond (Sandra Pond Wardens/Recreation Department)** To see if the Town will vote to raise and appropriate the sum of Four Thousand Dollars ($4,000) or such other amount as the Town Meeting may approve, to re-stock Sandra Pond, or take any other action thereon.

*Town Manager's Statement – This article funds the fish re-stocking at Sandra Pond as the Town has done in the past.  For the past several years, this has been done with outside funds which no longer are able to fund the re-stocking. The motion for this article is a simple majority vote.*

 *Syed Hashmi, Board of Selectmen - Motion*:  *I move that the Town vote to approve Article 4, Sections A-D and that the Town vote to raise and appropriate the sum of $250,000, transfer and appropriate $50,000 from Water Retained Earnings, transfer and appropriate $50,000 from Sewer Retained Earnings and transfer and appropriate $20,000 from Country Club Retained Earnings for the purpose of Article 4A as printed in the warrant; transfer from available funds the sum of $789,634 for the purpose of Article 4B as printed in the warrant; raise and appropriate the sum of $20,000 for the purpose of Article 4C as printed in the warrant; and raise and appropriate the sum of $4,000 for the purpose of Article 4D as printed in the warrant.*

**Vote:**
**Yes=187**

No=7
**Motion carries**

**ARTICLE 5:  Capital Improvement Plan (Town Manager/Capital Expenditure Planning Committee)**
To see what action the Town may take on the following items, **A** through **I,** which may be voted as a block, or singly, or in any combination, but however voted, will be treated for accounting purposes as if each item were voted as a separate article:

**A. 20 Passenger Mini-Bus (Council on Aging)**
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Eighty One Thousand Four Hundred Thirty Three Dollars ($81,433) or such other amount as the Town Meeting may approve, for the purpose of replacing a 2006 mini-bus, or take any other action thereon.

*Town Manager's Statement – This article would fund the replacement of a 2006 mini bus for $81,433.  The 2006 is unreliable and replacement parts have become difficult to obtain and the cost of maintenance and down time has increased. This mini-bus has an estimated useful life of 7-10 years and is used to transport senior citizens.  The motion for this article is a simple majority vote.*

**B. DPW Equipment (Public Works)**
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Two Hundred Fifty Thousand Dollars ($250,000) or such other amount as Town Meeting may approve, for the purpose of replacing the 1986 Chevy C170 Catch Basin Cleaner and other DPW equipment, or take any other action thereon.

*Town Manager's Statement – This article would fund the replacement of 31 year old catch basin cleaner that is unreliable and parts are difficult to obtain and the cost of maintenance and down time has increased.  This piece of equipment is used to meet the Town's required compliance with EPA Stormwater Regulations related to maintaining catch basins for street drainage and has an estimated useful life of 7-10 years.  The motion for this article is a simple majority vote.*

**C. Fire Department Ambulance (Fire)**
To see if the Town will vote to transfer from Ambulance Reserved Receipts Account and appropriate the sum of One Hundred Eighty Thousand Dollars ($180,000) and to transfer from Free Cash and appropriate the sum of Ninety Five Thousand Dollars ($95,000) or such other amount as Town Meeting may approve, for the purpose of replacing an ambulance in the Fire Department, or take any other action thereon.

*Town Manager's Statement – This article would fund the planned recurring program to replace one of the Town's three ambulances every three years so that the oldest ambulance in the fleet is between 9-10 years old at the time of replacement. Ambulances have an expected life span of 10 years and as a piece of emergency equipment, the Town seeks to ensure reliability. The motion for this article is a simple majority vote.*

**D. All-Terrain Vehicle (Fire)**
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Thirty One Thousand Dollars ($31,000) or such other amount as Town Meeting may approve, for the purpose of purchasing an all terrain vehicle for the Fire Department, or take any other action thereon.

*Town Manager's Statement – This article would fund the addition of an all-terrain vehicle (ATV) to the Fire Department that can be used off road on town trails to ensure that more expensive ambulances are not used off road.  The Town has borrowed ATV's from neighboring communities several times over the past six months which has highlighted the need to have one ready and available in Town.  The motion for this article is a simple majority vote.*

**E. Capital Stabilization Fund**
To see if the Town will vote to transfer from Free Cash and appropriate the sum of One Hundred Thousand Dollars ($100,000) or such other amount as Town Meeting may approve, to the Capital Stabilization Fund, or take any other action thereon.

*Town Manager's Statement – This request is to fund the capital stabilization fund which currently has a balance of $238,611.  Last year, $210,000 was appropriated to help offset the costs associated with the replacement of Rescue 1.  This request would add $100,000 to the Capital Stabilization Fund toward the purchase of the replacement of future large purchases.  The motion for this article is a simple majority vote.*

### F. Phone System Upgrades (MIS/GIS)

To see if the Town will vote to transfer from Free Cash and appropriate the sum of Twenty Four Thousand Eight Hundred Dollars ($24,800) or such other amount as Town Meeting may approve, for the purpose of replacing the phone systems in the Public Works Department and Senior Center, or take any other action thereon.

*Town Manager's Statement – The MIS/GIS Department has the responsibility of overseeing all of the Town's phone systems. Most have been replaced over the years so that the Fire Department, Town Hall, Police Department and Library are all on the same phone system. The manufacturer of the DPW phone system went out of business in 2013. The expected return on investment (through the reduction of the number of lines needed through tolling) is 5.4 years. The motion for this article is a simple majority vote.*

### G. Cruiser Replacement (Police)

To see if the Town will vote to transfer from Free Cash and appropriate the sum of One Hundred Fifteen Thousand Dollars ($115,000) or such other amount as Town Meeting may approve, for the purpose of replacing two police cruisers, or take any other action thereon.

*Town Manager's Statement – This article would fund the replacement of two police cruisers. Those being replaced have high mileage, many idling hours and those costing the department the most to maintain. The department is on a regular replacement schedule which includes the mobile data terminals and radar units. The life expectancy of a police cruiser is five years; this article would replace the Town's two oldest cruisers. The motion for this article is a simple majority vote.*

### H. Sewer Grinder Installation at Pump Station (Public Works)

To see if the Town will vote to transfer from Sewer Retained Earnings and appropriate the sum of Sixty Five Thousand Dollars ($65,000) or such other amount as Town Meeting may approve, for the purpose of installing a grinder pump at the Longmeadow Pump Station, or take any other action thereon.

*Town Manager's Statement – This article would fund the second of a multi-year plan to install grinder pumps at various pump stations. Specifically, this appropriation would fund the installation of a grinder pump at the Longmeadow Pump Station. Wastewater Grinder Pumps can effectively precondition solids, including non-dispersible solids into smaller pieces that can pass through pumps without clogging or damaging the pumps. The motion for this article is a simple majority vote.*

### I. Replace Fire Hydrants (Public Works)

To see if the Town will vote to transfer from Water Retained Earnings and appropriate the sum of Thirty Thousand Dollars ($30,000) or such other amount as Town Meeting may approve, for the purpose of replacing ten (10) fire hydrants in FY18, or take any other action thereon.

*Town Manager's Statement – This article would fund the second year of a recurring program to replace fire hydrants to replace antiquated hydrants in need of replacement. Parts for the older hydrants are difficult to obtain, newer hydrants open more easily and are more efficient. The motion for this article is a simple majority vote.*

### J. Weapons Replacement (Police)

To see if the Town will vote to transfer from Free Cash and appropriate the sum of Seventy One Thousand Five Hundred Dollars ($71,500) or such other amount as Town Meeting may approve, for the purpose of replacing the police department's weapons, or take any other action thereon.

*Town Manager's Statement – This article would fund the replacement of all of the police department's weapons. The department's patrol rifles are 13 years old and the handguns will be 15 years old. Both are beyond the 8-10 year life span recommended by experts for police department weapons. The motion for this article is a simple majority vote.*

<u>Bruce Tretter, Board of Selectman</u> - Motion:
*I move that the Town vote to transfer from Free Cash and appropriate*
*The sum of $81,433 for the purposes of Article 5A; transfer from Free Cash and appropriate the sum of $250,000 for the purposes of Article 5B; transfer from Free Cash and appropriate the sum of $95,000 and transfer from Ambulance Reserved Receipts the sum of $180,000 for the purposes of Article 5C; transfer from Free Cash and appropriate the sum of $31,000 for the purposes of Article 5D; transfer from Free Cash and appropriate the sum of $100,000 to the Capital Stabilization Fund for the purpose of Article 5E; transfer from Free Cash and appropriate the sum of $24,800 for the purposes of Article 5F; transfer from Free Cash and appropriate the sum of $115,000 for the purpose of Article 5G; transfer from Sewer Retained Earnings and appropriate the sum of $65,000 for the purpose of 5H; transfer from Water Retained Earnings the sum of $30,000 for the purpose of Article 5I; and transfer from Free Cash and appropriate the sum of $71,500 to replace the weapons, and other equipment for the purpose of Article 5J; and further moved that the size of the town's fleet*

*will increase by the purchase of one ATV.*

**Vote:**
**Yes=201**
**No=11**
**Motion carries**

----------

\*\*Point of Order – Hazel Nourse, 80 Nourse St.
*I move that article 41 & 42 of the Town Warrant concerning the disposition of the Spurr House be moved for discussion and action at this time, prior to Article 6.*

Vote:
Yes =103
No=95
Motion fails a 2/3 vote not achieved.
----------

**ARTICLE 6: Tennis Court/Pickle Ball Court – Reallocation of Funds (Recreation Dept)**
To see if the Town will vote to transfer from Article 13 of the 2017 Annual Town Meeting, Recreation Parking Lot at former State Hospital Property Article and appropriate the sum of Fifty Four Thousand Seven Hundred Thirty Five and 86/100 Dollars ($54,735.86) or such other amount as Town Meeting may approve, for the purpose of installing surfacing for a new tennis court and pickle ball court on Lyman Street, or take any other action thereon.

