# Exhibit I

LAND COURT
COMMONWEALTH OF MASSACHUSETTS

2023 JAN -4 PM 2:20

WORCESTER, ss.  LAND COURT
19 TL 000768

| | |
|---|---|
| THE TOWN OF WESTBOROUGH, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| WESTBOROUGH SPE, LLC | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT WESTBOROUGH SPE, LLC'S MOTION TO VACATE FORECLOSURE JUDGMENT

Defendant, Westborough SPE, LLC ("WSPE"), hereby moves this Honorable Court to vacate the judgment foreclosing WSPE's right of redemption dated January 5, 2022.

### I. FACTS

Until January 5, 2022, WSPE was the record owner of property located at 231 Turnpike Road in Westborough, Massachusetts, Worcester County Registry of Deeds at Book 19369, Page 75 (the "Property"). *See* Exhibit 1, *Title Examination Report Prepared by Michael H. Delaney, Esq. (Jul. 10, 2019)*, at 1.

WSPE was formed as a Delaware limited liability company on October 22, 1997. *See* Exhibit 2. On October 29, 1997, WSPE subsequently registered in Massachusetts as a foreign limited liability company. *See* Exhibit 3. According to its annual reports, WSPE's sole business purpose was to serve as the owner the Property. *See* Exhibit 4, (the "Annual Reports") (all providing that WSPE's business purpose is to serve as "owner of a theatre in Westborough, Massachusetts").

From 1997 to 2017, WSPE leased the Property to Interstate Theatres Corporation for use as a movie theatre. *See* Exhibit 1, at 6.

Babcock & Brown Administrative Services, Inc. ("BBAS") served as manager of WSPE since WSPE's formation in 1997. Beginning in 1997, Frances Jan Blaustein Scholes ("Jan"), then-president of BBAS, was authorized to execute, acknowledge, deliver, and record any recordable instrument on behalf of WSPE purporting to affect an interest in real property. *See* Exhibit 2. According to Annual Reports filed with the Massachusetts Secretary of Commonwealth, Dyann Blaine ("Dyann") was also authorized to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property on behalf of WSPE. *See* Exhibit 4.

In 2004, Jan suffered her first major stroke, which left her physically and mentally incapable of properly executing her responsibilities as manager and real estate signatory for WSPE to their full extent. Thereafter, Jan reduced her responsibilities and eventually retired from BBAS in 2007. Upon Jan's retirement, Dyann took over Jan's roles and responsibilities for both BBAS and WSPE.

On November 20, 2007, Dyann filed a Certificate of Withdrawal in the Commonwealth of Massachusetts. *See* Exhibit 5. On April 24, 2008, Dyann Blaine also filed a Certificate of Withdrawal in the Commonwealth of Massachusetts for BBAS. *See* Exhibit 6, *Foreign Certificate of Withdrawal of BBAS*.

Babcock & Brown Limited ("BBL") went into liquidation in 2009. In a September 27, 2018 Annual Report to Creditors and Noteholders, Liquidator David Lombe addressed the Property and questions as to its ownership. *See* Exhibit 7, *Annual Report to Creditors and Noteholders of BBL*, at 3. The Liquidator states that after investigation and enquiries within the

Babcock & Brown Group, he determined that BBAS "managed the property on behalf of a third party and the property is not owned by BBL."

On December 28, 2018, the Turnpike Road Property was taken by the Town of Westborough (the "Town") for non-payment of real estate taxes. *See* <u>Exhibit 8</u>, *Foreclosure Complaint by Town of Westborough* (the "Complaint"). On July 8, 2019, the Town filed the Complaint with the Massachusetts Land Court that is the basis of this lawsuit. The Complaint provides as follows:

> [T]he following are the names and addresses of all persons known to the undersigned who have any interest in said land other than the plaintiff, to wit:
>
> **Westborough SPE, LLC**

The Complaint does not list the address of Westborough SPE, LLC, nor does it identify Jan as a person who has an interest in the Property.

The title examination report as filed with this Court on August 26, 2019, lists the equity owner and lessee, respectively, as the parties entitled to notice:

> Westborough SPE, LLC
> c/o Babcock & Brown Administrative Services, Inc. <u>MANAGER</u>
> 2 Harrison St, 6th Floor
> San Francisco, CA 94105-0000
> ATT'N: Dyann Blaine and/or F. Jan Bluestein
>
> Interstate Theatres Corporation
> One Exeter Plaza
> Boston, MA 02116

According to the Court docket, notices of the foreclosure proceedings were sent on September 22, 2020. This included a notice to Jan at 151 E. 31st, Apt. 28B, New York, NY 10016. On October 21, 2020, proof of unsuccessful service was filed with this Court related to such notice. Although Jan once lived at that address, she moved out in 2015 and never returned. On April 8, 2021, another notice by certified mail was sent to Jan,

this time at a different address: 888 Avenue of the Americas, New York, NY 10001. This notice was also returned as unsuccessful and filed with the Court on May 4, 2021.

