# Appendix

2023 WL 5733164
Only the Westlaw citation is currently available.
United States Court of Appeals, Sixth Circuit.

Donald FREED, Plaintiff-Appellant/Cross-Appellee,
v.
Michelle THOMAS, Defendant-Appellee,
County of Gratiot, Michigan, Defendant-Appellee/Cross-Appellant,
Michigan Department of Attorney General, Intervenor-Appellee.

Nos. 21-1248/1288/1339
|
Argued: August 1, 2023
|
Decided and Filed: September 6, 2023

**Synopsis**
**Background:** Property owner brought § 1983 action against county and county treasurer in her individual capacity, asserting a taking in violation of Fifth Amendment and an excessive fine in violation of Eighth Amendment after county foreclosed on property for unpaid taxes and, after selling property at auction, retained the entire proceeds. The United States District Court for the Eastern District of Michigan, No. 1:17-cv-13519, Bernard A. Friedman, Senior District Judge, 2018 WL 5831013, dismissed for lack of subject matter jurisdiction. Owner appealed. The Court of Appeals, 976 F.3d 729, reversed and remanded. On remand, the District Court granted summary judgment to owner on takings claim but declined to award amount of damages sought by owner, and it also held that claims against county treasurer were barred by qualified immunity. Owner appealed and county cross-appealed.

**Holdings:** The Court of Appeals, Siler, Circuit Judge, held that:

under Fifth Amendment's takings clause, compensation which county was required to make to owner was not required to include the difference between property's asserted value and the amount that it actually sold for at auction;

foreclosure was not an excessive fine in violation of Eighth Amendment even if sale at auction "destroyed" taxpayer's equity far in excess of tax delinquency;

treasurer's conduct did not violate clearly established law, and thus treasurer had qualified immunity to owner's takings claim; and

county's policy of prohibiting the refunding of surplus proceeds to property owners following foreclosure sale of properties for unpaid taxes had direct causal link to the unconstitutional taking, and thus county could be subject to liability under § 1983.

Affirmed.

Appeal from the United States District Court for the Eastern District of Michigan at Bay City. No. 1:17-cv-13519—Bernard A. Friedman, District Judge.

**Attorneys and Law Firms**

ARGUED: Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant/Cross-Appellee. Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellee and Appellee/Cross-Appellant. Matthew B. Hodges, MICHIGAN ATTORNEY GENERAL'S OFFICE, Lansing, Michigan, for Intervenor-Appellee. Theodore W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Amicus Curiae. ON BRIEF: Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant/Cross-Appellee. Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellee and Appellee/Cross-Appellant. Matthew B. Hodges, MICHIGAN ATTORNEY GENERAL'S OFFICE, Lansing, Michigan, for Intervenor-Appellee. Theodore W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Amicus Curiae.

Before: SILER, GIBBONS, and LARSEN, Circuit Judges.

**OPINION**

SILER, Circuit Judge.

***1** Although Plaintiff Donald Freed prevailed on his Fifth Amendment claim before the district court, he appeals because the district court declined to award him the fair market value of his property minus his debt. Freed argues that the district court erred by (1) violating his Fifth or Eighth Amendment rights by awarding him "the difference between the foreclosure sale and [his] debt" instead of the fair market value of his property; (2) granting qualified immunity to Michelle Thomas, Gratiot County's ("the County") treasurer; and (3) denying without prejudice his motion for attorney's fees. The County cross-appeals, arguing that the district court improperly held it liable for Freed's 42 U.S.C. § 1983 claims. We affirm.

I.

After Freed fell behind approximately $1,100 on his property taxes, Thomas, acting on behalf of the County and pursuant to Michigan's General Property Tax Act (GPTA), foreclosed on Freed's property and sold it at a public auction for $42,000. The County retained the entire proceeds. Freed sued the County and Thomas under § 1983, alleging (1) an unconstitutional taking under the Fifth and Fourteenth Amendments by state and local officials; and (2) an unconstitutional excessive fine under the Eighth Amendment. The district court, applying *Wayside Church v. Van Buren County*, 847 F.3d 812 (6th Cir. 2017), dismissed Freed's complaint for lack of subject matter jurisdiction, finding that the Tax Injunction Act (TIA) and principles of comity prevented it from hearing the case.

