# Appendix

2023 WL 4259266
**NOT FOR PUBLICATION**
United States Bankruptcy Appellate Panel of the First Circuit.

POLISH-AMERICAN CITIZEN'S CLUB INC. of Willimansett, Massachusetts, d/b/a Pulaski Hall, d/b/a Pulaski Club, d/b/a Polish-American Citizens Club, Debtor.

David W. Ostrander, Chapter 7 Trustee, Appellant,

v.

Elaine Dowd, Stanley Gromacki, Jr., Matthew Roman, June Massee, Marian Zielinski, Frank Meckay, and Mitchell Nowak, Appellees.

BAP NO. MS 22-033
|
Bankruptcy Case No. 21-30357-EDK
|
June 27, 2023

**Appeal from the United States Bankruptcy Court for the District of Massachusetts (Elizabeth D. Katz, U.S. Bankruptcy Judge)**

**Attorneys and Law Firms**

David W. Ostrander, Chapter 7 Trustee, on brief for Appellant.

Gregory A. Hession, Esq., on brief for Appellees.

Before Godoy, Harwood, and Cary, U.S. Bankruptcy Appellate Panel Judges.

**Opinion**

Godoy, United States Bankruptcy Appellate Panel Judge.

**\*1** After a trial, the bankruptcy court dismissed the chapter 7 petition filed by Polish-American Citizen's Club Inc. of Willimansett, Massachusetts (the "Club") because it was not duly authorized by a properly constituted board of directors. The chapter 7 trustee (the "Trustee") moved for reconsideration and that request was denied. The Trustee appealed both orders. On appeal, the Trustee argues that the dismissal order was based on a clearly erroneous finding that the board of directors was not elected prior to the adjournment of the Club's 2020 annual meeting, and the bankruptcy court should have granted reconsideration to allow him to introduce additional evidence on the issue. He also challenges the court's denial of his request to "condition" the dismissal upon the payment of "administrative expenses." For the reasons discussed below, we **AFFIRM** both the dismissal order (including the denial of the Trustee's request for payment of administrative expenses) and the order denying reconsideration.

**BACKGROUND**[1]

[1] Unless otherwise noted, all references to the "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532. References to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure and references to "Rule" are to the Federal Rules of Civil Procedure.

The Club, a Massachusetts non-profit corporation, is a social club founded in 1927. It has about 500 shareholders, including the seven appellees (the "Appellees"). The Club owns real property located at 13 Norman Street, Chicopee, Massachusetts (the "Property"), where it conducted its club activities and operated a restaurant, bar, and hall rental business. Plagued by financial difficulties, the Club ceased active operations in October 2020 and closed the facility altogether in early 2021.

**I. The Bankruptcy Proceedings**

   **A. The Chapter 7 Filing**
On September 17, 2021, the Club filed a chapter 7 petition, signed by its president, Dorothy Wojtczak. The Trustee was appointed shortly thereafter, and, with the bankruptcy court's approval, employed his law firm to represent him in the case.[2] On September 28, 2021, upon the bankruptcy court's request, the Club filed a corporate resolution (the "Resolution") authorizing the filing of the bankruptcy case. The Resolution was signed by eight

**Polish-American Citizen's Club Inc., Slip Copy (2023)**
72 Bankr.Ct.Dec. 166

people purporting to be members of the Club's board of directors (the "Board" or "Board of Directors").[3]

[2] Neither the Trustee nor his counsel submitted any fee applications in the bankruptcy case.

[3] The signatories on the Resolution were: Dorothy Wojtczak, president; Carl Schreiber, vice president; Barbara Zabinska, director; Lucyna Wojtczak, director; Jordan Klofas, director; Anton Zamachaj, director; Mariola Jarzynska, director; and Rachel Ilnicki, director.

### B. Appellees' Motion to Dismiss

About six months after the bankruptcy filing, after conducting Bankruptcy Rule 2004 examinations of several directors and officers of the Club, the Appellees filed a motion to dismiss the petition (the "Motion to Dismiss"), asserting that the bankruptcy filing was not duly authorized by a properly constituted Board of Directors. Among other things, they alleged that at least six of the eight individuals whose signatures appeared on the Resolution were not qualified Board members because they were not properly elected at the Club's annual meeting held on February 23, 2020 (the "2020 annual meeting").[4] Accordingly, the Appellees argued, the Resolution was not valid, the petition was not authorized, and the case should be dismissed.

[4] It is undisputed that due to the COVID-19 pandemic and subsequent cessation of Club operations, no annual meeting or election of officers and directors was held after the 2020 annual meeting.

### C. Trustee's Objection to Motion to Dismiss

*2 The Club did not respond to the Motion to Dismiss. The Trustee, however, filed an objection. Relying primarily on an affidavit from Dorothy Wojtczak, the Club's president, in which she attested that all persons whose signatures appeared on the Resolution were valid Board members, the Trustee countered that the bankruptcy filing was duly authorized. The Trustee further contended that the Club's debts, which totaled more than $151,000, would "only be satisfied" by selling the Property, and that he had already spent considerable time and effort marketing the Property for sale. If he did not sell the Property through the bankruptcy case, the Trustee insisted, the City of Chicopee, which had moved for relief from stay to foreclose its tax lien on the Property, would likely conduct a "distress sale" which would net far less than his proposed sale.[5] For these reasons, the Trustee requested that the Motion to Dismiss be denied.

[5] A few days after filing his objection to the Motion to Dismiss, the Trustee sought authority to sell the Property to a third party for $375,000. No objections were filed, and a combined trial with the Motion to Dismiss was scheduled for June 21, 2022. After trial, the bankruptcy court denied the motion to sell as moot due to the dismissal of the bankruptcy case.

### D. Trustee's Motion for Sanctions

Shortly before the trial, the Trustee filed a motion (the "Sanctions Motion") seeking to impose monetary sanctions against the Appellees and their counsel "for prosecuting baseless claims against the Bankruptcy Estate resulting in the Estate incurring substantial time and expenses defending [against] these allegations." The Trustee asserted that the Appellees' filing of numerous pleadings, including the Motion to Dismiss, was "an attempt to obstruct the Trustee's administration of the case," which caused administrative expenses to accrue at a substantial rate.

That same day, the bankruptcy court denied the Sanctions Motion, without prejudice, "for failure to articulate any legal basis for the relief requested" and "for failure to comply with Fed. R. Bankr. P. 9011(c)," which governs the imposition of sanctions for violations of Fed. R. Bankr. P. 9011(b) (setting forth certifications made by any party signing, filing, and submitting documents with the bankruptcy court).

### II. The Trial

The bankruptcy court conducted a three-day trial in June 2022. Dorothy Wojtczak, five of the Appellees, and several other shareholders were among the thirteen individuals who testified. We summarize only the testimony most relevant to this appeal.

### A. Opening Statements

During his opening statement, the Appellees' counsel argued that the petition should be dismissed as the evidence would show that most of the individuals who signed the Resolution were not properly elected to the Board at the 2020 annual meeting in the manner required by the Club's bylaws. He stated: "The meeting ended. There w[as] only a handful of people left and they remembered that they forgot to elect a board," so the Club's president "just appointed some people" to the Board. The Trustee countered that the evidence would show that all the individuals whose names appeared on the Resolution were valid Board members.

