# Exhibit DD

COMMONWEALTH OF MASSACHUSETTS
LAND COURT
DEPARTMENT OF THE TRIAL COURT

SUFFOLK, ss.                                          LAND COURT
                                                     CASE NO. 19 TL 000768

_____
                                    )
TOWN OF WESTBOROUGH,                )
                                    )
            Plaintiff,              )
                                    )
v.                                  )
                                    )
WESTBOROUGH SPE, LLC                )
                                    )
            Defendant.              )
_____ )

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WESTBOROUGH SPE, LLC'S MOTION TO VACATE FORECLOSURE JUDGMENT

Now comes, the Plaintiff, Town of Westborough (the "Town") and hereby respectfully submit their Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment. The Town opposes the Motion to Vacate Final Judgment as the Motion is not supported by facts and evidence to prove the right title and interest in the locus by way of purchase of the company previously holding title to the locus, Westborough SPE, LLC.

As evidenced by the information presented below by the Plaintiff in opposition, Defendant's motion is clearly filed for the sole and exclusive monetary benefit of Denise Edwards and Lolonyon Akouete (hereinafter referred to collectively as "Defendant") and said motion should be denied with prejudice. The Town is concerned by the motives and true moving party behind Defendant's motion.

## I.    FACTUAL BACKGROUND

The locus, a parcel of commercial real estate located at 231 Turnpike Road in the Town of Westborough, and was a movie theater in operation by Regal Cinemas (a/k/a Interstate Theaters Corporation) until 2017 but has been vacant and deteriorating since.

The land where the movie theater is located is subdivided into three separate parcels and is described by some as a mall and/or a plaza. The three parcels in the mall share common area maintenance expenses by a Reciprocal Covenants, Easements and Restrictions Agreement by which 57% of the common area maintenance and snow removal expenses are to be paid by the owner of the locus.

Taxes and common expenses have not been paid since Regal Cinemas (a/k/a Interstate Theaters) ceased operation and occupancy of the locus. While Regal Cinemas (a/k/a Interstate Theaters Corporation) occupied the locus, they were making payments for real estate taxes, common expenses, and to an assignment of lease mortgage described below.

In the Spring of 2017, Regal Cinemas (a/k/a Interstate Theaters Corporation) attempted to secure a lease extension to continue their occupancy of the locus. To do so Robbie Pope of Regal Cinemas (a/k/a Interstate Theaters Corporation) contacted Allen Hight, of Northside Realty Trust (NRT). NRT who previously managed and leased the two non-locus parcels in the mall prior to those two non-locus parcels being sold to Mobile Street LLC. *See* Exhibit 22 (Exhibit C therein). At the time of Regal Cinemas' (a/k/a Interstate Theaters Corporation) attempt to secure a lease extension, the locus was owned by Westborough SPE, LLC and was not managed by NRT and/or was not owned by Mobile Street LLC. *See* Exhibit 22 (Exhibit C therein).

Prior to the title vesting in Westborough SPE, LLC, it was the understanding of Mr. Hight of NRT that Hoyts Cinema was planning to take title to the property and retained Babcock & Brown Administrative Services, Inc., a law firm operating out of San Francisco. *See* <u>Exhibit 22</u> (Exhibit C therein). Per Mr. Hight, Babcock & Brown Administrative Services, Inc. was organizing the Hoyts Cinemas entity with the goal of Hoyts Cinemas owning the locus. *See* <u>Exhibit 22</u> (Exhibit C therein). However, rather than Hoyts Cinema taking title to the locus Westborough SPE, LLC took title and Regal Cinemas (a/k/a Interstate Theaters Corporation) leased the property and operated the movie theater. *See* <u>Exhibit 22</u> (Exhibit C therein). All correspondence such as billings, maintenance issue notices, and annual expense reconciliations from NRT regarding the locus were instructed to be sent to Regal Cinemas (a/k/a Interstate Theaters Corporation) at 231 Turnpike Road, Westborough, Massachusetts. This is the address of the locus. *See* <u>Exhibit 22</u> (Exhibit C therein).

In the Spring of 2017, Mobile Street LLC was interested in purchasing the locus and Regal Cinemas (a/k/a Interstate Theaters Corporation) was interested in continuing their lease so both parties in conjunction with the Town and several attorneys tried unsuccessfully to locate anyone with an ownership interest in Westborough SPE, LLC. *See* <u>Exhibit 22</u> (Exhibit C therein).

## A. <u>PLAINTIFF'S DUE DILIGENCE AND SUBSTANTIAL EFFORTS TO NOTIFY ALL PARTIES</u>

On October 31, 2017, Attorney Shirin Everett, as legal counsel for the Town, was contacted by the Town Manager regarding concerns about the lack of the Town's ability to contact the current owner of the locus. *See* <u>Exhibit 22</u>. Regal Cinemas (a/k/a Interstate Theaters Corporation) was leasing and occupying the locus and was interested in

renewing/extending their lease but could not locate the owners and therefore vacated the property in November of 2017. *See* Exhibit 22. As stated, during their occupation of the property Regal Cinemas (a/k/a Interstate Theaters Corporation) was paying real estate taxes. *See* Exhibit 22. However, once the property was vacant the real estate taxes went unpaid. The Town Manager informed Attorney Everett that the Town made many diligent attempts to locate the owners of the locus in the hopes that the property would not remain vacant with unpaid real estate taxes. *See* Exhibit 22. The attempts were unsuccessful.

## B. EMINENT DOMAIN

The Town considered taking the locus via their eminent domain powers possibly for economic revitalization purposes. Damages would have to be paid upon the taking. The Town retained an appraiser to value the locus and by the appraiser's report as of August 3, 2018, the locus was valued at $4,790,000. The process was halted before completion and the Town proceeded to try to collect the taxes and get the locus back on the tax rolls via a tax title foreclosure instead.

## C. TAX TITLE FORECLOSURE

On January 16, 2019, Plaintiff, recorded an instrument of Tax Taking pursuant to G.L. c. 60 ss. 53 and 54 against the locus for non-payment of property taxes.  Demand and notice of the taking were appropriately issued as required by the above-referenced statutes to the record owner of said parcel, Westborough SPE, LLC.[1]

---

[1]   Ch. 60 Sec. 53 provides, "If a tax on land is not paid within fourteen days after demand therefor and remains unpaid at the date of taking, the collector may take such land for the town, first giving fourteen days' notice of his intention to exercise such power of taking, which notice may be served in the manner required by law for the service of subpoenas on witnesses in civil cases or may be published, and shall conform to the requirements of section forty. He shall also, fourteen days before the taking, post a notice so conforming in two or more convenient and public places. …."
   Ch. 60 Sec. 54 provides in pertinent part, "The instrument of taking shall be under the hand and seal of the collector and shall contain a statement of the cause of taking, a substantially accurate description of each parcel of land taken, the name of the person to whom the same was assessed, the amount of the tax

On July 8, 2019, having received no payment for the outstanding taxes and being unable to identify owners of Westborough SPE, LLC, the Town commenced the action to foreclose the tax lien and served notice of the same on the parties identified to potentially hold an interest in the locus. The Court also issued notice of citation by publication as notice to the world of the potential loss of interest should a foreclosure decree enter.

On July 24, 2019, notice of the foreclosure action was also recorded in the Worcester District Registry of Deeds at Page 60751, Page 221.  On August 26, 2019, a Land Court-approved title examiner to whom the court referred the title at issue in this case, completed and subsequently filed the Title Report pursuant to G.L. c. 60, s. 66, reporting that the parties interested and entitled to notice were "Westborough SPE, LLC c/o Babcock & Brown Administrative Services, Inc... Att'n: Dyann Blaine and/or F. Jan Bluestein" and "Interstate Theaters Corporation".

