UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

|  |  |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC<br><br>TOWN OF WESTBOROUGH,<br><br>     Plaintiff,<br><br>v.<br><br>WESTBOROUGH SPE, LLC,<br><br>     Defendant. | TOWN OF WESTBOROUGH'S<br>MOTION TO REMAND AND/OR<br>ABSTAIN FROM HEARING TAX<br>FORECLOSURE ACTION |

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby moves pursuant to 28 U.S.C. § 1447 for the Court to remand, or alternatively to abstain from hearing pursuant to 28 U.S.C. § 1334(c), the case of Town of Westborough v. Westborough SPE, LLC, et al. (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action"), which the Chapter 7 Trustee purportedly removed to this Court on January 17, 2024.[1]  Remand of the Tax Foreclosure Action is appropriate because the Tax Foreclosure Action is a non-core proceeding subject to mandatory abstention.[2]  Alternatively, equity demands remand and permissive abstention, particularly where the Massachusetts Land Court has exclusive

---

[1] The Chapter 7 Trustee filed a paper entitled "Notice of Removal" on the primary docket of the bankruptcy proceeding, using the "Notice" ECF event, rather than commencing an adversary proceeding using the "Notice of Removal" ECF event.  See Doc. No. 74.  It is questionable whether the Chapter 7 Trustee's filing effectuated a proper removal, but the Town files this motion in response on the primary docket (as there is no adversary proceeding in which to file) out of an abundance of caution.

[2] Although abstention is technically a separate procedure than remand, "[w]here abstention is appropriate, or required, remand will follow."  Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs., 181 B.R. 781, 788 (D.N.J. 1995).

jurisdiction.  Finally, the bankruptcy removal statute (28 U.S.C. § 1452) does not permit removal because the Tax Foreclosure Action is an action in which the Town, a governmental unit under the Bankruptcy Code, exercised its police or regulatory powers.

## BACKGROUND[3]

### *Formation and Dissolution of LLC*

In 1997, the entity Westborough SPE LLC (the "LLC") acquired real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property").  See Exhibit A (Quitclaim Deed).  The LLC was a Delaware limited liability company registered to do business in Massachusetts.  See Exhibit B (MA Certificate of Registration).  The LLC's manager was Babcock & Brown Administrative Services, Inc. ("Babcock & Brown").  See id.  Babcock & Brown's president, F. Jan Blaustein, was authorized to execute recordable instruments on behalf of the LLC.  See id.  An unauthenticated document entitled "Westborough SPE LLC Limited Liability Company Agreement," apparently prepared by Goulston & Storrs, purports to indicate that Mignonette Investments Limited ("Mignonette"), a British Virgin Islands entity, was the LLC's sole member.  See Exhibit C (LLC Agreement).[4]

The LLC withdrew from doing business in Massachusetts in 2007.  See Exhibit D (MA Certificate of Withdrawal).  In 2011, Babcock & Brown (through its successor) resigned as the LLC's manager.  See Exhibit E (BBAS Resignation).  The LLC was administratively dissolved in 2014 for failure to pay taxes in the State of Delaware.  See Exhibit F (DE Administrative

---

[3] The facts set forth herein are taken from the Town's recent § 707 Motion to Dismiss (Doc. No. 69) and the exhibits referenced herein are those that were filed in connection with that motion (Doc. No. 70).  In the event that the Court grants the Town's § 707 Motion to Dismiss, the Tax Foreclosure Action should necessarily be remanded to the Land Court as there will no longer be a bankruptcy proceeding to which the Tax Foreclosure Action may be related.

[4] The Debtor's Land Court counsel submitted this document to the Land Court but provided no affidavit authenticating it, much less any indication how counsel came to possess the document.

Dissolution).[5]  Nevertheless, the lessee of the Property (Regal Cinemas) continued to lease the

Property and pay property taxes to the Town.  See Declaration of Kristi Williams ("Williams

Decl.") at ¶ 5.[6]  However, when the lease expired in late 2017, the lessee vacated the Property and

stopped making tax payments.  See id. at ¶ 6.

### *The Town's Tax Taking*

Subsequently, property taxes on the Property accrued, and on December 28, 2018, the

Town recorded an instrument of taking on the Property and all improvements thereon pursuant to

G.L. c. 60, §§ 53-54, as a result of unpaid FY2018 taxes in the amount of $106,944.99.  See Exhibit

J (Instrument of Taking).  The Town commenced the Tax Foreclosure Action in the Massachusetts

Land Court on July 8, 2019 to foreclose the LLC's right of redemption.  See Exhibit K (Tax

Foreclosure Complaint).  On January 5, 2022, the Land Court entered judgment in favor of the

Town and against the LLC.[7]  See Exhibit L (Tax Foreclosure Judgment).

On May 26, 2022, the Town issued a request for proposals for the purchase and

redevelopment of the Property.  See Williams Decl. at ¶ 15.  The Town received three proposals,

including one from Lax Media.  See id. at ¶ 16.  Lax Media offered a purchase price of $2,500,001,

which was higher than the estimated fair market value of the Property ($2,082,000).  See id. at

¶ 17.  The Town's Select Board evaluated the proposals based on five categories and selected Lax

---

[5] Babcock & Brown itself withdrew from doing business in Massachusetts in 2008.  See Exhibit G (Babcock & Brown
Withdrawal).  Mignonette was stricken from the British Virgin Islands Register of Companies pursuant to Section
213(5) of the BVI Business Companies Act on May 31, 2010.  See Exhibit H (VI Gazette, excerpted) and I (Search
Report).  The effect of the striking off is that the company and its directors, members, liquidator(s), or receiver(s) may
not "carry on any business" or "act in any way with respect to the affairs of the company," subject to restoration.  See
BVI Business Companies Act § 215 (V.I.).

