## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**Case Number: 23-40709-CJP**
**Involuntary Chapter 7**

_____
*In re:*                                  )
                                          )
**WESTBOROUGH SPE LLC**        )
_____)

## NATHANSON & GOLDBERG, P.C.'s OPPOSITION/OBJECTION TO TOWN OF WESTBOROUGH'S MOTION TO DISMISS BANKRUPTCY CASE [DOCKET NO. 69]

To The Honorable Christopher J. Panos, United States Bankruptcy Judge:

Now comes Nathanson & Goldberg, P.C. and states the following in opposition to the Town of Westborough's ("Town") Motion to Dismiss Bankruptcy Case ("Motion to Dismiss"):

### Introduction

The Town of Westborough's ("Town") Motion to Dismiss under 11 U.S.C 707(a), alleging this case was filed against an "invalidly-revived" iteration of Westborough SPE LLC ("LLC"), speciously ignores critical facts, and attempts to use law not recognized in the First Circuit—a point conceded by the Town. Town Counsel conveniently ignored the plain language of the Debtor's Delaware LLC Operating Agreement ("Operating Agreement")—the best evidence of the LLC's governing mandate and manager (either *predecessor* or *successor*) authority to act. David Abromowitz, Esq. of Goulston & Storrs P.C. in Boston, Massachusetts, the LLC's incorporating and predecessor counsel, provided a copy of the Operating Agreement, can certainly authenticate the Operating Agreement, and during any adversary proceeding, can be called on as a witness to do the same. *See* **Exhibit A** attached and incorporated by reference.

The Town's argument does not satisfy a motion to dismiss standard. *See In re Shove*, 638 B.R. 1, 14–15 (B.A.P. 1st Cir. 2022), *aff'd*, 83 F.4th 102 (1st Cir. 2023), "Courts use a two-pronged approach when considering a motion to dismiss." *Id.* (citations omitted). 'First, the court must

1

accept all factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb.' *Id*. (citations omitted). 'Second, the court must determine if these well-pleaded factual allegations state a 'plausible claim for relief.' *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))." *Id*.

According to <u>page 4</u> of the Operating Agreement, "…**No Manager may resign or retire from, abandon or otherwise terminate its status as a Manager without the Consent of the Members**." (Emphasis Added). Thus, any purported attempt by Babcock & Brown Administrative Services, Inc. (including its predecessors, successors, or assigns) employees, agents, officers, or directors, including, but not limited to, Dyann Blaine, F. Jan Blaustein Scholes, James Babcock, or James D. Jaworski,  to "*resign*" or "*abandon*" its manager obligations were entirely improper, contrary to the express terms of the Operating Agreement, and violative of the canons of fiduciary duties under Delaware law[1].

According to <u>Section 9(a) Miscellaneous</u> of the Operating Agreement, "…**the terms of this Agreement shall be binding upon and shall inure to the benefit of the Members and the Manager, their respective permitted successors, successors-in-title, heirs and assigns**…".

---

[1]    *See* Del. Code Ann. tit. 6, § 18-602 (West), "A manager may resign as a manager of a limited liability company at the time or upon the happening of events specified in a limited liability company agreement and in accordance with the limited liability company agreement. **A limited liability company agreement may provide that a manager shall not have the right to resign as a manager of a limited liability company**. Notwithstanding that a limited liability company agreement provides that a manager does not have the right to resign as a manager of a limited liability company, a manager may resign as a manager of a limited liability company at any time by giving written notice to the members and other managers. **If the resignation of a manager violates a limited liability company agreement, in addition to any remedies otherwise available under applicable law, a limited liability company may recover from the resigning manager damages for breach of the limited liability company agreement and offset the damages against the amount otherwise distributable to the resigning manager**." (Emphasis added). Thus, if Babcock & Brown's *resignation* or *abandonment* is found to have violated the Operating Agreement, then **the Chapter 7 Trustee likely has a claim** against Babcock & Brown Administrative Services, Inc., its successors, and assigns.

(Emphasis added). Thus, Section 9(a) of the Operating Agreement distinctly contemplates the possibility of an *assignment/transfer*[2] of Manager role and thus grants an express imprimatur to any "successor manager" under Delaware law.

Section 9(b) of the Operating Agreement specifically states that, "**No change, modification, or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and duly executed by all of the Members and, if (but only if) such affects the rights or obligations of the Manager, executed by the Manager**" (Emphasis added). Thus, even if Lolonyon Akouete ("Akoute"), as successor manager, attempted to redraft an LLC Operating Agreement, said redraft would be void, because it was not signed by all the Members of the LLC. Thus, any attempted redraft of the Operating Agreement by Akouete is a nullity and the original Operating Agreement remains the operative agreement.

