# WESTBOROUGH SPE LLC

# LIMITED LIABILITY COMPANY AGREEMENT

October 22, 1997

GS2- 136229-1

# TABLE OF CONTENTS

| | |
|---|---|
| RECITALS | 1 |
| FORMATION, MANAGEMENT, PURPOSES, NAME | 1 |
| CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS; AND LIABILITY OF MEMBERS | 6 |
| RETURN OF CONTRIBUTIONS | 7 |
| SHARE OF DISTRIBUTIONS, PROFITS, LOSSES AND OTHER ITEMS | 7 |
| SUBSTITUTION AND ASSIGNMENT OF A MEMBER'S INTEREST | 9 |
| BOOKS AND RECORDS; BANK ACCOUNTS | 9 |
| OTHER BUSINESS | 10 |
| DISSOLUTION AND CONTINUATION OF THE COMPANY | 10 |
| MISCELLANEOUS | 11 |

# WESTBOROUGH SPE LLC

## LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Agreement (the "Agreement"), dated as of the 22nd day of October, 1997, is by and between MIGNONETTE INVESTMENTS LIMITED, a British Virgin Islands entity organized under the BVI International Business Companies Act (the "Member"), and BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC., a Delaware corporation, as the Manager.

## R E C I T A L S:

A.  The Member formed a limited liability company (the "Company") pursuant to and in accordance with the Delaware Limited Liability Company Act (the "LLC Act") by the filing on the date hereof of a Certificate of Formation with the Secretary of State of the State of Delaware for the purposes described therein and herein.

B.  The Member and Babcock & Brown Administrative Services, Inc. desire to enter into this Agreement to provide for, among other things, the management of the business and affairs of the Company, the distribution of monies and allocation of profits and losses as to the Member, and the respective rights, interests, obligations and duties of the Member and of the Manager to each other and to the Company and its assets, business, liabilities and obligations.

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, the parties hereto hereby agree as follows:

## OPERATING AGREEMENT

1.  <u>Formation, Management, Purposes, Name</u>

(a)  The rights and liabilities of the parties hereto shall be determined pursuant to the LLC Act and this Agreement. To the extent that the rights or obligations of the parties are different by reason of any provision of this Agreement than they would be in the absence of any such provision, or even if this Agreement is inconsistent with the LLC Act, this Agreement shall control, except to the extent the LLC Act provides that the applicable provisions thereof as to any

such matter may not be modified by a limited liability company's members, or hereof shall be applicable to the Agreement, in which event the provisions hereof shall be applicable to the Agreement as required by the Act.

The name of the Member and its address are set forth on Schedule A attached hereto. If any additional Members and/or substitute Members are hereinafter added as Members in the Company their names and respective addresses shall be added by amendment of said Schedule A.

The registered office and the registered agent of the Company in the State of Delaware shall be as set forth in the Certificate, as such office and agent may be changed, and as the Certificate may, as a consequence thereof, be amended from time to time by the Manager.

(b) The name of the limited liability company formed hereby is Westborough SPE LLC. The business of the Company may be conducted under that name or, upon compliance with applicable laws, any other name that the Manager deems appropriate or advisable. The Manager shall file, or shall cause to be filed, the Certificate of Formation and any fictitious name certificates, foreign state registrations and similar filings, and any amendments to any thereof, that the Manager considers necessary, appropriate or advisable, including, without limitation, an Application for Registration as a foreign limited liability company in the Commonwealth of Massachusetts.

(c) The Company is formed for the sole purpose of, and the nature of the sole business to be conducted by the Company is, to acquire, own, construct, lease, operate, maintain and, consistent with its investment purposes, to sell, exchange, convey and otherwise transfer, and otherwise to deal with, in any manner deemed desirable, the real property generally described in Schedule C attached hereto, and any other real property and any personal property, tangible or intangible, appurtenant to any thereof or hereafter acquired as necessary or convenient in connection with such real property, and to own interests in and be a member and/or manager, partner, general or limited, venturer, stockholder or other holder of interests in any entity holding direct or indirect interests in any such assets or engaged in any such activity, and in connection with all of the above, the Company may engage in any lawful act or activity for which limited liability companies may be formed under the LLC Act and in any and all activities necessary, advisable, convenient or incidental thereto. The purposes of the Company may not be broadened without the unanimous consent of all the Members and the Manager, nor may it be broadened if such would violate or cause a default under any agreement to which the Company is a party or by which it is bound.

