COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    LAND COURT DEPARTMENT
                                               19 TL 000768

| | |
|---|---|
| TOWN OF WESTBOROUGH,<br>      Plaintiff,<br><br>v.<br><br>WESTBOROUGH SPE, LLC,<br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT WESTBOROUGH SPE, LLC's NOTICE OF SUPPLEMENTATION

**NOW, COMES,** Westborough SPE, LLC ("Defendant") and hereby supplements its

response to its Motion to Vacate and to correct the record.

1. **The Manager of Defendant Possesses Requisite Authority to Transfer Management of the LLC to "Any Other Person or Entity" By Written Instrument.**

Attached herewith as **Exhibit A** is a copy of the Defendant's Limited Liability Company

Operating Agreement ("Operating Agreement"). Section 1(g) on p.4 of the Operating Agreement

states:

"Any Manager may, from time to time, **by an instrument in writing, delegate all or any of its powers or duties hereunder to** another Manager, if any, or to an officer, manager, member, or partner of any other Manager or to any Member or **any other person or entity. Such writing may fully authorize** such other Manager or **such other person or entity, acting alone or with others, all as may be provided in such written delegation, without requirement of any other act or signature of the delegating Manager, to take any action of any type and to do anything and everything which the delegating Manager may be authorized to take or do hereunder** (including, without limitation, executing checks, drafts, promissory notes, mortgages, deeds of trust, leases, deeds, easements, and contracts of any nature whatsoever) and may delegate such authority generally or as to any specified matter or specific terms, all as may be provided in writing by any such Manager. Any documents or other instruments executed by any person or entity to whom any such delegation has been made shall be binding upon and enforceable against the Company, and shall be the valid act and deed of the Company, if executed by such delegee, and **any third party shall be fully protected in relying upon the authority of any such delegee pursuant to a written delegation by the ( or a) Manager.**" (Emphasis added).

1

Babcock & Brown Administrative Services, Inc., a Delaware corporation ("Babcock & Brown Administrative Services"), was the previous listed manager of the Defendant. F. Jan Blaustein Scholes was a listed real property signatory of Defendant and is the President of Babcock & Brown Administrative Services. Babcock and Brown Parallel Member LLC, a Delaware limited liability company became successor-in-interest to Babcock & Brown Administrative Services. F. Jan Blaustein Scholes is the Manager of Babcock and Brown Parallel Member LLC.

### 2. Lolonyon Akouete and Denise Edwards Became Manager of Defendant by Transfer of Management from F. Jan Blaustein Scholes.

Attached as **Exhibit B** hereto is a copy of a Durable Power of Attorney dated June 26, 2023 and signed by F. Jan Blaustein Scholes as Manager, Duly Authorized, of Babcock and Brown Parallel Member LLC authorizing Mr. Lolonyon Akouete and Ms. Denise Edwards to act as Manager of the successor-in-interest to the original manager. Expressly listed in the Durable Power Attorney, Mr. Akouete and Ms. Edwards have the right to: "sell, buy, lease, mortgage, assign, rent or dispose of any real property on behalf of the Company", "the right to execute, acknowledge, and deliver any and all documents, contracts, agreements, checks, drafts, promissory notes, mortgages, deeds of trust, leases, deeds, easements, and other instruments of any nature whatsoever, as may be necessary or desirable, and to perform all acts and do everything that the Grantor could do", the "right to initiate, defend[,] commence [,] or settle legal actions on the Company's behalf", the right to "retain any accountant, attorney, or other adviser deemed necessary to protect the Company's interests relative to any foregoing unlimited power", and "the right to bind the Grantor by executing [any] instruments on its behalf, and any such executed documents or instruments shall be binding upon and enforceable against the Grantor." This Durable Power of Attorney is governed under the laws of the State of Delaware and the powers are expressly delineated in Delaware Code, Title 12, Chapter 49A, Section 49A-114 and Sections

49A-201 through 49A-217. Ms. Blaustein signed the document in the presence of Djigbodi Lokossou and in the presence of an Arizona Notary Public for Maricopa County, Commission #642362, Billie J Wahl. Because Mr. Akouete and Ms. Edwards possess this Durable Power of Attorney for Babcock and Brown Parallel Member LLC, the successor-in-interest to Babcock & Brown Administrative Services, they have the power to ratify and confirm any prior LLC company actions, including the appointment of Lolonyon Akouete and Denise Edwards as successor managers to Babcock & Brown Administrative Services.

### 3. F. Jan Blaustein Scholes on June 26, 2023 Executed a Written Consent of the Manager of Babcock And Brown Parallel Member LLC In Lieu of a Meeting.

In addition, Ms. Blaustein executed a Written Consent of the Manager of Babcock and Brown Parallel Member LLC in Lieu of a Meeting on June 26, 2023 ("Written Consent"). In this Written Consent, Ms. Blaustein authorized the execution of the Durable Power of Attorney and several Amendments to the Bill of Sale executed November 21, 2022, to include a name change of the title from Bill of Sale to Transfer of Manager Role, a deletion of any mention of transfer of any membership interest whatsoever, and clarification that the document executed on November 21, 2022 was merely a transfer of manager role for Westborough SPE LLC. The Written Consent speaks for itself.

### 4. As of June 27, 2023 No Guardianship/Receivership Proceeding Has Been Filed In Maricopa County, Arizona Where F. Jan Blaustein Scholes Currently Resides.

Ms. Blaustein has not lived in Hawaii in at least a few years and currently resides in Maricopa County, Arizona. If an alleged conservator (i.e. Peter Blaustein) did not transfer or register a Hawaii guardianship/conservatorship to Arizona, it is Defendant's position that the guardianship/conservatorship would not be legally recognized in Arizona, and the conservator would not be able to exercise the duties and powers of the conservatorship in the state.

