UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

In re:  )  Chapter 7
  )  Case No. 23-40709-CJP
WESTBOROUGH SPE LLC,  )
  )
          Debtor.  )

SUPPLEMENT TO MOTION FOR RELIEF FROM AUTOMATIC STAY (Doc #122)
AND MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR
RELIEF FROM STAY (Doc #164)

Lolonyon Akouete, creditor of Westborough SPE LLC ("the Debtor"), respectfully submits this supplement to Doc #122 Motion for Relief from Automatic Stay and Doc #164 Motion for Reconsideration of Order Denying Motion for Relief from Stay. This supplement addresses the points raised in the Court's Order dated May 20, 2024, and provides additional support for the requested relief.

**1. Background and Justification for Relief**

An involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against the debtor on August 31, 2023, and on October 11, 2023, an order for relief was granted. The creditor, Lolonyon Akouete, filed a timely proof of claim based on debts owed by the Debtor. Despite the Trustee's acknowledgment of sufficient assets in the estate to cover all creditor claims, the Trustee has indicated an intention to challenge the amount and validity of the claim filed by the creditor.

**2. Nature of the Dispute**

The creditor believes that obtaining a judgment in a court of competent jurisdiction is essential to establish the amount owed definitively and thus protect the creditor's right to proper treatment under the bankruptcy code.

**a. Other Creditors Pursuing Claims Outside the Normal Claim Process**

Notably, other creditors are pursuing their claims through the settlement process rather than the normal claim review process, setting a precedent for granting relief to Mr. Akouete. This inconsistency in the treatment of creditor claims further justifies the need for independent adjudication to ensure fairness.

**3. Procedural Issues and Grounds for Reconsideration**

**a. Failure to Appear**

The creditor's failure to appear at the hearing on May 20, 2024, was due to confusion caused by the denial of the fee waiver an hour before the hearing. This denial misled the creditor into believing that the entire hearing was canceled. This procedural oversight should be considered excusable

neglect under Rule 60(b)(1) of the Federal Rules of Civil Procedure, applicable through Bankruptcy Rule 9024.

**4. Legal and Equitable Grounds for Relief**

**a. Substantial Asset Base**

The bankruptcy estate has $1,293,646.83 in cash and $2,875,000.00 from the sale of its real estate, totaling $4,168,646.83. The claims filed are as follows:

1. Darin Clagg: $10,000.00
2. Ferris Development Group, LLC: $10,000.00
3. Matthew A. Morris Sherin and Lodgen LLP: $20,000.00
4. Lolonyon Akouete: $625,297.00
5. Denise Edwards: $333,491.00
6. The MobileStreet Trust: $356,681.00
7. Nathanson & Goldberg, P.C.: $101,692.83
8. Town of Westborough: $1,165,000.00

The total claims amount to $2,622,161.83. After paying off all claims, the remaining amount in the estate will be $1,546,485.00. The estate has sufficient assets to cover all creditor claims, mitigating any potential detriment to the estate from this action. Allowing the creditor to pursue a judgment in a court of competent jurisdiction will not harm the estate but will clarify the amount owed, facilitating a fair distribution of assets.

**b. Equity Among Creditors**

Ensuring equitable treatment among all creditors is crucial. There are indications of potential preferential treatment towards certain parties by the Trustee. Granting relief from the stay will help ensure that all creditors are treated fairly.

**c. Precedent in Similar Cases**

Similar relief has been granted in other cases within this jurisdiction where clarifying the amount of a creditor's claim was necessary to ensure fair and orderly distribution of the estate.

- In re Holtkamp, 669 F.2d 505 (7th Cir. 1982) - In this case, the court granted relief from the automatic stay due to the creditor's lack of adequate protection for its interest in the debtor's property. This precedent supports Mr. Akouete's argument that without clarity and protection of his claims, his rights are being inadequately protected.
- In re Roger, No. 5:14-cv-02515 (C.D. Cal., Oct. 13, 2015) - This case involved complex legal issues with loans and securities that required resolution in state court. The court lifted the stay, recognizing the need for these issues to be addressed outside the bankruptcy process to ensure a fair and thorough resolution, supporting the argument that similar complexities justify lifting the stay in Mr. Akouete's case.

