EXECUTION VERSION

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made between and among Westborough SPE LLC ("SPE"), through Jonathan Goldsmith, Chapter 7 Trustee ("Trustee"); the Town of Westborough ("Town"); Ferris Development Group, LLC ("Ferris"); Lax Media LLC and Lax Media MA LLC (together, "Lax"); Nathanson & Goldberg, P.C. ("N&G"); and Durgaprasad Nagalla and Venkatesh Mohanraj, Trustees of The MobileStreet Trust, u/d/t dated December 11, 2014, recorded with the Worcester Registry of Deeds in Book 53141, Page 193 ("MobileStreet") (each a "Party" and all together the "Parties") as of the date on which the last Party signs the Agreement.

WHEREAS, in 1997, SPE acquired real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property");

WHEREAS, the Property is subject to a Declaration of Reciprocal Covenants, Easements and Restrictions concerning abutting real property owned by MobileStreet, recorded with the Worcester County Registry of Deeds at Book 18745, Page 313 (the "Reciprocal Covenants"), which Reciprocal Covenants run with the Property;

WHEREAS, on December 28, 2018, the Town recorded an instrument of taking on the Property and all improvements thereon pursuant to G.L. c. 60, §§ 53-54, as a result of unpaid FY2018 taxes in the amount of $106,944.99;

WHEREAS, on July 8, 2019, the Town filed a tax title foreclosure action with respect to the Property in the Massachusetts Land Court, <u>Town of Westborough</u> v. <u>Westborough SPE, LLC, et al.</u> (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action");

WHEREAS, on January 5, 2022, the Land Court entered judgment in favor of the Town and against SPE in the Tax Foreclosure Action;

WHEREAS, on May 26, 2022, the Town issued a request for proposals for the purchase and redevelopment of the Property (the "RFP");

WHEREAS, the Town received proposals from Ferris, Lax, and Pulte Homes of New England, LLC in response to the RFP;

WHEREAS, the Town, by and through its Select Board, selected Lax's proposal to purchase the Property;

WHEREAS, in November 2022, Ferris filed suit against the Town and Lax in Massachusetts Superior Court for breach of implied contract, declaratory judgment, and injunctive relief as a result of the Town's selection of Lax's proposal, <u>Ferris Development Group, LLC</u> v. <u>Town of Westborough, et al.</u>, Mass. Superior Court Case No. 2285CV0128 (the "30B Action");

EXECUTION VERSION

WHEREAS, on January 4, 2023, SPE filed* a Motion to Vacate the Tax Title Foreclosure Judgment in the Tax Foreclosure Action (the "Motion to Vacate"), which Motion to Vacate the Town opposed;

WHEREAS, N&G subsequently appeared in the Tax Foreclosure Action to represent SPE and prosecute the Motion to Vacate;

WHEREAS, on August 31, 2023, N&G commenced a civil action on behalf of SPE against the Town and the members of its Select Board arising out of the judgment entered in the Tax Foreclosure Action and the Town's subsequent efforts to sell the Property, Westborough SPE, LLC v. Town of Westborough, et al., U.S. Dist. Ct. (D. Mass.) Case No. 4:23-cv-12017 (the "Federal Action");

WHEREAS, on August 31, 2023, before the Land Court adjudicated the Motion to Vacate, N&G and MobileStreet filed an involuntary Chapter 7 petition (the "Involuntary Petition") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") against SPE, commencing the Chapter 7 Bankruptcy Proceeding, In re Westborough SPE, LLC, U.S. Bankr. Ct. (D. Mass.) Case No. 23-40709 (the "Bankruptcy Proceeding");

WHEREAS, on September 5, 2023, SPE filed* (through the same individual who filed the Motion to Vacate in the Tax Foreclosure Action) an answer consenting to the Involuntary Petition;

WHEREAS, on October 3, 2023, the Town filed a Motion for Relief from Automatic Stay (the "Motion for Relief") in the Bankruptcy Proceeding, in which the Town, inter alia, contended that the Property was no longer an asset of SPE;

WHEREAS, on October 11, 2023, the Bankruptcy Court entered an Order of Relief in the Bankruptcy Proceeding, after no parties having filed an objection to the entry of an Order for Relief;

WHEREAS, on October 12, 2023, the Bankruptcy Court appointed the Trustee to administer the assets and liabilities of SPE (the "Bankruptcy Estate");

