UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

In re:

WESTBOROUGH SPE LLC,

              Debtor.

Chapter 7
Case No. 23-40709-CJP

## MOTION TO RECONSIDER ORDER GRANTING EXTENSION FOR TOWN OF WESTBOROUGH AND RECONSIDER DENIAL OF SANCTIONS FOR VIOLATION OF AUTOMATIC STAY

### I. INTRODUCTION

Lolonyon Akouete, a creditor in the above-captioned case, hereby moves the Court to (1) reconsider its order dated March 19, 2024 (Dkt. No. 115), which granted the Town of Westborough's Motion to Enlarge the Time to File a Proof of Claim (Dkt. No. 110), and (2) reconsider its denial of the Motion for Sanctions for Violation of the Automatic Stay (Dkt. 178).

### II. BACKGROUND

1. **Property Ownership and Tax Liens**

- Until January 5, 2022, Westborough SPE LLC (the "Debtor") was the record owner of the property located at 231 Turnpike Road, Westborough, Massachusetts, recorded in the Worcester County Registry of Deeds at Book 19369, Page 75 (the "Property").
- On December 28, 2018, the Town of Westborough (the "Town") took the Property for non-payment of real estate taxes.
- On January 5, 2022, the Land Court issued its final judgment of foreclosure in connection with the Town's tax taking of the Property.
- On January 4, 2023, the Debtor filed a motion to vacate the foreclosure judgment based on due process violations in the Land Court, which the Trustee has removed to this Bankruptcy Court.

2. **Automatic Stay Violation**

- On August 31, 2023, Petitioning Creditors Nathanson & Goldberg, P.C. and MobileStreet Trust commenced this bankruptcy proceeding by filing an involuntary Chapter 7 petition against the Debtor.
- An Order for Relief was entered on October 11, 2023, and Jonathan Goldsmith was appointed as the Chapter 7 Trustee.
- On February 13, 2024, Walter A. Horst willfully violated the automatic stay by filing a re-correction of the Delaware Certificate of Correction of Babcock and Brown Parallel Member LLC. This action directly interfered with the administration of the Debtor's bankruptcy estate.

## III. ARGUMENT

**A. Reconsideration of Order Granting Extension for Town of Westborough**

1. **Rule 3002(c) Strict Interpretation**

- The Federal Rules of Bankruptcy Procedure, Rule 3002(c), provides a 180-day period for governmental units to file a proof of claim. This period has already expired in this case. Rule 3002(c) permits extensions only under six specific exceptions:
    1. A "governmental unit" files a proof of claim no later than 180 days after the order for relief.
    2. An infant or incompetent person or the representative of either files a late proof of claim.
    3. An unsecured claim which arises in favor of an entity or becomes allowable as a result of the judgment may be filed within 30 days after the judgment becomes final.
    4. A claim arising from the rejection of an executory contract or unexpired lease of the debtor.
    5. If a dividend appears possible after a notice of insufficient assets to pay a dividend was given to creditors.
    6. If notice of the time to file a proof of claim has been mailed to a creditor at a foreign address and the court finds that the notice was insufficient under the circumstances.

2. **Lack of Applicability of Rule 3002(c) Exceptions**

- The Town's request does not fall under any of the six enumerated exceptions of Rule 3002(c). The motion was based on a speculative future determination regarding the property's inclusion in the bankruptcy estate, which is not a valid reason under Rule 3002(c).

3. **Relevant Case Law**

- In re New England Motor Freight, Inc., 571 B.R. 881 (Bankr. D. Mass. 2017): The court held that a creditor's late proof of claim could not be accepted unless one of the specific exceptions under Rule 3002(c) applied.
- In re Sheedy, 875 F.3d 740 (1st Cir. 2017): The First Circuit upheld a bankruptcy court's denial of a late-filed proof of claim, affirming that deadlines set forth in the Bankruptcy Code and Rules are to be strictly enforced.
- In re D.C. Sullivan Co., 929 F.2d 1 (1st Cir. 1991): The court ruled that bankruptcy rules concerning filing deadlines must be followed strictly, and exceptions can only be made within the explicit framework provided by the rules.
- In re Hydro-Action, Inc., 341 B.R. 186 (Bankr. D. Mass. 2006): The court denied a creditor's motion to file a late proof of claim, emphasizing the limited scope of its discretion to extend deadlines.

4. **Delay Beyond Permissible Extension Period**

- The Court's order granting the Town of Westborough an extension of time to file a proof of claim was issued on March 19, 2024. According to Bankruptcy Rule 3002(c)(6), on a motion filed by a creditor before or after the expiration of the time to file a proof of claim, the court may extend the time by not more than 60 days from the date of the order granting the motion. However, it has now been 138 days since the issuance of the order, which

significantly exceeds the permissible extension period of 60 days. This delay is contrary to the intended timeframe and undermines the orderly process of the bankruptcy proceedings.

