UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

EXPEDITED MOTION FOR RECONSIDERATION OF ORDER GRANTING TRUSTEE'S
EXPEDITED MOTION TO CONTINUE HEARING AND EXTEND DEADLINE TO SUBMIT
APPRAISAL, AND SUPPLEMENTAL MOTION OPPOSING FURTHER CONTINUANCES

TO THE HONORABLE CHRISTOPHER J. PANOS, UNITED STATES BANKRUPTCY JUDGE:

**Lolonyon Akouete**, a creditor of Westborough SPE LLC ("Movant"), respectfully submits this **Expedited Motion for Reconsideration** of the Court's Order dated **September 13, 2024** [ECF No. 331], which granted the Trustee's **Expedited Motion to Continue the Hearing** and extend the deadline to submit an appraisal. This motion is made pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9006(b), and is supported by the following legal arguments, newly available evidence, and a historical pattern of prejudice against creditors due to repeated continuances.

## I. INTRODUCTION

1. On **September 13, 2024**, this Court granted the Trustee's motion to continue the evidentiary hearing scheduled for **September 17, 2024**, and extended the deadline for submitting appraisal testimony to **November 8, 2024** [ECF No. 319].
2. Movant opposed the Trustee's motion, noting that the Trustee failed to demonstrate "good cause" and that further delays would severely prejudice creditors by diminishing the value of the bankruptcy estate.
3. This motion seeks reconsideration on the grounds that the Trustee's request does not meet the legal standard of "good cause" under Federal Rule of Appellate Procedure 26(b), and that further delay unjustly harms creditors like Movant, who have already endured excessive postponements due to the Trustee's inaction.

## II. FAILURE TO DEMONSTRATE GOOD CAUSE

4. Under **Federal Rules of Bankruptcy Procedure 9006(b)** and **Federal Rules of Appellate Procedure 26(b)**, a party seeking an extension must establish "good cause." General claims such as "lack of time" or being "occupied with other business" do not satisfy this requirement.

5. In this instance, the Trustee's motion fails to articulate a specific and compelling reason for delaying the hearing other than the late realization that an appraisal is necessary. The need for an appraisal has been evident for months, and the Trustee has not provided any explanation for why the delay occurred or why an additional 60 days are required to complete the appraisal.

6. The Trustee has been aware of the need for an appraisal since **August 7, 2024**, when Movant filed a motion requesting the Trustee obtain one before the hearing. That motion was denied, and the Trustee failed to act in a timely manner, allowing critical time to lapse. The last-minute scramble to secure an appraisal does not constitute "good cause" for this delay.

## III. PREJUDICE TO CREDITORS CAUSED BY THE TRUSTEE'S DELAY

7. The Trustee's repeated delays are severely prejudicial to creditors, particularly Movant, who has actively sought a timely resolution. Despite numerous communications as early as **August 2, 2024**, urging the Trustee to address the appraisal issue, no action was taken until just before the scheduled hearing.

8. Creditors, including Movant, have raised concerns that these delays diminish the value of the estate, increase administrative costs, and obstruct timely distributions. The additional two-month delay will exacerbate these harms, allowing the estate to languish as property values fluctuate and costs rise.

9. Furthermore, the Trustee's reliance on the flawed **Request for Proposal (RFP)** process conducted by the **Town of Westborough** as a basis for avoiding an earlier appraisal is an indication of negligence. The Trustee should have known that the RFP process was insufficient to establish fair market value and should have secured an appraisal earlier.

## IV. AVAILABLE VALUATION METHODS RENDER A CONTINUANCE UNNECESSARY

10. The Court has access to multiple reliable sources of information regarding the value of the property at **231 Turnpike Road, Westborough, MA**, rendering further delays for an appraisal unnecessary. These valuation sources include:

- **The 2018 Appraisal**, which provides a credible estimate of the property's value.
- **Current Assessed Values** from the Town of Westborough, reflecting recent valuations.
- **Comparable Sales Data**, offering a market-based metric for determining fair value.

11. Additionally, the Town's Chief Assessor, a licensed appraiser, is available and can provide detailed insights into the property's value. There is no need for a 60-day delay to gather further evidence, especially when the necessary data is already available.

## V. IRREPARABLE HARM TO MOVANT DUE TO CONTINUATION WITHOUT FINANCIAL RELIEF

12. Granting the Trustee's request for a 60-day continuation without providing Movant any financial relief will cause irreparable harm, not only to Movant but to Movant's family.

13. Movant's stepmother was recently evicted from her residence despite paying rent on time. Unfortunately, she had been subletting from another tenant who failed to pay the primary rent, resulting in the eviction of both. Movant's stepmother is now living in temporary housing at an Airbnb, and she must vacate that property by the end of the month.

14. Due to the financial hardship caused by the delays in this case, Movant is unable to provide financial assistance to his stepmother, who is in dire need of stable housing. Without immediate financial relief from this court, Movant will be unable to help his stepmother secure a new residence before the end of the month, placing her at significant risk of homelessness.

15. Movant currently has only **$370.83** in available funds and is entirely dependent on interim distributions from this bankruptcy case to address this urgent financial need. The Court's decision to grant the 60-day continuance without simultaneously addressing Movant's financial hardship will exacerbate the irreparable harm to Movant and his family, as no other resources are available to provide timely relief.

## VI. IMPACT OF DELAY ON FINANCIAL HARDSHIP

16. The Trustee's motion to continue the hearing without offering any interim relief places Movant in an impossible financial situation. As this case continues to be delayed, Movant's severe financial hardship worsens. Immediate funds are necessary to assist in relocating Movant's stepmother and to cover other basic living expenses.

17. If the Court grants the Trustee's request for a continuance, it is imperative that the Court also grant Movant's **Request for Interim Distribution** to prevent further irreparable harm, including the potential loss of housing for Movant's stepmother and an escalating financial crisis for Movant.

## VII. HISTORY OF CONTINUANCES AND FINANCIAL HARM

18. The timeline of this case reveals an excessive number of continuances that have stalled any meaningful resolution, causing ongoing financial harm to creditors:

- **10/03/2023**: Motion for Relief from Stay filed by the Town of Westborough.
- **12/19/2023**: Hearing continued to **02/13/2024**, causing a nearly 2-month delay.
- **02/13/2024**: Status Conference continued to **03/19/2024**, delaying resolution further.
- **03/19/2024**: Hearing continued to **04/23/2024** without progress.
- **04/23/2024**: Continued to **07/25/2024**, with no clear justification for the delays.
- **07/25/2024**: Evidentiary Hearing postponed to **08/20/2024** and then again to **09/17/2024**.

19. At each stage, these continuances have delayed critical decisions and deprived creditors of timely resolution, with no valid justification.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Movant respectfully requests that the Court:

1. Reconsider and vacate its **Order dated September 13, 2024**, granting the Trustee's Expedited Motion to Continue the Hearing and Extend the Deadline to Submit Appraisal;
2. Deny the Trustee's Motion for Continuance and maintain the original hearing date of **September 17, 2024**, or set an earlier date;
3. If the Court grants the continuance, order that Movant's **Request for Interim Distribution** be granted to alleviate his financial hardship and ensure that Movant can assist his stepmother in securing stable housing;
4. Deny any further continuances of the hearings on the **Motion for Relief from Stay**, **Motion to Dismiss**, and **Motion to Approve Settlement**;
5. Set a firm deadline for resolving these critical motions and ensure that no further extensions are granted without substantial cause;
6. Require immediate action by the Trustee to ensure that the estate is administered efficiently and in the best interest of creditors;
7. Grant such other and further relief as the Court deems just and proper.

DATED: September 13, 2024, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

Exhibit 1

**Carey, Paul W.**

| | |
|---|---|
| **From:** | Roger L. Smerage <rsmerage@k-plaw.com> |
| **Sent:** | Thursday, May 9, 2024 11:29 AM |
| **To:** | Stephen Gordon |
| **Cc:** | Jonathan Goldsmith; Carey, Paul W.; Christopher Mulhearn; zide@buttersbrazilian.com; Jeffrey T. Blake; Brian W. Riley |
| **Subject:** | RE: Ch-7 cjp 23-40709 Hearing Scheduled;  Westborough SPE LLC |

Steve,

The parties represented by counsel on this email chain have worked hard to reach an agreement that all are satisfied with. I don't think we should let Lolo's vexatious filings change that. He'll have his opportunity to object to the settlement and, in the event Judge Panos does not approve the settlement, the parties can revisit the situation at that time.

I want to point out, and will want to make clear in any opposition that the Town files or joins regarding Lolo's motions, that the settlement **honors** the G.L. c. 30B process that the Town did employ to dispose of the property.

Best regards,

-Roger

**Roger L. Smerage, Esq.**

**KP** LAW

101 Arch Street, 12th Floor
Boston, MA 02110
617-654-1774
rsmerage@k-plaw.com
www.k-plaw.com

This message and the documents attached to it, if any, are intended only for the use of the addressee and may contain information that is PRIVILEGED and CONFIDENTIAL and/or may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and attachments thereto, if any, and destroy any hard copies you may have created and notify me immediately.

**From:** Stephen Gordon <sgordon@gordonfirm.com>
**Sent:** Thursday, May 9, 2024 9:45 AM
**To:** Roger L. Smerage <rsmerage@k-plaw.com>
**Cc:** Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>; pcarey@mirickoconnell.com; Christopher Mulhearn <cmulhearn@mulhearnlawri.com>; zide@buttersbrazilian.com; Jeffrey T. Blake <JBlake@k-plaw.com>; Brian W. Riley <BRiley@k-plaw.com>
**Subject:** Re: Ch-7 cjp 23-40709 Hearing Scheduled; Westborough SPE LLC

Roger-
I am happy to participate in a joint opposition. I understand Lolo's frustration but believe that is borne out of misunderstanding the Bankruptcy Court approval process. He will, like the whole world, see the settlement papers and have an opportunity to object and be heard before approval. He's afraid that the train is leaving the station before he has a chance to weigh in and that is of course not true.

I have given the procedural aspects some thought, also informed by Lolo's filing this morning. I think we need to consider a combined Section 363 and Rule 9019 filing. Not just to get the finality of 363m, but to set up a sale procedure that provides for competitive bidding. Obviously, a higher bid than Lax throws a monkey wrench into the settlement, but

1

Judge Panos will be deciding on the highest AND BEST offer and BEST includes a settlement value calculus (time delay avoided, multiple litigation uncertainty and certain cost avoided). We have a very experienced and savvy Judge, but he will have to give this very serious thought if a $7+ million bona fide offer shows up.

That said, I have had some significant experience with Pulte Homes over the years. While every situation is different, Pulte will, itself, tell you that they are homebuilders and not land developers. My experience has been that they want to buy pad ready lots upon which they can build homes immediately. They do not, in my experience, land bank, and our loathe to get involved with litigation (or, for that matter, distress buying), not to mention taking on community hostility. However, if we do not have a 363 sale process with an opportunity for counter offers, we will never hear the end of it . Something to discuss on a counsel only call.

