UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

In re:                                    )    Chapter 7
                                          )    Case No. 23-40709-CJP
WESTBOROUGH SPE LLC,                      )
                                          )
                        Debtor.           )

CREDITOR'S RESPONSE TO TRUSTEE'S OBJECTION AND REQUEST FOR SANCTIONS

Now comes **Lolonyon Akouete**, creditor in the above-referenced bankruptcy case, and hereby responds to **Trustee Jonathan R. Goldsmith's** objection to the Motion to Compel and request for sanctions. In response, the Creditor states as follows:

## 1. Background:

The Trustee, **Jonathan R. Goldsmith**, is obligated to provide transparency regarding the administration of estate assets, including the substantial sum of **$1,293,646.83** that was collected from the California State Controller. The Trustee's objection and request for sanctions suggest that my motion is frivolous and that I possess all relevant information. However, the Trustee has failed to file a detailed report that addresses the disposition and intended use of these funds in compliance with **Rule 2015(a)**.

## 2. Not About Whether the Funds Were Received:

My request is not merely about whether the Trustee received the **$1.2 million**, as this fact is not disputed. My motion seeks an **accounting of what has happened to the $1.2 million**. Specifically, I request clarification on whether the funds are earning interest in the checking account or if they are being depleted by bank fees. Despite asking these questions previously in email correspondence, the Trustee has **deflected** the issue and failed to provide transparency. This lack of transparency, combined with the Trustee's continued **requests for continuations**, is causing unnecessary delays and further hardship for creditors.

In my email to the Trustee on **March 20, 2024**, I stated:

*"During yesterday's hearing, you mentioned that creditors would be paid in full. Does that include my claim as well? Also, I'm curious if the $1.2 million we received from California is in an account that's earning interest. Additionally, I'm getting past-due notices from The Incorporators LTD. Could you please let me know when those bills will be taken care of?"*

In response, **Jonathan Goldsmith** stated that the funds are held in an **estate escrow account at a financial institution approved by the Office of the United States Trustee** but failed to address whether the funds were earning interest or being depleted by fees.

## 3. Emails Demonstrating Favoritism and Concerns:

Additional emails demonstrate a broader pattern of **favoritism and concerns** surrounding the Trustee's conduct:

On **May 9, 2024**, **Stephen Gordon** expressed concern about an $8 million offer from **Pulte Homes**, writing in an email:

*"A potential $8 million offer from Pulte Homes could throw a monkey wrench into the settlement with Lax Media."*

Instead of welcoming a higher offer that could benefit creditors, the parties were more concerned with finalizing the deal with Lax Media, even though it was a lower bid. This shows an intent to **avoid competitive bidding** and supports my claim that the Trustee is not acting in the best interests of creditors.

Again, on **May 14, 2024**, **Stephen Gordon** wrote:

*"There is a chance that Judge Panos may require a sale counteroffer process due to the $8 million offer, but this could complicate the settlement with Lax Media."*

This email further confirms a clear bias in favor of Lax Media and an unwillingness to consider higher bids, even though they would maximize the value of the estate for creditors.

Further, on **August 13, 2024**, **Jonathan Goldsmith** sent an email dismissively referring to my rejected settlement offer:

*"Akouete could have received many shekels, but he chose not to. Now, he'll likely get nothing at the end or much less."*

His use of derogatory language to belittle my legitimate claims as a creditor is deeply concerning. It reflects the Trustee's dismissive and condescending attitude toward my participation in the proceedings and further damages my confidence in his ability to act impartially.

## 4. Transparency and Fiduciary Duty:

As the Trustee, Mr. Goldsmith has a duty to ensure transparency and fairness in the administration of estate assets. The concerns raised in my motion, including how the $1.2 million is being handled, are critical to fulfilling this duty. Failure to provide clear answers regarding the status of the funds only raises concerns about whether they are being properly managed for the benefit of creditors.

In addition to the lack of transparency, I am concerned that the **$1.2 million** in estate funds may be incurring significant fees while remaining in the Trustee's estate account. In the case of **In re Frantz, Martin D. and Cynthia M.**, Case No. 11-21337-TLM in the District of Idaho, it was noted that Union Bank charged the estate **0.15% monthly** on the account balance, which resulted in **$849.02 per month** in fees. This shows that leaving a large balance in the estate account, as is likely happening here, can erode the estate's assets through substantial fees that reduce distributions to creditors. The same concern applies to the funds in this case, and it is critical that the Trustee provides a full accounting of the $1.2 million, including any fees or interest earned.

