UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

RESPONSE TO TOWN OF WESTBOROUGH'S MOTION FOR INJUNCTION AND
SANCTIONS AGAINST LOLONYON AKOUETE

To the Honorable Judge of the United States Bankruptcy Court: Christopher J. Panos

I, Lolonyon Akouete, hereby oppose the Town of Westborough's Motion for Injunction and
Sanctions on the following grounds:

## 1. The Debtor's Claim to the Property Is Still Under Litigation

The Town of Westborough argues that I have no legal interest in the property located at 231
Turnpike Road because the town claims to hold absolute title following a foreclosure judgment on
January 5, 2022. However, the debtor (Westborough SPE LLC) timely filed a **Motion to Vacate
the Foreclosure Judgment** within the statutory redemption period under Massachusetts law, on
**January 4, 2023**. According to the precedent set in **Bank of Commonwealth v. Bevan**, the
bankruptcy court has authority to review whether a foreclosure is part of the bankruptcy estate if it
involves equitable redemption rights that have not yet expired.

Further, in **In re Pontes**, the court found that procedural due process must be strictly followed
when dealing with tax sales and redemption periods. My argument is that the foreclosure judgment
was invalid due to the failure to provide proper notice, and this directly affects the Town's claim of
ownership. This aligns with **Smith v. SIPI, LLC**, where the **Seventh Circuit** held that until a tax
deed is recorded, the debtor retains certain rights in the property, and thus, the transfer is not
perfected.

Thus, the property remains an asset subject to the bankruptcy estate, and the bankruptcy court must
resolve the pending litigation on whether the foreclosure judgment should be vacated. Therefore,
any assertion that I have "no legal interest" is premature.

## 2. Due Process Violations

The central issue surrounding the Town of Westborough's ownership is based on the property's
foreclosure process. Under Massachusetts law, G.L. c. 60 § 69A grants debtors a right to redeem
property within a year after a tax foreclosure judgment. Since Westborough SPE LLC's **Motion to
Vacate the Foreclosure Judgment** was filed within this period, due process rights to redeem the
property were preserved. As held in **Pontes**, a tax sale process that does not provide adequate
notice of the redemption right violates the due process rights of the property owner.

Moreover, under **Tallage Lincoln v. Williams**, which the Town relies on, a foreclosure judgment transfers absolute title to the town. However, that ruling presupposes that all statutory due process requirements were met. My challenge is based on the argument that the foreclosure process violated **procedural due process**, as required by both **state law** and **the Fourteenth Amendment**.

## 3. Fraudulent Transfer and Bankruptcy Law (11 U.S.C. § 548)

The Town's motion relies heavily on its claim to absolute title. However, as demonstrated in **Smith v. SIPI, LLC**, until a tax deed is issued and recorded, the debtor retains equitable interest in the property. If the Town's foreclosure is set aside, it could be deemed a **fraudulent transfer** under **11 U.S.C. § 548**, since the Town transferred the property to itself for **$0**, well below its **fair market value of $5 million**, and is attempting to sell it for **$2.5 million**, a price far below market standards. In **Smith**, the court found that transfers of property at significantly below-market value can be set aside as fraudulent transfers.

The **Motion to Vacate the Foreclosure Judgment** asserts that this transfer violated bankruptcy law, and until this matter is resolved, the property must be treated as part of the debtor's estate. Therefore, I have a legitimate interest in attempting to secure market offers that reflect the property's true value.

## 4. Efforts to Market the Property Are Proper and in the Best Interest of the Estate

My efforts to market the property were made with the goal of ensuring the highest and best value for the estate and all creditors, including myself as a creditor of **Westborough SPE LLC**. The **Town's actions to sell the property at a low price** reflect an undervaluation that could harm the interests of the estate. My listing of the property on LoopNet was aimed at gathering market data to show the true market value, which is in line with my fiduciary responsibilities as a creditor to protect the estate's value.

The Town's objection that I "misrepresented ownership" fails to recognize that the **property's title remains in dispute** due to the ongoing bankruptcy proceedings, as noted in **Smith** and **Pontes**.

## 5. Sanctions Are Unwarranted

The Town's request for sanctions is not only unwarranted but also inappropriate. I have acted in good faith to secure the best possible outcomes for the estate and its creditors. The Town claims that my actions are "vexatious" and "disruptive," but in reality, they are aimed at ensuring transparency and fairness in a complex bankruptcy case. The Town's concerns over potential confusion in the market are speculative at best, and there is no evidence that my actions have caused actual harm to the Town.

## Conclusion

For the reasons stated above, I respectfully request that the Court deny the Town of Westborough's Motion for Injunction and Sanctions. The Town's title to the property is disputed, the debtor retains equitable interest in the property, and my actions are justified under the law as part of efforts to protect the estate's value.

I also request that the Court recognize my **Motion to Vacate the Foreclosure Judgment** and allow the bankruptcy court to determine whether the foreclosure should be set aside, which would make the property part of the bankruptcy estate.

DATED: October 3, 2024, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator       about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709   Doc 372   Filed 10/03/24   Entered 10/03/24 13:22:09   Desc Main
Document       Page 4 of 50

Exhibit 1

[casetext.com](casetext.com)

# Bank of Commonwealth v. Bevan, 13 B.R. 989

*GUY, District Judge.*

26–33 minutes

Civ. A. No. 80-71535.

February 9, 1981.

Donald Cadotte, Detroit, Mich., for appellant.

Rae Lee Chabot, Birmingham, Mich., for appellee.

## OPINION

This case comes before the court on appeal from an Order enforcing an automatic stay of proceedings under 11 U.S.C. § 362 entered by the bankruptcy judge on March 4, 1980. The order indefinitely extended a statutory redemption period that began to run following a foreclosure sale of the residential property of the debtor, the defendant named in this action. Plaintiff, as mortgagee and purchaser at the foreclosure sale, has filed a motion for summary judgment alleging that the bankruptcy court erred in finding that the debtor's remaining interest in the residential property involved in this suit was "property of the estate" as defined in 11 U.S.C. § 541, and that the court wrongly stayed the statutory redemption period pursuant to 11 U.S.C. § 362(a).

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709    Doc 372    Filed 10/03/24    Entered 10/03/24 13:22:09    Desc Main
Document    Page 5 of 50

Whether a motion for summary judgment is the appropriate procedure for review of the bankruptcy judge's order is immaterial to the determination of the issues on appeal to the district court. The ultimate resolution of those issues is the same whether accomplished by summary judgment or an alternative procedure.

The facts presented in this case show that the debtor gave a second mortgage on his home in West Bloomfield, Michigan, as security for a corporate loan. The residential property was held by the defendant and his wife as tenants by the entireties. The defendant defaulted on the terms of the second mortgage and the plaintiff as the mortgagee on the second mortgage commenced foreclosure proceedings. A foreclosure sale occurred on December 18, 1979, at which time a Sheriff's Deed on Mortgage Sale was issued to the second mortgagee as purchaser. The deed was recorded with the Oakland County Register of Deeds at 11:33 A.M. on the day of sale, December 18, 1979. Later that same day, at 3:24 P.M., the defendant filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The bankruptcy court's order of March 4, 1980, stayed the expiration of the statutory period of redemption which would have ended on June 18, 1980.

The court is careful to distinguish between the old Bankruptcy *Act* and the new Bankruptcy *Code,* which went into effect October 1, 1979. This case involves application of the Bankruptcy *Code.*

Before the court can address the issue of the stay under 11 U.S.C. § 362(a), the court must first determine whether the debtor's remaining interest in the residential property involved in this suit is "property of the estate" and thereby allegedly subject to the automatic stay provisions of the Bankruptcy Code. In Michigan, the debtor's interest in real property subsequent to a foreclosure sale includes a right of redemption which allows the debtor a statutorily prescribed period of time to "redeem" the

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709 Doc 372 Filed 10/03/24 Entered 10/03/24 13:22:09 Desc Main
Document Page 6 of 50

property from the purchaser at the sale. M.C.L.A. § 600.3101 *et seq;* M.C.L.A. § 600.3201 *et seq.* While the nature and extent of the debtor's interest in real property is determined by application of state law, the Bankruptcy Code defines those interests in property which become "property of the estate" and hence within the jurisdiction of the bankruptcy court. 4 *Collier on Bankruptcy* ¶ 541.07[1] (15th ed. 1980). Section 541 of the Bankruptcy Code defines "property of the estate" as follows:

In addition to the right to redeem granted by statute, the mortgagor retains legal title in the premises up until the expiration of the period allowed for redemption. *Bankers Trust Company of Detroit v. Rose,* 322 Mich. 256, 33 N.W.2d 783 (1948).

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Accordingly, the statutory right of redemption created under state law generally passes into the estate of the debtor if the period of redemption has not expired at the time the petition is filed. 4 *Collier on Bankruptcy,* ¶ 541.07[3] (15th ed. 1980). As the statutory right of redemption had begun only a few hours prior to the defendant's filing of a Chapter 11 petition, the right to redeem became property of the estate by operation of § 541 as of the time of filing.

The plaintiff also raises the issue of whether property held by the debtor and his wife as tenants by the entireties becomes property of the estate when only the husband files a petition. Under the Bankruptcy Code, the

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator        about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709    Doc 372    Filed 10/03/24    Entered 10/03/24 13:22:09    Desc Main
Document        Page 7 of 50

debtor's interest in property becomes part of the estate. 4 *Collier on Bankruptcy,* ¶ 541.07[8] (15th ed. 1980); *Leonard v. Walter,* 1 C.B.C.2d 460, 2 B.R. 600 (Bkrtcy.W.D.Mich. 1980).

