UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC,<br><br>Debtor. | Chapter 7<br>Case No. 23-40709-CJP |

MOTION TO COMPEL THE TRUSTEE TO ACT ON THE MOTION TO VACATE FORECLOSURE JUDGMENT AND TO RECOVER PROPERTY INTO THE BANKRUPTCY ESTATE

Now comes the Creditor, Lolonyon Akouete, and moves this Honorable Court to compel the Chapter 7 Trustee to act on the pending Motion to Vacate Foreclosure Judgment filed on January 4, 2023, concerning the property located at 231 Turnpike Road, Westborough, MA 01581. In support of this Motion, the Creditor states as follows:

## 1. Background

1.1. On January 5, 2022, the Town of Westborough foreclosed on the debtor Westborough SPE LLC's property located at 231 Turnpike Road, Westborough, MA 01581 for non-payment of taxes.
1.2. On January 4, 2023, within the statutory redemption period allowed under Mass. Gen. Laws ch. 60, § 69A, the debtor filed a Motion to Vacate the Foreclosure Judgment in state court.
1.3. On August 31, 2023, Nathanson & Goldberg, P.C., and MobileStreet Trust, as Petitioning Creditors, commenced an involuntary Chapter 7 bankruptcy case against Westborough SPE LLC.
1.4. On January 17, 2024, the Chapter 7 Trustee removed the motion to vacate foreclosure judgment from the state court to this Bankruptcy Court under Adversary Case No. 24-0996.

## 2. Delay in Trustee's Action

2.1. Since the bankruptcy case was opened, the Trustee has not taken meaningful action to recover the foreclosed property into the bankruptcy estate, despite having over nine months to do so.
2.2. The Trustee's delay is primarily due to ongoing settlement negotiations with the Town of Westborough. However, these negotiations do not preclude the Trustee from acting on the motion to vacate and recovering the property into the estate. The estate cannot be held in limbo indefinitely.

## 3. Legal Standard

3.1. 11 U.S.C. § 108(b) provides the Trustee with an extension of up to 60 days after the order for relief to act on rights such as redemption or vacating a foreclosure judgment. Courts have consistently held that the Trustee is obligated to act within this extended period or risk forfeiting the estate's claim to the property.
3.2. In *In re Martinson* (26 B.R. 648, Bankr. D.N.D. 1983), the court ruled that 11 U.S.C. § 362(a) does not operate to indefinitely extend the redemption period following foreclosure. Instead, § 108(b) sets a clear 60-day limit after the bankruptcy filing for the Trustee to act on redeemable

property. Inaction beyond this period places the estate in jeopardy of losing its claim to the foreclosed property.

3.3. Additionally, *Beaver Street Investments, LLC v. Summit County* (65 F.4th 822, 6th Cir. 2023) supports the principle that a trustee or debtor must act within statutory timelines to prevent loss of property rights. In *Beaver Street*, the court highlighted the importance of statutory redemption periods, holding that actions related to foreclosure are bound by the time limits set forth in the law, even in cases involving bankruptcy. The decision reinforces that a trustee cannot delay indefinitely, as failure to act within the prescribed period undermines the ability to challenge foreclosure effectively.

## 4. Additional Legal Authority from *Butler v. Bateman (In re Bateman)*

4.1. In *Butler v. Bateman (In re Bateman)*, 397 F. Supp. 3d 113 (D. Mass. 2019), the court addressed a similar situation in which a bankruptcy trustee sought to challenge a state foreclosure on the grounds that it involved a fraudulent transfer. The court ruled that bankruptcy courts have subject matter jurisdiction to address fraudulent transfer claims because they serve the interests of the estate's creditors, not the debtor.

4.2. The court in *Butler* also rejected arguments that Rooker-Feldman would bar such claims in bankruptcy, holding that the trustee was not merely appealing a state court decision but acting on behalf of creditors to recover the property into the estate. The fraudulent nature of the foreclosure and transfer, as alleged in that case, mirrors the facts here, where the Town of Westborough transferred the property to itself for $0 and now seeks to sell it at a significant undervalue.

4.3. Based on this precedent, the Trustee in this case must act to recover the property into the bankruptcy estate, as failure to do so would result in significant loss to the creditors and undermine the bankruptcy process's fundamental goal of maximizing estate value.

## 5. Failure to Act is Prejudicial to Creditors

5.1. The property was improperly transferred by the Town of Westborough to itself for $0 and is now being marketed for sale at $2.5 million, well below its fair market value of $5 million. The Trustee's failure to act is allowing this inequitable transfer to stand, to the detriment of the bankruptcy estate and its creditors.

