UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

SUPPLEMENT TO MOTION TO VACATE FORECLOSURE JUDGMENT AND AVOID
FRAUDULENT TRANSFER

**I. Introduction**

This Supplement to the Motion to Vacate Foreclosure Judgment and Avoid Fraudulent Transfer is
filed by Creditor, Lolonyon Akouete, in light of recent developments and additional legal analysis.
The Plaintiff reiterates that the Town of Westborough's strict foreclosure of the property located at
231 Turnpike Road, Westborough, MA, constitutes a fraudulent conveyance under 11 U.S.C. §
548, as the transfer failed to provide "reasonably equivalent value" for the property, which was
worth approximately $5 million, and was transferred for $0. The Plaintiff supplements the original
motion with further argument and legal precedent supporting the avoidance of the foreclosure
transfer under bankruptcy law.

**II. Legal Framework for Fraudulent Conveyance**

A trustee (or creditor) may avoid any transfers of a debtor's property made within two years prior
to the bankruptcy filing if the debtor "received less than reasonably equivalent value" and was
insolvent at the time of the transfer, under 11 U.S.C. § 548(a)(1)(B).

In this case, the Town of Westborough foreclosed on the subject property for non-payment of
taxes, transferring the property to itself for no compensation ($0), despite the property having a fair
market value of approximately $5 million. This disparity between the value of the property and the
amount of the tax debt constitutes a clear case of "less than reasonably equivalent value" as
contemplated by § 548(a)(1)(B).

**III. Massachusetts Tax Foreclosure Does Not Shield the Town from a Fraudulent
Conveyance Claim**

While Massachusetts law allows strict foreclosure under M.G.L. ch. 60, such state law cannot
override federal bankruptcy law when the foreclosure results in a disproportionate transfer of value,
as seen in cases like *Smith v. SIPI, LLC (In re Smith)*, 811 F.3d 228 (7th Cir. 2016). In *Smith*, the
court held that when a foreclosure lacks competitive bidding or a market process, the transfer of the
property does not necessarily provide "reasonably equivalent value." Similarly, the Town of
Westborough's strict foreclosure scheme bypassed a public auction, allowing it to acquire a multi-
million-dollar property for nothing in exchange, despite the debtor's significant equity in the
property.

Furthermore, the Supreme Court's decision in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), does not protect the Town's actions, as *BFP* applies to mortgage foreclosures, which involve competitive bidding. The Supreme Court specifically limited its ruling, excluding tax foreclosure sales like the one at issue here, which did not involve any competitive process. As such, *BFP* does not preclude the Court from finding that the transfer of the property for $0 was not in exchange for reasonably equivalent value.

## IV. Recent Precedents in Similar Cases

In *Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Yourelo)*, Case No. 19-13602-CJP (Bankr. D. Mass. Nov. 23, 2020), the court addressed the issue of whether a municipality's strict foreclosure of property for unpaid taxes could constitute a fraudulent conveyance in bankruptcy. The court held that the lack of a competitive bidding process and the resulting substantial disparity in value between the property and the tax debt could result in a fraudulent transfer, as the transfer failed to provide reasonably equivalent value under 11 U.S.C. § 548.

Similarly, in *Riendeau v. Town of Sabattus (In re Riendeau)*, Case No. 15-10309, the court recognized that in cases where municipalities foreclose without competitive bidding, there is a risk that such actions could lead to unjust enrichment and harm to unsecured creditors, thus warranting avoidance under federal bankruptcy law.

In this case, the Town of Westborough transferred the property to itself for $0, circumventing any fair market valuation process and leaving creditors like myself without adequate remedy. As in *Yourelo* and *Riendeau*, this creates a strong argument for the Court to avoid the transfer as constructively fraudulent.

## V. Federal Bankruptcy Law Preempts State Tax Collection Schemes in Cases of Fraudulent Conveyance

The Bankruptcy Code's policy of equitable distribution among creditors, as reflected in § 548, cannot be overridden by state tax foreclosure laws. In cases like *Gunsalus v. Ontario County*, 613 B.R. 1 (Bankr. W.D.N.Y. 2020), courts have held that even where state tax collection procedures are followed, federal bankruptcy law takes precedence when the foreclosure results in a transfer for less than reasonably equivalent value.

Here, the Town of Westborough's foreclosure deprived the bankruptcy estate of a significant asset and unjustly enriched the Town. As such, the Plaintiff requests that the Court apply federal law to avoid this transfer for the benefit of creditors, as required by §§ 544 and 548 of the Bankruptcy Code.

## VI. Conclusion

For the reasons outlined above, this Court should grant the Plaintiff's Motion to Vacate the Foreclosure Judgment and Avoid the Transfer of 231 Turnpike Road, Westborough, MA, as a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B). The Plaintiff further requests that the Court either return the property to the bankruptcy estate or award $6,000,000.00 damages to ensure an equitable distribution among creditors.

