UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |
|---|---|
| In re: | Chapter 7 |
|  | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, |  |
| Debtor. |  |

## SECOND SUPPLEMENT TO EXPEDITED MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE CHRISTOPHER J. PANOS, UNITED STATES BANKRUPTCY
JUDGE:

## INTRODUCTION

1. This Second Supplement to the Expedited Motion for Summary Judgment (Dkt#496)
   addresses the absence of any material factual dispute raised by the Trustee or subpoenaed
   third parties, further confirming the Claimant's entitlement to summary judgment as a
   matter of law.
2. The responses and objections to subpoenas issued to Babcock & Brown Administrative
   Services, Inc. ("BBAS"), the California State Controller (through Staff Counsel Harpreet K.
   Nakhwal), and Peter Blaustein are included as attachments and incorporated by reference.
   These responses, while raising procedural and logistical objections, fail to present
   substantive evidence that would rebut the Claimant's managerial authority, recovery efforts,
   or compensation claims.
3. This Supplement focuses on the absence of substantive challenges to the Claimant's claims
   under the Administrative Services Agreement (ASA), Operating Agreement, and Durable
   Power of Attorney, demonstrating that no genuine dispute of material fact exists.

## I. NO GENUINE ISSUE OF MATERIAL FACT EXISTS

### A. Babcock & Brown Administrative Services, Inc. (BBAS)

4. BBAS's response to the subpoena acknowledges that it severed its relationship with the
   Debtor in 2009 and claims that most requested documents fall outside its seven-year
   retention policy. However, BBAS's assertion of termination is legally ineffective and
   procedurally flawed because:
   o **Resignation Requires Member Consent**:
     Under Section 1(e) of the Debtor's Operating Agreement, any resignation by the
     Manager requires the **"Consent of the Members"** to be effective. BBAS has not
     provided any evidence of such consent, rendering its purported resignation invalid.
   o **Ongoing Obligations Under the ASA**:
     Section 1(j) of the ASA obligated BBAS to perform services "reasonably necessary"
     to manage the Debtor's affairs. BBAS has failed to demonstrate compliance with
     this provision or provide evidence of a lawful termination of its managerial role.

- o **Failure to Produce Responsive Documents**:
  BBAS's procedural objections—citing document retention policies and the timing of the subpoena—do not address the substantive issues in dispute. BBAS has not provided any evidence contesting the Claimant's authority under the ASA, Operating Agreement, or Transfer of Manager Role.

5. BBAS's objections, while procedurally focused, confirm that it has no substantive evidence disputing the Claimant's claims. This underscores the absence of a material factual dispute.

## B. California State Controller (Staff Counsel Harpreet K. Nakhwal)

6. In response to the subpoena, Staff Counsel Harpreet K. Nakhwal stated that the **State Controller's Office (SCO) does not accept electronic service** and that the subpoena must be personally served. Additionally, the SCO indicated that it is seeking representation from the Attorney General's Office, which would also require service.

7. While procedural in nature, this response does not address the Claimant's authority, the recovery of $1.2 million in unclaimed funds, or the reasonableness of the associated recovery fee. The SCO provided no substantive objections or evidence disputing the Claimant's entitlement to compensation under the ASA.

## C. Peter Blaustein

8. Peter Blaustein's response objected to the subpoena based on improper service, unreasonable timing, and procedural deficiencies. He did not address or contest the Claimant's managerial authority or compensation claims.

9. Like the responses of BBAS and the SCO, Blaustein's objections are limited to procedural issues and fail to raise any substantive evidence disputing the Claimant's claims.

# II. LEGAL ARGUMENTS

## A. Claimant's Managerial Authority is Valid and Uncontested

10. The ASA, Operating Agreement, and Transfer of Manager Role establish the Claimant's managerial authority. No evidence has been presented to challenge the validity of these agreements or the delegation of authority to the Claimant.

11. BBAS's failure to demonstrate compliance with the Operating Agreement's requirements for resignation further confirms that the Claimant's assumption of managerial authority was lawful and consistent with the governing agreements.

## B. Compensation Claims Align with the ASA and Operating Agreement

12. Section 2(b) of the ASA grants the Manager discretion to determine reasonable compensation. The Claimant's requested compensation reflects the complexity and value of the services rendered, including:

- Recovering $1.2 million in unclaimed funds for the estate;
- Preserving the Debtor's $5 million real estate asset at 231 Turnpike Road.

13. None of the subpoena responses or objections contest the reasonableness of this compensation or the Claimant's authority to determine it under the ASA and Operating Agreement.

**C. No Genuine Dispute of Material Fact Exists**

14. The Trustee and subpoenaed parties have failed to produce any evidence disputing the Claimant's managerial authority, the validity of the governing agreements, or the reasonableness of the compensation sought.
15. Procedural objections and logistical challenges raised by BBAS, the SCO, and Blaustein are insufficient to create a genuine issue of material fact under **Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)**.
16. By contrast, the Claimant has provided substantial evidence supporting his claims, including:

- The ASA, Operating Agreement, and Durable Power of Attorney;
- Verified responses to interrogatories outlining the Claimant's recovery efforts and managerial actions;
- Detailed documentation of the benefits provided to the estate.

## III. RELIEF REQUESTED

WHEREFORE, Claimant respectfully requests that this Court:

1. Grant the Expedited Motion for Summary Judgment (Dkt#496);
2. Allow Claimant's claims in full as valid and enforceable against the estate;
3. Award reasonable compensation for Claimant's services, consistent with the ASA and Operating Agreement; and
4. Grant such other and further relief as this Court deems just and proper.

DATED: January 19, 2025, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## LIST OF EXHIBITS

The Movant, Lolonyon Akouete, hereby provides a list of exhibits in compliance with Local Bankruptcy Rule 5.

| Exhibit | Description | No. of Pages |
|---------|-------------|--------------|
| 1 | Response and Objections to Subpoena (B&B) | 15 |
| 2 | Peter Blaustein response to Subpoena | 2 |
| 3 | California State Controller response to subpoena | 2 |
| 4 | Responses to Trustee's First Set of Interrogatories | 10 |

<span style="color:red">Exhibit 1</span>

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC,

Debtor.

**RESPONSE AND OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS OF LOLONYON AKOUETE**

Walter A. Horst, in his individual capacity and on behalf of Babcock & Brown Holdings, Inc. and Babcock & Brown International Pty. Ltd. and their current and former subsidiaries ("B&B"), through undersigned counsel, hereby responds, and objects, to the Subpoena to Produce Documents of Lolonyon Akouete ("Akouete") dated November 26, 2024 and requesting a production date of December 3, 2024 (the "Subpoena").

<u>**General Objections**</u>

**I.    Objections Based on Fed. R. of Civ. P.  45**

1.    The requests in the Subpoena are unduly burdensome and disproportionate to the needs of the case, particularly as directed to a non-party which was last retained by the Debtor in 2009.  In seeking an enormous amount of documents with no temporal limitation in seven (7) days over the Thanksgiving holiday, Akouete has failed to meet his obligations under Federal Rule of Civil Procedure 45(d)(1) to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  B&B reserves all rights it may have as a non-party under the Federal Rules of Civil Procedure, the Local Rules of the Court, the individual rules or rulings of the Court and the case law (collectively, the "Applicable Rules"), including the right to shift the costs of compliance with this Request to the Requesting Party.  *See* Fed. R. Civ. P. 45(d)(1) & 45(d)(2)(B)(ii).

