UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

In re:                                         )         Chapter 7
                                               )         Case No. 23-40709-CJP
WESTBOROUGH SPE LLC,                           )
                                               )
                    Debtor.                    )

## CREDITOR DENISE EDWARDS'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Creditor Denise Edwards, pro se, pursuant to Federal Rule of Bankruptcy Procedure 7056 and Rule 56 of the Federal Rules of Civil Procedure, and hereby respectfully moves this Court to enter summary judgment in her favor on the Trustee's objection to her filed claim. In support of this Motion, Ms. Edwards states:

## INTRODUCTION

Ms. Edwards performed extensive asset recovery work that resulted in the revival of Westborough SPE LLC and the identification and tracing of over $1.2 million in unclaimed state property. Her work included communicating with state agencies, attorneys, and third parties, obtaining the cooperation of Jan Blaustein Scholes, and arranging the legal structure for recovery of those assets. She now seeks compensation for that work.

The Trustee's objection to her claim is predicated on the false assumption that Ms. Edwards acted without authorization and that Jan Scholes was incapacitated. The evidentiary record—including Ms. Edwards's deposition testimony—makes clear that she acted with express permission from Peter Blaustein, believed Jan was competent, and worked under the supervision of licensed notaries and attorneys.

There are no genuine issues of material fact. Ms. Edwards is entitled to summary judgment as a matter of law.

## STATEMENT OF FACTS

Pursuant to Local Rule 56.1, a separate Statement of Undisputed Material Facts has been filed herewith and incorporated by reference.

## ARGUMENT

### I. Ms. Edwards Acted with Express and Apparent Authority from Jan and Peter Blaustein

Peter Blaustein, Jan's son and purported conservator, expressly authorized Ms. Edwards to work with Jan and arranged for Jan to sign documents before a licensed notary. He later confirmed this in his own affidavit:

"I consented to the assistance and gave permission for Jan to sign Claim for Abandoned Property." (Edwards Dep. at 145:1–146:12)

Peter never objected to Ms. Edwards's work until after substantial progress had been made and funds were poised for recovery.

## II. Jan Scholes Demonstrated Capacity and Participated Voluntarily

Ms. Edwards testified that Jan:

- Had no trouble speaking, remembering, or understanding (Edwards Dep. at 143:6–13)
- Signed documents in the presence of a licensed notary who would not have allowed it if Jan was confused (Edwards Dep. at 146:13–18)
- Was never reported as incompetent during the relevant time (Edwards Dep. at 132:9–10)

## III. Ms. Edwards Provided Valuable Services Entitling Her to Compensation

Ms. Edwards's services led directly to:

- Reviving the LLC (Edwards Dep. at 143:14–18)
- Locating the $1.2 million in unclaimed state-held funds
- Initiating property recovery steps

Her filed claim seeks $333,000—approximately 27% of the recovered funds—consistent with industry norms (Edwards Dep. at 152:23–25; 149:6–11).

## III-A. Jan Scholes Was a De Facto Officer with Valid Authority

To the extent the Trustee argues that Jan Scholes had resigned from her role as President of the Manager or otherwise lacked authority to act, such argument fails both factually and legally. As evidenced in the record, Ms. Scholes continued to exercise operational control, communicated with legal counsel, and executed documents on behalf of the Manager and the Debtor without interference or repudiation. Her continued conduct and acceptance by third parties demonstrate that she functioned in the capacity of a corporate officer despite any alleged procedural or technical defects in her formal status.

Even assuming arguendo that her appointment or continuation as President suffered from a technical deficiency, Jan Scholes qualifies as a **de facto officer** under both Delaware and federal law. A person who exercises the powers and duties of an office under color of right—particularly with the knowledge and acquiescence of the relevant stakeholders—is treated in law as a de facto officer, and their acts are binding.

The United States Supreme Court has long recognized the doctrine in **Norton v. Shelby County**, 118 U.S. 425, 441–42 (1886), holding that "[t]he acts of [a] de facto officer are as valid and binding upon the public and upon third persons as those of a de jure officer." More recently, in **Ryder v. United States**, 515 U.S. 177, 180 (1995), the Court reaffirmed that the acts of persons functioning under color of office are treated as valid even where a defect is later found in their appointment.