*Town Manager's Statement – The parking lots at the former state hospital property have been constructed and bids came in below the original appropriation of $244,500 which allows the Recreation Department to surface a new tennis court that has been under construction and to surface a pickle ball court, which the Town has been receiving requests to provide a location for pickle ball. The motion for this article is a simple majority vote.*

<u>Earl Storey, Recreation Commission</u> - Motion: *I move that the Town vote to transfer from Article 13 of the 2017 Annual Town Meeting and appropriate $54,735.86 for the purpose stated in the article as printed in the warrant.*

**Vote:**
**Yes=176**
**No=17**
**Motion carries.**

**ARTICLE 7: Aerial Flyover for Geographical Information System (GIS) (IT Director)**
To see if the Town will vote to transfer from free cash, water retained earnings or sewer retained earnings and appropriate the sum of Eighty Five Thousand Six Hundred Seventy Nine Dollars ($85,679) or such other amount as Town Meeting may approve for the purpose of having an update to the 2009 orthophotographs that accompany the GIS, or take any other action thereon.

*Town Manager's Statement – This article would fund an update to the orthophotos used in conjunction with the Town's Geographic Information System (GIS) that were last updated in 2014 and 2009. This data is used by various town departments as well as commercial businesses and developers. This article is a simple majority vote.*

*Shelby Marshall, Board of Selectmen - Motion: I move that the Town vote to transfer from Free Cash and appropriate $42,839; transfer from Water Retained Earnings and appropriate $21,420; and transfer from Sewer Retained Earnings and appropriate $21,420 for the purpose stated in the article as printed in the warrant.*

**Vote:**
**Yes=170**
**No=14**
**Motion carries**

**ARTICLE 8: Country Club Storm Shelter Replacement (Country Club Operating Committee)**
To see if the Town will vote to transfer from Country Club Retained Earnings and appropriate the sum

of Two Thousand Five Hundred Dollars ($2,500) or such other amount as Town Meeting may approve, for the purpose of replacing the storm shelter at the Country Club, or take any other action thereon.

*Town Manager's Statement – The Country Club has a shelter on the golf course to protect golfers at the far end of the golf course that has deteriorated and needs to be replaced. The funds for this project are being appropriated from the Country Club Operating Committee's Funds and not the General Fund. The motion for this article is a simple majority vote.*

*Dexter Blois, Country Club Committee - Motion:*
*I move that the Town vote to transfer from Country Club Retained Earnings*
*and appropriate $2,500 for the purpose stated in the article as printed in the warrant.*

**Vote:**
**Yes=166**
**No=16**
**Motion Carries.**

## ARTICLE 9: Country Club Mower Lease (Country Club Operating Committee)
To see if the Town will vote to authorize the Country Club Operating Committee to lease purchase a Fairway Mower pursuant to MGL Chapter 44, Section 21C, or such other enabling statute, for a term of five (5) years and an annual amount not to exceed $13,500, or take any other action thereon.

*Town Manager's Statement – The Country Club Operating Committee needs to replace the mower used on the fairways at the golf course and is seeking to lease/purchase a new fairway mower. The motion for this article requires a 2/3 majority vote.*

*Dexter Blois, WCC -Motion:*
*I move that the Town vote to approve the lease/purchase for a period of 5 years in an amount not to exceed $13,500 per year to be paid from the Country Club Fund for the purpose stated in the article as printed in the warrant.*

**Vote:**
**Yes=166**
**No=16**
**2/3 Vote Motion Carries**

## ARTICLE 10: DOR Certification Revaluation (Board of Assessors)
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Twenty Five Thousand Dollars ($25,000) or such other amount as Town Meeting may approve, for the purpose of funding the required Department of Revenue certification revaluation of the Town and subsequent interim valuation adjustments, or take any other action thereon.

*Town Manager's Statement – This appropriation would fund the revaluation certification required by the Department of Revenue that the Board of Assessors needs to undertake every five years as well as interim valuation adjustments. The motion for this article is a simple majority vote.*

*Leigh Emery, BOS - Motion: I move that the Town vote to transfer from Free Cash and appropriate $25,000 for the purpose stated in the article as printed in the warrant.*

**Vote:**
**Yes=168**
**No=12**
**Motion Carries.**

## ARTICLE 11:  Sick Leave Buy Back (Town Manager)
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Two Thousand Five Hundred Dollars ($2,500) or such other amount as Town Meeting may approve, for the purpose of paying a contractual sick leave buy back from an unanticipated retirement, or take any other action thereon.

*Town Manager's Statement – The Town's Personnel Policies and Union Contracts provide a maximum payout for accumulated and unused sick leave at the time of retirement with a maximum amount paid out of $3,000. During the past year, there were two unanticipated retirements that would be funded by this article (the amount sought is the difference*

*between what was anticipated and the total amount due). The motion for this article is a simple majority vote.*

<u>*Ian Johnson, Board of Selectmen - Motion*</u>*:*
*I move that the Town vote to transfer from Free Cash and appropriate $2,500 for the purpose stated in the article as printed in the warrant.*

**Vote:**
**Yes=161**
**No=19**
**Motion Carries**

**ARTICLE 12:  Tree Pruning – State Hospital (DPW Director)**
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Twenty Five Thousand Twenty Dollars ($25,020) or such other amount as Town Meeting may approve, for the purpose of pruning approximately 90 trees on the former State Hospital property, or take any other action thereon.

*Town Manager's Statement – This Article would fund pruning a large number of trees on the portion of the State Hospital property that the Town will be retaining.  Many of the trees have not been pruned in many years and are in dire need of being properly pruned.  The motion for this article is a simple majority vote.*

<u>*John Walden, DPW Director - Motion*</u>*: I move that the Town vote to transfer from Free Cash and appropriate $25,020 for the purpose stated in the article as printed in the warrant.*

Derek Saari, Conservation Comm. spoke to article

**Vote:**
**Yes=169**
**No= 13**
**Motion carries.**

**ARTICLE 13:  Tree Pruning – Downtown (DPW Director)**
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Eleven Thousand Twenty Five Dollars ($11,025) or such other amount as Town Meeting may approve, for the purpose of pruning approximately 35 trees in the downtown area, or take any other action thereon.

*Town Manager's Statement – This Article would fund pruning approximately 35 trees in the downtown area.   Many of the trees have not been pruned in many years and are in dire need of being properly pruned.  The motion for this article is a simple majority vote.*

<u>*John Walden, DPW - Motion*</u>*: I move that the Town vote to transfer from free cash and appropriate $11,025 for the purpose stated in the article as printed in the warrant.*

**Vote:**
**Yes=160**
**No=14**
**Motion carries.**

**ARTICLE 14: Land Acquisition (Open Space Committee)**
To see if the Town will vote to raise and appropriate, transfer from available funds, including, without limitation, the Walkup Robinson Account, and/or borrow the sum of Four Hundred Fifty Thousand Dollars ($450,000) or such other amount as Town Meeting may approve for the purpose of acquiring the parcels of land located at 10 & 12 Mill Road and any and all costs incidental or related thereto, and further to authorize the Board of Selectmen to acquire said parcels by gift, purchase and/or eminent domain for open space purposes on such terms and conditions as the Board of Selectmen deems in the best interests of the Town, with said parcels to be used for general municipal purposes,  or take any other action thereon.

*Town Manager's Statement – This Article seeks to provide authorization for the Board of Selectmen to acquire approximately 20 acres of property adjacent to the Veterans Freedom Park on behalf of the Open Space Committee using funds in the Walkup Robinson Fund, which presently has a balance of $1,914,987.  The motion for this article requires a 2/3 majority vote.*

*Mark Silverberg, Open Space–Motion: I Move that the Board of Selectmen is authorized to acquire, by purchase, gift, eminent domain or otherwise, the parcels of land located at 10 and 12 Mill Road, Westborough, MA, on such terms and conditions as the Board of Selectmen deems in the best interests of the Town; such land to be acquired for* general municipal *conservation and* active *recreation purposes under the control of BOS that the Board of Selectmen is authorized to execute any documents and enter into any agreements associated with such acquisition; that the sum of $450,000 is hereby appropriated to be expended at the direction of the Board of Selectmen to pay costs of acquiring said parcels, and for the payment of all costs incidental and related thereto; that to meet such appropriation the Treasurer, with the approval of the Board of Selectmen is authorized to borrow such amount under M.G.L. Chapter 44 or any other enabling authority; that the repayment of the bonds shall be from the Walkup Robinson Fund and that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied to the payment of costs approved by this vote in accordance with Chapter 44, Section 20 of the General Laws, thereby reducing the amount authorized to be borrowed to pay such costs by a like amount; and that the Board of Selectmen is authorized to execute any documents or agreements or to take any other action necessary to carry out this project.*

*Request to - Amend motion to delete the word "active" from the motion (AFC & BOS)*
Vote to amend motion:
Yes=16
No=148
Amendment defeated

*Janet Anderson, Chauncy St. – Amend motion to add "and passive"…*
Vote to amend motion:
Yes=150
No=23
Motion carries

*Paul George, Robin Road - Amend motion to remove the language "general municipal" from the motion*
Vote to amendment:
Yes=163
No=10
Amendment carries

*James Tashjian, West Main Street – Amend motion to add after purposes and before under:* and such uses which are permitted under the Walkup Robinson Trust Provisions

Vote to amend motion:
Yes=154
No=20
Motion carries

**Amended Motion:**
*I Move that the Board of Selectmen is authorized to acquire, by purchase, gift, eminent domain or otherwise, the parcels of land located at 10 and 12 Mill Road, Westborough, Massachusetts, on such terms and conditions as the Board of Selectmen deems in the best interests of the Town; such land to be acquired for conservation and passive and active recreation purposes such uses which are permitted under the Walkup Robinson Trust Provisions under the control of the Board of Selectmen that the Board of Selectmen is authorized to execute any documents and enter into any agreements associated with such acquisition; that the sum of $450,000 is hereby appropriated to be expended at the direction of the Board of Selectmen to pay costs of acquiring said parcels, and for the payment of all costs incidental and related thereto; that to meet such appropriation the Treasurer, with the approval of the Board of Selectmen is authorized to borrow such amount under M.G.L. Chapter 44 or any other enabling authority; that the repayment of the bonds shall be from the Walkup Robinson Fund and that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied to the payment of costs approved by this vote in accordance with Chapter 44, Section 20 of the General Laws, thereby reducing the amount authorized to be borrowed to pay such costs by a like amount; and that the Board of Selectmen is authorized to execute any*

*documents or agreements or to take any other action necessary to carry out this project.*

**Vote to main motion with amendments:**
**Yes=157**
**No=20**
**Motion carries, a 2/3 vote achieved**

**ARTICLE 15: Town Sewer System (DPW Director/Town Engineer)**
To see if the Town will vote to transfer from sewer Retained Earnings and appropriate the sum of Two Million Dollars ($2,000,000), or such other amount as Town Meeting may approve, for the design for repair, replacement and upgrade of the Banyan and Cumberland Sewer Pump Stations, or take any other action thereon.