On September 7, 2021, a registered process server attempted to serve Jan "by leaving at the last and usual place of abode of F. Jan Bluestein a/k/a Jan Blaustein, 34 Stern Lane, Atherton, California 94027 with a "Limited Assistance Representation (LAR) Document. Document placed at front gate with knowledge of male who answered electronic intercom." *See* Exhibit 9.

In 2006, Jan and her then-husband Myron Scholes ("Myron") purchased the property at 34 Stern Lane, Atherton, California 94027 (the "Stern Lane Property"), as joint owners. Jan and Myron lived together at the Stern Lane Property until 2013 when Myron filed for divorce, prompting Jan to move out of the Stern Lane Property and never return. On September 4, 2015, Jan and Myron, as joint owners, conveyed the Stern Lane Property to Myron individually pursuant to the terms of their divorce agreement.

On April 2, 2019, Jan's son Peter Blaustein ("Peter") filed a petition for appointment of himself as Jan's conservator and guardian with the Hawaii Third Circuit, Kona Division. *See* Exhibit 10, *Printable Docket Record for Jan's Conservatorship and Guardianship Proceeding.* On July 8, 2019, the Hawaii Third Circuit granted Peter's petition, finding that Jan "is an incapacitated person," that a "basis exist[s] for appointment of a conservator and guardian," and that Peter is qualified to serve in both capacities. (text for June 3, 2019 docket entry). Jan currently lives in an assisted living facility in New Mexico.

On January 5, 2022, this Court issued its final judgment of foreclosure in connection with the Town's tax taking of the Property.

On November 22, 2022, WSPE filed a Certificate of Revival in Delaware. *See* Exhibit 11, *WSPE Certificate of Revival - Delaware.* As of November 28, 2022, WSPE is duly formed and in good standing in Delaware. *See* Exhibit 12, *Delaware Good Standing of WSPE.* On December 12, 2022, WSPE filed an Application for Registration as Foreign Limited Liability Company in Massachusetts. *See* Exhibit 13, *Foreign LLC Application for Registration of WSPE.*

Shortly after reviving good standing status in Delaware and Massachusetts, WSPE filed a claim with the California Unclaimed Property Division ("CUPD") for approximately $1.2 million. *See* Exhibit 14. On December 14, 2022, the CUPD sent a reply letter to WSPE requesting additional information pursuant to the claim.

## II. APPLICABLE LAW

Motions to vacate a decree of foreclosure must be commenced within one year of the final judgment. M.G.L. c. 60, sec. 69A. Such motions may be granted if the court "after 'careful consideration, finds that to do so is required to accomplish justice.'" *Tallage LLC v. Meaney*, 2015 WL 4207424 (2015) (quoting *Town of Sharon*, 18 Mass. App. Ct. at 542)). Tax redemption statutes "are remedial in nature and are therefore 'interpreted liberally in favor of a person seeking to recover his land.'" *City of Pittsfield v. Randall*, 63 Mass. App. Unpub. 1107 (2005) (quoting *Union Trust Co. v. Reed*, 213 Mass. 199, 201 (1912)). This Court has recognized that "'the only legitimate interest of a town in seeking to foreclose rights of redemption is the collection of the taxes due on the property, together with other costs and interests.'" *Tallage LLC*, 2015 WL 4207424. When the owner of the property pays the taxes, the statute has served its purpose.

Within the one-year period, courts may use their discretion to vacate a judgment for various reasons, including incapacity or mental illness. *Town of Sharon v. Kafka*, 18 Mass. App.

Ct. 541, 543 (1984). In *Tallage LLC v. Meaney*, this Court vacated its foreclosure judgment after the property owners filed a motion to vacate within one year of the Court's foreclosure decree, but after the property had been sold to a third party. *See generally* 2015 WL 4207427 (June 26, 2015). After a fact-intensive inquiry, the Court concluded that the property owners (the Meaneys) were overwhelmed due to health issues in the family. The Court credited the Meaneys' claim that they acted promptly to resolve the overdue water and sewer bills once they were able to focus on the past-due notices. The Court acknowledged that notice was delivered to the property owners and that they should have been more attentive; however, the Court determined that "extraordinary circumstances"—including that the owners were "overwhelmed with Mrs. Meaney's and the children's health issues at the time the notices were sent"—"justif[ied] this Court's exercise of discretion to vacate the foreclosure."