We reversed and remanded. *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020), *reh'g en banc denied* (Nov. 4, 2020). We held that (1) the TIA did "not preclude the exercise of federal jurisdiction ... because Freed is not attempting to enjoin Michigan's assessment, levy, or collection of a state tax"; (2) the doctrine of comity did not prevent this suit from proceeding "because Freed is not challenging the validity of Michigan's tax procedures"; and (3) we were not bound by *Wayside Church* because the opinion's discussion of the TIA and comity issues was simply "persuasive dictum." *Id.* at 734, 737–38, 740. We also noted that the Supreme Court overruled *Wayside Church*'s subject matter jurisdiction analysis when it held "that [a] property owner may bring a takings claim [in federal court] under § 1983 upon the taking of his property without just compensation by a local government." *Id.* at 733–34 (quoting *Knick v. Township of Scott*, ––– U.S. ––––, 139 S. Ct. 2162, 2179, 204 L.Ed.2d 558 (2019)) (alterations in original).

On remand, the district court granted summary judgment in favor of Freed on his Fifth Amendment claim and denied summary judgment on his Eighth Amendment claim. It rejected Freed's argument that he was entitled to the fair market value of his property, minus his debt, and instead held that Freed was "owed just compensation in the amount of the difference between the foreclosure sale and [his] debt, plus interest on this amount from the date of the foreclosure sale." This meant that Freed was owed about $40,900 plus interest—approximately $56,800 less than he was seeking. The court also held that Freed's claims against Thomas were barred by qualified immunity.

***2** Freed appealed, and the County cross-appealed. Freed also filed a motion for attorney's fees following the entry of judgment, which the district court denied without prejudice under Federal Rule of Civil Procedure 54(d)(2)(B). It noted that "it would be premature to decide plaintiff's motion" pending the appeal and ordered the period for filing a motion for attorney's fees be extended until fourteen days after the appeal mandate is issued. Freed appealed the denial of his attorney's fees motion.

II.

We review a district court's grant of summary judgment de novo. *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021).

A.

1.

Freed first argues that the district court should have awarded him the fair market value of his property pursuant to either the Fifth or the Eighth Amendment.

a.

The Supreme Court recently resolved a case with similar facts. Hennepin County, Minnesota, sold the delinquent

taxpayer's house "for $40,000 to satisfy a $15,000 tax bill" and kept the remaining $25,000. *Tyler v. Hennepin County*, 598 U.S. 631, 634, 143 S.Ct. 1369, 215 L.Ed.2d 564 (2023). The district court there dismissed for failure to state a claim, and the Eighth Circuit affirmed. *Id.* at 636, 143 S.Ct. 1369. The Supreme Court unanimously reversed, affirming "the principle that a taxpayer is entitled to the surplus in excess of the debt owed." *Id.* at 642, 143 S.Ct. 1369.

Here, the district court held at the motion for summary judgment stage that Freed's Fifth Amendment rights were violated, and it held that Freed was owed the difference between the foreclosure sale amount and his debt, plus interest. This holding squares with *Tyler*. Freed asserts though that he is entitled to an additional $56,800 because the purported fair market value of the property was $98,800 and the property sold for only $42,000. However, neither this court nor the Supreme Court has ever held that a plaintiff whose property is foreclosed and sold at a public auction for failure to pay taxes is entitled to recoup the fair market value of the property. *Cf. United States v. Davis*, 815 F.3d 253, 260 (6th Cir. 2016) (holding that the government does not violate the Fifth Amendment by selling a property at a public auction, even if the property sells for less than its fair market value). Furthermore, the best evidence of a foreclosed property's value is the property's sales price, not what it was worth before the foreclosure.[1] *See BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 548–49, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

[1] Freed stated at oral argument that although the property was sold at a public auction, the procedures used by the county restricted who could bid on the property and in what manner, and this caused the property to sell for less than it was worth. But Freed did not make this argument before the district court or in his opening brief, and it is therefore waived. *Amezola-Garcia v. Lynch*, 846 F.3d 135, 139 n.1 (6th Cir. 2016) ("[A]rguments not raised in a party's opening brief are deemed waived.").