### B. Shareholder Testimony

The Appellees introduced the testimony of June Massee, who had served as president of the Club for several years. She described the 2020 annual meeting as a "drunken brawl," explaining that after elections were held for the various officer positions, "chaos" ensued when a controversial financial report for 2019 was presented. Ms. Massee stated that "someone" then "said the meeting's adjourned in a loud voice" and "almost everybody got up and left." Ms. Massee believed the person who adjourned the meeting was Dorothy Wojtczak, who was known to abruptly end meetings when she did not like what she was hearing. No "director elections" had occurred before the meeting was adjourned, Ms. Massee stated.

**\*3** Kevin Juchno, who had been a member of the Club since 2016, also described the 2020 annual meeting as "chaotic" and testified that no Board had been elected before the meeting was adjourned. He explained that after the meeting was adjourned, somebody realized that a board of directors had not been elected. Dorothy Wojtczak then asked him if he would like to be a Board member and "offered up a couple of other names" from the "handful" of people remaining. She "asked if anyone objected to these people being appointed as directors. Everyone said no, no objections. And she said okay, we have our board members." Matthew Roman, a Club member for at least 50 years who served as a director, officer, and trustee, corroborated Mr. Juchno's testimony, stating that after the meeting was adjourned, Ms. Wojtczak simply asked the few remaining people whether they wanted to be on the Board and they agreed. Another former officer and trustee, Marian Zielinski, also testified that a large number of people left halfway through the meeting. There had been no election of Board members and so Dorothy Wojtczak simply chose the directors without any discussion. Rachel Ilnicki, a Club member who was working in the kitchen during the meeting, similarly explained that after a lot of people had left the meeting, Dorothy Wojtczak simply asked her to be a director and she agreed.

On direct examination by the Appellees, however, Dorothy Wojtczak insisted she did not simply "appoint" members of the Board when there was only a "handful" of people remaining. When questioned by the bankruptcy court as to how the directors were "chosen" at the 2020 annual meeting, she explained:

> [O]nce the election happens for the officers there is a hand vote, basically a question, who would like to become a director..., and whoever wants to be a director raises their hand. If there's not enough directors, then you can ask on the floor, hey, so[ ] and so[,] would you like to be a director?

All the individuals who signed the Resolution were "elected" in this manner at the 2020 annual meeting, Ms. Wojtczak stated. She also asserted that although the Club's 1927 bylaws may have required an "election" of directors, the Club had "not run by these bylaws for many, many years" and there had "never been a vote to elect any directors" since she became a Club member.

The Appellees, however, introduced conflicting testimony that before Dorothy Wojtczak became president in 2019, the Club conducted formal elections of directors. Matthew Roman explained that traditionally, when electing directors, a nominating committee made nominations for individuals to serve on the Board. Depending on how many director positions needed to be filled, there was either a ballot (by hand or paper) and the "highest vote getters" became directors, or, if the number of nominees did not exceed the number of positions to be filled, a motion would be made and seconded to accept the nominees as directors. Mitchell Nowak, who served as president of the Club for about 19 years, corroborated this testimony.

The Trustee introduced several witnesses who testified that the Board members were chosen before the conclusion of the 2020 annual meeting. Anton Zamachaj testified that, after determining the number of director positions to be filled, "nominations" for directors were made from the floor and then the nominees were "elected" by a "voice vote." He was nominated in this manner by his cousin, he explained, and no objections to any of the nominations were made. He further stated that the meeting was not adjourned before the election of the Board, insisting that the "mass exodus" occurred *after* the

directors were elected. Alice Pasterczyk similarly testified that the Board of Directors was "in place" before the 2020 annual meeting was adjourned. She could not recall, however, exactly how the Board members were selected, stating that her "recollection of specifics [of] that meeting [was] not quite there ...."

### C. Documentary Evidence

Both parties also introduced documentary evidence to support their respective positions. The Appellees repeatedly referenced the Club's bylaws, which the witnesses agreed required the Club to conduct an "election" of directors by "written ballot." They pointed to Dorothy Wojtczak's handwritten notes of the 2020 annual meeting, which reflected tallied votes for the officer positions but none for the directors, as evidence that the officers were selected by ballot and the directors were not. The Appellees also emphasized that a Certificate of Change of Directors and Officers for the Club (the "Change of Directors Certificate") filed with the Secretary of the Commonwealth in January 2021, indicated that the terms of the directors named therein expired in February 2021, well before the petition was filed.[6]

[6] The Change of Directors Certificate identified the following officers: Dorothy Wojtczak, President; Kevin Juchno, Treasurer; Heather Larsen, Clerk; Ronald Schwalm, Financial Secretary; and Carl Schreiber, Vice President; and the following directors: Mariola Jarzynska, Rachel Ilnicki, Jordan Klofas, Barbara Zabinska, Lucyna Wojtczak, and Anton Zamachaj.

**\*4** The Trustee, on the other hand, pointed to Ms. Wojtczak's handwritten notes of the 2020 annual meeting—which identified as new directors many but not all the individuals who signed the Resolution—as evidence that the individuals listed therein were elected to the Board at the 2020 annual meeting and that the election occurred before the meeting was adjourned. He also claimed that the Change of Directors Certificate "confirmed" that all the individuals who signed the Resolution were directors of the Club.

### D. The Trustee's Request for Payment of Administrative Expenses

Following closing arguments, the Trustee requested that dismissal of the petition be conditioned upon the Club's payment of "administrative expenses" incurred in the case:

> Your Honor, if you are ... inclined to grant the motion to dismiss, ... then I request that the dismissal be conditioned upon payment of the administrative expenses that have been incurred in this case.
>
> The petition was filed about nine months ago. Since then, trustee and counsel to trustee have spent over 135 hours in this case in good-faith reliance on the validity of the bankruptcy filing.
>
> You heard testimony from Ms. June Massee that the club can get loans, grants, and even, apparently, substantial money contributions from the club members.... [I]f so then the club should have the ability and obligation to pay the administrative expenses incurred in this case as a condition of the dismissal.
>
> I ask that if the case is to be dismissed, *that it be conditioned on the Court ordering the club to pay the administrative expenses* and that the club grant a mortgage on the Chicopee real estate to secure payment in full, no later than one year after the date of dismissal.

(emphasis added).[7] The bankruptcy court did not address or rule on the Trustee's request but took the entire matter under advisement.

[7] Significantly, although the Trustee had previously requested in the Sanctions Motion that the court impose an award of attorney's fees and expenses against *the Appellees* as sanctions for having to defend against their various motions, including the Motion to Dismiss, his request at the end of trial was for the bankruptcy court to "condition" any dismissal upon the *Club's* payment of "administrative expenses."