On November 1, 2021, with no answer or appearance having been filed, a motion for general default was filed by the Town and allowed by the Court. In the above-referenced case, a Judgment in Tax Lien Case entered on January 5, 2022, and notice of the same was recorded on January 21, 2022, in the Worcester District Registry of Deeds at Page 66983, Page 53.

### D.  DELOITTE FINANCIAL ADVISORY PTY, LLD

On October 14, 2017, Chief Assessor for the Town of Westborough, Jonathan Steinberg, contacted Deloitte Financial Advisory Pty, LLD (hereinafter "Deloitte) in Sydney Australia. *See* Exhibit 22 (Exhibit B therein). Deloitte was the appointed

---

thereon, and the incidental expenses and costs to the date of taking. Such an instrument of taking shall not be valid unless recorded within sixty days of the date of taking. If so recorded it shall be prima facie evidence of all facts essential to the validity of the title so taken...."

liquidator in bankruptcy for Babcock & Brown Limited of Australia. *See* Exhibit 22 (Exhibit B therein) & Defendant's Exhibit 7. Through Mr. Steinberg's research, he found information that Babcock & Brown Administrative Services, Inc. may be affiliated with Babcock & Brown Limited of Australia. *See* Exhibit 22 (Exhibit B therein).

On October 17, 2017, the Town received a response from David Lombe of Deloitte advising all assets outside of the Holding Company in Australia were under the control of Michael Larkin, CEO of Babcock & Brown Administrative Services, Inc., in San Francisco, California. *See* Exhibit 22 (Exhibit B therein). That same day the Town contacted Mr. Larkin who referred the Town to Walter Horst, CFO of Babcock & Brown Administrative Services, Inc. *See* Exhibit 22 (Exhibit B therein).

Mr. Horst responded the same day to the Town advising that Babcock & Brown Administrative Services, Inc. was simply an administrative manager of Westborough SPE, LLC and had no ownership interest in the locus and did not possess information regarding Westborough SPE, LLC's successors or assigns. *See* Exhibit 22 (Exhibits A & B therein) & Defendant's Exhibit 7.

Additionally, Mr. Horst advised the Town they researched title in a "Know Your Customer" compliance procedure and were unable to identify the owner and therefore resigned as administrative manager. *See* Exhibit 22 (Exhibit B therein). Deloitte retained a private investigator local to Westborough, Massachusetts to assist with their research. *See* Exhibit 22 (Exhibit C therein).

According to Mr. Hight of NRT, the private investigator advised him that "B&B and WSPE were essentially the same entity. Moreover, when they leased the theater to

Regal Cinemas (a/k/a Interstate Theaters Corporation) (prior to Babcock & Brown Administrative Services, Inc. filing bankruptcy) they expected it to fail and did not list it as an asset on their balance sheet. He also informed me that there are other discrepancies and 'issues of law' facing B&B and WSPE in the Australian Courts." *See* Exhibit 22 (Exhibit C therein) & Defendant's Exhibit 7.

Mr. Horst referred the Town to Chay Besherse, Legal Services Manager for Babcock & Brown, who also conducted the title research. *See* Exhibit 22 (Exhibit B therein). Ms. Besherse advised the Town that her research mimicked the Town's and ultimately no individuals were identified as having an ownership interest in the locus for their compliance process. *See* Exhibit 22 (Exhibit B therein) & Defendant's Exhibit 7.

### E. JOHNSON WINTER & SLATTERY, ATTORNEY JOSEPH SCARCELLA

The Town received a letter dated April 4, 2019, from Attorney Joseph Scarcella of Johnson Winter & Slattery, a firm located in Sydney, Australia, stating that the firm was representing David Lombe, the liquidator in bankruptcy of Babcock & Brown Limited, the successor in title to Babcock & Brown Limited. *See* Exhibit 22 (Exhibit A therein). Said letter requested information from the Town as to whether the Town owned the locus. *See* Exhibit 22 (Exhibit A therein). On April 11, 2019, the Town responded advising there was a tax lien on record but it had not been foreclosed on. *See* Exhibit 22 (Exhibit A therein). On May 6, 2019, the Town sent a follow-up letter advising of the amount due and requesting to be informed if Babcock & Brown Administrative Services, Inc. had any legal interest in the property. *See* Exhibit 22 (Exhibit A therein). The Town received a letter

dated June 25, 2019, again requesting if the Town had acquired the property via foreclosure. *See* Exhibit 22 (Exhibit A therein). No assertion of a legal interest in the property was made.

### F. BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC. LACK OF LEGAL INTEREST IN THE PROPERTY

On June 15, 2020, this Court allowed the Plaintiff's Motion for Alternative Service by publication because there was an unsettled question of ownership of Westborough SPE, LLC. The Court also directed the Town to *attempt* to make direct service on all individuals named in the proposed citation for whom the Town identified an address. Following this date several communications detailed below established that Babcock & Brown Administrative Services, Inc. does not have a legal interest in the locus.

On September 29, 2020, Attorney Kovacs emailed the Town requesting information regarding the pending Tax Lien Foreclosure case and asserted that he represented Johnson Winter & Slattery (who represents David Lombe, Liquidator of Babcock & Brown Limited as well as Joseph Scarcella, Esq of Johnson Winter & Slattery).

On October 13, 2020, Attorney Dawn Bloom (co-counsel in this case for the Town) received a voicemail from Attorney Kovacs requesting information regarding the pending Land Court foreclosure action. On October 14, 2020, Attorney Kovacs was provided the return date of November 16, 2020, on the file for the citations mailed to other parties of interest in the case.

On October 21, 2020, Attorney Bloom received an email from Attorney Kovacs confirming a telephone conversation in which Attorney Kovacs advised Attorney Bloom that Attorney Edward Englander was also representing David Lombe, Liquidator for Babcock and Brown Limited.

On October 30, 2020, Attorney Bloom and Attorney Englander had an approximately 20-minute telephone conversation regarding his clients' option to answer and to provide proof of their interest in the locus to the Court, as his clients' interest in the locus was and is not a settled matter.

On February 12, 2021, I spoke with Attorney Kovacs by telephone as well as sent him an email. During these communications, Attorney Kovacs was requesting information regarding <u>how to remove or strike his clients as defendants and/or parties of interest</u> in the tax lien foreclosure case or alternatively to disclaim their interest(s) in the locus due to having no legal or equitable interest in the locus. I drafted and provided Attorney Kovacs with a draft Waiver of Notice and Assent to the Entry of Judgment. This was never filed in this case.

On March 17, 2021, Attorney Englander emailed me and said he didn't believe his clients would authorize him to file an appearance in this case and therefore could not file a waiver of notice in this case. No appearance(s) or answer(s) were filed by and/or for the above-referenced parties of interest. There was adequate time for these parties to appear and/or answer this Court but they decided not to exercise their right to do so.

Following the entry of the Judgment in Tax Lien Case, on February 7, 2022, the Town sent letters regarding the necessity of removal of non-fixture items from the locus. Letters were mailed to the following: James D. Jarworski, Treasurer of Babcock & Brown Administrative Services, Inc.; Dyann Blaine, Babcock & Brown Administrative Services, Inc.; F. Jan Bluestein a/k/a Jan Blaustein Scholes, Babcock & Brown Administrative Services, Inc.; and Interstate Theaters Corporation. None of the letters were returned in the

mail and only Interstate Theaters Corporation (a/k/a Regal Cinemas) responded and advised they did not have any non-fixture property at the locus.