[6] Filed on October 3, 2023, in conjunction with the Town's Motion for Relief from Automatic Stay.  See Doc. No. 22.

[7] Thus, the Land Court judgment issued more than a year before the U.S. Supreme Court's May 2023 decision in Tyler
v. Hennepin County, 598 U.S. 631 (2023).

Media's proposal, which received the score of "highly advantageous" in three categories and "advantageous" in the remaining two. See id. at ¶ 18.[8]

### *The Purported Revival*

On November 22, 2022, Denise Edwards filed a Certificate of Revival, purportedly for the LLC, with the Secretary of State of Delaware, effectively creating the Debtor. See Exhibit M (DE Certificate of Revival). On December 6, 2022, Lolonyon Akouete emailed the Town's Treasurer and identified himself as an "asset recovery specialist" who had "acquired Westborough SPE, LLC and … would like to redeem." See Exhibit N (Dec. 6, 2022 Email).[9]

On December 12, 2022, the Debtor applied for registration to do business in Massachusetts using the same name as the LLC. See Exhibit R (MA Application for Registration). The managers of the Debtor were identified as Ms. Edwards and Mr. Akouete. See id. The principal office of the Debtor—1241 Deer Park Ave., Suite 1 #1051, North Babylon, NY 11703, see id.—is a Staples store. See Exhibit S (Staples.com Printout).

Subsequently, Attorney Matthew Morris of Sherin & Lodgen LLP, representing Mr. Akouete, claimed that Ms. Edwards and Mr. Akouete were "the new owners of the LLC." See Exhibit T (M. Morris Email). Mr. Akouete and Ms. Edwards based their claim to ownership and control over the Debtor (and purportedly the LLC by extension) through a bill of sale. See Exhibit U (Jan. 13, 2023 Email). The bill of sale states, on its face, that it is between the LLC and Denise

---

[8] In November 2022, Ferris Development Group, LLC ("FDG")—one of the other bidders—filed suit against the Town and Lax Media in Massachusetts Superior Court for breach of implied contract, declaratory judgment, and injunctive relief as a result of the Town's awarding the bid to Lax Media. See Ferris Development Group, LLC v. Town of Westborough, et al., Mass. Superior Court Case No. 2285CV01281. The Superior Court denied FDG's motion for preliminary injunction, finding that FDG failed to show a likelihood of success on the merits. Memorandum of Decision and Order on Plaintiff's Motion for Preliminary Injunction, at pp. 9-11, Ferris Development Group, LLC v. Town of Westborough, et al., No. 2285CV02181 (Mass. Superior Ct. Jan. 13, 2023).

[9] Mr. Akouete holds himself out as the CEO/Owner of Smart Investors, LLC, a Maryland limited liability company that was forfeited for failure to file a property return in 2010 or thereafter. See Exhibits O (Smart Investors MD Documents) and P (Akouete LinkedIn). Mr. Akouete also holds himself out as "an investigator of unclaimed property," as reflected in documents he filed in the Land Court. See Exhibit Q (Akouete Exs. 2 and 3).

Edwards and Mr. Akouete as "joint tenants." <u>See</u> Exhibit V (Bill of Sale). The bill of sale was purportedly signed by Ms. Blaustein as president of the LLC on December 8, 2022, although the bill of sale itself states that it was made November 21, 2022. <u>See id</u>. Although the Debtor represented to the Land Court that Ms. Blaustein resides in a New Mexico assisted living facility, her signature on the bill of sale bears an Arizona notarization, which itself provides no indication of how the notary confirmed that the person signing was Ms. Blaustein or that Ms. Blaustein was the "president" of the LLC (which she was not). <u>See id</u>.; <u>see also</u> Exhibit W (Motion to Vacate) at p. 6.[10] Moreover, in 2019, a Hawaii state court ruled that Ms. Blaustein was "an incapacitated person" and appointed her son, Peter Blaustein, as her conservator and guardian. <u>See</u> Exhibits X (In re Blaustein Docket) and Y (Waiver of Notice and Consent to Conservatorship). Mr. Blaustein did not give permission or consent for Ms. Blaustein to sign the bill of sale and did not approve of her doing so. <u>See</u> Exhibit Z (Affidavit of Peter L. Blaustein).

### *Mr. Akouete's Scheme to Vacate the Tax Title Foreclosure Judgment*

On January 4, 2023—which was one day short of the first year anniversary of the issuance of the judgment entered in the Tax Foreclosure Action and the final day to petition to vacate the judgment (<u>see</u> G.L. c. 60, § 69), Mr. Akouete filed a motion with the Land Court to vacate the judgment on behalf of the Debtor. <u>See</u> Exhibit W (Motion to Vacate).[11] Mr. Akouete also sent a copy of his motion papers to David Ferris, the CEO of FDG, which had unsuccessfully attempted to purchase the Property when the Town solicited bid proposals through G.L. c. 30B (as noted above, <u>see</u> fn. 8). <u>See</u> Exhibit AA (Jan. 7, 2023 Email). Days later, on January 9, 2023, Mr. Ferris

---

[10] Page references to exhibits in this brief are to the CM/ECF pagination, inclusive of exhibit cover sheets, unless otherwise noted.