---

[2] *See* Del. Code Ann. tit. 6, § 18-407 (West), "Unless otherwise provided in the limited liability company agreement, a member or manager of a limited liability company has the power and authority to delegate to 1 or more other persons any or all of the member's or manager's, as the case may be, rights, powers and duties to manage and control the business and affairs of the limited liability company, which delegation may be made irrespective of whether the member or manager has a conflict of interest with respect to the matter as to which its rights, powers or duties are being delegated, and the person or persons to whom any such rights, powers or duties are being delegated shall not be deemed conflicted solely by reason of the conflict of interest of the member or manager. Any such delegation may be to agents, officers and employees of a member or manager or the limited liability company, and by a management agreement or another agreement with, or otherwise to, other persons, including a committee of 1 or more persons. Unless otherwise provided in the limited liability company agreement, such delegation by a member or manager shall be irrevocable if it states that it is irrevocable. Unless otherwise provided in the limited liability company agreement, such delegation by a member or manager of a limited liability company shall not cause the member or manager to cease to be a member or manager, as the case may be, of the limited liability company or cause the person to whom any such rights, powers and duties have been delegated to be a member or manager, as the case may be, of the limited liability company. **No other provision of this chapter or other law shall be construed to restrict a member's or manager's power and authority to delegate any or all of its rights, powers and duties to manage and control the business and affairs of the limited liability company**." (*Emphasis added*).

3

Section 9(c) of the Operating Agreement states, "This [Operating] Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted and enforced in accordance with the laws of the **State of Delaware**, notwithstanding any choice of law rules to the contrary." (Emphasis added). Thus, any question of limited liability company governance must be answered under Delaware law and not Massachusetts law. Moreover, the Secretary of The Commonwealth of Massachusetts Corporations Division identification numbering system is not dispositive. Delaware law differs from Massachusetts law on limited liability company reinstatement, and it is Delaware law that prevails[3].

The Operating Agreement also explicitly states:

"**Any Manger may, from time to time, by an instrument in writing, delegate all or any of its powers or duties hereunder to another Manager, if any, or to an officer, manager, member, or partner of any other Manager or to any Member or any other person or entity**. Such writing may **fully authorize such other Manager or such other person or entity, acting alone or with others**, all as may be provided in such written delegation, without requiring…signature of the delegating Manager, **to take any action of any type and to do anything and everything which the delegating Manager may be authorized to take or do hereunder**…**and may delegate such authority generally** or as to any specified matter or specific terms, all as may be provided in writing by any such Manager. **Any documents or other instruments executed by any person or entity to whom any such delegation has been made shall be binding upon and enforceable against the Company, and shall be the valid act and deed of the Company, if executed by such delegee, and any third party shall be fully protected in relying upon the authority of any such delegee pursuant to a written delegation by the (or a) Manager**."

(Emphasis added). *Id*.

---

[3] *See*, *e.g.*, *RFB Properties LLC v. Federal National Mortg. Ass'n*, 284 A.3d 381 (D.C. App. 2022) (The District of Columbia Court of Appeals held that the reinstatement of an administratively dissolved LLC validated its filing an action to quiet title and its recording of a deed during the period of dissolution. The court reversed the trial court's dismissal of the action on the grounds that the LLC was administratively dissolved when the claim arose); *see also* https://corpfiles.delaware.gov/llcrev09.pdf (accessed February 07, 2024) (Delaware has a standard form for LLC revivals).

4

Thus, F. Jan Blaustein Scholes, under the Operating Agreement, and in full compliance with Delaware law, had the authority to execute a written assignment of Manager role and durable power of attorney, and such assignment of manager role to Lolonyon Akouete ("Akouete"), and Denise Edwards ("Edwards"), delegated general authority to Akouete, and Edwards, to act on behalf of the Debtor.

Accordingly, the Town's Motion to Dismiss should be immediately denied. The Town's discursive, seventeen-page Motion to Dismiss, riddled with "red-herring" exhibits bordering on the frivolous, is merely an attempt by the Town to hinder, delay, and obstruct this Chapter 7 case for its own perceived litigation advantage, and imposes significant unnecessary costs on Creditor Counsel, and the Chapter 7 Trustee. Movant's argument embodies a dubious proposition because of insufficient authority in the First Circuit to conclude that a finding of bad faith is grounds for dismissal under Section 707(a) of the Bankruptcy Code. And there is no basis in law or in fact to conclude that the two Petitioning Creditors acted in bad faith.

Involuntary petitions "help ensure the orderly and fair distribution of an estate by giving creditors an alternative to watching nervously as assets are depleted, either by the debtor or by rival creditors who beat them to the courthouse." *See In re Murray*, 900 F.3d 53, 59 (2d Cir. 2018). The Town exemplifies a rival creditor seeking to deprive other creditors of an "orderly and fair distribution" of the Debtor's assets. The Town's effusive animus against Akouete in its Motion to Dismiss rang clear.

It is doubtful that the Town even possesses adequate legal standing to seek dismissal of this bankruptcy case in which it is assured full payment of its ultimately allowed claim. Standing is a threshold issue, and the Bankruptcy Court must determine whether the Town, admittedly a "party in interest" in this bankruptcy case is a party in any way aggrieved by the existence of this

5

bankruptcy case, which will only serve to allow other creditors to recover on their claims. Trustee Jonathan Goldsmith has rightly removed the Land Court proceeding to this Bankruptcy Court, in which the Town's claim can be adjudicated and will be paid in full once determined.