-2-

GS2- 136229-1

In furtherance of the conduct of the purposes described above, the Company shall have the power and authority to do any and all lawful activities, business or actions which an Company may take under the LLC Act and, except as limited by the LLC Act, any activities, business or actions which a business corporation or a limited partnership would be entitled to engage in or take pursuant to the applicable laws of the State of Delaware, or under other applicable law, so long as such powers are necessary or convenient to the conduct, promotion or attainment of the business, trade, purposes or activities of the Company.

(d) Babcock & Brown Administrative Services Inc. is hereby designated as the Manager of the Company. One or more Managers may be designated and the number of Managers may be determined at any time by "Consent of the Members"; provided, however, that any such Consent providing for the Company to have more than one Manager shall only be made by amendment of this Agreement and shall also indicate those circumstances in which each Manager will be authorized to act alone and those circumstances in which more than one or all of the Managers will be required to act on behalf of the Company. A Manager may be removed by Consent of the Members at any time and for any reason or for no reason.

(e) Except as otherwise specifically provided in this Section 1 and in Section 8 of this Agreement: (i) the overall management and control of the business and affairs of the Company, and the sole and exclusive authority to make all decisions and take all actions as to the business and affairs of the Company, shall be vested in the Manager, who shall have the sole power and authority to make any decision and to take any action and to exercise any power on behalf of the Company which the Company has the right, power and authority to take or otherwise engage in; and (ii) the Members shall have no voting rights, consent or approval over or as to any such matters.

Notwithstanding the above, the Manager may not file, on behalf of the Company, a petition in bankruptcy or for reorganization or insolvency or any other similar matter without the unanimous consent of the Members.

The Manager shall devote, and shall cause its members, partners, officers, directors and employees, if any, to devote such time to the affairs of the Company as such Manager, in its sole discretion, determines is necessary for performance by the Manager of its duties, provided no such persons shall be required to devote full time to such affairs. The Manager shall have the right and power to manage, operate, and control the Company, and to do all things and take

GS2- 136229-1

"Consent of the Members" shall mean action of the holders of more than two-thirds of the Percentage Interests of all the Members, as such Percentage Interests are initially set forth on Schedule A hereto and as such Percentage Interests may be changed pursuant to the other provisions of this Agreement.

No Manager may resign or retire from, abandon or otherwise terminate its status as a Manager without the Consent of the Members.

(f) No Member, acting in its capacity as a Member (but nothing herein limiting any Member's capacity as a Manager if a Member is also a Manager), shall have any authority, power or privilege to act on behalf of or to bind the Company.

(g) The signature of the Manager or, if more than one Manager any time, of any Manager on any agreement, contract, instrument or other document shall be sufficient to bind the Company and any other Manager in respect thereof, shall be deemed the action of the Company and of any other Manager, and shall conclusively evidence the authority of such executing Manager and the Company with respect thereto, and no third party need look to any other evidence or require joinder or consent of any other party to bind the Company or to evidence such Manager's authority.

Without in any way amending, modifying, expanding or limiting the foregoing provisions of this paragraph (g), an individual or individuals may be authorized in writing by the Manager to execute any documents to be filed with the Secretary of State of the Commonwealth of Massachusetts and/or authorized to execute, acknowledge, deliver and record any recordable instruments on behalf of the Company purporting to effect an interest in real property, whether to be recorded with the registry of deeds or district office of the Land Court, and in the event of any such authorization the Application for Registration for the Company in the Commonwealth of Massachusetts shall include or, as appropriate, be amended to set forth such authorization.