The Full Faith and Credit Clause of the United States Constitution does not apply to conservatorship and guardianship orders. The Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act (UAGPPJA, U.S.C.A. Title 28 Section 1738A) outlines the requirements for transferring or registering a guardianship or conservatorship from one state to another. Specifically, Section 1738A(h) states, "A foreign guardianship or protective order [from outside the state] is not entitled to full faith and credit in this state until it is registered in this state."

Arizona has adopted the UNIFORM ADULT GUARDIANSHIP AND PROTECTIVE PROCEEDINGS JURISDICTION ACT. However, to the best of Defendant's knowledge, after reasonable inquiry, no foreign registration has occurred in Arizona under A.R.S. § 14-12401. Additionally, we believe that the standards and qualifying conditions mandating a conservatorship in Arizona differ significantly from those employed in Hawaii, and that Jan would not qualify for conservatorship in Arizona. Jan has made a statement signed under oath and in front of a Notary Public and Witness in the Durable Power of Attorney that she is of sound mind. In addition, upon information and belief, Peter Blaustein is attempting to unduly influence his mother Ms. Blaustein, and should be ordered to immediately stop trying to unduly influence Ms. Blaustein.

The main difference between Arizona and Hawaii's laws regarding competency is that Arizona requires a finding of incompetency to be made before a guardian/conservator may be appointed, while Hawaii only requires a finding of disability or incapacity. Additionally, Arizona requires evidence by experts to make the finding while Hawaii must consider the individual's wishes and preferences in addition to evidence when making the decision.

Mr. Blaustein's decision to improperly sign a waiver of notice and assent to the entry of judgment is not in Jan's best interest or the best interests of Defendant. Moreover, Ms. Blaustein does not agree with it and never authorized that action to be taken and that is why Defendant moved to strike such document. Mr. Blaustein's improper decisions could result in significant financial losses for Ms. Blaustein and potentially subject her to liability for a breach of fiduciary duty, potentially leading to a lawsuit that Ms. Blaustein wishes to avoid. Ms. Blaustein is willing to provide an affidavit or testify in court to support her position, and it should be noted that Mr. Blaustein's improper actions are ostensibly in violation of Arizona law.

In any event, there being no domestication/transfer of a Hawaiian guardianship/conservatorship order in Arizona as of June 26, 2023, is dispositive evidence that Ms. Blaustein was not under a guardianship/conservatorship in Maricopa County, Arizona at the time the Durable Power of Attorney and Written Consent was executed.

**DEFENDANT WESTBOROUGH SPE, LLC,**

**By its attorneys,**

*/s/ Scott A. Schlager*

Scott A. Schlager, BBO# 695421
Alvin S. Nathanson, BBO# 367480
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor, Boston, MA 02109
Tel. (617) 909-4511 | Fax. (617) 210-4824 | sas@natgolaw.com | asn@natgolaw.com

### CERTIFICATE OF SERVICE

I, Scott A. Schlager, Esq., hereby certify that a copy of the above-captioned Notice of Supplementation was filed electronically through the Massachusetts E-File system and a copy was transmitted electronically to counsel of record in the above-captioned matter on June 30, 2023.

**/s/ Scott A. Schlager, BBO# 695421**



PLAINTIFF'S EXHIBIT

*A*

# WESTBOROUGH SPE LLC

## LIMITED LIABILITY COMPANY AGREEMENT

October 22, 1997

GS2- 136229-1

# WESTBOROUGH SPE LLC

## LIMITED LIABILITY COMPANY AGREEMENT

### TABLE OF CONTENTS

| | |
|---|---|
| RECITALS | 1 |
| FORMATION, MANAGEMENT, PURPOSES, NAME | 1 |
| CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS; AND LIABILITY OF MEMBERS | 6 |
| RETURN OF CONTRIBUTIONS | 7 |
| SHARE OF DISTRIBUTIONS, PROFITS, LOSSES AND OTHER ITEMS | 7 |
| SUBSTITUTION AND ASSIGNMENT OF A MEMBER'S INTEREST | 9 |
| BOOKS AND RECORDS; BANK ACCOUNTS | 9 |
| OTHER BUSINESS | 10 |
| DISSOLUTION AND CONTINUATION OF THE COMPANY | 10 |
| MISCELLANEOUS | 11 |

WESTBOROUGH SPE LLC

LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Agreement (the "Agreement"), dated as of the 22nd day of October, 1997, is by and between MIGNONETTE INVESTMENTS LIMITED, a British Virgin Islands entity organized under the BVI International Business Companies Act (the "Member"), and BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC., a Delaware corporation, as the Manager.

## RECITALS:

A.    The Member formed a limited liability company (the "Company") pursuant to and in accordance with the Delaware Limited Liability Company Act (the "LLC Act") by the filing on the date hereof of a Certificate of Formation with the Secretary of State of the State of Delaware for the purposes described therein and herein.

B.    The Member and Babcock & Brown Administrative Services, Inc. desire to enter into this Agreement to provide for, among other things, the management of the business and affairs of the Company, the distribution of monies and allocation of profits and losses as to the Member, and the respective rights, interests, obligations and duties of the Member and of the Manager to each other and to the Company and its assets, business, liabilities and obligations.

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, the parties hereto hereby agree as follows:

OPERATING AGREEMENT

1.    Formation, Management, Purposes, Name

(a)    The rights and liabilities of the parties hereto shall be determined pursuant to the LLC Act and this Agreement. To the extent that the rights or obligations of the parties are different by reason of any provision of this Agreement than they would be in the absence of any such provision, or even if this Agreement is inconsistent with the LLC Act, this Agreement shall control, except to the extent the LLC Act provides that the applicable provisions thereof as to any

GS2- 136229-1

such matter may not be modified by a limited liability company's members, or
may not be modified as provided in this Agreement, in which event the provisions
hereof shall be applicable to the extent, if any, allowed by the LLC Act.

The name of the Member and its address are set forth on Schedule A
attached hereto. If any additional Members and/or substitute Members are
hereinafter added as Members in the Company their names and respective
addresses shall be added by amendment of said Schedule A.