**d. Threats and Coercion by Trustee**

The creditor has faced undue pressure and threats from the Trustee to accept settlement terms that may undervalue the creditor's legitimate claim. Such actions warrant the court's intervention to allow independent adjudication of the claim's validity and amount.

**e. Inconsistent Treatment of Creditor Claims**

Ferris Development and Darin Clagg both lent the creditor $10,000 for legal fees. Ferris Development's claim will be increased to $100,000 in the fraudulent settlement, while Darin Clagg's will remain $10,000, showing inequitable treatment. Additionally, the Trustee has repeatedly threatened to object to claims from Denise Edwards and Lolonyon Akouete. It was not until the debtor made an issue about the Mobile Street Trust Claim that the Trustee started to address it. Otherwise, the Trustee would have packaged the Mobile Street Trust claim into a settlement, terming $356,681.00 to $700,131.00 without any proof. **See Exhibit 1 and 2**.

**f. Trustee's Settlement Offers**

If Mr. Akouete is not a legitimate creditor, why did the trustee instruct Scott A. Schlager to offer him $450,000 in settlement? Additionally, why did Peter Blaustein offer him 10% of the $1,293,646 (unclaimed funds) and 5% of the $2,875,000 (sale of the real estate)? These offers indicate recognition of Mr. Akouete's legitimate claims. **See Exhibit 3 and 4**.

**g. Immediate Need for Relief and Lack of Adequate Protection**

Mr. Akouete, an unsecured creditor and successful manager of the debtor entity, asserts that ongoing threats and coercion from the Town and the Trustee exacerbate his vulnerable position and highlight the lack of adequate protection for his interests. His claim for compensation is rooted in the Westborough SPE LLC Operating Agreement, specifically Section 1(d), which stipulates that the Manager can be compensated for duties performed, including managing and operating the Company. The agreement ensures any such arrangements are conducted fairly and in the interests of the Company, as determined in good faith by the Manager.

**h. Substantiation of Claims**

According to 11 U.S.C. § 502(b), when a claim is filed, it is deemed allowed unless objected to by a party in interest. Mr. Akouete's actions have recovered over $4 million for the debtor, justifying his claim for $625,000 in compensation as reasonable and aligned with typical fees for similar asset recovery services within the industry.

Under the principle of the False Claims Act, Section 3730(d)(1-2), where whistleblowers are entitled to a percentage of the funds they help recover for the government, Mr. Akouete would be entitled to 30% of the recovered amount, amounting to $1.2 million, as compensation for his efforts in securing these funds for Westborough SPE LLC.

In Delaware, recovery of unclaimed property through the court system incurs a fee of 25% to 35%. **See Exhibit 5**. Similarly, Creditreform, a reputable international organization specializing in business information, credit reporting, and debt collection services, charges a success fee of 30% for debt collection services in the US, operating on a "No collection, no fees" basis. **See Exhibit 6**.

The maximum commission percentage that unclaimed money finders can charge in Arizona is 30%. **See Exhibit 7**.

Mr. Akouete's requested compensation of $625,000 is therefore reasonable and aligned with these industry standards. His role and the authority granted by the operating agreement under Sections 1(h) and 1(i) further substantiate his claim, highlighting his right to reimbursement and the ability to make decisions regarding business affairs without separate agreements.

**i. Racial Prejudice**

There is evidence of racial prejudice against the creditor. As a successor manager of the debtor, Mr. Akouete offered F. Jan Blaustein Scholes $646,000.00 for compensation for saving over four million dollars for the debtor. However, her son, Peter Blaustein, along with Matthew A. Morris, deemed this amount insufficient. Now that Mr. Akouete is requesting $625,000 for compensation, they claim it is too much. This discrepancy suggests racial bias, where a higher amount was considered insufficient for a white individual, but a lower amount is deemed excessive for a black individual.