WHEREAS, Ferris, N&G, and MobileStreet all filed proofs of claim against the Bankruptcy Estate;

WHEREAS, during a November 30, 2023 hearing on the Motion for Relief (which was continued), the Trustee raised the possibility of commencing an adversary proceeding to assert a claim against the Town pursuant to 11 U.S.C. § 548 to avoid the judgment entered in the Tax Foreclosure Action;

WHEREAS, on January 16, 2024, the Town filed a Motion to Dismiss the Bankruptcy Proceeding pursuant to 11 U.S.C. § 707(a) (the "Motion to Dismiss");

---

* The Town has disputed whether SPE has been properly revived and had the ability to file court papers.

2

EXECUTION VERSION

WHEREAS, the Trustee and other parties in interest have filed objections to the Motion to Dismiss;

WHEREAS, on January 17, 2024, the Trustee removed the Tax Foreclosure Action to an adversary proceeding in the Bankruptcy Court, Town of Westborough v. Westborough SPE, LLC, U.S. Bankr. Ct. (D. Mass.) Case No. 24-ap-04006;

WHEREAS, on February 7, 2024, the Town filed a Motion to Remand and/or Abstain from Hearing the Tax Foreclosure Action (the "Motion to Remand" and, with the Motion for Relief and Motion to Dismiss, the "Town's Motions");

WHEREAS, the Town's Motions remain pending before the Bankruptcy Court;

WHEREAS, the Parties intend to narrow or resolve the disputes between them concerning the Property, including to resolve all disputes between SPE and the Town;

NOW, THEREFORE, in consideration of the promises and covenants set forth below, and for other good and valuable consideration as set forth in this Agreement, the Parties agree as follows:

1. <u>Motion to Approve</u>: Upon execution of this Agreement, the Trustee shall file a motion to approve the settlement pursuant to Fed. R. Bankr. P. 9019 (the "Motion to Approve") in a form that is agreeable to all other Parties, each of whom shall assent to the Motion to Approve. The Motion to Approve shall expressly seek a final order from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1) as this Agreement seeks to dispose of all claims and disputes between SPE and the Town concerning the Property.

2. <u>Sale of the Property</u>:

a. Within three (3) days following the expiration of the 14-day appeal period of the Bankruptcy Court's entry of a final order allowing the Motion to Approve, the Trustee shall file in the Bankruptcy Court a withdrawal of the Motion to Vacate in the Tax Foreclosure Action adversary proceeding; provided, however, that if the Tax Foreclosure Action has been remanded to the Land Court prior to that time, the Trustee shall file the withdrawal in the Land Court;

b. The Town and Lax shall have a period of one hundred twenty (120) days from the expiration of the 14-day appeal period of the Bankruptcy Court's entry of a final order allowing the Motion to Approve to complete the sale of the Property pursuant to the Town's selection of Lax's proposal in response to the RFP at the price of $2,500,001. In no event shall the Trustee or any other Party challenge, interfere with, or seek to unwind such sale. If any other Party challenges, interferes with, or seeks to unwind such sale, they shall be precluded from purchasing the Property from the Trustee in the event that Lax does not complete the sale.

c. In the event that a stay of the Bankruptcy Court's entry of a final order allowing the Motion to Approve pending appeal is entered, the time periods set forth in sections 2.a and 2.b above shall be paused while the stay is in place.

3

EXECUTION VERSION

d.    In the event that Lax does not complete the purchase of the Property within the 120-day period (subject to section 2.c above), the Town agrees that the Trustee shall take the Property as part of the Bankruptcy Estate and may proceed to sell the Property to Ferris for the sale price of $2,875,000. In the event that Ferris fails to purchase the Property at the aforementioned sale price within 30 days from the expiration of the exclusive Lax sale period (set forth in section 2.b above), then the Trustee may proceed to sell the Property via a sale pursuant to 11 U.S.C. § 363. To the extent necessary to facilitate the Trustee's taking of the Property for this purpose, after the expiration of the 120-day Lax sale period (subject to section 2.c above), the Town will stipulate to conditionally vacate the tax title foreclosure judgment entered in the Tax Foreclosure Action solely for the purposes of permitting the Trustee to sell the Property, which stipulation shall be contingent upon the Bankruptcy Court's approval of any motion to sell, which motion shall be assented to by all Parties. If, for any reason, such sale does not take place, the judgment in the Tax Foreclosure Action shall not be vacated.