5. **Circumvention of the Normal Bankruptcy Claim Process**

- The Town's attempt to extend the deadline for filing a proof of claim appears to be an effort to circumvent the normal bankruptcy claim process. This includes potentially avoiding limitations on the inclusion of punitive interest and legal fees in their claim.
- In the Matter of Unified Control Systems, Inc., 586 F.2d 1036 (5th Cir. 1978): The Fifth Circuit held that penalties and forfeitures may not be allowed in bankruptcy except to the extent of showing pecuniary loss. The excessive interest rates and punitive fees by the Town align more closely with penalties rather than compensatory claims.
- In the Matter of Kline, 403 F. Supp. 974 (D.C. Md. 1975): The court found that an excise tax that imposed a penalty was not allowable under the Bankruptcy Act, as its sole substantial purpose was to penalize wrongful conduct. 11 U.S.C. § 724(a) authorizes the bankruptcy trustee to avoid liens that secure claims for fines, penalties, forfeitures, or punitive damages if these claims do not compensate for actual pecuniary losses. Essentially, it ensures that such punitive claims are subordinated in the bankruptcy process. According to Section 726(a)(4), these subordinated claims are to be paid only after all other timely and tardy claims have been satisfied. This prioritization guarantees that compensatory claims, such as those for unpaid wages and taxes, are addressed before any punitive claims, promoting a fair and equitable distribution of the debtor's estate.

6. **High Interest Rate as Punitive**

- The 16% interest rate charged by the Town of Westborough is significantly higher than typical market interest rates and inflation rates. This excessive rate exceeds what is necessary to compensate for delayed revenue and suggests a punitive intent.
- In many jurisdictions, interest rates on unpaid taxes are set closer to market rates to reflect the true cost of delayed payment. The 16% rate is disproportionately high compared to such standards.
- Total taxes for 2018-2021 amount to $381,641.40, with punitive interest totaling $223,330.58, further illustrating the excessive and punitive nature of the interest charged by the Town.
- Interest accrues at fourteen percent annually from the time that the taxes become delinquent until the taking, M.G.L. c. 59, § 57, and increases to sixteen percent annually after the taking, M.G.L. c. 60, § 62. Tallage, supra. This 16 percent interest is only 400 basis points shy of the rate that triggers the Commonwealth's criminal usury statute, M.G.L. c. 271, § 49. Id. at 463.

7. **Unconstitutional Foreclosure Process**

- The Town foreclosed on the Property without giving proper notice to the debtor, violating due process. This unconstitutional foreclosure process further underscores the punitive nature of the Town's actions. The debtor has filed a motion to vacate that foreclosure, which the Town has been opposing, thereby increasing legal costs unnecessarily.

8. **Severe Reduction in Property Value and Equity**

- The property's value decreased dramatically from $9,264,800 in 2018 to $2,082,000 in 2023. This drastic devaluation can be attributed in part to the foreclosure process and the town's handling of the property.
- By foreclosing and charging high interest, the town effectively retained significant equity that rightfully belonged to the Debtor. This retention of equity at the expense of the owner further supports the argument that the interest and fees are punitive.

9. **Inflated Costs and Disproportionate Claims**

- The town's claims include significant maintenance, utility, insurance, and legal expenses, which further inflate the amount owed. These costs could be seen as an additional punitive measure rather than legitimate expenses necessary for the upkeep of the property.
- The town's current claim of $1,222,634.32 includes these additional costs, which might not have been necessary had the town used a less punitive approach, such as eminent domain.

10. **Town Meeting Report and Intent**

- According to the Town's annual meeting report, the Town Manager's Statement indicates the intent to acquire the Property for redevelopment and economic development purposes. The report notes that the Town would take proactive measures to ensure the Property does not become a blight.
- The Town Board of Selectmen authorized the acquisition of the Property for $6,000,000, highlighting the economic value and strategic interest the Town has in the Property.
- The significant devaluation of the Property and the legal maneuvers by the Town indicate a strategy to acquire the Property at a reduced value through punitive measures rather than fair compensation.

11. **Unlawful Bid Process and Economic Incentives**

- The Town of Westborough prematurely and wrongfully conducted a bid process for the Property, despite the debtor lawfully exercising its right to redeem the real property within the one-year statutory period. The Town prioritized profit over legal adherence, as evidenced by the Board of Selectmen's 2019 summary of business activities, which stated: "[t]he Board carried out all routine business and, of special note, accomplished the following: * Awarded a bid for the purchase of Regal Cinema, 231 Turnpike Road, bringing in a potential for $4 Million to augment Town expenses after a waiting period." This demonstrates the Town's strong economic incentive to ensure that its "bid process" with Lax Media Inc. proceeded and the debtor was deprived of its only asset. The Town's actions aim to hinder, delay, and obstruct what should be a straightforward tax title redemption process by the debtor, the lawful owner of the property.