Best,

Steve

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Direct: 617-456-1270
Main: 617-261-0100
Sgordon@gordonfirm.com
www.GordonFirm.com

On May 9, 2024, at 9:21 AM, Roger L. Smerage <rsmerage@k-plaw.com> wrote:

All,

As you know, the Court has set May 14 as the deadline for objections to Lolo's motion for the Court to "intervene" in the settlement process. Although I'm not committed to it (and don't have Town approval at the moment), I wanted to at least throw out for discussion whether a joint objection from all of the interested parties would (a) make sense and (b) be something that others would be interested in/willing to do, particularly in light of Lolo's new filing this morning. No pressure, of course. Happy to set up a Teams meeting to discuss if folks would like.

Best regards,

-Roger

**Roger L. Smerage, Esq.**

**KP | LAW**

101 Arch Street, 12th Floor
Boston, MA 02110
617-654-1774
rsmerage@k-plaw.com
www.k-plaw.com

This message and the documents attached to it, if any, are intended only for the use of the addressee and may contain information that is PRIVILE and CONFIDENTIAL and/or may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient, you are hereby notified that dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies o message and attachments thereto, if any, and destroy any hard copies you may have created and notify me immediately.

2

Exhibit 2

Lenard B. Zide <zide@buttersbrazilian.com>; Christopher Mulhearn <cmulhearn@mulhearnlawri.com>;
Jeffrey T. Blake <JBlake@k-plaw.com>; Brian W. Riley <BRiley@k-plaw.com>; Allen Hight
<reomanagement11@gmail.com>
**Subject:** Re: Westborough SPE - Settlement Agreement


All-

This is great news. I have been in touch with N&G to obtain their signature. The other
Petitioning Creditor is ably represented by Len Zide.

Thoughts:

1. I have always thought that a "final" order is one as to which either (a) the appeal period
has run without any timely appeal having been filed or (b) all appeals have been exhausted
(or further appeals timed out) with the decision appealed from affirmed or appeals
dismissed. The Settlement Agreement describes Judge Panos allowing a R 9019 Motion as
a "final order."

2. The likelihood that Lolo will appeal from Judge Panos' decision is, I think, very high.

3. The likelihood that Lolo will obtain a stay pending appeal is, I think, very low.

4. It is, therefore, agreed that Lax will close within the time required notwithstanding the
pendency of an appeal without a stay or lose its right to purchase.

5. And it is also agreed that if Lax fails to close, then Ferris must close within its required
time notwithstanding the pendency of an appeal without a stay or Ferris will likewise lose
its right to purchase and the Trustee will then conduct a Section 363 sale commencing no
later than 5.5 months from the entry of an Order allowing the R 9019 Motion.

6. While no Party to the Settlement Agreement will raise the issue, I am concerned that
Judge Panos will require some kind of "sale counteroffer" process, perhaps short of 363
formality, especially in the face of Lolo's claim that Pulte Homes will pay nearly $8 million
for the property. The Trustee, as moving party, might wish to depose Pulte once Lolo's
Objection creates a Disputed Matter permitting discovery.

Nice work everyone in getting to this terrific point.

Steve

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Direct: 617-456-1270
Main: 617-261-0100
Sgordon@gordonfirm.com
www.GordonFirm.com


On May 14, 2024, at 8:56 PM, Roger L. Smerage <rsmerage@k-plaw.com>
wrote:

All,

<zide@buttersbrazilian.com>; Christopher Mulhearn <cmulhearn@mulhearnlawri.com>; Jeffrey T. Blake <JBlake@k-plaw.com>; Brian W. Riley <BRiley@k-plaw.com>; Allen Hight <reomanagement11@gmail.com>
**Subject:** Re: Westborough SPE - Settlement Agreement

Jon-

Happy to discuss (I'm a bankruptcy procedural nerd dating back to when Bankruptcy Judges were Referees 😊). I don't think I'll be able to call today, but tell me what times from 8:30-10:00 or from 3:30 on tomorrow might work.

Best,
Steve

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Direct: 617-456-1270
Main: 617-261-0100
Sgordon@gordonfirm.com
www.GordonFirm.com


On May 28, 2024, at 4:05 PM, Jonathan Goldsmith <jgoldsmith@gkalawfirm.com> wrote:


Steve:
In terms of my drafting the Motion to approve the settlement below, I need to discuss with you the points you raise below. Please let me know of your availability for a phone call this week.
Jonathan

Jonathan R. Goldsmith, Esq.
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, Suite 1505
Springfield, MA 01103
Tel. (413) 747-0700
Fax (413) 781-3780

PLEASE NOTE:  This transmission and any attachments contain confidential or privileged information from Goldsmith, Katz & Argenio, P.C.  This information is intended to be for the use of the addressed individual(s) or entity.  If you are not the intended recipient, be aware that any disclosure, printing, copying, distribution or use of the contents of this information is prohibited.  If you have received this transmission in error, please notify us by telephone or by return email immediately.


**From:** Stephen Gordon <sgordon@gordonfirm.com>
**Sent:** Tuesday, May 14, 2024 10:00 PM
**To:** Roger L. Smerage <rsmerage@k-plaw.com>
**Cc:** Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>; Carey, Paul W. <pcarey@mirickoconnell.com>;

FDG_000123

Exhibit 3

Export  Reply  Reply All  Print

Fri 8/2/2024 2:13 PM

Stephen Gordon  <sgordon@gordonfirm.com>

RE: Westborough

To  Jonathan Goldsmith

**From:** Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>
**Sent:** Friday, August 2, 2024 12:38 PM
**To:** sgordon@gordonfirm.com
**Subject:** Westborough

Good morning Steve:

I just wanted to get your quick thoughts on an issue regarding this case. As you are aware, Lolo files pleadings and emails me on an almost a daily basis. His emails today focus on my failure to have obtained an appraisal for the real estate. I do believe the grounds proffered in the Motion support the settlement without a need for a current appraisal. I'm wondering, however, if you think it is necessary for me to obtain one to help bolster the settlement.

Jonathan R. Goldsmith, Esq.
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, Suite 1505
Springfield, MA 01103
Tel. (413) 747-0700
Fax (413) 781-3780

PLEASE NOTE: This transmission and any attachments contain confidential or privileged information from Goldsmith, Katz & Argenio, P.C. This information is intended to be for the use of the addressed individual(s) or entity. If you are not the intended recipient, be aware that any disclosure, printing, copying, distribution or use of the contents of this information is prohibited. If you have received this transmission in error, please notify us by telephone or by return email immediately.



Export   Reply   Reply All   Print

Fri 8/2/2024 2:13 PM

Stephen Gordon   <sgordon@gordonfirm.com>

RE: Westborough

To    Jonathan Goldsmith

Jon-

Lolo emailed me yesterday to see if N&G received an appraisal (from the Town) in discovery. I have them checking. Appraisal is an issue. This is not a straight up sale. You're settling with the Town and Ferris and (a lesser issue) MobileStreet. You're not just selling a piece of property. Nonetheless, if the property is worth $5 Million or more, maybe you should think about fighting with everyone rather than settling. But if the appraisal were even $3.5 million, best to settle as the additional benefit of settling is clearly worth a million dollars. What is the assessed value? Let me see if N&G has an appraisal. Ferris fought to buy for $2.8 million, so clearly he thought there was value over and above that. But would you be chasing your (the estate's) tail. If Ferris had a valid pre-petition contract to buy for $2.8 Million, and you sell for $5 million, his executory contract rejection damages will be the difference between $2.8 million and the amount above that that you sell the property for. So, Ferris' rejection claim, in a 100% case, consumes all of your sale proceeds above $2.8 million (hence the chasing of the tail). Still, the settlement will fly through if an appraisal comes in anywhere under $3 million. Let's see if N&G has an appraisal. Worth asking Roger if he has one?

Exhibit 4



Export   Reply   Reply All   Print

Tue 8/13/2024 8:09 AM

Jonathan Goldsmith   < >

RE: AI

To   Lenard B. Zide

Good morning Len:

I have now come to the realization (which I should have come to much earlier) that this guy has no interest in resolving the matter unless he gets a seven-figure settlement- which he will not get!! I offered him a settlement (subject to approval by the Bankruptcy Court) that would have provided him with many shekels, but that still wasn't enough for him. As such, I have called in some reinforcements, and we will fight the battle and win the war. There is a good possibility that he will get nothing at the end, but clearly will not get the amount that I offered as a settlement. I already have a legal fee escrow so to speak, in the tune of 1.2 million dollars remitted to me from the State of California.

By the way, I believe it is my first generative A1 Bankruptcy proceeding.

We will miss you on the 20th.

All the best,

Jon

**From:** Lenard B. Zide <zide@buttersbrazilian.com>
**Sent:** Tuesday, August 13, 2024 7:24 AM
**To:** Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>
**Subject:** AI

Jon: it became clear to me when I awoke this AM to Lolo's latest missive that this must be your first generative AI Bankruptcy proceeding. Should I file a Joint Assented To Motion To Establish a Legal Fee

<span style="color:red">Exhibit 5</span>

**Carey, Paul W.**

| | |
|---|---|
| **From:** | Lenard B. Zide <zide@buttersbrazilian.com> |
| **Sent:** | Sunday, May 5, 2024 1:27 PM |
| **To:** | Stephen Gordon |
| **Cc:** | Roger L. Smerage; Carey, Paul W.; Jonathan Goldsmith; Christopher Mulhearn; Jeffrey T. Blake; Brian W. Riley; Allen Hight |
| **Subject:** | Re: Westborough SPE - Settlement Agreement |

Steve: Thank you for taking the time to clarify this otherwise murky bar exam fact pattern. The settlement agreement is fine and I appreciate your and everyone's willingness to share their time with me. Talk soon.    Len

**Sent by *Len Zide***


On May 5, 2024, at 1:11 PM, Stephen Gordon <sgordon@gordonfirm.com> wrote:

Len-
I like to stay in my own lane. There is much confusion and contention over the ownership and management of the Debtor. The beauty of the Chapter 7 bankruptcy proceeding is that the resolution of those issues are of no consequence to creditors. Before the bankruptcy case, the Controller of California refused to pay the $1.2 million of escheated funds to Lolo. A lawsuit would have taken years with uncertain results and uncertainty that the funds would be used to pay creditors. The Trustee and the creation of a Bankruptcy Court-controlled bankruptcy estate has eliminated the time delay of litigation in California and both uncertainties.

We will very soon see a proposed settlement regarding the disposition of the Debtor's interest in its real property. While the approval of the settlement will pave the way to a full recovery by creditors, it may be the subject of objection(s). On the issue of approval of the settlement, Judge Panos will need to consider the best interests of creditors and the bankruptcy estate (which, since there will likely be a surplus after paying creditors, includes the interests of the Debtor entity). But I do not think that Judge Panos will need to determine the Debtor's ownership and management disputes in order to approve or disapprove the settlement. On behalf of the Petitioning Creditors (including your client 😊), I plan to urge approval of the settlement.