When an estate account holds a large balance, such as $1.2 million, many banks impose percentage-based fees, which can significantly erode the estate's value over time if the funds remain undistributed. For example, Union Bank, as seen in the **Frantz** case, charges **0.15% of the account balance per month**, which would amount to approximately **$1,800 monthly** for a $1.2 million balance. Similarly, **JPMorgan Chase** may apply an **account analysis fee** of around **0.15% to 0.20%**, translating to monthly fees of **$1,800 to $2,400**. **Bank of America** charges comparable fees, typically ranging from **0.1% to 0.2%** of the balance, resulting in monthly charges of **$1,200 to $2,400**. These fees, while customary for high-balance accounts, can deplete estate funds meant for creditors if the balance is held for an extended period without action. This underscores the importance of timely distributions to prevent unnecessary financial losses to the estate.

## 5. Motion is Not Frivolous:

My Motion to Compel seeks to enforce transparency and compliance with **Rule 2015(a)**. The Trustee's objection fails to address why a detailed report has not been filed. This motion is not redundant nor previously addressed by the Court. Rather, it requests specific action from the Trustee regarding a large sum of money that was received from the California State Controller. As such, this motion has a legitimate basis in law and is necessary to protect creditor interests.

## 6. Sanctions are Unwarranted:

The Trustee's request for sanctions is an overreach. My motion is not a repeated or frivolous filing but is aimed at ensuring compliance with legal requirements. The Trustee's assertion that I already know the relevant information is incorrect, as a formal report has not been provided detailing the disposition of these funds.
I respectfully request that this Court deny the Trustee's request for sanctions as they are neither warranted nor justified under these circumstances.

## 7. Concerns Over Broader Conduct of the Trustee:

Beyond the lack of transparency regarding the $1.2 million, there are **broader concerns** about the Trustee's conduct:

- The Trustee's **favoritism toward Lax Media** over other potential buyers, as evidenced in emails, has raised serious concerns about whether the estate is being administered for the maximum benefit of creditors.
- The **dismissive attitude** toward my compensation claims and ownership disputes only deepens my lack of confidence in this bankruptcy proceeding. These issues point to a larger pattern of behavior that warrants the Court's attention and oversight.

## 8. Conclusion:

The Trustee has an obligation to ensure transparency in the management of estate assets, especially when a substantial sum of over $1.2 million is involved. My motion is not frivolous but seeks to ensure compliance with the Trustee's legal duties under **Rule 2015(a)**. I respectfully request that the Court compel the Trustee to file a full report on the receipt and disposition of the funds and deny the Trustee's request for sanctions.

DATED: September 13, 2024, Respectfully submitted:

By creditor,



Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

Exhibit 1

 

Lolonyon Akouete <info@smartinvestorsllc.com>

## Settlement Negotiations for Westborough SPE LLC - Case No. 23-40709

**Jonathan Goldsmith** <jgoldsmith@gkalawfirm.com>    Wed, Mar 20, 2024 at 12:10 PM
To: Lolonyon Akouete <info@smartinvestorsllc.com>

Please see my responses below:

**From:** Lolonyon Akouete <info@smartinvestorsllc.com>
**Sent:** Wednesday, March 20, 2024 6:33 AM
**To:** Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>
**Subject:** Settlement Negotiations for Westborough SPE LLC - Case No. 23-40709

Jonathan,

I hope things are going well for you. While I'm disappointed that we need more time, I understand that there must be a good reason for it. Before I start any adversarial proceedings to protect my interests, I'd like to clarify a few things.

During yesterday's hearing, you mentioned that creditors would be paid in full. Does that include my claim as well? Also, I'm curious if the $1.2 million we received from California is in an account that's earning interest. Additionally, I'm getting past-due notices from The Incorporators LTD. Could you please let me know when those bills will be taken care of? There are expected to be sufficient funds to pay allowed creditor claims. Regarding the claims filed, there are a few that will need to be addressed as I don't believe the claim amount is appropriate and/or there is insufficient documentation to support same. So there is no misunderstanding, two of the claims I have issue with is the one filed by you and the one filed by Ms. Edwards. At the appropriate time, I will address these claims. In term of the funds turned over from California, they are held in an estate escrow account at a financial institution approved by the Office of the United States Trustee. This financial institution is the same one I use for all my Trustee cases.