Having determined that the right of redemption became property of the estate, the issue directly before the court concerns the bankruptcy judge's order which indefinitely stayed the expiration of the statutory redemption period by operation of § 362(a). Upon the filing of a petition in bankruptcy, an automatic stay takes effect which precludes certain actions against the debtor or property of his estate. 11 U.S.C. § 362(a). Section 362(a) of Title 11 provides in pertinent part:

The bankruptcy judge did not articulate in his order which subsection of § 362(a) he deemed applicable to stay the running of the redemption period. However, this court's holding that § 362(a) does not toll time periods makes the determination as to the subsection employed in this case immaterial.

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of —

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator     about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709    Doc 372    Filed 10/03/24    Entered 10/03/24 13:22:09    Desc Main
Document      Page 8 of 50

from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

As the legislative history of § 362(a) indicates:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R.Rept. No. 95-595, 95th Cong., 1st Sess. 340 (1977), U.S. Code Cong. Admin. News 1978, pp. 5787, 6296. Section 362(a) codifies in one section those provisions of the previous bankruptcy rules dealing with the stay of actions and enforcement of liens. *See,* Bankruptcy Rules 401, 601, 8-501, 9-4, 10-601, 11-44, 12-43, 13-401. The scope of protection afforded by the stay is extremely broad. *Matter of R. S. Pinellas Motel Partnership,* 2 B.R. 113 (M.D.Fla. 1979).

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709    Doc 372    Filed 10/03/24    Entered 10/03/24 13:22:09    Desc Main
Document        Page 9 of 50

Defendant in this action asks the court to affirm that § 362(a) automatically tolls the running of the statutory redemption period upon the filing of a bankruptcy petition. This would in effect grant the trustee an indefinite period of time to redeem the property. While the language of § 362(a) fails to explicitly address the running of time periods, other provisions of the Bankruptcy Code speak directly to the issue.

*See* 11 U.S.C. § 362(c) and (d) for provisions controlling the expiration of the stay.

Section 11(e) of the old Bankruptcy Act gave the trustee a minimum of sixty days to redeem property of the debtor. If the statutory redemption period exceeded the minimum amount of time established by the Bankruptcy Act, the trustee had until the later date to redeem the property. The extension of time provision found in § 11(e) of the Bankruptcy Act finds an identical counterpart in § 108 of the new Bankruptcy Code:

Section 11e [11 U.S.C. § 29(e)] states:

A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy. Where, by any agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim, or for presenting or filing any claim, proof of claim, proof of loss, demand, notice, or the like, or where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the

petition in bankruptcy, the receiver or trustee of the bankruptcy may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by the agreement or in the proceeding or by applicable Federal or State law as the case may be.

In discussing whether the filing of a bankruptcy petition under the Bankruptcy *Act* extended a redemption period expiring shortly thereafter until the trustee has had an opportunity to act, *Collier* notes:

Under the terms of § 11e [of the Bankruptcy Act], the trustee has 60 days after the date of adjudication in which to exercise any right or privilege, or take any action permitted to the bankrupt in any proceeding or under any agreement or applicable federal or state law. If the time permitted in the agreement or proceeding, or by federal or state law, is longer than the period thus created, the trustee may act within the longer period. This would appear to remove the difficulty and alter the rule in cases where the redemption period expired shortly after bankruptcy and before the trustee was appointed or had an opportunity to act. But this would apply only in cases where it was the bankrupt's right or equity that survived the filing date. (Citations omitted).

4A *Collier on Bankruptcy,* ¶ 70.16[3] (14th ed. 1978).

(a) If applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of —

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) two years after the order for relief.

(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure or perform, as the case may be, before the later of —

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 60 days after the order for relief.

(c) Except as provided in section 524 of this title, if applicable law, an order entered in a proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of —

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, or 1301 of this title, as the case may be, with respect to such claim.

Section 108(b), as it effects the amount of time given the trustee to file "any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act," grants the trustee a minimum of sixty days or the running of the period, whichever is longer, in which to act.

Under the language of § 362(a), an automatic stay applies to "acts,"

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator     about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709    Doc 372    Filed 10/03/24    Entered 10/03/24 13:22:09    Desc Main
Document    Page 12 of 50

"proceedings" and their "continuation," and "enforcement" of judgments against the debtor or property of the estate, and does not effect the running of specific time periods unlike § 108 which speaks explicitly to that issue. As stated in the legislative history of § 108:

*Collier* notes in describing the scope of a stay under § 362(a) that:

> The stay of section 362 is extremely broad in scope and aside from the limited exceptions of subsection (b) should apply to almost any type of formal or informal action against the debtor or the property of the estate. It should be observed that one of the benefits of the stay is creditor protection in a manner consistent with the promotion of the bankruptcy goal of equality of distribution. Subsection (a) simply provides for an automatic stay, applicable to all entities, of a wide variety of actions listed in subsections (a)(1) through (a)(8). While the language is from time to time duplicative little is omitted. In each instance section 362(b) should be consulted to ascertain whether there is an applicable exception.

2 *Collier on Bankruptcy,* ¶ 362.04 (15th ed. 1980).

> Subsections (a) and (b), derived from Bankruptcy Act section 11, permit the trustee, when he steps into the shoes of the debtor, an extension of time for filing an action or doing some other act that is required to preserve the debtor's rights. Subsection (a) extends any statute of limitation for commencing or continuing an action by the debtor for two years after the date of the order for relief, unless it would expire later. Subsection (b) gives the trustee 60 days to take other actions not covered under subsection (a), such as filing a pleading demand, notice, or proof of claim or loss (such as an insurance claim), unless the period for doing the relevant act expires later than 60 days after the date of the order for relief.

> Subsection (c) extends the statute of limitations for creditors. Thus, if a

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator          about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709    Doc 372    Filed 10/03/24    Entered 10/03/24 13:22:09    Desc Main
Document        Page 13 of 50

creditor is stayed from commencing or continuing an action against the debtor because of the bankruptcy case, then the creditor is permitted an additional 30 days after notice of the event by which the stay is terminated, whether that event be relief from the automatic stay under proposed 11 U.S.C. § 362 or 1301, the closing of the bankruptcy case (which terminates the stay), or the exception from discharge of the debts on which the creditor claims.

H.R.Rept. No. 95-595, 9th Cong., 1st Sess. 318 (1977), U.S. Code Cong. Admin. News 1978, p. 6275.

A stay which results in additional time for the trustee to redeem the debtor's property would fit within the policy considerations of § 362(a) affording the debtor broad protection from the activities of others who seek to assert claims against the debtor or diminish the amount of property in the estate. However, § 108(b) also offers the debtor sufficient protection by giving the trustee a minimum amount of time in which to act. While a stay tolling the running of the statutory period would give the debtor greater protection than that contemplated by § 108, this court finds that where one section of the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to cause an irreconcilable conflict. *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1961).

A joint reading of § 108 and § 362(a) leads this court to conclude that the automatic stay provisions of § 362(a) do not override the extension of time provisions in § 108 controlling the period of time a trustee has to redeem the debtor's property. An interpretation of § 362(a) as an indefinite stay of the statutory period of redemption would render § 108(b) superfluous. If § 362(a) automatically stays the running of the statutory right to redeem until the stay is lifted pursuant to § 362(c) or (d), the pertinent time allotments of § 108(b) are completely extraneous as

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator        about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709    Doc 372    Filed 10/03/24    Entered 10/03/24 13:22:09    Desc Main
Document        Page 14 of 50

statutory time periods designed to control the trustee's activity. Moreover, if § 362(a) is interpreted to provide for the automatic stay of time periods for an indefinite amount of time, then subsections (a) and (b) of § 108, which define minimum and maximum time periods for the trustee to act, directly conflict with § 362(a). For rules of statutory construction, *see generally, Jacobson v. Rose,* 592 F.2d 515, 520 (9th Cir.), *cert. denied,* 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1978); *Stamps v. Mich. Teamster's Joint Council,* 431 F. Supp. 745 (E.D.Mich. 1977).

While this court concludes that § 362(a) does not automatically stay a statutory redemption period, the court is not unmindful of the case of *Hudson v. Genessee Merchants Bank Trust (In re Hudson),* 17 C.B.C. 255 (E.D.Mich. 1978), where the court found that the automatic stay of Rule 13-401 operated to prevent the expiration of the statutory period of redemption following a foreclosure sale. The court in *Hudson* relied on the earlier case of *Moore v. Mortgage Associates, Inc. (In re Moore),* 2 Bankr.Ct. Dec. 943 (W.D.Mich. 1976), where the court stayed a foreclosure sale following the debtor's filing of a wage earner plan confirmed by the court prior to the date of the advertised sale. However, the *Hudson* court failed to distinguish the situation where a foreclosure sale had already taken place prior to the debtor's filing a bankruptcy petition and where, as in *Moore,* the sale had merely been scheduled but had not occurred prior to filing. Section 362(a) would operate to stay a foreclosure sale, *In re Sulzer,* 2 B.R. 630 Bankr.L.Rep. (CCH) ¶ 67,340 (Bkrtcy.S.D.N.Y. 1980), but does not operate to effect the redemption period which runs subsequent to the sale.

Although the argument is made that § 362(a) stays the running of time periods, the opposite view is espoused by well known bankruptcy expert Frank R. Kennedy and avoids a strained construction of § 362(a):

[In] *Hudson v. Genessee Mchts. Bank Trust Co.,* (In re Hudson), 17

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator          about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709     Doc 372     Filed 10/03/24     Entered 10/03/24 13:22:09     Desc Main
Document          Page 15 of 50

Collier Bankr.Cas. 255 (Ref.E.D.Mich. 1978), . . . the court ruled that the automatic stay of Rule 13-401 operated to prevent the imminent expiration of the period allowed for redemption of property from foreclosure of a mortgage. The ruling is a questionable construction of the rule, which does not operate against the running of periods of limitation, and arguably the ruling would be no more justifiable as a construction of § 362. The trustee or debtor might argue, however, that the stay prescribed by § 362(a)(3) operates to prevent the purchaser at the foreclosure sale from "any act to obtain possession of . . . property from the estate."