5.2. The delay in recovering the property could result in a substantial loss to the estate and its creditors if the property is sold for less than its value or if the opportunity to vacate the foreclosure is lost due to procedural delays.

## 6. Request for Relief

6.1. The Creditor respectfully requests that this Court issue an order compelling the Trustee to immediately act on the Motion to Vacate the Foreclosure Judgment and take all necessary steps to recover the property into the bankruptcy estate.

6.2. The Creditor further requests that this Court set a status conference or hearing to address the Trustee's inaction and establish a timeline for the recovery of the property.

## 7. Conclusion

The Trustee's delay in addressing the motion to vacate the foreclosure judgment has caused harm to the bankruptcy estate and its creditors. The Trustee has had ample time to act and cannot delay indefinitely. Pursuant to 11 U.S.C. § 108(b) and the principles set forth in *In re Martinson*, *Beaver*

*Street Investments*, and *Butler v. Bateman*, this Court should compel the Trustee to take immediate action to recover the property for the benefit of the estate.

DATED: October 6, 2024, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276



Exhibit 1

DLS
DIVISION OF LOCAL SERVICES
MA DEPARTMENT OF REVENUE

Return to Last page

**For Questions or Assistance Email us at :**

databank@dor.state.ma.us

Select a fiscal year: 8 selected

Select municipality: Westborough Submit

**Report Instructions**

## New Growth Table

Export Table

| DOR Code | Municipality | Fiscal Year | Residential New Growth Value | Residential New Growth Applied to the Levy Limit | Total New Growth Value | Total New Growth Applied to Levy Limit | Res New Growth as a % of Total New Growth | Prior Year's Levy Limit | Total New Growth Applied to Limit as a % of PY Levy Limit |
|---|---|---|---|---|---|---|---|---|---|
| 328 | Westborough | 2018 | 40,893,280 | 727,900 | 95,237,660 | 1,695,230 | 42.94 | 77,632,120 | 2.18 |
| 328 | Westborough | 2019 | 12,800,951 | 236,306 | 56,262,881 | 1,038,613 | 22.75 | 81,268,153 | 1.28 |
| 328 | Westborough | 2020 | 25,751,700 | 472,029 | 74,104,500 | 1,358,336 | 34.75 | 84,338,470 | 1.61 |
| 328 | Westborough | 2021 | 40,739,400 | 746,346 | 124,806,930 | 2,286,463 | 32.64 | 87,805,268 | 2.60 |
| 328 | Westborough | 2022 | 19,510,300 | 361,721 | 116,044,046 | 2,151,457 | 16.81 | 92,289,938 | 2.33 |
| 328 | Westborough | 2023 | 53,561,300 | 990,348 | 198,484,889 | 3,669,985 | 26.99 | 96,771,630 | 3.79 |
| 328 | Westborough | 2024 | 51,890,600 | 873,838 | 193,955,370 | 3,266,209 | 26.75 | 102,860,906 | 3.18 |
| 328 | Westborough | 2025 | | | | | | | |

## Trends in New Growth Value

Export Bar Chart

$ Amount

34B
32B
30B
28B
26B
24B
22B
20B
18B
16B
14B
12B
10B
8B
6B
4B
2B
0

2021



All Municipalities
$ Amount
34B
32B
30B
28B
26B
24B
22B
20B
18B
16B
14B
12B
10B
8B
6B
4B
2B
0
$23,642,563,813
$22,783,261,861
$26,183,497,524
$30,412,821,078
$6,474,396,009
2021
2022
2023
2024
2025
Fiscal Year
Residential & Open Space New Growth
CIP New Growth





 

All Municipalities
350M
300M
250M
200M
150M
100M
50M
0
$ Amount
2021
2022
2023
2024
2025
Fiscal Year
Residential & Open Space
CIP

All Municipalities
Residential & Open Space
$ Amount
2.4
2.2
2
1.8
1.6
1.4
1.2
1
0.8
0.6
0.4
0.2
0
2022
2023
2024
2025
Fiscal Year

**Lolonyon Akouete <info@smartinvestorsllc.com>**

Exhibit 2

---

**Offer**
4 messages

---

**Bernard Gibbons** <bernard@abgrealty.net> Tue, Oct 1, 2024 at 2:53 PM
To: "info@smartinvestorsllc.com" <info@smartinvestorsllc.com>

Here you go Lolo we will close but we are only interested in moving quickly.I,m sorry to say this but 10 million is way out of range for anyone on this unless you could get a big residential project done which we now know is difficult .My guy wants this property just because he wants it.No idea at all what he will do with it.He owns 233 Turnpike St right next door.