DATED: October 6, 2024, Respectfully submitted:

By creditor,



Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

Exhibit 1

**ARTICLE 17:  Water Capital Equipment and Projects (DPW Director & Conservation Officer)**

To see if the Town will vote to transfer from Water Retained Earnings and appropriate the sum of Twenty One Thousand ($21,000) dollars or such other amount as Town Meeting may approve, for the purpose of performing necessary repairs and maintenance such as but not limited to, armoring the eroded stream banks, debris removal, vegetation removal, and rebuilding existing culvert headwalls on two tributaries that feed Sandra Pond Reservoir, or take any other action thereon.

*Town Manager's Statement – This Article would fund necessary repairs on two severely eroded tributaries that feed the Town's drinking water supply.  The motion for this Article is a simple majority.*

*John Walden, DPW Manager - Motion: I move that the Town vote to transfer from Water Retained Earnings and appropriate $21,000 for the purpose stated in the Article as printed in the Warrant.*

Derek Saari, Conservation Officer, spoke to the Article**.**

**Vote:  Yes=151  No=4  Motion carries.**

---

*Leigh Emery, Chairman of the Board of Selectmen - Motion to recess until 7 p.m. tonight.*
**Vote:  Yes=102  No=3**

---

**7:00 p.m. – Annual Town Meeting resumed.**

**ARTICLE 18:  Authorization and Appropriation to Acquire/Dispose of 231 Turnpike Road (Board of Selectmen)**

To see if the Town will vote to authorize the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain, a parcel of land with buildings and other improvements thereon located at 231 Turnpike Road and containing approximately 29.34 acres, for general municipal and/or economic revitalization purposes, and to raise and appropriate, transfer from available funds, and/or borrow a sum of money to be expended at the direction of the Selectmen for the cost of acquiring said property and any and all costs incidental or related thereto; to authorize the Selectmen to apply for, accept and expend any grants from any source whatsoever that may be available to pay any portion of this project, and to execute any and all documents and/or other instruments as may be necessary or convenient to accomplish the foregoing purposes, or take any other action thereon.

*Town Manager's Statement – This Article would authorize the Selectmen to acquire the former Regal Cinema property on Route 9 (Turnpike Road) for the purposes of redevelopment and economic development. Regal Cinemas, which leased the property, vacated the premises in late 2017, at the end of their 20 year lease and paid property taxes through November. Since no taxes have been paid on the property since and the ownership of the property is unclear, as the record owner was administratively dissolved in 2009, it is likely that the Town will eventually acquire the property through a tax taking. The acquisition of this property by the Town will be a proactive measure to ensure that the property does not become a blight to the neighborhood in the meantime because of neglect, vandalism and/or exposure to the elements. Rather, the Town intends to put the property to productive use and to contribute again to the Town's tax revenue. The motion for this Article requires a 2/3 majority vote.*

*Ian Johnson, BOS - Motion: I move that the Board of Selectmen is authorized to acquire, by purchase, gift, eminent domain or otherwise, in fee simple, a parcel of land located at 231 Turnpike Road, Westborough, MA, as shown on the taking plan attached to the Warrant for this Town Meeting and to be recorded herewith, including all buildings and structures thereon and all privileges and appurtenances thereto belonging thereon, consisting of approximately 29.34 acres, for general municipal and economic development purposes, and for all purposes and uses accessory thereto, and that the Board of Selectmen is authorized to execute any documents and enter into any agreements associated with such acquisition; that the sum of $6,000,000.00 is hereby appropriated to be expended at the direction of the Board of Selectmen to pay costs of acquiring said property, and for the payment of all costs incidental and related thereto; that to meet such appropriation the Treasurer, with the approval of the Board of Selectmen is authorized to borrow such amount under M.G.L. Chapter 44 or any other enabling authority; that the Board of Selectmen is authorized to apply for, accept and expend any grants from any source whatsoever that may be available to pay any portion of this project, provided that the amount of the authorized borrowing shall be reduced by the amount of such aid received prior to the issuance of bonds or notes under this vote; that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied to the payment of costs approved by this vote in accordance with Chapter 44, Section 20 of the General Laws, thereby reducing the amount authorized to be borrowed to pay such costs by a like amount; and that the Board of Selectmen is authorized to take any other action necessary to carry out this project.*

**Vote:  Yes = 129   No = 1   Motion carries, 2/3 vote achieved.**

**ARTICLE 19:  Library Expansion Design (Library Board of Trustees)**

To see if the Town will vote to appropriate $490,000 for architectural and engineering services for the planning and design of the library expansion, including all costs incidental or related thereto; to see whether to meet this appropriation, the Town will vote to borrow said sum under the provisions of Chapter 44 of the General Laws or any other enabling authority; or take any other action thereon.