78971115;2

2.      B&B also objects to the Subpoena to the extent that it seeks or calls for the production of documents that: (i) constitute attorney work product prepared for or in anticipation of litigation; (ii) constitute or reflect communications protected by the attorney-client privilege; (iii) are shielded from disclosure by a common interest or joint defense privilege; or (iv) are protected by any other privilege or protection under the Federal Rules or other applicable law. Any inadvertent disclosure of privileged or otherwise protected material is not a waiver of any applicable privilege or protection.

3.      B&B also objects to the Subpoena requests to the extent that it seeks documents and information containing sensitive personal information, trade secrets or other confidential and/or proprietary information, including such information to the extent it implicates the confidentiality concerns of third parties.

4.      B&B further objects to the Subpoena requests  to the extent that they call for the location and/or restoration of data stored on computers or other electronic media (including but not limited to computer files, voice recordings, electronic communications such as e-mail, etc.) because such an endeavor is unduly burdensome, costly, time consuming, unlikely to yield non-duplicative discoverable information, and imposes an obligation beyond that which is required by Federal Rule of Civil Procedure 26(b)(2)(B), especially given how old the documents Akouete is requesting and the duplicative requests sent by him as evidenced in his latest "Notice to All Parties in Interest" (Docket No. 450).  B&B also objects to the Subpoena to the extent that it could be construed to require the production of documents that may exist at an offsite, archival storage facility, warehouse, or other repository.  B&B will not undertake to search any such location for potentially responsive documents.

78971115;2

5.      B&B further objects to the Subpoena to the extent that it purports to require preservation and/or production of electronically stored information ("ESI") that is not stored on active systems, but is stored on disaster recovery systems, or on systems, backup tapes, and other media that are no longer part of normal business operations.  Such ESI is not reasonably accessible and likely is duplicative of ESI available from other more readily accessible sources.  Because of the lack of relevance of such ESI and the cost associated with searching, preserving, and accessing these data sources, B&B will not search the above-described ESI sources.  B&B will continue with the routine, good-faith operation of its electronic information systems, including the normal recycling of storage media for its disaster recovery systems.

6.      B&B further objects to the Subpoena to the extent that it purports to impose obligations or require procedures beyond or different from those imposed or required by the Applicable Rules.

7.      To the extent B&B has documents in its system related to the Debtor, B&B will produce all non-privileged documents in its possession. B&B has a 7 year document retention policy.  Most, if not all of the requested documents fall outside of the 7 year document retention under as B&B terminated the Administrative Services Agreement with the Debtor on June 8, 2009 after B&B was unable to get in contact with any representative of the Debtor.   Further the Subpoena requests the production of documents related to other clients of B&B and the financial affairs and arrangements of B&B with those clients, and several other requests that go beyond the scope of Rule 45 and the contested matter before the Court which appears to relate to the propriety of a proof of claim filed by Akouete for services allegedly rendered by him more than a decade after B&B's involvement and related issues of corporate authority.

78971115;2

8.      Finally B&B objects to the timing of the Subpoena and the 3 business days (including the day the Subpoena was served) that B&B was given to comply and which Subpoena was served right before the Thanksgiving Holiday. The Subpoena does not allow reasonable time for compliance pursuant to  Federal Rule of Civil Procedure 45(d)(3)(A)(i). *See e.g. In re Third Party Subpoena to Malyugin*, 310 F.Supp.3d 3, 5 (D.D.C.2018) (subpoena served two days before deposition was unreasonable; Ds' attempted service and negotiations to effect service a month earlier were insufficient); *Green v. MOBIS Ala., LLC*, No. 2:12cv277-MEF, 2014 WL 2041857 (M.D.Ala.2014) (slip op.; 5-16-14) (for subpoena commanding production, reasonable time has been held to be 14 days).

9.      Rule 45(c)(3)(A)(i) of the Federal Rules of Civil Procedure provides that the party on whom a  subpoena is served must be provided "a reasonable time to comply." Indeed, serving subpoenas with just three business days to respond (as here) invites a dispute. *See Kirschbaum v. Insignia Commercial Grp., Inc.,* No. CIV. A. 97-CV-5532, 1998 WL 321273, at *1 (E.D. Pa. June 18, 1998)(noting that plaintiff invited the discovery dispute by setting the subpoenas returnable just three business days after the date of service); *Donoghue v. County of Orange,* 848 F.2d 926, 931 (9th Cir. 1987)(one week insufficient time to respond to an extensive document subpoena); *McLendon v. TelOhio Credit Union, Inc.,* No. 2:05-CV-1160, 2006 WL 2380601, at *2 (S.D. Ohio Aug. 14, 2006) ("Rule 45(c)(2)(B) appears to set a presumptive time of 14 days after service to respond. Subpoenas which are sent by certified mail on July 5, 2006 and which require production of documents by non-parties on July 11, 2006 would not appear to permit the non-parties a reasonable time to comply even if the non-parties waive the requirement of personal service and choose to honor the subpoena").

78971115;2

## II.     Objections Based on Bankruptcy Rule 2004

10.     Akouete also issued the subpoenas pursuant to Rule 2004. The District of Massachusetts Bankruptcy Court requires parties in interest to a bankruptcy case to file motions and for those motions to be granted prior to being authorized to serve discovery pursuant to Bankruptcy Rule 2004. The Subpoena seeks discovery from B&B pursuant to Rule 2004. Bankruptcy Rule 2004(a) states that "On motion of any party in interest, the court may order the examination of any entity." To date no motion has been filed requesting discovery from B&B and no order authorizing discovery from B&B has been entered.

11.     Absent a local rule that does not require a motion and order to conduct a 2004 examination of a third party, which rule the Massachusetts Local Rules  and Bankruptcy Court do not have, the Subpoena is defective on its face and B&B does not have to respond.

12.     Akouete, on November 24, 2024, filed a Motion for Entry of a Case Management Order to Streamline Discovery and Expedite Resolution of Contested Proof of Claim (ECF No. 438) (the "Case Management Motion"), which motion the Court denied on November 26, 2024, pending entry of case management order to be  prepared by the Court with a  projected discovery period of 90 days.

13.     The Court,

14.     In the Case Management Motion, Akouete identified 3 issues that require discovery:

a.     Whether Movant's claim is based on services rendered as an officer.

b.      The authority of Blaustein to act on behalf of the LLC.

c.     Allegations of self-dealing by Movant.

15.     To the extent this Subpoena also deals with Akouete's motion to compel the production of documents from another Subpoena target, Goulston & Storrs PC (ECF No. 437), the information requested in the Subpoena is the same information that supposedly should be in the possession of  Goulston & Storrs PC as implied in a November 30, 2024 email from Akouete to B&B.

16.     The Subpoena requests to B&B also go well beyond  the scope of the discovery relevant to the issues before the Court as more fully set out below in response to the individual requests.