Delaware courts have expressly applied the de facto officer doctrine in the context of corporate and LLC governance. In a decision by the Delaware Court of Chancery addressing a board legitimacy

challenge, the court held that "[e]ven if those directors were invalidly elected, they were de facto directors and thus capable of taking enforceable actions." See *Delaware Counsel Group* commentary on Chancery decision recognizing binding acts by de facto directors (https://delawarecounselgroup.com).

Additionally, in **In re P3 Health Group Holdings, LLC**, C.A. No. 2021-0518-JTL (Del. Ch. Oct. 26, 2022), the Court of Chancery recognized that an individual without formal designation could still be held to have acted as a **de facto manager** under Delaware LLC law, noting that "[i]t is the very nature of equity to look beyond form to the substance of an arrangement." The court emphasized that assuming managerial functions and acting in that role with the knowledge of other parties can establish de facto authority.

Further, Delaware courts have confirmed that individuals acting as officers—even if not formally appointed—may still be subject to and protected by laws governing officers, including service of process rules. See *Chancery Finds Delaware's Officer Consent Statute Extends Beyond Formal Officers*, Morris James LLP (discussing statutory application of 10 Del. C. § 3114(b) to de facto officers).

Accordingly, even if Ms. Scholes's formal officer status were disputed, her sustained engagement in managerial duties, communications with stakeholders, execution of documents, and overall assumption of presidential functions render her a **de facto officer** whose acts are binding and valid under well-established law.

### IV. Additional Grounds Support Summary Judgment in Favor of Ms. Edwards

Even assuming Jan was under conservatorship, Peter Blaustein ratified the conduct by:

- Authorizing Ms. Edwards's initial involvement (Edwards Dep. at 134:25–135:16)
- Never requesting to co-sign or review any documents (Edwards Dep. at 135:12–16)
- Negotiating a revised compensation offer (10% of cash and 5% of real estate) after the work was done (Edwards Dep. at 142:7–143:13)

In addition to contractual or quantum meruit recovery, Ms. Edwards is entitled to judgment under the following alternative causes of action:

### COUNT I: Breach of Fiduciary Duty

Peter Blaustein coordinated secretly with Dyann Blaine and the Town of Westborough to interfere with Ms. Edwards's compensation, despite her having acted with his authorization (Edwards Dep. at 141:22–142:6). His conduct violated his fiduciary obligations to act in Jan's best interest, and instead appears calculated to preserve control of the estate and reduce outside claims.

### COUNT II: Tortious Interference with Contractual Relations

Ms. Edwards had a valid compensation agreement with Jan (memorialized in part via bill of sale and oral assurances). Peter Blaustein and the Town, acting in concert, induced Jan and others to repudiate that arrangement, after the work had been completed and the funds recovered (Edwards Dep. at 143:6–25; 146:19–147:3).

### COUNT III: Civil Conspiracy

Attorney Iris Leahy of the Town of Westborough wrote to Peter outlining false allegations and "talking points" later mirrored in the Trustee's objection (Edwards Dep. at 154:22–156:25). This coordination shows an agreement to manufacture post hoc objections for strategic advantage.

## COUNT IV: Unjust Enrichment

The estate, Jan Scholes, Peter Blaustein, and the Trustee have all benefited from Ms. Edwards's labor and knowledge. Denying her compensation while retaining the fruits of her work constitutes unjust enrichment. (Edwards Dep. at 143:14–18; 149:6–11)

## CONCLUSION

No genuine dispute of material fact exists. Ms. Edwards acted in good faith, with apparent and express authority, and provided substantial benefit to the estate. The Trustee's objection to her claim is unsupported by the record and motivated by post hoc obstructionism.

**WHEREFORE**, Creditor Denise Edwards respectfully requests that this Court:

1. Grant summary judgment in her favor,
2. Allow her claim in the amount of $333,000, and
3. Grant such other relief as the Court deems just and proper.

DATED: August 6, 2025, Respectfully submitted:

By creditor,

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com