*Managers Statement – This article would provide funding from the Sewer Retained Earnings Account for the design, bidding, and rehabilitation of the Banyan and Cumberland Sewer Pump Stations. The Town operates 33 sewer pump stations with life spans in the 20-30 year rang before rehabilitation is recommended. These two stations are near 30 years old and Cumberland has a deteriorated wet well that is need of full replacement. At this time, the Town has nearly 4 million in the Sewer Retained Earnings Account and can fund this upgrade without borrowing; however, future pump station improvements of this magnitude will likely require the Town to borrow funds to undertake this work. This Article requires a simple majority vote.*

*<u>John Walden, DPW Director - Motion</u>: I move that the Town vote to transfer from Sewer Retained Earnings and appropriate $2,000,000 for the purpose stated in the article as printed in the warrant.*

Carl Balduf, Engineer spoke to the article.

**Vote:**
**Yes=156**
**No=0**

**ARTICLE 16:  Water Capital Equipment and Projects (DPW Director & Conservation Officer)**
To see if the Town will vote to transfer from Water Retained Earnings and appropriate the sum of Fifty Nine Thousand ($59,000) dollars or such other amount as Town Meeting may approve, for the purpose of surveying and installing signage at the boundaries of the Andrews 1/1R, Andrews 2, Wilkinson, Chauncy 1, Chauncy 2 and the Indian Meadows well fields, and performing other related maintenance such as, but not limited to, removing vegetation that is interfering with the associated water supply utilities, cleaning debris from tributaries to reduce flooding and removing invasive vegetation at the Hopkinton Road well field, or take any other action thereon.

*Town Manager's Statement- This Article would find the necessary maintenance and the survey of the Town's water supply boundaries and the installation of signage indicating the boundary area.  These are the last remaining water supply boundaries that need to be surveyed. The maintenance will include clearing debris from tributaries and the removal of dead, dying, hazardous, and invasive vegetation.  The motion for this article is a simple majority.*

*<u>John Walden, DPW - Motion</u>: I move that the Town vote to transfer from Water Retained Earnings and appropriate $59,000 for the purpose stated in the article as printed in the warrant.*

*Derek Saari spoke to article.*

**Vote:**
**Yes=156**
**No=1**
**Motion carries.**

**ARTICLE 17:  Water Capital Equipment and Projects (DPW Director & Conservation Officer)**
To see if the Town will vote to transfer from Water Retained Earnings and appropriate the sum of Twenty One Thousand ($21,000) dollars or such other amount as Town Meeting may approve, for the purpose of performing necessary repairs and maintenance such as but not limited to, armoring the eroded stream banks, debris removal, vegetation removal, and rebuilding existing culvert headwalls on two

tributaries that feed Sandra Pond Reservoir, or take any other action thereon.

*Town Manager's Statement – This Article would fund necessary repairs on two severely eroded tributaries that feed the Town's drinking water supply. The motion for this article is a simple majority.*

<u>John Walden, DPW - Motion</u>: *I move that the Town vote to transfer from Water Retained Earnings and appropriate $21,000 for the purpose stated in the article as printed in the warrant.*

*Derek Saari spoke to article.*

**Vote:**
**Yes=151**
**No=4**
**Motion carries.**

Leigh Emery, Chairman of the Board of Selectmen - Motion to recess until 7pm tonight.
**Yes=102**
**No=3**

**7:00 pm Meeting resumed**

**ARTICLE 18:  Authorization and Appropriation to Acquire/Dispose of 231 Turnpike Road (Board of Selectmen)**
To see if the Town will vote to authorize the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain, a parcel of land with buildings and other improvements thereon located at 231 Turnpike Road and containing approximately 29.34 acres, for general municipal and/or economic revitalization purposes, and to raise and appropriate, transfer from available funds, and/or borrow a sum of money to be expended at the direction of the Selectmen for the cost of acquiring said property and any and all costs incidental or related thereto; to authorize the Selectmen to apply for, accept and expend any grants from any source whatsoever that may be available to pay any portion of this project, and to execute any and all documents and/or other instruments as may be necessary or convenient to accomplish the foregoing purposes, or take any other action thereon.

*Town Manager's Statement – This article would authorize the Selectmen to acquire the former Regal Cinema property on Route 9 (Turnpike Road) for the purposes of redevelopment and economic development.  Regal Cinemas, which leased the property, vacated the premises in late 2017, at the end of their 20 year lease and paid property taxes through November. Since no taxes have been paid on the property since and the ownership of the property is unclear, as the record owner was administratively dissolved in 2009, it is likely that the Town will eventually acquire the property through a tax taking.  The acquisition of this property by the Town will be a proactive measure to ensure that the property does not become a blight to the neighborhood in the meantime because of neglect, vandalism and/or exposure to the elements.  Rather, the Town intends to put the property to productive use and to contribute again to the Town's tax revenue.  The motion for this article requires a 2/3 majority vote.*

<u>Ian Johnson, BOS - Motion</u>: *I move that the Board of Selectmen is authorized to acquire, by purchase, gift, eminent domain or otherwise, in fee simple, a parcel of land located at 231 Turnpike Road, Westborough, MA, as shown on the taking plan attached to the warrant for this town meeting and to be recorded herewith, including all buildings and structures thereon and all privileges and appurtenances thereto belonging thereon, consisting of approximately 29.34 acres, for general municipal and economic development purposes, and for all purposes and uses accessory thereto, and that the Board of Selectmen is authorized to execute any documents and enter into any agreements associated with such acquisition; that the sum of $6,000,000.00 is hereby appropriated to be expended at the direction of the Board of Selectmen to pay costs of acquiring said property, and for the payment of all costs incidental and related thereto; that to meet such appropriation the Treasurer, with the approval of the Board of Selectmen is authorized to borrow such amount under M.G.L. Chapter 44 or any other enabling authority; that the Board of Selectmen is authorized to apply for, accept and expend any grants from any source whatsoever that may be available to pay any portion of this project, provided that the amount of the authorized borrowing shall be reduced by the amount of such aid received prior to the issuance of bonds or notes under this vote; that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied*

*to the payment of costs approved by this vote in accordance with Chapter 44, Section 20 of the General Laws, thereby reducing the amount authorized to be borrowed to pay such costs by a like amount; and that the Board of Selectmen is authorized to take any other action necessary to carry out this project.*

**Vote:**
**Yes = 129**
**No = 1**
**Motion carries, a 2/3 vote achieved**

**ARTICLE 19:  Library Expansion Design (Library Board of Trustees)**
To see if the Town will vote to appropriate $490,000 for architectural and engineering services for the planning and design of the library expansion, including all costs incidental or related thereto; to see whether to meet this appropriation, the Town will vote to borrow said sum under the provisions of Chapter 44 of the General Laws or any other enabling authority; or take any other action thereon.

*Town Manager's Statement – The Library Board of Trustees is seeking to renovate and expand the library and has asked to continue the design process through a $490,000 debt issuance.  This project is expected to be partially funded through a MA State Library Construction Grant estimated to be approved during the Summer of 2019 with construction funds to be sought at the Fall 2019 Town Meeting, if approved by Town Meeting in 2019, this debt authorization will be reimbursable at the same rate.  The full estimated cost of this project is approximately $23.8 million with $9.4 million expected from the State for the local share total of approximately $11,900,000.  The motion for this article requires a 2/3 majority vote.*

<u>*Maureen Ambrosino, Library Director - Motion:*</u> *I move to pass over the Article.*

**Vote:**
**Yes = 137**
**No = 2**
**Motion carries a 2/3 vote achieved**

**ARTICLE 20:  Armstrong Modular Borrowing Article Amendment (School Department)**
To see if the Town will vote to increase the previously authorized borrow amount under Article 20 at the 2017 Annual Town Meeting and said article as amended by Article 3 of the November 2017 Special Town Meeting, from $1.5 million to $4.15 million. This article allows the construction of four new classrooms at Armstrong School. The total amount includes $750,000 in State Fire Code upgrades necessary to bring the existing Armstrong school building up to current State Building Codes, and the cost to date incurred in designing, bidding a modular classroom approach for this facility or some other amount as may be voted by Town Meeting or take any other action thereon.

*Town Manager's Statement – This article seeks to increase the borrowing authorization for the demolition and replacement of the Armstrong Elementary modular units.  The original article appropriated $1.5 million dollars to replace the four modular in-kind with four new modular.  When the cost came in above the anticipated cost, the School Building Committee sought an amendment at the Special Town Meeting in November 2017 to the original article to expand the use of the original borrowing authority to include the design, bidding and construction of a new addition to the Armstrong School.  The full cost at this time is estimated to be $4.15 million to build on-site four new classrooms.  The motion for this Article requires a 2/3 majority vote.*

<u>*Steve Doret, School Committee - Motion:*</u> *I move that the amount appropriated and authorized to be borrowed for the demolition and replacement of the Armstrong Elementary modular units and the design, bidding and construction of a new addition to the Armstrong School pursuant to the vote of the Town under Article 20 at the 2017 Annual Town Meeting, as amended by a vote of the Town under Article 3 of the November 2017 Special Town Meeting, is hereby increased from $1,500,000 to a total amount of $4,150,000; that up to $750,000 of the total amount appropriated and authorized to be borrowed may be used to make Fire Code required upgrades to the existing building; that to meet this additional appropriation the Treasurer with the approval of the Board of Selectmen is authorized to borrow an additional amount of $2,650,000 for such purpose under Chapter 44 of the General Laws or any other enabling authority; that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied to the payment of costs approved by this vote in accordance with Chapter 44, Section 20 of the General Laws, thereby reducing the amount authorized to be borrowed to pay such costs by a like amount; and that the Board of Selectmen is*

*authorized to take any other action necessary to carry out this project.*

**Vote:**
**Yes=126**
**No=31**
**Motion carries, a 2/3 vote achieved.**

**ARTICLE 21: High School Multi-Camera Security and Card Reading System with Bi-Directional Amplifier (BDA) as necessary for Fire and Police Department Radio Communications (Multi-Camera Security System) (School Department)**
To see if the Town will vote to raise and appropriate, transfer from available funds or borrow four hundred and two thousand and five hundred dollars ($402,500) or such other funds as may be authorized by the Town Meeting for the purpose of designing, procuring and installing a Multi-Camera Security System at the High School, and all costs incidental and related thereto, or take any other action thereon.