This Court has vacated foreclosure judgments without a showing of "extraordinary circumstances" when property owners were properly notified of the foreclosure proceedings, the owners filed a motion to vacate the foreclosure in the one-year period following the foreclosure decree, and the town has not transferred the property to a third party. *See, e.g., City of Pittsfield v. Randall*, 63 Mass. App. Ct. 1107 at *2 (2005) (unpublished opinion) (affirming vacation of foreclosure judgement where defendant received proper notice and "made no real effort to redeem the property until one month after a default decree had entered," without explanation for delay).

If the property owner files its motion to vacate after the one-year anniversary of the final foreclosure decree, this Court's discretion to vacate the foreclosure is typically limited to situations in which the property owner has been deprived of due process. *See Town of Russell v. Barlow*, 2016 WL 3745960, at *13 (Mass. Land Ct. July 13, 2016) ("While courts are consistent

in applying the statutory deadline, strict application of the one-year limitation may be excused when there has been a denial of due process.").

In *Jones v. Flowers*, the U.S. Supreme Court addressed a situation in which a property owner filed a motion to vacate after the town sold the property to a third party and after the time limit for post-sale redemption had passed. *See* 547 U.S. 220, 224 (2006). Even though the town published notice of the foreclosure sale in a local newspaper, the town attempted to serve the property owner by two separate certified mail letters sent to the address of the foreclosed property, and the property owner's ex-wife continued to live at the property at the time the certified mail envelopes were returned to the town unclaimed, the Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." The Court declined to prescribe the specific steps that the town should have taken to satisfy the property owner's due process rights, but determined that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals."

### III. ANALYSIS

As cases such as *Tallage LLC v. Meaney* and *City of Pittsfield v. Randall* demonstrate, courts have broad discretion to vacate a foreclosure decree when a motion to vacate is filed within one year of the judgement. As cases such as *Town of Russell v. Barlow* explain, the courts' discretion to vacate a foreclosure decree after one year is typically limited to instances of due process violations. In the instant case, WSPE files the motion to vacate within the one-year period, and Jan's strokes which significantly affected her physical and mental abilities should, in themselves, support the Court's exercise of discretion to grant the Motion to Vacate.

In addition to Jan's serious health issues, there is also a due process violation in this case because Jan was never properly served with notice of the foreclosure proceedings. After receiving two notices of unsuccessful service via U.S. certified mail, the Town should have, pursuant to *Jones v. Flowers*, taken additional steps to confirm Jan's correct physical address before "serving" notice on a male individual who lived at Jan's former residence six years after Jan deeded this property to her ex-husband pursuant to a divorce, especially when the deed and the divorce proceedings are public records that are easily accessible online.

The combination of WSPE's timely filing within the one-year period, Jan's serious health issues, and the due process violation related to improper service provides ample support for the Land Court's exercise of discretion to vacate the foreclosure decree.

A. **Discretionary Factors**

We respectfully ask the Court to consider the incidence of Jan's strokes, which left her physically and mentally incapacitated, as an extraordinary circumstance that significantly interfered with Jan's ability to focus on the past-due tax notices. Like the property owner in *Tallage LLC v. Meaney*, 2015 WL 4207427, Jan's serious health issues interfered with her ability to devote the necessary time or attention to addressing the past due taxes at the time these notices became due and during the initial foreclosure proceedings. On the date the Complaint was filed with this Court (July 8, 2019), Jan's son Peter Blaustein was appointed her conservator and guardian. Like the Meaneys, Jan took prompt action to respond to the foreclosure proceedings as soon as she was ready and able to do so. Once Jan was informed of the proceedings and the opportunity to reclaim the Property on behalf of WSPE, she took action to connect with those who were in a position to assist WSPE. Within the past two months, WSPE restored its "good standing" statuses in Delaware and Massachusetts, filed a claim for $1.2 million currently held

by the California Unclaimed Property Division ("CUPD"), and retained counsel to prepare this Motion to Vacate and other pleadings. WSPE reasonably anticipates that this $1.2 million will be more than enough to pay the past-due taxes, utility charges, and other fees required to properly exercise its right of redemption. WSPE is diligently pursuing the claim with the CUPD and anticipates that the CUPD will release these funds to WSPE within the next 90 days (on or before April 1, 2023).