The Michigan Supreme Court, in addressing this exact issue, held that awarding the fair market value of a property instead of the price obtained at a public tax foreclosure sale "would run contrary to the general principle that just compensation is measured by the value of the property *taken*" and would "not only ... [take] money away from the public" but would also allow plaintiffs to "benefit from their tax delinquency." *Rafaeli, LLC v. Oakland County*, 505 Mich. 429, 952 N.W.2d 434, 465–66 (2020). Freed is entitled to the amount of the sale above his debt and no more. *See Hall v. Meisner*, 51 F.4th 185, 194 (6th Cir. 2022) (explaining the longstanding principle that following a public sale, a debtor is "entitled to any surplus proceeds from the sale, which represented the value of the equitable title thus extinguished" (citing *Resol. Tr. Corp.*, 511 U.S. at 541, 114 S.Ct. 1757)). This is precisely what the district court held, and Freed's Fifth Amendment takings argument is therefore meritless.

**b.**

**\*3** Freed's Eighth Amendment argument fares no better. He argues that Defendants "destroy[ed] [his] equity far in excess of the tax delinquency" in violation of the Eighth Amendment.

The Eighth Amendment protects "against excessive fines [and] guards against abuses of [the] government's punitive or criminal-law-enforcement authority." *Timbs v. Indiana*, ––– U.S. ––––, 139 S. Ct. 682, 686, 203 L.Ed.2d 11 (2019). However, in *Hall*, we affirmed the district court's dismissal of the plaintiffs' Eighth Amendment Excessive Fines claim on the ground that the GPTA is not punitive. *See Hall*, 51 F.4th at 196–97 (adopting district court's reasoning as the panel's own); *Hall v. Meisner*, No. 20-12230, 2021 WL 2042298, at \*14 (E.D. Mich. May 21, 2021) (concluding that the GPTA is not punitive); *see also Rafaeli*, 952 N.W.2d at 447 (holding that the GPTA "is not punitive in nature" because "[i]ts aim is to encourage the timely payment of property taxes and to return tax-delinquent properties to their tax-generating status, not necessarily to punish property owners for failing to pay their property taxes"). The Supreme Court did not reach the merits of the Eighth Amendment claim in *Tyler*. *See* 598 U.S. at 647–48, 143 S.Ct. 1369. *But see id.* at 648–50, 143 S.Ct. 1369 (Gorsuch, J., concurring). Accordingly, our holding in *Hall* remains binding. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (A prior published "decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." (citation omitted)). Therefore, Freed's arguments that he is owed the fair market value of the property under either the Fifth Amendment or the Eighth Amendment fail, and we affirm.

**2.**

The district court granted qualified immunity to Thomas in her individual capacity because it found that she "did

not violate a right that was 'clearly established at the time of defendant['s] alleged misconduct.' "[2] To overcome Thomas's claim of qualified immunity, Freed "must show that (1) the [officials] violated one of [his] constitutional rights and (2) that right was clearly established." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 317 (6th Cir. 2023) (citation omitted). The clearly established prong is the only one at issue here. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 317–18 (citation omitted).

[2] The district court also granted qualified immunity to Thomas in her official capacity because "the claims against defendant Thomas [are] duplicative of those against the county."

At the time the lawsuit was filed, the contested provisions of the GPTA had been enforced as written for nearly two decades, and "[s]tate statutes, like federal ones, are entitled to the presumption of constitutionality until their invalidity is judicially declared." *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 153, 64 S.Ct. 474, 88 L.Ed. 635 (1944). The Michigan Supreme Court held that Michigan's retention of surplus proceeds was an unconstitutional taking several years *after* Freed filed this lawsuit. *See Rafaeli*, 952 N.W.2d at 466. And "the Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016).