### III. Dismissal Order

On July 18, 2022, the bankruptcy court entered an order dismissing the bankruptcy petition (the "Dismissal Order"), concluding that the bankruptcy filing was not duly authorized under applicable Massachusetts law because the Resolution was not signed by a "properly constituted Board." See In re Polish-Am. Citizens Club Inc. of Willimansett, Mass., 642 B.R. 204 (Bankr. D. Mass. 2022). The court explained:

> Pursuant to the [Club]'s by-laws, the [Club]'s officers (who are automatically members of the Board) and other Board directors are to be *chosen by vote* at an

annual meeting. See Movants' Ex. 1, Art. IV § 1 and Art. VI § 1. The by-laws further provide that the Board of Directors consist of not less than 5 and no more than 15 directors. See Movants' Ex. 1, Art. IV § 1.

The [Club]'s last annual meeting was held in February 2020, attended by 92 individuals according to the sign-in sheet. See Movants' Ex. 4. The February 2020 meeting was described by some witnesses as chaotic, a fiasco, and a joke. The Court credits the testimony of June Massee and Matthew Roman, as corroborated by the testimony of other witnesses, that although an election of officers was done by ballot at the 2020 meeting, after the officers were elected but before the remaining Board directors were chosen, Wojtczak announced that the meeting was adjourned. At that time many people left. After the adjournment of the meeting, approximately 30 people remained. Someone realized that the remaining Board directors had not yet been elected. At that point, Wojtczak essentially nominated several people to be directors, they agreed, and no one disagreed.

**\*5** According to the minutes of the February 2020 meeting prepared by Wojtczak, prior to the adjournment of the meeting, 4 officers had been elected by ballot. See Movants' Ex. 6. Pursuant to the [Club]'s by-laws, those officers also constituted members of the Board. See Movants' Ex. 1, Art. IV § 1. *As to the remaining purported directors of the Board, the Court finds that they were not properly elected prior to the adjournment of the annual meeting as required by the by-laws.* See Movants' Ex. 1, Art. VI § 1. At the conclusion of the 2020 meeting, therefore, there were only 4 properly elected Board members. However, the by-laws require the Board to consist of at least 5 members. See Movants' Ex. 1, Art. IV, § 1. No annual meetings were conducted to elect officers or directors of the Board after the February 2020 meeting. Accordingly, the Court finds and rules that the corporate resolutions were not signed by a properly constituted Board and the filing of the [Club]'s Bankruptcy Case was therefore not authorized.
Id. at 207-08 (emphasis added) (footnotes omitted).

In a footnote at the end of the decision, the bankruptcy court denied the Trustee's request to condition dismissal upon payment of administrative expenses, stating:

In addition to opposing dismissal of the Bankruptcy Case, the Trustee has also asked the Court to require *the moving shareholders* to reimburse the Trustee for his time and expenses incurred in the case *in defending the shareholders' various motions*. The Trustee has cited to no authority in support of such a request, and the Court will not invoke its powers under 11 U.S.C. § 105(a) or its general equitable powers to award the Trustee reimbursement of his legal fees and expenses.
Id. at 208 n.5 (emphasis added).

**IV. The Trustee's Request for Reconsideration**

**A. Motion to Reconsider**
Eleven days later, the Trustee filed a motion seeking reconsideration of the Dismissal Order under Rules 59(e) and 60(b) (the "Motion to Reconsider"). The Trustee argued that, because he did "not anticipate" that the bankruptcy court "would hinge its decision on whether the 2020 annual meeting had been adjourned before the election of directors," reconsideration was warranted so he could introduce affidavits by six shareholders of the Club as "new evidence" regarding when the meeting was adjourned. The Trustee further emphasized that although the Club's bylaws called for an election of directors by ballot, the "actual practice" was for the Club's president to appoint directors as needed to constitute the Board.

The Trustee also asked the court to reconsider the denial of his request to condition the dismissal of the petition upon the Club's payment of administrative expenses to the Trustee and his counsel.[8] He argued that: (1) he acted in "good faith reliance" on the validity of the Resolution; (2) by the time the Motion to Dismiss was filed, he and his counsel had already spent over 61 hours of time in the case, and a motion to sell the Property had already been "in the works" for months; (3) the bankruptcy court had authority under § 105 to condition the dismissal upon payment of administrative expenses; and (4) his request was also supported by "analogous case law" under the equitable theory of quantum meruit citing, among others, In re Jankowski, 382 B.R. 533 (Bankr. M.D. Fla. 2007) (awarding quantum meruit compensation to the trustee for carrying out his duties under § 704 before case was dismissed).

[8] In a footnote, the Trustee characterized his request as follows:
Specifically, the Trustee requested that after the filing with the Court of an application for fees and expenses, and the Court's review and allowance of same, that the [Club] grant a mortgage on its real estate located at 13 Norman Street, Chicopee, Mass., to secure payment of the allowed administrative expenses no later than one year from the date of dismissal.

### B. Appellees' Opposition to Motion to Reconsider

**\*6** The Appellees opposed the Trustee's request for reconsideration on the basis of "newly discovered evidence," arguing that the information contained in the "new" affidavits "could have been learned earlier by reasonable diligence." The Appellees also urged the bankruptcy court to deny reconsideration of the Trustee's request for payment of administrative expenses. Emphasizing that the Trustee had offered no legal authority at trial to support his initial request, the Appellees asserted that his newly advanced theory of quantum meruit was unpersuasive as there was no evidence the Trustee had provided "valuable" services to the estate.

### C. Order Denying Reconsideration

After a hearing, the bankruptcy court entered an order denying the Motion to Reconsider (the "Order Denying Reconsideration"). The court explained that the question of whether the bankruptcy filing "was authorized by a duly elected Board of Directors was known to the Trustee prior to and during the trial," and he "was given ample opportunity to raise any legal arguments in opposition to the Motion to Dismiss and specifically declined to file a posttrial brief to address any further legal arguments in light of testimony adduced at trial." It also rejected the Trustee's proffer of "new evidence" as he had failed to demonstrate it was previously unavailable to him through reasonable diligence. "As to the Trustee's arguments regarding payment of his legal fees," the court ruled, "the cases cited by the Trustee [we]re factually distinguishable and largely relied on specific provisions of the Bankruptcy Code in ruling that a Chapter 7 trustee was entitled to recovery and payment of fees."

### V. The Appeal

This appeal followed. The Trustee's requests to the bankruptcy court and the Panel for a stay pending appeal were denied.

## POSITIONS OF THE PARTIES

### I. The Trustee

The Trustee's sole challenge to the dismissal of the Club's petition is that it was based on a clearly erroneous finding that the Board was not elected before the 2020 annual meeting was adjourned. He claims that the bankruptcy court erred by relying on the testimony of June Massee, Matthew Roman, Kevin Juchno, and Marian Zielinski, all of whom, he contended, lacked credibility due to their "acrimonious" relationship with Dorothy Wojtczak and/or their "questionable recall" of the events that took place at the 2020 annual meeting. The bankruptcy court, the Trustee insists, should have focused instead on the conflicting testimony of Dorothy Wojtczak, Alice Pasterczyk, and Anton Zamachaj that the 2020 annual meeting was not adjourned until after the Board members were selected. He also points to the Change of Directors Certificate which, he claims, "confirms" that the individuals who signed the Resolution were valid Board members. Although the Change of Directors Certificate suggests that the directors' terms expired in February 2021, he contends, because there was no annual meeting or election of a new Board in 2021, those directors "continued to serve" as set forth in Mass. Gen. Laws ch. 155D, § 8.05(e) (providing that "[d]espite the expiration of a director's term, he shall continue to serve until his successor is elected and qualified").[9]

[9]   We question the Trustee's reliance on Mass. Gen. Laws ch. 155D, § 8.05(e), as that provision does not appear to apply to "[special] purpose" corporations such as the Club, which is governed by Mass. Gen. Laws ch. 180. Even if this statute were applicable, however, it would have no bearing on the outcome of this appeal. The Trustee raises the "director holdover" provision to argue that the directors who were elected in 2020 continued to serve at the time the Resolution was signed. Having determined that the directors were not properly elected during that meeting, the bankruptcy court never reached this issue. Moreover, the Trustee did not raise the "director holdover" statute to argue that, even if the directors were not validly elected at the *2020* annual meeting, then the directors who were elected at the *2019* annual meeting continued to serve at the time the petition was filed. Even if he had raised this argument, however, there is nothing in the record showing that any of the individuals (except for one) who signed the Resolution were elected as directors in 2019.