## G.  REQUEST FOR PROPOSAL (RFP)

The Town proceeded to sell the locus pursuant to G.L. c. 30B, known as a Request for Proposal (RFP), and solicited proposals for said purchase. On May 26, 2022, RFP documents were made available via BidNetDirect.com. *See* Exhibits 5 and 6. Proposals for purchase were to be submitted by July 25, 2022. *See* Exhibits 5 and 6.

On November 29, 2022, Lolonyon Akouete requested RFP documents from BidNetDirect.com. *See* Exhibit 6. In said request, Mr. Akouete identifies his organization as Smart Investors, LLC. *See* Exhibit 6. Mr. Akouete uses several email addresses, one of which is info@smartinvestorsllc.com. *See* Exhibits 7 and 14.

Smart Investors, LLC was registered in Maryland as a domestic LLC on July 30, 2009, but the entity was forfeited for failure to file a property return in 2010 or thereafter. *See* Exhibit 15. The Resident Agent of the Smart Investors, LLC is Lolonyon Y. Akouete. *See* Exhibit 15. Mr. Akouete has created profiles for Smart Investors, LLC via Zillow.com and LinkedIn. On his LinkedIn profile, he describes himself as the CEO/Owner of Smart Investors, LLC. *See* Exhibit 16. It is believed that Lolonyon Y. Akouete is the same individual as Lolonyon Akouete.

The Town of Westborough received three (3) proposals in response to their RFP. A proposal by LAX MEDIA INC for $2,500,000.00 was selected, and subsequently, an unselected proposer brought an action for injunctive relief in the Superior Court. Due to the suit, LAX MEDIA INC agreed with the town for an extension until January 31, 2023,

to hold their bid firm and to keep the terms and conditions in place. On January 18, 2023, the Superior Court found for the Town and denied the request for injunctive relief.

Due to the hearing scheduled in this case, LAX MEDIA INC agreed to another extension to hold their bid firm and to keep the terms and conditions of purchase in place until March 3, 2023. A purchase and sale contract has not been executed to date.

### H. <u>REQUEST FOR REDEMPTION FROM LOLONYON AKOUETE</u>

On December 6, 2022, over ten (10) months after the final judgment of foreclosure was recorded, the Treasurer for the Town, Robert Haley (hereinafter referred to as "the Treasurer), received an email from Lolonyon Akouete identifying himself as "Lolo" an "asset recovery specialist" who has "acquired Westborough SPE, LLC and we would like to redeem". *See* <u>Exhibit 1</u>.

On December 9, 2022, the Treasurer received another email from Mr. Akouete, stating "[w]e would like to know how to redeem the property on 231 Turnpike Road" and included an attachment titled "Addendum 2". *See* <u>Exhibit 2</u>. Said correspondences did not identify how Mr. Akouete "acquired" Westborough SPE, LLC. Please note, "Addendum 2" was published by the Town with the RFP information and it was also provided to any plan holders.

On December 12, 2022, the Treasurer left me a voicemail advising that he had a telephone conversation with Mr. Akouete in which Mr. Akouete stated he had a bill of sale from F. Jan Bleustein a/k/a F. Jan Blaustein of Babcock & Brown Administrative Services, Inc. and was seeking guidance on the process of redemption. Mr. Akouete was advised he should seek legal counsel to advise him on his rights and also to provide proof of his acquisition of Westborough SPE, LLC.

## I.  **ATTORNEY MATTHEW MORRIS**

On December 13, 2022, I received a voicemail from Attorney Matthew Morris of Sherin and Lodgen LLP in Boston, Massachusetts. I confirmed Attorney Morris' information on the website for the Massachusetts BBO. *See* Exhibit 3.

On December 14, 2022, I returned the phone call and spoke with Attorney Morris who advised me that his clients, Lolonyon Akouete and Denise Edwards, purchased an interest in the locus and would like to redeem and requested the Town motion the Land Court for a vacation of the judgment. I requested proof and information from Attorney Morris regarding how his clients obtained a legal interest in the locus in this phone call and in subsequent email correspondences. *See* Exhibit 4.

I advised Attorney Morris that my understanding of the balance due was estimated to be approximately $700,000.00 but wasn't sure if that included the balances due for the snow removal and maintenance services provided pursuant to the reciprocal maintenance agreement. Attorney Morris seemed to be surprised by the balance and stated he thought the balance was closer to $300,000.00. I believe this was due to his clients' review of the RFP publication that included "Addendum 2". *See* Exhibit 2. The amount shown on the addendum did not include the additional taxes, interest, fees and costs associated with the tax title following the foreclosure.

I advised Attorney Morris that the Town is opposed to the vacation of judgment absent proof of a legitimate legal interest in the locus. *See* Exhibit 4. On December 14, 2022, Attorney Morris advised he was in the process of gathering the information I requested and he also requested exact figures for the tax title account balance for redemption.

I provided this request to the Treasurer for the Town and I was advised that absent proof of title or proof of a legitimate legal interest in the locus, the Town could not expend the time and legal expense to continue communications with Attorney Morris or his clients.

As a note, the exact balance of the tax title account was not readily available at that time. The Town owned the property for almost a year following the entry of the judgment and therefore there were no assessed taxes on the locus since the decree entered. Therefore, the up-to-date balance information would have to be calculated.

On December 14, 2022, Attorney Morris stated "[r]egardless of whether the town assents to the motion to vacate, we still plan to pay off the full balance due in the next week or so." *See* Exhibit 5. Proof of funds were not presented to the Plaintiff and a motion to vacate was not filed by the Defendant until January 4, 2023. Said motion was filed one day before the one-year anniversary of the entry of the Judgment in Tax Lien Case and was not signed by an attorney on behalf of the corporation but rather; was signed by Lolonyon Akouete as manager.

The only information I received from Attorney Morris to purportedly show his clients' legal and legitimate interest in the locus were documents showing that a company called Westborough SPE, LLC was revived in the State of Delaware and a company by this same name was registered in the Commonwealth of Massachusetts on December 12, 2022. Attorney Morris also provided a Certificate of Good Standing from the State of Delaware and advised he would provide me with the same from the Commonwealth.

According to G.L. c. 156D, Section 1.28 (b) & G.L. c. 156C, Section 68, any person may apply for a Certificate of Good Standing. The certificate provides evidence including but not limited to the name of the corporation and the date it was organized under the laws

of the Commonwealth, that annual reports are not due and all fees then due to the SOC
have been paid and the corporation appears from the records presented to the state secretary
to be in good standing.

## J.   NEW CORPORATION REGISTERED IN MASSACHUSETTS

According to the website of the Corporations Division, Business Entity Summary
provided by the Secretary of the Commonwealth of Massachusetts (SOC), on October 29,
1997, Westborough SPE, LLC registered as a Foreign Limited Liability Company
(organized under the laws of Delaware, the identification number assigned by the SOC was
000593094, but it withdrew from Massachusetts on November 20, 2007. *See* Exhibit 18.

On December 12, 2022, a corporation under the same name, Westborough SPE,
LLC was registered in Massachusetts as a Foreign Limited Liability Company (organized
under the laws of Delaware).  *See* Exhibit 19. The identification number assigned by the
SOC was 001623747. *See* Exhibit 19. **Both corporations were assigned separate
identification numbers by the SOC.**

According to a telephone conversation on January 12, 2023, with an employee of
the Corporations Division of the Secretary of the Commonwealth, on December 12, 2022,
Westborough SPE, LLC was a new registration of a new entity. The corporations under the
same name were registered independently of each other.