[11] Although the Debtor is a limited liability company, its motion was not signed by an attorney, which is impermissible under Massachusetts law. <u>See</u> <u>Dickey</u> v. <u>Inspectional Servs. Dep't of Boston</u>, 482 Mass. 1003, 1004 (2019).

contacted Mr. Akouete by iMessage to discuss the Property.  See Exhibit BB (iMessage Screenshots) at p. 2.  In the ensuing iMessage exchange (which also involved Brian Charville, FDG's COO and General Counsel), Mr. Akouete indicated that he had "at least one document showing who may be the equity owner of the LLC." See id. at p. 3.[12]  In response to Mr. Charville stating that anything Mr. Akouete could do "to substantiate [his] ownership of the LLC will help [Mr. Ferris] evaluate a potential purchase of the property," Mr. Akouete stated, "If you are going to help me find an attorney, then I'll share information with you.  If not, then good luck." See id. at p. 4.  Mr. Akouete also stated in a separate message that "[w]e believe that Jan Blaustein Scholes[] is a managing member of the LLC," but acknowledged that he had not confirmed this. See id. at p. 5.

On January 18, 2023, Mr. Akouete and Ms. Edwards signed what purported to be a new "Limited Liability Company Agreement of Westborough SPE LLC," dated December 8, 2022. See Exhibit CC (2022 LLC Agreement).  The new LLC agreement makes no reference to the LLC's original operating agreement from 1997 and, notably, states that Mr. Akouete and Ms. Edwards, as members, "form a Limited Liability Company (the 'Company') in accordance with the laws of the State of Delaware." Id. at p. 2 (emphasis added).  In the iMessage chain with FDG's officers, Mr. Akouete admitted that "we couldn't find any original operating Agreement or Corporate Resolutions.  We just put this one in please [sic]." See Exhibit BB (iMessage Screenshots) at p. 6.

On February 28, 2023, Mr. Akouete admitted to Mr. Charville that he was "starting to see the authority issues we have in this case." See Exhibit BB (iMessage Screenshots) at p. 7.  On

---

[12] Exhibit BB contains excerpts of iMessage screenshots that were produced to the Town's counsel by FDG's counsel and appear to be from Mr. Charville's phone.

March 14, 2023, Mr. Akouete told FDG's officers that he was "very close to finding the beneficial owner of the property," but also admitted that he lacked the funds required to redeem the Property. See id. at p. 8.  Days later, Mr. Akouete told Mr. Charville that he had "been trying to negotiate with Peter [Blaustein], Jan's Guardian, to get the authority I need to vacate the foreclosure judgment," but Mr. Blaustein was "not responding."  See id. at p. 9.  On March 31, 2023, Mr. Akouete informed Mr. Charville that he had "run out of money" and did not "have anymore [sic] funds to continue with the case," such that he was requesting Mr. Ferris to pay his attorney's retainer. See id. at p. 10.  In the same message, Mr. Akouete indicated that he was "in the process of restoring [the] registration of Mignonette," which had been "suspended for nonpayment of fees," although Mr. Akouete was not an owner of Mignonette.  See id.  Several weeks later, on May 23, 2023, Mr. Akouete asked Mr. Charville if Mr. Ferris would "pay the attorneys fees" if "we are able to get Peter [Blaustein] to ratify and confirm the Bill of Sale."  See id. at p. 11.

The Town opposed the motion to vacate for various reasons, including significant questions that the Town had regarding the ownership and identity of the Debtor, such as whether the individuals purporting to own the Debtor and advancing the motion to vacate (Mr. Akouete and Ms. Edwards) had actually acquired the LLC, much less any interest in the Property.  See Exhibit DD (Opposition without Exhibits).  Nathanson & Goldberg, P.C. subsequently appeared on behalf of the Debtor in the Tax Foreclosure Action and filed a slew of motions (which the Land Court ultimately denied).  See Exhibit EE (Land Court Docket) at pp. 8-9.  After several extensions, the Land Court was prepared to hold an evidentiary hearing "to determine whether Westborough SPE, LCC [sic], having appeared in this case, is the taxpayer who has the right to redeem the subject property" and a pre-hearing conference was scheduled for August 31, 2023 to determine the hearing schedule.  See Exhibit EE (Land Court Docket) at May 16, 2023 entry.

Meanwhile, Mr. Akouete and Ms. Edwards attempted to recover an unclaimed checking account located in California, which had belonged to the LLC and contained almost $1.3 million.[13] On February 8, 2023, however, the California State Controller denied their claim. See Exhibit GG (CA Decision). The California State Controller concluded that "the Bill of Sale is void" due to Ms. Blaustein's lack of capacity and, as a result, Mr. Akouete and Ms. Edwards "could not have acquired any interest in Westborough SPE LLC." Id. Additionally, the California State Controller noted that "[i]t appears that Jan Blaustein Scholes signed the Bill of Sale as the President of Babcock & Brown Administrative Services Inc. and not of Westborough SPE, LLC" and "that Babcock & Brown Administrative Services Inc. acted only as the manager of Westborough SPE, LLC and did not have an ownership interest of Westborough SPE, LLC," such that there was a question of "whether an officer of the managing entity, Babcock & Brown Administrative Services Inc., would have authority to sell the assets of Westborough SPE LLC." Id.[14]

### *The Last Resort - Bankruptcy*

On June 29, 2023, Scott Schlager of Nathanson & Goldberg, P.C. emailed Mr. Ferris and Mr. Charville. See Exhibit HH (June 29, 2023 Email). In that email, Attorney Schlager stated that he concluded that FDG was "not wanting to finance a bankruptcy proceeding" but nevertheless solicited FDG to provide $10,000 to pay an attorney to provide "a formal opinion as to the authority of Lolonyon Akouete and Denise Edwards to act on behalf of Westborough SPE LLC" based on

---

[13] In the Land Court, Mr. Akouete claimed to have obtained Mr. Blaustein's permission to have Ms. Blaustein sign certain papers to assist in this recovery attempt and submitted a September 15, 2022 text message screenshot to support this claim. See Exhibit FF (Sept. 15, 2022 Text).