To file an involuntary bankruptcy petition, only certain requirements must be satisfied, such as the number of petitioning creditors, the types of claims these creditors hold, and the amount of the claims. Those requirements have been met in this case:

A. **Since the Debtor has Fewer Than Twelve Creditors, Three Or More Creditors Are Not Required**.

Section 303 states that three or more entities, each of which is a holder of eligible claims against a debtor, can file an involuntary petition so long as those eligible claims aggregate to at least $16,750 more than the value of any lien on the property of the debtor securing such claims held by the holders of such claims. § 303(b)(1). If less than twelve creditors hold qualified claims against the debtor, then one or more of those creditors holding in the aggregate at least $16,750 in eligible claims may file an involuntary case, subject to certain exceptions that do not apply here. § 303(b)(2). Thus, an involuntary bankruptcy case can be initiated by only one creditor if that creditor is one of less than 12 creditors and has an eligible claim worth at least $16,750 as of the petition's filing date. *See In re Cohn-Phillips, Ltd.*, 193 B.R. 757, 763 (Bankr. E.D. Va. 1996).

B. **The Two Petitioning Creditors Hold Eligible Claims**.

Eligible claims are neither contingent as to liability nor the subject of a bona fide dispute as to liability or amount, and both petitioning creditors qualify (although only one would be required here). *See Id*. § 303(b).

6

C. **Each Petitioning Creditor Satisfies the Minimum Amount of Claims**.

Eligible claims must aggregate at least $16,750.12 The claims of both petitioning creditors exceed this amount.

## I.   The Town Has an Ulterior Motive.

As the United States Supreme Court recently opined in *Tyler v. Hennepin Cty. Minnesota[4]*, the Town's ***only*** interest is getting paid its unpaid tax debt[5], but the Town has an ulterior interest— punish Akouete for thwarting the Town's improper sale to Lax Media (the Town's preferred partner). Accordingly, the Town lacks standing to challenge any corporate actions of Westborough SPE LLC vis-à-vis its revival in the State of Delaware and its re-registration as a foreign LLC in Massachusetts. Despite the Town's assertion that this involuntary Chapter 7 Petition was "filed against the debtor as a strategic maneuver to frustrate the Land Court's adjudication of the Tax

---

[4] Beginning with traditional principles, Chief Justice Roberts suggested that a property interest in surplus equity had English origins — King John proclaimed in the Magna Carta that when collecting debts owed to him by a deceased person, any surplus "shall be left to the executors." *Tyler*, 143 S. Ct. at 1376 (*quoting* William Sharp McKechnie, Magna Carta: A Commentary on the Great Charter of King John 322 (2d ed. 1914)). Parliament endorsed this principle, giving the Crown the power to seize and sell a taxpayer's property to satisfy a tax debt but requiring the surplus to be returned to the original owner. And according to Blackstone, the English common law required the same. *Id*. So too did historic and contemporary American laws. Following the Founding, the new federal government and ten states adopted provisions requiring the government to sell only the amount of property equal in value to the taxpayer debt. *Id.* These laws foreshadowed the approach taken by the federal government and most of states today, in which surplus is returned to the taxpayer. Precedent provided further support — a taxpayer's entitlement to surplus in excess of debt was a well-recognized principle. Unlike statutory schemes upheld by the Supreme Court in other instances, Minnesota's scheme entirely precluded owners from obtaining the surplus once absolute title had transferred to the state, suggesting a taking had occurred. This is similar to Massachusetts' current scheme.

[5] Where state courts are suspected of using state law to evade federal law or deliberately impede federal claims, the Court overrides its usual deference to state court interpretations of state law and searches for misconduct by the courts. Misconduct can be inferred from "grossly unfair or unsubstantiated alteration[s] of state law" or anomalous applications of local practices. Chief Justice Roberts himself confirmed the Court's role in combating attempts at evasion by state courts in *Moore v. Harper*.

Foreclosure Action", this could not be further from the truth and ignores two critical facts—(i) Nathanson & Goldberg, P.C. is not the sole petitioning creditor; and (ii) Nathanson & Goldberg, P.C. was owed over $100,000 from the debtor and attorneys' do not work for free.

The Town further laments that the filing of an Involuntary Chapter 7 Petition by the petitioning creditors represents a "frustration of the judicial process" and then unilaterally declares, without citation to any authority, that the "Debtor was not properly revived and the individuals behind that revival are attempting to frustrate the Town's disposition of real property that the Town acquired through the Tax Foreclosure Action, constitutes cause [warranting] dismissal of this bankruptcy proceeding." *Motion to Dismiss*, p.1. This hail-Mary attempt by the Town to avoid having its Land Court proceeding removed to the Bankruptcy Court, is disingenuous and seeks only to punish Akouete for his vociferous advocacy. The Town does not want a Federal forum, where the holding of *Tyler* would unequivocally be invoked. The Town has attempted to obfuscate the issues for the Court, but a careful distillation of the facts, Debtor's Operating Agreement, and Delaware law, readily show that the Debtor, and Creditors, have acted reasonably and appropriately, but the Town has acted irrationally. The Town's improper resort to ad-hominem attacks and baseless assertions strains credulity.

**II.      The Town Fails to Satisfy the 707(a) Standard for Dismissal and the First Circuit Has Not Adopted Bad Faith as a Reason for Dismissal**.