Any Manager may, from time to time, by an instrument in writing, delegate all or any of its powers or duties hereunder to another Manager, if any, or to an officer, manager, member, or partner of any other Manager or to any Member or any other person or entity. Such writing may fully authorize such other Manager or such other person or entity, acting alone or with others, all as

may be provided in such written delegation, without requirement of any other act, by the delegating Manager, to take any action of any type and to do anything and everything which the delegating Manager may be authorized to take or do hereunder (including, without limitation, executing checks, drafts, promissory notes, mortgages, deeds of trust, leases, deeds, easements, and contracts of any nature whatsoever) and may delegate such authority generally or as to any specified matter or specific terms, all as may be provided in writing by any such Manager. Any documents or other instruments executed by any person or entity to whom any such delegation has been made shall be binding upon and enforceable against the Company, and shall be the valid act and deed of the Company, if executed by such delegee, and any third party shall be fully protected in relying upon the authority of any such delegee pursuant to a written delegation by the (or a) Manager.

(h)     The Manager shall be entitled to reimbursement from the Company for all expenses incurred by such Manager in managing and conducting the business and affairs of the Company. The Manager shall determine which expenses, if any, are allocable to the Company in a manner which is fair and reasonable to the Manager(s) and the Company, and if such allocation is made in good faith it shall be conclusive in the absence of manifest error.

(i)     Any Manager, or the sole Manager if there is only one, may cause the Company to enter into one or more loans, agreements, leases, contracts or other arrangements for the furnishing to or by the Company of money, goods, services or space with any Member, Manager or an affiliate thereof, and may pay compensation thereunder for such goods, services or space, provided in each case the terms of any such arrangements are at least as advantageous to the Company as those which would be available to the Company under similar arrangements between unrelated parties, and if the determination of such terms is made in good faith it shall be conclusive in the absence of manifest error.

(j)     In the performance of its duties and obligations hereunder, and in the exercise of its powers hereunder, the Manager shall act in good faith. The Company shall indemnify, defend and hold harmless the Manager, each Member, any person appointed to act for or on behalf of the Company pursuant to Section 1(g), and each such person's officers, directors, partners, members, shareholders, employees, and agents, and the employees, officers and agents of the Company (all indemnified persons being referred to as "Indemnified Persons" for purposes of this Section 1(j)), from any liability, loss, or damage incurred by an Indemnified Person by reason of any act performed or omitted to be performed by such Indemnified Person in connection with the business of the Company, and

from liabilities or obligations of the Company imposed on such person by virtue of such person's position or relationship with the Company, including reasonable attorneys' fees and costs and any amounts expended in the settlement of any such claims of liability, loss, or damage; <u>provided</u>, <u>however</u>, that, if the liability, loss, damage, or claim arises out of any action or inaction of an Indemnified Person, indemnification under this Section 1(j) shall be available only if (i) the Indemnified Person, at the time of such action or inaction, determined, in good faith, that its course of conduct was consistent with this Agreement or otherwise in the best interests of the Company, and (ii) the action or inaction did not constitute fraud, gross negligence or willful misconduct by the Indemnified Person. Any indemnification under this Section 1(j) shall be recoverable only from the assets of the Company and not from any assets of any of the Members.

2. <u>Capital Contributions; Capital Accounts; and Liability of Members</u>.

(a) The Member has contributed in cash to the capital of the Company the amount set forth opposite such Member's name on Schedule B hereto.

Additional capital contributions may be made (but are not required to be made) by the Member, or any of them if more than one, if necessary or desirable to enable the Company to meet its obligations.

Any third party may rely on a certificate or other statement from the Manager as to Member or Members of the Company and the respective Percentage Interests of the Members at any time. All capital contributions by the Member(s) shall be reflected on the books and records of the Company.

Upon approval of the Manager, any Member may make a loan or loans to the Company on such terms as the Manager may determine. No such loan shall be considered a contribution to the capital of the Company.