The registered office and the registered agent of the Company in the State
of Delaware shall be as set forth in the Certificate, as such office and agent may be
changed, and as the Certificate may, as a consequence thereof, be amended from
time to time by the Manager.

(b)     The name of the limited liability company formed hereby is
Westborough SPE LLC. The business of the Company may be conducted under
that name or, upon compliance with applicable laws, any other name that the
Manager deems appropriate or advisable. The Manager shall file, or shall cause to
be filed, the Certificate of Formation and any fictitious name certificates, foreign
state registrations and similar filings, and any amendments to any thereof, that the
Manager considers necessary, appropriate or advisable, including, without
limitation, an Application for Registration as a foreign limited liability company in
the Commonwealth of Massachusetts.

(c)     The Company is formed for the sole purpose of, and the nature of the
sole business to be conducted by the Company is, to acquire, own, construct, lease,
operate, maintain and, consistent with its investment purposes, to sell, exchange,
convey and otherwise transfer, and otherwise to deal with, in any manner deemed
desirable, the real property generally described in Schedule C attached hereto, and
any other real property and any personal property, tangible or intangible,
appurtenant to any thereof or hereafter acquired as necessary or convenient in
connection with such real property, and to own interests in and be a member
and/or manager, partner, general or limited, venturer, stockholder or other holder
of interests in any entity holding direct or indirect interests in any such assets or
engaged in any such activity, and in connection with all of the above, the Company
may engage in any lawful act or activity for which limited liability companies may
be formed under the LLC Act and in any and all activities necessary, advisable,
convenient or incidental thereto. The purposes of the Company may not be
broadened without the unanimous consent of all the Members and the Manager,
nor may it be broadened if such would violate or cause a default under any
agreement to which the Company is a party or by which it is bound.

GS2- 138229-1

In furtherance of the conduct of the purposes described above, the Company shall have the power and authority to do any and all lawful activities, business or actions which an Company may take under the LLC Act and, except as limited by the LLC Act, any activities, business or actions which a business corporation or a limited partnership would be entitled to engage in or take pursuant to the applicable laws of the State of Delaware, or under other applicable law, so long as such powers are necessary or convenient to the conduct, promotion or attainment of the business, trade, purposes or activities of the Company.

(d)   Babcock & Brown Administrative Services Inc. is hereby designated as the Manager of the Company. One or more Managers may be designated and the number of Managers may be determined at any time by "Consent of the Members"; provided, however, that any such Consent providing for the Company to have more than one Manager shall only be made by amendment of this Agreement and shall also indicate those circumstances in which each Manager will be authorized to act alone and those circumstances in which more than one or all of the Managers will be required to act on behalf of the Company. A Manager may be removed by Consent of the Members at any time and for any reason or for no reason.

(e)   Except as otherwise specifically provided in this Section 1 and in Section 8 of this Agreement: (i) the overall management and control of the business and affairs of the Company, and the sole and exclusive authority to make all decisions and take all actions as to the business and affairs of the Company, shall be vested in the Manager, who shall have the sole power and authority to make any decision and to take any action and to exercise any power on behalf of the Company which the Company has the right, power and authority to take or otherwise engage in; and (ii) the Members shall have no voting rights, consent or approval over or as to any such matters.

Notwithstanding the above, the Manager may not file, on behalf of the Company, a petition in bankruptcy or for reorganization or insolvency or any other similar matter without the unanimous consent of the Members.

The Manager shall devote, and shall cause its members, partners, officers, directors and employees, if any, to devote such time to the affairs of the Company as such Manager, in its sole discretion, determines is necessary for performance by the Manager of its duties, provided no such persons shall be required to devote full time to such affairs. The Manager shall have the right and power to manage, operate, and control the Company, and to do all things and take

-3-

GS2- 136229-1

all actions as it deems necessary or appropriate to carry on the business and purposes of the Company.

"Consent of the Members" shall mean action of the holders of more than two-thirds of the Percentage Interests of all the Members, as such Percentage Interests are initially set forth on Schedule A hereto and as such Percentage Interests may be changed pursuant to the other provisions of this Agreement.

No Manager may resign or retire from, abandon or otherwise terminate its status as a Manager without the Consent of the Members.

(f)     No Member, acting in its capacity as a Member (but nothing herein limiting any Member's capacity as a Manager if a Member is also a Manager), shall have any authority, power or privilege to act on behalf of or to bind the Company.

(g)     The signature of the Manager or, if more than one Manager any time, of any Manager on any agreement, contract, instrument or other document shall be sufficient to bind the Company and any other Manager in respect thereof, shall be deemed the action of the Company and of any other Manager, and shall conclusively evidence the authority of such executing Manager and the Company with respect thereto, and no third party need look to any other evidence or require joinder or consent of any other party to bind the Company or to evidence such Manager's authority.

Without in any way amending, modifying, expanding or limiting the foregoing provisions of this paragraph (g), an individual or individuals may be authorized in writing by the Manager to execute any documents to be filed with the Secretary of State of the Commonwealth of Massachusetts and/or authorized to execute, acknowledge, deliver and record any recordable instruments on behalf of the Company purporting to effect an interest in real property, whether to be recorded with the registry of deeds or district office of the Land Court, and in the event of any such authorization the Application for Registration for the Company in the Commonwealth of Massachusetts shall include or, as appropriate, be amended to set forth such authorization.

Any Manager may, from time to time, by an instrument in writing, delegate all or any of its powers or duties hereunder to another Manager, if any, or to an officer, manager, member, or partner of any other Manager or to any Member or any other person or entity. Such writing may fully authorize such other Manager or such other person or entity, acting alone or with others, all as

may be provided in such written delegation, without requirement of any other act or signature of the delegating Manager, to take any action of any type and to do anything and everything which the delegating Manager may be authorized to take or do hereunder (including, without limitation, executing checks, drafts, promissory notes, mortgages, deeds of trust, leases, deeds, easements, and contracts of any nature whatsoever) and may delegate such authority generally or as to any specified matter or specific terms, all as may be provided in writing by any such Manager. Any documents or other instruments executed by any person or entity to whom any such delegation has been made shall be binding upon and enforceable against the Company, and shall be the valid act and deed of the Company, if executed by such delegee, and any third party shall be fully protected in relying upon the authority of any such delegee pursuant to a written delegation by the (or a) Manager.