**j. Denial of Fee Waiver and Judicial Bias**

The court denied Mr. Akouete's motion for a fee waiver an hour before the hearing, which caused confusion and suggests potential bias. The denial without a hearing undermines confidence in the judicial system, especially given the public knowledge of bias in the Massachusetts judicial system against people of color.

**k. Misappropriation of Debtor Property**

The Town of Westborough is upset because the creditor exposed their plan to misappropriate the debtor's property. They have vowed to prevent the creditor from being compensated for his work. Denise Edwards and Lolonyon Akouete provided asset recovery and management services to the debtor, preventing the Town from stealing the assets. The Town could have taken the property through eminent domain and paid damages to the debtor but chose an unconstitutional tax title foreclosure instead.

**5. Addressing the Trustee's Objections**

**a. Challenge to Validity and Amount of Claim**

The Trustee challenges the validity and amount of the creditor's claim, suggesting it will object to certain proofs of claims. This highlights the need for a definitive judgment to avoid prolonged disputes and ensure clarity in the distribution process. **See Exhibit 8**.

**b. Equity Among Creditors**

The Trustee denies preferential treatment towards certain parties and asserts adherence to fiduciary responsibilities. However, independent adjudication of the creditor's claim will provide transparency and fairness, reinforcing equitable treatment.

**c. Legal Grounds for Relief**

The Trustee argues that granting relief from the stay is not justified under 11 U.S.C. § 362(d). This supplement provides detailed legal grounds supporting the necessity and fairness of obtaining a judgment to clarify the creditor's claim.

**d. Allegations of Threats and Coercion**

The Trustee denies allegations of threats and coercion, suggesting the creditor's filings are baseless. The creditor has legitimate concerns about undue pressure and requests the court's intervention to ensure fair treatment and resolution.

### 6. Addressing the Town of Westborough's Opposition

**a. Pending Motion to Dismiss**

The Town argues that resolving creditor standing is inappropriate while its motion to dismiss is pending. However, the creditor's claim is a separate matter that needs resolution regardless of the pending motion to dismiss. The Town's motion to dismiss is frivolous and seems intended merely to distract and they plan to soon replace it with a fraudulent settlement. They have done the same thing in the land court with unnecessary 221 pages voluminous filing to distract. **See Exhibit 9**.

Despite the case's apparent simplicity, it has been unduly prolonged for over a year and a half, largely due to the Town's litigation strategy. This strategy has involved introducing numerous irrelevant issues and requesting multiple continuances. Judge Howard P. Speicher commented on this during the May 16, 2023 hearing, pointing out the unnecessary complexity added by extensive filings. The heart of the matter, as he noted, involves a motion to vacate filed just before the expiration of a critical deadline, with the Town disputing the validity of the filing entity. See **Exhibit 10 and 11**.

**b. Purpose of the Bankruptcy Code**

The Town argues that the bankruptcy code protects creditors' rights and prevents dismemberment of the estate. Pursuing a definitive judgment aligns with this purpose by ensuring fair treatment and proper adjudication of claims.

**c. Role of the Bankruptcy Claims Process**

The Town suggests the bankruptcy claims process should handle the creditor's claim. This supplement argues that obtaining a judgment complements the claims process and ensures clarity and fairness.

**d. Adjudication in Other Venues**

The Town suggests adjudicating issues concerning the LLC in the Massachusetts Land Court. This supplement argues that the bankruptcy court is the appropriate venue for determining the creditor's claim to ensure consistency and efficiency.