e.    Whether the sale is to Lax, Ferris, or another party, the Property will be sold subject to (i) a permanent trail easement on the Property in the form attached hereto as **Exhibit A**; and (ii) the Reciprocal Covenants, such that necessary maintenance items arising under the Reciprocal Covenants which were not undertaken by MobileStreet prior to the closing but must be completed after the closing of any sale of the Property pursuant to this Agreement are not discharged under this Agreement and shall be the responsibility of the new owner of the Property. Notwithstanding, however, neither Lax nor Ferris shall be liable for any and all amounts due and owing under the Reciprocal Covenants prior to the closing upon Lax's or Ferris's purchase and sale of the Property.

f.    If the Trustee sells the Property as set forth in section 2.d, the Town agrees to execute any and all documents reasonably requested by the Trustee or the buyer that may be necessary to convey title clear of the Town's tax lien or related such claims.

3.    Distribution of Sales Proceeds: The Town shall receive the initial distribution from the sale of the Property pursuant to section 2 above in the amount of $1,165,000, which amount SPE, through the Trustee, stipulates is the amount due and owing to the Town (including legal fees) as a result of the tax lien and tax taking process, based on the Trustee's due diligence of materials the Town has provided to the Trustee. In the event that the Property is sold by the Trustee pursuant to section 2.d above but such sale is for less than this amount, the Trustee shall pay the Town the balance of this amount from the Bankruptcy Estate. Upon payment of this amount, the Town shall have no further claim against SPE or the Bankruptcy Estate. The Trustee's Motion to Approve (and, if necessary, any motion to sell the Property) shall include a provision reflecting this term so that the Bankruptcy Court's allowance of such motion(s) authorizes the distribution to the Town. The remaining proceeds of the sale will be tendered to the Trustee to be distributed to SPE's remaining creditors and other appropriate parties only after Bankruptcy Court approval and pursuant to the priorities codified in the Bankruptcy Code.

4.    Claims of Other Settling Creditors:

a.    If the Property is sold to anyone other than Ferris, Ferris shall be entitled to recover and be paid its expenses for preparing its bid to the Town in response to the RFP from the Bankruptcy Estate in the amount of $100,000, but shall have no claim to such expenses against the

EXECUTION VERSION

Town and shall have no claim for other damages regarding the Property against the Town and SPE or the Bankruptcy Estate. Notwithstanding this provision, in the event that the Trustee is ready to close on a sale of the Property to Ferris pursuant to section 2.d but Ferris is unable or unwilling to purchase the Property within the time frame noted in section 2.d above, then Ferris agrees to waive its $100,000 claim and any other claims it may hold against the Town and SPE or the Bankruptcy Estate, except for the proof of claim amount noted below. Ferris's $100,000 claim is in addition to, and not in lieu of, its $10,000 proof of claim filed in the Bankruptcy Proceeding which shall be deemed allowed upon approval of this Agreement. If the Property is sold to Ferris, Ferris waives any claim it has against the Town, SPE, or the Bankruptcy Estate, with the exception of its $10,000 proof of claim filed in the Bankruptcy Proceeding, which the Trustee shall pay from the Bankruptcy Estate. Ferris and its principals agree not to make any disparaging statements regarding the Town, or any elected or appointed official or any employee thereof, concerning the solicitation and evaluation of proposals submitted in response to the RFP, sale of the Property pursuant to this Agreement, or any proceedings relative thereto. The Town and its elected or appointed officials or employees agree not to make any disparaging statements regarding Ferris, its officer, directors, or employees concerning the solicitation and evaluation of proposals submitted in response to the RFP, sale of the Property pursuant to this Agreement, or any proceedings relative thereto.

    b.  MobileStreet agrees that any expenses or obligations MobileStreet has incurred under the Reciprocal Covenants prior to the closing of any sale of the Property pursuant to this Agreement may only be recovered from the Bankruptcy Estate through a verified and approved proof of claim and shall not be made as a claim against the Town, Lax, Ferris or any other purchaser of the Property. Prior to any closing on the sale of the Property, MobileStreet and the Trustee will be required to either file a joint pleading with the Bankruptcy Court agreeing to the amount of MobileStreet's claim against the Bankruptcy Estate or will have requested and obtained an Order from the Bankruptcy Court establishing the amount of such claim (hereinafter "MobileStreet Allowed Claim"). After the distribution to the Town set forth in section 3 above, the Trustee shall place in escrow funds in the amount of MobileStreet Allowed Claim for distribution to MobileStreet. Within 30 days of the closing on the sale of the Property, the Trustee will file a motion with the Bankruptcy Court seeking approval to distribute the funds to satisfy the MobileStreet Allowed Claim.

    c.  N&G's proof of claim against the Bankruptcy Estate shall be processed in the ordinary course.