B. **Reconsideration of Denial of Motion for Sanctions for Violation of the Automatic Stay**

1. **Grounds for Reconsideration**

- New Evidence and Clarification: The initial motion did not adequately allege personal injury to the creditor, focusing instead on harm to the estate. This amended motion details the direct financial harm suffered by the creditor due to the reduction in the value of the estate.
- Personal Injury to Creditor: As a creditor entitled to 30% of the total asset recovery for the estate, any reduction in the value of the estate directly translates into a personal financial

loss. The actions of Walter A. Horst in violating the automatic stay have diminished the estate's value, thereby reducing my potential recovery and causing personal injury.

2. **Standing of Corporate Debtors and Trustees under § 362(k)**

- Section 362(k) provides that "an individual injured by any willful violation" of the automatic stay may recover damages. The majority of courts have interpreted "individual" to mean a natural person, excluding corporate debtors from seeking damages under § 362(k).
    - *In re Chateaugay Corp., 920 F.2d 183, 185-186 (2d Cir. 1990); In re Goodman, 991 F.2d 613, 619-620 (9th Cir. 1993); Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1549-1553 (11th Cir. 1996); In re Just Brakes Corp. Sys., Inc., 108 F.3d 881 (8th Cir. 1997); In re Spookyworld, Inc., 346 F.3d 1, 7 (1st Cir. 2003); St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533, 536 (5th Cir. 2009); In re Rafter Seven Ranches L.P., 414 B.R. 722, 732-733 (B.A.P. 10th Cir. 2009); In re C.W. Min. Co., 477 B.R. 176, 183 (B.A.P. 10th Cir. 2012).*
- However, the Third Circuit has held differently. In In re Atlantic Business and Community Corporation, 901 F.2d 325, 329 (3d Cir. 1990), the court stated that "[a]lthough Section 362[k] refers to an individual, the section has been uniformly held to be applicable to a corporate debtor." This interpretation has been followed by the Fourth Circuit in Budget Service Co. v. Better Homes of Va., 804 F.2d 289 (4th Cir. 1986).
- In re Healthcare Real Estate Partners, LLC, 15-11931 (CTG): The court reaffirmed that corporate debtors could be considered "individuals" under § 362(k), thus allowing them to seek damages for willful violations of the automatic stay.

3. **Supporting Case Law**

- St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533 (5th Cir. 2009): The Fifth Circuit held that a creditor has standing to seek an award of damages under section 362(k) for willful violations of the automatic stay, provided that the creditor's claim is direct rather than derivative.
- In re STN Enterprises, 779 F.2d 901 (2d Cir. 1985) and In re Commodore International Ltd., 262 F.3d 96 (2d Cir. 2001): These cases establish that creditors can pursue claims on behalf of the estate if the trustee unjustifiably refuses to act and if the claims are colorable and likely to succeed.
- Other Relevant Cases: In re Adelphia Communications Corp., In re Enron Corp., and In re Tribune Company demonstrate that creditors can pursue claims on behalf of the estate when it is in the best interest of all creditors.
- Creditors' Assignment of Claims: In P.R.T.C., the Court of Appeals upheld an express assignment to the debtor's largest creditor to pursue a variety of claims and rights actionable under Bankruptcy Code sections 541 through 552 arising out of a series of specified transactions. The trustees proposed the assignment after concluding that the estate lacked sufficient funds to pursue those claims or rights, but believed that they might have significant value. The creditor was required by the agreement to remit to the bankruptcy estate 50% of the net proceeds in the event that the creditor pursued the claims.

## IV. CONCLUSION

For the foregoing reasons, Lolonyon Akouete respectfully requests that this Honorable Court:

1. Reconsider and vacate its order dated March 19, 2024, granting the Town of Westborough's motion to enlarge the time to file a proof of claim.
2. Deny the Town of Westborough's motion to enlarge the time to file a proof of claim as untimely and not meeting any exceptions under Rule 3002(c).
3. Reconsider its order denying the Motion for Sanctions for Violation of the Automatic Stay (Dkt. 178).
4. Find that Walter A. Horst willfully violated the automatic stay imposed by 11 U.S.C. § 362(a).
5. Reverse the re-correction action taken by Walter A. Horst on February 13, 2024, regarding the Delaware Certificate of Correction of Babcock and Brown Parallel Member LLC.
6. Impose punitive damages against Walter A. Horst for his willful violation of the automatic stay.
7. Direct the Trustee to determine whether to pursue the claims against Babcock & Brown Limited, Dyann Blaine, Walter Horst, and the California State Controller or formally abandon these claims so that the Creditor may pursue them individually, pursuant to the principles established in In re STN Enterprises, In re Commodore International Ltd., and St. Paul Fire & Marine Ins. Co. v. Labuzan. See (Dkt. 166).
8. Grant such other and further relief as this Court deems just and proper.

DATED: August 4, 2024,  Respectfully submitted:

> By creditor,
>
> *[signature]*
>
> _____
> Lolonyon Akouete
> 800 Red Milles Rd
> Wallkill NY 12589
> info@smartinvestorsllc.com
> (443) 447-3276

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C.  101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com

_____
Lolonyon Y Akouete