If the settlement is approved and consummated, I have several times discussed with the Trustee his seeking Bankruptcy Court approval for the Trustee to commence an interpleader action, either in Delaware Chancery Court or Massachusetts Superior Court, depositing the surplus funds in the interpleader court in exchange for a release for the Trustee and the estate. All parties competing for control/ownership of the surplus funds will have their rights determined in the interpleader action and the bankruptcy case can be expeditiously closed.

Like all of us, I remain vigilant against the potential that these filings interfere with the purpose of Chapter 7, but I otherwise pay no attention to facts and claims not requiring determination to serve that singular purpose.

Best,
Steve


Stephen F. Gordon

1

Exhibit 6

**UNITED STATES BANKRUPTCY APPELLATE
PANEL FOR THE FIRST CIRCUIT**

_____

**BAP NO. MW 24-016**
_____

**Bankruptcy Case No. 23-40709-CJP**
_____

**WESTBOROUGH SPE LLC,**
**Debtor.**
_____

**LOLONYON AKOUETE,**
**Appellant,**

**v.**

**NATHANSON & GOLDBERG, P.C, Petitioning Creditor**
**THE MOBILESTREET TRUST, Petitioning Creditor,**
**JONATHAN GOLDSMITH, Chapter 7 Trustee,**
**TOWN OF WESTBOROUGH, Creditor,**
**Appellees.**
_____

**Finkle, Chief U.S. Bankruptcy Appellate Panel Judge;**
**Lamoutte and Cabán, U.S. Bankruptcy Appellate Panel Judges.**

## <u>MOTION FOR RECONSIDERATION</u>

**JUDGMENT OF DISMISSAL**

Lolonyon Akouete (the "Appellant") respectfully moves this Honorable Court to reconsider its Judgment of Dismissal issued on August 29, 2024, and to exercise jurisdiction over this appeal under the Collateral Order Doctrine and the Forgay-Conrad Doctrine. The appellant submits that the circumstances of this case meet the requirements for both doctrines, necessitating immediate appellate review to prevent irreparable harm. This motion is also grounded in newly discovered evidence that significantly impacts the merits of the case and was not available at the time of the original proceedings.

## <u>BACKGROUND</u>

On July 25, 2024, the bankruptcy court denied the Appellant's Second Motion for Interim
Distribution as "premature." This order effectively halts any immediate distribution of the
significant funds available in the estate, amounting to approximately $1.2 million. The Appellant
is a creditor and purported manager of Westborough SPE LLC, with a vested interest in ensuring
that the estate's assets are administered fairly and that creditors receive their rightful shares
promptly.

## NEWLY DISCOVERED EVIDENCE

To succeed on a motion for reconsideration, the moving party must show "newly discovered
evidence or a manifest error of fact or law." In re Wedgestone Fin., 142 B.R. 7, 8 (Bankr. D.
Mass. 1992) (citations omitted). In support of this motion, I present newly discovered evidence
obtained through recent discovery, which was not available during the original proceedings. This
evidence is crucial as it directly impacts the fairness and legality of the foreclosure process and
the subsequent handling of the debtor's assets.

### 1. The Town of Westborough's Fraudulent Foreclosure

On November 3, 2017, Jon Steinberg, the Chief Assessor for the Town of Westborough, sent an
email to Jim Malloy, former town manager, confirming that the Town of Westborough was fully
aware that the sole member of the debtor, Westborough SPE LLC, was Mignonette Investments
Limited. Despite this crucial information, the Town failed to disclose this material fact to the
court in their subsequent foreclosure actions. The Town's omission of such a critical detail
suggests an intent to obscure the true ownership of the property, potentially to fraudulently
foreclose on the property and retain equity that rightfully belongs to Westborough SPE LLC.

Further supporting this, an email dated October 18, 2017, from Chaye Besherse, a Legal Services
Manager at Babcock & Brown, to Jon Steinberg, with copies to Walter Horst, CFO, Babcock &
Brown and Michael Larkin, CEO, Babcock & Brown International Pty Limited, reveals the
Town's awareness of the complex ownership structure involving Westborough SPE LLC. The
email discusses the difficulties encountered in identifying the true owner of the property, despite
extensive efforts involving multiple entities. The Town's knowledge of these complications, yet
their decision to proceed without fully disclosing them, raises serious questions about the Town's
assertions of diligent searches and due process during the foreclosure.

On April 19, 2018, Peter Hoffman, a private investigator, sent an email to Jon Steinberg,
providing additional context about the ownership issues surrounding the Regal Cinema property.
The email highlights the involvement of Mignonette Investments Limited and the destruction of
older company records, which further complicated the ownership tracing process. Despite being
aware of these significant challenges, the Town chose to move forward with foreclosure
proceedings without revealing these complexities. This deliberate omission further supports the
argument that the Town's actions were not conducted in good faith and were intended to mislead
the court and other stakeholders.

On October 22, 2018, Kenneth Fries, an agent of Lax Media, communicated with the Board of
Selectmen and Kristi Williams, discussing the deteriorating condition of the Regal Cinema

property. The email emphasizes the Town's knowledge of the involvement of Mignonette Investments Limited in the management of the property and the urgent need for action due to the property's worsening condition. However, instead of addressing these critical issues transparently, the Town proceeded with the foreclosure process, again failing to disclose the complexities of the ownership structure and the true state of the property. This suggests a potential intent to defraud the court by obscuring the ownership details to retain the property's equity for the Town's benefit.

**Exhibit 1:** Email 1 - Demonstrates that the Town was aware of the true ownership structure of Westborough SPE LLC involving Mignonette Investments Limited as early as 2017.
**Exhibit 2:** Email 2 - Supports the argument that the Town was aware of the complex ownership and administrative issues but failed to disclose them.
**Exhibit 3:** Email 3 - Further emphasizes the Town's knowledge of ownership complexities and the potential for mismanagement in the foreclosure process.
**Exhibit 4:** Email 4 - Highlights the Town's knowledge of Mignonette Investments Limited's involvement and the deteriorating condition of the property.

## 2. Coordinated Efforts to Defraud the Debtor and Creditors

In early May 2024, a series of emails exchanged among attorneys and stakeholders involved in the bankruptcy case of Westborough SPE LLC reveal a coordinated effort to push through a settlement agreement, despite concerns that it may not serve the best interests of the creditors. The communications suggest that while the parties were aware of potential higher offers for the property, they were more focused on ensuring the settlement's approval by the court, possibly to expedite the process and secure outcomes that aligned with their own interests.

On May 9, 2024, Lenard B. Zide sent an email expressing his concerns that the proposed settlement might not provide the best value for the creditors. Despite these reservations, subsequent emails from other parties, including Roger L. Smerage, emphasized the importance of presenting a united front to the court to facilitate the settlement's approval. This indicates that the parties were willing to overlook potential higher bids, such as one mentioned from Pulte Homes, which could have offered a more favorable outcome for the creditors.

Further correspondence on the same day shows Stephen Gordon acknowledging the likelihood of a higher offer for the property but suggesting that the settlement should proceed regardless. This sentiment was echoed by Roger L. Smerage, who advocated for a combined Section 363 and Rule 9019 filing to streamline the approval process, even though this approach could bypass the opportunity for competitive bidding that might benefit the estate more substantially.

These emails collectively demonstrate that the involved parties prioritized the settlement agreement over the creditors' best interests. Their focus on expediting the settlement, despite the possibility of securing a better financial outcome through alternative offers, suggests a coordinated effort to conclude the case in a manner that serves their own interests rather than those of the creditors.

**Exhibit 5:** Email 5 - Demonstrates the coordination among the parties to prioritize settlement approval over maximizing the estate's value.

### 3. Obstruction of Funds to Prevent Adequate Legal Representation

In a series of emails exchanged in February 2023, significant concerns arise regarding the handling of Westborough SPE LLC's unclaimed property, particularly in relation to the alleged collusion between the Town of Westborough's attorney and the California State Controller's Office. The unclaimed funds, which amount to over $1.2 million, were critical to the financial recovery of Westborough SPE LLC. However, these emails suggest a coordinated effort to prevent Lolonyon Akouete, the duly authorized manager, from accessing these funds, thereby obstructing his ability to vacate the foreclosure on the debtor's property.

The Town's attorney, alongside other involved parties, appears to have employed strategies to reduce Akouete's compensation significantly. This includes a purportedly false guardianship claim by Peter Blaustein, which was designed to minimize Akouete's financial recovery. Once Akouete resisted these efforts, the guardianship claim was abandoned, but Blaustein was subsequently recruited by the Town, further complicating the legal proceedings. This chain of events culminated in what Akouete contends is a fraudulent assent to the entry of judgment, underscored by collusion with the California State Controller and hostile actions in the land court proceedings.

On July 13, 2023, an email from Scott A. Schlager, a partner at Nathanson & Goldberg, P.C., to Attorney Harpreet Nakhwal at the California State Controller's Office, further illustrates these concerns. Schlager's email outlines the legal documentation supporting Akouete and Denise Edwards as the rightful managers of Westborough SPE LLC, authorized to recover the unclaimed funds. Despite this clear legal standing, the Town's legal team appears to have engaged in actions to delay or deny the release of these funds. This delay tactic aligns with broader efforts to depress the estate's asset values, thereby benefiting selective parties to the detriment of the estate and its rightful claimants.

**Exhibit 6 and 7:** Email 6&7 - Demonstrates the coordinated effort to obstruct the recovery of unclaimed funds to prevent adequate legal representation and challenge to the foreclosure.

### 4. The Collateral Order Doctrine and Forgay-Conrad Doctrine Apply

I respectfully request that the court exercise jurisdiction over this appeal under both the Collateral Order Doctrine and the Forgay-Conrad Doctrine. The circumstances of this case meet the requirements for both doctrines.

### Collateral Order Doctrine

- **Conclusively Determine the Disputed Question:** The bankruptcy court's order denying the interim distribution as "premature" conclusively determines that distribution to creditors, including myself, will not proceed at this time, despite the significant funds available in the estate.

- **Resolve an Important Issue Completely Separate from the Merits of the Action:** The issue of interim distribution is separate from the underlying merits of the bankruptcy case, which involves the administration and liquidation of the debtor's assets. The denial of interim distribution affects creditors' immediate financial interests, independent of the final outcome of the case.
- **Be Effectively Unreviewable on Appeal from a Final Judgment:** The denial of interim distribution could result in irreparable harm to me as a creditor, as it prevents me from accessing funds necessary for legal representation and defending the debtor's interests. By the time a final judgment is entered, the opportunity to protect these interests may be lost, making the order effectively unreviewable on appeal from a final judgment.