It appears that the settlement is trying to get Westborough SPE LLC to pay David Ferris so that he can allow the town to sell the property to Lax Media LLC. However, this isn't fair because even if Lax Media offers more money, the funds will only go to David Ferris as a payoff and won't benefit Westborough SPE LLC in any way. This makes the settlement inappropriate, and they're making the case sound complicated by asking for more time and delaying the process unnecessarily. Once the Settlement is filed with the Court, parties in interest will have an opportunity to file objections to the settlement if they deem it warranted.

The case is straightforward and can be resolved in a single hearing. The court just needs to determine whether Westborough SPE LLC is the record owner of the property and if Denise Edward and I are the successor managers of the entity. Additionally, they need to establish whether the entity has the funds to pay the taxes. It's not straight forward at all, including the fact that there is a valid dispute as to you and Ms. Edwards status as successor managers of the Debtor.

I hope that David Ferris isn't doing this just to get money from Westborough SPE LLC as the entity has already suffered from gross mismanagement and breach of fiduciary duty. It would be unfair for him to take advantage of Westborough SPE LLC as well. Again, there will be an opportunity for parties in interest to object to the settlement. I've included the recording of the original hearing that started the foreclosure proceeding, please take a look.

Thank you for your consideration.

[Quoted text hidden]

<span style="color:red">Exhibit 2</span>

**David P. Gardner**
Chapter 7 Trustee
250 Northwest Boulevard, Suite 206
Coeur d'Alene, ID 83814
Telephone: (208) 667-2103
Facsimile: (208) 765-2121
trustee@winstoncashatt.com

Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF IDAHO

| In Re: | Case No. 11-21337-TLM |
|---|---|
| FRANTZ, MARTIN D.<br>FRANTZ, CYNTHIA M. | Chapter 7 |
| Debtors. | |

## SECOND AMENDED MOTION FOR
## ORDER APPROVING INTERIM DISTRIBUTION

**A. Relief Requested.**

Chapter 7 Trustee David P. Gardner requests the Court enter an order permitting the Trustee to make interim distributions on allowed priority and general claims of unsecured creditors, as well as payment of trustee compensation. This motion is based on the following facts, arguments, and law.

**B. Facts.**

1. Debtors filed for Chapter 11 relief on October 7, 2011. (Doc.1)

2. A Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines was filed by the Clerk on October 24, 2011. (Doc. 12) The Notice required all claims to be filed by February 16, 2012, except claims of governmental units which were due May 16, 2012. (Id.) The Notice was mailed to the MML the same day. (Doc. 13)

SECOND AMENDED INTERIM DISTRIBUTION MOTION - 1

3. Debtors' case was converted to Chapter 7 on April 23, 2013. (Doc. 193) David P. Gardner was appointed Chapter 7 Trustee in the case on the same date.

4. On May 10, 2013, a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines was filed by the Clerk, requiring all claims to be filed by September 24 and October 20, 2013. (Doc. 202) The Notice was mailed to the MML the same day. (Id.)

5. Fifteen claims were filed in this case and the claims bar date has run. The Trustee objected to Claim Nos. 3, 11, 13, and 15 on November 11, 2016. (Doc. 672 - 675) Orders disallowing each of those claims were entered on January 3, 2017. (Doc. 688 - 691) The Trustee objected to Claim Nos. 1, 2, and 9 on February 14, 2018. (Doc. 854, 855) Orders disallowing each of those claims were entered on March 31, 2018. (Doc. 891, 892)

6. At present, there are six allowed unsecured claims. They are:

   a. #14 – U.S. Trustee                              $    1,300.00
   b. ECF 234 – David Eash                            $   34,293.50
   c. #5 – Global Credit Union                        $   19,356.28
   d. #6 – Idaho Independent Bank                     $5,967,584.91
   e. #7 – Wells Fargo Bank                           $  245,099.92
   f. #10 – Lindia, LLC                               $    8,517.83
   g. **Total:**                                      **$6,276,152.44**

7. Throughout the case, the Trustee has paid court-approved compensation of his various professionals as follows:

   a. Black & Associates (Doc. 359)                   $    8,890.00
   b. Linda Salkow, Berkshire Hathaway (Doc. 494)     $   27,240.00
   c. Maggie Lyons, Resolve Financial (Doc. 299, 680) $    5,442.65
   d. John Munding, Munding Law (Doc. 681)            $  106,284.33
   e. Winston & Cashatt, Lawyers (Doc. 798)           $   76,784.18
   f. **Total:**                                      **$224,641.16**

8. Throughout the case, the Trustee has paid administrative expenses to protect and preserve assets of the estate as follows:

SECOND AMENDED INTERIM DISTRIBUTION MOTION - 2

|   |   |   |
|---|---|---|
| a. Sunset Towing | $ | 241.00 |
| (tow 2006 H2 to mechanic) | | |
| b. Team Ramco Northwest | $ | 332.51 |
| (mechanical work on 2006 H2, new battery) | | |
| c. Linda Salkow | $ | 288.00 |
| (reimburse for locksmith re Arizona home) | | |
| d. A-Z Septic Plumbing, LLC | $ | 665.00 |
| (pump septic tank at Arizona home to pass inspection) | | |
| e. Andre Romberg Insurance Agency | | $ 2,293.13 |
| (annual insurance re 50-acres) | | |
| f. Idaho Dept. of Lands | | $13,445.00 |
| (annual lease re docks (see Doc. 659)) | | |
| g. **Total:** | | **$17,264.64** |

9. The Trustee has made prior distributions to creditors when he sold real property of the estate, by Court order, on March 19, 2015 and February 5, 2018. (Doc. 388, 471, 773, 852) Those distributions were as follows:

|   |   |
|---|---|
| a. Wells Fargo (Doc. 471) | $353,784.68 |
| b. Closing/Costs of Sale (Doc. 471) | $ 4,900.75 |
| c. TitleOne/IIB (Doc. 917) | $ 51,957.64 |
| d. **Total:** | **$410,643.07** |

10. A true and accurate Form 2 Estate Cash Receipts and Disbursements Record verifying the disbursements discussed in ¶¶7-9 above is attached hereto as "Exhibit A".

11. The Trustee is seeking approval of interim compensation and reimbursement of expenses, filed herewith, in the amount of **$57,585.55**.

12. The estate's funds are held in Union Bank. Currently, the estate's account contains $487,073.99. Union Bank charges the estate a monthly fee of 00.15% of the account's balance. The average fee for the months of March, 2017 through April, 2018 is $849.02. A fee in that approximate amount will continue to be charged as long as the estate maintains such a large account balance. The fee is customarily charged on the last business day of the month.

13. The estate's only remaining property to be administered are the counterclaims filed against IIB by Debtors. A motion to settle/transfer those counterclaims is pending.

SECOND AMENDED INTERIM DISTRIBUTION MOTION - 3

14. The Debtors have several pending appeals at U.S. District Court for the District of Idaho. IIB and the Trustee are defending those appeals presently and expect they will be successful.

15. The estate's remaining liabilities are limited. The Trustee expects no further litigation by the estate, as all claims were transferred to IIB. However, given the history of the case, it is reasonable to expect that the Trustee may need legal counsel before the case is closed to defend appeals by the Debtors and to protect the estate and its assets. The Trustee intends to withhold approximately $20,000.00 from interim distribution for this purpose. The estate may need to file 2018 income tax returns. The Trustee expects the returns, if necessary, will cost approximately $5,000.00 and is withholding that amount from interim distribution. Finally, Resolve and the estate's accountants, Kavadias Hall, will be filing fee applications for their work on the trial on the sale motion held January 16-17, 2018. The Trustee is reserving an additional $5,000.00 for that reason. Total reserves would approximate **$30,000.00**.

16. Assuming payment of the interim compensation requested by the Trustee is granted and reserving for the above-envisioned costs, approximately $430,000.00 would remain in the estate. Based on this amount, I am requesting the Court permit an interim distribution to unsecured creditors of **$400,000.00**.

17. Attached to this Motion as "Exhibit B" is a true and accurate copy of the Trustee's Proposed Distribution of $400,000.00 to the five allowed unsecured claims discussed in ¶6 above.

**C. Argument.**

FRBP 3009 requires the Trustee to pay "dividends to creditors . . . as promptly as practicable". Here, five unsecured claims have been allowed, totaling $6,276,152.44, and the bar

SECOND AMENDED INTERIM DISTRIBUTION MOTION - 4

date has run. The estate has $487,073.99 on deposit, and intends to withhold approximately $30,000.00 from distribution. It is reasonable to believe the Trustee is likely to recover further funds as part of the sale of the counterclaims, though limited. But that could take significant time, and banking fees will continue to accrue and diminish the estate's cash available for distribution.