Kennedy, *Automatic Stays Under the New Bankruptcy Law,* 12 U.Mich.J.L.Ref. 1, 16 n. 56 (1978).

Although the bankruptcy judge improperly referenced § 362(a) in enforcing a stay against the running of the statutory right of redemption, he did have the power to toll the running of the time period under 11 U.S.C. § 105 as hereinafter explained.

As noted in *Collier:*

Section 362 does not attempt to state the jurisdiction of the bankruptcy court with respect to stays and injunctive relief or to determine the boundaries of the exercise of the court's injunctive power. Section 105 which is the successor to Section 2a(15), gives the court the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." In addition to the very broad grant of jurisdiction in 28 U.S.C. § 1471, under section 1471(e) it is provided in particular that "The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of the case." In addition, bankruptcy courts have available the All Writs Statute and are

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709    Doc 372    Filed 10/03/24    Entered 10/03/24 13:22:09    Desc Main
Document    Page 16 of 50

given the powers of a court of law, equity and admiralty. Note, however, that under 28 U.S.C. § 1481 the injunctive power of the bankruptcy court is limited in one respect by the provision that a bankruptcy court may not enjoin another court but may enjoin the parties from proceeding. Finally, the stay power and the automatic stay will not be limited by any concept of sovereign immunity.

2 *Collier on Bankruptcy,* ¶ 362.02 (15th ed. 1980). (Footnotes omitted).

[Section 105](#) provides in pertinent part:

(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

(b) Notwithstanding subsection (a) of this section, a bankruptcy court may not appoint a receiver in a case under this title.

*See also,* 28 U.S.C. § 1481. Powers of bankruptcy court

A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court of warranting a punishment of imprisonment.

*See generally,* 2 *Collier on Bankruptcy,* ¶ 105.01 (15th ed. 1980).

While the court is unaware of any case law under § 105 of the Bankruptcy *Code* in which a bankruptcy court stayed the running of a statutory redemption period, two cases under the Bankruptcy *Act* focus on the bankruptcy court's power to stay or toll the running of time periods, including redemption periods.

In *Hamblen v. Federal Savings Loan Ins. Co. (In re Grosso Investment, Inc.),* [457 F.2d 168](#) (9th Cir. 1972), the Ninth Circuit found that the bankruptcy court could stay the running of the Arizona redemption period in relation to mortgaged property that was sold at a foreclosure sale prior

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709    Doc 372    Filed 10/03/24    Entered 10/03/24 13:22:09    Desc Main
Document    Page 17 of 50

to approval of a Chapter X petition. The court based its decision on §
2a(15) of the Bankruptcy Act [predecessor statute of § 105 of the
Bankruptcy Code], or alternatively under § 116(4) and § 148 of the
Bankruptcy Act. It is interesting to note that the court's decision in *Grosso*
predated the enactment of the Bankruptcy Rules which instituted
automatic stays in Chapter X cases. The *Grosso* court ruled that the
bankruptcy court had the power to issue a restraining order tolling the
running of the redemption period subsequent to a foreclosure sale.

Sec. 116. Upon the approval of a petition, the judge, may, in addition to
the jurisdiction, powers, and duties hereinabove and elsewhere in this
chapter conferred and imposed upon him and the court —

. . . .

(4) in addition to the relief provided by section 11 of this Act, enjoin or
stay until final decree the commencement or continuation of a suit
against the debtor or its trustee or any act or proceeding to enforce a lien
upon the property of the debtor.

Sec. 148. Until otherwise ordered by the judge, an order approving a
petition shall operate as a stay of a prior pending bankruptcy, mortgage
foreclosure, or equity receivership proceeding, and of any act or other
proceeding to enforce a lien against the debtor's property.

The *Grosso* court's decision based on § 116(4) and § 143 as applicable
provisions in a Chapter X proceeding or alternatively § 2a(15) of the
Bankruptcy Act addresses the power of the bankruptcy court to stay the
running of the statutory right of redemption. This is a different question
than that posed by an automatic stay under § 362 of the Bankruptcy
Code or the prior Bankruptcy Rules. As noted in its opinion, the *Grosso*
court distinguished between the need of a grace period provided by §

11e in straight liquidation as opposed to an applicable stay order pursuant to § 116 or § 148 in a Chapter X reorganization. While the court found § 11e "inconsistent" with the provisions for court ordered stays in Chapter X proceedings, the court called attention to its power to protect the property of the debtor and distinguished the use and need for that power in reorganization proceedings as opposed to straight liquidation cases. *Grosso, supra,* at 173 n. 11.

Under the Bankruptcy Code, section 362 incorporates stays that had previously been scattered throughout the Bankruptcy Act and Rules. Being in the nature of an *automatic stay* applicable to all filings under the various chapters, section 362 applies to straight liquidation as well as reorganization cases. This court therefore reads the *Grosso* decision as authority for the bankruptcy court in the exercise of its discretion to issue a restraining order as a court of equity which might result in a greater period of time for redemption by the trustee than anticipated by § 108. The *Grosso* decision is not interpreted by the court to stand for the proposition that an *automatic* stay pursuant to § 362 could increase the time periods contemplated by § 108.

Under the authority of *Grosso,* the bankruptcy court in *In re Mary Lou Holloway Banks,* 1 Bankr.Ct. Dec. 1145 (S.D.Cal. 1975), issued a temporary restraining order tolling the running of a ninety day loan reinstatement period during the pendency of a Chapter XII proceeding. The court found as a matter of law that it had the power to protect property rights of the debtor in reinstating a loan by issuing a stay order.

These two cases would appear to recognize the power of the bankruptcy court to issue a restraining order tolling the statutory redemption period. While the court earlier in its opinion determined that an automatic stay by operation of § 362(a) did not override the applicable time periods established by § 108(b), the court finds that a bankruptcy judge may

Bank of Commonwealth v. Bevan, 13 B.R. 989 | Casetext Search + Citator    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbank-o...

Case 23-40709    Doc 372    Filed 10/03/24    Entered 10/03/24 13:22:09    Desc Main
Document    Page 19 of 50

choose in appropriate situations to grant the trustee a greater period of time in which to act than § 108 initially authorizes. Pursuant to the broad power of the bankruptcy court to "issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," a bankruptcy judge may issue a stay order tolling the period of redemption. Although the bankruptcy judge in the case *sub judice* referenced § 362(a), his order staying the running of the statutory redemption period was within his discretionary powers and should be construed to be effective pursuant to the broad powers granted by § 105. Plaintiff is, of course, at liberty to petition the bankruptcy judge at any time to exercise his discretion and remove the stay and terminate the redemption period.

Prior to issuing its opinion, the court became aware of the recent decision in *Moratzka v. Lanesboro State Bank (In re Johnson),* 8 B.R. 369, 371 (Bkrtcy.D.Minn. 1981). This court would agree with Judge Dim in *Johnson* that § 362(a)(3) might be read to preclude the purchaser at the foreclosure sale from "any act to obtain possession of . . . property from the estate." *See* footnote 10, *supra.* The court also notes that the result reached in the case *sub judice* is identical to that reached by Judge Dim; the statutory time period alloted to the debtor to redeem property from a foreclosure sale is ultimately extended.

Accordingly, the bankruptcy judge's order is affirmed and plaintiff's motion for summary judgment is denied.

In Re Pontes, 310 F. Supp. 2d 447 (D.R.I. 2004) :: Justia  https://law.justia.com/cases/federal/district-courts/FSupp2/310/447/2419466/

Case 23-40709 Doc 372 Filed 10/03/24 Entered 10/03/24 13:22:09 Desc Main
Document Page 20 of 50

<span style="color:red">Exhibit 2</span>



# In Re Pontes, 310 F. Supp. 2d 447 (D.R.I. 2004)

**US District Court for the District of Rhode Island - 310 F. Supp. 2d 447 (D.R.I. 2004)**
**March 30, 2004**

---

### 310 F. Supp. 2d 447 (2004)

**In re Anthony J. PONTES, Debtor.**
**Anthony J. Pontes, Plaintiff,**
**v.**
**Michael F. Cunha, Sunset Realty, and Deborah Lapatin, Defendants.**

C.A. No. 02-420S.

### United States District Court, D. Rhode Island.

March 30, 2004.

***448** John Rao, Peace Dale, RI, for Plaintiff.

Pamela B. Quigley, Fernando S. Cunha, Esq., Fernando S. Cunha, Ltd., William J. Delaney, Tillinghast, Licht, Perkins, Smith & Cohen LLP, Providence, RI, Richard Riendeau, Pawtucket, RI, for Appellant.

*DECISION AND ORDER*

SMITH, District Judge.

This matter is before the Court on Michael F. Cunha's ("Cunha"), Deborah Lapatin's ("Lapatin"), and Sunset Realty's ("Sunset") (collectively, "Appellants") appeal [1] from an Opinion and Order of the U.S. Bankruptcy Court for the District of Rhode Island, which held the Rhode Island Tax Sales Statute (the "Tax Sale Statute"), R.I. Gen. Laws §§ 44-9-1 *et seq.,* unconstitutional insofar as it fails to provide property owners notice of their right of redemption under Rhode Island law. For the reasons discussed below, the Opinion and Order of the Bankruptcy Court is \***449** AFFIRMED. This Court writes separately to provide additional analysis regarding several important questions raised in this appeal.