Best,

Bernard Gibbons
Managing Director
ABG Realty
307 Cambridge Street
Cambridge, MA 02141
617-212-1369 (Direct)

---

**Offer to Purchase 231 Turnpike Rd.pdf**
148K

---

**Lolonyon Akouete** <info@smartinvestorsllc.com> Wed, Oct 2, 2024 at 11:02 AM
To: Bernard Gibbons <bernard@abgrealty.net>

Hi Bernard,

I just received an updated offer from the first buyer and wanted to check if you'd be interested in increasing your offer. I've also filed a motion with the court requesting that the trustee expedite the evaluation of these offers.

Thanks,

Lolonyon Akouete
800 Red Milles Rd
Wallkill, NY 12589
Phone: (443) 447-3276
Email: info@smartinvestorsllc.com
[Quoted text hidden]

---

**231 Turnpike Rd. Offer Connect United Inc_10.2.24.docx.pdf**
464K

---

**Bernard Gibbons** <bernard@abgrealty.net> Wed, Oct 2, 2024 at 11:54 AM
To: Lolonyon Akouete <info@smartinvestorsllc.com>

Call me 617-212-1369

Sent via the Samsung Galaxy S22 5G, an AT&T 5G smartphone

Get Outlook for Android

---

**From:** Lolonyon Akouete <info@smartinvestorsllc.com>
**Sent:** Wednesday, October 2, 2024 11:02:01 AM
**To:** Bernard Gibbons <bernard@abgrealty.net>
**Subject:** Re: Offer

[Quoted text hidden]

---

**Bernard Gibbons** <bernard@abgrealty.net>                    Wed, Oct 2, 2024 at 12:50 PM
To: Lolonyon Akouete <info@smartinvestorsllc.com>

We will in good faith increase our offer of October 1st to 5 million dollars

Sent via the Samsung Galaxy S22 5G, an AT&T 5G smartphone
Get Outlook for Android

---

**From:** Lolonyon Akouete <info@smartinvestorsllc.com>
**Sent:** Wednesday, October 2, 2024 11:02:01 AM
**To:** Bernard Gibbons <bernard@abgrealty.net>
**Subject:** Re: Offer

[Quoted text hidden]

Citizens™

US002 | BR880
ROP 450
P.O. Box 7000
Providence, RI 02940

## Citizens Private Client Account Statement

Beginning August 13, 2024
through September 12, 2024

**Questions? Contact us today:**

**CALL:**
Citizens Private Client Customer Service
1-877-670-5400

**VISIT:**
Access your account online:
citizensbank.com

**MAIL:**
Citizens
Customer Service Center
P.O. Box 42001
Providence, RI 02940-2001

LAWRENCE M GORDON
1014 LOWELL RD
CONCORD MA 01742-5525

**LAWRENCE M GORDON**
**Citizens Private Client Money Market**
**XXXXXX-607-8**

## Citizens Private Client Money Market for XXXXXX-607-8

| **Balance Calculation** | | |
|---|---|---|
| Previous Balance | | 5,221,749.47 |
| Checks | - | .00 |
| Withdrawals & Debits | - | .00 |
| Deposits & Credit | + | 999,999.00 |
| Interest Paid | + | 15,308.83 |
| **Current Balance** | = | 6,237,057.30 |

| **Balance** | |
|---|---|
| Average Daily Balance | 5,737,877.98 |
| **Interest** | |
| Current Interest Rate | 3.15% |
| Annual Percentage Yield Earned | 3.20% |
| Number of Days Interest Earned | 31 |
| Interest Earned | 15,308.83 |
| Interest Paid This Year | 109,248.92 |

Your next statement period will end on October 10, 2024.

### TRANSACTION DETAILS FOR MONEY MARKET ACCOUNT ENDING 607-8

**Deposits & Credits**

| *Date* | *Amount* | *Description* |
|---|---|---|
| 08/28 | 999,999.00 | ONLINE TRANSFER FROM CHECKING 1334257636 |

| **Previous Balance** | |
|---|---|
| | **5,221,749.47** |
| **Total Deposits & Credits** | |
| + | **999,999.00** |

Please See Additional Information on Next Page

Beaver St. Invs. v. Summit Cnty., 65 F.4th 822 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbeaver-s...