*Town Manager's Statement – The Library Board of Trustees is seeking to renovate and expand the library and has asked to continue the design process through a $490,000 debt issuance. This project is expected to be partially funded through a MA State Library Construction Grant*

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...     about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document        Page 6 of 24

[casetext.com](casetext.com)                                           Exhibit 2

# Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Yourelo Your Full-Serv. Relocation Corp.), Case No. 19-13602-CJP

*Christopher J. Panos United States Bankruptcy Judge*

30–38 minutes

---

Case No. 19-13602-CJP AP No. 19-1140-CJP

11-23-2020

*In re: YOURELO YOUR FULL-SERVICE RELOCATION CORPORATION, Debtor YOURELO YOUR FULL-SERVICE RELOCATION CORPORATION, Plaintiff v. CITY OF REVERE, Defendant*

---

Chapter 11

## ORDER DENYING MOTION TO DISMISS

Before the Court is the Motion to Dismiss [Dkt. No. 23] (the "Motion") filed by defendant City of Revere (the "City"), by which the City seeks dismissal of the Complaint [Dkt. No. 1] ("Complaint") in this adversary proceeding. In the Complaint, the Plaintiff and debtor-in-possession, Yourelo Your Full-Service Relocation Corporation (the "Debtor"), asserts the following claims: (1) Count I, avoidance of the transfer of the real property at 585 North Shore Road, Revere, Massachusetts (the "Property") to the City (the "Transfer") and recovery thereof for the benefit

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document    Page 7 of 24

of the Debtor's estate (the "Estate") pursuant to 11 U.S.C. §§ 548(a)(1)
(B) and 550(a)(1) as a constructive fraudulent transfer; (2) Count II,
avoidance of the Transfer and recovery of the Property for the Estate
pursuant to §§ 544(b)(1) and 550(a)(1) as a constructive fraudulent
transfer under the Massachusetts Uniform Fraudulent Transfer Act,
M.G.L ch. 109A, §§ 5(a)(2) and 6(a); (3) Count III, avoidance of the
Transfer and recovery of the Property for the Estate pursuant to §§
547(b) and 550(a)(1) as a preferential transfer; and (4) Count IV, related
injunctive relief seeking to enjoin the transfer or encumbrance of the
Property. The Debtor opposes the Motion [Dkt. No. 28] (the "Objection").

Unless otherwise noted, all section references herein are to Title 11 of
the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended (the
"Bankruptcy Code").

On September 30, 2020, the Court held a hearing on the Motion (the
"Hearing") at which the Court gave tentative rulings at the beginning of
the Hearing, subject to further consideration after argument. Upon
considering the further argument of counsel, the Court hereby DENIES
the Motion for the reasons stated on the record and adopts the tentative
rulings by reference, except as refined and expanded herein, primarily
with respect to denial of dismissal of the constructive fraudulent
conveyance claims under § 548(a)(1)(B) and M.G.L. ch. 109A, §§ 5(a)
(2) and 6(a).

## Background

The City asserts that the Complaint should be dismissed as a matter of
law "because there can be no constructive fraudulent transfer to a
municipality in the Commonwealth of Massachusetts which follows and
complies with the state's traditional 104[-]year[-]old tax title statute." Mot.
7. The City urges the Court to extend the reasoning of the Supreme

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...        about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document    Page 8 of 24

Court in *BFP v. Resolution Trust Corporation*, 511 U.S. 531 (1994)
("*BFP*"), to conclude that the procedural protections of the
Massachusetts property tax strict foreclosure scheme, and state
interests supporting that scheme, preclude the Court from determining
that the taxpayer, the Debtor, received less than "reasonably equivalent
value" when its equity of redemption was foreclosed. *See* 511 U.S. at
545-46 (holding that that the price received at a mortgage foreclosure
auction satisfied the requirement that transfers of an insolvent debtor's
property be in exchange for reasonably equivalent value so long as the
foreclosure sale complied with the applicable state law). Extending
*BFP*'s holding to the tax foreclosure context would result in a property (or
its surplus equity) that may not be recovered from a municipality as the
recipient of a constructively fraudulent conveyance if a tax foreclosure
has been conducted in compliance with state law, regardless of the
amount of the tax debt in relation to the value of the property. Whether
the reasoning of *BFP* extends to tax foreclosure schemes that provide
for strict foreclosure or "forfeiture," rather than an auction process that
exposes a property to the market, has been the subject of conflicting
judicial interpretation. For the reasons stated below and on the record at
the Hearing, the Court determines that the protections afforded a
taxpayer by the strict foreclosure scheme adopted by the Massachusetts
legislature, while intended to provide due process to a taxpayer, were not
intended to, and in some cases may not, result in the exchange of
"reasonably equivalent value" for purposes of determining whether
property transferred pursuant to that scheme is a constructively
fraudulent transfer in the bankruptcy context. Moreover, the state's
interests in its tax collection scheme and the balance struck between the
interests of the taxpayer and municipality, while strong, are overridden by
the federal interests of recovery and ratable distribution embodied in §§
544, 547, 548(a)(1)(B) and 550(a)(1) of the Bankruptcy Code.

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...        about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document        Page 9 of 24

*See generally* Laura B. Bartell, *Tax Foreclosures as Fraudulent Transfers—Are Auctions Really Necessary?*, 93 AM. BANKR. L.J. 681 (Winter, 2019) (collecting cases); Marie Reilly, *The Case for the Tax Collector*, 18 J. BANKR. L. & PRAC. 628 (2009).