17.     Notwithstanding all of its objections and fact that B&B is under no obligation to respond to the Subpoena given that it is deficient under Rule 45 as  detailed above and in response to each Request below and was issued pursuant to Bankruptcy Rule 2004 without leave of Court, B&B will produce documents in response to the Subpoena to the extent those documents are in its possession (given that B&B severed its relationship with the Debtor in 2009, 15 years ago), those documents relate to the Debtor and fall within the scope of the contested matter they relate to, and those documents are not subject to a privilege.

18.     The Debtor, on December 4, 2024, filed a motion to compel against B&B (Docket No. 449). To the extent this response and the subsequent production from B&B does not resolve the discovery dispute between B&B and Akouete, B&B reserves the right to file a further motion to quash and in response to the motion to compel and to otherwise respond to the motion to compel.

19.     These Objections should not be construed as: (i) an admission as to the propriety of any of the Requests; (ii) an acknowledgment that documents responsive to the Requests exist; (iii) a concession as to the admissibility into evidence of any document or information; or (iv) an agreement that requests for similar documents or information will be treated in a similar manner.

78971115;2

## Responses to Requests

1.      Corporate bylaws, operating agreements, or governance documents for both Babcock & Brown Administrative Services, Inc. and Babcock and Brown Parallel Member LLC, outlining the procedures for appointing, removing, or replacing officers, including the President.

**RESPONSE: The General Objections outlined above are incorporated herein. B&B further objects to this request to the extent it requires B&B to engage in legal analysis as to the purpose or legal effect of documents in its possession in order to provide documents outlining procedures for appointing or removing its officers. B&B also objects to this request to the extent it requires B&B to provide internal documents regarding its own affairs or personnel. B&B objects to the entire request as beyond the scope of Fed. R. of Civ. P. 45 and as unduly burdensome/expensive and beyond the scope of the underlying contested matter given that B&B terminated the relationship with the Debtor in 2009, 15 years ago.** *See Holloman v. Clarke*, **320 F.R.D. 102, 103 (D. Mass. 2017) (third-party subpoena issued "pursuant to Fed. R. Civ. P. 45, is subject to the 'relevance' requirement of Fed. R. Civ. P. 26(b)(1)");** *Enargy Power (Shenzhen) Co. Ltd. v. Xiaolong Wang*, **No. 13-11348-DJC, 2014 WL 4687784, at \*2 (D. Mass. Sept. 17, 2014) ("Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)") (citation omitted);** *E.E.O.C. v. Texas Roadhouse, Inc.*, **303 F.R.D. 1, 2 (D. Mass. 2014) ("subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement").**

**Further this request is also beyond the scope of Bankruptcy Rule 2004, which limits the scope of 2004 examinations to the affairs of the Debtor. Courts do not permit Rule 2004 to be used to provide parties carte blanche to pry into the business affairs of a non-debtor, like** *B&B*. **See, e.g.,** *Deloitte & Touche v. Hassett (In re CIS Corp.)*, **123 B.R. 488, 490 (S.D.N.Y. 1991) (Rule 2004 examination of non-debtor found to "exceed[ ] the permissible scope of discovery under Rule 2004 by requiring [non-debtor] … to produce proprietary documents which do not 'relate only … to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate' ") (quoting Fed. R. Bankr. P. 2004(b)).**

**No documents regarding B&B, its operations, its governing documents,  its affiliates, or past or present employees will be produced.**

2.      Any resolutions, consents, or meeting minutes of Babcock & Brown Administrative Services, Inc. or Babcock and Brown Parallel Member LLC addressing F. Jan Blaustein's status or actions to remove or replace her as President.

**RESPONSE: The General Objections outlined above are incorporated herein. B&B objects to this request to the extent it requires B&B to provide internal documents regarding its own affairs or personnel. B&B objects to the entire request as beyond the scope of Fed. R. of Civ. P. 45 and as unduly burdensome/expensive and beyond the scope of the underlying contested matter, given that B&B terminated the relationship with the Debtor in 2009, 15 years ago. *See Holloman v. Clarke*, 320 F.R.D. 102, 103 (D. Mass. 2017) (third-party subpoena issued "pursuant to Fed. R. Civ. P. 45, is subject to the 'relevance' requirement of Fed. R. Civ. P. 26(b)(1)"); *Enargy Power (Shenzhen) Co. Ltd. v. Xiaolong Wang*, No. 13-11348-DJC, 2014 WL 4687784, at \*2 (D. Mass. Sept. 17, 2014) ("Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)") (citation omitted); *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) ("subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement").**

**Further this request is also beyond the scope of B&B of Rule 2004, which limits the scope of 2004 examinations to the affairs of the Debtor. Courts do not permit Rule 2004 to be used to provide parties carte blanche to pry into the business affairs of a non-debtor, like B&B. *See, e.g., Deloitte & Touche v. Hassett (In re CIS Corp.)*, 123 B.R. 488, 490 (S.D.N.Y. 1991) (Rule 2004 examination of non-debtor found to "exceed[ ] the permissible scope of discovery under Rule 2004 by requiring [non-debtor] ... to produce proprietary documents which do not 'relate only ... to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate' ") (quoting Fed. R. Bankr. P. 2004(b)).**

**No documents regarding B&B, its operations, its governing documents, its affiliates, or past or present employees will be produced. Further Ms. Blaustein was terminated on October 1, 2007 and B&B's document retention policy only extends to 7 years.**

3.    Notices or communications sent to F. Jan Blaustein regarding any alleged change

in her authority or role.

**RESPONSE: The General Objections outlined above are incorporated herein. B&B objects to this request to the extent it requires B&B to provide internal documents regarding its own affairs, internal communications, or personnel.**

**B&B objects to the entire request as beyond the scope of Fed. R. of Civ. P. 45 and as unduly burdensome/expensive and beyond the scope of the underlying contested matter, given that B&B terminated the relationship with the Debtor in 2009, 15 years ago. *See Holloman v. Clarke*, 320 F.R.D. 102, 103 (D. Mass. 2017) (third-party subpoena issued "pursuant to Fed. R. Civ. P. 45, is subject to the 'relevance' requirement of Fed. R. Civ. P. 26(b)(1)"); *Enargy Power (Shenzhen) Co. Ltd. v. Xiaolong Wang*, No. 13-11348-DJC, 2014 WL 4687784, at \*2 (D. Mass. Sept. 17, 2014) ("Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)") (citation omitted); *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) ("subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement").**

78971115;2

**Further this request is also beyond the scope of B&B of Rule 2004, which limits the scope of 2004 examinations to the affairs of the Debtor. Courts do not permit Rule 2004 to be used to provide parties carte blanche to pry into the business affairs of a non-debtor, like B&B.** *See, e.g., Deloitte & Touche v. Hassett (In re CIS Corp.)***, 123 B.R. 488, 490 (S.D.N.Y. 1991) (Rule 2004 examination of non-debtor found to "exceed[ ] the permissible scope of discovery under Rule 2004 by requiring [non-debtor] … to produce proprietary documents which do not 'relate only … to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate' ") (quoting Fed. R. Bankr. P. 2004(b)).**

**Finally  Ms. Blaustein was terminated on October 1, 2007 and B&B's document retention policy only extends to 7 years. No documents regarding B&B, its operations, its governing documents,  its affiliates, or past or present employees will be produced**

4.      Documents, agreements, or policies that establish or define compensation for the

Manager of Westborough SPE LLC, including but not limited to the Operating Agreement and any

amendments.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same.**

5.      Documents showing historical compensation paid to Babcock & Brown

Administrative Services, Inc., Babcock and Brown Parallel Member LLC, or any other entity

acting as Manager of Westborough SPE LLC.