*Town Manager's Statement – The Article seeks authority to borrow $402,500 to design, procure and install a Multi-Camera Security System at the High School. The motion for this Article requires a 2/3 majority vote.*

<u>*Dave Crandall, School Committee - Motion*</u>*: I move that $402,500 is appropriated for the purpose of designing, procuring and installing a Multi-Camera Security System at the High School, and all costs incidental and related thereto; that to meet this appropriation the Treasurer with the approval of the Board of Selectmen is authorized to borrow $402,500 under G.L. c.44, §7(1) or any other enabling authority; that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied to the payment of costs approved by this vote in accordance with Chapter 44, Section 20 of the General Laws, thereby reducing the amount authorized to be borrowed to pay such costs by a like amount; and that the Board of Selectmen is authorized to take any other action necessary to carry out this project.*

<u>*Ed Behn, 5 Thomas Rice Rd. – Request to Amend Main Motion*</u>*:*
*that $402,500 is appropriated and be transferred from* Free Cash *for the purpose of designing, procuring and installing a Multi-Camera Security System at the High School, and all costs incidental and related thereto.*

<u>*Dexter Blois, Old Nourse - Motion to terminate debate*</u>
Vote to terminate debate:
Yes=157
No=13
Debate terminated

Vote to amended motion (Mr. Behn):
Yes=84
No=86
Motion defeated.

**Vote to Main Motion**
**Yes=152**
**No=25**
**Motion carries, a 2/3 vote achieved**

**ARTICLE 22: Town Charter Change – MIS/GIS Director to Information Technology Director (Town Manager)**
To see if the Town will vote to authorize the Board of Selectmen to petition the General Court for special legislation as set forth below to amend the Town Charter to make editorial changes; provided; however, that the General Court may make clerical or editorial changes of form only to the bill, unless the Board of Selectmen approves amendments to the bill before enactment by the General Court, and that the Board of Selectmen is authorized to approve amendments which shall be within the scope of the general public objectives of the petition, or take any other action thereon:

**AN ACT RELATIVE TO THE CHARTER OF THE TOWN OF WESTBOROUGH**

A. MIS/GIS Director

Section 1 Notwithstanding the provisions of section 10 of chapter 43B of the General Laws, or of any other general or special law to the contrary, the charter of the Town of Westborough is hereby amended by amending Section 4-2(b)(iv) to change "MIS/GIS Director" to "Information Technology Director"

*Town Manager's Statement – During 2017 the Board of Selectmen approved two position title changes to bring these title more up-to-date. One was changing MIS/GIS Director to "Information Technology Director" and this position is listed specifically as one of the appointments of the Town Manager. To make the Charter consistent with the approved position description, the Town needs to amend the Charter as proposed above.*

<u>Syed Hashmi, BOS - Motion</u>: *I move that the Town approve the article as printed in the warrant*
**Vote:**
**Yes=140**
**No=6**
**Motion carries.**

## ARTICLE 23: Amend General Bylaws, Article 8 (Town Manager)
To see if the Town will vote to amend the General Bylaws, Article 8, Section 3 by removing the strikethrough language and inserting the underlined language as follows:

(A)    The Town Treasurer/Collector hereinafter referred to as the "Treasurer/Collector" shall annually <u>and may periodically</u> furnish to each department, board, or commission, hereinafter referred to as the "licensing authority", that issues licenses or permits including renewals and transfers, a list of any person, corporation, or business enterprise, hereinafter referred to as the "party", that has neglected or refused to pay any local taxes, fees, assessments, betterments or other municipal charges ~~for not less than a twelve month period,~~ and that such party has not filed in good faith a pending application for an abatement of such tax or a pending petition before the appellate tax board.

(B)    The licensing authority may deny, revoke, or suspend any license or permit, including renewals and transfers of any party whose name appears on said list furnished to the licensing authority from the Treasurer/Collector <u>or with respect to any activity, event or other matter which is the subject of such license or permit and which activity, event or matter is carried out or exercised or is to be carried out or exercised on or about real estate owned by any party whose name appears on said list furnished to the licensing authority from the Treasurer/Collector</u>; provided however, that written notice is given to the party and the Treasurer/Collector, as required by applicable provisions of law, and the party is given a hearing, to be held no earlier than fourteen (14) days after said notice. Said list shall be prima facie evidence for denial, revocation or suspension of said license or permit to any party. The Treasurer/Collector shall have the right to intervene in any hearing conducted with respect to such license denial, revocation or suspension. Any findings made by the licensing authority with respect to such license denial, revocation or suspension shall be made only for the purpose of such proceeding and shall not be relevant to or introduced in any other proceeding at law, except for any appeal from such license denial, revocation or suspension. Any license or permit denied, suspended or revoked under this Bylaw shall not be reissued or renewed until the licensing authority receives a certificate issued by the Treasurer/Collector that the party is in good standing with respect to any and all local taxes, fees, assessments, betterments or other municipal charges, payable to the Town as of the date of issuance of said certificate.

(C)    Any party shall be given an opportunity to enter into a payment agreement, thereby allowing the licensing authority to issue a certificate indicating said limitations to the license or permit and the validity of said license shall be conditional upon the satisfactory compliance with said agreement. Failure to comply with said agreement shall be grounds for the suspension or revocation of said license or permit; provided however, that the holder be given notice and a hearing as required by applicable provisions of law.

(D)    The Board of Selectmen may waive such denial, suspension or revocation if it finds there is no direct or indirect business interest by the property owner, its officers or stockholders, if any, or members of his immediate family, as defined in Section One of Chapter 262 of the Mass.

16

General Laws in the business or activity conducted in or on said property.

(E)     This Section shall not apply to the following license or permits:

|     |     |     |
| --- | --- | --- |
| (1) | Open Burning | (MGL Ch. 48, S13) |
| (2) | Bicycle Permits | (MGL Ch. 85, S11A) |
| (3) | Sale of Articles for Charitable Purposes | (MGL Ch. 101, S33) |
| (4) | Children Work Permits | (MGL Ch. 149, S69) |
| (5) | Clubs, Associations Dispensing Food or Beverage Licenses | (MGL Ch. 140, S21E) |
| (6) | Dog Licenses | (MGL Ch. 140, S137) |
| (7) | Fishing, Hunting, Trapping Licenses | (MGL Ch. 131, S12) |
| (8) | Marriage Licenses | (MGL Ch. 207, S28) |
| (9) | Theatrical Events, Public Exhibition Permits (ATM 1999) | (MGL Ch. 140, S181) |

Or to take any other action thereon.

*Town Manager Statement – This Article would authorize the Treasurer to notify Town departments periodically prior to granting licenses and permits to property owners that have outstanding tax or other bills and charges from the Town. Presently the Town can only withhold a permit or license if the property owner is more than 12 months behind in the taxes or charges and can only provide this list annually to various permit issuing authorities. This statute was amended in 2016 to allow greater flexibility by notifying Town departments more regularly.  The motion for this article is a simple majority vote.*

<u>Shelby Marshall, BOS - Motion</u>*: I move that the Town approve the article as printed in the warrant.*

**Vote:**
**Yes=135**
**No=6**
**Motion carries**

**ARTICLE 24: Amend General Bylaws and Acceptance of the Stretch Energy Code (Board of Selectmen)**
To see if the Town will vote to amend Article 63, Section 1 of the General Bylaws, by deleting the current Section 1 – Building Code (Replaced by State Building Code) and replacing it with a new Section 1 entitled "Stretch Energy Code" as follows for the purpose of regulating the design and construction of buildings for the effective use of energy, pursuant to Appendix 115.AA of the Massachusetts Building Code, 780 CMR, the Stretch Energy Code, including future editions, amendments or modifications thereto, with an effective date of January 1, 2019, a copy of which is on file with the Town Clerk; or to take any other action thereon.

SECTION 1 - STRETCH ENERGY CODE

(A)     Definitions

International Energy Conservation Code (IECC) – The International Energy Conservation Code (IECC) is a building energy code created by the International Code Council. It is a model code adopted by many state and municipal governments in the United States for the establishment of minimum design and construction requirements for energy efficiency, and is updated on a three-year cycle. The baseline energy conservation requirements of the MA State Building Code are the IECC with Massachusetts amendments, as approved by the Board of Building Regulations and Standards.

Stretch Energy Code – Codified by the Board of Building Regulations and Standards as 780 CMR Appendix 115.AA of the Massachusetts building code, the Stretch Energy Code is an appendix to the Massachusetts building code, based on further amendments to the International Energy Conservation Code (IECC) to improve the energy efficiency of buildings built to this code.

(B)     Purpose

The purpose of 780 CMR 115.AA is to provide a more energy efficient alternative to the Base Energy Code applicable to the relevant sections of the building code for new buildings.

(C)     Applicability

This code applies to residential and commercial buildings. Buildings not included in this scope shall comply with 780 CMR 115.AA, as indicated.

(D)     Stretch Code

The Stretch Code, as codified by the Board of Building Regulations and Standards as 780 CMR Appendix 115.AA, including any future editions, amendments or modifications, is herein incorporated by reference into the Town of Westborough General Bylaws, Article 63.