Because the Property has not yet been transferred to a third party, only the Town and WSPE's interests should be considered as the Court weighs the various factors at issue in this case. As courts have indicated, tax redemption statutes should be interpreted in favor of the party seeking to recover the property. It is in WSPE's best interest to restore their title to the Property, and it is in the Town's best interest to receive full payment of the past-due taxes and fees that gave rise to these foreclosure proceedings in the first place.

### B. Due Process Violation

In addition to the discretionary factors discussed in **Section III.A**, above, there is also a due process violation in this case because the Town never properly served Jan with notice of the foreclosure proceedings. As was the case in *Jones v. Flowers*, two U.S. certified mail packages (with two different New York addresses) intended to notify Jan of the proceedings were returned "undeliverable." The undelivered certified mail packages did not constitute sufficient service, as the Court docket indicates "unsuccessful service" for each package. The Town then hired a process server to attempt to serve Jan at a third address, 34 Stern Lane in Atherton, California, which the process server represented to be Jan's "last known address."

The process server indicated he left the notice at the front gate of 34 Stern Lane, with knowledge of a man who was heard over the intercom. Because Jan is not a man, the process

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

server's indication of "service" based on a male presence at the address should have informed the town that proper service was not made, and the Town should have taken additional steps to determine if this was Jan's residence considering the new information. We respectfully request this Court to take judicial notice that Jan's divorce from her ex-husband, Myron,[1] and the 2015 deed of the 34 Stern Lane property from Myron and Jan as joint owners to Myron individually are matters of public record.[2] If the Town had taken the next reasonable steps to attempt to confirm Jan's presence at the 34 Stern Lane property, the information would have revealed that (a) Jan no longer lived at the address, (b) Jan deeded her interest in the property to Myron approximately 6 years earlier, and (c) the only individual that the process server actually "served" was Myron.

After the certified mail notices were returned undelivered in *Jones v. Flowers*, the U.S. Supreme Court determined that this was insufficient notice, but declined to prescribe the specific steps that a town should take to satisfy a property owner's due process rights. Instead, the Court provided that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *See* 547 U.S. 220, 234 (2006). *Jones v. Flowers* is a residential foreclosure case in which the town attempted to serve the property owner at the exact property address that was the subject of the foreclosure—in that case, the town was found to have violated the property owner's due process rights by failing to take additional steps to determine his address after serving notice on the owner's daughter who was living in the property. In a commercial foreclosure case such as this, the Town should be held to the same (if not a higher) standard of due diligence in determining a proper service address for the property owner or

---

[1] The record of the divorce is accessible on the San Mateo Superior Court website, at https://odyportal-ext.sanmateocourt.org/Portal-External/Home/Dashboard/29 (insert "Scholes, Frances" into the search bar).
[2] The 2015 deed is accessible on the San Mateo County Clerk – Recorder Online Index, at https://apps.smcacre.org/recorderworks/ (insert "Scholes" into the Name search box).

representative thereof. Because the individual sought to be served in a foreclosure of abandoned commercial property is always going to reside at an address different then the property subject to the foreclosure proceedings, the Town must exercise some level of due diligence to determine the address of the property owner or the property owner's representative. While the town took some steps to locate Jan by identifying one of her former residential addresses (34 Stern Lane in Atherton), they should have conducted a more logical and diligent effort to locate Jan's current mailing address.

The Town should not be able to meet its standard of due diligence under *Jones v. Flowers* by simply picking multiple addresses that were connected to Jan at some distant point in the past without any indication that Jan was actually residing at any of these addresses. Delivering notice of the foreclosure proceedings to an unknown, unidentified, and unseen male at the Stern Lane Property was no more likely to apprise Jan of the proceedings than if notice were left at a random location. Accordingly, Jan was never properly served with notice of the foreclosure proceedings, which constitutes a due process violation pursuant to *Jones v. Flowers*.

## IV. <u>REQUEST FOR RELIEF</u>

WHEREFORE, Defendant Westborough SPE LLC respectfully moves the Court to vacate the judgment entered against them, allow them to pay outstanding taxes and fees on the Property, and exercise its right to redeem the Property.

Respectfully submitted,

WESTBOROUGH SPE,

LLC By its manager,

_____

Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
loloact2@gmail.com
(443) 447-3276

Dated: January 4, 2023