**\*4** The only support on which Freed relies to argue that Thomas's conduct violated a clearly established right is *United States v. Lawton*, 110 U.S. 146, 3 S.Ct. 545, 28 L.Ed. 100 (1884). However, *Lawton* pertained to a statute requiring that surplus proceeds from a tax sale "be paid to the owner of the property." *United States v. Taylor*, 104 U.S. 216, 218, 26 L.Ed. 721 (1881). The GPTA, on the other hand, did not provide that surplus proceeds would be returned to the owner. *Rafaeli*, 952 N.W.2d at 452–53. Freed has failed to demonstrate that *Lawton*, which was premised on a statutory right to recover surplus proceeds, sufficiently put Thomas on notice that her administration of the GPTA was unconstitutional.[3] Therefore, the district court did not err by granting qualified immunity to Thomas, and we affirm.

[3] Although *Lawton* notes that withholding surplus from an owner when the owner is statutorily entitled to it would violate the Fifth Amendment, the Court held that "this case was governed by the rulings of this court in *U.S. v. Taylor*." 110 U.S. at 149, 3 S.Ct. 545. In *Taylor*, the Supreme Court held that the appellee was entitled to surplus proceeds because the government statutorily required it, not because it would be unconstitutional to withhold the surplus proceeds. 104 U.S. at 218, 222. And Freed cannot rely on the Supreme Court's recent opinion in *Tyler* for qualified immunity purposes because the events in this case occurred well before *Tyler* was decided. *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.").

3.

Following the district court's opinion and order holding that Freed's Fifth Amendment rights had been violated, Freed filed a motion for attorney's fees which the court denied without prejudice. Freed argues that the court "should have render[ed] a timely and normal decision on the motion."

The court's order denying Freed's attorney's fees motion, however, is not appealable because it is "not a 'final decision' under 28 U.S.C. § 1291." *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1104, 1107 (6th Cir. 2019) (holding that a district court's order on attorney's fees made "where the post-judgment proceedings are *ongoing*," is not a final, appealable order). We therefore dismiss Freed's attorney's fees appeal for lack of jurisdiction.[4]

[4] Freed also asks us to remand this matter to the district court with instructions to enter judgment against the state because the district court failed to explicitly name Michigan as a party in the judgment. Michigan joined this case solely for the purpose of defending the constitutionality of the statute and participated in all stages of the litigation; the district court correctly permitted intervention, pursuant to 28 U.S.C. § 2403(b), which provides that "[t]he State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party *as to court costs* to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality." (emphasis added). And the district court did not err by omitting Michigan from the judgment. *See Tennessee v. Garner*, 471 U.S. 1, 22, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("The State is a party only by virtue of 28 U.S.C. § 2403(b) and is not subject to liability.").

**B.**

In its cross-appeal, the County argues that the district court erred in holding that it was liable for Freed's constitutional claims under § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In municipal liability cases under § 1983, "the question [is] whether there is a direct causal link between a municipal [or county] policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

**\*5** The policy at issue here is the prohibition on refunding surplus proceeds to property owners under MCL § 211.78, which Defendants acknowledge was unconstitutional. That leaves the question of whether the County was responsible for the constitutional violation.

The County argues that it was merely following a state statute when it foreclosed on Freed's home and thus it cannot be said that the County had a custom or policy that led to the unconstitutional taking. We disagree. The statute here provides that "foreclosure of forfeited property by a county is voluntary." MCL § 211.78(6). And as the district court correctly points out, the County, through its treasurer, repeatedly "chose to act as the foreclosing governmental unit and ... retained the proceeds of [Freed's] foreclosure sale." The County's decision to voluntarily and repeatedly serve as the foreclosing governmental unit and retain the proceeds was a policy decision with a "direct causal link" to the constitutional violation in this case. *Harris*, 489 U.S. at 385, 109 S.Ct. 1197; *see also DePiero v. City of Macedonia*, 180 F.3d 770, 787 (6th Cir. 1999) (finding municipal liability where a state statute authorized but did not require a city to take a certain action); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (recognizing that a municipality may be subject to *Monell* liability where it makes a deliberate choice beyond what a statute requires). We hold that the district court did not err in finding the County liable.

**AFFIRMED**.

**All Citations**

--- F.4th ----, 2023 WL 5733164

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.