**\*7** The Trustee also argues that the bankruptcy court "should have allowed" the Motion to Reconsider. He

reiterates his arguments below that he was not given "fair notice" of the Appellees' allegation that the 2020 annual meeting was adjourned prior to the election of directors, and he should have been allowed to "provide new evidence ... regarding this issue."

Finally, the Trustee contends that the bankruptcy court, as a court of equity, should have "conditioned" the dismissal of the case on the Club's payment of administrative expenses incurred by the Trustee and his counsel. The Trustee emphasizes, as he did in the Motion to Reconsider, that he had relied in good faith upon the Resolution as authority for the Club's bankruptcy filing and that, given the time he and his counsel had spent administering and prosecuting the case, it would have been "just and equitable" for the court to allow administrative expenses. Other than a brief reference to § 105, the Trustee does not cite any other legal authority to support his position.

**II. The Appellees**
The Appellees counter that the bankruptcy court committed no error when it dismissed the Club's petition because the Board was not duly elected and, thus, had no legal authority to sign the Resolution. Emphasizing that the Panel must give "due regard to the trial court's opportunity to judge the credibility of witnesses," the Appellees assert that although there was some conflicting evidence as to whether the Board was properly elected at the 2020 annual meeting, the Trustee does not point to any "significant error" in the bankruptcy court's credibility determinations and weighing of the evidence. As the bankruptcy court's "decision about what testimony and documents to credit was amply supported by the evidence," the court's findings "should stand," they argue.

The Appellees also argue that the bankruptcy court correctly denied the Motion to Reconsider, as the Trustee had due notice of their allegation that the Board was not properly elected at the 2020 annual meeting. Further, the Appellees contend, the bankruptcy court correctly determined that the "new evidence" proffered by the Trustee "could have been known at the time of the original hearing by exercise of reasonable diligence, and should have been presented prior to the ruling ...."

Finally, the Appellees urge us to "[d]eny the Trustee's request for fees." They highlight that the Trustee cited no legal authority to support his initial request at the conclusion of the trial, nor has he cited any legal authority for that request in his appellate brief, other than a brief reference to § 105. Moreover, they contend, the Trustee does not explain "how his activities benefitted the Debtor, its estate, or its creditors."

In the prayer for relief set forth at the end of their brief, the Appellees also ask us to award them "attorneys fees and costs, based on the Trustee filing a frivolous appeal, without reasonable legal or factual grounds to do so."

**APPELLATE JURISDICTION**

We have jurisdiction to hear appeals from final orders of the bankruptcy court. See 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, ––– U.S. ––––, 140 S. Ct. 582, 587, 205 L.Ed.2d 419 (2020). A bankruptcy court order dismissing a chapter 7 bankruptcy petition is a final order. Asociación de Titulares de Condominio Castillo v. DiMarco (In re Asociación de Titulares de Condominio Castillo), 581 B.R. 346, 354 (B.A.P. 1st Cir. 2018). Because the Dismissal Order is final, the Order Denying Reconsideration is also a final order. See id. ("A bankruptcy court order denying a motion to alter a judgment under Rule 59(e) or to set aside a judgment under Rule 60(b) is a final order 'if the underlying order is final and together the orders end the litigation on the merits.' ") (citation omitted). Therefore, we have jurisdiction to review both orders.

**STANDARDS OF REVIEW**

*8 We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 496 (B.A.P. 1st Cir. 2016). Typically, a bankruptcy court's dismissal of a chapter 7 petition is reviewed for an abuse of discretion. See In re Eldorado Canyon Props., LLC, 505 B.R. 601, 603 (B.A.P. 1st Cir. 2014). Here, however, the bankruptcy court dismissed the chapter 7 petition because it was not duly authorized by a properly constituted board of directors. Whether a corporate agent had the requisite authority to file a bankruptcy petition on the corporation's behalf is a legal question which is reviewed de novo. See Keenihan v. Heritage Press, Inc., 19 F.3d 1255, 1258 (8th Cir. 1994); Squire Ct. Partners Ltd. P'ship v. Centerline Credit Enhanced Partners LP Series J (In re Squire Ct. Partners Ltd. P'ship), 574 B.R. 701, 705 (E.D. Ark. 2017). If the corporate agent lacked authority to file a bankruptcy petition, the court has no discretion and must dismiss the

petition. Price v. Gurney, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945).

The Trustee argues that the bankruptcy court's determination that the bankruptcy filing was unauthorized was based on an erroneous factual finding. We review the court's factual findings for clear error. See Nevor v. Moneypenny Holdings, LLC, 842 F.3d 113, 117 (1st Cir. 2016) ("In the aftermath of a bench trial, we review the [trial] court's factual findings for clear error.") (citation omitted). Under the clearly erroneous standard, factual findings will be set aside "only if, on the entire evidence, [the reviewing court is] left with the definite and firm conviction that a mistake has been committed." Id. (citation and internal quotation marks omitted). "[I]f there are a couple of plausible ways to view the evidence, the judge's preference for one over the other cannot be clear error." Toye v. O'Donnell (In re O'Donnell), 728 F.3d 41, 45 (1st Cir. 2013) (citation omitted); see also Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

An order denying a motion for reconsideration is reviewed for abuse of discretion. Rodriguez Camacho v. Doral Fin. Corp. (In re Rodriguez Camacho), 361 B.R. 294, 299 (B.A.P. 1st Cir. 2007). Typically, a bankruptcy court's decision on whether to award compensation to a chapter 7 trustee or the trustee's counsel is also reviewed for abuse of discretion. See Michel v. Beard (In re Beard), 45 F.3d 113, 118 (6th Cir. 1995) (stating that "the statutory framework allows the courts a rather broad measure of discretion to allow 'reasonable compensation' to a Chapter 7 ... bankruptcy trustee") (citing 11 U.S.C. §§ 105(a), 326(a), 330(a)); Daikin Mia. Overseas, Inc. v. Lee, Schulte, Murphy & Coe, P.A. (In re Daikin Mia. Overseas, Inc.), 868 F.2d 1201, 1208 (11th Cir. 1989) ("The determination of attorneys' fees in a bankruptcy proceeding is normally left to the sound discretion of the bankruptcy judge unless the bankruptcy judge abuses his discretion.") (citation omitted). We may set aside a bankruptcy court's discretionary ruling if the court "relie[d] upon an improper factor, neglect[ed] a factor entitled to substantial weight, or consider[ed] the correct mix of factors but ma[de] a clear error of judgment in weighing them." Mercado v. Combined Invs., LLC (In re Mercado), 523 B.R. 755, 761 (B.A.P. 1st Cir. 2015) (quoting Bacardí Int'l Ltd. v. V. Suárez & Co., 719 F.3d 1, 9 (1st Cir. 2013)).