The Corporations Division advised they are tasked as a third party to receive and
record documents and do not challenge Foreign Limited Liability Company filings if the
filing includes basic evidence such that the corporation exists in the company's home state
and in good standing and this new filing included the same.

The Corporations Division advised me that these independently registered "Westborough SPE, LLC" corporations *could* be the same entity but it is not established that they are. According to the Corporations Division, they do not investigate the authority of a party to act on behalf of a corporation; rather, the burden rests on the filing party to have the appropriate authority and to act under the law by signing and swearing they are authorized. *See* G.L. c. 156C, Section 48. If the relevant provisions of law are satisfied, they approve the document/filing. *See* G.L. c. 156D, Sections 1.20, 1.25 & G.L. c. 156C, Sections 48, 49.

There is a penalty for signing a document known to be false in any material respect with the intent to provide that document to the SOC for filing. G.L. c. 156D, Section 1.29. The penalty is a civil misdemeanor punishable by a fine not to exceed $100,000. This statute is meant to deter intentionally false filings with the SOC.

Per G.L. c. 156C, Section 47, a foreign limited liability company shall not do any business in the Commonwealth that is prohibited as the company is subject to the constitution of the Commonwealth. However, a foreign limited liability company's organization and internal affairs and the liability of its members and managers shall be governed by the laws of the jurisdiction under which it is organized. *See* G.L. c. 156C, Section 47.

## K.  WESTBOROUGH SPE, LLC WAS NOT REVIVED IN MA

The original corporation called Westborough SPE, LLC (identified by the SOC as 000593094) was not revived or reinstated and is noted as withdrawn. *See* Exhibit 18. The forms for revival or reinstatement do not allow a company to change its resident agent, officers, directors or principal place of business. Rather, these changes must be completed

through a Statement of Change Form which did not occur here. The filings for both corporations under the same name have completely different Principal Places of Business, Resident Agents and Managers. *See* <u>Exhibits 18 and 19</u>.

Further, the SOC requires that a Foreign Limited Liability Company Amend any registration when any arrangement or other facts have changed including a change in the manager or authorized signatories. *See* <u>Exhibit 17</u>.

## L.  WITHDRAWAL OF A FOREIGN CORPORATION

When a foreign corporation withdraws from transacting business in the commonwealth with the consent of the SOC, the corporation shall set forth it is not transacting business in the Commonwealth and that it surrenders its authority to transact business in the Commonwealth. G.L. c. 156D, Section 15.20. Additionally, the foreign corporation revokes the authority of its registered agent to accept service on its behalf. G.L. c. 156C & c. 156D, Section 15.20. The withdrawn corporation additionally commits to notify the SOC of any future changes to their mailing address. G.L. c. 156D, Section 15.20. This did not occur.

## M. LACK OF LEGAL COUNSEL

On January 4, 2023, Mr. Akouete was advised by John R. Harrington that an LLC cannot appear "pro se" and must be represented by legal counsel. On January 4, 2023, Mr. Akouete confirmed his understanding of the requirement for legal counsel in an email to John R. Harrington. *See* <u>Exhibit 10</u>.

Subsequently, the Defendant brought an Ex Parte Motion for Approval of Memorandum of Lis Pendens before this Court without legal counsel present or appearing on the docket. At the hearing on said motion on January 10, 2023, the Honorable Howard

P. Speicher advised Mr. Akouete again of the requirement for a corporation to be represented by legal counsel. Mr. Akouete confirmed he is not an attorney and confirmed his understanding that an attorney must be present. Further, the Honorable Howard P. Speicher took no action on the Memorandum of Lis Pendens as it was not filed and/or signed by an attorney on behalf of Westborough SPE, LLC.

It has long been established in the Commonwealth that a corporation must be represented by legal counsel in judicial proceedings. "In this case, we hold that, except for small claim matters, a corporation may not be represented in judicial proceedings by a corporate officer who is not an attorney licensed to practice law in the Commonwealth." Varney Enterprises, Inc. v. WMF, Inc., 402 Mass. 79 (1988). The case interprets G.L. c. 221, Section 46.

As of today, there has not been an appearance filed in the above-referenced case on behalf of the Defendants by an attorney licensed to practice law in the Commonwealth.

Further, Westborough SPE, LLC's motion titled "Defendant Westborough SPE, LLC's Motion to Vacate Foreclosure Judgment" includes notations on the bottom of each page from Sherin and Lodgen, the firm Attorney Morris is employed by. *See* Exhibit 3. However, the motion presently before this Court was not signed by an attorney. Rather, the motion was signed by Westborough SPE, LLC by its manager, Lolonyon Akouete.

On January 9, 2023, the hard copy of the Defendant's motion to vacate was left in my mailbox by UPS and I retrieved the documents on January 10, 2023. The return address of these documents is as follows: Lolonyon Akouete, (845)744-6000, 800 Red Mills Road, Wallkill, NY 12589-5200. *See* Exhibit 11. I researched this street address via Google.com,

Bing.com and TLO.com (a powerful pay-for search site powered by Experian). I found this address to belong to Dr. Kenneth Yeboah.

On January 10, 2023, I called Dr. Yeboah and he returned my call and advised that his office is part of a very large community complex. Dr. Yeboah also advised me that mail is addressed to the return address referenced above for anyone receiving mail in the complex and then the mail is sorted.  Dr. Yeboah said he is familiar with Mr. Akouete and then voluntarily searched on his computer and confirmed that Mr. Akouete resides in the complex.

Further research via the same methods described above, provided information that the complex located at 800 Red Mills Road is also known Watchtower Farms, a Jehovah's Witness community that includes education facilities, computer and printing technology, farming, residences and offices. The complex in Wallkill, New York is approximately 114 miles away from North Babylon, New York where the "new" corporation has said its principal place of business is located. *See* Exhibit 13.

## N. **PRINCIPAL PLACE OF BUSINESS IS THE RETAIL STORE STAPLES**

On the SOC filing for the "new" Westborough SPE, LLC, the principal place of business of the corporation is listed as 1241 Deer Park Avenue, Suite 1 #1051, North Babylon, NY 11703. *See* Exhibit 19. On January 10, 2023, I spoke with Doug Weinstein, Broker for the leasing company RIPCO Realty. Mr. Weinstein said RIPCO Realty leases the property to the five companies occupying the plaza. Mr. Weinstein said that he was unfamiliar with Westborough SPE, LLC and that the address of 1241 Deer Park Avenue Suite 1, North Babylon, NY 11703 is the mailing address for their tenant, the retail store, Staples.

## O.  **DEFENDANT'S PURPORTED EVIDENCE SUPPORTING THEIR ALLEGED TITLE TO WESTBOROUGH SPE, LLC and LOCUS**

On January 11, 2023, I received an email from Mr. Akouete in relevant part the following:

> "[w]e initially gained control of the management of the LLC with an agreement from Jan (F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Administrative Services, Inc.). However, we didn't stop there. We conducted further research into the ownership. Unfortunately, Jan Bluestein and Dyann Blaine did not have any Operating Agreement or Corporate Resolution that could us quickly determine ownership. Nevertheless, I found the three entities with equitable interest in the property through the mortgage agreement…"
>
> *See* Exhibit 7.

Mr. Akouete attached a mortgage agreement dated October 30, 1997, purporting to show additional owners of record of the locus other than Westborough SPE, LLC. The mortgage was recorded in the Worcester District Registry of Deeds at Book 19369, Page 85 and was discharged in Book 58446, Page 152. *See* Exhibits 8 & 9. The mortgage identified Westborough SPE, LLC as the mortgagor. Several additional parties were identified in the security agreement such as a tenant, guarantor(s) and equity investors. This mortgage is an assignment of lease and does not provide evidence of additional parties of interest. *See* Exhibit 8.