[14] As discussed above, Babcock & Brown resigned as the LLC's manager effective May 30, 2011. See Exhibit E (BBAS Resignation).

three additional documents that Nathanson & Goldberg, P.C. was "able to have F. Jan Blaustein Scholes execute." See id.[15]

On August 31, 2023, Nathanson & Goldberg, P.C. and The MobileStreet Trust filed an involuntary Chapter 7 petition against the Debtor, commencing these proceedings.[16]  The Land Court cancelled the pre-hearing conference on the Debtor's motion to vacate in the Tax Foreclosure Action, which was scheduled for 2:00 pm that same day, and ordered the Debtor to file a status report by October 31, 2023 (with additional status reports due every 60 days thereafter). See Exhibit EE (Land Court Docket) at August 31, 2023 entry.  The Tax Foreclosure Action remains stayed.[17]

## ARGUMENT

It is well established that the "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Gupta v. Quincy Med. Ctr., 858 F.3d 657, 661 (1st Cir. 2017), quoting Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995).  A party may only remove a claim or cause of action from a state court to a bankruptcy court under 28 U.S.C. § 1452(a) if the latter would have jurisdiction under 28 U.S.C. § 1334, which states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Notwithstanding this grant of jurisdiction, discussed in detail below, "there is a strong presumption against removal jurisdiction

---

[15] These documents, which Nathanson & Goldberg, P.C. also submitted to the Land Court, do not alter the facts that (i) Mr. Blaustein had already been appointed as Ms. Blaustein's guardian and conservator, and (2) was not a member of the LLC and thus held no ownership interest in it or its assets.

[16] The MobileStreet Trust owns two parcels of land adjoining the Property, all of which are subject to a Reciprocal Covenants, Easements and Restrictions Agreement.

[17] On October 3, 2023, the Town moved for relief from the automatic stay to proceed with the Tax Foreclosure Action. See Doc. No. 20.  The Court conducted an initial hearing on that motion on November 30, 2023, but continued it so that the Chapter 7 Trustee could explore settlement discussions with the parties and whether to attempt to remove the Tax Foreclosure Action, commence an adversary proceeding regarding the Property under 11 U.S.C. § 548(a), or both. The Court is scheduled to resume the hearing on February 13, 2024.

generally." Bibeault v. CVS Pharmacy, Inc., No. CV 19-10758-NMG, 2019 WL 3546889, at *2

(D. Mass. June 21, 2019) (quotations omitted). "On a motion to remand, the removing party bears

the burden of establishing the propriety of removal." Id., citing Fayard v. Ne. Vehicle Servs., LLC,

533 F.3d 42, 48 (1st Cir. 2008). In light of this burden and "the important federalism concerns at

play in considering removal jurisdiction," Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 11

(1st Cir. 2004), this Court should remand and/or abstain from hearing the Tax Foreclosure Action.

## I.    THE TAX FORECLOSURE ACTION IS A NON-CORE PROCEEDING SUBJECT TO MANDATORY ABSTENTION

Section 1452 only permits removal if the district court to which the case would be removed

has jurisdiction under 28 U.S.C. § 1334. See 28 U.S.C. § 1452(a).[18] But section 1334 only gives

federal courts jurisdiction over three types of cases: cases "under title 11," which means the

bankruptcy case itself; cases "arising under title 11" or "arising in cases under title 11," which

means core proceedings; or cases relating to cases under title 11, which means non-core

proceedings that nevertheless have some potential impact on the bankruptcy estate. See 28 U.S.C.

§ 1334(a)-(b); Gupta, 858 F.3d at 661-663. The Tax Foreclosure Action only falls at most within

the last of these categories and is, therefore, subject to mandatory abstention.

Even if the Tax Foreclosure Action is considered a non-core proceeding related to the

bankruptcy because it involves the LLC's statutory rights with respect to the Property, mandatory

abstention applies. Specifically,

> [u]pon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court shall abstain from hearing such proceeding if an action is

---

[18] Although section 1452 provides for removal to the district court, bankruptcy matters are automatically referred from
the U.S. District Court for the District of Massachusetts to the U.S. Bankruptcy Court for the District of Massachusetts
pursuant to Rule 201 of the Local Rules of the U.S. District Court for the District of Massachusetts.

commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).  In other words, where (1) the claim has no independent basis for federal jurisdiction, (2) is a non-core proceeding, (3) has already been commenced in state court, and (4) will be timely adjudicated in state court, the Court must abstain from adjudicating the case.  See, e.g., Hayim v. Gotez (In re SOL, LLC), 419 B.R. 498, 504 (Bankr. S.D. Fla. 2009); Malloy v. Hawk (In re 4 Front Petroleum, Inc.), 345 B.R. 744, 749 (Bankr. N.D. Okla. 2006); see also New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 n.6 (1st Cir. 2002).[19]  The Tax Foreclosure Action meets all of these statutory requirements for mandatory abstention.