Under § 707(a), the court has discretion to dismiss a Chapter 7 case for cause after notice and a hearing. *United States v. McDaniel (In re McDaniel)*, 363 B.R. 239, 243 (M.D. Fla. 2007). Section 707(a) supplies three non-exclusive illustrations of cause: (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3) failure of the debtor in a voluntary case to file required information (not here at all applicable). None of those reasons, nor any others, apply here.

8

Some Courts, but not in the First Circuit, have concluded bad faith can demonstrate cause for dismissing a Chapter 7 case, and that the movant seeking a bad-faith dismissal bears the burden of proof. *In re McDaniel*, 363 B.R. 239, 244 (M.D. Fla. 2007); *but see In re Bushyhead*, 525 B.R. 136, 142 (Bankr. N.D. Okla. 2015) (rejecting bad faith as a consideration when dismissal is sought under § 707(a) and noting that courts are split on the issue). Bad faith is a fact-intensive determination that " 'is subject to judicial discretion under the circumstances of each case' " and "does not lend itself to a strict formula." *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1271 (11th Cir. 2013) (*quoting Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir.1984)). In *Piazza*, the Eleventh Circuit determined that "a totality-of-the-circumstances approach is the correct legal standard for determining bad faith under § 707(a)" and focused on " 'atypical' conduct  that falls short of the 'honest and forthright invocation of the Bankruptcy Code's protections .' " *Id*. (internal citation omitted). Courts must "examine whether a <u>debtor's</u> intentional acts or omissions to act 'constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code.' " *In re Merkel*, 595 B.R. 608, 611-12 (Bankr. S.D. Fla. 2018) (*quoting Piazza*, 719 F.3d at 1272). "A bankruptcy court, as a trier of fact, must carefully examine the <u>conduct of the debtor</u> and identify facts and bases which support a finding of bad faith under § 707(a)." *Id.* at 612. Because the analysis is generally subjective and entrusted to the court's discretion, "the court should step cautiously when asked to exercise the power to <u>deny a debtor</u> access to its jurisdiction." *In re Kane & Kane*, 406 B.R. 163, 170 (Bankr. S.D. Fla. 2009) (*citing In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991) (dismissal of Chapter 7 cases for lack of good faith limited to egregious circumstances)). Here, there are no grounds for dismissal of an <u>involuntary</u> case because of any alleged <u>debtor</u> bad faith.

9

The Town does not allege that the involuntary petition was filed to avoid having the Town paid as a creditor. The Town merely suggests that the Petition was filed to avoid a Land Court adjudication of the Town's rights vis-à-vis the Tax Foreclosure Action. This Court must reject the Town's first argument as providing just cause for dismissal in this case. Even if the involuntary petition were filed to avoid Land Court adjudication, the involuntary petitioners' resort to Chapter 7 may have been appropriately strategic, but not unfair under the circumstances. In fact, the Town fails to recognize that there was not one petitioning creditor—**the second petitioning creditor had no connection at all to Lolonyon Akouete**. That there was a second unaffiliated petitioning creditor with no connection at all to Lolonyon Akouete ought to be dispositive and deny dismissal of the Chapter 7 case for bad faith alleged only as to Akouete.

Most importantly, filing for bankruptcy relief "to counter the collection efforts of one creditor, without further indicia of bad faith, is not sufficient to warrant dismissal under § 707(a)." *In re Merkel*, 595 B.R. at 614 (collecting cases).

But it is ironic that the Town is even pursuing a dismissal—perhaps it is the Town that has an ulterior and inappropriate motive. Here, there are sufficient assets to pay off Westborough SPE LLC's tax debt to the Town and to pay off all creditors from a properly administered Bankruptcy Estate—(i) there is about $1,293,000 from the State of California to be collected by the Trustee and for which the Trustee has seemingly secured an Agreement from the State of California to release right away; and (ii) the Debtor's real property located at 231 Turnpike Road is worth at the very least about $2.4 Million. The Town will easily get paid its roughly $1 million owed, without disadvantaging other creditors for whom this bankruptcy case represents their only effective means of recovery. But the Town would rather "cut off its nose to spite its face" to inflict maximum "punishment" on Lolonyon Akouete for exercising Debtor's rights to challenge an improper and

constitutionally deficient tax title taking and for exercising his fiduciary duties in good faith to ensure that the Debtor's chief asset—the real property located at 231 Turnpike Road, Westborough, MA, is not wrongfully seized by the Town, as a direct result of Babcock & Brown's breach and abandonment of their fiduciary duties and contractual obligations vis-à-vis the Debtor's Operating Agreement.

The Court cannot conclude that the totality-of-the-circumstances (indeed, any of the circumstances) demonstrates that this <u>involuntary</u> Chapter 7 case was filed in bad faith. The remedy of involuntary bankruptcy "exists as an avenue of relief for the benefit of the overall creditor body…. [I]t was not intended to redress the special grievances, no matter how legitimate, of particular creditors…." *In re Murray*, 900 F.3d 53, 59-60 (2d Cir. 2018). And, certainly, its dismissal cannot be used to redress the special grievances of the Town.