(b) No Member shall be obligated to contribute any additional capital or make any loans to the Company. No interest or preferred return shall accrue on any contributions to the capital of the Company. No Member shall have any rights or priority over any other Members as to contributions or as to distributions or compensation by way of income, except as may otherwise be specifically provided for elsewhere in this Agreement.

(c) If there is more than one Member at any time and the Company has not elected to be taxed as a corporation under the Internal Revenue Code, a separate capital account ("Capital Account") shall be established for each Member,

and shall be maintained in accordance with applicable regulations under the Internal Revenue Code, as amended. In the manner determined by the Manager consistent with such regulations, there shall be credited to each Member's Capital Account the amount of any contribution of capital made by such Member to the Company, and such Member's share of the net profits, and items thereof, of the Company, and there shall be charged against each Member's Capital Account the amount of all distributions to such Members, and such Member's share of the net losses, and items thereof, of the Company.

(d) The liability of any Member for the losses, debts and obligations of the Company shall be limited to its capital contributions then made but not then previously repaid to or withdrawn by them in accordance with the terms of this Agreement. No Member, in its capacity as a Member or as Manager, shall have any liability to restore any negative balance in its Capital Account. In no event shall any Member, in its capacity as a Member, nor any Manager, whether or not also a Member, be personally liable for any judgments, debts, liabilities or obligations of the Company.

(e) The Member(s), unanimously if more than one, shall have the right at any time to require the Manager to elect to treat the Company as a corporation under the Internal Revenue Code.

3. <u>Return of Contributions</u>. No Member shall have the right to withdraw or to be repaid any capital contributed by it or to receive any property or other payment in respect of its interest in the Company, including, without limitation, as a result of the withdrawal or resignation of such Member from the Company, except as specifically provided in this Agreement.

4. <u>Share of Distributions, Profits, Losses and Other Items</u>.

(a) All cash available for distribution shall be distributed to the Member, or among the Members if there is more than one Member, first to return any unrepaid capital contributions, pro-rata among the Members with such amounts in proportion to each respective Member's unrepaid capital contribution, and then among the Members according to their respective Percentage Interests. Distributions to the Members shall be made at such times and in such amounts as shall be reasonably determined by the Manager. Except as provided in the next paragraph, all distributions to Members shall be made in cash.

If the Manager elects, with the Consent of the Members, to distribute any assets of the Company in kind, such assets shall be distributed on the basis of

their fair market value as determined by the Manager, and if the determination of such fair market value is manifestly unreasonable, it shall be conclusive in the absence of manifest error.

(b) If and so long as the Company is taxed as a partnership, allocations of income, profit, gain and loss, shall be made as follows: (i) items of net income and gain shall be allocated among the Members in the manner necessary to increase each Member's Capital Account to an amount equal to the amount of cash such Member would be entitled to receive pursuant to Section 4(a) if an amount of cash equal to the net positive Capital Account balances (after such allocation) were distributed to the Members in the order and priority specified in Section 4(a), and (ii) items of net loss and deduction shall be allocated among the Members in the manner necessary to reduce each Member's Capital Account to an amount equal to the amount of cash such Member would be entitled to receive pursuant to Section 4(a) if an amount of cash equal to the net positive Capital Account balances (after such allocation) were distributed to the Members in the order and priority specified in Section 4(a).

Notwithstanding the foregoing, all allocations of items that cannot have economic effect (except "partner nonrecourse deductions") shall be allocated to the Members in accordance with the Members' interests in the Company, which, unless otherwise required by Code Section 704(b) and the Regulations promulgated thereunder, shall be in proportion to the Percentage Interests of the Members, and all "partner nonrecourse deductions" and "partner minimum gain" shall be allocated in accordance with the provisions of Treasury Regulations Section 1.704-2.

All items of depreciation, gain, loss, deduction or credit shall be determined in accordance with the Code and, except to the extent otherwise required by the Code, shall be allocated to and among the Members in the same percentages in which the Members share in net profits and net losses.