(h)     The Manager shall be entitled to reimbursement from the Company for all expenses incurred by such Manager in managing and conducting the business and affairs of the Company. The Manager shall determine which expenses, if any, are allocable to the Company in a manner which is fair and reasonable to the Manager(s) and the Company, and if such allocation is made in good faith it shall be conclusive in the absence of manifest error.

(i)     Any Manager, or the sole Manager if there is only one, may cause the Company to enter into one or more loans, agreements, leases, contracts or other arrangements for the furnishing to or by the Company of money, goods, services or space with any Member, Manager or an affiliate thereof, and may pay compensation thereunder for such goods, services or space, provided in each case the terms of any such arrangements are at least as advantageous to the Company as those which would be available to the Company under similar arrangements between unrelated parties, and if the determination of such terms is made in good faith it shall be conclusive in the absence of manifest error.

(j)     In the performance of its duties and obligations hereunder, and in the exercise of its powers hereunder, the Manager shall act in good faith. The Company shall indemnify, defend and hold harmless the Manager, each Member, any person appointed to act for or on behalf of the Company pursuant to Section 1(g), and each such person's officers, directors, partners, members, shareholders, employees, and agents, and the employees, officers and agents of the Company (all indemnified persons being referred to as "Indemnified Persons" for purposes of this Section 1(j)), from any liability, loss, or damage incurred by an Indemnified Person by reason of any act performed or omitted to be performed by such Indemnified Person in connection with the business of the Company, and

GS2- 136220-1

from liabilities or obligations of the Company imposed on such person by virtue of such person's position with or relationship to the Company, including reasonable attorneys' fees and costs and any amounts expended in the settlement of any such claims of liability, loss, or damage; provided, however, that, if the liability, loss, damage, or claim arises out of any action or inaction of an Indemnified Person, indemnification under this Section 1(j) shall be available only if (i) the Indemnified Person, at the time of such action or inaction, determined, in good faith, that its course of conduct was consistent with this Agreement or otherwise in the best interests of the Company, and (ii) the action or inaction did not constitute fraud, gross negligence or willful misconduct by the Indemnified Person.  Any indemnification under this Section 1(j) shall be recoverable only from the assets of the Company and not from any assets of any of the Members.

    2.    <u>Capital Contributions; Capital Accounts; and Liability of Members</u>.

    (a)    The Member has contributed in cash to the capital of the Company the amount set forth opposite such Member's name on Schedule B hereto.

    Additional capital contributions may be made (but are not required to be made) by the Member, or any of them if more than one, if necessary or desirable to enable the Company to meet its obligations.

    Any third party may rely on a certificate or other statement from the Manager as to Member or Members of the Company and the respective Percentage Interests of the Members at any time.  All capital contributions by the Member(s) shall be reflected on the books and records of the Company.

    Upon approval of the Manager, any Member may make a loan or loans to the Company on such terms as the Manager may determine.  No such loan shall be considered a contribution to the capital of the Company.

    (b)    No Member shall be obligated to contribute any additional capital or make any loans to the Company.  No interest or preferred return shall accrue on any contributions to the capital of the Company.  No Member shall have any rights or priority over any other Members as to contributions or as to distributions or compensation by way of income, except as may otherwise be specifically provided for elsewhere in this Agreement.

    (c)    If there is more than one Member at any time and the Company has not elected to be taxed as a corporation under the Internal Revenue Code, a separate capital account ("Capital Account") shall be established for each Member,

and shall be maintained in accordance with applicable regulations under the Internal Revenue Code of 1986, as amended (the "Code"). To the extent consistent with such regulations, there shall be credited to each Member's Capital Account the amount of any contribution of capital made by such Member to the Company, and such Member's share of the net profits, and items thereof, of the Company, and there shall be charged against each Member's Capital Account the amount of all distributions to such Members, and such Member's share of the net losses, and items thereof, of the Company.

(d)     The liability of any Member for the losses, debts and obligations of the Company shall be limited to its capital contributions then made but not then previously repaid to or withdrawn by them in accordance with the terms of this Agreement. No Member, in its capacity as a Member or as Manager, shall have any liability to restore any negative balance in its Capital Account. In no event shall any Member, in its capacity as a Member, nor any Manager, whether or not also a Member, be personally liable for any judgments, debts, liabilities or obligations of the Company.

(e)     The Member(s), unanimously if more than one, shall have the right at any time to require the Manager to elect to treat the Company as a corporation under the Internal Revenue Code.

3.     Return of Contributions. No Member shall have the right to withdraw or to be repaid any capital contributed by it or to receive any property or other payment in respect of its interest in the Company, including, without limitation, as a result of the withdrawal or resignation of such Member from the Company, except as specifically provided in this Agreement.

4.     Share of Distributions, Profits, Losses and Other Items.

(a)     All cash available for distribution shall be distributed to the Member, or among the Members if there is more than one Member, first to return any unrepaid capital contributions, pro-rata among the Members with such amounts in proportion to each respective Member's unrepaid capital contribution, and then among the Members according to their respective Percentage Interests. Distributions to the Members shall be made at such times and in such amounts as shall be reasonably determined by the Manager. Except as provided in the next paragraph, all distributions to Members shall be made in cash.

If the Manager elects, with the Consent of the Members, to distribute any assets of the Company in kind, such assets shall be distributed on the basis of

their fair market value as determined by the Manager, and if the determination of such fair market value is made in good faith it shall be conclusive in the absence of manifest error.