**e. Settlement and Continuations**

The Town points to ongoing settlement negotiations and argues against granting the motion. The creditor emphasizes the need for timely resolution of the claim to avoid further delays and complications. It has been five months since the claims bar date on January 9, 2024, set by the court, and yet the Trustee has not evaluated any claims.

### 7. Additional Considerations

**a. Immediate Need for Relief and Lack of Adequate Protection**

Mr. Akouete, an unsecured creditor, asserts that ongoing threats and coercion from the Town and the Trustee exacerbate his vulnerable position and highlight the lack of adequate protection for his interests. The delay and opaque nature of the Town's § 707(a) motion and ongoing settlement discussions, coupled with this adversarial environment, underscore the necessity for immediate

relief to protect Mr. Akouete's interests and prevent further diminution in the value of the assets in question.

### b. Equity and Fairness

Mr. Akouete contends that the automatic stay, while generally serving to protect the estate, should not serve as a blanket prohibition against legitimate actions by unsecured creditors, particularly when such actions could clarify the creditor's standing and facilitate an orderly resolution of the estate. The continued threats and coercion only serve to undermine the principles of equity and fairness that the bankruptcy process is designed to uphold.

### c. Necessity for Definitive Adjudication and Enforcement of State Court Judgments

The bankruptcy claims process, while designed to resolve creditor claims, is insufficient in Mr. Akouete's case due to the unique nature of the threats and lack of transparency he faces. A definitive judgment outside of this process is required to clarify the precise nature and extent of his claims before they can be properly addressed within the bankruptcy context. Any entitlement Mr. Akouete may have in the property of the estate by virtue of the entry of a State Court judgment shall only be enforceable to the extent allowed by the Bankruptcy Court. This further necessitates relief from the stay to assert his rights under state law in a manner that is consistent with the Bankruptcy Code.

### d. Mistrust of Involved Parties

The basis for this relief also stems from a profound lack of trust in the parties involved in this case, exacerbated by the adversarial actions that have put Mr. Akouete at a significant disadvantage. This mistrust warrants judicial intervention to ensure that Mr. Akouete's claims are adjudicated fairly and transparently.

### e. Substantiation of Claims under Operating Agreement

Mr. Akouete, as a successful manager of the entity, is governed by the Westborough SPE LLC Operating Agreement. Sections 1(d), 1(h), and 1(i) of the agreement provide him broad authority to manage and operate the Company and make decisions regarding the business and affairs of the Company, including entering into agreements for the furnishing of money, goods, services, or space. His actions have recovered over $4 million for the debtor, and asking for $625,000 in compensation is supported by industry standards for similar asset recovery services, which he will substantiate with research data.

### f. Uncertainty and Undue Stress Due to Threat of Future Objections

Pursuant to 11 U.S.C. § 502(b), a claim is considered allowed upon filing unless a party in interest, such as the debtor or trustee, objects to it. Currently, Mr. Akouete faces significant undue anxiety and stress due to the Trustee's expressed intentions to potentially object to his claims in the future. This looming threat creates a palpable sense of uncertainty, impacting Mr. Akouete's ability to plan and conduct his affairs with the confidence that he will be treated fairly and equitably. If the Trustee possesses legitimate grounds for an objection, it would be in the interest of justice and efficiency for such objections to be filed promptly, rather than being held as a potential future action. This would not only clarify the standing of Mr. Akouete's claims but would also alleviate the unnecessary psychological and emotional strain placed upon him, allowing for a more straightforward and fair resolution of this matter.

**8. Request for Relief**

Based on the above reasons, Lolonyon Akouete respectfully requests that this Court:

1. Reconsider its order dated May 20, 2024, denying the Motion for Relief from Automatic Stay.
2. Grant relief from the automatic stay to allow the creditor to pursue a judgment confirming the amount of the debt owed by the Debtor.
3. Set a new hearing date for the motion, allowing the creditor the opportunity to present arguments and evidence in support of the motion.

DATED: June 9, 2024, Respectfully submitted:

By creditor,

_____
Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276