5.  **Dismissal of Litigation**: Within three (3) days of the Bankruptcy Court's allowance of the Motion to Approve,

    a.  SPE, through Trustee, will execute and file the voluntary notice of dismissal with prejudice attached hereto as **Exhibit B** in Federal Action; and

    b.  Ferris, the Town, and Lax will execute and file the voluntary stipulation of dismissal with prejudice attached hereto as **Exhibit C** in the 30B Action.

6.  **Mutual Release**: The Parties, their members, managers, officers, directors, shareholders, partners, principals, agents, servants, employees, representatives, attorneys,

5

EXECUTION VERSION

affiliates, subsidiaries, predecessors, successors, insurers, sureties, heirs and assigns, executors and administrators, past and present (the "Releasors"), hereby each release and forever discharge each other, their respective officers, directors, shareholders, partners, principals, agents, servants, employees, representatives, attorneys, successors, assigns and affiliates, subsidiaries, predecessors, successors, insurers, sureties, heirs and assigns, executors and administrators, past and present and each of them (the "Releasees"), of and from any and all claims, actions, causes of action, debts, demands, costs, charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, and expenses (including attorneys' fees and costs actually incurred), whatsoever, of every name and nature, both in law and equity or otherwise, known or unknown, arising out of or related to the Property, at any time through the Effective Date of this Agreement, which the Releasors, or any one or more of them, had or now have, from the beginning of the world to the Effective Date, specifically including, without limitation, all claims that could have been raised in the Tax Foreclosure Action, the 30B Action, the Federal Action, or the Bankruptcy Proceeding, except as set forth herein with respect to any proof of claim filed by Ferris, N&G, or MobileStreet in the Bankruptcy Proceeding.

7. <u>Zoning and Permitting</u>: Nothing in this Agreement shall be construed as a waiver of any zoning, permitting, or other requirements concerning the Property under the Town's Bylaws or other applicable law. Any purchaser of the Property pursuant to the processes contemplated by section 2 above shall be required to satisfy any zoning, permitting, or other legal requirements necessitated by a particular use of the Property.

8. <u>No Admission</u>: This Agreement shall not constitute or be construed or deemed to be evidence of any admission or concession of liability by any of the Parties.

9. <u>Entire Agreement</u>: This Agreement contains the entire agreement among the Parties with regard to the matters set forth herein. There are no other understandings or agreements, verbal or otherwise, in relation thereto, among the Parties except as expressly set forth herein. This Agreement may not be changed, modified, supplemented, or terminated except by a written agreement executed by the Parties.

10. <u>Representation by Counsel</u>: By entering into this Agreement, the Parties represent that they have completely read all terms hereof, that they have been represented by counsel of their choice, and that such terms are fully understood and voluntarily accepted by them.

11. <u>Governing Law</u>: This Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts.

12. <u>Jurisdiction</u>: The Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, this Agreement, including but not limited to any claims that this Agreement has been breached by one of the Parties.

13. <u>Miscellaneous</u>: The Parties agree to cooperate fully and to execute any and all necessary supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the intent of this Agreement, which are not inconsistent with its terms. This Agreement has been negotiated by the Parties and shall be construed as drafted by all Parties.

EXECUTION VERSION

14. <u>Execution</u>: This Agreement may be executed by facsimile or .pdf in one or more counterparts, each of which shall be deemed an original.

*[Signatures on following page]*

EXECUTION VERSION

IN WITNESS WHEREOF, the parties below have hereunto set their hands and seals, the dates below written.