**Forgay-Conrad Doctrine**

The Forgay-Conrad Doctrine applies to orders that may cause irreparable injury to the aggrieved party if appellate review is delayed until the conclusion of the litigation. In this case:

- **Irreparable Injury Due to Denial of Interim Distribution:** The denial of interim distribution causes immediate financial harm by preventing access to funds that are essential for legal representation. This is particularly damaging as I am the only party actively defending the interests of Westborough SPE LLC. Without access to these funds, I cannot retain counsel to challenge the ongoing coordinated efforts by the Trustee, the Town of Westborough, and other parties to sell the debtor's property at a deep discount. This sale, if completed without my ability to effectively contest it, will result in a permanent loss of value for the estate and significant financial harm to myself as a creditor.
- **Irreparable Injury Due to Coordinated Efforts to Sell Property:** The ongoing efforts to push through a settlement and sell the debtor's primary asset at a reduced price, without proper consideration of higher offers or the interests of all creditors, represent an immediate threat to the estate's value. If these actions proceed unchallenged, the property could be sold for less than its fair market value, resulting in a significant loss of equity that could never be recovered. This would not only harm the estate but would also deprive me of my rightful share of the proceeds as a creditor entitled to a percentage of the asset recovery.

## <u>CONCLUSION</u>

The newly discovered evidence presented, along with the application of the Collateral Order Doctrine and the Forgay-Conrad Doctrine, demonstrates that immediate appellate review is necessary to prevent irreparable harm to my financial interests and to ensure that the debtor's assets are administered in a fair and lawful manner. Therefore, I respectfully request that the court exercise jurisdiction over this appeal under these doctrines and grant my motion for reconsideration.

DATED: September 2, 2024, Respectfully submitted:

By creditor/Appellant,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276



Jon Steinberg <jsteinberg@town.westborough.ma.us>

**Regal Cinema Summary - Associated emails to follow**
1 message

Jon Steinberg <jsteinberg@town.westborough.ma.us>                                        Fri, Nov 3, 2017 at 10:35 AM
To: Jim Malloy <jmalloy@town.westborough.ma.us>

Beginning with the Regal Cinema deed, the LLC of title Westborough SPE c/o Babcock & Brown Administrative Services, San Francisco.

Babcock & Brown Administrative Services incorporated the LLC with the Secretary of State at the time of sale. Annual filings were made through 2007 and the LLC was withdrawn at the Secretary of State's Office in 2009.

In 1997 the Lease was assigned to Northwestern and assigned a to a couple of different entities along the way.

I focused on the original transaction looking for ownership given that the assignments of the lease are all about the cash flow, not title of the property.

The original lease had an equity investor of Mignonette Investments Limited from the British Virgin Islands. As far as I could tell, this entity had been dissolved.

Chief Gordon had contacted Babcock & Brown in San Francisco and was unsuccessful so I looked broader.

    Babcock and Brown went through a liquidation in 2009. David Lombe of Deloitte was the court appointee for the liquidation: dlombe@deloitte.com.au

    David Lombe indicated he was only appointed for the Holding Company and the Administrative Services contact would be Michael Larkin, CEO of Babcock & Brown International Pty Limited

Michael Larkin forwarded me to Walter Horst, the CFO in California, who, it turns out was the same person Chief Gordon contacted.

Walter Horst indicated that there was no existing relationship with the company related to the LLC but that they had done similar research as a part of their required compliances. He put me in touch with the paralegal who had done the research, Chaye Besherse (see email)

I then contacted David Abramovitz of Goulston & Storrs PC in NY. He also indicated no information or relationship.

Paul Horvath who filed the tax returns for Mignonette in MA indicated they never paid him, he had no relationship and was unable to get any response.

I also contacted Northwestern Mutual Life Insurance, Mark Kishler, who handles their assets of this type. He forwarded me to Anne Brower who provided background on the assignment and assumption by Hush Holdings (see email and attached assignment.) I called the Larry Frishman who was the attorney in the assignment in NY who also had no relationship with Hush Holdings.

Jonathan Steinberg, MAA
Chief Assessor
Town of Westborough

(508)366-3010

*Please be advised the Office of the Secretary of State for the Commonwealth of Massachusetts has determined that E-mail could be considered a public record.*

3 attachments

   273 Turnpike Road Deed.pdf
   425K



Jon Steinberg <jsteinberg@town.westborough.ma.us>

## RE: Babcock and Brown Massachusetts, USA Real Estate Asset

1 message

**Chaye Besherse** <Chaye.Besherse@babcockbrown.com>                    Wed, Oct 18, 2017 at 1:00 AM
To: Jon Steinberg <jsteinberg@town.westborough.ma.us>, Walter Horst <walter.horst@babcockbrown.com>
Cc: Michael Larkin <Michael.Larkin@babcockbrown.com>

Hi Jon,

In the course of conducting research to determine Westborough ownership, Mark Stevens, Group Controller at Babcock & Brown located and contacted Equity Trust Hong Kong, which was appointed owner representative to transition management services. Contact information for the person he spoke with at Equity Trust Hong Kong is below:

Equity Trust Hong Kong

Serena Kwok

General Manager, Corporate Services

36/F, Tower Two, Times Square, 1 Matheson Street, Causeway Bay, Hong Kong T. direct +852 2106 9320 F. direct +852 2213 2157 Serena.Kwok@asia.equitytrust.com www.tmf-group.com

You may also want to contact David Abromowitz of Goulston & Storrs PC. His contact information was provided as notice to counsel on behalf of any matters concerning Westborough SPE LLC in the Hoyts Cinema transaction documentation. When we reached out to him in 2011, he did not respond, however you may have better luck. His contact information is attached.

Paul D. Horvath, CPA completed and provided 2009 Fed and MA tax returns for Mignonette, I would think that he would know the owner or representative thereof and provide an address where notice can be sent:

Paul D. Horvath

Certified Public Accountant

20 Crossways Park North, Suite 412

Woodbury, New York 11797

Tel: (516) 802-5264

Fax: (51 6) 802-5265

Email: pauld@horvathcpa.com

Another source worth checking is the Registry of Corporate Affairs for BVI where Mignonette Investments Limited was formed. Unfortunately there are no internet searches of the company register available, the request has to be

Hi Jon,

Babcock & Brown was an administrative manager of Westborough prior to our resignation.   We were never under contract to incorporate the LLC or acquire the property on behalf of a third party investor.   This existed when I started with Babcock & Brown in 2008, and anyone that might have had more knowledge of this left Babcock & brown in 2009/2010.

When we did some Know Your Customer compliance procedures, we were unable to identify an individual owner, and therefore we resigned from providing services to Westborough.   I believe there was an entity in the ownership chain called Mignonette Investments, or something like that, but when we reached out to individuals who supposedly owned that entity, we were unsuccessful in anyone claiming responsibility.

I have cc'd Chaye, my paralegal, who was involved in some of the research we performed several years ago, and she might have some information that may be useful to you.

Babcock & Brown Administrative services was our entity but has been liquidated after we resigned from providing services to Westborough.

Best regards,

Walter A. Horst

**Chief Financial Officer**

2 Theatre Square, Suite 240 · Orinda, CA 94563

D 925 317 3510 · F 925 317 3501 · M 925 699 3542

walter.horst@babcockbrown.com

 BABCOCK & BROWN

**From:** Jon Steinberg [mailto:jsteinberg@town.westborough.ma.us]
**Sent:** Tuesday, October 17, 2017 5:10 PM
**To:** Walter Horst <walter.horst@babcockbrown.com>
**Cc:** Michael Larkin <Michael.Larkin@babcockbrown.com>
**Subject:** Re: Babcock and Brown Massachusetts, USA Real Estate Asset

Thanks for the reply.  Yes, the Chief and I are both working towards this goal.  I'm sorry to get to you twice.  This situation is unusual as it appears after the tenant vacates, the mortgage is paid off, there is no  present owner for the property to remand to.



## Westborough movie theatre

1 message

Peter Hoffman <PeterHoffman@earthoney.com>                                    Thu, Apr 19, 2018 at 3:11 PM
To: Jon Steinberg <jsteinberg@town.westborough.ma.us>

From: Chaye Besherse <Chaye.Besherse@babcockbrown.com>
Sent: Thursday, April 19, 2018 1:18 PM
To: 'Peter Hoffman' <PeterHoffman@EartHoney.com>
Subject: RE: Westborough movie theatre

Hi Peter,

Sorry this has taken a bit to get back to you.

With regards to Jan Blaustein, she is no longer affiliated with Babcock and as General Counsel for the company I do
not believe that she would be able to discuss this matter.  This is her LinkedIn profile, you could try contacting her via
that route to see if she will discuss the matter: https://www.linkedin.com/in/jan-blaustein-scholes-67926810.

Dyann Blaine is also former B&B counsel, so I do not believe that she would be able to provide you any details.

I spoke to Serena Kwok (serena.kwok@kensington-trust.com), formerly of Equity Trust Hong Kong, which acted as
an agent of Westborough. During her time at ETHK she was assigned the task of locating the owner of Mignonette to
discuss the property owned by Westborough. She spoke with Phil Green as well; it was determined that the entity is
owned by a number of foreign investors but neither Serena nor Phil had the investor names or contact information.
Serena reached out to her former colleagues at ETHK to see if they have had any interactions with the owner
investors. They had not and could not provide any contact information. She is of the opinion that the ownership may
never to determine as it is her understanding that Irma destroyed most of the older company records.

TMF took over the register agent role but resigned all services some years ago. The last time Serena checked,
Mignonette Investments Limited is no longer in good standing.  Mignonette would need to be restored to proper
standing before any transaction can take place.  Should you wish to get in touch with TMF on the matter, you can
reach out to Linda Fok at linda.fok@tmf-group.com.

I also sent a written request to the Registry of Corporate Affairs for BVI requesting shareholder contact information for Mignonette. I knew it was a long shot but I still had to try; the BVI Corporate Affairs office confirmed that it will not provide any information on the ownership or management of any BVI entity.


Please keep me in the loop on this one...


Thank you and kindest regards,

Chaye


Chaye Besherse

Legal Services Manager


2 Theatre Square, Suite 240 · Orinda, CA  94563

D 925.317.3503


chaye.besherse@babcockbrown.com

 BABCOCK & BROWN


**From:** Chaye Besherse
**Sent:** Wednesday, April 18, 2018 2:01 PM
**To:** Peter Hoffman <PeterHoffman@EartHoney.com>
**Subject:** RE: Westborough movie theatre


Hi Peter,


I should be able to later this week.


Thank you and kindest regards,

Chaye


Chaye Besherse

Legal Services Manager

<span style="color:red">Exhibit 4</span>

| | |
|---|---|
| **From:** | Kenneth Fries |
| **To:** | selectmen@town.westborough.ma.us |
| **Cc:** | kwilliams@town.westborough.ma.us |
| **Subject:** | Regal Cinemas |
| **Date:** | Monday, October 22, 2018 4:33:59 AM |

Good afternoon.

I am hoping to shed a little light on the Regal Cinemas situation as I believe that you currently discussing the best way to proceed for the Town of Westborough. I had been working with Jim Malloy for almost a year now and have brought the high RFP bidder, Apple Cinema, to the table. I have bulleted my correspondence either by email, phone call or research below for clarification.