Leaving a large sum of funds in the estate's account for any appreciable amount of time will result in loss of funds to bank fees that would otherwise be distributed to allowed claims and administrative expenses. The Trustee requests that the Court enter an order permitting an interim distribution in this case as follows (a detailed Proposed Interim Distribution is attached):

| | | |
|---|---|---|
| 1. | Amount on Hand | $487,073.99 |
| 2. | Payment to Unsecured General Claims | $400,000.00 |
| 3. | Payment of Trustee Compensation (if approved) | $ 57,585.55 |
| 4. | **Remainder in Estate:** | **$ 29,488.44** |

The interim distribution outlined above will allow the estate to make a meaningful, immediate distribution on allowed claims without eroding the estate's current assets through unavoidable bank fees. As proposed, the interim distribution will pay approximately 6.37% of the allowed general unsecured claims, 100% of the administrative claims and professional compensation, and 100% of the interim trustee compensation (if approved by the Court). Distributing $400,000.00 to unsecured claimants allows the estate to retain a reasonable amount of funds for the continued administration of this estate.

The Trustee expects to sell the estate's remaining assets, garnering more funds to distribute to creditors. An interim distribution will allow creditors of this six-and-a-half year old case to get a meaningful distribution now and allow the estate to move forward to finalizing the administration of the case and final distributions to creditors. Further, it will stop the loss of large

SECOND AMENDED INTERIM DISTRIBUTION MOTION - 5

monthly banking fees, which benefit no party in interest. For those reasons, the Trustee submits that granting this motion is in the best interests of all parties.

**D. Conclusion.**

The Trustee respectfully requests the Court enter an order granting this motion.

DATED this 31st day of May, 2018.

/s/David P. Gardner
DAVID P. GARDNER, Chapter 7 Trustee

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

| | |
|---|---|
| Stephen F. Gordon, Attorney of the Petitioners<br>(Email: sgordon@gordonfirm.com)<br>The Gordon Law Firm LLP<br>River Place 57 River Street Wellesley, MA 02481 | Paul W. Carey, Attorney of Creditor<br>FERRIS DEVELOPMENT GROUP, LLC<br>(Email: pcarey@mirickoconnell.com)<br>Mirick, O'Connell, DeMallie & Lougee, LLP<br>100 Front Street, Worcester, MA 01608 |
| Scott A. Schlager on behalf of,<br>Nathanson & Goldberg, P.C., a creditor.<br>(Email: sas@natgolaw.com)<br>183 State Street, 5th Floor Boston, MA 02109 | Brian W. Riley, Attorney of Creditor<br>Jeffrey T. Blake, Attorney of Creditor<br>Roger L. Smerage, Attorney of Creditor<br>TOWN OF WESTBOROUGH<br>(Email: briley@k-plaw.com)<br>(Email: jblake@k-plaw.com)<br>(Email: rsmerage@k-plaw.com)<br>KP Law, P.C.  101 Arch Street,<br>12th Floor Boston, MA 02110 |
| Assistant U.S. Trustee<br>Richard King<br>Office of US. Trustee<br>446 Main Street 14th Floor<br>Worcester, MA 01608<br>USTPRegion01.WO.ECF@USDOJ.GOV | |
| Jonathan R. Goldsmith<br>Chapter 7 Trustee<br>trusteedocs1@gkalawfirm.com<br>Goldsmith, Katz & Argenio P.C.<br>1350 Main Street, 15th Floor.<br>Springfield, MA 01103 | Gary M Ronan<br>David M Abromowitz<br>Goulston&storrs<br>GRonan@goulstonstorrs.com<br>DAbromowitz@goulstonstorrs.com<br>400 Atlantic Avenue<br>Boston, MA 02110 |
| Dyann Blaine<br>20 Queensbrook Place<br>Orinda, CA 94563<br>dyann.blaine@gmail.com | Peter Blaustein<br>950 Vista Road<br>Hillsborough, CA 94010<br>pblaustein@gmail.com |
| Jan Blaustein Scholes<br>7501 E Thompson Peak Pkwy<br>Scottsdale, AZ 85255<br>jan.scholes2@gmail.com | Walter Horst<br>Babcock & Brown<br>1264 Rimer Drive<br>Moraga, CA 94556<br>walter.horst@babcockbrown.com |
| Mark S. Lichtenstein<br>AKERMAN LLP<br>1251 Avenue of the Americas, 37th Flr.<br>New York, New York 10020<br>mark.lichtenstein@akerman.com | Samual A. Miller, Esq.<br>AKERMAN LLP<br>420 South Orange Avenue<br>Suite 1200<br>Orlando, FL 32801<br>samual.miller@akerman.com<br>sharlene.harrison-carera@akerman.com |

_____
Lolonyon Y Akouete