### I. *Appellate Jurisdiction and Standard of Review*

District courts have jurisdiction to hear appeals from judgments, orders, and decrees of the bankruptcy court. *See* 28 U.S.C. § 158. Appeals from a bankruptcy court "are `taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeal from the district courts.'" *In re Ryan,* 282 B.R. 742, 747 (D.R.I.2002) (quoting 28 U.S.C. § 158(c) (2)). The standard of review is a bifurcated one. *In re Edmonston,* 107 F.3d 74, 75 (1st Cir. 1997). While the bankruptcy court's findings of fact are reviewed for clear error, *see* Fed. R. Bankr.P. 8013, its conclusions of law are reviewed *de novo. See id.*

### II. *Background*[2]

In August 1998, pursuant to R.I. Gen. Laws § 44-9-1 *et seq.,* the Providence Tax Collector sold Anthony Pontes' ("Pontes" or the "Debtor") residence at tax sale to recover delinquent taxes due on his property. Prior to the sale, the Collector sent by certified mail a Tax Sale Notice (the "Notice"), advising Pontes of the time and place of the sale and that the sale could be prevented by payment of the overdue taxes. The Notice did not advise Pontes of the statutory right to redeem his property, R.I. Gen. Laws § 44-9-21, [3] or of the existence of the procedures available to exercise the right of redemption.

The overdue taxes were not paid, the sale was held, and Sunset bought the property for $2,884.81 (the taxes owed plus accrued charges and penalties). Sunset received a "Collector's Deed" that is subject only to the Debtor's statutory right of redemption and exists for at least one year following the tax sale, and thereafter until the tax sale purchaser files a petition for foreclosure of redemption. *See* R.I. Gen. Laws §§ 44-9-21 and 44-9-25 (2000). [4] After the tax sale, Sunset recorded the deed in the Providence land evidence

records. Pontes received no notice, actual or otherwise, that the sale took place, nor did he receive any post-sale notice of the right of redemption, the length of time that he had to redeem, or the amount of money required to redeem. In fact, Pontes received *450 no notice of any kind until one year after the tax sale, in September 1999, when he received a copy of an amended "Petition To Foreclose Tax Lien," filed in the Rhode Island Superior Court by Sunset. The petition, which initiated the procedure to foreclose the right of redemption, advised Pontes of the existence of the action and the deadline for filing an answer. The petition stated in part:

> Whereas, an amended petition has been presented to said Court by SUNSET REALTY ... to foreclose all rights of redemption from the tax lien proceedings described in said petition in and concerning a certain parcel of land.... If you desire to make any objection to said petition you or your attorney must file a written appearance and answer, under oath, setting forth clearly and specifically your objections or defense....

*See* Joint Statement of Stipulated Facts, Docket No. 99-13945, Ex. C, ¶¶ 1, 4-5. Less than two months after receiving a copy of the "Petition To Foreclose Tax Lien," Pontes sought protection under Chapter 13 of the Bankruptcy Code, and shortly thereafter brought an adversary proceeding challenging the constitutionality of the Tax Sale Statute. In that proceeding, Pontes alleged that the Tax Sale Statute violated due process because it failed to provide him meaningful notice of the right of redemption and the procedures available to redeem his property under the statute.

The City of Providence (the "City") and the State of Rhode Island (the "State") objected to the jurisdiction of this Court, first on the ground that principles of comity and the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, bar this type of case from being brought in *any* federal court. The City also objected to the merits of Pontes' argument by arguing that taxpayers are charged with knowledge of their rights under the law, and that the Tax Sale Statute as written provides due process.

The State, appearing specially, argued in the Bankruptcy Court that it is an indispensable party to the suit and dismissal of the adversary proceeding was required based on its sovereign immunity.

Based on the stipulated record submitted to the Bankruptcy Court, and the arguments of counsel on cross-motions for summary judgment, the Bankruptcy Court found as follows:

(1) that notwithstanding the TIA, the Bankruptcy Court had jurisdiction to hear this matter; (2) that the State was not an indispensable party; and (3) that sovereign immunity does not apply in this proceeding. [5] As to the constitutional question, the Bankruptcy Court concluded that the Tax Sale Statute fails to provide meaningful notice of the right to redeem property after a tax sale, and that this omission violates the Due Process Clause of the Fourteenth Amendment.

## III. *The Question of Jurisdiction*

The City's argument that the TIA bars the Court from exercising jurisdiction requires this Court to examine both the TIA (and its historical origins and scope) and the so-called "bankruptcy exception" to the TIA. As the discussion below illustrates, this is not a well-lit path. No case in the First Circuit and few courts anywhere have confronted the question presented here.

### A. *The TIA*

The journey starts with the TIA itself, which states simply: "The district courts shall not enjoin, suspend or restrain the **\*451** assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. When the Constitution's framers "split the atom of sovereignty," *U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 838, 115 S. Ct. 1842, 131 L. Ed. 2d 881 (1995) (Kennedy, J., concurring), they recognized that the states' taxing power is an essential element of state sovereignty, which could not be abridged by the federal government.

> [T]he individual States should possess an independent and uncontrollable authority to raise their own revenues for the supply of their own wants.... [T]hey would under the plan of the Convention retain that authority in the most absolute and unqualified sense; and ... an attempt on the part of the national Government to abridge them in the exercise of it would be a violent assumption of power unwarranted by any article or clause of its Constitution.

The Federalist No. 32, at 199 (Alexander Hamilton) (Jacob E. Cooke, 1961). Very early in the Nation's history, in *McCulloch v. Maryland,* 4 Wheat. 316, 17 U.S. 316, 425, 4 L. Ed.

579 (1819), the Supreme Court recognized that interference with state taxing power could jeopardize the delicate balance of state-federal relations. Fifty years later, the Court reiterated the point:

> It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes may derange the operation of government, and thereby cause serious detriment to the public.

*Dows v. City of Chicago,* 11 Wall. 108, 78 U.S. 108, 110, 20 L. Ed. 65 (1870).

The TIA was enacted to ensure the continuity of these fundamental principles after the Supreme Court's landmark decision in *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), which held that federal courts may enjoin state officers from enforcing an unconstitutional law. In passing the TIA, Congress "recognized that the autonomy and fiscal stability of the States survive best when state tax systems are not subject to scrutiny in federal courts." *Fair Assessment in Real Estate Ass'n. v. McNary,* 454 U.S. 100, 102-03, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981); *Arkansas v. Farm Credit Servs. of Central Arkansas,* 520 U.S. 821, 826-27, 117 S. Ct. 1776, 138 L. Ed. 2d 34 (1997) ("Enactment of the [TIA] reflects a congressional concern to confine federal-court intervention in state government, a concern prominent after ... *Ex parte Young.* ..."); *Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n.,* 515 U.S. 582, 590-91, 115 S. Ct. 2351, 132 L. Ed. 2d 509 (1995) ("the [TIA] may be best understood as but a partial codification of the federal reluctance to interfere with state taxation"); *California v. Grace Brethren Church,* 457 U.S. 393, 409 n. 22, 102 S. Ct. 2498, 73 L. Ed. 2d 93 (1982) ("Congress worried not so much about the form of relief available in the federal courts, as about divesting the federal courts of jurisdiction to interfere with state tax administration"). Moreover, the Supreme Court has emphasized that the TIA is to be interpreted broadly and that federal courts are to "guard against interpretations of the [TIA] which might defeat its purpose and text." *Farm Credit Servs.,* 520 U.S. at 827, 117 S. Ct. 1776.

**\*452** The tax scheme at issue in this case involves the collection of municipal property taxes.[6] As such, it falls squarely within the scope of the TIA's prohibition on federal interference. A suit to enjoin the tax collection scheme is as much an interference with the tax scheme as a suit to enjoin the tax itself. *See In re Gillis,* 836 F.2d 1001, 1008 (6th

Cir.1988) ("the interference by the federal courts into the state tax system is the same in degree and kind as a suit seeking to enjoin a state tax; and the expense to the state in defending the action is identical"). Thus, it is beyond quarrel that the TIA precludes federal court jurisdiction in this case unless some other basis for jurisdiction exists that supercedes the TIA.

### B. The "Bankruptcy Exception" to the TIA

The City argues that the TIA, and the long-standing principles of comity and federalism that undergird it, precluded the Bankruptcy Court from exercising jurisdiction over Pontes' challenge to the Tax Sale Statute. In rejecting this argument, the Bankruptcy Court relied on the so-called "bankruptcy exception" to the TIA found at 11 U.S.C. § 505. Section 505 states that a bankruptcy court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to [a] tax," unless "such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a) (1) (2) and (a) (2) (A). The Bankruptcy Court cited several cases for its conclusion that § 505 carves out a "well recognized exception" to the TIA and principles of comity for cases being adjudicated in a bankruptcy court. *See In re Stoecker,* 179 F.3d 546 (7th Cir.1999); *City Vending of Muskogee v. Oklahoma Tax Comm'n,* 898 F.2d 122 (10th Cir.1990); *Adams v. Indiana,* 795 F.2d 27 (7th Cir.1986). In its brief discussion of these cases, the Bankruptcy Court found that "[c]ourts considering the interplay between the T.I.A. and Section 505 have held that Congress intended the more specific Bankruptcy Code provision to override and supercede the older general language of the T.I.A." 280 B.R. at 27.[7]

The Tenth Circuit's discussion in the *Muskogee* case of the policies underlying § 505, which was relied upon by the Bankruptcy Court, is by far the most helpful of the cases cited. *Muskogee* involved two assessments against distribution of cigarettes to an Indian tribe that the distributor contended were unconstitutional. The district court held that it lacked jurisdiction to hear the case because of the TIA. The Circuit Court upheld that conclusion, but seemed to rely on other grounds. 898 F.2d at 124-26. The court stated that § 505 permits a bankruptcy court to consider questions of "state tax assessments" where the taxpayer has failed to pursue state remedies. The court pointed to two policies underlying this exception to the TIA. First, the need for "prompt resolution of a debtor's tax liability, where that **\*453** liability has not yet been determined prior to the bankruptcy proceeding, in the same forum addressing the debtor's overall financial condition"; and second, the

need to protect "`creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest.' "*Id.* at 124-125 (internal citation omitted). Thus, while the court did hold that § 505 may provide an exception to the jurisdictional bar of the TIA, it declined to apply the exception because there had been a final determination in the state tax tribunal.