Exhibit 3

casetext.com

# Beaver St. Invs. v. Summit Cnty., 65 F.4th 822

*CLAY, Circuit Judge.*

22–28 minutes

---

No. 22-3600

04-21-2023

*BEAVER STREET INVESTMENTS, LLC, Plaintiff-Appellant, v. SUMMIT COUNTY, OHIO, Defendant-Appellee.*

ARGUED: Warner D. Mendenhall, MENDENHALL LAW GROUP, Akron, Ohio, for Appellant. Stephen W. Funk, ROETZEL & ANDRESS, LPA, Akron, Ohio, for Appellee. ON BRIEF: Warner D. Mendenhall, John Pfleiderer, MENDENHALL LAW GROUP, Akron, Ohio, for Appellant. Stephen W. Funk, Grant McLeod, ROETZEL & ANDRESS, LPA, Akron, Ohio, for Appellee.

---

Appeal from the United States District Court for the Northern District of Ohio at Akron. No. 5:22-cv-00006—Benita Y. Pearson, District Judge. ARGUED: Warner D. Mendenhall, MENDENHALL LAW GROUP, Akron, Ohio, for Appellant. Stephen W. Funk, ROETZEL & ANDRESS, LPA, Akron, Ohio, for Appellee. ON BRIEF: Warner D. Mendenhall, John Pfleiderer, MENDENHALL LAW GROUP, Akron, Ohio, for Appellant. Stephen W. Funk, Grant McLeod, ROETZEL & ANDRESS, LPA, Akron, Ohio, for Appellee. Before: CLAY, McKEAGUE, and STRANCH, Circuit

1 of 14 10/6/2024, 9:02 AM

Beaver St. Invs. v. Summit Cnty., 65 F.4th 822 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbeaver-s...

Judges. CLAY, J., delivered the opinion of the court in which STRANCH, J., joined. McKEAGUE, J. (pp. 828-30), delivered a separate dissenting opinion.

## OPINION

CLAY, Circuit Judge.

Plaintiff Beaver Street Investments, LLC ("BSI") commenced this action under 42 U.S.C. § 1983, alleging that Defendant Summit County, Ohio ("County") violated the Fifth Amendment's Takings Clause. The district court granted the County's motion to dismiss, holding that BSI's complaint was barred by the statute of limitations. We **REVERSE** and **REMAND** for the reasons set forth below.

## I. BACKGROUND

The facts of this case are undisputed. On November 1, 2017, the County Fiscal Officer initiated an administrative tax foreclosure action against BSI before the County Board of Revision ("BOR"). Those proceedings concerned unpaid taxes on parcels of land that BSI owned. *See Scalise v. Beaver Street Investments*, *LLC*, Case No. CV-2017-11-4588. The County initiated the foreclosure action under Ohio Revised Code §§ 323.65 through 323.79. Through that action, the County opted for the alternative right of redemption, which allowed BSI to pay the taxes it allegedly owed before the County took title to BSI's property.

The BOR issued its final adjudication of foreclosure on June 3, 2019. Because the County had opted for the alternative right of redemption, BSI had 28 days to pay the taxes it owed before the County took title to the property. Later that month, on June 27, 2019, BSI filed a Petition for Chapter 11 bankruptcy. That petition automatically stayed the

2 of 14 10/6/2024, 9:02 AM

implementation of the BOR's final judgment and the 28-day redemption period.

The County filed a motion for relief from the stay, which the bankruptcy court granted on January 17, 2020. Then, the BOR issued an order finding that the statutory period of redemption had expired as of January 21, 2020. BSI never made the necessary redemption payments.

On January 30, 2020, rather than sell the property, the County transferred it to its land bank pursuant to Ohio Rev. Code § 323.78. When an Ohio county sells a foreclosed property at auction, it may not keep proceeds beyond what the former owner owed on the taxes. Ohio Rev. Code § 5721.20. However, if the county transfers the foreclosed property to the county's land bank, "the land becomes 'free and clear of all impositions and any other liens on the property, which shall be deemed forever satisfied and discharged.' " *Harrison v. Montgomery Cnty., Ohio*, 997 F.3d 643, 646 (6th Cir. 2021) (quoting Ohio Rev. Code § 323.78(B)).

At oral argument, the parties indicated that the January 30, 2020, order to transfer the property was purely ministerial.