## Legal Standard and Issue to Be Decided

While the Motion does not expressly cite to Fed. R. Civ. P. 12(b)(6), the Court construes the Motion as a motion requesting dismissal for failure to state a claim with respect to which the Court can grant relief pursuant to that rule, as made applicable to this Adversary Proceeding by Fed. R. Bankr. P. 7012(b). The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the "legal sufficiency" of a complaint. *See*, *e.g.*, *Gomes v. Univ. of Maine Sys.*, 304 F. Supp. 2d 117, 120 (D. Me. 2004); *Siniscalchi v. Shop-Rite Supermarkets*, *Inc.*, 903 F. Supp. 182, 186 (D. Mass. 1995). "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Banco Cooperativo de Puerto Rico v. Herrera (In re Herrera)*, 589 B.R. 444, 451-52 (B.A.P. 1st Cir. 2018) (internal quotations and citation omitted).

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A court must assume a complaint's well-pleaded factual allegations as true and construe them in the plaintiff's favor, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S.

at 556; *see also Iqbal*, 556 U.S. at 681 (explaining "[i]t is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 55-56 (1st Cir. 2012) (concluding that courts may only consider complaint's non-conclusory and non-speculative facts). The issue is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *See Twombly*, 550 U.S. at 563 n.8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a . . . court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

The Debtor alleges in the Complaint that the City assessed real estate taxes and related interest and costs against the Property in the amount of $120,564.19 (the "Tax Obligations") as of June 20, 2017. Compl. ¶ 8. On October 3, 2019, after obtaining a judgment from the Massachusetts Land Court, the City recorded the judgment with the Registry of Deeds, which the Debtor alleges foreclosed the Debtor's equity of redemption and transferred absolute title to the Property from the Debtor to the City, constituting the Transfer. *Id*. at ¶¶ 13, 16, 18. The Debtor further alleges that, at the time of the Transfer, the City appraised the value of the Property at $684,100.00 and that the fair value of the Property was substantially greater than the amount of the Tax Obligations. *Id*. at ¶¶ 19, 38. While it may dispute some of the factual allegations in the Complaint, the City does not contend that the Debtor improperly pleaded the fraudulent conveyance claims. Rather, the parties appear to agree that the issue to be decided is whether, as a matter of law, the Property transferred to the City by strict foreclosure of a tax lien in compliance with applicable state law may be recovered in bankruptcy as a constructively fraudulent conveyance where it has been alleged that the value of the

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document    Page 11 of 24

property significantly exceeded the amount of the tax debt at the time of the transfer.

In fact, the City does not appear to contest the following: (1) that there was a "transfer" within the applicable statutory time periods, Answer ¶¶ 7, 9, 13, 16, 46, 64; Mot. ¶¶ 1, 22; (2) a creditor of the Debtor was a creditor at the time of the transfer, Mot. ¶ 26; and (3) the Property was the Debtor's primary asset, Mot. ¶ 1.

## Massachusetts Strict Foreclosure After a Tax Taking

The Commonwealth of Massachusetts and its municipalities have a substantial interest in the collection of taxes. *See generally Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981) (characterizing the collection of taxes as an "important a local concern"); *In re Murphy*, 331 B.R. 107, 120-21 (Bankr. S.D.N.Y. 2005) (describing the interest of taxing authorities in securing payment of outstanding tax obligations as "very important"). The Massachusetts legislature enacted a comprehensive scheme for the assessment and collection of property taxes and other charges by municipalities that can result in the strict foreclosure of a delinquent taxpayer's interest in a property. *See* M.G.L. ch. 60, § 1 *et seq*. A tax taking followed by strict foreclosure is the prevailing method used to collect unpaid property taxes in Massachusetts. *See*, *e.g.*, *Tallage Lincoln*, *LLC v. Williams*, 151 N.E.3d 344, 351-52 (Mass. 2020) (citations omitted) (recognizing that "[t]ax sales used to be the predominant method of collecting real estate taxes, but they have fallen out of use, except in a few municipalities, and have largely been replaced by tax takings"). Strict foreclosure, in contrast to a mortgage foreclosure, "does not involve any type of sale; rather, the foreclosure judgment extinguishes the taxpayer's remaining interest in the property—the right of redemption—and converts the municipality's or third party's tax title

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document    Page 12 of 24

into absolute title." *Id*. at 352. One Massachusetts court described the process, and its significant departures from a mortgage foreclosure, as follows:

Another collection remedy provided by the statute is the sale of property subject to a tax lien by public auction. *See* M.G.L. ch. 60, §§ 40-51. This remedy was not utilized with respect to property owned by the Debtor and appears to be rarely employed by tax collectors in the Commonwealth.

[T]ax foreclosure cases are unlike any other in certain important respects. Interest accrues at 14% from the time taxes are due until the collector's sale or tax taking occurs, G.L. c.59, § 57, and at 16% thereafter, G.L. c.60, § 62. A small tax bill can thus rapidly become much larger. Also, unlike mortgage foreclosures or executions on money judgments in ordinary civil cases, the tax-foreclosing party keeps all surplus. Once the right of redemption has been foreclosed, tax title is "absolute" and neither the property owner nor any party claiming through the owner (such as mortgagees, lienors, or attaching creditors) has any claim, then or later, to the property or any part of its value. M.G.L. c.60, § 64; *Buk Lhu v. Dignotti*, 431 Mass. 292, 296 (2000).