**RESPONSE: The General Objections outlined above are incorporated herein. B&B objects to this request to the extent it requires B&B to provide internal documents regarding its own affairs.**

**Further this request is also beyond the scope of B&B of Rule 2004, which limits the scope of 2004 examinations to the affairs of the Debtor. Courts do not permit Rule 2004 to be used to provide parties carte blanche to pry into the business affairs of a non-debtor, like B&B.** *See, e.g., Deloitte & Touche v. Hassett (In re CIS Corp.)***, 123 B.R. 488, 490 (S.D.N.Y. 1991) (Rule 2004 examination of non-debtor found to "exceed[ ] the permissible scope of discovery under Rule 2004 by requiring [non-debtor] … to produce proprietary documents which do not 'relate only … to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate' ") (quoting Fed. R. Bankr. P. 2004(b)).**

**No documents regarding B&B, its operations, its governing documents, its affiliates, or past or present employees will be produced.**

6.      Any statutory or regulatory guidelines referenced in determining Manager

compensation or reimbursement for services provided to Westborough SPE LLC.

**RESPONSE: The General Objections outlined above are incorporated herein. B&B objects to this request as vague, ambiguous, overbroad, fails to state in a clear and understandable manner the information requested, and requires B&B to engage in legal analysis of what a "statutory or regulatory guideline" is. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same.**

7.      Documents showing compensation arrangements for Managers of other similar

entities within the Babcock & Brown corporate group.

**RESPONSE: The General Objections outlined above are incorporated herein. B&B objects to this request to the extent it requires B&B to provide internal documents regarding its own affairs or those of other customers. B&B objects to this request as vague, ambiguous, overbroad, and fails to state in a clear and understandable manner the information requested.**

**B&B objects to the entire request as beyond the scope of Fed. R. of Civ. P.  45 and as unduly burdensome/expensive and beyond the scope of the underlying contested matter, given that B&B terminated the relationship with the Debtor in 2009, 15 years ago. *See Holloman v. Clarke*, 320 F.R.D. 102, 103 (D. Mass. 2017) (third-party subpoena issued "pursuant to Fed. R. Civ. P. 45, is subject to the 'relevance' requirement of Fed. R. Civ. P. 26(b)(1)"); *Enargy Power (Shenzhen) Co. Ltd. v. Xiaolong Wang*, No. 13-11348-DJC, 2014 WL 4687784, at \*2 (D. Mass. Sept. 17, 2014) ("Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)") (citation omitted); *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) ("subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement").**

**Further this request is also beyond the scope of B&B of Rule 2004, which limits the scope of 2004 examinations to the affairs of the Debtor. Courts do not permit Rule 2004 to be used to provide parties carte blanche to pry into the business affairs of a non-debtor, like B&B. *See, e.g., Deloitte & Touche v. Hassett (In re CIS Corp.)*, 123 B.R. 488, 490 (S.D.N.Y. 1991) (Rule 2004 examination of non-debtor found to "exceed[ ] the permissible scope of discovery under Rule 2004 by requiring [non-debtor] … to produce proprietary documents which do not 'relate only … to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate' ") (quoting Fed. R. Bankr. P. 2004(b)).**

78971115;2

**No documents regarding B&B, its operations, its governing documents, its affiliates, its customers other than the Debtor, or past or present employees will be produced.**

8.      Any industry standards or comparative data used to justify Manager compensation

or fee percentages for similar roles.

**RESPONSE: The General Objections outlined above are incorporated herein. B&B objects to this request as vague, ambiguous, overbroad, and fails to state in a clear and understandable manner the information requested.**

**B&B objects to the entire request as beyond the scope of Fed. R. of Civ. P. 45 and as unduly burdensome/expensive and beyond the scope of the underlying contested matter, given that B&B terminated the relationship with the Debtor in 2009, 15 years ago. *See Holloman v. Clarke*, 320 F.R.D. 102, 103 (D. Mass. 2017) (third-party subpoena issued "pursuant to Fed. R. Civ. P. 45, is subject to the 'relevance' requirement of Fed. R. Civ. P. 26(b)(1)"); *Enargy Power (Shenzhen) Co. Ltd. v. Xiaolong Wang*, No. 13-11348-DJC, 2014 WL 4687784, at *2 (D. Mass. Sept. 17, 2014) ("Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)") (citation omitted); *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) ("subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement").**

**Further this request is also beyond the scope of B&B of Rule 2004, which limits the scope of 2004 examinations to the affairs of the Debtor. Courts do not permit Rule 2004 to be used to provide parties carte blanche to pry into the business affairs of a non-debtor, like B&B. *See, e.g., Deloitte & Touche v. Hassett (In re CIS Corp.)*, 123 B.R. 488, 490 (S.D.N.Y. 1991) (Rule 2004 examination of non-debtor found to "exceed[ ] the permissible scope of discovery under Rule 2004 by requiring [non-debtor] … to produce proprietary documents which do not 'relate only … to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate' ") (quoting Fed. R. Bankr. P. 2004(b)).**

**No documents regarding B&B, its operations, its governing documents, its affiliates, its customers other than the Debtor, fees charged to other clients, or past or present employees will be produced.**

9.      Contracts, agreements, or resolutions that specify compensation for Babcock &

Brown Administrative Services, Inc. or Babcock and Brown Parallel Member LLC during their

tenure as Manager of Westborough SPE LLC.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will**

78971115;2

**produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same.**

10.    The management agreement or other binding documents outlining the Manager's

responsibilities and compensation structure.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same.**

11.    All books and accounting records of Westborough SPE LLC, including ledgers,

transaction records, and reconciliations, from its formation to the present.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same.**

12.    A current and historical list of all members and managers of Westborough SPE

LLC, including their names and addresses, along with any amendments to this list.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent such a list exists, it will be produced after counsel has had a meaningful opportunity to review same. B&B will not create a list if not already in its books and records.**

13.    A complete copy of the original signed Operating Agreement of Westborough SPE

LLC, along with all amendments or revisions.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same.**

78971115;2

14.    The Certificate of Formation for Westborough SPE LLC and all related amendments.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same.**

15.    Copies of all executed powers of attorney related to Westborough SPE LLC.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same.**

16.    Statements for all bank accounts maintained in the name of Westborough SPE LLC, including documentation of all withdrawals, deposits, and transactions.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same. B&B will not seek the production of documents from third party banking institutions and will only produce what it has in its possession, if anything.**

17.    Annual financial statements for the past five years, or longer if available.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same. B&B will not seek the production of documents from third party banking institutions and will only produce what it has in its possession, if anything.**

78971115;2

18.    Copies of all federal, state, and local **tax returns** filed by Westborough SPE LLC

for the past five years.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same. B&B will not seek the production of documents from third party accountants or other third parties, and will only produce what it has in its possession, if anything.**

19.    Deeds, leases, mortgage documents, and appraisal reports for any properties owned

by Westborough SPE LLC, including the property at 231 Turnpike Road, Westborough, MA.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same. B&B will not seek the production of documents from third parties, and will only produce what it has in its possession, if anything.**

20.    Records of any improvements, expenses, or transactions associated with the

properties owned by Westborough SPE LLC.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same. B&B will not seek the production of documents from third parties, and will only produce what it has in its possession, if anything.**

21.    Copies of all contracts, leases, loan agreements, and other binding agreements

executed on behalf of Westborough SPE LLC.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent**

**B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same. B&B will not seek the production of documents from third parties, and will only produce what it has in its possession, if anything.**

22.    Minutes of meetings and written consents or resolutions adopted by the members

or the manager of Westborough SPE LLC.