The Stretch Code is enforceable by the inspector of buildings or building commissioner and effective as of January 1, 2019.

Or take any other action thereon.

*Town Manager's Summary – The adoption of the Stretch Energy Code is required for the Town to be eligible and apply for the Green Communities Act.  It would put in place additional energy efficiency requirements for both residential and commercial building.  The motion for this Article requires a simple majority vote.*

<u>Leigh Emery, BOS - Motion</u>: *I move that the Town vote to approve this article as printed in the warrant.*

**Vote:**
**Yes=147**
**No=5**
**Motion carries.**

**ARTICLE 25: Amend General Bylaws Plastic Bag Reduction Bylaw (Town Manager)**
To see if the Town will vote to amend the General Bylaws, by adding the following new Article as follows:

**Article 33 – Plastic Bag Reduction**

This bylaw shall be known as the Plastic Bag Reduction Bylaw.

Section 1     Purpose and Intent

The production and use of thin-film single-use plastic checkout bags have significant impacts on the environment, including, but not limited to contributing to the potential death of aquatic and land animals through ingestion and entanglement; contributing to pollution of the natural environment; creating a burden to solid waste collection and recycling facilities; clogging storm drainage systems; and requiring the use of millions of barrels of crude oil nationally for their manufacture. The purpose of this bylaw is to protect the Town's unique natural beauty and its water and natural resources by eliminating single-use plastic checkout bags that are distributed in the Town of Westborough and to promote the use of reusable bags.

Section 2     Definitions

"Checkout bag" – means a carryout bag provided by a store to a customer at the point of sale.  Checkout bags shall not include bags, whether plastic or not, in which loose produce or products are placed by the consumer to deliver such items to the point of sale or checkout area of the store.

"Grocery Store" – means a retail establishment where more than fifty percent (50%) of the gross floor area is devoted to the sale of food products for home preparation and consumption, which typically also offers home care and personal care products.

"Retail Store" – means any business facility that sells goods directly to the consumer whether for or not for profit, including, but not limited to, retail stores, restaurants, pharmacies, convenience and grocery

stores, liquor stores, seasonal and temporary businesses.

"Reusable checkout bag" – means a bag with handles that is specifically designed and manufactured for multiple reuse and is either polyester, polypropylene, cotton or other durable material, or durable plastic that is at least 4.0 Mils in thickness.

"Thin-film single -use plastic bags" – are those bags typically with handles, constructed of high-density polyethylene (HDPE), low density polyethylene (LDPE), linear low density polyethylene (LLDPE), polyvinyl chloride (PVC), polyethylene terephthalate ( PET), or polypropylene (other than woven and non -woven polypropylene fabric), if said film is less than 4.0 mils in thickness.

"Recyclable paper bag" – means a paper bag that is 100 percent recyclable and contains at least 40% post–consumer recycled content, and displays the words "recyclable" and "made from 40% post-consumer recycled content" in a visible manner on the outside of the bag.

Section 3        Use Regulations

(A)      Thin-film single-use plastic bags shall not be distributed, used, or sold for checkout or other purposes at any retail store or grocery store within the Town of Westborough.

(B)      If a grocery or retail store provides or sells checkout bags to customers, the bags must be one of the following (1) recyclable paper bags, or (2) reusable checkout bags.  The grocery or retail store may charge for said bags.

(C)      Thin-film plastic bags used to contain dry cleaning, newspapers, produce, meat, bulk foods, wet items and other similar merchandise, typically without handles, are still permissible.

Section 4        Effective Date

This bylaw shall take effect six (6) months following Town Meeting approval of the bylaw.  Upon application of the owner or the owner's representative, the Board of Selectmen or their designee may exempt a grocery retail store from the requirements of this section for a period of up to six (6) months upon a finding by the Board of Selectmen or their designee that (1) the requirements of this section would cause undue hardship; or (2) a grocery or retail store requires additional time in order to draw down an existing inventory of checkout bags.

Section 5        Enforcement

Enforcement of this bylaw shall be the responsibility of the Board of Selectmen or their designee. The Board of Selectmen or their designee shall determine the monitoring process to be followed, which may be limited to responding to citizen reports, incorporating the process into other town duties as appropriate.

Any grocery or retail store distributing plastic checkout bags in violation of this bylaw shall be subject to a noncriminal disposition fine as specified in Article 31 of the General Bylaws, Noncriminal Disposition of Certain Violations of Bylaws and Rules and Regulations.  Any such fines shall be paid to the Town of Westborough.  No licenses shall be renewed for any establishment with outstanding violations under this section.

Section 6        Severability

If any provision of this bylaw is declared invalid or unenforceable the other provisions shall not be affected thereby.
And further to amend Article 31, Section 2(C) by adding violations to Article 33 as follows:

Article 33 Violation of the Plastic Bag Reduction Bylaw – first offense – written warning; 2nd offense $50 per offense; 3rd and subsequent offenses - $100 per offense.

Or to take any other action thereon.

19

*Town Manager Statement – This Article would eliminate the use of plastic bags at check out in grocery and retails stores; it does allow certain plastic bags, such as those used in produce/bulk sales. The bylaw would allow the sale of recyclable paper bags and reusable bags. The bylaw allows a six month timeframe for stores to comply and provides for penalties through non-criminal disposition for violations. The motion for this article is a simple majority vote.*

<u>*Bruce Tretter, BOS - Motion*</u>: *I move that the Town vote to approve this article as printed in the Warrant; except where references to all Selectman in the article, be changed as needed to Selectmen.*

Motion to move the question and terminate debate
Vote:
Yes=135
No=10
Debate ended

<u>Dexter Blois, Old Nourse St - Motion</u> to amend - $50 per offense "and all thereafter."
Vote:
Yes=133
No=12
Amendment passes

**Vote: Main Motion as amended**

**Yes=113**
**No=33**
**Motion carries**

*Note:  Mr. Tretter announced the 20th Anniversary of WCLT and the Earth Day Cleanup to take place on Saturday, April 21st,  rain or shine 6:30am at Bellows Rd and West Meadow Plaza…main clean up time 9:30am congregate at Bay State Commons distribute bags.  11:30-Noon, Pizza for those who help.

**ARTICLE 26: Amend Zoning Bylaws: Article 5 – Definitions (Planning Board)**
To see if the Town will amend its Zoning Bylaws, Article 5 Definitions, by adding the following new definitions:

Floor Area Ratio (FAR):
The ratio of the sum of the gross floor area of all buildings on a lot to the total site area of the lot.

Gross Floor Area:
The sum, in square feet, of the horizontal areas of a building (or several buildings on the same lot) measured from the exterior face of the exterior walls, or from the center line of a party wall separating two buildings, including garages, basements, covered porches, and half stories. Floors where the headroom is greater than five feet, measured from the top of the floor joists of the top story to the bottom of the roof rafters, is included in the measurement of gross floor area. Gross floor area does not include "crawl spaces" as defined by current building code; "attics"; and "open decks".  Where the text of this bylaw refers to the floor area, the term means gross floor area unless the term habitable floor area is used.

Or take any other action thereon.

*Town Manager's Summary – This Article seeks to add new definitions to clarify terms used currently in the zoning bylaws yet which are not currently defined.  The motion for this Article requires a 2/3 majority vote.*

<u>*Hazel Nourse, Planning Board - Motion*</u>: *I move that the Town vote to approve this article as printed in the warrant.*

**Vote:**
**Yes=111**
**No=6**
**Motion carries, 2/3 vote achieved**

**ARTICLE 27:  Amend Zoning Bylaws – Pre-Existing, Non-Conforming Uses or Structures (Planning Board)**
To see if the Town of Westborough will vote to amend its Zoning Bylaws by deleting Article 2 District

Regulations, Section 2410. PRE-EXISTING NONCONFORMING USES OR STRUCTURES (EXTENSIONS AND ALTERATIONS) in its entirety. And by inserting in its place the following new language and subsections:

2410. PRE-EXISTING NONCONFORMING USES OR STRUCTURES (EXTENSIONS) This section shall not apply to billboards, signs and other advertising devices subject to the provisions of Section 29 through 33, inclusive, of Chapter 93 of Chapter 93D, General Laws.

The Board of Appeals, by Special Permit, may authorize lawfully pre-existing, non-conforming uses or structures to be changed or altered; provided that such extension, alteration or enlargement meets all the following requirements:

2410.1 All the special permit guidelines of section 1330;

2410.2 That it will not be substantially more detrimental or objectionable to the neighborhood than the existing non-conforming structure or use to the neighborhood.

2411. Building construction and Special Permits. Construction or operations under a Building or Special Permit obtained in conformity with this Zoning Bylaw or lawful amendments thereto, shall conform to any subsequent amendments of the Zoning Bylaw unless the use or construction is commenced within a period of not more than six (6) months after the issuance of such Permit, and in cases involving construction, unless such construction is continued through to completion as continuously and expeditiously as is reasonable.

2412. Non-conforming Single and Two Family Residential Structures. Non-conforming single and two family residential structures may be reconstructed, extended, altered, or structurally changed upon a determination by the Zoning Enforcement Officer that such proposed reconstruction, extension, alteration, or change does not increase the non-conforming nature of said structure. The aggregate sum of the gross floor area of all additions to a structure since the date when the structure became non-conforming under the provisions of this subsection shall not be greater than 50% of the gross floor area of the dwelling unit or one thousand (1000) square feet, whichever is smaller, unless a Special Permit is issued by the Zoning Board of Appeals under Section 2410 allowing a larger gross floor area. The following circumstances shall not be deemed to increase the non-conforming nature of said structure:

2412.1 Alteration to a structure which complies with all current setback, yard, building coverage, and building height requirements but is located on a lot with insufficient area, where the alteration will also comply with all of said current requirements.

2412.2 Alteration to a structure which complies with all current setback, yard, building coverage, and building height requirements but is located on a lot with insufficient frontage, where the alteration will also comply with all of said requirements.

2412.3 Alteration to a structure which encroaches upon one or more required yard or setback areas, where the alteration will comply with all current setback, yard, building coverage and building height requirements; the provisions of this subsection shall apply regardless of whether the lot complies with current area and frontage requirements.