**DISCUSSION**

**I. The Bankruptcy Court Did Not Err in Dismissing the Chapter 7 Petition**

**A. Dismissal of Chapter 7 Petition for Lack of Corporate Authority**

Section 707(a) provides that the bankruptcy court "may" dismiss a chapter 7 case "for cause." See 11 U.S.C. § 707(a). The Bankruptcy Code does not define "cause," but courts have held that "[c]ause for dismissal exists where a business entity lacks authority to file a bankruptcy petition." In re Or. Homes, LLC, No. 13-33349, 2014 WL 4794861, at *2 (Bankr. N.D. Ohio Sept. 25, 2014) (citing, among others, Price, 324 U.S. at 106, 65 S.Ct. 513); see also In re Innocenti, LLC, No. 15-30690 HLB, 2016 WL 3483228, at *3 (Bankr. N.D. Cal. June 20, 2016). Although the bankruptcy court typically has discretion to determine whether cause exists to dismiss a chapter 7 petition, see Wilk Auslander LLP v. Murray (In re Murray), 900 F.3d 53, 57 (2d Cir. 2018), "if the [bankruptcy court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." Price, 324 U.S. at 106, 65 S.Ct. 513; see also In re Real Homes, LLC, 352 B.R. 221, 225 (Bankr. D. Idaho 2005) ("It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed.") (citations omitted). "The burden of demonstrating cause for dismissal for lack of authority to file is on the movant." In re Curare Lab. LLC, 642 B.R. 787, 802 (Bankr. W.D. Ky. 2022) (citation and internal quotation marks omitted); see also In re Quad-C Funding LLC, 496 B.R. 135, 142 (Bankr. S.D.N.Y. 2013) (holding that party seeking dismissal for lack of authority to file the petition bears the burden of proof).

**B. Massachusetts Law and the Club's Bylaws**

*9 State law typically governs a corporation's authority to file a bankruptcy petition. See Hager v. Gibson, 188 B.R. 194, 197 (E.D. Va. 1995) ("If the corporation is incorporated under state law, then the ... court must look to state law to decide whether the authority to file bankruptcy existed."), aff'd, 108 F.3d 35 (4th Cir. 1997); see also Thompson v. Daluise (In re Wet-Jet Int'l, Inc.), 235 B.R. 142, 148 (Bankr. D. Mass. 1999) ("The source of a corporation's authority to file a bankruptcy petition is found in state law, not in the Bankruptcy Code.") (citation omitted). Here, the bankruptcy court concluded that

**Polish-American Citizen's Club Inc., Slip Copy (2023)**
72 Bankr.Ct.Dec. 166

Chapter 180 of the Massachusetts General Laws ("Chapter 180") applies to the Club, "since the stated purpose of the [Club] corresponds to the purposes defined in Chapter 180, § 4(a), (f), and (i) (namely, the [Club] was formed for any civic, educational, charitable, benevolent purposes, athletic purposes, and for the establishment and maintenance of places for reading rooms, libraries or social meetings)." Neither party challenges that determination and, based on the record before us, we discern no error.

Chapter 180 does not specifically address who has the authority to file a bankruptcy case on behalf of a corporation subject to its provisions. Sections 6A and 17 of Chapter 180, however, grant a corporation the power to determine the duties and powers of the officers and directors through its bylaws. See Mass. Gen. Laws ch. 180, § 6A (providing that "[a] corporation may prescribe by its by-laws the manner in which and the officers and agents by whom its purposes may be accomplished") and § 17 (providing that "[t]he by-laws shall contain clear and distinct provisions relative to ... the titles, duties, powers and tenure of the officers of the corporation and their election and removal").

There is no dispute that the Club is governed by its original bylaws, which were enacted when the Club was formed in 1927.[10] Article IV, § 2 of the Club's bylaws, entitled "Directors," provides, in relevant part:

> *The Board of Directors shall transact all business of the Club and may exercise all powers of the corporation except such as are conferred by the law or by these by-laws upon the stockholders.* It shall make rules and regulations to govern its own meetings, it may fill vacancies, choose standing and special committees of its own number *for facilitating the work and welfare of the Club.*
>
> ....
>
> One-third Directors of the Board shall constitute a quorum at any meeting of the Board.

(emphasis added).

[10] Although there was some testimony at trial suggesting that the original 1927 bylaws may have been amended, there is no evidence in the record as to the nature of any such amendments (other than an amendment prohibiting more than one family member from serving on the Board) or when or how they were made. The record reflects that the bankruptcy court considered the 1927 bylaws to be controlling and no challenges to that determination have been made in this appeal. Moreover, both parties agreed at oral argument that the Club is governed by the 1927 bylaws. Therefore, we also consider the 1927 bylaws to be the controlling document for the Club.

While the bylaws do not explicitly reference the filing of a bankruptcy petition or explicitly confer authority for the filing of such petitions, the act of filing a bankruptcy petition may properly be viewed as an act "facilitating the work and welfare of the Club" within the meaning of the bylaws, to the extent that bankruptcy would promote the proverbial "fresh start" of the Club. See In re Wolf, 739 F. App'x 165, 169 (3d Cir. 2018) ("Bankruptcy allows individuals and corporations to recover from difficult circumstances, and provides a fresh start to those who need it."). Additionally, as the Massachusetts bankruptcy court has recognized, "[s]tatutes with similar language [authorizing the board of directors to conduct the business of the corporation] have been held to authorize the board of directors to file a petition in bankruptcy." In re N2N Com., Inc., 405 B.R. 34, 41 (Bankr. D. Mass. 2009) (quoting In re Arkco Props., Inc., 207 B.R. 624, 628 (Bankr. E.D. Ark. 1997)). Further, the Club's bylaws do not explicitly restrict the authority of the Board to file a bankruptcy petition and there is no authority in the bylaws that would permit anyone, other than the Board of Directors, to authorize the filing of a bankruptcy petition. Therefore, the validity of the filing of the Club's chapter 7 petition was "fully dependent" on whether the Resolution authorizing that filing was made by a "duly elected, properly constituted Board of Directors." See In re Wet-Jet Int'l, Inc., 235 B.R. at 148 (stating that where only the board of directors has authority to file a bankruptcy petition, the "validity" of a bankruptcy filing is "fully dependent" on whether the filing was authorized by a "duly elected, properly constituted Board of Directors").