According to the assignment of lease mortgage document, "The principal amount of the Notes to be issued hereunder shall be $9,406,742.40. *See* Exhibit 8. The mortgage document was executed by "WESTBOROUGH SPE LLC, BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC., its Manager, By: Its: President F. Jan Bluestein". *See* Exhibit 8. Per G.L. c. 156C, Section 24, unless otherwise stated in the operating

agreement, the management of a LLC (limited liability company) shall be vested in its

members. An operating agreement may provide for the management of the LLC in part or

in full by one or more managers. However, a manager does not need to be a member of the

LLC. *See* <u>G.L. c. 156C, Section 25</u>. It is reasonable to believe that F. Jan Bluestein (a/k/a

Jan Blaustein Scholes) acting as manager of Westborough SPE, LLC had the authority to

sign the assignment of lease mortgage. This document was not signed by F. Jan Bluestein

(a/k/a Jan Blaustein Scholes) in any other capacity on behalf of Westborough SPE, LLC.

Mr. Akouete provided in the above-referenced email a list he is relying on to argue

additional parties holding an equitable interest in the locus titled "Ownership History". The

list provided by Mr. Akouete appears to be a recitation of the information provided by Mr.

Hight of NRT in his affidavit provided to this Court and uploaded to the docket. *See* Exhibit

7, Exhibit 22 (Exhibit C therein). Rather than evidence of ownership, the information is

evidence that Westborough SPE, LLC was the sole equity owner prior to the foreclosure

judgment in this case. *See* <u>Exhibit 7, Exhibit 22</u> (Exhibit C therein).

In the above-referenced email Mr. Akouete alleges Hoyts Cinemas Corporation,

Hoyts Cinemas Limited and Hoyts Cinemas America Limited (hereinafter referred to as

the "Hoyts entities") have an equitable interest in the locus. *See* <u>Exhibit 7</u>. This assertion

is not supported by fact. Rather, these Hoyts entities were designated as guarantors of the

assignment of lease mortgage rather than the owner of the property. This mortgage has

been discharged and therefore, the Hoyts entities no longer have a legal interest in the

property. *See* <u>Exhibit 9</u>.

Included in the assignment of lease mortgage was Interstate Theaters Corporation

(a/k/a Regal Cinemas) which occupied the property until 2017 when they were unable to

locate an owner of Westborough SPE, LLC and therefore could not extend their lease.

Interstate Theaters Corporation (a/k/a Regal Cinemas) made the payments to the mortgage

until it was paid in full and then vacated the property. *See* <u>Exhibit 22</u> (Exhibit C therein).

### P. <u>LACK OF EVIDENCE OF ARTICLES OF ORGANIZATION, BY LAWS, CORPORATE RECORDS, CORPORATE WRITTEN OPERATING AGREEMENT, CERTIFICATE OF ORGANIZATION OR CORPORATE RESOLUTION</u>

Per G.L. 156D, Section 17.02 a foreign corporation authorized to transact business is

subject to the said chapter outlining the statutes related to Business Corporations as well

as the Massachusetts Limited Liability Company Act. *See* <u>G.L. c. 156C, Section 1</u>.

According to G.L. c. 156D, Section 2.01, one or more persons may act as an incorporator

or incorporators of a corporation by signing articles of organization and delivering them to

the secretary of state for filing.

On January 11, 2023, Mr. Akouete advised that F. Jan Bluestein a/k/a Jan Blaustein

Scholes and Dyann Blaine "did not have any Operating Agreement or Corporate

Resolution that could help us quickly determine ownership." *See* <u>Exhibit 7</u>.

According to G.L. c. 156D, Section 2.02, Articles of Organization for business

corporations provide the name and address of each incorporator and define the purposes of

the corporation and the board of directors and shareholders. Supplemental information not

considered part of the articles includes location of the initial registered office of the

corporation and the names and addresses of the individuals who serve as the initial

directors, president, treasurer and secretary. G.L. c. 156D, Section 2.02(d).

While both corporations are Foreign Limited Liability Companies, without any Articles

of Organization or documentation that provides the same information from Delaware or

Massachusetts, it cannot be confirmed who the individuals are that serve as the directors, president, treasurer or secretary.

## Q. F.JAN BLUESTEIN a/k/a JAN BLAUSTEIN SCHOLES

F. Jan Bluestein a/k/a Jan Blaustein Scholes, was identified by the SOC as the Real Property Signatory for the "original" Westborough SPE, LLC and the President of Babcock & Brown Administrative Services, Inc., a company managing Westborough SPE, LLC. *See* Exhibit 18. According to the website for The State Bar of California "Jan Blaustein Scholes" was licensed to practice law until July 1, 2016, but was suspended for failure to pay fees. *See* Exhibit 29.

The address noted for "Jan Blaustein Scholes" by The State Bar of California was an apartment in New York, New York. *See* Exhibit 29. According to a search of TLO (a pay-for-search website powered by Experian), this was the most recent address for this party. Therefore, this was the first address this Court attempted to notice this party at by mailing a citation via certified mail. The citation was returned to the Court unsuccessfully and was noted by the USPS as "ATTEMPTED – NOT KNOWN". I then researched online in an attempt to see if I could find ownership of the apartment but was unsuccessful.

This Court, by request of the Plaintiff, issued a citation by deputy sheriff to this party at the same address. This service was also unsuccessful so additional research was done to try to locate the proper mailing address for F. Jan Bluestein a/k/a Jan Blaustein Scholes. Another search of TLO provided another mailing address for this party in New York, New York and a special citation was issued but was returned as unsuccessful and again was noted by the USPS as "ATTEMPTED – NOT KNOWN". The USPS tracking via their website states "Addressee Unknown".

Extensive research was conducted before and after the pendency of this case to try to locate the proper mailing address for F. Jan Bluestein a/k/a Jan Blaustein Scholes. An internet search uncovered a book she authored under the name of "Frances Jan Scholes" called "A Journey To Ladakh" published on January 1, 2014 and for sale. *See* Exhibit 24. According to the section titled "About the Author" she was general counsel and responsible for legal obligations of Babcock & Brown and married to Dr. Myron Scholes. *See* Exhibit 24. Again, Westborough SPE, LLC was not mentioned. *See* Exhibit 24.

An article titled, "A Tax Shelter Deconstructed" published by the New York Times on July 13, 2003 also mentions that Dr. Scholes and "Jan Blaustein" were married. *See* Exhibit 30. This article interestingly notes that Babcock & Brown with the help of general counsel, "Jan Blaustein" introduced Dr, Scholes to a way to defer, avoid or eliminate taxes on more than one-third of a billion dollars in profits from a hedge fund he created with others called Long-Term Capital. *See* Exhibit 30.

I researched the location of Dr. Myron Scholes and found that he was a professor at the Stanford Graduate School of Business located in Stanford, California. An address listed by TLO for F. Jan Bluestein a/k/a Jan Blaustein Scholes showed she may live in Atherton, California which is approximately 2.6 miles from Stanford, California.

On May 19, 2021, I researched the property records of the County Clerk of San Mateo County of Atherton, California and found information that appeared to show property owned by Scholes Jan Blaustein Trust in Atherton, California described as Map 47/18. *See* Exhibit 25. Research showed the property was described the same way by Tax Collector of San Mateo County. *See* Exhibit 25. On September 9, 2021, I searched the

online records of the San Mateo County Superior Court under Family Law and found no evidence of a divorce.