First, the Tax Foreclosure Action could not have been commenced in a federal court absent section 1334 jurisdiction.  The Massachusetts General Laws require such actions to be brought in the Massachusetts Land Court.  See G.L. c. 60, § 65 ("whoever then holds the title to land acquired by a sale or taking for taxes may bring a petition in the land court for the foreclosure of all rights of redemption of said land …") (emphasis added).  The Chapter 7 Trustee has made no contention that the Tax Foreclosure Action, on its own, was or could have been brought under a federal statute or constitutional provision.  Instead, the only basis for jurisdiction asserted in the purported Notice of Removal is section 1334(b).  See Doc. No. 74.  There is no independent basis for federal jurisdiction.  See Hayim, 419 B.R. at 504 (independent jurisdiction analysis looks only at notice of removal and additional grounds for jurisdiction may not be asserted after a request for abstention has been made); see also Little Rest Twelve, Inc. v. Visan, 458 B.R. 44, 58-59 (S.D.N.Y. 2011) ("A notice of removal may not be sustained on a ground of jurisdiction not stated in that notice.").

---

[19] Although the First Circuit listed the factors for mandatory abstention in a footnote in New England Power & Marine, Inc., the Court decided the case on permissive abstention grounds as discussed below.  It does not appear that the First Circuit has decided a case on mandatory abstention grounds.

Further, the Tax Foreclosure Action is a non-core proceeding.[20]  Core proceedings are those involving causes of action either created by the Bankruptcy Code or that have no existence outside of the bankruptcy.  See Gupta, 858 F.3d at 662-663.  Any other case that relates to the bankruptcy proceeding is a non-core proceeding.  The Tax Foreclosure Action is not a core proceeding, as the cause of action is created by Massachusetts statute, not the Bankruptcy Code, and has existence outside of the bankruptcy, as demonstrated by the fact that it was pending for several years before the commencement of this bankruptcy proceeding.  See id.  While the Tax Foreclosure Action may have some potential effect on the bankruptcy estate if the Debtor's motion to vacate the foreclosure judgment is allowed, this only means that the Tax Foreclosure Action is at best "related to" the bankruptcy case and thus is a non-core proceeding.

Critically, the Tax Foreclosure Action does not involve property of the bankruptcy estate. As soon as the Land Court entered judgment in that action (more than a year before the bankruptcy began), full title to the Property vested in the Town, leaving the LLC (and, purportedly, the Debtor) with nothing more than a statutory right to seek to vacate the judgment and pay a redemption amount set by the Land Court.  See Tallage Lincoln, LLC v. Williams, 485 Mass. 449, 451-453 (2020) (entry of tax title foreclosure judgment "extinguishes the taxpayer's remaining interest in the property—the right of redemption—and converts the municipality's … tax title into absolute title … free and clear of all encumbrances, including mortgages and other liens").  While a decision on whether the Debtor can exercise that statutory right in this instance may have sufficient consequences to the bankruptcy estate to make the Tax Foreclosure Action related to this bankruptcy proceeding, that connection is not sufficient to make this proceeding a core one.  See

---

[20] In the Chapter 7 Trustee's purported Notice of Removal, he asserts that the Tax Foreclosure Action is a core proceeding.  See Doc. No. 74 at pg. 2.  The Chapter 7 Trustee offers no support for this assertion, which is incorrect for the reasons discussed herein.

<u>Hayim</u>, 419 B.R. at 506 ("a matter cannot be deemed to be core merely because the debtor holds

a claim which, if successful, could increase the assets of the estate").

Finally, the third and fourth factors mandating abstention have also been met.  The Tax

Foreclosure Action was commenced in the Land Court before this bankruptcy proceeding and can

be timely adjudicated there, where judgment has already entered and all that is left for the Land

Court to do is decide the pending motion to vacate the judgment.  Where the Land Court is, by

statute, the exclusive venue in which the Town could bring the Tax Foreclosure Action, and there

is no evidence that the Land Court faces a backlog that would prevent prompt disposition of the

Debtor's motion to vacate, removal in no way enhances efficiency.  To the contrary, "the forum

with the most expertise in the relevant areas of law may well be expected to adjudicate the matter

in a more timely fashion." <u>Parmalat Cap. Fin. Ltd</u>. v. <u>Bank of Am. Corp</u>., 639 F.3d 572, 580 (2d

Cir. 2011) (analyzing elements of "timely adjudication" factor);[21] <u>see</u> <u>Little Rest Twelve, Inc</u>., 458

B.R. at 59 (where a case is "far along in state court" with the state court judge "about to decide

important issues," the "claims are wholly based on … state law, with which the state courts have

great expertise," and "bankruptcy proceedings are just beginning," timely adjudication demands

remand or abstention).  Additionally, because the Tax Foreclosure Action is not a core proceeding,

this Court can only submit proposed findings of fact and conclusions of law to the District Court

absent the Town's consent (which the Town has not provided).  <u>See</u> 28 U.S.C. § 157(c).  As such,

remand and decision by the Land Court is significantly more efficient than two-step adjudication

in federal court.  <u>See</u> <u>Malloy</u>, 345 B.R. at 754-755 ("This procedure is inefficient, generates a

---

[21] Those elements are: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the
complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy
proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the
administration or liquidation of the estate." <u>Parmalat Cap. Fin. Ltd</u>., 639 F.3d at 580.

multitude of repetitive pleadings, is expensive, doubles the judicial resources devoted to the matter, and substantially increases the duration of the litigation.").