The only "special grievance" seems to be proffered by the Town. At this point, neither the Trustee nor the Petitioning Creditors seem to care who the real property located at 231 Turnpike Road, Westborough, Mass.  is sold to, but for reasons unacknowledged, the Town is insistent on its own selectee Lax Media. So if neither the petitioning creditors nor the Trustee have reason to object to the sale of the real property to Lax Media, then the Court should order the Trustee to sell the real property to Lax Media, obtain the funds from California, pay off the Town, pay off the other creditors, and then it is the Trustee's obligation, and not the Town's, to determine the entity entitled to receive the remaining proceeds—be it to the State of Delaware or British Virgin Islands by escheat, an affiliate or entity created by the billionaire Lowy Family of Australia for alleged tax avoidance, the Estate of Max Green, Esq. of Australia, an affiliate or entity created by Myron Scholes for alleged tax avoidance, the Insolvency Estate in Australia of Babcock & Brown's Australian parent company, or some other person(s) known or unknown.

11

Allowing the Town's Motion to Dismiss would waste judicial resources and propagate a bad-faith attempt by the Town to punish Akouete for thwarting the Town's plans for the real property at 231 Turnpike Road.

**III.   The Town Completed Its Discovery in the Land Court Proceeding As Confirmed by the Filing of the Joint-Pre-trial Memorandum**.

In Fn.1 of its Motion to Dismiss, the Town laments that the filing of a §707 Motion commences a contested matter under Fed. R. Bankr. P. 9014. The Town presupposes that it has standing to challenge Westborough SPE LLC's corporate actions, and assuming arguendo it did possess standing, it would be futile, because the Chapter 7 Trustee has the authority to remove the Land Court case to the Bankruptcy Court. Even so, this issue is the subject of Land Court litigation which case has since been removed to the Bankruptcy Court by the Chapter 7 Trustee. The Bankruptcy Court is the proper forum for adjudication of these issues. Rather than accept that the Town will easily get its tax debt paid with the funds obtained from the State of California or by sale of the Property, the Town is looking to exact revenge on Akouete.

**IV.   The Town Is Incorrect About Many Factual Matters Stated in Its Motion to Dismiss**.

There is absolutely no need to distinguish between a revived iteration of Westborough SPE LLC and the original iteration (*see* Motion to Dismiss at p.1)—both the revived and the original iteration use the same FEIN number and are the same entity. The State of Delaware recognizes revival/reinstatement of entities, and a revived/reinstated Delaware limited liability company is one and the same with the original formed entity. Delaware law applies to this analysis as the choice of law provision in the Debtor's Operating Agreement clearly indicates.  Moreover, unlike what was stated in the Motion to Dismiss, Stephen F. Gordon, Esq. of The Gordon Law Firm LLP filed the Involuntary Chapter 7 Petition on behalf of the two petitioning creditors, not the creditors themselves (*see* Motion to Dismiss at p.1). This counsel takes umbrage at the Town's use of labels

and conclusions throughout its Motion to Dismiss, including, but not limited to "issues of deception surrounding the Debtor", "frustration of the judicial process", "debtor was not properly revived", among similar statements. And the Town claims that the LLC Operating Agreement was not authenticated, but David Abramowitz, Esq. of Goulston & Storrs P.C. provided the signed copy of the LLC Operating Agreement on August 8, 2023, and his testimony, if necessary, can easily authenticate the Operating Agreement that was drafted by his Firm on a matter in which he was the then partner-in-charge. The Town also states that the "LLC withdrew from doing business in Massachusetts in 2007" but fails to state that the Debtor still owned real property located at 231 Turnpike Road, Westborough, Mass. as of 2007. The Town also failed to state that Babcock & Brown lacked the authority to resign as manager because it did not receive the consent of the Debtor's Members. *See* Motion to Dismiss at page 2. Furthermore, the Town failed to state that the Lease (which it conveniently states expired in late 2017), did in fact have four additional successive five-year options and the cinema tenant wished to execute a lease extension, but because Babcock & Brown could not comply with the Patriot Act and OFAC know-your-client regulations (i.e., upon information and belief it did not know the Members complete identities), it sought to abandon its obligations so as to seemingly not risk enforcement action. *See* Motion to Dismiss at p.3. Unpaid taxes as of FY 2018 amounted to only $106,944.99. *See Id*. Yet the Town has decided to engage in protracted litigation and extend the time period where the balance owed to the Town seemed to accrue to massive levels. It is also fundamentally unfair to charge the Debtor for legal fees the Town incurs in Bankruptcy and especially in the Ferris Development Litigation, where the Town comes with unclean hands as a result of its severe constitutional due process and procedural violations. The Town also conveniently omits Debtor's argument about insufficiency of service of process in the Land Court Tax-Title proceeding. *Id*. The Town similarly omits that

13

the Debtor moved to vacate the foreclosure judgment based on constitutional violations, including due process, and on procedural grounds. The Town's assertion that the estimated fair market value of the Property was $2,082,000.00 is directly refuted by the appraisal report provided by the Town during discovery in the Land Court Proceeding. In fact, at least one appraisal report had a value approaching $5-6 million for the real property located at 231 Turnpike Road, Westborough, Mass. In Fn. 6 on page 3 of the Town's Motion to Dismiss, the Town cursorily references Ferris Development Group, LLC's lawsuit but seeks to wrongfully portray a denial of an injunction as being dispositive of the Town's position in that matter.