(c) Except as otherwise specifically provided herein, all tax elections shall be made by the Manager as it shall deem appropriate.

5. <u>Substitution and Assignment of a Member's Interest</u>. A Member may sell, assign, give, pledge, hypothecate, encumber or otherwise transfer (including, without limitation, any assignment or transfer by operation of law or by order of court) all or any part of such Member's interest in the Company, without the consent or approval of any other Member or of the Manager.

6. Books and Records; Bank Accounts.

    (a) The Manager shall keep or cause to be kept complete and accurate books and records of the Company using such method as the Manager may elect. Such books and records shall be maintained and be available, in addition to any documents and information required to be furnished to the Members under the LLC Act, at an office of the Company for examination and copying by any Member, or its duly authorized representative, at its reasonable request and at its expense during ordinary business hours. Any Member may, at any time, at its own expense, cause an audit or review of the Company books to be made by a certified public accountant of its own selection.

    A current list of the full name and last known address of each Member and of the Manager, a copy of this Agreement, any amendments thereto and the Certificate of Formation, executed copies of all powers of attorney, if any, pursuant to which this Agreement, any amendment, or the Certificate of Formation has been executed, copies of the Company's financial statements and federal, state and local income tax returns and reports, if any, for the five most recent years, shall be maintained at the registered office of the Company required by the LLC Act.

    If the Company is taxed as a partnership, then on or before the due date (including extensions) of the federal income tax return of the Company for each fiscal year of the Company, the Manager shall cause each Member to be furnished with copies of the Company's federal income tax return and Schedule K-1's for each respective Member for the fiscal year then ended.

    If the Company is taxed as a corporation, the Manager shall timely (including extensions) file all requisite federal, state and local tax returns.

    (b) Bank accounts and/or other accounts of the Company shall be maintained in such banking and/or other financial institution(s) as shall be selected by the Manager, and withdrawals shall be made and other activity conducted on such signature or signatures as shall be designated by the Manager.

    (c) The fiscal year of the Company shall end on December 31 of each year.

    7. Other Business. The Members, the Manager and any affiliates of any of them may engage in and possess interests in other business ventures and

investment opportunities of every kind and description, independently or with others, including serving as managers and general partners of other limited liability companies and partnerships with purposes similar to those of, and/or in competition with, the Company. Neither the Company nor any other Member or Manager shall have any rights in or to such ventures or opportunities or the income or profits therefrom.

8. <u>Dissolution and Continuation of the Company</u>.

(a)  The Company shall be dissolved and its affairs wound up upon:

(i) The election, made in writing by the Manager, with the Consent of the Members, to dissolve the Company at any time which is 90 days or more after notice of such election to all Members;

(ii) The sale, disposition or abandonment of all or substantially all of the assets of the Company; or

(iii) The entry of a decree of judicial dissolution under the LLC Act.

The Company shall have no specific date of dissolution.

(b)  Upon the dissolution of the Company for any reason, the Manager shall commence to wind up the affairs of the Company and to liquidate its assets. After the sale or other disposition of all of the assets of the Company to be disposed of in the liquidation, and gains and losses thereon shall be calculated. If the Company is taxed as a partnership, such gains and losses shall be allocated in the manner described in Section 4 hereof, and applied to the Capital Accounts of each Member to whom the allocations are made pursuant to the other provisions hereof.

(c)  Following the payment of all debts and liabilities of the Company to persons other than the Members and the payment of all expenses of liquidation, and subject to the reserves which the Manager, or other liquidating party, may determine is reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company, the proceeds of the liquidation and any other funds shall be applied to the payment of any debts and liabilities to the Members, if any, and then shall be distributed to the Member(s) (i) in accordance with Section 4(a)

if the Company is taxed as a corporation, and (ii) in accordance with each Member's respective Capital Account(s) as of the date of such distribution, after giving effect to all contributions, distributions, and allocations for all periods, if the Company is taxed as a partnership.