(b)    If and so long as the Company is taxed as a partnership, allocations of income, profit, gain and loss, shall be made as follows: (i) items of net income and gain shall be allocated among the Members in the manner necessary to increase each Member's Capital Account to an amount equal to the amount of cash such Member would be entitled to receive pursuant to Section 4(a) if an amount of cash equal to the net positive Capital Account balances (after such allocation) were distributed to the Members in the order and priority specified in Section 4(a), and (ii) items of net loss and deduction shall be allocated among the Members in the manner necessary to reduce each Member's Capital Account to an amount equal to the amount of cash such Member would be entitled to receive pursuant to Section 4(a) if an amount of cash equal to the net positive Capital Account balances (after such allocation) were distributed to the Members in the order and priority specified in Section 4(a).

Notwithstanding the foregoing, all allocations of items that cannot have economic effect (except "partner nonrecourse deductions") shall be allocated to the Members in accordance with the Members' interests in the Company, which, unless otherwise required by Code Section 704(b) and the Regulations promulgated thereunder, shall be in proportion to the Percentage Interests of the Members, and all "partner nonrecourse deductions" and "partner minimum gain" shall be allocated in accordance with the provisions of Treasury Regulations Section 1.704-2.

All items of depreciation, gain, loss, deduction or credit shall be determined in accordance with the Code and, except to the extent otherwise required by the Code, shall be allocated to and among the Members in the same percentages in which the Members share in net profits and net losses.

(c)    Except as otherwise specifically provided herein, all tax elections shall be made by the Manager as it shall deem appropriate.

5.    Substitution and Assignment of a Member's Interest. A Member may sell, assign, give, pledge, hypothecate, encumber or otherwise transfer (including, without limitation, any assignment or transfer by operation of law or by order of court) all or any part of such Member's interest in the Company, without the consent or approval of any other Member or of the Manager.

6.     Books and Records; Bank Accounts.

(a)     The Manager shall keep or cause to be kept complete and accurate books and records of the Company using such method as the Manager may elect. Such books and records shall be maintained and be available, in addition to any documents and information required to be furnished to the Members under the LLC Act, at an office of the Company for examination and copying by any Member, or its duly authorized representative, at its reasonable request and at its expense during ordinary business hours. Any Member may, at any time, at its own expense, cause an audit or review of the Company books to be made by a certified public accountant of its own selection.

A current list of the full name and last known address of each Member and of the Manager, a copy of this Agreement, any amendments thereto and the Certificate of Formation, executed copies of all powers of attorney, if any, pursuant to which this Agreement, any amendment, or the Certificate of Formation has been executed, copies of the Company's financial statements and federal, state and local income tax returns and reports, if any, for the five most recent years, shall be maintained at the registered office of the Company required by the LLC Act.

If the Company is taxed as a partnership, then on or before the due date (including extensions) of the federal income tax return of the Company for each fiscal year of the Company, the Manager shall cause each Member to be furnished with copies of the Company's federal income tax return and Schedule K-1's for each respective Member for the fiscal year then ended.

If the Company is taxed as a corporation, the Manager shall timely (including extensions) file all requisite federal, state and local tax returns.

(b)     Bank accounts and/or other accounts of the Company shall be maintained in such banking and/or other financial institution(s) as shall be selected by the Manager, and withdrawals shall be made and other activity conducted on such signature or signatures as shall be designated by the Manager.

(c)     The fiscal year of the Company shall end on December 31 of each year.

7.     Other Business. The Members, the Manager and any affiliates of any of them may engage in and possess interests in other business ventures and

investment opportunities of every kind and description, independently or with others, including serving as managers and general partners of other limited liability companies and partnerships with purposes similar to those of, and/or in competition with, the Company. Neither the Company nor any other Member or Manager shall have any rights in or to such ventures or opportunities or the income or profits therefrom.

8. Dissolution and Continuation of the Company.

(a) The Company shall be dissolved and its affairs wound up upon:

(i) The election, made in writing by the Manager, with the Consent of the Members, to dissolve the Company at any time which is 90 days or more after notice of such election to all Members;

(ii) The sale, disposition or abandonment of all or substantially all of the assets of the Company; or

(iii) The entry of a decree of judicial dissolution under the LLC Act.

The Company shall have no specific date of dissolution.

(b) Upon the dissolution of the Company for any reason, the Manager shall commence to wind up the affairs of the Company and to liquidate its assets. After the sale or other disposition of all of the assets of the Company to be disposed of in the liquidation, and gains and losses thereon shall be calculated. If the Company is taxed as a partnership, such gains and losses shall be allocated in the manner described in Section 4 hereof, and applied to the Capital Accounts of each Member to whom the allocations are made pursuant to the other provisions hereof.

(c) Following the payment of all debts and liabilities of the Company to persons other than the Members and the payment of all expenses of liquidation, and subject to the reserves which the Manager, or other liquidating party, may determine is reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company, the proceeds of the liquidation and any other funds shall be applied to the payment of any debts and liabilities to the Members, if any, and then shall be distributed to the Member(s) (i) in accordance with Section 4(a)

if the Company is taxed as a corporation, and (ii) in accordance with each Member's respective Capital Account(s) as of the date of such distribution, after giving effect to all contributions, distributions, and allocations for all periods, if the Company is taxed as a partnership.

(d)     The assets of the Company shall be a Member's source of all distributions with respect to the Company, the return of its capital contributions thereto and its share of profits and losses thereof, and each such Member shall have no recourse therefor (upon dissolution or otherwise) against any other Members.

(e)     Upon the completion of the liquidation of the Company and the distribution of all Company's funds, the Company shall terminate, and the Manager shall, or if none, the Members may authorize one or more Members to, execute and record such articles of dissolution for the Company and any and all other documents necessary to effectuate the dissolution and termination of the Company.

9.     Miscellaneous.

(a)     Subject to the restrictions on transfers set forth herein, the terms of this Agreement shall be binding upon and shall inure to the benefit of the Members and the Manager, their respective permitted successors, successors-in-title, heirs and assigns; and each and every successor-in-interest to any Member, whether such successor acquires such interest by way of inheritance, gift, purchase, foreclosure or any other method, and the Members shall hold such interest subject to all of the terms and provisions of this Agreement. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of any Member (including any Member acting in his capacity as a creditor of the Company).