WESTBOROUGH SPE LLC

_____
By: Jonathan Goldsmith, Chapter 7 Trustee

Dated: 7|3_____, 2024

FERRIS DEVELOPMENT GROUP, LLC

_____
By: David M. Ferris, its Manager

Dated: June 7_____, 2024

TOWN OF WESTBOROUGH

By Its Select Board:

_____
Patrick Welch, Chair

_____
Sean Keogh

_____
Allen Edinberg

_____
Ian Johnson

_____
Shelby Marshall

Dated: 5/20_____, 2024

LAX MEDIA MA LLC

_____
By: Jegan Gomangalam, Manager

Dated: July 8th_____, 2024

LAX MEDIA LLC

_____
By: Jegan Gomangalam, Manager

Dated: July 8th_____, 2024

THE MOBILESTREET TRUST

By Its Trustees:

_____
Durgaprasad Nagalla

_____
Venkatesh Mohanraj

Dated: 05/30/2024_____, 2024

NATHANSON & GOLDBERG, P.C.

_____
By: Jose Centeio, Partner

Dated: 5/22_____, 2024

905577/WBOR/0049

8

EXECUTION VERSION

# EXHIBIT A

# PERMANENT TRAIL EASEMENT

# EASEMENT AGREEMENT

_____, having an address of _____ ("Grantor"), hereby grants to **Westborough Community Land Trust, Inc.**, a Massachusetts not-for-profit corporation organized under M.G.L. c. 180, and having a mailing address of P.O. Box 838, Westborough, MA 01581 ("Grantee" or "WCLT"), with Quitclaim Covenants, for nominal consideration of One Dollar, a non-exclusive perpetual right and easement ("Trail Easement") to use, and to allow the public to enter and use, trails for public passage in, on, under and over a certain portion or portions of the property owned by the Grantor and located 231 Turnpike Road, Westborough, shown as Lot 1 on a plan recorded with the Worcester South District Registry of Deeds in Book 714, Page 77, containing 29 acres, more or less, according to said plan, and described in a deed recorded with said Deeds in Book _____, Page _____ (the "Property"):

    1.    Grantee and its agents and contractors shall have the right to clear, maintain, inspect, improve, repair, mark and use trails in, under, over, and across those portions of the Property shown as "Easement A", "Easement B", and "Easement C" (collectively, the "Trail Easement Area") on a plan entitled "_____", prepared by _____, dated _____, 2024, recorded with said Registry herewith (the "Easement Plan"), a reduced copy of which Easement Plan is attached hereto as Exhibit A and incorporated herein, which trails may be up to twenty (20) feet wide.

    2.    Grantee shall have the nonexclusive right to permit the public to pass and repass over said Trail Easement Area for passive recreational purposes, including, without limitation, bicycling, walking, jogging, dog walking, cross-country skiing, snowshoeing, scenic enjoyment, and other outdoor passive recreational activities, subject to the following prohibitions:

    (i)    Access by motorized vehicles, including, without limitation, snowmobiles, dirt bikes, motorcycles and all-terrain vehicles, shall be prohibited; with the following exceptions:

        (a) vehicles required by Grantee and/or heavy equipment to construct, improve relocate, maintain, repair, replace and patrol the Trail Easement Area;

        (b) motorized wheelchairs and like vehicles or motorized devices for use by the disabled, including but not limited to those "Other Power-Driven Mobility Devices" (OPDMD) as defined by the US Access Board and complying with WCLT's guidance for these trails; and

        (c) emergency vehicles on emergency calls or business;

    (ii)    Littering, picking or injuring plants or trees, injuring or harassing livestock or wildlife, building of fires, hunting and trapping shall be prohibited.

1

3. It is expressly acknowledged by, and is the express intention of, all parties hereto that the aforesaid recreational and other use(s) of the Trail Easement Area by the public shall be subject to and benefit from the protections guaranteed by G.L. c. 21, § 17C, commonly known as the Recreational Use Statute.

4. Grantee shall have the right, but not the obligation, from time to time, to cover or pave the trail surfaces by concrete, asphalt, wood chips, gravel, stone dust, or the like, at Grantee's sole cost and expense. Grantee shall obtain and bear any costs associated with obtaining permits required carry out future trail or trail-related improvements. Grantee, after notice to the Grantor, may also construct, maintain, repair and replace minor structures within the Trail Easement Area, such as benches, signage, boardwalks, screening, and other similar improvements, for the safety and/or convenience of persons using the trails.

5. Grantee shall have no right to assign this Trail Easement without prior written consent of a majority of the Grantors, provided, however, that no such consent shall be required for Grantee to assign this Trail Easement to the Town of Westborough.