Regal
- Had no intention of staying beyond their current lease term.
- Had been paying their rent directly to the bank for some time (approximately ten years?)

Babcock and Brown
- Set up the entity Westborough SPC for a foreign entity Mignonette out of the British Virgin Islands.
- Mignonette was "probably" owned by a special entity that was controlled by Babcock officers according to former employees.
- BVI records for Mignonette have been destroyed.
- I have had correspondence directly and indirectly with Chaye Besherse (Babcock legal liaison), Jan Blaustein, Serena Kwok and Phil Greene (Former CEO of Babcock)
  - None knew of the property
  - All were unsuccessful in identifying the ownership
  - Phil felt any pursuit of ownership was a complete waste of time.
  - Administration on this property stopped approximately ten years ago
- I spoke with the Bankruptcy attorney for the investors of Babcock and Brown
  - Believe it or not, liquidation is still going on ten years later.
  - Deloitte partner David Lombe who is handling liquidation has no records related to this property or any of the entities in their files.

Take it for what it's worth, here is my conclusion
- Owners probably distanced themselves from anything related to the bankruptcy of Babcock.
- Rent hadn't been collected from Regal since 2007ish. No one has come looking for it.
- Records appear to no longer exist proving ownership.
- The building is about to reach a point of no return because of the roof.
  - Water infiltration, unless managed, will render the entire fitout useless (mold and warping)
  - The building for the most part will have to be torn down (building designed with stadium seating structural steel, can't be easily adapted for another use).
  - Westborough emergency services will have to manage an abandoned property.
  - The abutter is having to cover all of the property management (snow plowing etc.)

I would ask that you proceed with the RFP process as Apple is has not only met the requirements but is an excellent operator who will contribute to the community.

I would also like to thank Kristi for her patience as we continue to pepper her with phone calls.  We would really appreciate a sit down to discuss all the moving parts.

Thank you.

Kenneth Fries
RK Centers
50 Cabot Street, Suite 200
Needham, MA 02494
p. 781-320-0001
c. 617-285-8483

www.rkcenters.com

This email is the property of RK Centers and its affiliates and is intended only for the use of the recipient to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any copying, marketing or distribution of this email, or files associated with the email, is strictly prohibited. If you have received this email in error, please notify us immediately by calling our office at 781-320-0001 and deleting this email from your computer.  Any presentation Kevin Belmont of a lease or other lease related document, does not constitute an offer which may be accepted by the recipient.  Further, emails sent or received shall neither constitute acceptance of conducting transactions via electronic means, nor shall create a valid, binding and effective contract and/or lease unless a written instrument has been executed and delivered by all parties.

| From: | Shelby Marshall |
|---|---|
| To: | Kristi Williams; Leigh Emery |
| Subject: | Fwd: Regal Cinemas |
| Date: | Wednesday, October 24, 2018 1:59:52 AM |

Last night we directed to have Counsel review this email to see if there was anything new that might impact our decision to reject all bids. At least that's my understanding of the direction we gave to Kristi.

My concern is beyond that and was prompted by this email. And that is as follows - might the information here, added to what we already know, give us pause for consideration of pursuit of the land court option. While I understand the risk of Eminent Domain, as well as the public's general resistance to the term, if we pursued ED, sold the building/property under those conditions and the buyer was aware of all related risks, what's the downside? We take the money from the sale, put it in escrow and sit on it for 3 years. We avoid paying ongoing maintenance / repairs of a building that ultimately may need to be torn down anyway. In the meantime, the Town benefits from new taxes and taxable income from a theater/restaurant/etc. Residents benefit. Tenants in the plaza benefit from increased traffic. Other businesses in Westborough benefit from same traffic.

I strongly encourage an Executive Session to discuss all of the above, including, as Kristi has pointed out, if we were to accept a bid, our public response in doing so, especially if it was not to be the highest bid.

Of specific note to Ken's email above that is concerning:
1. Building condition / necessary repairs
2. Given all of the information that's available, and assuming bidders have a good understanding of the same and the risks of the ED, which was part of the RFP, it's seems that a land court process is a significant waste of time and resources.

Thank you for your thoughts and my request to have an Executive Session to discuss this matter as outlined above.

~Shelby

---------- Forwarded message ---------
From: **Kenneth Fries** <KFries@rkcenters.com>
Date: Mon, Oct 22, 2018 at 12:34 PM
Subject: Regal Cinemas
To: Board of Selectmen <selectmen@town.westborough.ma.us>
Cc: Kristi Williams <kwilliams@town.westborough.ma.us>

Good afternoon.

I am hoping to shed a little light on the Regal Cinemas situation as I believe that you currently discussing the best way to proceed for the Town of Westborough. I had been working with

<span style="color:red">Exhibit 5</span>

The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Direct: 617-456-1270
Main: 617-261-0100
Sgordon@gordonfirm.com
www.GordonFirm.com

On May 5, 2024, at 7:35 AM, Lenard B. Zide <zide@buttersbrazilian.com> wrote:

Folks: since the beginning of this proceeding, I believed that Lolo and Denise took their metal detector to the scenic shores of Lake Cochituate and stumbled upon the long missing Isabella Stuart Gardner Artwork. Good for them, I thought.

In reviewing Mr. Akouete's pleading, however, it appears that is not the case. Curious if any of you knew these facts?

" creditors' best interests.
• Interference with Compensation: Further allegations involve Peter Blaustein, who purportedly claimed a false guardianship to significantly reduce Mr. Akouete's compensation. Mr. Blaustein's actions, as described, included pushing for Mr. Akouete to receive only 10% of $1.2 million and 5% of $2.8 million recovered, amounts that starkly undervalue his contributions. Upon Mr. Akouete's resistance, Mr. Blaustein allegedly abandoned the guardianship claim and was subsequently recruited by the Town, culminating in a fraudulent assent to entry of judgment. This includes collusion with the California State Controller and hostility in the land court proceedings.
• Impact on the Estate's Recovery: Mr. Akouete contends that his proactive legal motions were crucial in securing $1.2 million from assets located in California, which the Trustee and associated parties had delayed. This delay tactic aligns with the ongoing delay in the sale of the property, further supporting the theory of an orchestrated effort to depress the estate's asset values for selective benefits."

*Sent by Len Zide*

On May 3, 2024, at 7:20 PM, Lenard B. Zide <zide@buttersbrazilian.com> wrote:

Assuming 2e is revised (can't see on phone), MobilStreet rests.

Len

Sent by Len Zide

On May 3, 2024, at 7:12 PM, Roger L. Smerage <rsmerage@k-plaw.com> wrote:

Paul,

2

**FDG_000071**

**Carey, Paul W.**

| | |
|---|---|
| **From:** | Lenard B. Zide <zide@buttersbrazilian.com> |
| **Sent:** | Sunday, May 5, 2024 1:27 PM |
| **To:** | Stephen Gordon |
| **Cc:** | Roger L. Smerage; Carey, Paul W.; Jonathan Goldsmith; Christopher Mulhearn; Jeffrey T. Blake; Brian W. Riley; Allen Hight |
| **Subject:** | Re: Westborough SPE - Settlement Agreement |

Steve: Thank you for taking the time to clarify this otherwise murky bar exam fact pattern.  The settlement agreement is fine and I appreciate your and everyone's willingness to share their time with me.  Talk soon.    Len

**Sent by *Len Zide***

> On May 5, 2024, at 1:11 PM, Stephen Gordon <sgordon@gordonfirm.com> wrote:
>
> Len-
> I like to stay in my own lane. There is much confusion and contention over the ownership and management of the Debtor. The beauty of the Chapter 7 bankruptcy proceeding is that the resolution of those issues are of no consequence to creditors. Before the bankruptcy case, the Controller of California refused to pay the $1.2 million of escheated funds to Lolo. A lawsuit would have taken years with uncertain results and uncertainty that the funds would be used to pay creditors. The Trustee and the creation of a Bankruptcy Court-controlled bankruptcy estate has eliminated the time delay of litigation in California and both uncertainties.
>
> We will very soon see a proposed settlement regarding the disposition of the Debtor's interest in its real property. While the approval of the settlement will pave the way to a full recovery by creditors, it may be the subject of objection(s). On the issue of approval of the settlement, Judge Panos will need to consider the best interests of creditors and the bankruptcy estate (which, since there will likely be a surplus after paying creditors, includes the interests of the Debtor entity). But I do not think that Judge Panos will need to determine the Debtor's ownership and management disputes in order to approve or disapprove the settlement. On behalf of the Petitioning Creditors (including your client 😊), I plan to urge approval of the settlement.
>
> If the settlement is approved and consummated, I have several times discussed with the Trustee his seeking Bankruptcy Court approval for the Trustee to commence an interpleader action, either in Delaware Chancery Court or Massachusetts Superior Court, depositing the surplus funds in the interpleader court in exchange for a release for the Trustee and the estate. All parties competing for control/ownership of the surplus funds will have their rights determined in the interpleader action and the bankruptcy case can be expeditiously closed.
>
> Like all of us, I remain vigilant against the potential that these filings interfere with the purpose of Chapter 7, but I otherwise pay no attention to facts and claims not requiring determination to serve that singular purpose.
>
> Best,
> Steve
>
> Stephen F. Gordon

1

FDG_000070

## Carey, Paul W.

| | |
|---|---|
| **From:** | Roger L. Smerage <rsmerage@k-plaw.com> |
| **Sent:** | Thursday, May 9, 2024 11:29 AM |
| **To:** | Stephen Gordon |
| **Cc:** | Jonathan Goldsmith; Carey, Paul W.; Christopher Mulhearn; zide@buttersbrazilian.com; Jeffrey T. Blake; Brian W. Riley |
| **Subject:** | RE: Ch-7 cjp 23-40709 Hearing Scheduled;  Westborough SPE LLC |

Steve,

The parties represented by counsel on this email chain have worked hard to reach an agreement that all are satisfied with. I don't think we should let Lolo's vexatious filings change that. He'll have his opportunity to object to the settlement and, in the event Judge Panos does not approve the settlement, the parties can revisit the situation at that time.

I want to point out, and will want to make clear in any opposition that the Town files or joins regarding Lolo's motions, that the settlement **honors** the G.L. c. 30B process that the Town did employ to dispose of the property.

Best regards,

-Roger


**Roger L. Smerage, Esq.**

**KP | LAW**
101 Arch Street, 12th Floor
Boston, MA 02110
617-654-1774
rsmerage@k-plaw.com
www.k-plaw.com

This message and the documents attached to it, if any, are intended only for the use of the addressee and may contain information that is PRIVILEGED and CONFIDENTIAL and/or may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and attachments thereto, if any, and destroy any hard copies you may have created and notify me immediately.