As *Muskogee* indicates, while the jurisdictional bar of the TIA is indeed broad, § 505 appears to allow a federal court to exercise jurisdiction if the amount or legality of any tax, fine, or penalty relating to the tax needs to be determined in order to finalize the estate and move the bankruptcy case to closure. This does not mean that § 505 should permit a debtor/taxpayer simply to forego the state process and use the bankruptcy court's adversary proceeding vehicle to "federalize" a question that otherwise would be exclusively an issue of state law. A taxpayer cannot challenge a state tax for the first time in federal court when a state provides a process to challenge the tax, *see, e.g., Patel v. City of San Bernardino,* 310 F.3d 1138, 1141 (9th Cir.2002); *Bernard v. Village of Spring Valley, N.Y.,* 30 F.3d 294, 297 (2d Cir.1994) (holding that action in federal court was barred when plaintiff had procedurally adequate remedies that could be sought in state court); *Daytona Beach Racing and Recreational Facilities Dist. v. County of Volusia,* 579 F.2d 367, 369 (5th Cir.1978) (holding that plaintiff could not "fail to take advantage of the state remedy and then litigate in federal court"), or where there is a final adjudication at the state level (and a party seeks only a second bite at the apple). Further, even when a challenge is based on federal law, or where an action is purely injunctive (or declaratory) in nature but does not impact the estate and the efficient resolution of the case, the federal court will decline to entertain the question. However, where the challenge does have a direct impact on the amount of money in the estate, would contribute to the efficient resolution of the bankruptcy petition, and raises a federal constitutional question, as this one does, it falls well within the scope of the federal court's jurisdiction under § 505's carve-out to the TIA.

Pontes has neither challenged the amount of the assessment on his property nor the legality of the tax through the state court process. The City initiated the collection process by slating the property for tax sale. Pontes made no challenge he simply did not pay. Only after the tax title was purchased by Sunset at a tax sale, and foreclosure proceedings were initiated, did Pontes file his Chapter 13 petition and bring this adversary proceeding. Thus, it is uncontested that Pontes has never challenged the assessment or its legality at the administrative level or in state court.

The challenge by Pontes does, however, have a potentially significant financial impact on

the estate. If the Tax Sale Statute is held unconstitutional and the tax sale is void, then any costs, penalties, interest, and attorneys fees associated with the redemption are eliminated. In this respect, § 505 clearly conferred jurisdiction upon the Bankruptcy Court to consider the Debtor's constitutional challenge. If it were otherwise, a bankruptcy court would not be able to determine accurately the obligations of a debtor that are essential to the approval of the Chapter 13 plan, or protect an estate from inappropriate encroachments if the redemption process is constitutionally deficient.

**\*454** Having concluded that the Bankruptcy Court properly asserted jurisdiction under § 505, this Court will turn to the due process claim raised by the Debtor.

### IV. *Due Process*

There is no dispute that Pontes was entitled to redeem his property in accordance with the tax sale procedure set forth in R.I. Gen. Laws § 44-9-1 *et seq.* On appeal, the question is simply whether the Tax Sale Statute provided Pontes with appropriate notice and a sufficient opportunity to assert his right of redemption.

### A. *The Right of Redemption and Due Process Protection*

The Due Process Clause of the Fourteenth Amendment only protects significant property interests. *See Mathews v. Eldridge,* 424 U.S. 319, 332-33, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). To determine if redemption is a property interest for purposes of the Fourteenth Amendment's Due Process Clause, courts should look to "an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). The Bankruptcy Court determined the right to redemption to be a property interest in Rhode Island because of the way it is treated by the Tax Sale Statute. *See* R.I. Gen. Laws § 44-9-12 (stating that a Collector's deed shall convey the land to the purchaser, subject to the *right* of redemption). This Court agrees with the Bankruptcy Court. Accordingly, this Court must determine whether this right of redemption is "significant" for purposes of a due process analysis.

"A `person's interest in a benefit is a `property' interest for due process purposes if there are ... rules ... that support his claim of entitlement to the benefit and that he may invoke at a hearing.'" *Federal Deposit Ins. Corp. v. Morrison,* 747 F.2d 610, 614 (11th Cir.1984)

(quoting *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972)). The right of redemption at issue in this case is part of a statutory scheme that is intended to protect property owners from the inequities that often exist in tax sales. To protect that right, the Rhode Island General Assembly provided property owners with a statutory right to retake their property following a tax sale once the outstanding taxes are paid. The Rhode Island Supreme Court has stressed the importance of the right of redemption. *See Albertson v. Leca,* 447 A.2d 383, 388 (R.I.1982) (holding that "the right of redemption is a valuable property right ... and the potential loss to the owner is grave"). Moreover, as the Bankruptcy Court held, the right of redemption implicates one of "life's basic necessities the place where [one] lives." 280 B.R. at 33. Accordingly, this Court agrees with the Bankruptcy Court and holds that the right of redemption is a significant property interest protected by the Due Process Clause. [8]

### B. *The Right of Redemption: What Process is Due?*

Procedural due process is a flexible concept that "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *see* **\*455** *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990).

In order to determine whether the Tax Sale Statute satisfies due process, the Bankruptcy Court correctly applied the balancing test first set forth in *Mathews,* 424 U.S. at 334, 96 S. Ct. 893. Under the *Mathews* balancing test, a court is required to weigh three factors when determining what procedural safeguards the Constitution requires in a particular case: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* After considering these factors, the Bankruptcy Court held that the Tax Sale Statute fails to satisfy due process. *See In re Pontes,* 280 B.R. at 34. This Court will conduct a *de novo* review of these factors.

### 1. *The Private Interest That Will Be Affected*

This factor easily and heavily weighs in Pontes' favor. As this Court noted, *supra,* Rhode

Island law regards the right of redemption as a significant property interest that merits due process protection under the Fourteenth Amendment. Moreover, the right of redemption is the *type* of property interest that deserves special attention because, at its core, the right of redemption implicates an individual's ability to retain his or her home. Accordingly, this Court finds that the Bankruptcy Court correctly applied and resolved this factor in the Debtor's favor.

### 2. *Risk of Erroneous Deprivation of Property*

In order to diminish the risk of an erroneous deprivation of property, the Supreme Court has held that the Constitution requires notice and a hearing before a state can deprive a person of his or her property. *See, e.g., Zinermon,* 494 U.S. at 127, 110 S. Ct. 975; *Goss v. Lopez,* 419 U.S. 565, 579, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) (at a minimum, due process requires "*some* kind of notice and ... *some* kind of hearing") (emphasis in original). Moreover, not only does the Due Process Clause mandate notice, but it also dictates the *quality* of that notice. In this case, the constitutionality of the Tax Sale Statute hinges on this principle.

Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). While *Mullane* is the seminal case regarding the adequacy of notice for purposes of the Due Process Clause, its application in the property tax sale context in *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983), is particularly relevant to this case.

In *Mennonite,* a mortgagee's recorded lien on real property had been extinguished under Indiana law by virtue of a tax sale and expiration of the redemption period. The mortgagee sued the current owner, arguing that its due process rights had been violated because (1) it had not received constitutionally adequate notice of the pending tax sale, and (2) it had not received notice of the opportunity to redeem the property following the tax sale. 462 U.S. at 795, 103 S. Ct. 2706. The Indiana courts upheld the statutory notice **\*456** scheme. The United States Supreme Court reversed, holding that due process required actual notice of the tax sale to the known mortgagee, but expressly stated that it was not deciding the issue of whether the mortgagee was also entitled to actual notice of its right to redeem the property. *Id.* at 800 n. 6, 103 S. Ct. 2706. The *Mennonite* Court relied on the notice principles set forth in *Mullane* to reach this decision. *Id.* at 795, 103 S. Ct. 2706. Finding

that the mortgage was a "substantial property" interest and noting that Indiana tax sales "significantly affected" mortgages, the Court held that the bank enjoyed a due process right to receive actual notice of the tax sale. *Id.* at 798, 103 S. Ct. 2706.

The constitutional question that this Court must therefore address, which was not reached in *Mennonite,* is whether due process requires the City of Providence to provide interested parties actual notice of the right to redeem their property in the event it is sold at a tax sale. The Appellants contend that it does not.

Appellants contend that it is not accurate to state that the property owner *never* receives notice of his or her right of redemption under the current version of the Tax Sale Statute. They are correct: R.I. Gen. Laws § 44-9-25 requires the holder of a tax title to file a Notice of Intention to Foreclose the Right of Redemption in state superior court anytime after one year from the time of the tax sale in order to obtain fee simple title to the property. The property owner is served with a copy of this notice. Upon receipt of this notice, the property owner may successfully contest the foreclosure of the right of redemption by filing an answer to the notice and agreeing to pay the entire delinquent tax bill, plus interest and statutory penalties for the failure to pay the taxes on time. There are also attorneys' fees and costs associated with the foreclosure proceeding. The issue in this case, however, is not whether the property owner ever receives notice of his or her right of redemption. Instead, the issue is whether the Due Process Clause is violated by the fact that the Tax Sale Statute permits the City to wait until the last possible moment to inform the property owner (through the Tax Title holder) of the right of redemption.