On January 3, 2022, BSI commenced this action under 42 U.S.C. § 1983. Through its complaint, BSI alleged that "[t]here was significant difference between the appraised value of the BSI Property and the total amount" that the County alleged BSI owed. Compl., R. 1, Page ID #6. Accordingly, BSI asserted that the County's action violated the Fifth Amendment's Takings Clause. The County responded by filing a motion to dismiss, arguing that BSI's claim was barred by the applicable statute of limitations.

The parties agreed that the statute of limitations was two years. *See Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). They disputed,

Beaver St. Invs. v. Summit Cnty., 65 F.4th 822 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbeaver-s...

however, when the two-year statute of limitations began to run. The County argued that the case became ripe for adjudication and that the statute of limitations began to run on June 3, 2019, the day that it issued its final adjudication of foreclosure. BSI, by contrast, contended that the statute of limitations did not begin to run until the statutory redemption period ended on January 21, 2020. In the County's view, the statute of limitations expired on June 3, 2021, and BSI's January 3, 2022 complaint was untimely. In BSI's view, the statute of limitations did not expire until January 21, 2022, and its complaint was timely.

The district court adopted the County's argument, determining that "the instant case became ripe when the taking occurred on the final adjudication on June 3, 2019," and that the "adjudication was final because the BOR's adjudication clearly ordered that the County would not sell the land but to transfer the land to the land bank." Mem. Op. and Order, R. 21, Page ID #242.

The district court then considered the relevance of BSI's bankruptcy filing. The court held that:

> although the Bankruptcy Court temporarily stayed execution of the adjudication of the BOR, the stay does not save Plaintiff's claim. Even under a tolled statute of limitations, Plaintiff's case would still have been filed outside of the statute of limitations. Under 11 U.S.C. § 108(a), Plaintiff was required to have filed this action by the end of the "regular" statute of limitations or two years after the filing of the bankruptcy petition. Two years after the filing of the bankruptcy petition was June 27, 2021. Plaintiff filed this case on January 3, 2022, so Plaintiff missed that cutoff as well.

*Id*. at 243.

Accordingly, the district court dismissed the case, holding that the two-

4 of 14 10/6/2024, 9:02 AM

Beaver St. Invs. v. Summit Cnty., 65 F.4th 822 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbeaver-s...

year statute of limitations expired on June 3, 2021. Because the district court dismissed on statute of limitations grounds, it declined to address the merits of BSI's takings claim. BSI's timely appeal followed.

## II. DISCUSSION

### A. Standard of Review

"This Court reviews de novo the grant of a motion to dismiss pursuant to Rule 12(b)(6) . . . ." *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 785 (6th Cir. 2016) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). On appeal, the "Court 'construe[s] the complaint in the light most favorable to the plaintiff and accept[s] all factual allegations as true.' " *Id.* (alterations in original) (quoting *Laborers' Loc. 265 Pension Fund v. iShares Tr.*, 769 F.3d 399, 403 (6th Cir. 2014)). "The district court's determination that a complaint was barred by the statute of limitations is a conclusion of law that this Court reviews de novo." *Id.* at 786 (citing *Kelly v. Burks*, 415 F.3d 558, 560 (6th Cir. 2005)).

### B. Analysis

The statute of limitations for § 1983 claims is the relevant state's statute of limitations for personal-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). In Ohio, "a two-year statute of limitations applies to § 1983 claims . . . ." *Cooey*, 479 F.3d at 416. Although the statute of limitations is determined by state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388, 127 S.Ct. 1091.

The "standard rule" is that the statute of limitations for § 1983 claims

5 of 14 10/6/2024, 9:02 AM

begins to run when a "plaintiff has a complete and present cause of action . . . ." *Id*. (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal*., 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997)). A complete cause of action arises "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). To determine when a statute of limitations begins to toll in a § 1983 action, therefore, this Court looks "to what event should have alerted the typical lay person to protect his or her rights." *Id*. (quotation and citation omitted).

With respect to takings claims, "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Twp. of Scott, Pennsylvania*, — U.S. —, 139 S. Ct. 2162, 2167, 204 L.Ed.2d 558 (2019). The Supreme Court has "explained that 'the act of taking' is the 'event which gives rise to the claim for compensation.' " *Id*. at 2170 (quoting *United States v. Dow*, 357 U.S. 17, 22, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1957)).