*Tallage LLC v. Meaney*, No. 11 TL 143094, 2015 WL 4207424, at *4 (Mass. Land Ct. June 26, 2015). A foreclosure judgment extinguishes all rights of redemption, subject to the taxpayer's right to file a motion to vacate the judgment within one year if the taxpayer pays the full redemption amount, plus interest; beyond that one year date, the court may only vacate the judgment if the taxpayer shows a denial of due process. *See* M.G. L. ch. 60, § 69; *Williams*, 151 N.E.3d at 352 (acknowledging that "[a]lthough G. L. c. 60, § 69, states that entry of the foreclosure judgment 'shall forever bar all rights of redemption,' the taxpayer may move to vacate the judgment if he or she pays the

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...      about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...
Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document      Page 13 of 24

redemption amount, plus interest, within one year [and a]fter one year, the judgment is final and can be vacated only upon a showing of a denial of due process."). "[A]fter a strict foreclosure, the taxpayer loses any equity he or she has accrued in the property, no matter how small the amount of taxes due or how large the amount of equity." *Williams*, 151 N.E.3d at 352; *see also Meaney*, 2015 WL 4207424, at *4 (failure of taxpayers to pay municipal water and sewer bills totaling $492.51 resulted in foreclosure of property with fair market value of $270,000). While strict tax foreclosures can lead to inequitable results, one commentator has noted that sixteen states have adopted strict foreclosure or forfeiture schemes for property tax collection. *See* Bartell, *supra* note 2, at 699. In *Williams*, the Supreme Judicial Court recently noted that "[s]everal of [the Commonwealth's] sister States have determined that excess value from a tax taking must be made available to the taxpayer as a matter of constitutional law" but that the parties in both *Williams* and in *Kelly v. Boston*, 204 N.E.2d 123, 125 (1965), where the court "considered the legislative history of the statutory scheme governing tax lien foreclosures and determined that the Legislature intended that the process result in forfeiture of the taxpayer's equity to the municipality . . . did not raise any constitutional challenge[s], and [the court] did not address the constitutionality of the statutory scheme." *Williams*, 151 N.E.3d at 352 n.4; *see also* Ralph D. Clifford, *Massachusetts Has a Problem: The Unconstitutionality of the Tax Deed*, 13 U. MASS. L. REV. 274, 276 (2018) (describing and questioning the constitutionality of the strict foreclosure scheme).

## Can a Strict Foreclosure Conducted in Compliance with a State's Comprehensive Statutory

## Scheme Constitute a Constructively Fraudulent

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document    Page 14 of 24

# Conveyance Where Substantial Value is

## Transferred to a Municipality in Excess of the Amount of Tax Debt?

A trustee or debtor-in-possession may avoid any transfers made within two years of the bankruptcy filing if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligations; and was insolvent on the date that such transfer was made or such obligation was incurred . . . ." 11 U.S.C. § 548(a)(1)(B). In *BFP*, the Supreme Court held that the price received at a mortgage foreclosure sale (as opposed to "fair market value") constituted "reasonably equivalent value" as long as the foreclosure sale complied with the applicable state law. 511 U.S. at 545 (applying California law). However, the Court noted that its decision "covers only mortgage foreclosures of real estate" and "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *Id*. at 537 n.3. In examining such other considerations, a number of courts have declined to extend the narrow holding of *BFP* to constructively fraudulent transfer cases involving tax lien foreclosures where the state statutory scheme does not include a process to auction or otherwise establish the value of a subject property in relation to tax debt. Most of these courts have viewed the absence of an auction or other process creating a competitive market for the subject properties as distinguishing those cases from *BFP*, precluding a finding of "reasonably equivalent value" with respect to fraudulent conveyance claims. *See*, *e.g.*, *Smith*, 811 F.3d at 239 (holding tax foreclosure sale without bidding procedures lacking "reasonably equivalent value"). Those courts closely examined the substantive state tax foreclosure scheme and the particular facts of each case to determine whether the value obtained at the tax foreclosure

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document    Page 15 of 24

bore any relationship to the value of the property. *See*, *e.g*., *Smith*, 811
F.3d at 239; *Wentworth*, 221 B.R. at 319-20. The Supreme Court based
its holding in *BFP* on the premise that properties sold at a foreclosure
auction are "simply *worth less*" than fair market value, but that the state
foreclosure scheme still resulted in the opportunity to determine "a fair
and proper price, or a 'reasonably equivalent value,' for foreclosed
property, [as being] the price in fact received at the foreclosure sale, so
long as all the requirements of the State's foreclosure law have been
complied with." 511 U.S. at 539, 545. In a strict foreclosure tax sale, this
reasoning cannot apply because the value received relates only to the
amount of delinquent taxes. *See id*.; *Smith*, 811 F.3d at 239.