**RESPONSE: The General Objections outlined above are incorporated herein. Notwithstanding its objections and B&B's document retention policy of 7 years, to the extent B&B has documents relevant to the affairs, finances, and operations of the Debtor, B&B will produce those documents which are not subject to a privilege in response to this request after counsel has had a meaningful opportunity to review same. B&B will not seek the production of documents from third parties, and will only produce what it has in its possession, if anything.**

Dated: December 11, 2024                    Respectfully submitted,


                                            /s/ Mark S. Lichtenstein
                                            Samual A. Miller, Esq.
                                            Massachusetts Bar No. 648568
                                            E-mail: samual.miller@akerman.com
                                            Secondary E-mail:
                                            sharlene.harrison-carera@akerman.com
                                            **AKERMAN LLP**
                                            420 South Orange Avenue
                                            Suite 1200
                                            Orlando, FL 32801
                                            Phone: (407) 423-4000
                                            Fax: (407) 843-6610

                                            *-and-*

                                            Mark S. Lichtenstein
                                            1251 Avenue of the Americas, 37th Flr.
                                            New York, New York 10020
                                            Tel. No. (212) 880-3800
                                            E-mail: mark.lichtenstein@akerman.com
                                            (*Pro Hac Vice* motion to be filed)

                                            *Counsel for Walter A. Horst and B&B*



**Brian K. Lee**                    Exhibit 2
Direct Line:  (617) 439-2490
Fax:  (617) 310-9490
E-mail:  blee@nutter.com

December 9, 2024
126214-1

*Via Email*

Lolonyon Akouete
800 Red Milles Rd
Wallkill, NY 12589
info@smartinvestorsllc.com

   Re: Peter Blaustein Subpoena

Dear Mr. Akouete:

   This firm represents Peter Blaustein in relation to the Subpoena to Produce Documents, Information, or Objects in a Bankruptcy Case ("Subpoena") that you emailed to him on December 2, 2024. The Subpoena is not valid for a whole host of reasons. The Subpoena was not properly served on Mr. Blaustein, as service by email is not a proper form of service under Fed. R. Civ. P. 45. Additionally, the Subpoena improperly calls for Mr. Blaustein to produce documents to you in New York, which due to Mr. Blaustein's location in California, is well beyond the 100-mile limitation stated in Fed. R. Civ. P. 45(c)(2)(A). It also does not appear that you ever requested nor received permission from the Bankruptcy Court judge to serve this subpoena on Mr. Blaustein. Nor does it appear that you provided advance written notice to the other parties of the Subpoena as required by Fed. R. Civ. P. 45(a)(4). For those reasons, Mr. Blaustein has no obligation to respond to the Subpoena.

   Additionally, it appears that you have attempted to force Mr. Blaustein's compliance with the Subpoena by claiming, incorrectly, that there is a court hearing scheduled on December 17, 2024 at 2:00 p.m. regarding his compliance with the Subpoena. But the case docket reflects that no such hearing is scheduled relating to the Subpoena. In fact, it would be quite unusual for the Court to schedule a hearing regarding Mr. Blaustein's compliance with the Subpoena in advance of the Subpoena's stated deadline for compliance. In reality, the docket reflects that the December 17, 2024 hearing is scheduled for the purpose of addressing your "Motion for Assistance" relating to the subpoena you served on Goulston & Storrs on August 20, 2024 (three-and-a-half months ago), and other unrelated issues. For that reason, it appears that you are attempting to wrongfully pressure Mr. Blaustein to immediately comply with your invalid Subpoena based on misrepresentations about the Bankruptcy Court proceedings. If, however, you have some basis for your claim that the December 17, 2024 hearing is for the purpose of addressing Mr. Blaustein's compliance with the Subpoena, please disclose that basis to me as soon as possible.

   Even if the Subpoena were valid, it only provides Mr. Blaustein, for no apparent reason, with just seven days to produce the requested documents. The Subpoena seeks information on



Lolonyon Akouete
December 9, 2024
Page 2

topics that have been well-known to you for years. Additionally, the case docket reflects that the Bankruptcy Court only recently established a discovery period, providing you with at least 90 days to pursue your requested discovery. In addition to the Subpoena being invalid, Mr. Blaustein therefore objects to the Subpoena's December 9, 2024, compliance date on the grounds it does not provide Mr. Blaustein with a reasonable period of time to produce documents and imposes an undue burden on a third-party. Exhibit A to the Subpoena also contains requests that are overly broad, unduly burdensome, vague, irrelevant, disproportional to the needs of the case, and seeks confidential documents and documents protected by the attorney-client privilege.

For those reasons, Mr. Blaustein has no obligation to respond to the Subpoena, much less by the December 9 at 10:00 a.m. deadline you identify in the Subpoena. Upon my client's receipt of a properly served and valid subpoena, providing him with a reasonable period for compliance to a reasonably-tailored category of documents, Mr. Blaustein will provide you with a substantive response (including objections) to any documents requested by that subpoena. In the meantime, Mr. Blaustein's objections are reserved.

Very truly yours,

Brian K. Lee

6998994.1

**Exhibit 3**



**Lolonyon Akouete <info@smartinvestorsllc.com>**

---

## Subpoena Notification
2 messages

---

**Lolonyon Akouete** <info@smartinvestorsllc.com>            Mon, Dec 2, 2024 at 8:41 PM
To: "Nakhwal, Harpreet" <hnakhwal@sco.ca.gov>

Dear Harpreet,

I hope this message finds you well. Please find the attached subpoena for your review. If you have any objections or concerns, kindly let me know at your earliest convenience so that I may seek court assistance if necessary.

Thank you for your prompt attention to this matter.

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

 **Harpreet K. Nakhwal Form 2570 – Subpoena to Produce Documents.pdf**
892K

---

**Nakhwal, Harpreet** <HNakhwal@sco.ca.gov>           Wed, Dec 4, 2024 at 2:40 PM
To: Lolonyon Akouete <info@smartinvestorsllc.com>

Dear Mr. Akoute,


The State Controller's Office does not accept electronic service, so you will need to personally serve the State Controller's Office.  Additionally, please be aware that the State Controller's Office is seeking representation from the Attorney General's Office, so you may need to also serve them.