2412.4 Alteration to the side, front or rear of a structure which encroaches upon a required yard or setback area, where the alteration will not encroach upon such area to a distance greater than the existing structure; the provisions of this subsection shall apply regardless of whether the lot complies with the current area and frontage requirements.

2413. Notwithstanding Section 2412, in the event that the Zoning Enforcement Officer determines that the non-conforming nature of such structure would be increased by the proposed reconstruction, extension, alteration, or change, the Board of Appeals may, by special permit, allow such reconstruction, extension, alteration, or change where the proposed modification will not be substantially more detrimental than the existing non-conforming structure to the neighborhood.

2414. Pre-Existing non-conforming use: Any increase in the area or extent of the non-conforming use of

21

a structure or land made by Special Permit from the Special Permit Granting Authority, is limited to a fifty percent (50%) increase in the non-conforming floor area or land area at the time the use became non-conforming.

Or take any other action thereon.

*Town Manager's Statement – This Article seeks to allow non-conforming single and two family residential structures to be reconstructed, extended, altered, or structurally changed up to 50% or 1,000 square feet by-right upon a determination by the Zoning Enforcement Officer. Currently, any increase in square footage for a non-conforming structure or use requires action by the ZBA. The property owner can still appeal to the ZBA for increases greater than 50% or 1,000 square feet. The amendment is a benefit to the property owner making proposed modest additions a simpler and less expensive process. The motion for this Article requires a 2/3 majority vote.*

<u>*Tim Paris, Planning Board - Motion*</u>*:  I move that the Town vote to approve this article as printed in the warrant.*

**Vote:**
**Yes=120**
**No=4**
**Motion carries a 2/3 vote achieved**

**ARTICLE 28: Amend Zoning Bylaws – Garden and High-Rise Apartments (Planning Board)**
To see if the Town will vote to amend its Zoning Bylaws, Article 2 District Regulations, Section 2600 Dimensional Schedule, Subsection 2610 Use Category, by amending the Use Category Table for Garden Apartments (AA) and High-Rise Apartments (AB) by creating new requirements for affordable units as shown below in **bold**:

| | USE CATEGORY | | | | |
|---|---|---|---|---|---|
| | Garden Apartment (AA) | High-Rise Apartment (AB) | Senior Living Overlay | All Other | |
| Min. number of affordable unit (%) | **20% (p) (r)** | **20% (p) (r)** | 20% (p) (r) | | |

Or take any other action thereon.

*Town Manager's Statement – This amendment is for multi-family residential projects. The 20% affordable requirement is the Commonwealth's threshold for receiving credit for all units in an affordable rental project. The 20% requirement can be reduced if the developer offers an alternative to the 20% provided that other affordable housing contributions are offered and are deemed acceptable to the Town. This is the same provision adopted at the most recent Town Meeting for age restricted housing in the Senior Living Overlay District. The motion for this Article requires a 2/3 majority vote.*

*Footnotes (p) and (r) currently exist in the Zoning Bylaws. These shall remain unchanged and are shown below for informational purposes.*

*(p)  Units that are to be designated affordable must comply with the requirements of the Massachusetts Department of Housing and Community Development or a successor agency. Such units shall have deed restrictions regarding affordability which will continue in perpetuity and will allow the units to "count" as State recognized affordable units. All such affordable units shall be priced at levels affordable to individuals or families earning no more than 80% of Area Median Income (AMI) as published by the State/US Department of Housing and Urban Development (HUD).*

*(r) Applicants for affordable housing projects shall be expected to meet the 20% minimum number of affordable units provided herein. The Special Permit Granting Authority may, however, in its discretion decrease the minimum 20% affordable housing requirement to no less than 10% provided that other affordable housing contributions are made to the Town which the Special Permit Granting Authority deems sufficient to meet affordable housing needs. Such alternative contributions may include, contributions to the Town's Senior/Disabled Tax Relief Fund, creation of affordable housing units elsewhere in Town, or other alternatives deemed suitable to the Special Permit Granting Authority.*

<u>*Mark Silverberg, Planning Board - Motion*</u>*:  I move that the Town vote to approve this article as printed in the warrant.*

**Vote:**
**Yes=109**
**No=5**
**Motion carries, 2/3 vote achieved.**

**ARTICLE 29:  Amend Zoning Bylaws – Multi-Family Housing in Highway Business District (Planning Board)**
To see if the Town will vote to amend its Zoning Bylaws, Article 4, Special Regulations, Section 5200, Multi-Family Housing in the Highway Business District (BA) by amending the third sentence in Section 5262 as follows (additions and deletions in bold):

Section 5262. AFFORDABLE HOUSING

All **multi-family** residential proposals made in the BA zone shall allocate a minimum of 20% of the total number of dwelling units ~~for ownership condominiums or 10% of the total dwelling units for rental apartments~~ as housing that is affordable to households earning 80% or less of median income for the Worcester Metropolitan Statistical Area as determined by the most recent calculation of the U.S. Department of Housing and Urban Development.

So that the new third sentence reads as follows:

All multi-family residential proposals made in the BA zone shall allocate a minimum of 20% of  the total number of dwelling units as housing that is affordable to households earning 80% or less of median income for the Worcester Metropolitan Statistical Area as determined by the most recent calculation of the U.S. Department of Housing and Urban Development.

And by adding the following paragraphs immediately at the end of Section 5262:

**The minimum of 20% of the units that are to be designated affordable must comply with the requirements of the Massachusetts Department of Housing and Community Development or a successor agency. Such units shall have deed restrictions regarding affordability which will continue in perpetuity and will allow the units to "count" as State recognized affordable units. All such affordable units shall be priced at levels affordable to individuals or families earning no more than 80% of Area Median Income (AMI) as published by the State/US Department of Housing and Urban Development (HUD).**

**All multi-family residential proposals under this section shall be expected to meet the 20% minimum number of affordable units provided herein.  The Special Permit Granting Authority may, however, in its discretion decrease the minimum 20% affordable housing requirement to no less than 10% provided that other affordable housing contributions are made to the Town which the Special Permit Granting Authority deems sufficient to meet affordable housing needs.  Such alternative contributions may include, contributions to the Town's Senior/Disabled Tax Relief Fund, creation of affordable housing units elsewhere in Town, or other alternatives deemed suitable to the Special Permit Granting Authority.**

Or take any other action thereon.

*Town Manager's Statement – This Article amend the Zoning Bylaws for multi-family residential projects in the Highway Business District (BA).  The 20% affordable requirement is the Commonwealth's threshold for receiving credit for all units in an affordable rental project. The 20% requirement can be reduced if the developer offers an alternative to the 20% provided that other affordable housing contributions are offered and are deemed acceptable to the Town.  This is the same provision adopted at our most recent Town Meeting for age restricted housing in the Senior Living Overlay District.  The motion for this Article requires a 2/3 majority vote.*

<u>*Mark Silverberg, Planning Board - Motion*</u>*:  I move that the Town vote to approve this article as printed in the warrant.*

23

**Vote:**
**Yes=103**
**No=6**
**Motion carries 2/3 vote achieved**

**ARTICLE 30:  Amend Zoning Bylaws – Downtown Planning Overlay District – Affordable Housing (Planning Board)**

To see if the Town will vote to amend its Zoning Bylaws, Article 4, Special Regulations, Section 4900, Downtown Planning Overlay District (DPOD) by creating a new Section 4955 as follows:

Section 4955.  AFFORDABLE HOUSING

Mixed-use projects proposed in the Downtown Planning Overlay District shall be required to provide an affordable housing component for all projects containing a residential component. A minimum of 20% of the residential units shall be designated affordable and shall comply with the requirements of the Massachusetts Department of Housing and Community Development or a successor agency. Such units shall have deed restrictions regarding affordability which will continue in perpetuity and will allow the units to "count" as State recognized affordable units. All such affordable units shall be priced at levels affordable to individuals or families earning no more than 80% of Area Median Income (AMI) as published by the State/US Department of Housing and Urban Development (HUD).

Mixed-use projects containing residential components shall be expected to meet the 20% minimum number of affordable units provided herein.  The Special Permit Granting Authority may, however, in its discretion decrease the minimum 20% affordable housing requirement to no less than 10% provided that other affordable housing contributions are made to the Town which the Special Permit Granting Authority deems sufficient to meet affordable housing needs.  Such alternative contributions may include, contributions to the Town's Senior/Disabled Tax Relief Fund, creation of affordable housing units elsewhere in Town, or other alternatives deemed suitable to the Special Permit Granting Authority.

Or take any other action thereon.

*Town Manager's Statement – This Article amends the Zoning Bylaw for mixed-use residential projects in the Downtown Planning Overlay District (DPOD).  The 20% affordable requirement is the Commonwealth's threshold for receiving credit for all units in an affordable project. The 20% requirement can be reduced if the developer offers an alternative to the 20% provided that other affordable housing contributions are offered and are deemed acceptable to the Town. This is the same provision adopted at our most recent Town Meeting for age restricted housing in the Senior Living Overlay District.  The motion for this Article requires a 2/3 majority vote.*

<u>*Mark Silverberg, Planning Board - Motion*</u>*:  I move that the Town vote to approve this article as printed in the warrant.*

**Vote:**
**Yes=104**
**No=6**
**Motion carries 2/3 vote achieved.**

**ARTICLE 31: Amend Zoning Bylaws – Gateway 2 District Zoning Amendment (Planning Board)**

To see if the Town will vote to amend its Zoning Bylaws, Article 4, Special Regulations, Section 5100, Gateway 2 District by creating a new Section 5153 as follows:

Section 5153. AFFORDABLE HOUSING

Proposals in the Gateway 2 District that contain a multi-family residential component shall be required to provide an affordable housing percentage.  A minimum of 20% of the residential units shall be designated affordable and shall comply with the requirements of the Massachusetts Department of Housing and Community Development or a successor agency. Such units shall have deed restrictions regarding affordability which will continue in perpetuity and will allow the units to "count" as State recognized affordable units. All such affordable units shall be priced at levels affordable to individuals or families earning no more than 80% of Area Median Income (AMI) as published by the State/US Department of Housing and Urban Development (HUD).