**\*10** To determine whether the Resolution was signed by a "duly elected, properly constituted Board of Directors," we again turn to Massachusetts law and the Club's bylaws. Section 6A of Chapter 180 provides that a "corporation may by its by-laws determine ... the tenure of office of the directors and officers and the manner of their selection and removal[.]" Mass. Gen. Laws ch. 180, § 6A. Article V, § 1 of the Club's bylaws requires the Club to hold an annual meeting of its stockholders, and Article VI, § 1, which outlines the "order of business" to be conducted at the annual meetings, includes the "[e]lection of directors and other officers" as an agenda item. Article IV, § 1, entitled "Officers," further provides:

> The officers of this Club shall be a Board of not less than five (5) and not more than fifteen (15) directors, a President, a Vice-President, a Treasurer, [a] Clerk, and

a Financial Secretary, all of whom shall belong to the Board of Directors.

All the above officers shall be chosen by ballot at the annual meeting, with the exception of the President and the Vice-President, who shall be chosen by the Directors at the first meeting of the Board.

All officers shall hold office for one year and until their successors are chosen and qualified.

The bankruptcy court interpreted these provisions to mean there must be at least five and no more than fifteen members of the Board of Directors—which automatically include the president, vice president, treasurer, clerk, and financial secretary—and all "officers ... and other Board directors" must be "chosen by vote" at the annual meeting. [In re Polish-Am. Citizens Club Inc. 642 B.R. at 207](). The bankruptcy court's interpretation of the Club's bylaws has not been disputed.

The bankruptcy court ultimately concluded that only the four officers who were elected by ballot at the 2020 annual meeting (Dorothy Wojtczak as president, Carl Schreiber as vice president, Joe Martino as treasurer, and Ron Schwalm as financial secretary) were valid members of the Board under the Club's bylaws and that the remaining purported directors "were not properly elected prior to the adjournment of the annual meeting as required by the by-laws." Id. Specifically, it found, based on the testimony of June Massee, Matthew Roman, Kevin Juchno and Marian Zielinski, that:

> [A]lthough an election of officers was done by ballot at the 2020 meeting, after the officers were elected but before the remaining Board directors were chosen, Wojtczak announced that the meeting was adjourned. At that time many people left. After the adjournment of the meeting, approximately 30 people remained. Someone realized that the remaining Board directors had not yet been elected. At that point, Wojtczak essentially nominated several people to be directors, they agreed, and no one disagreed.

Id. The bankruptcy court then ruled that, because the bylaws require the Board to have at least five members, and only the four officers were properly elected, there was not a properly constituted Board and the Club's bankruptcy case was unauthorized. Id.

### C. No Reversible Error

The Trustee's sole argument on appeal with respect to the dismissal of the Club's petition is that the bankruptcy court made a clearly erroneous finding that the 2020 annual meeting "was adjourned prior to the election of the directors." Underlying the Trustee's argument is an assumption that the bankruptcy court's determination as to the validity of the so-called "election" of directors was based solely on *when* the meeting was adjourned and not the manner in which the "election" was conducted. This assumption ignores the import of the bankruptcy court's determination that the directors "were not properly elected" under the Club's bylaws. When considering Massachusetts law and the Club's bylaws, the bankruptcy court concluded that the bylaws required all officers *and other Board members* "to be chosen by vote" at the annual meeting, a determination which has not been challenged on appeal. The court found, however, that only four officers were elected by ballot at the 2020 annual meeting, and the remaining directors were simply selected by Ms. Wojtczak without a formal ballot or vote. Therefore, the bankruptcy court's conclusion regarding the validity of the Resolution was based both on *when* the meeting was adjourned and on the manner in which the remaining directors were selected.

**\*11** There was much testimony at trial to support the bankruptcy court's finding that the directors were not properly elected by formal vote or ballot before the adjournment of the 2020 annual meeting as required by the bylaws. June Massee testified that after the officers and trustees were elected, the meeting was "adjourned," and no Board of Directors had been elected before the adjournment. Her testimony was corroborated by at least two shareholders—Kevin Juchno and Matthew Roman—both of whom testified that no Board members were elected before the meeting was adjourned and that, after the majority of shareholders had left, Dorothy Wojtczak simply named people to serve on the Board from those remaining. There were also several other shareholders, including Marian Zielinski and Rachel Ilnicki, who did not expressly state that the meeting had been adjourned, but did say that after the officers were elected, most of the shareholders left, and Ms. Wojtczak then selected the Board members without a formal vote.

Even Dorothy Wojtczak testified that the directors were not elected by formal vote or ballot at the 2020 annual meeting, stating: "There is no official vote for board of directors. It is a ... hand vote, or nomination of ... the board, on the floor."[11] Although Ms. Wojtczak insisted it had been many years since the Club's directors were formally elected by ballot, there was nothing in the record from which the court could have concluded that the provisions of the Club's bylaws requiring an "election" of directors had been altered or amended by shareholder vote at an annual meeting as required under Article VIII, § 3 of

the Club's bylaws.[12] Further, even if the bylaws could be amended by a course of conduct over time—as the Trustee seems to suggest without offering any legal support—several longstanding shareholders testified that before Ms. Wojtczak became president in 2019, the Club did, in fact, conduct a formal election process for the Board members, but that process was no longer followed under Ms. Wojtczak's leadership.

[11] Ms. Wojtczak's testimony was consistent with the minutes of the Club's annual meeting in 2019, which reflected tallied votes for the officers but indicated the directors were selected by "hand vote" at that meeting.

[12] Article VIII, § 3 of the bylaws provides: "The[se] by-laws may be changed, amended or new ones added at any meeting of the stockholders regularly called, notified and held, as provided by these by-laws, by affirmative vote of two-thirds of all stockholders present and voting."

In rendering its decision, the bankruptcy court "credit[ed] the testimony of June Massee and Matthew Roman, as corroborated by the testimony of other witnesses" such as Kevin Juchno and Marian Zielinski. The Trustee, however, argues that these witnesses lacked credibility and contends the bankruptcy court should have relied instead on conflicting testimony from Dorothy Wojtczak, Alice Pasterczyk, and Anton Zamachaj, who testified that the 2020 annual meeting was not adjourned until after the Board members were selected. Because of this conflicting evidence, the Trustee argues, the court's determination that the 2020 annual meeting was adjourned prior to the election of the directors "was clearly erroneous and should be reversed ...."

The Trustee, however, has not demonstrated that the bankruptcy court's view of the evidence was implausible and, therefore, clearly erroneous. See Anderson, 470 U.S. at 573-74, 105 S.Ct. 1504. The bankruptcy court conducted a trial over the course of three days, heard testimony from 13 witnesses, and admitted 11 exhibits into evidence. It had the opportunity to observe the demeanor of the witnesses, assess their credibility, and weigh all the testimonial and documentary evidence presented. Without question, there was conflicting evidence supporting the Trustee's allegations that the directors were selected *before* the 2020 annual meeting was adjourned. But the existence of conflicting evidence, standing alone, is insufficient to establish that the bankruptcy court's finding was clearly erroneous. See Goat Island S. Condo. Ass'n, Inc. v. IDC Clambakes, Inc. (In re IDC Clambakes, Inc.), 727 F.3d 58, 65 (1st Cir. 2013) (declining to find clear error where there was sufficient evidence to support two plausible but conflicting findings). Further, there was ample evidence in the record to support a finding that even if the directors were selected *before* the meeting adjourned, they were not elected by formal ballot as required by the bylaws. Thus, the bankruptcy court's finding that the directors were not "properly elected" before the meeting was adjourned was "plausible" based on the entire record before the bankruptcy court and we could not overturn it even if we might have weighed the evidence differently. Devila Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval), 327 B.R. 493, 505-06 (B.A.P. 1st Cir. 2005). Affording the bankruptcy court the "due deference" to which it is entitled when weighing the evidence, see Fed. R. Civ. P. 52(a)(6), we are not left with "the definite and firm conviction that a mistake has been committed." Nevor, 842 F.3d at 117.