On June 9, 2021, this Court issued another special citation to F. Jan Bluestein a/k/a Jan Blaustein Scholes to be delivered to 34 Stern Lane, Atherton, California. Unfortunately, it was returned to the Court unclaimed. The envelope was returned to this Court with a label stating it was returned because there was no such number. However, with the use of the website of USPS, the tracking states that this special citation was unclaimed.

Upon reason and belief, this was the last known address for this party, and upon request by the Town, this Court issued a citation by deputy sheriff. On May 19, 2021, this property was reviewed via the website of the Tax Collector in the County of San Mateo finding the property to be assessed at $9,317,682.00. Per the process server, this property was protected by a security gate but a male responded to the process server through an intercom device acknowledging the citation was being placed there to be received by F. Jan Bluestein a/k/a Jan Blaustein Scholes.

Rule 4 of the Massachusetts Rules of Civil procedure advises that personal service of a complaint may be made by delivering a copy of the same to the party intending to be served personally or by leaving it as her last and usual place of abode. Rule 4(d)(1) and G.L. c. 223, Section 31. Subsequently, the process server shall make proof of service in writing and return it to the Court. However, if the process server fails to provide proof of service, it does not affect the validity of the service. Rule 4(d)(1).

In the present case, the citation was left at the last and usual place of abode by reason of belief by the Plaintiff and proof of service in writing was returned to the Court.

The process server did not indicate that any information was presented that would lead him to believe the address was not the usual place of abode of F. Jan Bluestein a/k/a Jan Blaustein Scholes.

According to the most recent review of the LinkedIn profile for Jan Blaustein Scholes, she resides in Atherton, California, and under "Experience" it states she was General Counsel & Partner of Babcock & Brown until October 2007. *See* <u>Exhibit 23</u>. This profile also mentions that she has been the trustee of Jan Blaustein Schols 2005 Trust from October 2007 to the present. *See* <u>Exhibit 23</u>. As stated above, it appeared the address she was successfully served at was owned by the same trust.

On August 30, 2013, a complaint was filed in the Superior Court of California County of San Francisco, Case Number: CGC-13-533946, <u>Lee Debroff vs. Jan Blaustein Scholes, et al</u>. This case appears by the docket to have been settled but was a tort case alleging personal injury inflicted by Jan Blaustein through use of her motor vehicle negligently in a parking garage in San Francisco, California. *See* <u>Exhibit 31</u>. I reviewed the filings in the case and could not find an address reference for F. Jan Bluestein a/k/a Jan Blaustein Scholes.

Atherton and San Francisco California are approximately 35 miles away from each other. It would be reasonable to believe that F. Jan Bluestein a/k/a Jan Blaustein Scholes lived in Atherton, California as Plaintiff's research uncovered many connections to that town and those local to it such as San Francisco, California.

Further, under "Experience", her LinkedIn profile provides information about many other companies she claims to have held positions in such as managing director,

trustee, and director. The profile does not mention Westborough SPE, LLC or any position held in that company. *See* Exhibit 23.

It was established through communications with liquidators for Babcock & Brown Administrative Services, Inc. that the company does not have a legal interest in the locus or the right to transfer the property. Therefore, F. Jan Bluestein a/k/a Jan Blaustein Scholes by and/or through her previously held position as President of Babcock & Brown Administrative Services, Inc. does not have the legal ability to transfer the locus or the corporation, Westborough SPE, LLC.

In addition, prior to the entry of the judgment of foreclosure, I reviewed a column written by Jan Blaustein Scholes and printed in the Transcript Spring 2007 issue in the Boalt's Berkeley Center for Law. *See* Exhibit 26. This column does not mention medical issues from which F. Jan Bluestein (a/k/a Jan Blaustein Scholes) was then or previously suffering. Rather, it states that she was "talking to lots of women entrepreneurs about how I can help. I'm currently looking at wonderfully interesting opportunities in… biodegradable fuels, a children's Internet company, and a breast cancer detection company." *See* Exhibit 26. No mention of divorce was made in the column or by way of any other information found through the Town's due diligence. *See* Exhibit 26.

The Defendant presented as "Exhibit 10" a docket from the Hawaiian Family Court, Third Circuit, Kona Division. This was evidence not previously known to the Town regarding the mental capacity of F. Jan Bluestein a/k/a Jan Blaustein Scholes. *See* Defendant's Exhibit 10. The docket produced by the Defendant appears to show that as of January 3, 2023, there is an active case regarding the conservatorship and guardianship of "Frances Jan Blaustein Scholes". *See* Defendant's Exhibit 10. The docket notes an

appearance on June 3, 2019, by "Peter Balustin" and then that "Peter Blaustein" was to be appointed as conservator and guardian. *See* Defendant's Exhibit 10.

It appears by the docket, on July 18, 2019, an order entered granting the appointment of a conservator and guardian. *See* Defendant's Exhibit 10. The last activity in the case was on July 30, 2019, when an amended notice of appointment of conservator and guardian was docketed. *See* Defendant's Exhibit 10. This docket entry does not provide information regarding what amendment was made and the case appears by the docket to remain open. *See* Defendant's Exhibit 10.

Through the Town's diligent search efforts to locate F. Jan Bluestein a/k/a Jan Blaustein Scholes, it did not find evidence that she was residing out of the Country or that her mental capacity was in question.

The Defendant states in their motion that in 2004 F. Jan Bluestein a/k/a Jan Blaustein Scholes suffered a major stroke and was "incapable of properly executing her responsibilities as manager and real estate signatory for WSPE" and that she "retired from BBAS in 2007." The Defendant further states "Dyann took over Jan's roles and responsibilities for both BBAS and WSPE."

### R.  DYANN BLAINE

Dyann Blaine was identified by the SOC as the Real Property Signatory for the "original" Westborough SPE, LLC and an officer of Babcock & Brown Administrative Services, Inc., the company previously managing Westborough SPE, LLC. *See* Exhibits 18 & 32. As the docket entry dated January 19, 2021, correctly reflects, notice of the tax lien foreclosure case was served upon this party of interest successfully. No response or answer was received by the Town or this Court.

**S.  COURT ALLOWED PLAINTIFF'S MOTION
FOR ALTERNATIVE SERVICE BY PUBLICATION**

On June 15, 2020, this Court allowed the Plaintiff's Motion for Alternative Service

by publication. Additionally, the Plaintiff was to *attempt* to make direct service on "(1) all

individuals named in the proposed citation for whom plaintiff has identified an address; (2)

the Australian law firm of Johnson, Winter & Slattery; and (3) Mr. David Lombe, whom

counsel identified as the administrator of the Babcock and Brown LP Liquidation." *See*

Land Court Docket Entry 06/15/2020.

Plaintiff provided affidavits from Shirin Everette, Esq., of KP Law P.C., Town

Counsel for Plaintiff, Jonathan Steinburg, Chief Assessor for the Plaintiff, and Allan E.

Hight, of REO Management all indicating their substantial efforts made to locate the

owners of the locus. *See* Exhibit 22.

**T.  BILL OF SALE AGREEMENT**

On January 14, 2023, I received a Bill of Sale via email from Mr. Akouete. *See*

Exhibit 20. This agreement is two (2) pages and states it was made on November 21, 2022,

but was executed on December 8, 2022 by "Jan Blaustein Scholes, its President". The

agreement is made between "WESTBOROUGH SPE, LLC., a Delaware corporation…"

and "DENISE EDWARDS and LOLONYON AKOUETE"… "as joint tenants". *See*

Exhibit 20.

The Bill of Sale further states "the Seller desires to sell and the Buyer desires to

buy the business of a certain WESTBOROUGH SPE LLC known as WESTBOROUGH

SPE and all assets thereof…." *Exhibit 20*. Per the agreement, the parties agreed to $100.00

to be paid as a deposit upon execution of the agreement and the reminder of the purchase

price of $646,000.00 to be "paid within 7 months of Buyer's receipt of this document." *See* Exhibit 20. I am not aware of the date the Buyers received the document.