Moreover, "perhaps the single most important factor is the nature of the underlying chapter proceeding," particularly because a Chapter 7 such as this case has "no administrative urgency or plan of reorganization to facilitate." Silverman v. General Rwy. Signal Co. (In re Leco Enters., Inc.), 144 B.R. 244, 251 (S.D.N.Y. 1992) (quotations omitted). Likewise, a remand would only be untimely if it unduly prolongs administration of the bankruptcy estate, not simply because of the prospect of some delay. See Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp., 671 F.3d 261, 269 (2d Cir. 2012). Where the Tax Foreclosure Action had progressed nearly to the end, only to be avoided at the last minute by the Debtor's own counsel when the Debtor's own motion was the only thing left for the Land Court to adjudicate, there is no prospect of unduly protracted administration of the estate. In the unlikely event that the Land Court allowed the Debtor's motion on remand (assuming that this Court also grants the Town's pending motion for relief from the automatic stay with respect to the Tax Foreclosure Action), the Chapter 7 Trustee would have the ability to redeem the Property as part of the estate administration process, assuming that the Debtor's estate has any assets sufficient to pay the redemption balance set by the Land Court. But the Tax Foreclosure Action need not proceed in this Court in order for that to occur.

As the Tax Foreclosure Action is subject to mandatory abstention under section 1334(c)(2), the Court should remand the case to the Land Court.

## II.    EQUITY DEMANDS THAT THE TAX FORECLOSURE ACTION BE REMANDED AND/OR THAT THIS COURT EXERCISE PERMISSIVE ABSTENTION

Section 1452(b) allows the federal court to remand claims on equitable grounds. "Among the factors courts consider in making a decision to exercise jurisdiction to remand a removed action" under that equitable power "are the following: (1) the effect of the action on the

administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court." Cenith Partners, L.P. v. Hambrecht & Quist, Inc. (In re VideOcart, Inc.), 165 B.R. 740, 744 (Bankr. D. Mass. 1994) (Feeney, J.).

Similarly, bankruptcy courts have broad discretion to abstain under section 1334(c)(1) "in the interest of justice, or in the interest of comity with State courts or respect for State law." See 28 U.S.C. § 1334(c)(1); New England Power & Marine, Inc., 292 F.3d at 69. Where many (but not all) of the factors for mandatory abstention have been met, equitable remand and/or discretionary abstention are overwhelmingly in the interests of justice and comity. See Southern Marine & Indus. Servs., Inc. v. AK Eng'ng, Inc. (In re AK Servs., Inc.), 159 B.R. 76, 86 (Bankr. D. Mass. 1993) (Feeney, J.); see also Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs., 181 B.R. 781, 794 (D.N.J. 1995) ("This near-miss rationale is widely adopted."). As Judge Feeney explained, equitable remand is proper "particularly where all but one of the elements necessary for mandatory abstention are present" and "several of the factors considered for discretionary abstention are compelling." Southern Marine & Indus. Servs., Inc., 159 B.R. at 86. Additionally, the principles underlying permissive abstention require courts to be wary of "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties." New England Power & Marine, Inc., 292 F.3d at 69. For these reasons, equitable remand and/or permissive abstention are appropriate here even if the Court finds that one of the factors for mandatory abstention is missing or questionable.[22]

---

[22] Permissive abstention and equitable remand are "kindred statutes" that, together, "strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of § 1334(b) and the litigation can be timely completed in state court." Dubose v. Merchants & Farmers Bank, 318 F. Supp. 2d 419, 428 (S.D. Miss.

Here, where the Tax Foreclosure Action was pending in the Land Court long before this bankruptcy was initiated and had almost reached its conclusion, equity calls for remand and/or permissive abstention.  See O'Rourke v. Cairns, 129 B.R. 87, 91 (E.D. La. 1991) ("The state court was on the verge of trying this case when it was removed").  Indeed, it appears that this bankruptcy proceeding was filed expressly for the purposes of preventing the Land Court from adjudicating the pending motion to vacate the judgment, which was the final step in bringing the Tax Foreclosure Action to a close.  As set forth more fully in the Town's Motion to Dismiss Bankruptcy Case, this involuntary Chapter 7 was filed against the Debtor as a strategic maneuver to frustrate the Land Court's adjudication of the Tax Foreclosure Action.  See Doc. No. 69 at p. 1.  The petition was filed, amidst other failed attempts by the Debtor to establish ownership of the LLC and thus an interest in the Property, the day of the pre-hearing conference on the Debtor's motion to vacate the judgment in the Tax Foreclosure Action.  Id. at pp. 8-9.  Indeed, even if (somehow) this manipulation of the bankruptcy process does not amount to cause to dismiss the petition in its entirety, when the manipulation is viewed in the light of clear statutory dictates for bankruptcy courts to promote comity, efficiency, and respect for state courts and state law, the tactics employed here overwhelmingly suggest that remand of and/or abstention from the Tax Foreclosure Action is in the interests of justice.  Indeed, the First Circuit has previously affirmed a decision to apply permissive abstention under similar circumstances, where a tax title action under G.L. c. 60, § 65 "had already been fully litigated in the Land Court" and the case was under advisement.  See New England Power & Marine, Inc., 292 F.3d at 69.