Records from the Delaware Secretary of State Corporations Division are dispositive. Certified Copies of Delaware Corporate Records indicate that the Certificate of Revival for Debtor used the same FEIN # as the original entity and thus they are the same. *See Id*. at p. 4. The Town lacks standing to assert breach of fiduciary duty or derivative claims on behalf of the Debtor—that belongs to the Trustee. Moreover, the Town's assertion that the Debtor applied for registration to do business in Massachusetts using the same name as the LLC is not accurate—Akouete and Edwards, as duly authorized managers of the Debtor, a reinstated Delaware limited liability company using the same FEIN # as the original entity, is the same. Just because Massachusetts distinguishes between original and reinstated entities as being different entities, Delaware does not. It is Delaware limited liability company law that governs per the Operating Agreement. Moreover, the Town's reference to a Bill of Sale is merely a red-herring—Akouete corrected the record through submitting subsequent documentation that the Town failed to mention in its Motion to Dismiss. The later documentation clearly corrected the record and made evident that neither Akouete nor Edwards acquired any membership interest in Debtor and that they only became successor managers of Debtor with all rights and privileges and obligations conferred by the

14

Operating Agreement. Moreover, the reference to the Bill of Sale having Ms. Blaustein reside in New Mexico was an apparent scrivener's error and Ms. Blaustein always resided for the purposes of the Land Court Case in Maricopa County, Arizona. The corrective documentation submitted to the Land Court makes this fact clear, and as stated above, the Bill of Sale is a nullity and not the operative document. As has been reflected in Land Court argument and later filings, Akouete unequivocally does not own any membership interest in debtor. He is merely a co-successor manager of Debtor with full rights and privileges afforded by the Operating Agreement. *Id* at p.4. Moreover, any reference to Ms. Blaustein not being the president of Debtor is not true. Ms. Blaustein was the President of Babcock & Brown Administrative Services, Inc. which was the predecessor entity to Babcock & Brown Parallel Member LLC. In addition, the Town harps on the Hawaii Court ruling that Ms. Blaustein was "an incapacitated person", but there is no reference to any Arizona guardianship proceeding. Guardianship proceedings are not afforded full faith and credit under the United States Constitution. *See May v. Anderson*, 345 U.S. 528, 529 (1953); *Johnson v. Johnson*, 105 Ariz. 233, 240, 462 P.2d 782, 789 (1969) ("A decree of a court of one state…is not binding upon the courts of another state under the full faith and credit clause of the federal Constitution after [that person subject to said foreign court order] has become domiciled in the latter state."). Thus, because Arizona and Hawaii have different standards to adjudge capacity, the fact that F. Jan Blaustein Scholes at all times relevant to the Land Court proceeding resided in Arizona and not Hawaii, and the fact that there is no conservatorship proceeding docketed at the time the revised documentation was executed in or about 2022-2023 in Arizona, Peter Blaustein had no guardianship over his mother in Arizona, and the Town's argument rings hollow.

In fact, Peter Blaustein allegedly exercised undue influence over his Mother Ms. Blaustein, and has tried to limit her expenditures. In fact, it was Ms. Blaustein who avoided her responsibilities as manager of the Debtor, and breached her fiduciary duties to the members of the LLC by failing to properly register in Massachusetts when the Debtor continued to own property in Massachusetts.

We also take umbrage at the Town's characterization that Mr. Akouete's efforts to vacate the Town's Tax Foreclosure Judgment was a "scheme". The Town challenges Akouete's communication with David Ferris, as if this were some sort of *coup de grâce*, but frankly, Akouete is allowed to communicate with whomever he desires. *Id*. at p. 5. Next, we object to the Town harping on a purported new LLC Agreement. The Operating Agreement stands, because the express terms of the Operating Agreement required Member Consent and written approval. Thus, if it's a nullity, it does not factor into this analysis and the Town wastes considerable word count discussing a nullity. *Id*. at p. 6. Moreover, the fact that Akouete stated in a text message to Charville that he was "starting to see the authority issues we have in this case" is merely an acknowledgment of the Town's position and not acceptance. Akouete is not a licensed attorney in any jurisdiction and any statements to Ferris likely represent posturing and are taken without the benefit of full context. Despite the Town stating that Akouete claims he acquired an ownership interest in the Debtor, he did not, and in fact the Land Court was informed of this fact and the record was corrected before the Bankruptcy Petition being filed. *Id*. at p. 7. Furthermore, the Town claims that all motions were denied—they were not all denied—some issues were postponed to an evidentiary hearing.

Importantly, no determination by the State of California can decide Akouete's authority and California's recent decision to now release the approximately $1.3 Million of estimated funds,

16

previously denied the Debtor, to the <u>Trustee</u> demonstrates how effective this case has already been in creating a valuable bankruptcy estate for the benefit of creditors with no viable alternative if this case is dismissed. The Town lacks standing to challenge authority. *Id*. Once again, the corrected authority documents were provided to the State of California by Akouete and Akouete corrected his statement to the State of California that he was not an owner of the LLC. *Id*. at p. 8.