(d) The assets of the Company shall be a Member's source of all distributions with respect to the Company, the return of its capital contributions thereto and its share of profits and losses thereof, and each such Member shall have no recourse therefor (upon dissolution or otherwise) against any other Members.

(e) Upon the completion of the liquidation of the Company and the distribution of all Company's funds, the Company shall terminate, and the Manager shall, or if none, the Members may authorize one or more Members to, execute and record such articles of dissolution for the Company and any and all other documents necessary to effectuate the dissolution and termination of the Company.

9. <u>Miscellaneous</u>.

(a) Subject to the restrictions on transfers set forth herein, the terms of this Agreement shall be binding upon and shall inure to the benefit of the Members and the Manager, their respective permitted successors, successors-in-title, heirs and assigns; and each and every successor-in-interest to any Member, whether such successor acquires such interest by way of inheritance, gift, purchase, foreclosure or any other method, and the Members shall hold such interest subject to all of the terms and provisions of this Agreement. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of any Member (including any Member acting in his capacity as a creditor of the Company).

(b) No change, modification or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and duly executed by all of the Members and, if (but only if) such affects the rights or obligations of the Manager, executed by the Manager.

(c) This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted and enforced in accordance with the laws of the State of Delaware, notwithstanding any choice of law rules to the contrary.

GS2- 136229-1

(d)     This Agreement may be executed in any number of counterparts, all of which together shall for all purposes constitute one Agreement, binding on all the Members and the Manager notwithstanding that all Members and the Manager have not signed the same counterpart.

(e)     Any and all notices under this Agreement shall be effective (i) on the fourth business day after being sent by registered or certified mail, return receipt requested, postage prepaid, or (ii) on the second business day after being sent by express mail, telecopy, or commercial expedited delivery service providing a receipt for delivery.  All such notices in order to be effective shall be addressed, if to the Company at its registered office under the LLC Act, if to a Member at the last address of record on the Company books, and copies of such notices shall also be sent to the last address for the recipient which is known to the sender, if different from the address so specified.

(f)     As used herein, the singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, unless the context otherwise requires.  The word "person shall mean a natural person, a trust of any nature, or any incorporated or unincorporated entity or association of any type or form.

(g)     If any provisions of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it si held invalid, shall not be affected hereby.

(h)     Words such as "herein", "hereinafter", "hereof", "hereto", "hereby", and "hereunder", when used in reference to the Agreement, refer to this Agreement as a whole, unless the context otherwise requires.

(i)     This Agreement, including the Certificate of Formation, which is hereby incorporated herein, embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

-12-

GS2- 136229-1

IN WITNESS WHEREOF, the Members have executed this Limited Liability Company Agreement of Westborough SPE LLC as of the date first above written.

MEMBER:

MIGNONETTE INVESTMENTS LIMITED

By: _____
      Authorized Signatory

MANAGER:

BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC.

By: _*[signature]*_____
Its _*President*_____

-13-

GS2- 136229-1

IN WITNESS WHEREOF, the Members have executed this Limited Liability Company Agreement of Westborough SPE LLC as of the date first above written.

MEMBER:

MIGNONETTE INVESTMENTS LIMITED

By: _____
      Authorized Signatory

                    For F.M.C. LIMITED
                    CORPORATE DIRECTORS

MANAGER:

BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC.

By: _____
Its _____

-13-

SCHEDULE A
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

<u>MEMBER</u>

| <u>NAME AND ADDRESSES OF MEMBER</u> | <u>PERCENTAGE INTEREST</u> |
|---|---|
| Mignonette Investments Limited | 100% |

SCHEDULE B
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

MEMBER

| MEMBER | INITIAL CASH CAPITAL CONTRIBUTION |
|---|---|
| Mignonette Investments Limited | $10,000 |

-B-1-

GS2- 1362291

SCHEDULE C
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

PROPERTY DESCRIPTION

GS2- 1362291