(b)     No change, modification or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and duly executed by all of the Members and, if (but only if) such affects the rights or obligations of the Manager, executed by the Manager.

(c)     This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted and enforced in accordance with the laws of the State of Delaware, notwithstanding any choice of law rules to the contrary.

(d)    This Agreement may be executed in any number of counterparts, all of which together shall for all purposes constitute one Agreement, binding on all the Members and the Manager notwithstanding that all Members and the Manager have not signed the same counterpart.

(e)    Any and all notices under this Agreement shall be effective (i) on the fourth business day after being sent by registered or certified mail, return receipt requested, postage prepaid, or (ii) on the second business day after being sent by express mail, telecopy, or commercial expedited delivery service providing a receipt for delivery. All such notices in order to be effective shall be addressed, if to the Company at its registered office under the LLC Act, if to a Member at the last address of record on the Company books, and copies of such notices shall also be sent to the last address for the recipient which is known to the sender, if different from the address so specified.

(f)    As used herein, the singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, unless the context otherwise requires. The word "person shall mean a natural person, a trust of any nature, or any incorporated or unincorporated entity or association of any type or form.

(g)    If any provisions of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it si held invalid, shall not be affected hereby.

(h)    Words such as "herein", "hereinafter", "hereof", "hereto", "hereby", and "hereunder", when used in reference to the Agreement, refer to this Agreement as a whole, unless the context otherwise requires.

(i)    This Agreement, including the Certificate of Formation, which is hereby incorporated herein, embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

GS2-130220-1

IN WITNESS WHEREOF, the Members have executed this Limited Liability Company Agreement of Westborough SPE LLC as of the date first above written.

MEMBER:

MIGNONETTE INVESTMENTS LIMITED

By: _____
        Authorized Signatory


MANAGER:

BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC.

By: _____
    Its _____

-13-

SCHEDULE A
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

MEMBER

| NAME AND ADDRESSES OF MEMBER | PERCENTAGE INTEREST |
| --- | --- |
| Mignonette Investments Limited | 100% |

-A-1-

GS2- 1362291

### SCHEDULE B
### TO
### LIMITED LIABILITY COMPANY AGREEMENT
### OF
### WESTBOROUGH SPE LLC

### MEMBER

|  MEMBER | INITIAL CASH CAPITAL CONTRIBUTION |
|---|---|
| Mignonette Investments Limited | $10,000 |

-B-1-

SCHEDULE C
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC


PROPERTY DESCRIPTION

PLAINTIFF'S
EXHIBIT
B

# DURABLE POWER OF ATTORNEY

This Durable Power of Attorney is made on this 26 day of June , 2023, by Babcock and Brown Parallel Member LLC, a Delaware limited liability company (the "Grantor").

WHEREAS, pursuant to the Operating Agreement ("Operating Agreement") of Westborough SPE LLC (the "Company") dated as of 20th October 1997 (the "LLC Agreement"), Babcock and Brown Administrative Services Inc., a Delaware corporation, was designated as the manager of the Company;

WHEREAS, Babcock and Brown Administrative Services Inc. has merged into the Grantor, and as a result, the Grantor is the successor of all the rights and obligations of Babcock and Brown Administrative Services Inc.;

WHEREAS, Section 1(g) of the LLC Agreement provides that any manager of the Company may delegate all or any of its powers or duties under the LLC Agreement to another manager or to any member or any other person or entity by an instrument in writing;

NOW, THEREFORE, the Grantor hereby appoints Mr. Lolonyon Akouuete and Ms. Denise Edward as its attorney in fact (the "Attorney"), with powers to be exercised jointly with member or manager of the Grantor, to act on behalf of the Grantor in connection with any and all matters relating to the management and operation of the Company, including but not limited to:

1. the right to sell, buy, lease, mortgage, assign, rent or dispose of any real property on behalf of the Company; and
2. the right to execute, acknowledge, and deliver any and all documents, contracts, agreements, checks, drafts, promissory notes, mortgages, deeds of trust, leases, deeds, easements, and other instruments of any nature whatsoever, as may be necessary or desirable, and to perform all acts and do everything that the Grantor could do; and
3. the right to open a bank account/s, deposit, endorse, or withdraw funds to or from any of the Company's bank accounts or safe deposit box;
4. the right to initiate, defend commence or settle legal actions on the Company's behalf;
5. the right to retain any accountant, attorney, or other adviser deemed necessary to protect the Company's interests relative to any foregoing unlimited power;
6. the right to bind the Grantor by executing documents or instruments on its behalf, and any such executed documents or instruments shall be binding upon and enforceable against the Grantor.

The Grantor undertakes to:
- ratify and confirm whatever the Attorney does or purports to do in good faith in exercising the powers conferred by this Power of Attorney; and
- Indemnify the Attorney against all claims, losses, costs, expenses, damages or liability incurred by her as a result of acting in good faith pursuant to this power of attorney (including any costs incurred in enforcing this indemnity).

See Exhibit A hereto for additional rights with respect to the Company property.

This Power of Attorney shall be governed by and construed in accordance with the laws of the State of Delaware. The powers and duties of an Agent under a durable power of attorney are explained more fully in Delaware Code, Title 12, Chapter 49A, Section 49A-114 and Sections 49A-201 through 49A-217.

By signing below, I have read or had explained to me this notice and I understand its contents. I have had an attorney licensed in the State of Arizona review and approve of me signing this Durable Power of Attorney.

This Power of Attorney shall be effective from the signing date below and shall continue in full force and effect until revoked by the Grantor in writing.

**Reliance on This Power of Attorney**
Any person, including my Agent(s), may rely upon this power of attorney or a copy of it unless that person knows it has terminated or is invalid.