6. The Grantee shall ensure that all contractors and/or subcontractors undertaking action on its behalf to construct or repair the trail and/or other improvements the Trail Easement Area have liability coverage to protect all Grantors and naming the Grantors as additional insureds, with the following coverages: (a) general liability insurance with a limit of liability of at least One Million Dollars ($1,000,000.00) per person and Two Million Dollars ($2,000,000.00) annual aggregate for property damage and at least One Million Dollars ($1,000,000.00) per occurrence for personal injury or property damage, (b) Automobile Liability Insurance for owned, hired and non-owned automobiles with limits of liability not less than One Million Dollars ($1000,000.00) combined single limit for each accident for bodily injury and property damage; and (c) Worker's compensation insurance as required by applicable law.

7. Grantee shall post the trails with notices stating the rules and regulations governing its use by the public, and stating further that the property over which it passes is private and that, in permitting its use by the public, the liability of the landowner is limited by Massachusetts General Laws Chapter 21, Section 17C, as amended.

8. During such times as Grantee invites public use of the trails, Grantee shall use reasonable efforts to maintain the trails in neat, clean and safe condition, free and clear of debris and litter. Grantee shall have the right and obligation to clear, prune, and remove vegetation, including trees and shrubs, remove fallen limbs or branches and mow vegetated areas in the Trail Easement Area, provided such cleared areas remain in a condition compatible with the natural surroundings, take measures to discourage littering and other acts that would encroach upon the natural features of the trail corridors or diminish its attractiveness, take steps to educate users in trail etiquette, and include guidelines for users in maps and other trail publications, all at Grantee's sole cost and expense.

9. At no time shall the public use of the trails unreasonably interfere with the rights of Grantor or the Grantor's respective successors or assigns to use the Property. In the event that such interference occurs, Grantor and Grantee shall meet to consider Grantor's concerns and use

2

reasonable good faith efforts to address such concerns, the extent of such efforts to be subject to appropriation and authorization, but only if and as applicable.

10. The Grantors and Grantee retain the right over time to jointly agree to relocate the Trail Easement as necessary or convenient to preserve the accessibility of the trail or its contiguity with other trails on Grantee's Land, or for any other reason, provided such relocation is duly effected by an instrument executed by the Grantors and Grantee, the instrument is duly recorded at the Registry of Deeds, and the trails and all other improvements made by Grantee to the Trail Easement Area is reconstructed at the sole cost of the party requesting the relocation.

11. In the event Grantee damages the Property outside of the Trail Easement Area and/or any improvements thereon, Grantee shall promptly restore the Property and/or the improvements to a condition substantially similar to the condition that existed immediately prior to the commencement of such damage, to the extent practicable.

12. The provisions of this easement, which is executed under seal, shall be binding upon and may be enforced against both the Grantors and Grantee and their respective successors and assigns.

13. Grantor shall have no responsibility to provide any maintenance, but Grantor shall repair any damage caused by the negligence or intentional misconduct of the Grantor and/or Grantor's agents, employees, contractors and/or invitees to the Trail Easement Area and/or the improvements thereon. Grantor agrees that neither Grantor nor Grantor's agents, employees, representatives and parties acting by or through the Grantor will unreasonably interfere with the access rights granted to Grantee hereunder.

14. Any consent to be granted by the Grantor hereunder shall not be unreasonably conditioned, delayed or withheld, and if Grantors do not respond to requests for consent made in writing by Grantee within thirty (30) days from the submission of such request or any additional information required by the Grantee, the requested work shall be deemed approved, subject to all other provisions hereof.

15. The Trail Easement hereby granted shall be in gross and is not for the benefit of or appurtenant to any particular land. The Grantee's interest in the Trail Easement shall be assignable to any governmental or any non-profit, non-governmental organization whose purposes include conservation of natural areas. The burden of this Trail Easement shall run with the land and shall be binding upon all future owners of any interest herein.

[signature page follows]

Witness my hand and seal this ___ day of _____, 2024.

**GRANTOR:**

_____

By: _____

Name:

Title:

    not individually and without personal liability

COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

On this ____ day of _____, 2024, before me, the undersigned notary public, personally appeared _____, proved to me through satisfactory evidence of identification of satisfactory evidence of identification, which was ☐ photographic identification with signature issued by a federal or state governmental agency, ☐ oath or affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the persons whose name is signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose as _____.