**From:** Stephen Gordon <sgordon@gordonfirm.com>
**Sent:** Thursday, May 9, 2024 9:45 AM
**To:** Roger L. Smerage <rsmerage@k-plaw.com>
**Cc:** Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>; pcarey@mirickoconnell.com; Christopher Mulhearn <cmulhearn@mulhearnlawri.com>; zide@buttersbrazilian.com; Jeffrey T. Blake <JBlake@k-plaw.com>; Brian W. Riley <BRiley@k-plaw.com>
**Subject:** Re: Ch-7 cjp 23-40709 Hearing Scheduled; Westborough SPE LLC

Roger-
I am happy to participate in a joint opposition. I understand Lolo's frustration but believe that is borne out of misunderstanding the Bankruptcy Court approval process. He will, like the whole world, see the settlement papers and have an opportunity to object and be heard before approval. He's afraid that the train is leaving the station before he has a chance to weigh in and that is of course not true.

I have given the procedural aspects some thought, also informed by Lolo's filing this morning. I think we need to consider a combined Section 363 and Rule 9019 filing. Not just to get the finality of 363m, but to set up a sale procedure that provides for competitive bidding. Obviously, a higher bid than Lax throws a monkey wrench into the settlement, but

1

Judge Panos will be deciding on the highest AND BEST offer and BEST includes a settlement value calculus (time delay avoided, multiple litigation uncertainty and certain cost avoided). We have a very experienced and savvy Judge, but he will have to give this very serious thought if a $7+ million bona fide offer shows up.

That said, I have had some significant experience with Pulte Homes over the years. While every situation is different, Pulte will, itself, tell you that they are homebuilders and not land developers. My experience has been that they want to buy pad ready lots upon which they can build homes immediately. They do not, in my experience, land bank, and our loathe to get involved with litigation (or, for that matter, distress buying), not to mention taking on community hostility. However, if we do not have a 363 sale process with an opportunity for counter offers, we will never hear the end of it . Something to discuss on a counsel only call.

Best,
Steve

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Direct: 617-456-1270
Main: 617-261-0100
Sgordon@gordonfirm.com
www.GordonFirm.com


On May 9, 2024, at 9:21 AM, Roger L. Smerage <rsmerage@k-plaw.com> wrote:

All,

As you know, the Court has set May 14 as the deadline for objections to Lolo's motion for the Court to "intervene" in the settlement process. Although I'm not committed to it (and don't have Town approval at the moment), I wanted to at least throw out for discussion whether a joint objection from all of the interested parties would (a) make sense and (b) be something that others would be interested in/willing to do, particularly in light of Lolo's new filing this morning. No pressure, of course. Happy to set up a Teams meeting to discuss if folks would like.

Best regards,

-Roger


**Roger L. Smerage, Esq.**

**KP | LAW**

101 Arch Street, 12th Floor
Boston, MA 02110
617-654-1774
rsmerage@k-plaw.com
www.k-plaw.com

This message and the documents attached to it, if any, are intended only for the use of the addressee and may contain information that is PRIVILE and CONFIDENTIAL and/or may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient, you are hereby notified that dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies o message and attachments thereto, if any, and destroy any hard copies you may have created and notify me immediately.

FDG_000633

<zide@buttersbrazilian.com>; Christopher Mulhearn <cmulhearn@mulhearnlawri.com>; Jeffrey T. Blake <JBlake@k-plaw.com>; Brian W. Riley <BRiley@k-plaw.com>; Allen Hight <reomanagement11@gmail.com>
**Subject:** Re: Westborough SPE - Settlement Agreement

Jon-
Happy to discuss (I'm a bankruptcy procedural nerd dating back to when Bankruptcy Judges were Referees 😊). I don't think I'll be able to call today, but tell me what times from 8:30-10:00 or from 3:30 on tomorrow might work.
Best,
Steve

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Direct: 617-456-1270
Main: 617-261-0100
Sgordon@gordonfirm.com
www.GordonFirm.com

On May 28, 2024, at 4:05 PM, Jonathan Goldsmith <jgoldsmith@gkalawfirm.com> wrote:

Steve:
In terms of my drafting the Motion to approve the settlement below, I need to discuss with you the points you raise below. Please let me know of your availability for a phone call this week.
Jonathan

Jonathan R. Goldsmith, Esq.
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, Suite 1505
Springfield, MA 01103
Tel. (413) 747-0700
Fax (413) 781-3780

PLEASE NOTE: This transmission and any attachments contain confidential or privileged information from Goldsmith, Katz & Argenio, P.C. This information is intended to be for the use of the addressed individual(s) or entity. If you are not the intended recipient, be aware that any disclosure, printing, copying, distribution or use of the contents of this information is prohibited. If you have received this transmission in error, please notify us by telephone or by return email immediately.

**From:** Stephen Gordon <sgordon@gordonfirm.com>
**Sent:** Tuesday, May 14, 2024 10:00 PM
**To:** Roger L. Smerage <rsmerage@k-plaw.com>
**Cc:** Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>; Carey, Paul W. <pcarey@mirickoconnell.com>;

FDG_000123

Lenard B. Zide <zide@buttersbrazilian.com>; Christopher Mulhearn <cmulhearn@mulhearnlawri.com>;
Jeffrey T. Blake <JBlake@k-plaw.com>; Brian W. Riley <BRiley@k-plaw.com>; Allen Hight
<reomanagement11@gmail.com>
**Subject: Re: Westborough SPE - Settlement Agreement**

All-
This is great news. I have been in touch with N&G to obtain their signature. The other
Petitioning Creditor is ably represented by Len Zide.
Thoughts:
1. I have always thought that a "final" order is one as to which either (a) the appeal period
has run without any timely appeal having been filed or (b) all appeals have been exhausted
(or further appeals timed out) with the decision appealed from affirmed or appeals
dismissed. The Settlement Agreement describes Judge Panos allowing a R 9019 Motion as
a "final order."
2. The likelihood that Lolo will appeal from Judge Panos' decision is, I think, very high.
3. The likelihood that Lolo will obtain a stay pending appeal is, I think, very low.
4. It is, therefore, agreed that Lax will close within the time required notwithstanding the
pendency of an appeal without a stay or lose its right to purchase.
5. And it is also agreed that if Lax fails to close, then Ferris must close within its required
time notwithstanding the pendency of an appeal without a stay or Ferris will likewise lose
its right to purchase and the Trustee will then conduct a Section 363 sale commencing no
later than 5.5 months from the entry of an Order allowing the R 9019 Motion.
6. While no Party to the Settlement Agreement will raise the issue, I am concerned that
Judge Panos will require some kind of "sale counteroffer" process, perhaps short of 363
formality, especially in the face of Lolo's claim that Pulte Homes will pay nearly $8 million
for the property. The Trustee, as moving party, might wish to depose Pulte once Lolo's
Objection creates a Disputed Matter permitting discovery.

Nice work everyone in getting to this terrific point.
Steve

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Direct: 617-456-1270
Main: 617-261-0100
Sgordon@gordonfirm.com
www.GordonFirm.com


On May 14, 2024, at 8:56 PM, Roger L. Smerage <rsmerage@k-plaw.com>
wrote:


All,

5

<span style="color:red">Exhibit 6</span>



Lolonyon Akouete <info@smartinvestorsllc.com>

---

## Westborough SPE LLC Unclaimed Funds - Follow-up re Request for Reconsideration Filed by Lolonyon Akouete and Denise Edwards

1 message

---

**Scott A. Schlager** <sas@natgolaw.com>                    Thu, Jul 13, 2023 at 4:22 PM
To: "hnakhwal@sco.ca.gov" <hnakhwal@sco.ca.gov>
Cc: Alvin Nathanson <asn@natgolaw.com>, Jose Centeio <jcc@natgolaw.com>, "deniseedwards818@yahoo.com" <deniseedwards818@yahoo.com>, Lolonyon Akouete <info@smartinvestorsllc.com>

Attorney Nakhwal,

Thank you for taking the time to speak with me this afternoon. As discussed, Nathanson & Goldberg, P.C. represents Westborough SPE LLC. We are admitted to practice law only in The Commonwealth of Massachusetts and are not admitted in the State of California. Thus, our role is limited to following-up on the status of this request to the State Controller's Office for Reconsideration of the Office's denial of the original request for Unclaimed Funds and ensure that the office has the entire body of documentation to evaluate the request for reconsideration.

As discussed, we want to ensure that the State of California evaluates Westborough SPE LLC's in accordance with California Code, Code of Civil Procedure - CCP § 1540 and with prompt attention and diligence. You advised me on the telephone this afternoon that it would be **reasonable to expect a response from you within 30 days of July 13, 2023**.

**Please see the attached documents**:

1. **Defendant Westborough SPE LLC's Second Notice of Supplementation to the Massachusetts Land Court, Case # 19 TL 000768 – HPS**. This document contained 2 attachments that are included as well.
    a. Exhibit A – State of Delaware Certificate of Conversion from a Corporation to a Limited Liability Company Pursuant to Section 266 of the Delaware General Corporation Law which was filed with the Secretary of State for the State of Delaware on January 3, 2007. Exhibit A states that Babcock & Brown Administrative Services, Inc. was incorporated on October 23, 1997 and that the name was changed to Babcock & Brown Administrative Services LLC, a Delaware LLC on December 31, 1999.
    b. Exhibit B – Delaware Certificate of Merger of Babcock & Brown Administrative Services LLC with and into Babcock & Brown Parallel Member LLC dated August 28, 2011 and filed with the Secretary of State for the State of Delaware on August 29, 2011. Pursuant to Section 18-2098 of the Delaware Limited Liability Company Act, Babcock & Brown Administrative Services LLC merged with and into Babcock & Brown Parallel Member LLC, a Delaware limited liability company.
    c. Jeffey W. Bullock, Secretary of State of Delaware has certified both Exhibit A and Exhibit B. Both of these documents can be verified online at corp.delaware.gov/authver.shtml . In accordance with Cal. Evid. Code § 1531, Exhibit A and Exhibit certifications contain the requisite true copy language.
    d. Therefore, it has been established by certified copy of two Delaware Secretary of State records that Babcock & Brown Parallel Member LLC, a Delaware limited liability company was the true successor-in-interest to Babcock & Brown Administrative Services, Inc., a Delaware Corporation.
2. Documents Executed by Jan Blaustein Scholes: See **First Notice of Supplementation**.
    a. **State of Delaware Certificate of Correction of a Limited Liability Company** for Babcock & Brown Parallel Member LLC to be filed pursuant to Section 18-211(a). This document renders null and void the wrongfully filed Certificate of Cancellation that was improperly filed because of a clerical error. This Certificate of Correction was executed by F. Jan Blaustein Scholes on June 23, 2023.
    b. **Written Consent of the Manager of Babcock & Brown Parallel Member LLC in Lieu of a Meeting**

---

Case 23-40709    Doc 333    Filed 09/13/24    Entered 09/16/24 08:35:50    Desc Main
Document        Page 34 of 47

dated June 26, 2023. This document states:

i.    F. Jan Blaustein Scholes is the manager of Babcock & Brown Parallel Member LLC.