While neither the First Circuit nor any of its district courts has addressed this question, the Rhode Island Supreme Court recently confronted a constitutional challenge to the notice provision of the Rhode Island Tax Sale Statute that merits attention. *See Kildeer Realty v. Brewster Realty Corp.,* 826 A.2d 961 (R.I.2003). In *Kildeer,* the record owner of property granted a mortgage on the property to the Brewsters, who recorded their interest in the property by filing a mortgage deed in Providence's land evidence records. The property was subsequently conveyed several times until it ended up in the hands of 514 Broadway, Inc. During these conveyances, the property remained subject to the Brewsters' mortgage. Ultimately, because of a default on the underlying loan, the mortgage was foreclosed on May 21, 1999, and the property was sold at a tax sale to Brewster Realty. On May 28, 1999, the foreclosure deed was properly recorded in the land evidence records. Prior to the mortgage foreclosure, the Providence tax assessor assessed taxes on the property for the 1998 tax year. The tax had been assessed on Craig Raposa, the record owner when the taxes were assessed on December 31, 1997. The tax was never paid, and a tax sale was scheduled

for August 19, 1999. As part of the tax sale, the collector's office conducted a title search through June 24, 1999, and notified all mortgage holders of record of the impending tax sale. However, for unknown reasons, the title search did not uncover the Brewsters' mortgage on the **\*457** property despite its proper filing in the land evidence records. Consequently, the Brewsters never received notice of the impending tax sale. On August 19, 1999, the property was sold to Kildeer Realty at a tax sale, and Kildeer Realty properly recorded its interest in the property. More than one year after the tax sale, Kildeer Realty filed a petition to foreclose the right of redemption pursuant to R.I. Gen. Laws § 44-9-25, and provided notice to all interested parties. This time, however, Brewster Realty received notice of the pending action. Despite receiving notice, Brewster Realty did not contest the foreclosure, and a final decree was entered foreclosing Brewster Realty's right of redemption.

Brewster Realty challenged the judgment, arguing that its failure to receive notice of the tax sale violated the Due Process Clause of the Fourteenth Amendment. The Superior Court rejected this argument because Brewster Realty never responded to the petition to foreclose the right of redemption. On appeal, Brewster Realty reasserted its due process argument. The Supreme Court held that Brewster Realty was entitled to notice of the tax sale, but that it had waived its argument when it failed to answer the forfeiture petition. "Any previous defects in the notice procedure of the tax sale were negated by Brewster Realty's subsequent failure to answer or appear upon notice of the petition to foreclose its right of redemption." 826 A.2d at 966. [9]

If a property owner can waive the right to receive notice of an upcoming tax sale by failing to respond to the foreclosure of the right of redemption, then arguably the owner could also waive the right to receive notice of the right of redemption (which would be contained in the initial tax sale notice under the theory proposed by Pontes and the Bankruptcy Court). However, in this case, Pontes did contest the validity of the tax sale by initiating the adversary proceeding after filing for bankruptcy. Accordingly, because there is no waiver in this case, this Court finds that *Kildeer* has no effect on the narrow constitutional issue presented here. Of course, even if one were to perceive a conflict between *Kildeer* and the holding of the Bankruptcy Court, this Court is in no way bound by *Kildeer* with regard to federal constitutional issues.

In finding the Tax Sale Statute unconstitutional, the Bankruptcy Court primarily relied on *Dionne v. Bouley,* 583 F. Supp. 307 (D.R.I.1984), *aff'd as modified,* 757 F.2d 1344 (1st Cir.1985). In *Dionne,* a social security beneficiary challenged the constitutionality of Rhode Island's post-judgment garnishment statute on the ground that the statute failed to advise

her that her social security funds are exempt from attachment. The district court agreed and held the statute unconstitutional. On appeal, the First Circuit upheld the decision of the district court and endorsed the lower court's use of the *Mathews* balancing test to determine the statute's risk of erroneous deprivation of property. 757 F.2d at 1352-53.

The Bankruptcy Court analogized the Tax Sale Statute to the post-judgment garnishment statute in *Dionne* and reasoned that the two are "as close as it gets, since notice in either case gives owners the opportunity to remove attachments from their property." 280 B.R. at 33. This Court agrees with the Bankruptcy Court's **458** reliance on *Dionne.*[10] Like the social security benefits at issue in *Dionne,* this case also implicates one of "life's basic necessities the place where [one] lives." *See id.*

The Appellants argue that Pontes did receive notice of the right of redemption when Sunset Realty filed the petition to foreclose the right of redemption under R.I. Gen. Laws § 44-9-29. It is true that a taxpayer receives notice of the right of redemption under § 44-9-29, but by the time the taxpayer receives this notice the right of redemption has become burdened with interest, penalties, attorneys' fees, and court costs associated with contesting the foreclosure petition. Due to the often substantial economic burden these expenses place on the taxpayer, the Court finds that waiting to provide notice of the right of redemption until the end of the tax sale process effectively deprives the taxpayer of the right itself. The taxpayer should be notified of the right of redemption *before* it is so burdened by the increased expenses associated with § 44-9-29 and constrained by time so as to make the "right of redemption" a mere shibboleth.

One is left to wonder why the City would choose not to notify delinquent taxpayers of their statutory right to make good on their delinquent tax debt and their right to do so within one year. Taxpayers are not even notified that their property has been sold at tax sale, let alone of their right to redeem. The position of the City is even more mystifying at a time when its resident population (many of whom are property owners) is increasingly comprised of the elderly and poor, many of whom are low income earners from diverse cultures, who may not speak English, and who are unfamiliar with the workings of local government. This Court finds that the Bankruptcy Court was correct in holding that the Tax Sale Statute creates an unreasonable risk of erroneous deprivation of Pontes' right of redemption.

**3.** *The Government's Interest*

The *Mathews* balancing test also requires this Court to consider the burden that providing notice of the right of redemption would place on the City. Specifically, this Court must consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335, 96 S. Ct. 893.

The Bankruptcy Court held that this factor easily weighed in favor of the Debtor. This Court agrees. While there is no question that the City has a substantial interest in ensuring the timely collection of its property taxes, [11] in this case, however, **\*459** the greater interest clearly weighs in favor of the taxpayer. Providing earlier notice of the right of redemption will have little effect on the City's ability to collect its property taxes. Regardless of whether the taxpayer decides to redeem his or her property, the City still collects its revenue from a tax sale purchaser if there is no redemption, or from a property owner in the event of a redemption. Moreover, the City can easily modify the current Tax Sale Statute to provide for notice of the right of redemption. The Tax Sale Statute already provides for notice of the impending tax sale, and advisory language regarding the right of redemption could, without any difficulty, be included in that notice. As the Bankruptcy Court explained, "[n]ot even additional postage would be required." 280 B.R. at 34. [12]

### IV. *Conclusion*

For the reasons set forth above, the Order of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.

### NOTES

[1] By Order of this Court dated April 14, 2003, the three appeals that comprise this case, 02-420S, 02-421S, 02-422S, were consolidated under 02-420S.

[2] This factual recitation is taken largely from the Opinion of the Bankruptcy Court, *see* 280 B.R. 20 (Bankr.D.R.I.2002).

[3] R.I. Gen. Laws § 44-9-21 states:

Any person may redeem by paying or tendering to a purchaser, other than the town, his or her legal representatives, or assigns, or to the person to whom an assignment of a tax title has been made by the town, at any time prior to the filing of the petition for foreclosure, in

the case of a purchaser the original sum and any intervening taxes which have been paid to the municipality plus interest thereon at the rate of one [percent] (1%) per month and costs paid by him or her, plus a penalty as provided in § 44-9-19, or in the case of an assignee of a tax title from a town, the amount stated in the instrument of assignment, plus the above-mentioned penalty. He or she may also redeem the land by paying or tendering to the treasurer the sum which he or she would be required to pay to the purchaser or to the assignee of a tax title, in which case the town treasurer shall be constituted the agent of the purchaser or assignee. The right of redemption may be exercised only by those entitled to notice of the sale pursuant to §§ 44-9-10 and 44-9-11.

[4] R.I. Gen. Laws § 44-9-25 states, in pertinent part:

After one year from a sale of land for taxes, except as provided in §§ 44-9-19 44-9-22, whoever then holds the title acquired may bring a petition in the superior court for the foreclosure of all rights of redemption thereunder.

[5] The State has not raised its indispensable party and sovereign immunity arguments on appeal, and therefore these issues require no further analysis by this Court.

[6] There is no dispute that municipal property taxes are covered by the TIA. *See, e.g., Platteville Area Apartment Assoc. v. City of Platteville,* 179 F.3d 574, 582 (7th Cir.1999) (holding that the TIA applies to local as well as state taxes); *Home Builders Assoc. of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 n. 6 (5th Cir.1998) (same); *Folio v. City of Clarksburg, W. Va.,* 134 F.3d 1211, 1214 (4th Cir.1998) (same). While the tax in issue is a municipal tax, the Tax Sale Statute is a state law applicable to all cities and towns in Rhode Island.

[7] Both *Stoecker* and *Adams* involved complicated factual scenarios and discussions of both the TIA and § 505. However, neither case involved a direct conflict between the TIA and § 505 such as is present in this case.

[8] The right of redemption is a property interest distinct and separate from an owner's right of ownership in the underlying property itself. In this case, the right at issue is triggered once the government initiates the tax sale process, and continues to exist through the expiration of the redemption of period. *See* R.I. Gen. Laws § 44-9-29.

[9] *Kildeer* was decided by a three-judge panel of the Rhode Island Supreme Court in June 2003, and therefore could not have been addressed by the Bankruptcy Court or by the parties on appeal.

[10] The Appellants contend that the Bankruptcy Court should have looked to decisions in the tax sale context from other jurisdictions when conducting its due process analysis. *See Weigner v. City of New York,* 852 F.2d 646 (2d Cir.1988); *Farbotko v. Clinton County, New York,* 168 F. Supp. 2d 31 (N.D.N.Y.2001). However, *Weigner* and *Farbotko* do not support the Appellants' argument. While *Weigner* did involve a challenge to a tax foreclosure notice, the challenge in that case revolved around the taxpayer's failure to receive the notice, not the content of the notice. Furthermore, the tax sale notice in *Weigner* apprised the taxpayer of the right to redeem the property and the length of time available to exercise the right. 852 F.2d at 648. *Farbotko* also involved a challenge to a tax sale scheme. However, the principal challenges raised in *Farbotko* did not involve actual notice of the right of redemption. In fact, the statutory scheme at issue in *Farbotko* provided notice of the right of redemption in the tax sale notice and by publication. These decisions therefore have no bearing on the matter before the Court.