The dispositive issue in this appeal is what constituted the "act of taking." *See id*. In other words, the Court must determine when, as a matter of law, the County took BSI's property without paying for it. *See id*. The County argues that the taking occurred when it made a final decision regarding BSI's property, which it asserts was the final adjudication of foreclosure. BSI argues, by contrast, that the County took its property on the date the County transferred the property to the land bank. This appears to be a matter of first impression.

The district court found the County's argument persuasive, holding "that the instant case became ripe when the taking occurred on the final adjudication on June 3, 2019." Mem. Op. and Order, R. 21, Page ID #242. To support its holding, the district court relied upon this Court's

Beaver St. Invs. v. Summit Cnty., 65 F.4th 822 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbeaver-s...

holding in *Harrison*. In *Harrison*, this Court held that a taking occurred when "it became clear the State would seize [the plaintiff's property] by transferring title—a decision reached only when the Board adjudicated the foreclosure . . . ." 997 F.3d at 651. As is relevant here, the Court held that for a taking to occur:

> there must be a "final decision" to take property, [*Knick*, 139 S. Ct.] at 2169, meaning that it is "known to a reasonable degree of certainty" what will happen to the property, *Palazzolo v. Rhode Island*, 533 U.S. 606, 620, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). The upshot? A property owner today may bring a § 1983 federal takings claim in federal court "as soon as their property has been taken." *Knick*, 139 S. Ct. at 2170.

*Id*. at 649. Thus, the Court observed that "the property owner could file a § 1983 action in federal court under the Takings Clause *after* the Board transferred the property to a land bank." *Id*. (emphasis added). However, the Court in *Harrison* did not address whether a taking occurs on the date of a final adjudication of foreclosure or at the expiration of the statutory redemption period; indeed, that question was not before the Court. More to the point, the Court in *Harrison* did not address the statute of limitations at all. Instead, it addressed ripeness. *Id*. at 650, 121 S.Ct. 2448. *Harrison* is still relevant, however, because it provides the general principle that for a taking to occur, "there must be a 'final decision' to take property, . . . meaning that it is 'known to a reasonable degree of certainty' what will happen to the property . . . ." *Id*. at 649, 121 S.Ct. 2448 (quoting *Palazzolo*, 533 U.S. at 620, 121 S.Ct. 2448). The *Harrison* Court did not rule on when exactly that final decision takes place.

The dissent seems to argue that the *Harrison* Court held that the statute of limitations begins to run *in all cases* implicating Ohio Rev. Code § 323.78 "when the Board adjudicate[s] the foreclosure . . . ." *Harrison*, 997

7 of 14 10/6/2024, 9:02 AM

F.3d at 650. That argument is not persuasive. First, as mentioned above, *Harrison* concerns ripeness, not the statute of limitations. To determine when the statute of limitations begins to run, the Court must determine "what event should have alerted the typical lay person to protect his or her rights." *Kuhnle Bros*., 103 F.3d at 520 (quotation and citation omitted). Second, the question of whether the statute of limitations begins to run when the redemption period expires was not before the Court in *Harrison*. Indeed, the Court in *Harrison* only mentioned the redemption period once, in the statement of facts, and does not consider the redemption period at all in its analysis. *Harrison*, 997 F.3d at 647. Third, and more importantly, even if we were to conflate ripeness with the statute of limitations, the Court in *Harrison* explicitly stated that "the property owner could file a § 1983 action in federal court under the Takings Clause *after* the Board transferred the property to a land bank," *id*. at 649 (emphasis added), which the BOR could not do in the instant case until after the redemption period expired.

We hold that the statute of limitations in this case began to run when the redemption period ended on January 21, 2020. First, the County could not have made a " 'final decision' to take the property," *Harrison*, 997 F.3d at 649 (quoting *Knick*, 139 S. Ct. at 2169), until the redemption period concluded. After all, if BSI paid its delinquent taxes during the redemption period, the County would have been *prohibited* from taking the property. Ohio Rev. Code § 323.65. Second, it did not become "clear the [County] would seize [the plaintiff's property] by transferring title," *Harrison*, 997 F.3d at 651, until after the redemption period ended. The County was *prohibited* from transferring title until after the redemption period ended; until that time, whether the County would transfer title was unclear. Third, until the redemption period ended, the County had not taken BSI's "property without paying for it." *Knick*, 139 S. Ct. at 2167.

Beaver St. Invs. v. Summit Cnty., 65 F.4th 822 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbeaver-s...

Fourth, so long as BSI still had the opportunity to retain title to its property, there was no "event which gives rise to the claim for compensation." *Id*. at 2170 (quoting *Dow*, 357 U.S. at 22, 78 S.Ct. 1039).