*See*, *e.g*., *Smith v. SIPI*, *LLC (In re Smith)*, 811 F.3d 228, 239 (7th Cir.
2016) (concluding that Illinois tax sale procedures with no competitive
bidding and bid amount bearing no relationship to real estate do not
establish "reasonably equivalent value"); *GGI Properties*, *LLC v. City of
Millville (In re GGI Properties*, *LLC)*, 568 B.R. 231, 243 (Bankr. D.N.J.
2017) (holding that New Jersey prepetition tax foreclosure sale did not
establish "reasonably equivalent value" because sale price not
correlated to value of property); *City of Milwaukee v. Gillespie*, 487 B.R.
916, 920 (E.D. Wis. 2013) (finding that *BFP* is inapplicable to non-sale
foreclosure proceedings without a public sale offering); *Murphy v. Town
of Harrison (In re Murphy)*, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005)
(rejecting that *BFP* applies to New York tax forfeiture statute and
concluding "[a] plaintiff has stated a claim that reasonably equivalent
value was not obtained for a property seized by tax forfeiture where the
state's procedure for tax forfeiture does not provide for a public sale with
competitive bidding"); *Harris v. Penesi (In re Harris)*, No. 01-10365, 2003
WL 25795591, *6 (Bankr. N.D.N.Y. Mar. 11, 2003) (determining no
presumption for taxing authority of reasonably equivalent value under

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document    Page 16 of 24

proper strict tax foreclosure proceeding); *Wentworth v. Town of Acton (In re Wentworth)*, 221 B.R. 316, 319-20 (Bankr. D. Conn. 1998) (concluding that *BFP* inapplicable to Maine's tax foreclosure procedure without competitive bidding, explaining that the value of a tax lien bears no relation to the value of a property). Courts have, on the other hand, extended *BFP*'s presumption of reasonably equivalent value in a tax sale when the process includes a market bidding process and closely resembles a mortgage foreclosure. *See Tracht Gut, LLC v. LA Cty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 836 F.3d 1146, 1153-55 (9th Cir. 2016) (applying *BFP* presumption of reasonably equivalent value to tax sale conducted in accordance with California tax foreclosure statute because of it contained competitive market bidding procedures, the procedural safeguards that apply to mortgage foreclosures); *Kojima v. Grandote Int'l Ltd. Liab. Co. (In re Grandote Country Club Co., Ltd.)*, 252 F.3d 1146, 1152 (10th Cir. 2001) (holding that the decisive factor in determining whether a tax taking transfer constitutes "reasonably equivalent value" is the existence of a procedure for competitive bidding and concluding that because tax sale conducted under Colorado law was subject to a competitive bidding procedure that the tax sale constituted a transfer for "reasonably equivalent value" under the Colorado Uniform Fraudulent Transfer Act); *Hollar v. Myers (In re Hollar)*, 184 B.R. 243, 252 (Bankr. M.D.N.C 1995) (concluding that tax sale conducted in conformity with Internal Revenue Code represents "reasonably equivalent value" because it utilized procedural safeguards equivalent to those required by foreclosing mortgagees, including the conduct of a public sale with competitive bidding).

"A minority of courts have applied the *BFP* rationale to find that, as a matter of law, the state's sovereign interest in conducting property tax foreclosures under its own state law is significant, and state law should

not be displaced by an avoidance action under the Bankruptcy Code absent Congress's 'clear and manifest' direction." *Canandaigua Land Dev*., *LLC v. Cty. of Ontario (In re Canandaigua Land Dev*., *LLC)*, 521 B.R. 457, 472 (Bankr. W.D.N.Y. 2014) (citing to cases applying *BFP* in the context of preference actions in referencing the minority position, but ultimately determining that transfer of debtor's property is avoidable under § 548), vacated by No. 11-20888-PRW, 2017 WL 2821874, *2 n.1 (Bankr. W.D.N.Y. June 29, 2017) (vacating underlying decision in the context of § 707 dismissal and noting that "[t]he Court continues to mull over whether it properly applied all of the factors identified by the Supreme Court in *BFP*") , and abrogated by *Gunsalus v. Ontario Cty*., 576 B.R. 302 (Bankr. W.D.N.Y. 2017). Courts extending the reasoning of *BFP* to strict foreclosure of tax liens have relied on the existence of appropriate procedural safeguards ensuring due process within the state tax foreclosure scheme to determine that property transferred through a tax lien foreclosure may not be recovered as a constructively fraudulent conveyance—without regard to whether the property was sold in a market process. *See*, *e.g*., *Fisher v. Moon (In re Fisher)*, 355 B.R. 20, 23, 26 (Bankr. W.D. Mich. 2006) (determining that there is "no distinction between a foreclosure sale and a forced tax sale" and, if the taxing authority "followed the State's procedural requirements, the sale price alone will not be cause for setting aside the transfer[,]" but also concluding that the point at which title passed in the property "was after the last day of redemption as determined in the Final Judgment of Foreclosure" such that the taxing authority's sale of the property to a third party post-petition did not violate the stay); *In re Murray*, 276 B.R. 869, 878 (Bankr. N.D. Ill. 2002) (noting, in context of tax sale only involving the purchase of delinquent taxes and not the underlying title to the property, that, "[b]y analogy, BFP logically applies to tax sales. The Debtor has failed to adduce any evidence challenging the pre-petition conduct of [tax

purchaser] or any evidence that the tax sale was conducted other than in accord with the relevant Illinois state law").