**Harpreet K. Nakhwal** | Staff Counsel

**Office of State Controller Malia M. Cohen**

300 Capitol Mall, Suite 1850

Sacramento, CA 95814 | 916-322-6430



CONFIDENTIALITY NOTICE: This communication and its contents is from an attorney and may contain

confidential and legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act (18 U.S.C. §§2510-22, 2701-11, 3121-26). If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

---

**From:** Lolonyon Akouete <info@smartinvestorsllc.com>
**Sent:** Monday, December 2, 2024 5:42 PM
**To:** Nakhwal, Harpreet <HNakhwal@sco.ca.gov>
**Subject:** Subpoena Notification

> **CAUTION:**
>
> This email originated from outside of the organization Email System.
>
> Do not click links or open attachments unless you recognize the sender's email address and know the content is safe.

[Quoted text hidden]

<span style="color:red">Exhibit 4</span>

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **In re:**<br><br>**WESTBOROUGH SPE LLC,**<br><br>    **Debtor.** | **Chapter 7**<br>**Case No. 23-40709-CJP** |
| **Lolonyon Akouete, Claimant**<br><br>**v.**<br><br>**Jonathan R. Goldsmith, Chapter 7 Trustee**<br>**of Westborough SPE LLC, Trustee** | **Contested Matter**<br><br>**Chapter 7**<br>**Case No. 23-**<br>**40709-CJP** |

## LOLONYON AKOUETE'S RESPONSES TO TRUSTEE'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33 and Bankruptcy Rule 7033, I, Lolonyon Akouete, provide the following responses to the Trustee's Interrogatories. Each response is based on my current knowledge, understanding, and available information. I reserve the right to supplement or amend these responses as additional information becomes available.

---

**INTERROGATORY 1:**
Please state the basis for the Claim, including how you determined the amount of the Claim asserted.

**RESPONSE:**
The basis for my Claim is rooted in my role as manager of the Debtor and the essential services I provided in recovering significant assets belonging to the Debtor. As manager, I was responsible for identifying, recovering, and preserving the Debtor's assets, which directly benefited the estate and its creditors. The asset recovery fee and management fee are inherently connected, as the responsibility to recover assets is a fundamental duty of the manager to safeguard and enhance the entity's value.

The total amount of my Claim is **$3,146,823.50**, which is composed of the following:

1. **$646,823.50** for the recovery of the California unclaimed funds in the amount of **$1,293,646.83**, reflecting a 50% fee for my work in identifying, verifying, and recovering these funds on behalf of the Debtor. This work required substantial effort, extensive

communication with the California State Controller's Office, and proper documentation to ensure compliance with state requirements.

2. **$2,500,000.00** for the recovery of the Debtor's real property located at 231 Turnpike Road, Westborough, Massachusetts, which is valued at **$5,000,000.00**. My efforts were essential in protecting the property from being undervalued or lost, ensuring that its full value is preserved for the estate and its creditors.

In addition, I am asserting a claim for an asset recovery fee of **50% of any funds recovered** in connection with the breach of fiduciary duty claim against the previous manager. However, I will defer collection of this fee until the bankruptcy estate is closed, at which time the funds will be returned to me as manager for proper distribution to the members of the Debtor. This ensures that all recoveries are handled in accordance with the Debtor's governance structure and equitable distribution principles.

These fees are calculated based on 50% of the value of the assets recovered, which reflects industry standards and the significant managerial and recovery efforts required to secure these outcomes. My actions directly increased the value of the estate and ensured that these assets were preserved and made available to benefit creditors and stakeholders.

---

**INTERROGATORY 2:**
Please state the basis for your contention that You are entitled to a "finder's fee" or "asset recovery fee" or similar fee with respect to the California Funds, including how you determined that portion of the Claim related to the California Funds.

**RESPONSE:**
I am entitled to a finder's fee or asset recovery fee with respect to the California Funds based on my role as manager of the Debtor, which granted me the authority and responsibility to recover the Debtor's assets. Section 1(e) of the Westborough SPE LLC Operating Agreement states that the "overall management and control of the business and affairs of the Company, and the sole and exclusive authority to make all decisions and take all actions as to the business and affairs of the Company, shall be vested in the Manager." Section 1(g) further authorizes the Manager to delegate its powers or duties to others in writing to perform necessary functions on behalf of the Company. As manager, I undertook numerous actions to recover unclaimed funds held by the California State Controller's Office.

Specifically, my efforts to recover the funds included:

1. **Identifying and verifying the unclaimed funds** amounting to $1,293,646.83.
2. **Submitting the necessary documentation** to the California State Controller's Office to ensure compliance with state requirements.
3. **Filing a motion to request court assistance** in recovering the funds, recognizing the potential complexities and competing claims.
4. **Following up rigorously with the State Controller** to ensure no competing claims or fraudulent attempts jeopardized the recovery of the funds.
5. **Navigating challenges posed by international asset recovery**, including delays in processing, conflicting legal interpretations, and additional requirements for verifying the Debtor's ownership of the funds.

6.  **Managing and coordinating communications with third-party stakeholders**, including legal counsel, creditors, and regulatory authorities, to align on the recovery strategy.
7.  **Addressing resistance from competing claimants**, requiring persistence to prove the Debtor's legitimate right to the funds and counter attempts to claim the funds illegitimately.

The portion of the Claim related to the California Funds is $646,823.50, representing 50% of the recovered amount. This fee reflects the significant effort, time, and expertise required to recover these assets and is consistent with the duties outlined in the Operating Agreement and industry standards for asset recovery and management services.

Challenges encountered during the recovery process underscore the value of the services provided. These include:

*   **Complex regulatory requirements** for filing claims and proving ownership of unclaimed funds.
*   **Administrative delays** in processing claims due to incomplete or conflicting state records.
*   **Legal hurdles and competing claims** requiring ongoing vigilance and advocacy to prevent unauthorized access to the funds.
*   **Coordinating with multiple jurisdictions** (including California, Delaware, Massachusetts and British Virgin Island) to validate the Debtor's claim to the funds amidst questions of authority and entity status.
*   **Lack of transparency and communication** from international agents, creating additional hurdles to obtain critical documents and cooperation.

This recovery directly benefited the bankruptcy estate, preserving and increasing its value for the benefit of creditors and stakeholders.

---

**INTERROGATORY 3:**
Please state the basis for your belief or contention that You complied with California law with respect to Your efforts to recover the California Funds, including, specifically, compliance with California Code of Civil Procedure Section 1582(a)(2)(C).

**RESPONSE:**
I complied with California law, including California Code of Civil Procedure Section 1582(a)(2)(C), in my efforts to recover the California Funds. My actions were informed by my extensive experience recovering property for other clients and my familiarity with the California Unclaimed Property Law, related regulations, and the State of California Unclaimed Property Investigator Handbook. I followed all applicable procedures for unclaimed property recovery, including proper documentation, communication with the California State Controller's Office, and adherence to state guidelines during the administrative recovery process.

It is important to note that the statutory 10% limit on compensation under Section 1582(a)(2)(C) applies specifically to administrative claims. In this case, my efforts involved substantial work beyond the standard administrative process. If a claim escalates to a non-administrative process, including litigation or more complex recovery scenarios, the statutory fee limitation no longer applies. For example, in multiple cases filed in San Francisco Superior Court, investigators charged

3

17%, 20%, and even 37% for unclaimed property recoveries that required actions outside the administrative framework, such as litigation.