Projects containing multi-family residential components shall be expected to meet the 20% minimum number of affordable units provided herein.  The Special Permit Granting Authority may, however, in its discretion decrease the minimum 20% affordable housing requirement to no less than 10% provided that other affordable housing contributions are made to the Town which the Special Permit Granting Authority deems sufficient to meet affordable housing needs.  Such alternative contributions may include, contributions to the Town's Senior/Disabled Tax Relief Fund, creation of affordable housing units elsewhere in Town, or other alternatives deemed suitable to the Special Permit Granting Authority.

Or take any other action thereon.

*Town Manager's Statement – This Article amends the Zoning Bylaws for multi-family residential projects in the Gateway 2 District (G2).  The 20% affordable requirement is the Commonwealth's threshold for receiving credit for all units in an affordable rental project. The 20% requirement can be reduced if the developer offers an alternative to the 20% provided that other affordable housing contributions are offered and are deemed acceptable to the Town. This is the same provision adopted at our most recent Town Meeting for age restricted housing in the Senior Living Overlay District.  The motion for this Article requires a 2/3 majority vote.*

<u>Mark Silverberg, Planning Board - Motion</u>:  I move that the Town vote to approve this article as printed in the warrant.

**Vote:**
**Yes=102**
**No=8**
**Motion carries 2/3 vote achieved**

## ARTICLE 32: Adopting Local Expedited Permitting, Chapter 43D (Planning Board):
To see if the Town will vote to accept the provisions of Chapter 43D of the Massachusetts General Laws as amended pursuant to Section 11 of Chapter 205 of the Acts of 2006, and to approve the filing of a formal proposal with the Interagency Permitting Board for the designation as a Priority Development Site for land at 800, 1200, 1300 & 1400 West Park Drive identified on the Assessor's Map 36 as Parcels 12, 12A, 12B & 22; or take any other action thereon.

*Town Manager's Statement – Chapter 43D was passed by the Commonwealth of Massachusetts in August of 2006 as an economic development tool.  The designation of 43D is parcel site specific and a separate vote for each site must be taken by Town Meeting.   This vote is specific to the properties zoned Industrial (IB) located at 800, 1200, 1300 & 1400 West Park Drive.  If accepted, the Town must agree to issue a decision on all local permits within six months of the filing date.  The permitting authority does not have to grant the permit, it simply must render a decision within 180 days.  The 43D designation places the site in a priority status for infrastructure improvement grant programs available through the State. The State will also actively market the site through its business development agencies. The motion for this article is a simple majority vote.*

<u>James Ball, Planning Board - Motion</u>:  I move that the Town vote to approve this article as printed in the warrant.

**Vote:**
**Yes=111**
**No=1**
**Motion carries, 2/3 vote achieved**

## ARTICLE 33: Accept Gift of Land Granger Road (DPW Director/Town Engineer)
To see if the Town will vote to accept, by gift and for general municipal purposes, a certain parcel of land off Granger Road identified  as Assessors Map 35, Parcel 30A  and shown as "Non-Buildable Lot 4625 SF +/-" on a plan of land entitled "Site layout Plan Zaara Gardens, Westborough, Ma 01581", prepared by hs&t group inc., , a copy of which is on file with the office of the Town Clerk and recorded with the Worcester South Registry of Deeds in Plan Book 923, Plan 65, on such terms and conditions as the Board of Selectmen deems in the best interests of the Town, or to take any other action thereon.

*Town Managers Statement – This article allows the Town to receive an approximately 30' wide by 135' long piece of land that once was anticipated as a roadway connection between the recently created Zaara Drive and Granger Road. The two roads do not connect, thereby making the land "surplus". The Board of Appeals recognized this and required that the land be conveyed to the Town in an amendment to the Zaara Drive Comprehensive Permit in 2016.  The motion for this article requires a 2/3 vote.*

_Carl Balduf, Town Engineer - Motion_:  I move that the Town approve the article as printed in the warrant.

**Vote:**
**Yes=111**
**No=1**
**Motion carries, 2/3 vote achieved**

### ARTICLE 34: Roadway Acceptance Beeton Path (DPW Director/Town Engineer)

To see if the Town will vote to accept Beeton Path as a public way, from its beginning at the sideline of Fisher Street at STA 0+00+/- to its end at STA 6+69+/-, as heretofore laid out by the Board of Selectmen and shown on a plan entitled "Road Acceptance Plan of Beeton Path in Westborough, Massachusetts", Scale 1" = 40', prepared by Guerriere & Halnon Inc., dated January 9, 2018 (latest revision) and on file in the office of the Town Clerk, and further to authorize the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain the fee to or easement in said street for all purposes for which public ways are used in the Town of Westborough, and any drainage, utility, access, water and/or other  easements related thereto, and subject to a $10,000 maintenance bond being established and held under the supervision of the Planning Board, or take any other action thereon.

_Managers Statement - This article is one of the steps required to make Beeton Path a Public Way. This is a subdivision road created by conditional approval of the Planning Board off Fisher Street about twenty years ago. The road was partially completed after it was approved and four of the six lots developed. The owner has worked with the Engineering Division over the past year to complete remaining items such as finish paving and is now ready to turn it over to the Town._

_John Walden, DPW Director - Motion_:  I move that the Town approve the article as printed in the warrant**.**

Carl Balduf, Town Engineer spoke to the article

**Vote:**
**Yes=111**
**No=1**
**Motion carries, 2/3 vote achieved**

### ARTICLE 35: Roadway Acceptance Appleseed Drive (DPW Director/Town Engineer)

To see if the Town will vote to accept Appleseed Drive as a public way, from its beginning at the sideline of Harvest Way at STA 0+00+/- to its end at STA 20+64+/- at the sideline of Adams Street, as heretofore laid out by the Board of Selectmen and shown on a plan entitled "Acceptance Plan of Appleseed Drive in Westborough, Mass owned by: Casa Builders and Developers Corp. Sheet 5 of 5 Sheets, Horizontal Scale 1" = 40 Feet", prepared by Thompson-Liston Associates Inc., dated September 20, 2002 (latest revision) and on file in the office of the Town Clerk, and further to authorize the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain, the fee to or easement in said street for all purposes for which public ways are used in the Town of Westborough, and any drainage, utility, access, and/or other easements related thereto, or take any other action thereon.

_Managers Statement - This roadway was accepted at Town Meeting in 2003, however, various deeds were not furnished to the Town and the plans and deeds were not recorded at the Registry of deeds to complete the acceptance process. Statutory time limits do not allow these documents to be recorded long after the original acceptance, therefore, the acceptance must be voted again.  The motion for this article requires a 2/3rds vote._

_John Walden, DPW Director - Motion_:  I move that the Town approve the article as printed in the warrant.

Carl Balduf, Town Engineer spoke to article.

**Vote:**
**Yes=107**
**No=2**
**Motion carries, 2/3 vote achieved**

### ARTICLE 36: Roadway Acceptance Harvest Way (DPW Director/Town Engineer)

To see if the Town will vote to accept Harvest Way as a public way, from its beginning at the sideline of

Nash Street at STA 0+00+/- to its end at STA 10+60+/-, as heretofore laid out by the Board of Selectmen and shown on a plan entitled "Acceptance Plan of Harvest Way in Westborough, Mass owned by: Casa Builders and Developers Corp., Horizontal Scale 1" = 40 Feet", prepared by Thompson-Liston Associates Inc., dated September 20, 2002 (latest revision) and on file in the office of the Town Clerk, and further to authorize the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain, the fee to or easement in said street for all purposes for which public ways are used in the Town of Westborough, and any drainage, utility, access, or other easements related thereto, or take any other action thereon.

*Managers Statement - Similar to Appleseed Drive, this roadway was accepted at Town Meeting in 2003, however, various deeds were not furnished to the Town and the plans and deeds were not recorded at the Registry of deeds to complete the acceptance process. Statutory time limits do not allow these documents to be recorded long after the original acceptance, therefore, the acceptance must be voted again. The motion for this article requires a 2/3rds vote.*

<u>*John Walden, DPW Director - Motion*</u>: *I move that the Town approve the article as printed in the warrant.*

**Vote:**
**Yes=105**
**No=2**
**Motion carries, 2/3 vote achieved**

**ARTICLE 37: West Main Street Highway/Sidewalk Easements (DPW Director/Town Engineer)**
To see if the Town will vote to authorize the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain and on such terms and conditions as the Board of Selectmen deems in the best interests of the Town, permanent and/or temporary easements for public way purposes, including, without limitation, for the purpose of constructing and/or reconstructing a public sidewalk, in, on and under the following parcels along the south side of West Main Street from Nourse Street to Kendall Drive:

| Map/Lot | Owner |
|---|---|
| 15-272 | Chi |
| 15-125A | Balasubramanian |
| 15-126 | Grattan-Richardson |
| 9-61A | Croft |
| 8-33 | Martin |
| 8-34 | Stedman |
| 8-35 | Masters |
| 8-36 | Swain |
| 8-37 | Aldrin |
| 8-38 | Bentley |
| 8-39 | Collins |
| 8-40 | Reardon |
| 8-41 | Arnold |
| 8-42 | Spiegel |
| 8-125 | Starr |
| 8-126 | Marks, Trustee |
| 8-127 | Milewski |
| 8-128 | Jernberg |
| 8-129 | Gonsalves |
| 8-130 | Smith |
| 8-131 | Salsman |
| 8-186 | Adams |
| 8-187 | Siegal |
| 8-188 | Barnes |
| 8-189 | Forryan |
| 8-190 | Giblin |
| 8-191 | Mattheson |
| 8-190 | Giblin |
| 8-219 | Chandler |

| 8-220 | Arnold |
|-------|--------|
| 8-221 | Coffee |
| 8-290A | Grady |
| 8-290 | Lord-Patterson |
| 8-291 | Welsh |

Or take any other action relative thereto.