**\*12** Having concluded that the bankruptcy court's factual findings were not clearly erroneous, it necessarily follows that the bankruptcy court did not err in ruling that the Club's bankruptcy filing was not authorized by a duly elected Board of Directors and in dismissing the unauthorized petition. See Price, 324 U.S. at 106, 65 S.Ct. 513.

**II. The Bankruptcy Court Did Not Abuse its Discretion in Denying Reconsideration of the Dismissal Order**

We turn, now, to the bankruptcy court's denial of the Trustee's request for reconsideration of the Dismissal Order under Rules 59(e) and 60(b). On appeal, the Trustee reiterates his assertion in the Motion to Reconsider that he had not been given "fair notice" of the Appellees' allegation that the 2020 annual meeting was adjourned prior to the election of directors and argues that the Motion to Reconsider "should have been allowed" so that he could provide "new evidence" regarding this issue. For the reasons discussed below, we conclude that the Trustee has not satisfied his burden of demonstrating that the bankruptcy court's denial of relief under Rules 59(e) and 60(b) constituted an abuse of discretion.

It is well settled in the First Circuit that to prevail under Rule 59(e), the moving party "must either clearly establish a 'manifest error of law or fact' or must present 'newly discovered evidence.' " La Trinidad Elderly LP SE v. Loíza Ponce Holdings LLC (In re La Trinidad Elderly LP SE), 627 B.R. 779, 804 (B.A.P. 1st Cir. 2021) (citation omitted); see also Aybar v. Crispin-Reyes, 118

F.3d 10, 16 (1st Cir. 1997). "The filing of a Rule 59(e) motion," however, "does not afford the movant an opportunity to introduce evidence that was previously available." Mancini v. City of Providence, 909 F.3d 32, 48 (1st Cir. 2018) (citation omitted). Therefore, "[a] party asking a court to reconsider its judgment on this basis must show 'that [it] could not in the exercise of reasonable diligence have obtained [the] new evidence earlier.' " City of Mia. Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp., 46 F.4th 22, 36 (1st Cir. 2022) (citation omitted). This means that "when a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce that evidence to support a Rule 59(e) motion." In re Ortiz Arroyo, 544 B.R. 751, 757 (Bankr. D.P.R. 2015) (citation omitted).

The court may also relieve a party from a final judgment under Rule 60(b)(2) if the party presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2). As with Rule 59(e), "a party who seeks relief from a judgment based on newly discovered evidence [under Rule 60(b)(2)] must, at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the proceedings." Fisher v. Kadant, Inc., 589 F.3d 505, 513 (1st Cir. 2009) (quoting Karak v. Bursaw Oil Corp., 288 F.3d 15, 19-20 (1st Cir. 2002)).

The Trustee has not offered any cogent reason why he could not, in the exercise of due diligence, have obtained the evidence contained in the six affidavits before the entry of the Dismissal Order or why he could not have anticipated the premise underlying the Motion to Dismiss. It is clear from both the joint pretrial memorandum and the Appellees' opening statement at trial that the Appellees were challenging the validity of the election of the Board of Directors. As the Club's bylaws require that the Board members be elected by ballot at the annual meeting—a determination by the bankruptcy court that the Trustee does not dispute on appeal—the Trustee could have, and should have, produced any and all evidence to refute the evidence proffered by the Appellees to establish that the Board members were not validly elected during the 2020 annual meeting. The Trustee did not argue, or demonstrate, that the "new" evidence he was seeking to proffer through the affidavits was "previously unavailable" to him and that he could not have discovered the evidence earlier "in the exercise of due diligence."

**\*13** In fact, the Trustee admitted in connection with the Motion to Reconsider that the six affiants " 'could' have testified at the prior hearings" on the Motion to Dismiss, but that, "[o]ut of respect for the Court's time," he would not present "numerous witnesses [to] testify to the same effect ...." Therefore, by his own admission, the Trustee's failure to introduce the evidence earlier was a strategic litigation choice, not the result of unavailability of evidence. And, in any event, courts have held that new evidence "which at best is merely cumulative" of previously submitted evidence or which merely "corroborat[es]" prior allegations does not satisfy Rule 60(b)(2). See Giroux v. Fed. Nat'l Mortg. Ass'n, 810 F.3d 103, 107 (1st Cir. 2016) (citation and internal quotation marks omitted).

We conclude, therefore, that the bankruptcy court did not abuse its discretion in rejecting the Trustee's belated effort to produce additional evidence regarding the adjournment of the 2020 annual meeting after the entry of the Dismissal Order by way of a Motion to Reconsider.

**III. The Bankruptcy Court Did Not Abuse its Discretion by Declining to Condition Dismissal of the Bankruptcy Case on the Payment of Administrative Expenses Incurred by the Trustee and his Counsel**

The Trustee's final argument on appeal is that the bankruptcy court should have "conditioned" the dismissal of the bankruptcy petition on the Club's payment of at least a portion of the "administrative expenses" incurred by the Trustee and his counsel in the administration of the estate. As in his initial request in the proceedings below, the Trustee does not cite any statutory authority to support his argument, except for a brief reference to § 105. When requesting payment of administrative expenses, however, he repeatedly references the number of hours he and his counsel had collectively spent administering the estate, marketing the Property for sale to maximize payments to creditors, and defending the Appellees' motions. Under § 503(b)(2), both the Trustee's compensation and his counsel's fees and expenses incurred in the administration of the bankruptcy estate would constitute "administrative expenses," if allowed. See 11 U.S.C. § 503(b)(2) (providing that "compensation and reimbursement awarded under [§] 330" are "allowed administrative expenses"); Law v. Siegel, 571 U.S. 415, 422, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) (recognizing that reasonable attorney's fees incurred by the trustee "were indubitably an administrative expense"); Boldt v. Crake (In re Riverside-Linden Inv. Co.), 945 F.2d 320, 324 (9th Cir. 1991) (recognizing allowed trustee's fees are administrative expenses under § 503(b)(2)). Therefore, we

**Polish-American Citizen's Club Inc., Slip Copy (2023)**
72 Bankr.Ct.Dec. 166

construe the Trustee's request for payment of administrative expenses as one for allowance and payment of both his compensation and his counsel's fees and expenses.

### A. Statutory Provisions Governing Compensation for Chapter 7 Trustees and Professionals

Requests for payment of compensation and expenses by the estate are governed by § 330, which provides that the bankruptcy court "may award to a trustee ... or any professional persons employed under § 327 ... reasonable compensation for actual, necessary services rendered." See 11 U.S.C. § 330(a). Compensation is reasonable if, among other things, "the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a [bankruptcy] case ...." See 11 U.S.C. § 330(a)(3)(C). Consequently, the fact that a case "was ultimately dismissed does not [automatically] render the trustee's [or his counsel's] efforts unnecessary."[13] In re Jankowski, 382 B.R. at 545.