The agreement states the "property to be sold hereunder shall be conveyed by this standard form Bill of Sale, duly executed by the Seller and/or an authorized representative of the Seller" but does not include a description of the locus. *See* Exhibit 20. Further, the agreement states the only debts owed by the Seller are annual corporation taxes and "Tax title: $391,541.93". *See* Exhibit 20. This amount noted on the agreement as the balance of the tax title was the amount advertised as the balance on the RFP.

This agreement was notarized in the State of Arizona but does not include information in the notarial certificate indicating if or how the notary officer identified the party executing the agreement, "Jan Blaustein Scholes, its President". *See* Exhibit 20. According to the Arizona Notary Public Reference Manual, published by the Department of State Office of the Secretary of State dated January 2023, "to deter fraud, to prove the authenticity of the signature... it's essential that a notary accept a valid form of identification, as defined in statutes, to determine the signer is who he or she claims to be." *See* Exhibit 28.

Further, the Defendant's motion states that F. Jan Bluestein (a/k/a Jan Blaustein Scholes) is residing in an assisted living facility in New Mexico but the Bill of Sale was notarized in the State of Arizona. The name of the assisted living facility was not identified by the Defendant.

The Bill of Sale is the only document potentially in existence in which she is identified as the President of Westborough SPE, LLC and it is self-serving. No other

evidence has been recovered evidencing that she was ever the President of Westborough SPE, LLC.

### U. IRS DOCUMENT REQUEST EVIDENCE FROM THE DEFENDANT

In an email from Lolonyon Akouete on January 13, 2023, he advised me that in an attempt to confirm that F. Jan Bluestein a/k/a Jan Blaustein Scholes "is a managing member of the LLC" he advised he requested from the Internal Revenue Service (IRS) a Partnership Income Tax Return, Form 1065. However, the information he provided in an attachment to said email was two IRS Form 4506 both executed by Denise Edwards on December 21, 2022, Form 56 left blank, and a response letter from the IRS.

Said letter is dated December 20, 2022, and states "Thank you for your inquiry of Dec. 09, 2022" and advises "We can't reproduce the CP 575/576, Employer Identification (EIN) Assignment. However, this letter will serve as proof of EIN assignment verification." *See* Exhibit 27. Mr. Akouete did not provide a copy of the letter dated December 9, 2022, to which the IRS is responding to. The response letter from the IRS was addressed as follows:

"WESTBOROUGH SPE LLC
A DELAWARE LIMITED LIABILITY CO
% F JAN BLAUSTEIN
1241 DEER PARK AVE STE 1 NO 1051
NORTH BABYLON NY 11703"

The return address is the same address provided by Defendant as the current principal place of business and the address used on both copies of IRS Form 4506. One of the copies of IRS Form 4506 does not have the box checked above the signature. The box states "Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506." *See* Exhibit 27.

These documents do not appear to provide evidence that F. Jan Bluestein a/k/a Jan Blaustein Scholes was the President of Westborough SPE, LLC.

## V.  <u>LACK OF PROOF OF FUNDS</u>

According to the Defendant Westborough SPE, LLC's Motion to Vacate Foreclosure Judgment, they have a pending claim with the California Unclaimed Property Division (CUPD) for the balance of a checking account owned by Westborough SPE, LLC in the amount of $1,293,646.83. *See* <u>Defendant's Exhibit 14</u>. Per the Defendant's motion, the CUPD requested additional information related to the claim.  A copy of the correspondence from CUPD advising what additional information was needed was not presented by the Defendant as evidence in this case. Rather a letter from the CUPD is presented in response to a phone call providing information on an unclaimed bank account that may belong to Westborough SPE, LLC. *See* <u>Defendant's Exhibit 14</u>.

The address on the letter provided by the Defendant from the CUPD shows it was sent to the following address:

WESTBOROUGH SPE LLC
C/O DENISE EDWARDS
137 N 25TH ST
WYANDANCH NY 11798

According to the property card records of the Town of Babylon this property is owned by Denise Edwards and is approximately five miles from the address used as the principal place of business of the "new" Westborough SPE, LLC. *See* <u>Exhibit 19</u>.

In an email I received from Mr. Akouete on January 14, 2023, I was informed that "We spoke to Harpreet K. Nakhal, the State Counsel, last week regarding the claim. We are planning to use the funds to redeem the property. We are also applying for a hard money loan from West Forest Capital in case the State does not release the funds before the motion

hearing." *See* <u>Exhibit 21</u>. Despite assurances by Mr. Akouete the tax title account balance

will be paid in full, as of today, no proof of funds have been provided despite my request

for proof of the same.

## W. <u>TAX TITLE ACCOUNT BALANCE</u>

According to the Online information provided by the Assessor's Database for the

Town the property is assessed as $2,082,000.00. The balance of the tax title account

including principal, interest, fees and costs calculated to January 19, 2023, was

$638,755.20. This balance included the following amounts:

> Taxes, interest, electric lien paid, water lien: $525,970.40
> Boston Board Up (to secure the property): $14,438.55
> Insurance: $38,419.96 (renewal date February 15, 2023)
> Eversource: $2,757.92
> Appraisal: $6,000.00
> KP Law – Legal Fees as of 01/13/2023: $32,797.97
> Law Office of Iris A. Leahy – Legal Fees as of 01/26/2023: $21,778.40
> Filing Fee: $515.00

As previously stated, the locus is benefited and burdened by a Reciprocal

Covenants, Easements and Restrictions Agreement. The tax title account balance does not

include the outstanding amounts due under a reciprocal maintenance agreement for snow

removal and other maintenance services charged at $100,000.00 per year. The lack of

payments towards the maintenance and snow removal costs due from the previous owner

of the locus has created a significant financial burden on the two other parcels in the mall.

*See* <u>Exhibit 22</u> (Exhibit C).

## X. <u>PROPERTY WAS SUBSTANTIALLY DAMAGED WHILE VACANT</u>

When the locus became vacant the owners were not maintaining or protecting it

from vandalism. There was no heat which led to pipes bursting and the property was

vandalized resulting in significant damage despite the Town's efforts to secure the

property. Public safety concerns are ongoing as this property seems to be a draw for
vandals. **ANALYSIS AND ARGUMENTS**

The Defendant's Motion should be denied because the moving party has not produced
evidence to prove a true claim of legal interest in the locus and therefore there is no real
likelihood of success on the merits.

### a) <u>STATUTORY LIMITATION</u>

While G.L. c. 60, section 69A allows petitions to vacate a decree of foreclosure within
one year after the final entry of the decree, "Section 69A does not give one the automatic
right to redeem but sets the time period within which petitions to vacate should be
brought." <u>Vincent Realty Corporation v. City of Boston</u>, 375 Mass. 775 (1978).

In the present case, the Defendant brought a motion to vacate within on the last day of
the one-year period after the final entry of the decree. However, the motion was not signed
or filed by an attorney as required by law. The Defendant was advised of this legal
requirement on several occasions but to date, the motion has not been refiled and no
appearance by legal counsel has been docketed or received by the Plaintiff. Therefore, the
Defendant has not filed an actionable motion to vacate the judgment before the one-year
deadline.

### b) <u>PUBLIC POLICY AND EQUITY</u>

For most communities, the property tax levy is the largest revenue source. *See* <u>DLS
Alerts, Cities and Towns, January 5, 2022</u>. Lack of property tax payments for years has
substantially burdened the Town, the residents, and the businesses therein. The substantial
diligent search efforts and efforts to secure the locus have been costly and time-consuming
and have burdened the Town.