---

2003).  These statutes and doctrines substantially overlap.  See Bibeault v. CVS Pharmacy, Inc., No. CV 19-10758-NMG, 2019 WL 3546889, at *4 n.6 (D. Mass. June 21, 2019) ("In deciding whether to equitably remand claims, courts have looked to the same factors as those employed in a permissive abstention analysis"); O'Rourke v. Cairns, 129 B.R. 87, 90 (E.D. La. 1991) ("some bankruptcy courts, although deciding whether to remand the case, take into account whether abstention would also be appropriate").  For ease of reference, as a result, these statutes are discussed together in this section.

In considering the <u>VideOcart</u> factors specifically, the case for remand is clear.  All factors, except for the question of a jury trial, weigh in favor of equitable remand and/or permissive abstention.  With respect to the first and fifth factors, as discussed above, while the Tax Foreclosure Action may have some relationship to the current bankruptcy action and may have some effect on the administration of the estate, resolution of the Land Court action will only improve efficient administration.   The relationship, at the outset, is tenuous, as "no substantive right under the Bankruptcy Code is at issue in the underlying [state] litigation" and "[t]he only connection between the litigation and the Bankruptcy Code is the fact that [the Debtor's counsel] happened to file for relief … during the pendency of the removed action."  <u>Maintainco, Inc.</u> v. <u>Mitsubishi Caterpillar Forklift Am., Inc.</u> (<u>In re Mid-Atlantic Handlings Sys., LLC</u>), 304 B.R. 111, 127 (Bankr. D.N.J. 2003).   This is especially true where the relationship is an artificially created one, as part of the Debtor's scheme to avoid the otherwise imminent resolution of the Tax Foreclosure Action in Land Court.  <u>Balcor/Morristown Ltd. P'ship</u>, 181 B.R. at 793 ("There is a strong possibility that Vector seeks to change forums to avoid adverse rulings" in state court).   Moreover, resolution of the Tax Foreclosure Action promptly in the Land Court will actually facilitate administration of the estate, as "resolving the various claims will be quicker in the forum where the process of adjudication is already well underway."  <u>Id</u>.  "Any task left over for the bankruptcy court"— whether a bankruptcy sale of the Property (if the Debtor's motion is allowed and the Chapter 7 Trustee is able to redeem) or a distribution of the surplus proceeds of the Town's sale of the Property (if the Debtor's motion is denied)—"will be made the simpler" by Land Court resolution of the Debtor's motion.  <u>Id</u>.

The "second, third, and fourth factors favoring [equitable remand and] discretionary abstention are met and require little elaboration" here.  <u>Maintainco, Inc.</u>, 304 B.R. at 126-127.  The

Tax Foreclosure Action involves exclusively state law issues, namely whether the Debtor is entitled to vacate the Land Court's tax title foreclosure judgment under the Massachusetts General Laws. The case certainly involves no bankruptcy issues. Comity and the centrality of state law to the removed claim strongly favor remand to the Land Court, as the Commonwealth of Massachusetts and its designated court for hearing tax title foreclosure cases have a clear interest in enforcing the state's tax laws and resolving title doubts created by failure to abide thereby. See Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co., No. CIV.A. 10-11376-NMG, 2010 WL 6580503, at *8 (D. Mass. Dec. 28, 2010), adopted 813 F. Supp. 2d 242, 246 (D. Mass. 2011); see also Hayim, 419 B.R. at 510 ("where the real estate dispute involves solely state court issues, relates to property located within the state…, and no core issues are involved, comity weighs heavily in favor of abstention"). This is especially true where the issue has been litigated for years and already proceeded to judgment.

The final factor weighs heavily in favor of equitable remand and/or permissive abstention, as the prejudice to the Town is substantial. This entire proceeding was manufactured to avoid the impending resolution of the Tax Foreclosure Action. That the Debtor has effectively schemed with its counsel in the Tax Foreclosure Action to have the case stayed at the eleventh hour and removed by the Chapter 7 Trustee (who now represents the Debtor's interests and controls the Debtor's rights in the Tax Foreclosure Action) demonstrates the prejudice that removal will cause. The Tax Foreclosure Action "was on the verge" of finality, and to retain the matter in bankruptcy would result in the expenditure of this Court's resources familiarizing itself with the issues posed by the Debtor's motion to vacate (which the Land Court had been grappling with for the better part of nine months), waste the resources spent in Land Court, and cause serious "prejudice to the involuntarily removed party because the institutional delays implicit in starting over" with the

Debtor's motion in this Court will be significant. O'Rourke, 129 B.R. at 91. With respect to the additional prejudice caused by the Debtor's dealings, the Town need not belabor points already discussed above and in its motion to dismiss this bankruptcy proceeding. It is sufficient to state that the prejudice must be viewed in light of the demonstrated likelihood that this bankruptcy was commenced in order to avoid the Land Court's disposition of the Tax Foreclosure Action, which was on the "eve" of final resolution. Balcor/Morristown Ltd. P'ship, 181 B.R. at 793.

Thus, even if the Court finds that mandatory abstention does not apply, the Court should remand the Tax Foreclosure Action pursuant to equitable remand and/or permissive abstention.

## III.   THE MASSACHUSETTS LAND COURT HAS EXCLUSIVE JURISDICTION OVER THE TAX FORECLOSURE ACTION

Where a state court has exclusive jurisdiction, an action cannot be removed pursuant to section 1452, particularly if it is not a core proceeding. See CityView Towne Crossing Shopping Center Fort Worth Tx. Ltd. P'Ship v. Aissa Medical Resources L.P., 474 F. Supp. 3d 586, 597-598 (W.D.N.Y. 2020) (granting motion to remand where leases upon which action was based provided that New York state court had exclusive jurisdiction over disputes). As discussed above, under Massachusetts law, tax title foreclosure actions are subject to the exclusive jurisdiction of the Land Court. See G.L. c. 60, § 65. As such, the Tax Foreclosure Action—which is not a core proceeding, as discussed above, as well—cannot be removed pursuant to section 1452.