Fn. 13 on p.8 of the Town's Motion to Dismiss is not true. Mr. Blaustein was not duly appointed guardian in Arizona. A separate guardianship proceeding was required in Arizona under the Uniform Guardianship and Conservatorship Act. An expert is required to opine on this issue and it is a disputed fact.

The Town's considerable lamentation over the Land Court canceling the evidentiary hearing and staying the Land Court proceedings focuses the argument on the gravamen of the Town—the Town is angry that the friendly Land Court may be deprived of its jurisdiction—which it was by the Trustee's filing of the Notice of Removal. Indeed, the Town is frustrated over Akouete's persistence. But persistence is not illegal or improper. Perhaps Akouete is right in that it is the Town that is engaging in unreasonable and vexatious litigation. Akouete is not a licensed attorney and any correspondence with the Town Officials is not subject to Attorney communication prohibitions. The Town hopes that through its use of ad-hominem attacks that it will poison Akouete's reputation with this Court. *Id*. at 9. But Akouete's activities (including this case) are irrelevant to the issues of disadvantaging creditors through dismissal of this bankruptcy case.

Once again, in the Town's Argument section, it is replete with labels and conclusions. The Town has regretfully resorted to ad-hominem attacks. Nathanson & Goldberg, P.C. do not represent Akouete and Edwards—the Engagement is with Westborough SPE, LLC, a Delaware

limited liability company. Akouete and Edwards' status as manager was confirmed by obtaining certificates of good standing from Delaware and Massachusetts. Using legal process to attempt to frustrate the Town's plans to disadvantage creditors is in no way improper; no more than is the Town's use of legal process which it can pursue in this Court. because legal process was used. The absolute litigation privilege protects lawyers, and Nathanson & Goldberg, P.C.'s client was always the Debtor, and not Akouete, or Edwards, themselves. *Id*. at p. 10. Akouete's attempt to revive the Debtor was not "egregious". In fact, the only "egregious" behavior was by Babcock & Brown flouting its fiduciary duties and improperly trying to shutter the entity while it was still conducting business in Massachusetts. Ms. Blaustein had the requisite authority to convey management responsibility to Akouete under the Operating Agreement and Delaware law—in fact Ms. Blaustein in her conveyance of management responsibility to Akouete and Edwards for the first time, aimed to try and mitigate her and Babcock & Brown's clear breach of her fiduciary duties owed to the Debtor's Members. *Id*. at p. 11.

Moreover, as discussed *supra*, the Bill of Sale is not operative, and was expressly disclaimed to the Land Court upon Nathanson & Goldberg, P.C. assuming representation, and learning of the purported Bill of Sale—which is an absolute nullity—and which is of no force and effect whatsoever. Any purported Bill of Sale could only convey the interest possessed by Ms. Blaustein, which was a manager role, and thus said document could only purport to transfer said manager role.

In addition, we expressly disagree with Fn. 19, and expert opinion is likely required on this issue. Furthermore, Mr. Akouete, as previously discussed can freely communicate with whomever he chooses. *Id*. at p. 12. Moreover, once again, Mr. Akouete does not have to be the equity owner of the Debtor to prevail as highlighted several times. Akouete is the manager of debtor and

Blaustein is not a member and nor does she have to be. Yes, the Town brought up the question of authority to act, but the Town's position is erroneous and is not grounded in fact or law. *Id*. at p. 13. The Debtor's governing documents to not undermine Akouete and Edwards' authority to act as manager of the Debtor. Akouete and Edwards obtained the Agreement from Goulston & Storrs P.C. so the assertion that they could not obtain said document is not a fair characterization. Goulston released the Agreement because of Akouete authorizing its release as successor manager of the Debtor. Any alleged new operating agreement is not enforceable and is merely a red herring. The only operative agreement is the Operating Agreement. We also disagree with Fn. 20 as it does not demonstrate Akouete and Edwards knew Blaustein had been placed in Conservatorship, because a check of the Maricopa County, Arizona court records show no conservatorship proceeding. *Id*.

The Town's inadequate presentation of facts failed to acknowledge the Operating Agreement. Attorney Smerage's signature indicates a certification under Rule 11, and omission of a material fact (a complete discussion of the Operating Agreement) is essential to understanding the issues in this case.[6] Despite the highlighted flaws in the Town's argument, the Town persists

---

[6] Additionally, a failure to disclose material facts to the Court may constitute a fraud upon the Court. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1006 n.8 (S.D.N.Y. 1986) ("When an attorney misrepresents or omits material facts to the court, or acts on a client's perjury or distortion of evidence, his conduct may constitute a fraud on the court.") (*citing H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) (stating that attorney's knowledge and sponsorship of client's nondisclosure, misrepresentation and perjury would constitute a fraud on the court); *Kupferman v. Consolidated Rsch. & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (stating that attorney's failure to disclose the existence of a release which he knew was a full defense to plaintiff's claim would fit within the concept of fraud on the court); *Bulloch v. United States*, 95 F.R.D. 123 (D. Utah 1982) (finding fraud on the court where the government and its attorneys made false and deceptive representations, withheld information, and pressured witnesses not to testify)). A court may sanction an attorney for misrepresentation under its inherent authority. *See Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *14 n.13 (S.D.N.Y. June 20, 2019) ("The court's inherent authority is often cited as the 'primary basis' for sanctions

in its faulty assessment of the law and presentation of incorrect facts. The Debtor did not file a voluntary petition, it was an involuntary petition filed by two creditors (one of which is wholly independent from Akouete and Edwards). As shown in the Operating Agreement and corrective documents presented in the Land Court, Akouete and Edwards had requisite authority to act on behalf of the Debtor. Reviving an LLC to ensure the Debtor complies with its fiduciary duties is not "egregious". In Fact, Babcock & Brown could face serious liability for abandoning its clearly defined contractual obligations with the Debtor. *Id*. at 14.