**Revocation of Prior Power of Attorney**
If you have previously executed a power of attorney granting authority covered in this document, indicate below whether or not you wish to revoke the prior power of attorney. INITIAL your selection below:

_✓_ All my previously executed powers of attorney are hereby revoked, except those powers of attorney described in § 49A-103(a) of Title 12 of the Delaware Code, none of which are personal powers of attorney described within the meaning of § 49A-102(9) of Title 12 of the Delaware Code.

**IN WITNESS WHEREOF**, the Grantor has executed this Power of Attorney as of the date first written above as an instrument under seal.

BABCOCK AND BROWN PARALLEL MEMBER LLC

By: _____

Name: F. Jan Blaustein Scholes
Title: Manager, duly authorized

I, __DIIGBOD LOKOSSOU__, swear that I am not related to the Principal by blood, marriage, or adoption; and that I am not entitled to any portion of the estate of the Principal under the Principal's current will or codicil, or under any current trust instrument of the Principal.

_____          __DIIGBODI LOKOSSOU__
Witness Signature                                        Print Witness Name

State of Arizona

COUNTY OF _Arizona_

This Durable **Power of Attorney** was signed by the Principal, witnessed by the person aforesaid, and acknowledged before me, the Subscriber, a Notary Public, as the free act and deed of the Principal this _2 ?_ day of June, 2023.

_____
Notary Public

My Commission Expires: _02-28-2027_   (seal)

BILLIE J WAHL
Notary Public - Arizona
Maricopa County
Commission # 642362
My Comm. Expires Feb 28, 2027

**EXHIBIT "A"**
**Real Property § 49A-204**

1. To demand, buy, lease, receive, accept as a gift or as security for an extension of credit, or otherwise acquire or reject an interest in real property or a right incident to real property;

2. To sell; exchange; convey with or without covenants, representations, or warranties; quitclaim; release; surrender; retain title for security; encumber; partition; consent to partitioning; subject to an easement or covenant; subdivide; apply for zoning or other governmental permits; plat or consent to platting; develop; grant an option concerning; lease; sublease; contribute to an entity in exchange for an interest in that entity; or otherwise grant or dispose of an interest in real property or a right incident to real property;

3. To pledge or mortgage an interest in real property or right incident to real property as security to borrow money or pay, renew, or extend the time of payment of a debt of the Principal or a debt guaranteed by the Principal;

4. To release, assign, satisfy, or enforce by litigation or otherwise a mortgage, deed of trust, conditional sale contract, encumbrance, lien, or other claim to real property which exists or is asserted;

5. To manage or conserve an interest in real property or a right incident to real property owned or claimed to be owned by the Principal, including:
   a. Insuring against liability or casualty or other loss;
   b. Obtaining or regaining possession of or protecting the interest or right by litigation or otherwise;
   c. Paying, assessing, compromising, or contesting taxes or assessments or applying for and receiving refunds in connection with them; and
   d. Purchasing supplies, hiring assistance or labor, and making repairs or alterations to the real property;

6. To use, develop, alter, replace, remove, erect, or install structures or other improvements upon real property in or incident to which the Principal has, or claims to have, an interest or right;

7. To participate in a reorganization with respect to real property or an entity that owns an interest in or right incident to real property and receive, and hold, and act with respect to stocks and bonds or other property received in a plan of reorganization, including:
   a. Selling or otherwise disposing of them;
   b. Exercising or selling an option, right of conversion, or similar right with respect to them; and
   c. Exercising any voting rights in person or by proxy;

8. To change the form of title of an interest in or right incident to real property; and

9. To dedicate to public use, with or without consideration, easements or other real property in which the Principal has, or claims to have, an interest.

3

5. To submit to alternative dispute resolution, settle, and propose or accept a compromise;

6. To waive the issuance and service of process upon the Principal, accept service of process, appear for the Principal, designate persons upon which process directed to the Principal may be served, execute and file or deliver stipulations on the Principal's behalf, verify pleadings, seek appellate review, procure and give surety and indemnity bonds, contract and pay for the preparation and printing of records and briefs, receive, execute, and file or deliver a consent, waiver, release, confession of judgment, satisfaction of judgment, notice, agreement, or other instrument in connection with the prosecution, settlement, or defense of a claim or litigation;

7. To act for the Principal with respect to bankruptcy or insolvency, whether voluntary or involuntary, concerning the Principal or some other person, or with respect to a reorganization, receivership, or application for the appointment of a receiver or trustee which affects an interest of the Principal in property or other thing of value;

8. To pay a judgment, award, or order against the Principal or a settlement made in connection with a claim or litigation; and

9. To receive money or other thing of value paid in settlement of or as proceeds of a claim or litigation.

**Taxes § 49A-216**

1. To prepare, sign, and file federal, state, local, and foreign income, gift, generation skipping transfer, payroll, property, Federal Insurance Contributions Act (26 U.S.C. § 3101 et seq.), and other tax returns, claims for refunds, requests for extension of time, petitions regarding tax matters, and any other tax-related documents, including receipts, offers, waivers, consents, including consents and agreements under § 2032A of the Code, closing agreements, and any power of attorney required by the Internal Revenue Service or other taxing authority with respect to a tax year upon which the statute of limitations has not run and the following 25 tax years;

2. To pay taxes due, collect refunds, post bonds, receive confidential information, and contest deficiencies determined by the Internal Revenue Service or other taxing authority;

3. To exercise any election available to the Principal under federal, state, local, or foreign tax law; and

4. To act for the Principal in all tax matters for all periods before the Internal Revenue Service, or other taxing authority.

5

PLAINTIFF'S
EXHIBIT

C

# WRITTEN CONSENT
# OF THE MANAGER
# OF BABCOCK AND BROWN PARALLEL MEMBER LLC
# IN LIEU OF A MEETING

The undersigned, being the manager of BABCOCK AND BROWN PARALLEL MEMBER LLC, a Delaware limited liability company (the "**Company**"), acting by written consent without a meeting pursuant to Section 18-404 of the Delaware Limited Liability Company Act, does hereby consent to the adoption of the following resolutions:

**WHEREAS**, F. Jan Blaustein Scholes ("**Scholes**") is the Manager of the Company; and

**WHEREAS**, F. Jan Blaustein Scholes is over the age of eighteen and is of sound mind and is not under a conservatorship or guardianship in the State of Arizona; and

**WHEREAS**, F. Jan Blaustein Scholes resides in the State of Arizona and is executing this document in the State of Arizona.