_____

Notary Public

My commission expires:

4

EXECUTION VERSION

# EXHIBIT B

## NOTICE OF VOLUNTARY DISMISSAL

<u>Westborough SPE LLC</u> v. <u>Town of Westborough, et al.</u>,
U.S. District Court (D. Mass.) Case No. 4:23-cv-12017

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, SS.                                    CASE NO. 4:23-cv-12017-MRG

WESTBOROUGH SPE, LLC,

    Plaintiff,

v.                                                NOTICE OF VOLUNTARY
                                                  DISMISSAL

TOWN OF WESTBOROUGH, et al.

    Defendants.

NOW COMES Plaintiff Westborough SPE, LLC and hereby provides notice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) that this action and all claims asserted therein are VOLUNTARILY DISMISSED with prejudice. All parties are to bear their own costs and waive any rights of appeal.

Respectfully submitted,

PLAINTIFF WESTBOROUGH SPE, LLC

By its Chapter 7 Trustee (Case No. 23-40709)

_____
Jonathan R. Goldsmith, Esq. (BBO# 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, Suite 1505
Springfield, MA 01103
Tel. (413) 747-0700

### Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on _____, 2024.

_____
Jonathan R. Goldsmith, Esq.

EXECUTION VERSION

# EXHIBIT C

## STIPULATION OF VOLUNTARY DISMISSAL

<u>Ferris Development Group, LLC</u> v. <u>Town of Westborough, et al.</u>,
Mass. Superior Court Case No. 2285CV01281

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.  SUPERIOR COURT DEPARTMENT
CASE NO. 2285CV01281

FERRIS DEVELOPMENT GROUP, LLC,

Plaintiff,

v.

TOWN OF WESTBOROUGH, LAX MEDIA, LLC and LAX MEDIA MA, LLC.

Defendants.

STIPULATION OF VOLUNTARY DISMISSAL

NOW COME Plaintiff Ferris Development Group, LLC and Defendants Town of Westborough, Lax Media, LLC, and Lax Media MA, LLC and pursuant to Mass. R. Civ. P. 41(a)(1), hereby STIPULATE that this action and all claims asserted therein are VOLUNTARILY DISMISSED with prejudice. All parties are to bear their own costs and waive any rights of appeal.

1

Respectfully submitted,

| PLAINTIFF | DEFENDANT |
|---|---|
| FERRIS DEVELOPMENT GROUP, LLC | TOWN OF WESTBOROUGH |
| By its attorney, | By its attorneys, |

| | |
|---|---|
| Thomas A. Mullen (BBO# 360315) | Thomas W. McEnaney (BBO# 629130) |
| Thomas A. Mullen, P.C. | Roger L. Smerage (BBO# 675388) |
| 40 Salem Street, Suite 12 | KP Law, P.C. |
| Lynnfield, MA 01940 | Town Counsel |
| (781) 245-2284 | 101 Arch Street |
| tmullen@thomasamullenpc.com | 12th Floor |
| | Boston, MA 02110-1109 |
| | (617) 556-0007 |
| | tmcenaney@k-plaw.com |
| | rsmerage@k-plaw.com |

DEFENDANTS

LAX MEDIA, LLC and LAX MEDIA MA, LLC

By their attorney,

_____
Christopher M. Mulhearn (BBO# 628626)
Law Office of Christopher M. Mulhearn, Inc.
1300 Division Road, Suite 304
West Warwick, RI 02893
Tel.: (401) 533-9330
cmulhearn@mulhearnlawri.com

Dated: _____, 2024

2

## CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Stipulation of Voluntary Dismissal to be served by electronic mail to the following counsel of record:

>Thomas A. Mullen, Esq.
>40 Salem Street
>Building 2, Suite 12
>Lynnfield, MA 01940
>tmullen@thomasamullenpc.com
>*Counsel for Plaintiff Ferris Development Group, LLC*

>Christopher M. Mulhearn, Esq.
>1300 Division Road, Suite 304
>West Warwick, RI 02893
>cmulhearn@mulhearnlawri.com
>*Counsel for Defendants Lax Media, LLC and Lax Media MA, LLC*

Dated: _____, 2024

_____
Roger L. Smerage

3