ii.    Scholes is over the age of 18 and is of **sound mind and is not under a conservatorship or guardianship in the State of Arizona**.

iii.    Scholes resides in the State of Arizona and is executing the document in the State of Arizona.

iv.    Authorized the Durable Power of Attorney to be executed authorizing Lolonyon Akouete and Denise Edwards to undertake the actions specified in that Durable Power of Attorney.

v.    The **Bill of Sale executed on November 21, 2022 be amended as follows**:

1. The Title be amended to delete "Bill of Sale" and "Transfer of Manager Role" substituted therefor;
2. The word "sell" is deleted and "transfer her Manager role of Westborough SPE LLC" be substituted therefore. Any mention of purchasing a membership interest is stricken, because F. Jan Blaustein Scholes was merely the manager of the Manager (Babcock & Brown Parallel Member LLC) of Westborough SPE LLC.
3. $100 consideration was paid for a change in Manager.
4. Paragraphs 1(a)-(b) were deleted in their entirety.
5. Paragraph 2 was deleted in its entirety and F. Jan Blaustein Scholes is not under a conservatorship/guardianship in the State of California where she currently resides and is of sound legal mind, and understands the consequences of this Agreement to Transfer Manager Role.
6. Paragraph 3 was deleted and substitution language inserted. This substitution language acknowledges the unclaimed funds in the State of California of approximately $1,200,000.00 belonging to Westborough SPE LLC. And, that Akouete and Edwards have become Managers of Westborough SPE LLC and that their authority has been ratified and confirmed. In addition, Akouete and Edwards have been authorized to take whatever actions necessary to recover and protect the property located at Turnpike Road, Westborough, MA and to recover the unclaimed funds in the State of California.
7. Paragraph 5 was deleted and the substitution stated that the agreement shall be governed by the laws of the State of Arizona as to contract formation and capacity and the State of Delaware as to limited liability company actions.
8. Paragraph 6 ratifies and confirms that Westborough SPE LLC was lawfully reinstated in both Delaware and Massachusetts.
9. Paragraph 8 was added to state that in the event of an invalidity it does not invalidate the entire agreement.
10. Paragraph 9 was added to state that time was to be of the essence as to each term thereof.
11. Paragraph 10 was added stating "Each party recognizes that this Agreement is a legally binding contract and acknowledges that it, he or she has had the opportunity to consult with legal counsel of choice. In any construction of the terms of this Agreement, the same shall not be construed against either party on the basis of that party being the drafter of such terms."
12. Paragraph 11 was added that "Scholes has engaged an attorney licensed in the State of Arizona to represent her interests with respect to this Agreement and the attorney has reviewed the document and consents to its signing."
13. The document authorizes Akouete and Edwards to perform all such acts, deeds, and things….necessary or advisable to effectuate or carry out the purpose and interest of all the foregoing resolutions. And that the actions heretofore and hereafter taken by the manager (Akouete and Edwards) are adopted affirmed, approved, and ratified in all respects as the act and deed of Babcock & Brown Parallel Member LLC.
14. This document was notarized by Billie J. Wahl Notary Public in Maricopa County, Arizona, Commission #642362.

2. **Babcock & Brown was not authorized to resign it role as manager even though Westborough SPE LLC never paid Babcock & Brown**. Section 1(g) of the Operating Agreement states "No Manager may resign or

retire from, abandon or otherwise terminate its status as Manager without the Consent of the Members." Such member consent was never provided and thus any action by Babcock & Brown to terminate its relationship was null and void and in violation of the fiduciary duties owed to the Member(s) of Westborough SPE LLC.

3. **Section 1(g) and (j) of the Operating Agreement for Westborough SPE LLC Permits Collection of Unclaimed Funds** – In addition, the Manager shall act in good faith with respect to carrying out its duties as manager. Accordingly, the Managers, Akouete and Edwards owe a fiduciary duty to the Members of Westborough SPE LLC to ensure that the unclaimed funds are collected, any debts of the entity are paid off, and then seek guidance from the Delaware Chancery Court as to distribution of the remaining funds to the Member(s).

4. **Durable Power of Attorney by Babcock & Brown Parallel Member LLC, a Delaware LLC**.
   a. This document granted Lolonyon Akouete and Denise Edwards as attorneys in fact and specified powers, including the right to open a bank account, deposit, endorse, or withdraw funds to or from any of the company's bank accounts or safe deposit box; the right to initiate, defend commence or settle legal actions on the Company's behalf, etc.

5. **Westborough SPE LLC – Operating Agreement**.
   a. Section 1(g) on p. 4 of the Operating Agreement permits any manager to transfer their manager role in an instrument in writing, or to delegate all or any of its powers or duties under the Operating Agreement. F. Jan Blaustein Scholes as Manager of Babcock & Brown Parallel Member LLC as successor-in-interest Manager transferred her manager role and responsibilities to Lolonyon Akouete and Denise Edwards pursuant to the Written Consent of Manager In Lieu of A Meeting.

6. **Peter Blaustein Does Not have a Guardianship/Conservatorship Over F. Jan Blaustein Scholes in California or Arizona**. He has unlawfully attempted to intervene and exercise undue influence over Ms. Scholes. Peter Blaustein has failed to comply with the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act (28 U.S.C. Section 1738A). Specifically, Section 1738A(h) states "A foreign guardianship or protective order [from outside the state] is not entitled to full faith and credit in this state until it is registered in this state." No foreign registration occurred in Arizona pursuant to A.R.S. Section 14-12401 as of the filing of the First Notice of Supplementation.

In light of this newly presented information and correction of the record, the State of California should promptly direct the unclaimed funds held in the name of Westborough SPE LLC to be immediately transferred to a bank account held in the name of Westborough SPE LLC at the direction of its duly authorized managers Denise Edwards and Lolonyon Akouete as successor-in-interest manager to Babcock & Brown Administrative Services Inc. as successor-in-interest manager to Babcock & Brown Administrative Services LLC as successor-in-interest Manager to Babcock & Brown Parallel Member LLC.

Please let us know if you should require any additional information. For the record and to clarify the record, neither Lolonyon Akouete nor Denise Edwards have acquired any membership interest in Westborough SPE LLC. Both Akouete and Edwards have the requisite authority to claim the unclaimed funds on behalf of the entity via the Durable Power of Attorney, Written Consent of the Sole Manager of Babcock & Brown Parallel Member LLC in lieu of a meeting, Certificate of Goodstanding naming Lolonyon Akouete and Denise Edwards as Manager of Westborough SPE LLC.

Please also advise if a new application or correction must be submitted to the State of California correcting that Westborough SPE LLC, by and through its duly authorized Managers Lolonyon Akouete and Denise Edwards, is the proper party-in-interest to collect the unclaimed funds.

Time is of the essence hereof. We appreciate your prompt attention to this matter.

Very truly yours,

Scott A. Schlager

Partner

Nathanson & Goldberg, P.C.

183 State Street, 5th Floor

Boston, Massachusetts 02109

(O): (617) 210-4800

(C): (617) 909-4511

(F): (617) 210-4824

sas@natgolaw.com


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

**3 attachments**

📄 **Westborough SPE LLC - Second Notice of Supplementation (Filed Version).pdf**
820K

📄 **Westborough SPE LLC [FIRST] Notice of Supplementation.pdf**
1750K

📄 **Certificate of Goodstanding.pdf**
265K

**CAUTION:**
This email originated from outside of the organization.
Do not click links or open attachments unless you recognize the sender's email address and know the content is safe.

Exhibit 7

To Whom it May Concern:

I represent the Town of Westborough, Massachusetts in the tax title foreclosure matters.

According to recent documentation submitted in a pending Land Court case, two Registered Investigators of the CA Unclaimed Property Division, Lolonyon Akouete and Denise Edwards, were working on an investigation of funds abandoned by Westborough SPE, LLC. These investigators contacted a party they believe has a legal interest in the company and property owned by the company in Westborough, Massachusetts. I was notified, the party they contacted is considered legally incapacitated and they were aware of this and had her sign a Bill of Sale for the company and are trying to claim the abandoned funds for themselves.

I reviewed the Investigator Handbook and did not find a section regarding ethics. Are there rules against Registered Investigators claiming funds for their own personal gain?

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

**AttyLeahy@outlook.com**

| | |
|---|---|
| **From:** | Iris Leahy |
| **Sent:** | Thursday, February 23, 2023 1:16 PM |
| **To:** | Nakhwal, Harpreet |
| **Subject:** | RE: Unclaimed Property-Westborough SPE LLC |

Hello Attorney Harpreet,

Thank you for your voicemail and the below email. I apologize that I missed your call. I am having a very busy week so far.

The information you provided is very helpful and answers all of my questions.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

**From:** Nakhwal, Harpreet <HNakhwal@sco.ca.gov>
**Sent:** Thursday, February 23, 2023 12:33 PM
**To:** attyleahy@outlook.com
**Subject:** Unclaimed Property-Westborough SPE LLC

Ms. Leahy,

Your inquiry regarding a claim for Unclaimed Property submitted for property reported with the owner as Westborough SPE LLC was forwarded to me. I attempted to contact you via telephone yesterday and left you a voicemail.

We are considering your inquiry a request under California's Public Records Act. Attached, please find a copy of my letter addressing the claim received for the unclaimed property in question.

I would also like to clarify that while people may register with the State Controller's Office as an investigator for purposes of unclaimed property claims, they are not registered investigators _of_ the California State Controller's Office, Unclaimed Property Division.

If you would like to discuss further, please feel free to call me at the number listed below.

**Harpreet K. Nakhwal** | Staff Counsel
Office of State Controller Malia M. Cohen
Legal Office
300 Capitol Mall, Suite 1850
Sacramento, CA 95814
Tel: (916) 322-6430| Fax: (916) 322-1220

1

**AttyLeahy@outlook.com**

| | |
|---|---|
| **From:** | Iris Leahy |
| **Sent:** | Tuesday, February 21, 2023 11:48 AM |
| **To:** | Peter Blaustein |
| **Subject:** | RE: Westborough SPE LLC |
| **Attachments:** | Defendant, Westborough SPE, LLC, response to Plaintiff Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment.pdf |

Hello Again,

After making my way through the paperwork Lolo filed, he claims you gave Denise Edwards permission to help Jan recover the funds in CA. That permission didn't include permission to sign the Bill of Sale, right?

See his Exhibit 5.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

---

**From:** Iris Leahy
**Sent:** Tuesday, February 21, 2023 11:06 AM
**To:** 'Peter Blaustein' <pblaustein@pbinvestmentpartners.com>
**Subject:** Westborough SPE LLC

Good Morning Peter,

Lolo just filed an opposition to the Town of Westborough's opposition. Westborough SPE, LLC is still unrepresented by legal counsel. In his motion he is asking for more time to continue to work on claiming the funds in CA.