[11] Indeed, property taxes are the primary source of revenues controlled by local governments. Accordingly, the City's interest in collecting delinquent property taxes is a significant one. *See generally* Frank S. Alexander, *Tax Liens, Tax Sales, and Due Process,* 75 Ind. L.J. 747, 748 (2000) (providing a detailed discussion of property tax collection schemes and due process).

[12] The ease with which the City could have provided Pontes with notice of the right of redemption is evidenced by the General Assembly's amendment to R.I. Gen. Laws § 44-9-9, entitled "Notice and Advertisement of Sale," which added the following language: "Any notice of sale shall inform any party entitled to notice of its right of redemption and shall explain to such party the manner in which said right shall be exercised and inform said party of the penalties and forfeiture that may occur if the right of redemption is not exercised." It is not clear on the face of the amendment whether this language applies only to advertisements or all notices sent under the statute. This amendment to the Tax Sale Statute was not in effect at the time Pontes' property was sold at tax sale.

Some case metadata and case summaries were written with the help of AI, which can produce inaccuracies. You should read the full case before relying on it for legal research purposes.

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 08-2880

IN RE:

KEITH SMITH and DAWN SMITH,

*Debtors.*

KEITH SMITH and DAWN SMITH,

*Plaintiffs-Appellants,*

*v.*

SIPI, LLC and MIDWEST CAPITAL INVESTMENTS, LLC,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 06534—**Ronald A. Guzmán**, *Judge.*

---

ARGUED APRIL 13, 2010—DECIDED JULY 27, 2010

---

Before WILLIAMS, SYKES, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* It stands to reason that people facing bankruptcy might also have tax problems, so federal courts often apply the bankruptcy statutes in

2                                                      No. 08-2880

tandem with other sources of tax law. This case presents a puzzling tension between the bankruptcy fraudulent transfer statute, 11 U.S.C. § 548, and Illinois law on the "tax sale" of a debtor's property.

Section 548 allows debtors to avoid certain transfers of their property to creditors, but only for a limited time after those transfers are "perfected" against a "bona fide purchaser" ("BFP"). 11 U.S.C. § 548(d)(1). Under the Illinois tax sale process, a "taxbuyer" may acquire a debtor's real property by paying off delinquent real estate taxes, but not before the debtor's "period of redemption" on the property expires and the taxbuyer obtains and records a "tax deed."

Here is the puzzle: when in the Illinois tax sale process—the expiration of the period of redemption or the issuance and recording of the tax deed—is the transfer of the debtor's property to the taxbuyer "perfected" for § 548 purposes?

The debtors, Keith and Dawn Smith, argue that perfection does not occur before the issuance and recording of the tax deed, and in their Chapter 13 bankruptcy proceeding, they attempted to avoid a tax deed to their home that was issued to the taxbuyer within the time limits of § 548. The bankruptcy court, as affirmed by the district court, disagreed with the Smiths, finding instead that the tax sale of their home was perfected upon the expiration of the period of redemption, and on that basis dismissed their § 548 fraudulent transfer claim.

We conclude that the Smiths have the better argument. Under Illinois law, a taxbuyer's property interest is not

perfected against a BFP until the recording of the tax deed.
Prior to recording, even though the period of redemption
may have expired, the debtor still has title to and owner-
ship rights in the property and so potentially could con-
vey to a BFP a property interest superior to the tax-
buyer's interest. Accordingly, we reverse the dismissal
of the Smiths' § 548 fraudulent transfer claim and
remand for further proceedings.

## I. Background

### A. The Tax Sale of the Smith Property

The Smiths have lived in a home in Joliet, Illinois for
several years, although it was not until 2004 when Dawn
Smith inherited record title to the property. At the time
of her inheritance, the property was subject to a state
tax lien for unpaid real estate taxes for the 2000 tax year,
*see* 35 ILCS 200/21-75, a delinquency that authorized the
county collector to auction off the unpaid property taxes
at the annual "tax sale," *see id.* § 21-205. At an Illinois tax
sale, prospective buyers bid on the property based on
the lowest penalty percentage that they will accept from
the property owner in order to redeem the property. *See
id.* § 21-215. So in effect, the auction goes to the
"lowest bidder," who, in exchange for paying off the
delinquent property taxes, receives a "certificate of pur-
chase" from the county. *See id.* §§ 21-240, 21-250. This
certificate doesn't convey title to the property, but it may
enable the taxbuyer to acquire title at a later date
by petitioning for a tax deed. A tax sale for the Smith
property was held on November 2, 2001, and a certificate

of purchase was issued to the successful bidder, SIPI, LLC (actually, SIPI's predecessor in interest, a non-party to this appeal).

With the completion of the tax sale, the clock started running on a two-year, six-month "period of redemption" during which the owner could redeem the Smith property by paying off the delinquent taxes plus interest and penalties. *See id.* §§ 21-350(b), 21-355. No one ever redeemed the property, and the redemption period expired on November 1, 2004. (Although not clear from the record, SIPI apparently extended the redemption period to three years after the tax sale, as it was entitled to do under 35 ILCS 200/21-385.)

The expiration of the redemption period cleared the way for SIPI to use its certificate of purchase to obtain a tax deed to the Smith property. Under the Illinois tax deed process, between six and three months before the redemption period expires, the taxbuyer may petition the Illinois circuit court to issue a tax deed if the property is not redeemed. *Id.* § 22-30. The taxbuyer must comply with an array of procedural safeguards, including providing notice of the tax deed proceedings to all "occupants, owners and persons interested in the property." *Id.*; *see also id.* §§ 22-10, 22-15, 22-20, 22-25 (describing the content, form, and necessary recipients of notice of the expiration of the redemption period and the tax deed petition). If the taxbuyer observes all of these procedures and the debtor fails to redeem the property, the circuit court "shall" issue the taxbuyer a tax deed to the property. *Id.* § 22-40(a). The taxbuyer

No. 08-2880                                                    5

must record the tax deed in the county recorder's office, *id.* § 22-60, and failure to do so within one year after the expiration of the redemption period renders the taxbuyer's rights "absolutely void," *id.* § 22-85.

SIPI timely petitioned the Will County circuit court for a tax deed to the Smith property, affirming that it had satisfied all of the tax sale procedural requirements. The county clerk issued the tax deed on April 15, 2005, and SIPI recorded the deed on May 19, 2005. It was at that point, more than three years after the 2001 tax sale, that SIPI finally had title to the Smith property in the form of a tax deed. (SIPI subsequently conveyed its title to Midwest Capital Investments, LLC ("MCI"), also a defendant in this case.) At earlier points in the tax sale process, Dawn Smith retained a title in her home that was superior to SIPI's property interests; although SIPI's certificate of purchase was a cloud on Dawn's title, she had every right to remove that cloud by paying off the delinquent property taxes—at least, up until the redemption period expired.

Much hazier were the parties' relative property rights *after* the expiration of the redemption period but *before* the issuance and recording of SIPI's tax deed. In this twilight zone of title, Dawn was still the record title holder, but her title was essentially at the mercy of SIPI, which could acquire superior title simply by pursuing its statutory right to obtain a tax deed.

So of course, one can predict what this case background is leading to: some critical event after the expiration of the redemption period but before SIPI obtained

and recorded its tax deed. That event was April 13, 2005,
the beginning of a two-year look-back period from the
Smiths' bankruptcy petition during which fraudulent
transfers may be avoided under 11 U.S.C. § 548(a)(1).

### B.  The Smiths' Bankruptcy Petition and Proceedings Below

On April 13, 2007, the Smiths filed for Chapter 13 bank-
ruptcy and, in connection with that proceeding, filed an
adversary complaint against SIPI and MCI seeking to
avoid the tax deed to their home as a fraudulent transfer
under 11 U.S.C. § 548. The bankruptcy court, as affirmed
by the district court, dismissed the adversary complaint
for failure to state a claim. In order to be avoidable
under § 548, a transfer must occur "on or within 2 years
before the date of the filing of the petition," *id.* § 548(a)(1),
and such a transfer is deemed to occur when it is "per-
fected" against a "bona fide purchaser," *id.* § 548(d)(1).
The bankruptcy and district courts concluded that
the transfer of the Smith property was perfected upon
the expiration of the redemption period, not the
later issuance and recording of SIPI's tax deed. Since
the November 1, 2004, expiration of the redemption
period was more than two years before the Smiths'
April 13, 2007, bankruptcy petition, the bankruptcy
and district courts held that the Smiths could not use
§ 548 to set aside the tax deed to their home. The Smiths
appeal.

## II. Analysis

Because the Smiths' adversary proceeding originated in the bankruptcy court, rather than the district court, we review the bankruptcy court's decision. *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010). The bankruptcy court dismissed the adversary complaint based on a pure legal question—the application of the bankruptcy fraudulent transfer statute, 11 U.S.C. § 548, to the Illinois tax sale process—so our review is de novo, *Ojeda*, 599 F.3d at 716.

Section 548 empowers the bankruptcy trustee to avoid certain transfers out of the bankruptcy estate, including one for which the debtor "received less than a reasonably equivalent value" for the property and thus "became insolvent as a result of such transfer." 11 U.S.C. § 548(a)(1)(B)(i)-(ii)(I). (Section 522(h) gives debtors-in-possession like the Smiths the same § 548 avoidance powers with respect to involuntary transfers of certain exempt properties, such as homesteads.) The trustee's avoidance powers are limited by a two-year look-back period; the transfer must have occurred "on or within 2 years before the date of the filing of the petition" for bankruptcy. *Id.* § 548(a)(1). For the purpose of determining whether a transfer occurred within this two-year avoidance window, the statute provides:

> a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee. . . .