The dissent focuses too narrowly on the Court's language in *Harrison* that, in *that case*, "[t]he taking . . . happened when the Board adjudicated the foreclosure of Harrison's property through the land bank process, not before." *Harrison*, 997 F.3d at 650. In doing so, the dissent ignores that in *this case*, no " 'final decision' to take property," *id*. (quoting *Knick*, 139 S. Ct. at 2169), was made until the redemption period concluded. Equally important, the dissent also neglects to consider that the *Harrison* Court explicitly stated that "the property owner could file a § 1983 action in federal court under the Takings Clause *after* the Board transferred the property to a land bank." *Id*. at 649 (emphasis added). Therefore, *Harrison* supports our holding that in this case, the statute of limitations could not have begun to run until the redemption period expired.

The County also contends that BSI's bankruptcy petition only stayed the redemption period for 60 days. Thus, the County contends, the above analysis is for naught because BSI's bankruptcy petition only stayed the redemption period until August 26, 2019, meaning that the statute of limitations expired at the latest on August 26, 2021. According to that argument, BSI's claim is barred by the statute of limitations no matter what.

The County supports that contention by arguing that "the tolling of a statutory redemption period is governed by Section 108(b) of the Bankruptcy Code, which grants the trustee (or the debtor, in this case) with an additional 60 days after the filing of the petition to exercise the statutory right of redemption." Appellee's Br. at 12 (quotation omitted).

The County's argument is unpersuasive. As mentioned above, the BOR

9 of 14 10/6/2024, 9:02 AM

Beaver St. Invs. v. Summit Cnty., 65 F.4th 822 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbeaver-s...

itself determined that the redemption period ended on January 21, 2020. The County provides no authority suggesting that its own determination is reviewable in this appeal. Moreover, the County provides no reason to doubt that if BSI paid the money it owed on the property by January 21, 2020—the date the County said that the redemption period ended—it would have been allowed to keep its property. Finally, the County does not explain how, before January 21, 2020, a "typical lay person" could have known "to protect his or her rights," *Kuhnle Bros*., 103 F.3d at 520 (quotation quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991), until the redemption period ended and the County officially seized the property without compensation.

Accordingly, we will reverse the district court's dismissal of BSI's complaint and remand for further proceedings.

## CONCLUSION

For the reasons stated above, we **REVERSE** the district court's dismissal of BSI's complaint and **REMAND** for further proceedings consistent with this opinion.

## DISSENT

McKEAGUE, Circuit Judge, dissenting.

The majority holds that the statute of limitations for Beaver Street Investments' takings claim did not begin to run until after the statutory redemption period ended. I disagree. Instead, I would hold that the limitations period began when the Board of Revision issued its final adjudication of foreclosure. The Court seeing it differently, I respectfully dissent.

Typically, when an Ohio county forecloses on tax-delinquent property, it

10 of 14 10/6/2024, 9:02 AM

Beaver St. Invs. v. Summit Cnty., 65 F.4th 822 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbeaver-s...

sells the property at auction and turns over any excess funds to the original property owner. *See* O.R.C. § 323.73. But under Ohio Revised Code §§ 323.65 through 323.79, Ohio counties are permitted to take an alternative approach: they can instead transfer abandoned property to authorized county land banks. Under this procedure, no auction takes place and the original property owner loses any right to surplus equity they would have otherwise retained. *Id*. § 323.78(B).

And that's what happened here. In 2017, Summit County, Ohio filed a foreclosure action in its Board of Revision against two parcels of abandoned land owned by Beaver Street Investments, LLC. Rather than sell the property at auction, the County opted to transfer the land to its land bank pursuant to O.R.C. § 323.78. On June 3, 2019, the BOR issued its final adjudication of foreclosure to that effect, and any interest BSI possessed in the property's surplus equity vanished.

To be sure, the applicable provisions afforded BSI a twenty-eight-day right of redemption, during which time BSI could pay outstanding taxes to redeem its property. *See* O.R.C. § 323.65(J). But the majority places too much emphasis on this redemption period and too little emphasis on the actual takings claim at issue in this case.