*Cf. Talbot v. Fed. Home Loan Mortg. Corp. (In re Talbot)*, <u>254 B.R. 63, 69</u> (Bankr. D. Conn. 2000) (in the strict mortgage foreclosure context, rejecting notion that BFP does not apply to strict foreclosures and noting that "BFP was not predicated on a theory that a competitive bidding process provides the most accurate indication of the market forces that define a property's value [but rather] that the states, not the market, were entitled to define the 'value' of property in the mortgage foreclosure context" and that "Connecticut strict foreclosure law provides a debtor with sufficient procedural safeguards to render it analogous to the foreclosure sale context of BFP"); *but see Chorches v. Fleet Mortg. Corp. (In re Fitzgerald)*, <u>255 B.R. 807, 814</u> (Bankr. D. Conn. 2000) (disagreeing with *Talbot's* application of *BFP's* conclusive presumption of reasonably equivalent value and concluding "that a Connecticut strict [mortgage] foreclosure has an insufficient evidentiary value to trigger the BFP conclusive presumption of 'reasonably equivalent value' under <u>Bankruptcy Code § 548(a)(1)(B)</u>").

In determining that a mortgage foreclosure sale conducted in compliance with state foreclosure procedures would be deemed to constitute "reasonably equivalent value," the Supreme Court considered the balance of federal and state interests. *See BFP*, <u>511 U.S. at 544-45</u>. "To displace traditional state regulation [regarding the conduct of mortgage foreclosure sales], the federal statutory purpose must be 'clear and manifest, . . . [o]therwise, the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law." *Id.* (citations omitted). The City argues that this principal should control the Court's determination of the issue presented in this case and that <u>§§ 544</u>, <u>548</u>, and <u>550</u> should not be read to trump the Commonwealth's interest in its

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document    Page 19 of 24

municipalities collecting taxes and the procedures that it has enacted to do so, including its legislative determination that municipalities should keep any value above the asserted tax debt with respect to properties transferred after foreclosure of a tax lien. The City reasons that whether a state-mandated tax lien foreclosure process is intended to result in a reasonable "foreclosure price" is not the paramount consideration, but rather that a state has established a process that it believes affords due process and reflects legislative choices regarding surplus value that should not be overridden by bankruptcy law unless Congress expressly intends to do so.

*See* Reilly, *supra* note 2, at 635-36 ("The tax creditor's ability to foreclose the debtor's property interest in the surplus creates a powerful incentive for the debtor to pay the tax"); *but see Sensenich v. Molleur (In re Chase)*, 328 B.R. 675, 681 (Bankr. D. Vt. 2005) ("Fraudulent conveyance statutes, whether under federal or state law, seek to avoid a windfall to the creditor, to prevent a disproportionate loss to the debtor and, especially in bankruptcy cases, to recognize the rights of unsecured creditors to all of the debtor's non-exempt assets, including non-exempt equity in real estate").

*See* Reilly, *supra* note 2, at 633 (arguing that *BFP* should be read to conclude that "[t]he important aspect of a foreclosure transfer is not *how* the state regulates it, but rather *that* the state regulates it.") (emphasis added); Bartell, *supra* note 2, at 708 ("It is difficult to imagine that Congress ever envisioned the use of fraudulent transfer law to negate a transfer of real property made in compliance with the tax foreclosure laws of a state").

Section 548 provides that a trustee in bankruptcy (or debtor-in-possession) may avoid constructively fraudulent transfers, including involuntary transfers where the debtor received "less than reasonably

equivalent value." 11 U.S.C. § 548. "Section 548 applies to any 'transfer,' which includes 'foreclosure of the debtor's equity of redemption.'" *BFP*, 511 U.S. at 535 (citing 11 U.S.C. § 101(54)). Section 548 does not except taxing authorities and reflects Congress's intent to ensure that certain prepetition actions by the debtor or its creditors do not prejudice the debtor's general unsecured creditors. Similarly, Congress enacted § 544 to permit a bankruptcy estate to utilize applicable state law to recover property fraudulently conveyed prepetition. Congress enacted the Bankruptcy Code to provide a comprehensive scheme to ensure fair and ratable distribution among creditors in accordance with priorities established by Congress. The avoidance powers that permit a bankruptcy estate to recover prepetition preferential payments and fraudulent conveyances are express and important components of that scheme. *See Smith*, 811 F.3d at 238 ("[t]he broader purposes of the Bankruptcy Code and its fraudulent transfer provisions [is] to ensure ... a fair distribution of the debtor's assets among creditors"); *cf. BFP*, 511 U.S. at 560-61 (Souter, J., dissenting) (noting that avoiding transfer of foreclosure properties for low prices comports with the policy of maximum and equitable distribution for creditors). The Massachusetts strict foreclosure tax collection scheme does not provide any mechanism for determining the value of a property in relation to the amount of the tax lien or protections for the interests of general unsecured creditors of the taxpayer and, as such, directly conflicts with the legislative goals of Congress reflected in the fraudulent conveyance avoidance remedies of the Bankruptcy Code. *See Murphy*, 331 B.R. at 120 (identifying that states have a "strong interest in assuring ... citizens meet their tax obligations and to enforce those obligations when they remain unmet. However, that interest cannot overcome Congress' policy choice that reasonably equivalent value must be obtained for a transfer of a debtor's property in the bankruptcy context, where the rights of other creditors are