Given the complexity and extent of my efforts in recovering the funds for the Debtor, including adherence to all applicable procedural requirements and engaging in actions beyond routine administrative tasks, my actions are consistent with California law. The statutory limitation under Section 1582(a)(2)(C) does not apply to the circumstances of this recovery.

---

**INTERROGATORY 4:**

Please state the basis for your belief or contention that You are the manager of the Debtor, including details regarding how you believe you became the manager and on what date.

**RESPONSE:**

I believe I am the manager of the Debtor, Westborough SPE LLC, based on the following facts and provisions of the Operating Agreement:

1. **Designation of Manager:**
   Section 1(d) of the Operating Agreement explicitly designates Babcock & Brown Administrative Services, Inc. ("BBAS") as the Manager of the Debtor. Any changes to this designation require "Consent of the Members." The section states:

   "One or more Managers may be designated and the number of Managers may be determined at any time by 'Consent of the Members'; provided, however, that any such Consent providing for the Company to have more than one Manager shall only be made by amendment of this Agreement."
   Additionally, it specifies:
   "A Manager may be removed by Consent of the Members at any time and for any reason or for no reason."

2. **Definition of "Consent of the Members":**
   "Consent of the Members" is defined in Section 1(e) as:

   "Action of the holders of more than two-thirds of the Percentage Interests of all the Members."

3. **Prohibition Against Managerial Changes Without Member Consent:**
   Section 1(d) prohibits any unauthorized changes to the Manager, ensuring that only the Members may approve such actions. No record exists showing that Mignonette Investments Limited, the sole member, consented to any changes to the Manager, including mergers, name changes, or resignations by BBAS.

4. **My Appointment as Manager:**
   On November 21, 2022, I entered into a written agreement with Frances Jan Blaustein Scholes, President of BBAS, to recover the Debtor's assets. Upon discovering the Operating Agreement, the agreement was amended to a "Transfer of Manager Role," formally transferring managerial authority to me.

5. **Invalid Managerial Alterations:**
   Subsequent changes to BBAS, including its merger with Babcock & Brown Parallel Member

4

LLC in 2011 and the latter's voluntary dissolution in 2019, were not approved by Mignonette Investments Limited. These changes, therefore, violate the Operating Agreement and are invalid. BBAS, as originally constituted, remains the valid Manager, and the managerial role was lawfully transferred to me in accordance with Section 1(g), which permits the delegation of managerial authority.

6. **Prohibition Against Unauthorized Resignation or Withdrawal:**
   Section 1(e) further states:

   "No Manager may resign or retire from, abandon or otherwise terminate its status as a Manager without the Consent of the Members."
   Any attempts by BBAS or its representatives to unilaterally withdraw from their managerial role are void due to the lack of Member consent.

7. **Delegation of Managerial Authority:**
   Section 1(g) allows the Manager to delegate its powers to any individual or entity through a written instrument. The "Transfer of Manager Role" executed on November 21, 2022, fulfills this requirement, transferring managerial authority to me.

Based on these provisions and my lawful appointment, I believe I am the Manager of Westborough SPE LLC as of November 21, 2022. My actions since that date, including asset recovery and the protection of the Debtor's property, have been carried out in accordance with the terms of the Operating Agreement.

---

**INTERROGATORY 5:**
To the extent that you believe or contend that you are or have ever been authorized or engaged by the Debtor, please state the basis for your belief or contention, including details as to how you believe you came to serve in such capacity and the timeframe.

**RESPONSE:**
I contend that I have been authorized and engaged by the Debtor, Westborough SPE LLC, in the capacity of Manager based on the following:

1. **Transfer of Managerial Authority:**
   On November 21, 2022, I entered into an agreement with Frances Jan Blaustein Scholes, acting as President of Babcock & Brown Administrative Services, Inc. ("BBAS"), to recover the Debtor's assets. This agreement was later amended to a "Transfer of Manager Role," formally transferring managerial authority to me in accordance with Section 1(g) of the Operating Agreement, which allows the Manager to delegate its powers through a written instrument.

2. **Continuity of Management:**
   Subsequent mergers and changes involving BBAS, including its merger with Babcock & Brown Parallel Member LLC in 2011 and the latter's dissolution in 2019, lacked the consent of Mignonette Investments Limited, the sole member of the Debtor. As a result, these changes are invalid under Section 1(d) of the Operating Agreement, which requires "Consent of the Members" for any change to the Manager. BBAS, as originally constituted, remained the valid Manager and had the authority to transfer managerial powers to me.

3.  **Timeframe:**
    I have served as Manager of the Debtor since November 21, 2022, and have acted in this
    capacity to recover and protect the Debtor's assets and fulfill the responsibilities outlined in
    the Operating Agreement.

This transfer and my subsequent actions as Manager are consistent with the provisions of the
Operating Agreement and necessary to preserve and enhance the Debtor's assets.

---

**INTERROGATORY 6:**

Please identify every Prepetition Debtor Advisor with whom You consulted to serve as a
representative of the Debtor during the Relevant Time Period.

**RESPONSE:**

I consulted with the following advisors:

- **Matthew A. Morris, LL.M., Esq. Sherin and Lodgen LLP**
- **Scott A. Schlager. Nathanson & Goldberg, P.C**

---

**INTERROGATORY 7:**

Identify and describe all communications between you and each Prepetition Debtor Advisor
regarding the following topics:
(a) Your purported appointment as manager of the Debtor.
(b) Your authority or lack of authority to act on behalf of the Debtor.
(c) Ms. Jan Blaustein Scholes' authority to act on behalf of the Debtor.
(d) The Operating Agreement.
(e) The Bill of Sale dated November 22, 2022.
(f) The Durable Power of Attorney dated June 26, 2023.

**RESPONSE:**

Subject to and without waiving any applicable privileges, including attorney-client privilege and the
work product doctrine, I submit the following response: This response identifies communications
between Lolonyon Akouete, acting on behalf of Westborough SPE LLC, and Prepetition Debtor
Advisors Matthew A. Morris of Sherin and Lodgen LLP and Scott A. Schlager of Nathanson &
Goldberg, P.C., pertaining to the specified topics.

**(a) Your purported appointment as manager of the Debtor**

**Matthew A. Morris**

1.  **December 13, 2022**: Akouete provides Morris with information regarding Westborough SPE
    LLC, including contact details, ownership history, and prior filings, discussing his role in
    managing the entity.
2.  **December 16, 2022**: Morris requests detailed responses from Akouete regarding the service
    address and registration filings for Westborough SPE LLC, implying discussions about
    Akouete's appointment as manager.

6

3. **December 27, 2022**: Morris emphasizes the importance of clarifying ownership and managerial authority for the Motion to Vacate.

### Scott A. Schlager

1. **February 21, 2023**: Schlager discusses Akouete's authority as the manager of Westborough SPE LLC in relation to the Motion to Vacate.
2. **April 18, 2023**: Schlager provides evidence of Akouete's managerial authority through a Certificate of Good Standing filed with the Massachusetts Secretary of State.
3. **August 18, 2023**: Schlager asserts Akouete's authority as manager, referencing IRS refund checks issued in the LLC's name as additional proof.