*Town Manager's Statement – This article provides the authority for the Board of Selectmen to obtain easements along the south side of West Main Street for the purposes of installing a sidewalk. The easements may be temporary for tying in driveways and adjusting landscaping or permanent to accommodate handicap ramps, walls, or the sidewalk itself. The layout is fairly wide and it is anticipated that most of the work may be performed within Town right of way. Project funding will be through the Chapter 90 program.  The motion for this article is a simple majority vote.*

<u>John Walden, DPW Director Motion</u>: *I move that the Town approve the article as printed in the warrant.*

*Mr. Balduf spoke to the article.*

**Vote:**
**Yes=108**
**No=5**
**Motion carries, 2/3 vote achieved**

## ARTICLE 38: Acceptance of Utility Easements - Route 9 to Washington Street – EMC Campus (DPW Director)

To see if the Town will vote to authorize the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain, an easement for public utility purposes in, on and under the parcels shown on a set of plans entitled "Definitive Subdivision Southborough & Westborough, MA", prepared by Beals and Thomas recorded with the Worcester County Registry of Deeds in Plan Book 883, Plan 119 as (i) "Future 30' Wide Utility Easement 2,183$\pm$ S.F." on Sheet 3.3 of the Plan, (ii) "Utility Easement-2A 9,210$\pm$ S.F." shown as Detail E on Sheet 3.39 of the Plan ("Utility Easement-2A"), and (iii) a thirty-foot area along the Westborough/Southborough town line as shown on Sheet 3.3 of the Plan within the limits of Washington Street as shown on Sheet 3.3 of the Plan between Utility Easement-2A and "Utility Easement-2 99,510$\pm$ S.F.", on such terms and conditions as the Board of Selectmen deems in the best interests of the Town, or take any other action relative thereto.

*Town Manager's Statement – The easements described in this article will allow a future extension of Westboro's water system so that the existing main on Washington Street may be extended to Route 9 and then looped back to West Park Drive. The main extension is a future requirement of EMC's subdivision approval and will be constructed at their cost. It is the Town's best interest to accept these easements currently so that the rights are in place when EMC needs to do the work. A portion of the main has already been installed as part of the already constructed Washington Street relocation. The motion for this article is a simple majority vote.*

<u>John Walden, DPW - Motion</u>: *I move that the Town approve the article as printed in the warrant.*
*Carl Balduf, Town Engineer spoke to the article*

**Vote:**
**Yes=104**
**No=1**
**Motion carries 2/3 vote achieved**

## ARTICLE 39: Non-Binding Poll on Raising the Legal Age to Purchase Tobacco Products (Board of Health)

To see if residents support the Board of Health amending their tobacco sales regulations to change the minimum legal sales age an individual must be before that individual can be sold tobacco products in Westborough from age 18 to age 21?

*Town Manager's Statement – The Board of Health has the legal authority to adopt these regulations, but through their discussions, they determined they wanted to obtain the opinion of Town Meeting as a non-binding poll as an additional piece of data prior to making a decision and setting new regulations.*

*No Motion Required – Non-Binding Poll*

**Vote:**
**Yes=102**
**No=9**

**ARTICLE 40: Transfer Remaining Balance of 300th Anniversary Committee Gift Fund (Board of Selectmen)**
To see if the Town will vote to transfer the remaining balance in the 300th Anniversary Committee Gift Account to the Westborough Spirit Committee Gift Account for the purpose of organize and lead an annual event, or take any other action thereon.

*Town Manager's Statement – The 300th Anniversary Committee has approximately $36,000 remaining in their Gift Account which under MA General Laws would be closed out to the General Fund. The 300th Anniversary Committee, based upon the popularity of having events that bring the community together approached the Board of Selectmen with the concept of creating a permanent committee that would put on a premier event every year and this would be the seed money for that effort and allow the balance to be transferred to a new Westborough Spirit Committee Gift Account instead of being closed out to the General Fund. The motion on this Article requires a simple majority vote.*

<u>*Syed Hashmi, BOS - Motion*</u>: *I move that the Town vote to transfer the remaining balance of $36,548 from the 300th Anniversary Gift Account to the Westborough Spirit Committee Gift Account for the purposes of the Article as printed in the warrant.*

**Vote:**
**Yes=111**
**No=2**
**Motion carries majority vote.**

**ARTICLE 41: Authorization for the Board of Selectmen to sell the Spurr House (Board of Selectmen)**
To see if the Town will vote to authorize the Board of Selectmen to sell, in accordance with all applicable Commonwealth of Massachusetts bidding laws, that property shown as 7 Parkman Street on a Plan entitled Spurr House – 7 Parkman Street, Westborough MA, dated February 27, 2018, prepared by Westborough GIS, on file with the Town Clerk, said property being approximately 9,127 square feet, including any improvements, or take any other action thereon.

*Town Manager's Statement – The Fall 2015 Town Meeting vote authorizing the Board of Selectmen to sell 7 Parkman Street (the "Spurr House") expired 18 months after the Town Meeting vote and the authority for the Selectmen to sell the property has expired and the Selectmen have decided not to demolish the house as per the original Town Meeting vote, but to continue to have the property for sale. The motion for this article requires a 2/3rds vote.*

<u>*Ian Johnson, BOS - Motion*</u>: *I move that the Town vote to authorize the BOS to sell in accordance with all applicable Commonwealth of Massachusetts Bidding Laws, that the property shown as 7 Parkman Street on a plan entitled Spurr House, 7 Parkman Street, Westborough, Massachusetts, dated February 27, 2018, prepared by Westborough, GIS, on file with the Town Clerk, said property being approximately 9,127 square feet including improvements.*

*Furthermore, that the Town meeting vote authorizes the Town Moderator to appoint a committee (to be named the Spurr House Sale Advisory Committee) and requests that the BOS work with the Committee to assist and advise the BOS in the development of the sale process (i.e., RFP) and to assist in showing the property for sale.*

*The town Meeting vote shall provide for the following;*
- *Provide authorization to sell the property during a period of 18 months from the date of the Town Meeting vote on this article.*
- *The Spurr House Sale Advisory Committee shall be made up of one member from the Planning Board, one member from the Advisory Finance Committee, two members from the Neighborhood and one member at large.*
- *The Spurr House Sale Advisory Committee shall report back to each Town Meeting until a sale is complete or the authorization to sell has expired.*
- *The laws referred to earlier in the motion shall include Chap 30B, Section 16 (Real property; disposition or acquisition), specifically A, C and G therein.*

- *The Committee shall have a budget of $5000; these funds shall be transferred from Free Cash to accomplish the purposes of this article"*

<u>Hazel Nourse - Motion to amend the main motion</u>; a member of the Historical Commission be added to the list of members of the Spurr House Sale Advisory Committee.
Amended motion to read as follows:

*The town Meeting vote shall provide for the following;*
- *Provide authorization to sell the property during a period of 18 months from the date of the Town Meeting vote on this article.*
- *The Spurr House Sale Advisory Committee shall be made up of one member from the Planning Board, one member from the Advisory Finance Committee, one member from the Historical Commission, two members from the Neighborhood and one member at large.*
- *The Spurr House Sale Advisory Committee shall report back to each Town Meeting until a sale is complete or the authorization to sell has expired.*
- *The laws referred to earlier in the motion shall include Chap 30B, Section 16 (Real property; disposition or acquisition), specifically A, C and G therein.*
- *The Committee shall have a budget of $5000; these funds shall be transferred from Free Cash to accomplish the purposes of this article"*

Vote: to amend the main motion
Yes=98
No=17
Amendment carries

**Vote: to the amended main motion:**
**Yes= 93**
**No= 21**
**Motion carries majority vote.**

**ARTICLE 42: Petitioned Warrant Article – Spurr House (By Petition)**
To see if the Town will vote to rescind the Application to demolish the Spurr House and create the Spurr House "Preparation and Sale Committee" (the Committee), to be made up of two Parkman Street neighborhood members, one member from the Planning Board, one member from the Finance Committee and one member to be appointed by the Town Moderator.  The Committee shall be empowered by the Town Meeting to execute the sale of the Spurr House on behalf of the Town.  The sale process shall be governed by and shall follow the requirements of Mass General Law Chapter 30B, section 16 and specifically subsections a, c and g therein.  The Committee shall have access to Town Counsel for the purpose of advising and recommending all documents required to complete the Sale process by the Committee on behalf of the Town.  Any RFP created by the Committee shall maintain to the town that portion of the Spurr House lot to be reserved to the Town as indicated on the surveyed plan and to allow the lot sale such that a legal residential lot shall remain.

The Committee shall be provided all prior materials collected and/or created in the prior sale process attempt for this property, including the property appraised value, property survey, deed description, property drawing and opinions of Town Counsel.  The Committee shall have free access to all town departments and resources to help accomplish the goal of the Committee which is to create an RFP, to properly bid and receive proposals to its RFP to sell the property, to properly notice the sale in local newspaper(s) and Central Register as required by MGL Chapter 30B, section 16 for disposal of real property.  The committee shall have a budget of $5,000 and therefore requires the town to raise and appropriate, transfer from available funds $5,000 to accomplish the purpose of this article or such other amount as may be voted by Town Meeting or take any action there on.

<u>Mr. Doret, Motion</u>:  *I move that the Town vote to pass over this article.*

**Vote:**
**Yes=105**
**No=5**

30

**Motion to pass over**

Leigh Emery, BOS moves to dissolve the 2018 ATM.
**Vote:**
**Yes=86**
**No=4**
10:37 pm 2018 Annual Town meeting dissolved.

Given under our hands the 27th day of February in the year Two Thousand and Eighteen.

ss/Denzil Drewry, Chairman

ss/Leigh Emery, Vice Chairman

ss/George Barrette

ss/Ian Johnson

ss/Bruce Tretter

SELECTMEN OF WESTBOROUGH

Worcester, ss

I have this day served the within Warrant by posting up attested copies thereof at the Town Library Bulletin Board and Town Hall Bulletin Board in said Westborough and by mailing a copy thereof to the residence of the Town Moderator all on February 28, 2018.

ss/Constable of Westborough

Worcester, ss

Attest:
        ss/Wendy L. Mickel, Town Clerk