[13] Although dismissal does not render a trustee's efforts unnecessary, § 326(a) limits a chapter 7 trustee's "reasonable" compensation under § 330 (but not that of his counsel) "to a percentage of the funds disbursed by the trustee." Checks Cashed for Less v. Kipperman, No. 11cv2383 BTM( ), 2012 WL 2723027, at *3 (S.D. Cal. July 9, 2012). Thus, if, as here, a chapter 7 case is dismissed before the trustee distributes any funds, "the plain language of § 326(a) directs that ... the trustee's maximum compensation ... [is] $0." In re Mingledorff, No. 12-41543-EJC, 2015 WL 3897374, at *5 (Bankr. S.D. Ga. June 23, 2015). Some courts, however, eschew a strict reading of § 326(a) and award compensation to chapter 7 trustees in unadministered cases based on equitable considerations. See, e.g., In re Jankowski, 382 B.R. at 542-45 (applying quantum meruit principles to award compensation to chapter 7 trustee for carrying out his duties before case was dismissed). Here, however, the bankruptcy court did not reach the question of whether the Trustee and his counsel were entitled to compensation under § 330 or whether the Trustee's compensation was limited by § 326(a) as they failed to follow the mandatory procedural requirements for requesting such relief, as discussed below.

**\*14** Court approval is mandatory for all awards of compensation and fees from the estate, and trustees and professionals seeking such compensation are *required* to submit fee applications setting forth a detailed explanation of the services rendered, time expended, expenses incurred, and the amounts requested. See Fed. R. Bankr. P. 2016(a) (providing that entities seeking compensation "shall" file applications which are subject to a noticed hearing prior to allowance or payment of fees); In re Par 5 Prop. Invs., LLC, No. 21-22404-A-11 MF-2, 2022 Bankr. LEXIS 3045, at *21 (Bankr. E.D. Cal. Oct. 26, 2022) (recognizing that § 330 is implemented by Bankruptcy Rule 2016, which requires professionals to file applications for compensation); see also Scotiabank de P.R. v. Burgos (In re Plaza Resort at Palmas, Inc.), 741 F.3d 269, 276 n.9 (1st Cir. 2014) (recognizing, in a different statutory context, that "shall" is a "mandatory verb").

### B. Review of the Bankruptcy Court's Ruling

Here, although the Trustee and his counsel sought to "condition" dismissal on the Club's payment of "administrative expenses" they incurred in the administration of the estate, they did so through an oral request made at the end of trial, and not through a formal motion or application. They never filed fee applications detailing the compensation requested as required by Bankruptcy Rule 2016(a) or requested additional time to do so. Nor did the Trustee at any point cite § 330 as the legal basis for his requested relief. The bankruptcy court having denied his request for attorney's fees and costs as sanctions against the Appellees due, in part, to his failure to cite any supporting legal authority, the Trustee was clearly on notice that any further request for payment of attorney's fees and expenses should identify the relevant legal basis for the requested relief. The Trustee also failed to make clear, in his oral request at the close of trial, that he was not seeking payment of attorney's fees and expenses *from the Appellees*—as asserted in the Sanctions Motion—but rather compensation *from the estate*.

The bankruptcy court appears to have misconstrued the Trustee's verbal request at the end of trial as a *renewed* request to impose monetary sanctions *against the Appellees* in the amount of his attorney's fees and expenses incurred in defending against their various motions, as set forth in his initial Sanctions Motion, rather than a new request for compensation under § 330. This interpretation of the Trustee's request is at odds with the record. We conclude, however, that the mischaracterization is harmless, as the court had no obligation (or authority) to consider an oral request for compensation in the absence of a formal fee application as mandated by Bankruptcy Rule 2016(a). Nor was the bankruptcy court required to delay the dismissal of the case to afford the Trustee and his counsel an opportunity

**Polish-American Citizen's Club Inc., Slip Copy (2023)**
72 Bankr.Ct.Dec. 166

to file fee applications so that the court could evaluate whether they were entitled to compensation, in whole or part, under §§ 330 and 326, or to remind them of their obligation to do so. The bankruptcy court has "a rather broad measure of discretion" when considering whether to award compensation to a chapter 7 trustee or the trustee's professionals. See In re Beard, 45 F.3d at 118. Under these circumstances, we conclude that the bankruptcy court did not abuse its discretion in denying the Trustee's request to condition the dismissal upon payment of administrative expenses incurred by the Trustee and his counsel.[14]

[14] Despite this conclusion, we recognize that it may have been possible for the Trustee and/or his counsel to file fee applications with the bankruptcy court despite the dismissal of the bankruptcy case. We do not opine, however, on the bankruptcy court's jurisdiction to consider any such fee application in the absence of a specific retention of jurisdiction in the Dismissal Order, whether an award of compensation and expenses would have been warranted under §§ 330 and 326(a), or whether the Trustee and his counsel would have been able to recover any allowed compensation and expenses from the Club.

**IV. Appellees' Request for Attorney's Fees and Costs for a Frivolous Appeal**

*15 In their brief, the Appellees ask us to award them attorney's fees and costs, "based on the Trustee filing a frivolous appeal, without reasonable legal or factual grounds to do so." Although the Appellees do not cite any legal authority for this relief, we construe their request as one for damages and costs for a frivolous appeal under Bankruptcy Rule 8020 (providing that if the "BAP determines that an appeal is frivolous, it may, *after a separately filed motion* ..., award just damages and single or double costs to the appellee") (emphasis added). Bankruptcy Rule 8020 expressly requires that sanctions be requested by a "separately filed motion." See id. This requirement "is strict, and failure to comply results in the denial of the request for sanctions." Reyes Rivera v. Bracetty Matos (In re Reyes Rivera), 494 B.R. 101, 107 (B.A.P. 1st Cir. 2013); see also Sirikanjanachai v. Town of Hingham (In re Sirikanjanachai), 628 B.R. 562, 571 (B.A.P. 1st Cir. 2021) (denying appellee's request for costs under Bankruptcy Rule 8020 due to its "failure to comply with the rule's separate motion requirement"). As the Appellees did not file a separate motion, their request for attorney's fees and costs is **DENIED**.[15]

[15] The Appellees may still seek reimbursement of their costs in the bankruptcy court under Bankruptcy Rule 8021. See Fed. R. Bankr. P. 8021 (providing that certain costs of appeal are taxable in bankruptcy court against appellant if judgment is affirmed); see also In re Sirikanjanachai, 628 B.R. at 571 n.8.

**CONCLUSION**

For the reasons set forth above, we **AFFIRM** the Dismissal Order, including the bankruptcy court's denial of the Trustee's request to condition the dismissal on payment of administrative expenses incurred by the Trustee and his counsel. We also **AFFIRM** the Order Denying Reconsideration. The Appellees' request for reimbursement of attorney's fees and costs is **DENIED**.

**All Citations**

Slip Copy, 2023 WL 4259266, 72 Bankr.Ct.Dec. 166