The RFP process created another cost and time burden for the Town. The Town should be allowed to continue to exercise its legal right to sell the property and continue with the sale through the RFP process to the selected bidder as the Defendant has not produced evidence to establish they have a legal interest in the property. All information provided by the Defendant appears to be public records except for the Bill of Sale that is questionable at best.

The Bill of Sale was signed by F. Jan Bluestein a/k/a Jan Blaustein Scholes, who by Defendant's evidence was at that time deemed incapacitated and has been appointed a conservator/guardian. If F. Jan Bleustein has been deemed mentally incapacitated, she could not legally grant title to Westborough SPE, LLC and/or the locus. There is no evidence her conservator and/or guardian appointed in Hawaii, Peter Blaustein, was included in the Bill of Sale transaction.

As stated supra, the notarial certificate on the Bill of Sale does not present evidence that the person signing the document before the notary presented identification or alternatively was known to the notary. The validity of this document is in serious question. The Defendant rests their claim to title of the locus and Westborough SPE, LLC on this document but by Defendant's admission, they have not reviewed a written operating agreement or the like.

Further, of concern is the fact that the Defendant did not revive Westborough SPE, LLC but rather created another corporation under the same name in the Commonwealth of Massachusetts. The two corporations are not confirmed to be the same entity. Both entities have different managers and real estate signatories.

As a matter of equity, a petition to vacate a prior decree foreclosing the right of redemption under a tax title is "extraordinary in nature and ought to be granted only after careful consideration and in instances where . . . [it is] required to accomplish justice." Sharon v. Kafka, 18 Mass. App. Ct. 541, 542 (1984); Lynch v. Boston, 313 Mass. 478, 480 (1943). It would not accomplish justice to vacate the decree of foreclosure as the Defendant's legal interest in the locus is in question.

The CFO of Babcock & Brown Administrative Services, Inc. said they resigned as manager of Westborough SPE, LLC when they could not identify owners. Westborough SPE, LLC failed to notify the Town of a current mailing address for the purpose of receiving tax notices. Further, Westborough SPE, LLC did not respond to the Town before, during or after this case.

In sum, the Town fulfilled its obligations to notify interested parties of the foreclosure proceeding pursuant to Chapter 60, but the previous owner fulfilled none of their duties with respect to their ownership of the locus. It was these failures that made it impossible for the Town or the title examiner to discover the true ownership of Westborough SPE, LLC and thus the parcel.

The Honorable Judge Piper, in Yarmouth v. Laurie Snowden-Lebel, 17 LCR 654, included "whether the petitioner has sat idly on his rights for an unreasonable period of time before asserting them" as a factor that should be considered when someone claims a due process violation.

The Defendant waited to schedule file a motion to vacate without legal representation until one day prior to the one-year period following the decree of foreclosure in hopes of squashing the RFP sale and garnering more time from this Court to continue

due diligence to confirm that the Bill of Sale was a legal transfer of Westborough SPE, LLC and the locus as well as to obtain funds to redeem.

This Honorable Court should not vacate the decree of foreclosure and allow redemption by this party as it would not be based in equity.

### c) **DENIAL OF DUE PROCESS**

In this case, it does not seem to be disputed that the Land Court-approved title examiner's title report was thorough and proper; that during the pendency of the foreclosure proceeding this Court allowed an alternative form of notice by citation of publication due to the unanswered question regarding the owners of Westborough SPE, LLC and the Town was to *attempt* to make direct service on F. Jan Bluestein a/k/a Jan Blaustein Scholes among others. *See* <u>Land Court Docket Entry 06/15/2020</u>.

The Defendant does not argue that service was improper upon any party of interest except upon F. Jan Bluestein a/k/a Jan Blaustein Scholes. However, the Town disagrees and has presented sufficient evidence to prove substantial diligent search efforts to notice her. This Court received and reviewed the return of service and marked it as successful.

Additionally, the Defendant does not argue that F. Jan Bluestein a/k/a Jan Blaustein Scholes did not receive the citation served upon her by sheriff but rather that the citation was left at the residence of her ex-husband. Evidence found by the Town at the time of the sheriff's service was reasonably relied upon to believe F. Jan Bluestein a/k/a Jan Blaustein Scholes owned the property she was served at.

Further, as can be inferred from the information presented, F. Jan Bluestein a/k/a Jan Blaustein Scholes is a sophisticated businesswoman who has had significant experience in matters of managing real property. Therefore, it is reasonable to conclude that she was

not only aware of the fact that taxes were owed, but also of the consequences of failing to pay.

Additionally, it can be inferred that although the Defendants assert that F. Jan Bluestein a/k/a Jan Blaustein Scholes suffered a major stroke in 2004, evidence presented by the Defendants shows that she was not deemed incapacitated until 2019 and was an active attorney in the State of California until July 1, 2016. *See* <u>Exhibit 29</u> and <u>Defendant's Exhibit 10</u>.

Additionally, the Defendant asserts Dyann Blaine took over duties for F. Jan Bluestein a/k/a Jan Blaustein Scholes and received timely notice but sat idly and did not answer or respond to this Court to date. Further, Dyann Blaine does not appear to have been included in the Bill of Sale transaction.

### d) <u>ABILITY TO REDEEM</u>

According to the Defendant, obtaining funds to redeem is in process. *See* <u>Exhibit 21</u>. As far as the Town is aware, the Defendant has not received the funds unclaimed in California and have not secured financing. Further, upon reason and belief, the balance of the purchase price due under the Bill of Sale has not been paid. *See* <u>Exhibit 20</u>.

Time is of the essence in order for the Town to be made whole through the RFP sale, therefore, no continuance should be allowed by this Court.

### II.    PLAINTIFF'S REQUEST FOR RELIEF

The Town believes the Defendant's Motion to Vacate is frivolous and argues the cost of defending the same should not be the Town's burden if this Court denies the Defendant's motion, the Town moves this Court to award from the Defendant all legal fees

charged to the Town since the date Lolonyon Akouete requested to redeem and all legal fees related to the same.

### III.   CONCLUSION

The Defendants are not entitled to the vacating of the decree of foreclosure entered by this Honorable Court on either legal or equitable grounds.

The Defendants' motion does not set forth adequate grounds to justify vacating the decree of foreclosure. Based on the Defendants' own assertions they have not done their due diligence before signing the Bill of Sale and cannot provide proof that this document is binding to transfer ownership of the locus.

Because both the statutory law concerning the validity of the Defendants' title and interest in the locus and Westborough SPE, LLC, and the equities in this case, weigh against disturbing the Court's final judgment of foreclosure, the Defendants' motion should be denied.

WHEREFORE, the Defendant's Motion to Vacate Foreclosure Judgment should be DENIED WITH PREJUDICE.

Respectfully submitted,
TOWN OF WESTBOROUGH
By its Attorney,

Date: January 27, 2023

Iris A. Leahy, Esq.
Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
BBO # 697783
Phone: (413) 322-8318
Fax: (413)322-8661

## CERTIFICATE OF SERVICE

I, Iris A. Leahy, attorney for the Plaintiff, hereby certify that I have served the foregoing Motion in Opposition by first class mail, postage prepaid, to the following:

Lolonyon Akouete, Manager
Denise Edwards, Manager
Westborough SPE, LLC
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703

TOWN OF WESTBOROUGH
By its Attorney,

Date: January 27, 2023

Iris A. Leahy, Esq.
Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
BBO # 697783
Phone: (413) 322-8318
Fax: (413)322-8661