## IV.   THE BANKRUPTCY REMOVAL STATUTE DOES NOT PERMIT REMOVAL OF THE TAX FORECLOSURE ACTION

Finally, section 1452 does not permit removal of a civil action brought by a governmental unit—which includes a municipality, see 11 U.S.C. § 101(27)—to enforce its police or regulatory power. 28 U.S.C § 1452(a). An action to foreclose a municipal tax title is a form of enforcement of the municipality's regulatory powers of taxation. Although the First Circuit has not interpreted the "police or regulatory power" provision of section 1452, it has interpreted the similar provision

of 11 U.S.C. § 362 and, in doing so, adopted two tests—the "public purpose" and "pecuniary purpose" tests—which apply to section 1452 as well. Massachusetts v. New England Pellet, LLC, 409 B.R. 255, 258-259 (D. Mass. 2009), citing Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F.3d 1, 9 (1st Cir. 2003); see Kupperstein v. Schall (In re Kupperstein), 994 F.3d 673, 677-678 (1st Cir. 2021). "If either test is satisfied the case is considered an enforcement action" that may not be removed. New England Pellet, 409 B.R. at 258-259.

The Tax Foreclosure Action satisfies the "public purpose" test. Under that test, "the court determines whether the government seeks to 'effectuate public policy,'" in which case the test is satisfied, "or to adjudicate 'private rights,'" in which case it is not. Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005). The Tax Foreclosure Action does not seek to adjudicate private rights such as a municipal contract dispute or employment issue. Rather, the Tax Foreclosure Action sought to recover property that had been abandoned with no owner paying the property taxes, so that the Property could, in turn, be sold and returned both to the tax rolls and to operational status by a new owner. As such, the Tax Foreclosure Action served the public policy of putting real property to productive use for the benefit of all of the Town's citizens. Thus, under the "public purpose" test, the Tax Foreclosure Action was enforcement of the Town's "police or regulatory power" for the purposes of section 1452(a). The fact that the Town may obtain some financial benefit, namely satisfaction of the tax title account balance, through the Tax Foreclosure Action does not bar application of the public purpose test. See Kupperstein, 994 F.3d at 680-681.

As the Tax Foreclosure Action is a civil action brought by a governmental unit to enforce its police or regulatory power, it may not be removed under section 1452(a).

## **CONCLUSION**

For the foregoing reasons, the Court should remand the Tax Foreclosure Action to the Massachusetts Land Court.

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

_____
Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
  Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: February 7, 2024

895870/WEST/0049

<u>CERTIFICATE OF SERVICE</u>

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing

Motion to Remand or, Alternatively, Abstain from Hearing Tax Title Foreclosure Action to be

served through the Court's CM/ECF system to the following counsel of record or by U.S. mail to

the following unregistered parties:

| | | |
|---|---|---|
| Stephen F. Gordon<br>The Gordon Law Firm LLP<br>River Place<br>57 River Street<br>Wellesley, MA 02481<br>sgordon@gordonfirm.com<br>*Attorney for Petitioning*<br>*Creditors* | Jonathan R. Goldsmith<br>Goldsmith, Katz & Argenio<br>P.C.<br>1350 Main Street, 15th Floor<br>Springfield, MA 01103<br>trusteedocs1@gkalawfirm.com<br>*Attorney for Chapter 7*<br>*Trustee* | Richard King<br>Office of US. Trustee<br>446 Main Street<br>14th Floor<br>Worcester, MA 01608<br>*Attorney for the U.S. Trustee* |
| Westborough SPE, LLC<br>c/o Lolonyon Akouete<br>1241 Deer Park Ave., Suite 1,<br>#1051<br>North Babylon, NY 11703<br>*Debtor* (by U.S. mail) | Scott A. Schlager<br>Nathanson & Goldberg, P.C.<br>183 State Street, 5th Floor<br>Boston, MA 02109<br>sas@natgolaw.com<br>*Attorney for Creditor*<br>*Nathanson & Goldberg, P.C.* | Paul W. Carey<br>Mirick, O'Connell, DeMallie<br>& Lougee, LLP<br>100 Front Street<br>Worcester, MA 01608-1477<br>pcarey@mirickoconnell.com<br>*Attorney for Creditor Ferris*<br>*Development Group, LLC* |
| Darin Clagg<br>24 Kobbs Korner Rd.<br>Pine Bush, NY 12566<br>*Creditor* (by U.S. Mail) | Matthew A. Morris<br>Sherin and Lodgen LLP<br>101 Federal Street, 30th Floor<br>Boston, MA 02110<br>mmorris@sherin.com<br>*Creditor* (by email) | Lolonyon Akouete<br>800 Red Milles Rd.<br>Wallkill, NY 12589<br>info@smartinvestorsllc.com<br>*Creditor* (by email) |
| Denise Edwards<br>137 North 25th Street<br>Wyandanch, NY 11798<br>deniseedwards818@yahoo.com<br>*Creditor* (by email) | Lenard Benson Zide<br>Butters Brazilian LLP<br>420 Boylston Street, 4th Floor<br>Boston, MA 02116<br>zide@buttersbrazilian.com<br>*Attorney for Creditor The*<br>*MobileStreet Trust* (by email) | |

Dated: February 7, 2024

_____
Roger L. Smerage