The Town states that Akouete has "badgered" Town Attorneys. This remark has no place here and should be stricken as impertinent, irrelevant, and scandalous. Once again, the Town characterizes its remarks "on Christmas weekend no less" as it tries to appeal to emotion and improperly sway this Court. The Town cannot profess to know why this Involuntary Petition was filed. Once again, it uses labels and conclusions for dramatic effect. There has been no manipulation of the right lawfully conferred by the United States Code to file an involuntary proceeding under Chapter 7. *Id*. at p. 15. The Town has no right to deny a lawful manager of Debtor acting on behalf of the Debtor to vacate an unlawful tax foreclosure saddled with constitutional violations of due process.

The Town is incorrect on p. 16 of its Motion to Dismiss in that the Debtor was not one of the two petitioning creditors. *Id*. at 16. The Town continues its campaign to obfuscate the issues

---

where a party or its counsel has made misrepresentations to the court.") (*citing Jung v. Nechis*, 2009 WL 762835, at \*13 (S.D.N.Y. Mar. 23, 2009)).

Counsel for the Town may interpret their obligations too narrowly. "An attorney is not obligated merely to not outright lie to the Court; [he] owes the Court a duty of candor. Candor is not the state of simply not lying; candor is the quality of being open and honest in expression. An attorney cannot excuse [his] lack of candor by pointing [out] that [he] did not technically lie." *In re Reed*, 2016 WL 11780171, at \*116 (Bankr. E.D. Mo. Apr. 20, 2016).

and to try to confuse the Court. The Bill of Sale is not operative and is a complete nullity—it merits no further discussion as it has been corrected as a nullity in the Land Court record and is irrelevant. The Town is wrong in that the Land Court proceeding is stayed. *Id*. at 16. The Debtor did not object and assented to the filing of the involuntary petition so there is no conflict of interest. Moreover, since there are sufficient assets of the Estate to pay off all creditors—absent the Town's antagonism—this case could be resolved relatively expeditiously. Nathanson & Goldberg, P.C. did not file the Petition, it was filed by Stephen F. Gordon, Esq.

While the Town does not like the fact that the Land Court proceeding can be properly removed by the Trustee, it is a reality subject to the Bankruptcy Code. The Town will have sufficient opportunity to address any issues if the Bankruptcy Court decides it has standing and if it continues to exercise its discretion to entertain removal of the Land Court proceeding. Even if the Town were to sell to Lax Media (which we do not oppose), so long as this Court approves, the excess proceeds above the tax debt must be paid to the Debtor. However, the Debtor should not be charged for the Town's legal fees for the Ferris Litigation by KP Law—that is improper. The Town's intransigence and "cut off your nose to spite your face" attitude to punish Akouete is a double-edged sword.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, Nathanson & Goldberg, P.C., requests that this Court deny the Town's Motion to Dismiss and grant any other relief that is justice so requires.

**Dated**: February 7th, 2024

**NATHANSON & GOLDBERG, P.C.**,
By its attorneys,


_____
**/s/ Scott A. Schlager**
Scott A. Schlager, BBO #695421
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
Tel. (617) 909-4511
Fax. (617) 210-4824
Email: sas@natgolaw.com

### CERTIFICATE OF SERVICE

I, Scott A. Schlager, hereby certify that on February 7th, 2024, the foregoing Opposition/Objection to **TOWN OF WESTBOROUGH'S MOTION TO DISMISS BANKRUPTCY CASE [DOCKET NO. 69]** was served by operation of the Court's ECF System on all individuals designated to receive service by ECF:

- Jeffrey T Blake    jblake@k-plaw.com
- Paul W. Carey    pcarey@mirickoconnell.com, bankrupt@mirickoconnell.com
- Jonathan R. Goldsmith    bankrdocs1@gkalawfirm.com, bankrdocs@gkalawfirm.com;kstelmashova@gkalawfirm.com
- Jonathan R. Goldsmith    trusteedocs1@gkalawfirm.com, trusteedocs@gkalawfirm.com;kstelmashova@gkalawfirm.com;MA43@ecfcbis.com;mwolohan@gkalawfirm.com
- Stephen F. Gordon    sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- Richard King    USTPRegion01.WO.ECF@USDOJ.GOV
- Brian W. Riley    briley@k-plaw.com
- Scott Adam Schlager    sas@natgolaw.com
- Roger L. Smerage    rsmerage@k-plaw.com


and by email upon:

Lolonyon Akouete (info@smartinvestorsllc.com)

**/s/ Scott A. Schlager**

_____
Scott A. Schlager  (BBO #695421)