**NOW THEREFORE LET IT BE:**

**RESOLVED**, that a Durable Power of Attorney be executed authorizing Lolonyon Akouete and Denise Edwards to undertake the actions specified therein;

**RESOLVED**, that the Bill of Sale executed on November 21, 2022, be amended as follows:

    (i)    The Title of the Document shall be amended to delete "Bill of Sale" and substitute "Transfer of Manager Role";

    (ii)    The WHEREAS clause shall be amended to delete the word "sell" and "transfer her Manager role of Westborough SPE LLC" shall be substituted therefore. In addition, "Buyer desires to buy" shall be deleted and the following substituted therefore "Subsequent Manager desires to assume the Role as Manager(s) of Westborough SPE LLC". In addition "and all assets thereof" shall be deleted.

    (iii)    Paragraph 1 shall be deleted in its entirety and "The consideration paid heretofore for a change in Manager is $100.00 which was tendered by Money Order to Scholes".

    (iv)    Paragraphs 1(a)-(b) shall be deleted in their entirety.

    (v)    Paragraph 2 shall be deleted in its entirety and F. Jan Blaustein Scholes is not under a conservatorship/guardianship in the State of Arizona where she currently resides and is of sound legal mind, and understands the consequences of this Agreement to Transfer Manager Role".

    (vi)    Paragraph 3 shall be deleted in its entirety and the following substituted therefore "Westborough SPE LLC has an outstanding debt owed to the Town of Westborough for unpaid obligations which as of May 2023 equated to approximately $920,000.00. In addition, there are unclaimed funds in the State of California of approximately $1,200,000.00 belonging to Westborough SPE LLC. Akouete and Edwards have become Managers of Westborough SPE LLC and that

is hereby ratified and confirmed. Akouete and Edwards are authorized to take whatever actions necessary to recover and protect the property located at Turnpike Road, Westborough, Massachusetts and recover the unclaimed funds in the State of California."

(vii)    Paragraph 5 shall be deleted and the following substituted therefore "This Agreement shall be governed by the laws of the State of Arizona as to contract formation and capacity and the State of Delaware as to limited liability company actions".

(viii)    Paragraph 6 shall remain and is hereby ratified and confirmed and Westborough SPE LLC was lawfully reinstated in both Delaware and Massachusetts.

(ix)    Paragraph 8 shall be added, "If any provision of this Agreement shall to any extent be held void or unenforceable (as to duration, scope, activity, subject or otherwise) by a court of competent jurisdiction, such provision shall be deemed to be modified so as to constitute a provision conforming as nearly as possible to the original provision while still remaining valid and enforceable. In such event, the remainder of this Agreement (or the application of such provision to persons or circumstances other than those in respect of which it is deemed to be void or unenforceable) shall not be affected thereby. Each other provision of this Agreement, unless specifically conditioned upon the voided aspect of such provision, shall remain valid and enforceable to the fullest extent permitted by law; any other provisions of this Agreement that are specifically conditioned on the voided aspect of such invalid provision shall also be deemed to be modified so as to constitute a provision conforming as nearly as possible to the original provision while still remaining valid and enforceable to the fullest extent permitted by law."

(x)    Paragraph 9 shall be added "Time shall be of the essence as to each term hereof."

(xi)    Paragraph 10 shall be added "Each party recognizes that this Agreement is a legally binding contract and acknowledges that it, he or she has had the opportunity to consult with legal counsel of choice. In any construction of the terms of this Agreement, the same shall not be construed against either party on the basis of that party being the drafter of such terms."

(xii)    Paragraph 11 shall be added "Scholes has engaged an attorney licensed in the State of Arizona to represent her interests with respect to this Agreement and the attorney has reviewed the document and consents to its signing."

**RESOLVED,** that the manager be, and each of them individually hereby is, authorized and directed to do and perform or cause to be done and performed all such acts, deeds, and things, and to make, execute, and deliver, or cause to be made, executed, and delivered, all such agreements, undertakings, documents, instruments, or certificates in the name of the Company and to retain such counsel, agents, and advisors and to incur and pay such expenses, fees, and taxes as shall, in the opinion of the manager of the Company executing the same, be deemed necessary or advisable (such necessity or advisability to be conclusively evidenced by the execution thereof) to effectuate or carry out fully the purpose and interest of all of the foregoing resolutions; and that any and all such actions heretofore or hereafter taken by the manager

2

relating to and within the terms of these resolutions be, and they hereby are, adopted, affirmed, approved, and ratified in all respects as the act and deed of the Company; and

**RESOLVED,** that an executed copy of this Written Consent shall be filed with the minutes of the proceedings of the managers.

**IN WITNESS WHEREOF,** the undersigned manager has duly executed this Written Consent as of June 23, 2023 as an instrument under seal.

Signature: _____    Date: _____

F. Jan Blaustein Scholes, Manager

I, _____, swear that I am not related to the Principal by blood, marriage, or adoption; and that I am not entitled to any portion of the estate of the Principal under the Principal's current will or codicil, or under any current trust instrument of the Principal.

State of Arizona

COUNTY OF _Arizona_____

This Durable **Power** of **Attorney** was signed by the Principal, witnessed by the person aforesaid, and acknowledged before me, the Subscriber, a Notary Public, as the free act and deed of the Principal this _26_ day of June, 2023.

_____
Notary Public

My Commission Expires: _02-28-2027_    (seal)

BILLIE J WAHL
Notary Public - Arizona
Maricopa County
Commission # 642362
My Comm. Expires Feb 28, 2027

3