I plan to share information at the hearing from our conversation on February 13, 2023. I was wondering if you and/or Dyann would be willing to email me a short affidavit. The hearing is scheduled for February 23, 2023 at 2:00pm EST. I understand it's short notice but I thought it would be helpful. Also, I think it would be helpful if you sent me the documents you offered related to your continued legal guardianship of Jan.

The info I plan to share is as follows:

1.  Jan is still legally considered incapacitated, and you are her court-appointed guardian.

2.  You are aware Jan signed the Bill of Sale and did not approve. You do not think the contract terms are reasonable. You do not think the contact is legally binding as Lolo knew that your mother was legally incapable of signing a contract and had her sign it anyway. He also knew you were her guardian and did not involve you in the contract process.

3.  Jan retired from Babcock and Brown and was succeeded as general counsel by Dyann Blaine

1

4. You do not believe Jan is the rightful owner of Westborough SPE, LLC and thus the property in Westborough. You have been in contact with Dyann Blaine and you both do not think the property in Westborough belongs to Jan or Dyann.

5. Lolo approached Jan regarding the unclaimed funds in CA and then found out about the property in Westborough, MA. You do not believe that the unclaimed funds should be turned over to Lolo or Denise and you are in contact with the unclaimed property division in CA.

6. You have instructed Jan to disengage with Lolo and Denise. You feel that you need to protect Jan from these people and do not trust them. You would like to see the case dismissed.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

---

**From:** Iris Leahy
**Sent:** Friday, February 10, 2023 11:19 AM
**To:** Peter Blaustein <pblaustein@pbinvestmentpartners.com>
**Subject:** RE: connecting re Westborough SPE LLC

Hello Peter,

That sounds good. I'll try you Monday at 12 PST.

Have a great weekend!

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

---

**From:** Peter Blaustein <pblaustein@pbinvestmentpartners.com>
**Sent:** Friday, February 10, 2023 10:41 AM
**To:** Iris Leahy <AttyLeahy@outlook.com>
**Subject:** Re: connecting re Westborough SPE LLC

I'm busy then
I'd prefer Monday or Tuesday
Now about noon PST either Monday or Tuesday

> On Feb 10, 2023, at 6:02 AM, Iris Leahy <AttyLeahy@outlook.com> wrote:

**AttyLeahy@outlook.com**

| | |
|---|---|
| **From:** | Peter Blaustein <pblaustein@pbinvestmentpartners.com> |
| **Sent:** | Wednesday, February 22, 2023 10:45 AM |
| **To:** | Iris Leahy |
| **Subject:** | RE: Westborough SPE LLC |
| **Attachments:** | PLB Assigned Guardian and Conservator June 2019.pdf; PLB UNIFORM POA 2014.PDF |

Hi Iris,

1/ I've attached the assignment of Guardian and Conservator and the POA. My mom signed the document and we submitted it to the court, which was accepted. The judge thanked me for helping my mom.

2/ on your list, I please skip 5 for reasons we discuss on the call. On 3, Dyann did not succeed my mom as GC. I believe Dyann was an assistant GC. I don't know how to create an affidavit and am busy. I can appear on the call if helpful so please send me the link and a calendar invite if possible.

Thanks

Pete

**From:** Iris Leahy <AttyLeahy@outlook.com>
**Sent:** Tuesday, February 21, 2023 8:06 AM
**To:** Peter Blaustein <pblaustein@pbinvestmentpartners.com>
**Subject:** Westborough SPE LLC

Good Morning Peter,

Lolo just filed an opposition to the Town of Westborough's opposition. Westborough SPE, LLC is still unrepresented by legal counsel. In his motion he is asking for more time to continue to work on claiming the funds in CA.

I plan to share information at the hearing from our conversation on February 13, 2023. I was wondering if you and/or Dyann would be willing to email me a short affidavit. The hearing is scheduled for February 23, 2023 at 2:00pm EST. I understand it's short notice but I thought it would be helpful. Also, I think it would be helpful if you sent me the documents you offered related to your continued legal guardianship of Jan.

The info I plan to share is as follows:

1. Jan is still legally considered incapacitated, and you are her court-appointed guardian.

2. You are aware Jan signed the Bill of Sale and did not approve. You do not think the contract terms are reasonable. You do not think the contact is legally binding as Lolo knew that your mother was legally incapable of signing a contract and had her sign it anyway. He also knew you were her guardian and did not involve you in the contract process.

3. Jan retired from Babcock and Brown and was succeeded as general counsel by Dyann Blaine

4. You do not believe Jan is the rightful owner of Westborough SPE, LLC and thus the property in Westborough. You have been in contact with Dyann Blaine and you both do not think the property in Westborough belongs to Jan or Dyann.

5. Lolo approached Jan regarding the unclaimed funds in CA and then found out about the property in Westborough, MA. You do not believe that the unclaimed funds should be turned over to Lolo or Denise and you are in contact with the unclaimed property division in CA.

6. You have instructed Jan to disengage with Lolo and Denise. You feel that you need to protect Jan from these people and do not trust them. You would like to see the case dismissed.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

---

**From:** Iris Leahy
**Sent:** Friday, February 10, 2023 11:19 AM
**To:** Peter Blaustein <pblaustein@pbinvestmentpartners.com>
**Subject:** RE: connecting re Westborough SPE LLC

Hello Peter,

That sounds good. I'll try you Monday at 12 PST.

Have a great weekend!

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

---

**From:** Peter Blaustein <pblaustein@pbinvestmentpartners.com>
**Sent:** Friday, February 10, 2023 10:41 AM
**To:** Iris Leahy <AttyLeahy@outlook.com>
**Subject:** Re: connecting re Westborough SPE LLC

I'm busy then
I'd prefer Monday or Tuesday
Now about noon PST either Monday or Tuesday

On Feb 10, 2023, at 6:02 AM, Iris Leahy <AttyLeahy@outlook.com> wrote:

Hello Peter,

I appreciate your response. If it works for you, let's chat at 3pm my time, 12pm your time?

2

**AttyLeahy@outlook.com**

| | |
|---|---|
| **From:** | Iris Leahy |
| **Sent:** | Thursday, February 23, 2023 11:11 AM |
| **To:** | Dyann Blaine |
| **Subject:** | RE: 19 TL 000768 Zoom Details |

Good Morning Dyann,

Thank you for your below email and your telephone number. I appreciate it! Yes, Peter sent me the write-up. I plan to edit it a little and send it to you for review.

The Court has allowed the Defendant's motion to continue the case until March 23, 2023 at 2:00pm EST. Therefore, the hearing will not occur today. I'll be back in contact soon.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

**From:** Dyann Blaine <dyann.blaine@gmail.com>
**Sent:** Wednesday, February 22, 2023 3:36 PM
**To:** Iris Leahy <AttyLeahy@outlook.com>
**Subject:** Re: 19 TL 000768 Zoom Details

I will do my best to attend - will need to move a few things around.

Did Peter send you my quick write-up? If needed it can be turned into an affidavit that I would sign.

Feel free to text or call me for more info - 415.860.9750.

Sent from my iPhone

On Feb 22, 2023, at 11:02 AM, Iris Leahy <AttyLeahy@outlook.com> wrote:

Hello Peter and Dyann,

Please find below the Zoom details for the hearing on Westborough SPE, LLC scheduled tomorrow at 2:00pm EST. Lolo retained counsel today and they are requesting a continuance. The town is opposed to a continuance. I'll advise you if the hearing gets rescheduled.

I think it would be helpful if you were able to attend the hearing. I will be in the office for about another hour if you have any questions.

1

**AttyLeahy@outlook.com**

| | |
|---|---|
| **From:** | Iris Leahy |
| **Sent:** | Thursday, May 18, 2023 8:41 AM |
| **To:** | Dyann Blaine |
| **Cc:** | Peter Blaustein |
| **Subject:** | RE: Westborough |

Hello Dyann,

To answer your below question, Attorney Englander is only monitoring the Land Court case. His client won't allow him to file an appearance. We had to notice his client/liquidator in bankruptcy because we weren't sure if they had an interest or not. After the case progressed and more evidence was uncovered, we do not believe they have an interest.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

**From:** Dyann Blaine <dyann.blaine@gmail.com>
**Sent:** Tuesday, May 16, 2023 3:12 PM
**To:** Iris Leahy <AttyLeahy@outlook.com>
**Cc:** Peter Blaustein <pblaustein@gmail.com>
**Subject:** Re: Westborough

The Judge definitely was not having any of that!  The argument that Jan wasn't transferring an equity interest but was rather transferring her role as manager via the bill of sale was ridiculous.  I think the Judge did a great job of staying calm despite being interrupted repeatedly.  I am curious to see how much longer Attorney Schlager stays on - though if he is being paid by the folks that want to buy the property then I guess as long as they want to continue he may stay on. Not sure if he has a reputation to worry about.

I missed a bit when I accidentally hung up and had to call back in.  How did the B&B bankruptcy attorney get involved?

On Tue, May 16, 2023 at 8:02 AM Iris Leahy <AttyLeahy@outlook.com> wrote:

Hello Dyann,

I'm glad you were able to join the hearing. Attorney Schlager wants to conveniently ignore the evidence produced by his client showing that they do not have legal title to the property and/or company. I'm glad the judge wasn't having it.

I wonder if Attorney Schlager will try to withdraw as counsel when he is forced to produce the evidence or if he will keep trying to argue around having to present the evidence.

Thank you,
Iris A. Leahy, Esq.

1

**AttyLeahy@outlook.com**

| | |
|---|---|
| **From:** | Iris Leahy |
| **Sent:** | Tuesday, April 18, 2023 11:19 AM |
| **To:** | Scott A. Schlager |
| **Cc:** | Alvin Nathanson |
| **Subject:** | RE: Request for Status Update |

Hello Attorney Schlager,

Lax Media agreed to another extension to hold their bid firm until June 1, 2023.

There has not been a purchase and sale signed. I didn't receive a response yet regarding the town's position on the stipulation you requested to not sign a purchase and sale until after the motion to vacate has been decided. I'll follow up with my client and get back to you when I receive a response.

Can you provide me with proof of any payment(s) your clients made toward the Bill of Sale dated 12/08/2023?

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

**From:** Scott A. Schlager <sas@natgolaw.com>
**Sent:** Tuesday, April 18, 2023 10:20 AM
**To:** Iris Leahy <AttyLeahy@outlook.com>
**Cc:** Alvin Nathanson <asn@natgolaw.com>
**Subject:** Request for Status Update

Good Morning Attorney Leahy,

Our Client has asked us to reach out to you for a status update regarding the Lax Media bid process. Did Lax Media extend their bid past the April 15th deadline or did they terminate the transaction?

Thank you,

Scott A. Schlager, Esq.
Partner
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
(O): (617) 210-4800
(C): (617) 909-4511
(F): (617) 210-4824
sas@natgolaw.com

1

<u>CERTIFICATE OF SERVICE</u>

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com


Lolonyon Y Akouete

<u>CERTIFICATE OF SERVICE</u>

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com


Lolonyon Y Akouete