*Id.* § 548(d)(1). By referring to the time of "perfection," the statute of course does not mean the moment when the transferee has a literally "perfect" property interest but when, under governing state law, the transferee's interest is perfected relative to a potential BFP. *See Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002) (applying state law to determine when a property transfer occurred within the meaning of § 548(d)(1)). So the issue in this case is when, under Illinois law, was SIPI's tax-buyer interest in the Smith property so perfected that the Smiths could no longer convey a "superior" interest to a BFP? If perfection happened upon the November 1, 2004, expiration of the redemption period, the Smiths' fraudulent transfer claim fails, since that date was more than two years before their April 13, 2007, bankruptcy petition. If perfection did not occur until the May 19, 2005, recording of SIPI's tax deed, or even the April 15, 2005, issuance of the deed, the Smiths will have satisfied the timing element of their fraudulent transfer claim.

We have not previously dealt with this fascinating intersection between § 548 and Illinois tax sales, but several Illinois bankruptcy courts have. For the most part, these courts have reasoned that the expiration of the redemption period, rather than the issuance or recording of the tax deed, is the operative transfer for § 548 purposes. *See In re McKeever*, 132 B.R. 996, 1010 (Bankr. N.D. Ill. 1991); *In re Bequette*, 184 B.R. 327, 336-37 (Bankr. S.D. Ill. 1995) (citing *McKeever* with approval); *In re Butler*, 171 B.R. 321, 324-26 (Bankr. N.D. Ill. 1994) (same); *In re Moureau*, 147 B.R. 441, 442-43 (Bankr. N.D. Ill. 1992) (same). *But see In re McKinney*, 341 B.R. 892, 897-98 (Bankr. C.D. Ill.

2006) (suggesting that the expiration of the redemption period is less important than the issuance of the tax deed with respect to the debtor's property rights). Notably, though, these courts did not have to decide whether the transfer was "perfected" on or after the expiration of the redemption period because expiration occurred within the avoidance window of § 548. *E.g.*, *McKeever*, 132 B.R. at 1008-10 (recognizing a § 548 claim where the redemption period expired within the avoidance window but the earlier tax sale did not). The Smiths' § 548 claim presents the novel scenario in which the issuance of the tax deed falls within the avoidance window but the redemption period does not, making it critical whether SIPI's taxbuyer interest was perfected upon the expiration of the redemption period. So we consider this case to be one of first impression.

   In deciding when a taxbuyer's interest is "perfected" against a BFP, we find guidance in the Illinois Property Tax Code, which is "a comprehensive statute regulating the assessment and collection of taxes, the forfeiture of property for the nonpayment of taxes, the sale of property to satisfy delinquent taxes, and the redemption of property upon payment of delinquent taxes, interest and costs associated with the sale of the property." *In re Application of County Treasurer*, 824 N.E.2d 614, 619 (Ill. 2005). These comprehensive statutes describe the scope of the taxbuyer's rights in the debtor's property at various stages of the tax sale process, and notably for our purposes, they highlight the importance of recording the tax deed in order to perfect the taxbuyer's interest.

The tax sale of the debtor's property only entitles the taxbuyer to a certificate of purchase, 35 ILCS 200/21-250, which "has no effect on the delinquent property owner's legal or equitable title to the property," *In re Application of County Treasurer*, 914 N.E.2d 1158, 1165 (Ill. App. Ct. 2009) (citation omitted). It is not until the expiration of the debtor's redemption period and issuance of the tax deed that the taxbuyer acquires title and the right to be placed "in possession of the property." 35 ILCS 200/22-40(c). Yet even the issuance of the tax deed is not alone sufficient to secure the taxbuyer's rights against a BFP, since the tax deed "shall not be of any force or effect until after it has been recorded in the office of the recorder." *Id.* § 22-60. If the taxbuyer fails to record within one year after the redemption period expires, the deed "shall . . . be absolutely void with no right to reimbursement." *Id.* § 22-85. These statutes make clear that it is the recording of the tax deed, not the earlier expiration of the redemption period, that marks the "perfection" of the taxbuyer's interest against a "bona fide purchaser." 11 U.S.C. § 548(d)(1).

Treating the recording of the tax deed as the moment of perfection for § 548 purposes is consistent with the general rule under Illinois law that deeds are perfected against subsequent purchasers only when recorded. Under the Illinois Conveyances Act's recording statute, "All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice . . . ." 765 ILCS 5/30;

*see also In re Application of Cook County Treasurer*, 706 N.E.2d 465, 470 (Ill. 1998) (concluding that a grantee's failure to record a real property deed subordinated his rights to those of a subsequent BFP without notice). Since the Illinois tax sale process employs such a "deed" to convey "merchantable title" to the debtor's property, 35 ILCS 200/22-55, the taxbuyer's interest is properly perfected against subsequent purchasers through recording.

Giving us pause, though, is the requirement that a subsequent purchaser take "without notice" of a deed to have BFP status. 765 ILCS 5/30; *see also In re Application of County Collector,* 921 N.E.2d 462, 476 (Ill. App. Ct. 2009) ("[A] purchaser is not a bona fide purchaser if he had constructive notice of an outstanding title or right in another person."). Tax deeds are issued only after extensive tax sale proceedings that are a matter of public record. The "tax sale books" maintained by county recorders show sales of property for unpaid taxes, 55 ILCS 5/3-5038, and counties also keep a list of successful tax sale bidders, 35 ILCS 200/21-230, a registry of owners of certificates of purchase, *id.* § 21-251(a), and an optional index of properties sold at tax sales, *see id.* § 21-252. These tax sale records "should be inspected by and would give notice to a *bona fide* purchaser of property." *In re Application of County Collector*, 581 N.E.2d 367, 371 (Ill. App. Ct. 1991). So very conceivably, a purchaser who takes an interest in the debtor's property after the redemption period expires would have constructive notice of the taxbuyer's interest, precluding BFP status against the taxbuyer.

   We have not found an Illinois case resolving whether such a post-redemption purchaser is incapable of taking an interest superior to the taxbuyer's, based on constructive notice of the tax sale proceedings. From our review of other cases involving tax deed disputes, we do not think that the purchaser would necessarily lose to the taxbuyer, for two reasons. First, whether a purchaser is charged with notice of a competing interest in tax-delinquent property depends on case-specific factors, including the records available to the purchaser, the diligence of the purchaser's title search, and the propriety of the underlying tax sale. *See County Collector*, 921 N.E.2d at 476-77 (tax deed grantee not a BFP where public records revealed deficiencies in notice in tax deed proceedings); *In re Application of Cook County Collector*, 593 N.E.2d 538, 550 (Ill. App. Ct. 1991) (tax deed grantee not a BFP due to evidence of competing ownership interest); *Novak v. Smith*, 554 N.E.2d 652, 656-57 (Ill. App. Ct. 1990) (purchaser not a BFP against taxbuyer because purchaser's own title abstract included tax sale documents); *Application of County Treasurer & Ex-Officio County Collector of Cook County*, 332 N.E.2d 557, 561 (Ill. App. Ct. 1975) (tax deed grantees not BFPs based on notice of owners' possession interest). So although we can imagine scenarios in which constructive notice of a taxbuyer's interest would preclude BFP status, it goes too far to assume as a matter of Illinois law that a purchaser can never prevail simply because the redemption period has expired.

   Second, even if a purchaser had notice of the taxbuyer's post-redemption interest, the debtor still may hold a

"superior" interest conveyable to the purchaser. 11 U.S.C. § 548(d)(1). As illustrated by our review of the Property Tax Code, the debtor retains significant ownership rights after the expiration of the redemption period but before the issuance and recording of the tax deed. Although the expiration of the redemption period allows the taxbuyer to move forward with its tax deed petition, 35 ILCS 200/22-30, expiration does not by itself affect the parties' relative property rights. The status quo, with title and possession in the debtor, remains. In order to change that status quo by obtaining a tax deed, the taxbuyer must prove to an Illinois court that all of the tax sale procedural requirements have been observed. *See id*. § 22-40. At the hearing to prove compliance with these procedures, the debtor (or other interested party) may appear and object to the issuance of the tax deed. *See id*. § 22-30. What's more, if the taxbuyer fails to complete these steps and obtain and record a tax deed within a year after the redemption period expires, the taxbuyer's rights become "absolutely void." *Id*. § 22-85. So while it seems unlikely, the taxbuyer might never do anything after the redemption period expires, in which case the debtor unquestionably would retain superior property rights conveyable to a BFP. *Cf. First Nat'l Bank of Waukegan v. Kusper*, 456 N.E.2d 7, 9-10 (Ill. 1983) (although no redemption made, property owner's title was "secure and unimpaired" due to taxbuyer's failure to timely petition for a tax deed prior to expiration of redemption period).

These tax sale statutes and cases illustrate that, after the expiration of the redemption period but before the

14                                    No. 08-2880

issuance and recording of the tax deed, the debtor retains significant ownership rights while the taxbuyer acquires only a contingent right to a tax deed. It follows that in this gap period between redemption and recording, it is possible for a "bona fide purchaser" to acquire from the debtor a property interest "superior" to the taxbuyer's interest. 11 U.S.C. § 548(d)(1).

### III. Conclusion

Under the Illinois tax sale process, the taxbuyer's interest is "perfected" against a "bona fide purchaser" when the taxbuyer records a tax deed to the property. The recording of the tax deed to the Smith property occurred less than two years before the Smiths filed for bankruptcy, so they have sufficiently pleaded the two-year look-back element of their fraudulent transfer claim under 11 U.S.C. § 548. We REVERSE the judgment of the district court and REMAND with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.

7-27-10

<u>CERTIFICATE OF SERVICE</u>

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com

Lolonyon Y Akouete