In its complaint, BSI alleged that "[p]roperty owners, such as Plaintiffs, receive less than the fair market value for their properties when transferred under O.R.C. § 323.78(B)." R. 1, PID 5. Specifically, BSI alleged the following:

> When the BSI Property was directly transferred under O.R.C. § 323.78, the value of the BSI Property exceeded the taxes owed on the property. When the BSI Property was directly transferred under O.R.C. § 323.78, BSI received no compensation.
>
> Under the direct transfer mechanism of O.R.C. § 323.78, the County,

11 of 14 10/6/2024, 9:02 AM

Beaver St. Invs. v. Summit Cnty., 65 F.4th 822 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbeaver-s...

> acting under color of law, took BSI's real property without just compensation.
>
> As a direct and proximate result of the County's actions, BSI has been damaged in the amount by which the value of the property so transferred exceeded the total impositions attributable to that property.

*Id*. at PID 8.

Plainly, the injury asserted by BSI is the transfer of its property under O.R.C. § 323.78, whereby its surplus equity interest was extinguished without compensation. Had the County sold BSI's property at auction, BSI would have been entitled to excess proceeds, *see* O.R.C. § 5721.20, but because the County transferred BSI's property to its land bank, BSI was entitled to nothing, *see id*. § 323.78(B). And *that* is the taking.

Limitations periods generally start to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kuhnle Bros*., *Inc*. *v*. *Cnty*. *of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v*. *Turner*, 742 F.2d 262, 272 (6th Cir. 1984)). In determining when a § 1983 cause of action accrues, this Court looks "to what event should have alerted the typical lay person to protect his or her rights." *Id*. at 520 (quoting *Dixon v*. *Anderson*, 928 F.3d 212, 215 (6th Cir. 1991)). Here, the injury forming the basis of BSI's action was the County's decision to direct the transfer of BSI's property to the County's land bank. Thus, the key event alerting BSI to protect its rights was the BOR's final adjudication of foreclosure on June 3, 2019, which ordered that direct transfer. At that time, BSI knew or had reason to know that the County would transfer its property in lieu of sale.

The BOR's final adjudication of foreclosure also constituted a "final decision"—a standard the majority largely ignores. In *Williamson County*

12 of 14 10/6/2024, 9:02 AM

*Regional Planning Commission v. Hamilton Bank of Johnson City*, the Supreme Court held that there must be a "final decision" to take property before a takings claim becomes ripe for adjudication. 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). And in *Harrison v. Montgomery County, Ohio*, 997 F.3d 643 (6th Cir. 2021), this Court applied the final decision requirement to the very same type of takings claim that is at issue in this case. There, a property owner brought an identical § 1983 takings claim when the Montgomery County Board of Revision transferred her property to the county's land bank without providing compensation for the property's value in excess of its tax liabilities. *Id*. at 647. This Court held that "her federal takings claim was not ripe until the Board's *final decision* to transfer the property to the land bank[,]" and that, "[u]ntil it became clear the State would seize Harrison's surplus equity by transferring title—a decision reached *only when the Board adjudicated the foreclosure*—no taking occurred." *Harrison*, 997 F.3d at 650-51 (emphasis added). And in determining when the county formally "took" Harrison's property, this Court stated, in no uncertain terms: "The taking, so far as federal law is concerned, happened *when the Board adjudicated the foreclosure* of Harrison's property through the land bank process." *Id*. at 650 (emphasis added).

Yet, despite this controlling caselaw, the majority concludes that the County could not have made a "final decision" to take BSI's property, and that it was not clear the County would seize BSI's property by transferring title, until the redemption period ended. I cannot agree. Here, as in *Harrison*, the BOR's final adjudication of foreclosure constituted a "final decision." *Harrison*, 997 F.3d at 650. When the BOR issued this final adjudication, "it became clear the [County] would seize [BSI]'s surplus equity by transferring title," and a "taking occurred." *See id*. at 651. Furthermore, at that point, nothing more was required of the BOR. In

Beaver St. Invs. v. Summit Cnty., 65 F.4th 822 | Casetext Search + Citator about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fbeaver-s...

fact, counsel for BSI acknowledged at oral argument that additional action taken by the Board to implement the transfer was purely "ministerial." Oral Arg. 8:15-8:31 ("Now, there is a final ministerial action that has to happen after that redemption period runs. . . . That final ministerial action is the Board of Revision must provide an order to the clerk to get the Sheriff to transfer that property.").

Because I believe the statute of limitations accrued when the Board issued its final adjudication of foreclosure on June 3, 2019, and because BSI failed to file its takings claim within two years of that date, I would affirm the district court's dismissal, and I respectfully dissent.

---

14 of 14 10/6/2024, 9:02 AM

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com

Lolonyon Y Akouete