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document    Page 21 of 24

prejudiced"); *GGI Properties*, *LLC*, 568 B.R. at 247 n.10 (recognizing
that "[i]ndeed one might interpret the state statute as presenting an
obstacle to the objectives of Congress in enacting §§ 547 and 548 of the
Bankruptcy Code thereby allowing preemption of the state statute")
(citation omitted). Consequently, where the Debtor's Property was
transferred pursuant to the strict foreclosure provisions of applicable
Massachusetts law and the Debtor has alleged that the value of that
Property substantially exceeded the amount of the Tax Obligations on
the date of transfer, the Debtor has stated a claim upon which relief may
be granted. *See*, *e.g.*, *Gunsalus v. Ontario Cty. (In re Gunsalus)*, 613
B.R. 1, 8 (Bankr. W.D.N.Y. 2020) (finding tax sale for a lien of $1,290.29,
amounting to less than 5 percent of the property's value of $28,000, is
constructively fraudulent as "less than reasonably equivalent value").
The procedural due process protections afforded the taxpayer by the
Massachusetts strict foreclosure statute do not immunize the City from
the fraudulent conveyance claims set out in the Complaint. The lack of
competitive bidding and exposure to market forces to obtain fair value for
the Property under the Massachusetts tax foreclosure scheme and the
alleged resulting transfer of surplus value to the City permitted by the
strict tax foreclosure scheme distinguishes this case from *BFP* and its
rationale for a presumption of "reasonably equivalent value" in the
mortgage foreclosure context.

*See Begier v. Internal Revenue Serv*., 496 U.S. 53, 58 (1990)
(describing "[e]quality of distribution among creditors" in accordance with
the statutory priorities of the Bankruptcy Code as a central tenet of
bankruptcy law). Avoidance of constructive fraudulent transfers, both in
this context and generally, also may facilitate the debtor's fresh start. *See
Smith*, 811 F.3d at 238.

The County moved at the district court for certification of a direct appeal

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...        about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
Document        Page 22 of 24

of the bankruptcy court's decision to the Second Circuit. *See Gonsalus v. Cty. of Ontario*, No. 20-CV-6134-FPG, 2020 WL 3469692 at *1 (W.D.N.Y. June 25, 2020) (slip opinion). The district court granted certification of direct appeal because it already ruled that *BFP*'s presumption of "reasonably equivalent value" did not apply to these facts. *See id.; see also Hampton v. Ontario Cty.*, 588 B.R. 671, 677 (W.D.N.Y. 2018).

Where a state tax lien foreclosure process provides for an auction or includes another mechanism that exposes the subject property to the market and directs any surplus to the taxpayer or junior lienholders, the reasoning of *BFP* may apply and result in a determination that reasonably equivalent value has been received by a taxpayer for purposes of a fraudulent conveyance claim if a municipality complies with that statute in transferring a property.

## Conclusion

For the reasons above and as stated on the record, the Motion is DENIED. The Court declines to rule at this time as to whether any potential recovery by the Estate pursuant to § 550 may be limited to damages rather than the Property, itself, as suggested by the "election of remedies" argument made by the City or may be subject to other equitable limitations. *See* Mot. 19; *compare Murphy*, 331 B.R. at 123 (holding *BFP* inapplicable to New York tax foreclosure statute where no competitive bidding, but limiting the amount of recovery to the amount necessary to satisfy creditors of the debtor) *with Gunsalus*, 613 B.R. at 12-13 (distinguishing *Murphy* and directing conveyance of title to property back to estate as remedy for fraudulent transfer where return of the possession of the property to the debtors as providing "an indirect but important benefit to the estate—it will greatly increase the probability of a

Yourelo Your Full-Serv. Relocation Corp. v. City of Revere (In re Youre...    about:reader?url=https%3A%2F%2Fcasetext.com%2Fcase%2Fyourelo...

Case 23-40709    Doc 379    Filed 10/07/24    Entered 10/07/24 11:14:39    Desc Main
                        Document        Page 23 of 24

successful reorganization under the Chapter 13 plan"); *Tronox, Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 464 B.R. 606, 613-14 (Bankr. S.D.N.Y. 2012) (holding that "courts have given a very broad construction to the phrase 'benefit of the estate." Benefit for purposes of § 550 includes both direct benefits to the estate (e.g., an increased distribution) and indirect ones (e.g., an increase in the probability of a successful reorganization)").

By the Court, Dated: November 23, 2020

/s/_____

Christopher J. Panos

United States Bankruptcy Judge

<u>CERTIFICATE OF SERVICE</u>

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com

Lolonyon Y Akouete