### (b) Your authority or lack of authority to act on behalf of the Debtor

### Matthew A. Morris

1. **December 14, 2022**: Morris requests documentation verifying Akouete's legal interest in Westborough SPE LLC and authority to act on its behalf.
2. **December 19, 2022**: Morris discusses the legal implications of Akouete acting on behalf of the LLC, including potential conflicts with other parties' claims.
3. **December 27, 2022**: Morris explains that understanding Akouete's authority is essential for the success of the Motion to Vacate.

### Scott A. Schlager

1. **March 21, 2023**: Schlager challenges the Town of Westborough's position that Akouete lacks authority and outlines the legal and fiduciary basis for Akouete's actions.
2. **June 30, 2023**: Schlager files documents with the Land Court asserting Akouete's authority as manager based on the Operating Agreement and a Durable Power of Attorney.
3. **August 21, 2023**: Schlager requests specific objections from the Town, directly addressing their challenge to Akouete's authority.

### (c) Ms. Jan Blaustein Scholes' authority to act on behalf of the Debtor

### Matthew A. Morris

1. **December 19, 2022**: Morris investigates Jan's role as a conservator and her potential authority to act on behalf of the LLC.
2. **December 20, 2022**: Morris discusses inconsistencies in Jan's authority and emphasizes the need for documentation clarifying her role.

### Scott A. Schlager

1. **March 23, 2023**: Schlager addresses claims about Jan Blaustein Scholes' authority in correspondence with Iris Leahy and submits documentation challenging these claims.
2. **June 30, 2023**: Schlager disputes allegations of undue influence over Jan and files a Notice of Supplementation to the Land Court on this issue.
3. **August 23, 2023**: Schlager raises concerns about the Town's reliance on Jan's alleged authority while disputing the connection between her actions and the LLC's management.

7

## (d) The Operating Agreement

**Matthew A. Morris**

1. **December 15, 2022**: Morris discusses the implications of the Operating Agreement in transferring authority within the LLC.
2. **December 28, 2022**: Morris requests additional details regarding the Operating Agreement to clarify Akouete's role as manager.

**Scott A. Schlager**

1. **April 18, 2023**: Schlager references the Operating Agreement as evidence of Akouete's authority in court filings.
2. **June 30, 2023**: Schlager files portions of the Operating Agreement with the Land Court to refute the Town's objections.
3. **August 18, 2023**: Schlager asserts that the Operating Agreement validates managerial decisions made by Akouete and Denise Edwards on behalf of the LLC.

## (e) The Bill of Sale dated November 22, 2022

**Matthew A. Morris**

1. **December 26, 2022**: Morris discusses the invalidity of the Bill of Sale due to Jan Blaustein Scholes' incapacitation.
2. **December 30, 2022**: Morris advises against publicly disclosing the Bill of Sale to avoid legal complications.

**Scott A. Schlager**

1. **April 18, 2023**: Schlager addresses the alleged Bill of Sale in correspondence with Iris Leahy, asserting its irrelevance to current proceedings.
2. **April 25, 2023**: Schlager emphasizes that any transfer under the Bill of Sale is void due to legal defects and lack of authority.

## (f) The Durable Power of Attorney dated June 26, 2023

**Scott A. Schlager**

1. **June 30, 2023**: Schlager submits the Durable Power of Attorney to the Land Court as part of a Notice of Supplementation, asserting its validity in confirming Akouete's authority.
2. **August 18, 2023**: Schlager cites the Durable Power of Attorney as further evidence of Akouete's legitimate managerial role in correspondence with the Town.

---

**INTERROGATORY 8 & 9:**

Identify and describe all communications between you, Ms. Jan Blaustein Scholes, and Mr. Peter Blaustein Scholes related to the Claims, the Operating Agreement, the Bill of Sale, and the Power of Attorney.

**RESPONSE:**

Subject to and without waiving any applicable privileges, including the attorney-client privilege and work product doctrine, I provide the following response:

1. **December 16, 2022, 7:35 PM:** Matthew A. Morris requested a meeting with Jan Blaustein Scholes to discuss the situation and provided availability.
2. **December 19, 2022, 8:02 PM:** Denise Edwards provided Peter Blaustein's contact information as Jan's son to Matthew A. Morris.
3. **December 19, 2022, 8:11 PM - 9:17 PM:** Discussions occurred between Lolonyon Akouete, Morris, and Edwards regarding Peter Blaustein's role as a potential conservator and efforts to contact him.
4. **December 20, 2022, 5:32 PM:** Julia Royce emailed Peter Blaustein, inquiring about his role as a conservator for Jan Blaustein Scholes, specifically regarding a Motion to Vacate Judgment related to Westborough SPE LLC's property.
5. **December 22, 2022, 10:06 PM:** Lolonyon Akouete emailed both Jan Blaustein Scholes and Peter Blaustein, outlining a strategy for recovering funds for Westborough SPE LLC. He explained previous actions, including a proposed sale of membership interest and efforts to challenge the property foreclosure.
6. **December 26, 2022, 8:37 PM:** Peter Blaustein updated Lolonyon Akouete on his progress and mentioned contacting legal counsel for further steps.
7. **March 11, 2023, 12:18 PM:** Peter Blaustein suggested contacting TMF Group for further details on Mignonette Investments, which relates to the operating structure of Westborough SPE LLC.
8. **June 12, 2023, 4:04 PM - 4:43 PM:** Email correspondence between Scott A. Schlager, Akouete, and others discussed the enforceability of the unsigned Operating Agreement, the Power of Attorney, and strategies for presenting these documents in ongoing litigation.
9. **July 4, 2023:** Peter Blaustein raised concerns about his mother Jan Blaustein Scholes' capacity to consent to the Power of Attorney and other documents, questioning their validity.
10. **June 29, 2023:** Denise Edwards sent signed documents from Jan Blaustein Scholes to Scott A. Schlager and Lolonyon Akouete, including items relevant to the claims and management structure of Westborough SPE LLC.

This response captures relevant communications as requested, focusing on discussions about the Claims, the Operating Agreement, the Bill of Sale, and the Power of Attorney.

---

**INTERROGATORY 10:**

Please identify each person that you expect to testify at the evidentiary hearing of this Contested Matter as an expert witness, and with respect to each such person:
(a) Describe their educational and professional background.
(b) Identify their publications.
(c) Identify the subject matter of their testimony.
(d) State the facts and opinions they are expected to testify about.
(e) Provide a summary of the grounds for their opinions.
(f) Identify any reports or documents supporting their testimony.

**RESPONSE:**

While I have not retained expert witnesses at this time, their anticipated testimony would align with the **ASA's**

principles of fair compensation (Section 2) and managerial discretion (Section 1). Experts may validate the appropriateness of my compensation and the value added to the estate through adherence to the **ASA** and the Operating Agreement.

---

**VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the foregoing responses, and the referenced documents, are true and correct to the best of my knowledge.

**Dated:** January 19, 2025

**Signed:** _____
          Lolonyon Akouete

---

DATED: January 19, 2025, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

<u>CERTIFICATE OF SERVICE</u>

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com



Lolonyon Y Akouete