**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **In re:**<br><br>**WESTBOROUGH SPE LLC,**<br><br>**Debtor.** | **Chapter 7**<br>**Case No. 23-40709-CJP** |

**ORDER (I) AUTHORIZING THE PRIVATE SALE OF 231 TURNPIKE ROAD,
WESTBOROUGH, MASSACHUSETTS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; (II) APPROVING PURCHASE AND SALE
AGREEMENT; (III) AUTHORIZING DISBURSEMENTS OF SALE PROCEEDS
PURSUANT TO SETTLEMENT AGREEMENT AND MUTUAL RELEASE;
AND (IV) GRANTING RELATED RELIEF**

This matter having come before this Court upon the *Trustee's Motion for Entry of Order
Authorizing and Approving the Sale of 231 Turnpike Road, Westborough, Massachusetts Free
and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief* (the "**Motion**")
[Dkt. No. 968] filed by Jonathan R. Goldsmith, the Chapter 7 Trustee (the "**Trustee**") of the
bankruptcy estate (the "**Estate**") of the above-captioned debtor (the "**Debtor**") as supplemented
by the *Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale
of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968]* (the "**Sale and Settlement
Motion Supplement**" [Dkt. No. 978], together with the Motion, the "**Sale Motion**"), seeking
entry of an order (the "**Sale Order**") pursuant to sections 105(a) and 363 of title 11 of the
United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 9007, and 9014 of the
Federal Rules of Bankruptcy Procedure (as amended from time to time, the "**Bankruptcy
Rules**") and Rule 6004-1 of the Massachusetts Local Bankruptcy Rules (the "**Local Rules**" or
"**MLBR**") authorizing the Trustee to (i) sell the Estate's right, title, and interest in the real
property at 231 Turnpike Road, Westborough, Massachusetts (the "**Property**") to Bochasanwasi

1

Shree Akshar Purushottam Swaminarayan Sanstha – Northeast, a Texas corporation, or its

nominee (the "**Buyer**") for the sum of Five Million One Hundred Eleven Thousand One

Hundred Eleven and 11/100 Dollars ($5,111,111.11) (the "**Purchase Price**") pursuant to the

Purchase and Sale Agreement dated November 3, 2025 and attached as Exhibit A to the Sale

Motion (the "**PSA**"), free and clear of all liens, claims, encumbrances, and interests, with such

liens, claims, encumbrances, and interests to attach to the net proceeds of the sale as set forth in

the Sale Motion (the "**Sale**"), (ii) distribute a portion of the proceeds of the Sale pursuant to the

*Settlement Agreement and Mutual Release* [Dkt. No. 966] (the "**Settlement Agreement**")

approved by separate order of this Court of even date herewith upon this Court's allowance of

the *Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement*

*and Mutual Release Pursuant to Fed. R. Bankr. P. 9019* [Dkt. No. 967], as supplemented by the

Sale and Settlement Motion Supplement (together, the "**Settlement Motion**"); and (iii) related

relief; and the Court having entered the *Proceeding Memorandum and Order* [Dkt. No. 992] (the

"**Sale and Settlement Procedures Order**") approving the combined form of the *Notice of (i)*

*Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All*

*Liens, Claims, Encumbrances, and Interests, (ii) Deadline for Filing Objections, and (iii)*

*Hearing Date and (i) Proposed Settlement Agreement and Mutual Release, (ii) Deadline for*

*Filing Objections, and (iii) Hearing Date* [Dkt. 989] (the "**Sale and Settlement Notice**"); and

this Court having conducted contemporaneous hearings on the Sale Motion and the Settlement

Motion on December 17, 2025 (the "**Sale and Settlement Hearings**"), which hearings were

evidentiary hearings; and all parties in interest having been heard, or having had to the

opportunity to be heard at the Sale and Settlement Hearings; and the Court having reviewed and

considered the Sale Motion, the PSA, other evidence in support of the Sale, and the record before

the Court; and the Court having heard, weighed, and considered at the Sale and Settlement

Hearings the testimony of the Trustee, the evidentiary proffers made, the statements of counsel,

and the statements of interested parties wishing to be heard; and the Court having heard and

considered the *Creditor Lolonyon Akouete's Objection to Trustee's Motion to Approve*

*Settlement Agreement Pursuant to Fed. R. Bankr. P 9019* [Dkt. No. 1031] (the "**Akouete**

**Objection**"); and due notice of the Sale Motion, the Sale, the Settlement Motion, the Settlement

Agreement and all of the relief requested therein having been provided under the circumstances

of the case and as reflected in the certificates of service filed with the Court, and no further

notice being necessary; and the Court having determined that the relief sought in the Sale

Motion, the Sale, and Trustee's entry into the PSA are in the best interests of the Debtor, the

Estate, the creditors of the Debtor and the Estate, and all other parties in interest of the Debtor

and the Estate; and the Court having jurisdiction over this matter; and that the legal and factual

bases set forth in the Sale Motion establish just cause for the relief granted herein; and after due

deliberation thereon,

IT IS HEREBY FOUND AND DETERMINED THAT:

**I.      Jurisdiction, Final Order, Statutory Predicates.**

A.      The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28

U.S.C. §§ 157(b)(l) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),

(N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.

B.      This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a).

C.      The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code §§ 105(a) and 363(b), (f), and (m) and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f), 9007, 9008 and 9014.

D.      The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

E.      To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such.

F.      Any and all findings of fact and conclusions of law stated orally by the Court on the record at the Sale and Settlement Hearings are hereby incorporated into this Order as findings of fact and conclusions of law, to the extent they are not inconsistent herewith.

G.      The Buyer and Trustee have acted at arm's length and in good faith as contemplated by Bankruptcy Code § 363(m) at all times in negotiating and pursuing a closing of the transactions contemplated by the PSA, including regarding compliance with the Sales and Settlement Procedures Order.

II.     **Notice of the Sale Hearing, Sale Motion, Sale, Settlement Motion, and Settlement Agreement.**

A.      Actual written notice of the Sale Hearing, the Sale Motion, the Sale, the Settlement Motion, and the Settlement Agreement, and a reasonable opportunity to object or be heard with respect to the Sale Motion, the Settlement Motion, and to the relief requested therein, has been afforded to all known interested persons and entities, including but not limited to the following parties (the "**Notice Parties**"): (i) the Office of the United States Trustee for the District of Massachusetts; (ii) the Internal Revenue Service; (iii) the Department of Revenue for

4

the Commonwealth of Massachusetts, (iv) counsel to the Buyer; (v) all entities known by the Trustee that may have a lien, claim, encumbrance, or other interest in the Estate (for which identifying information and addresses are available to the Trustee); (vi) all of the Estate's known creditors; (vii) any governmental unit known to the Trustee to have a claim in this case; (viii) all parties that have requested notice in this Chapter 7 case under Rule 2002; (ix) all parties to the Settlement Agreement; (x) all persons and entities having submitted a bid to purchase the Property; and (xi) all persons and entities known by the Trustee to potentially have an interest in any surplus assets of the Estate.

B.     The Trustee provided all interested parties with timely and proper notice of the Sale Motion, the proposed Sale, the PSA, the Settlement Motion, and the Settlement Agreement including, without limitation, by providing a copy of the Sale and Settlement Notice to each of the Notice Parties.

C.     As evidenced by the certificates of service previously filed with the Court [Dkt. Nos. 990, 1017, and 1018] and the *Trustee's Notice of Publication Regarding Proposed Sale of 231 Turnpike Road, Westborough, Massachusetts and Proposed Settlement Agreement* [Dkt. No. 1015], timely and sufficient notice of the Sale Motion, the Sale, Settlement Motion, and the Settlement Agreement has been provided under the circumstances of the case in accordance with Bankruptcy Code §§ 102(1) and 363 and Bankruptcy Rules 2002, 6004, and 9014. The notice and notices described in this Section II of this Order were good, sufficient, and appropriate under the circumstances, and no other further notice of the Sale Motion, the Sale, Settlement Motion, the Settlement Agreement, or of the Sale and Settlement Hearings is or was required.

D.      The disclosures made by the Trustee concerning the Sale Motion, the Sale, Settlement Motion, the Settlement Agreement, and the Sale and Settlement Hearings were complete and adequate.

E.      By separate order of even date herewith, this Court has granted the Settlement Motion, approving and authorizing the Settlement Agreement (the "**Settlement Approval Order**"). The Settlement Agreement is necessary to accomplish the Sale and the Trustee has demonstrated good and sufficient cause and has exercised reasonable business judgment to enter the Settlement Agreement, including without limitation, with respect to all of the compromises contained within the Settlement Agreement and all of the payments required by the Settlement Agreement.

**III.    Good Faith of the Buyer.**

A.      The Buyer is not an "insider" of the Debtor, as that term is defined in Bankruptcy Code § 101(31).

B.      The Buyer is purchasing the Property in good faith and is a good faith buyer withing the meaning of Bankruptcy Code § 363(m) and is therefore entitled to the full protection of that provision in that, among other things: (i) the Buyer recognized that the Trustee solicited bids for the Property from multiple parties and that Trustee was free to deal with any other party interested in purchasing the Property, (ii) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale pursuant to the PSA have been disclosed; (iii) the Buyer has not violated Bankruptcy Code § 363(n) by any action or inaction; (iv) no common identity of directors or controlling stockholders or other interest holders exists between the Buyer and the Debtor or the Buyer and the Trustee; and

6

(v) the negotiation and execution of the PSA and any other agreements or instruments related thereto were at arms' length and in good faith.

**IV.      Highest and Best Offer.**

A.      Prior to selecting the Buyer as the purchaser of the Property, the Trustee engaged in a bid solicitation process designed to target interested parties and maximize the value of the Property for the Estate. Based on the bid solicitation process described in the Sale Motion and the evidence at the Sale and Settlement Hearings, the bid solicitation process afforded a full, fair, and reasonable opportunity for any person or entity to make an offer to purchase the Property. The process conducted by the Trustee was conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity was provided to any interested party to object to the Sale based on, without limitation, the desire to submit a higher and better offer for the Property.

B.      The consideration to be provided by the Buyer under the PSA constitutes the highest and best offer for the Property and will provide a greater recovery for the estate than would be provided by any other available alternative. The Trustee's determination that the PSA constitutes the highest and best offer for the Property constitutes a valid and sound exercise of the Trustee's business judgment consistent with its fiduciary duties.

C.      The PSA represents a fair and reasonable offer to purchase the Property under the circumstances of this case. No other person or entity or group of entities has offered to purchase the Property for a greater economic value to the estate than the Buyer.

D.      Approval of the Sale Motion and the PSA and the consummation of the transactions contemplated thereby is in the best interests of the Debtor, the Estate, creditors of the Estate, equity holders of the Debtor, and any and all other parties in interest.

E.      The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale.

**V.      No Fraudulent Transfer; No Successor Liability.**

A.      The PSA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).  The consideration provided by the Buyer pursuant to the PSA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and any state (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

B.      By virtue of the consummation of the Sale, (i) the Buyer is not a continuation of the Debtor or its estate, there is no continuity between the Buyer and the Debtor, there is no common identity between the Debtor and the Buyer, there is no continuity of enterprise between the Debtor and the Buyer, and the Buyer is not a mere continuation of the Debtor or of the Estate, (ii) the Buyer is not holding itself out to the public as a continuation of the Debtor or of the Estate, and (iii) the Sale does not amount to a consolidation, merger or de facto consolidation or merger of the Buyer and the Debtor and/or the Estate.  Accordingly, the Buyer is not and shall not be deemed a successor to the Debtor, for any purpose or under any theory, as a result of the consummation of the Sale.

**VI.      Validity of Transfer.**

A.      The Trustee and the Buyer each have full power and authority to execute and deliver the PSA and all other documents contemplated thereby, and no further consents or

approvals of this Court are required for the Trustee and the Buyer to consummate the transactions contemplated by the PSA, except as otherwise set forth in the PSA.

B. Subject only to the Town of Westborough vacating its foreclosure judgment pursuant to the Settlement Agreement, the Property constitutes property of the Estate and, upon the Town of Westborough vacating its foreclosure judgment, title to the Property shall be property of the Estate within the meaning of Bankruptcy Code § 541(a). The transfer of the Property to the Buyer will be, as of the Closing[1], a legal, valid, and effective transfer of the Property, and vests or will vest the Buyer with all right, title, and interest of the Estate to the Property free and clear of all (a) liens (including but not limited to mechanics, artisans, suppliers, design professionals, laborers, construction, constitutional, statutory or other liens whether asserted, unasserted, perfected or unperfected), (b) encumbrances, pledges, mortgages, deeds of trust, security interests, claims, options, rights of first refusal, condemnation, easements, servitudes, proxies, voting trusts or agreements, or transfer restrictions under any agreement, (c) claims (including, without limitation, all claims within the meaning of Bankruptcy Code §§ 101(5) and 102(2)), and (d) liabilities, whether imposed by agreement, law, equity, or otherwise and whether known or unknown, fixed, or contingent or arising prior to or subsequent to the commencement of this case (each of the foregoing described in clauses (a), (b), (c), and (d) collectively or individually, the "**Adverse Interests**"), except to the extent of any exceptions thereto as specifically set forth in the PSA (the "**Permitted Exceptions**").

## VII.  Bankruptcy Code § 363(f) Is Satisfied.

A. The Buyer would not have entered into the PSA and would not consummate the transactions contemplated thereby if the Sale of the Property to the Buyer were not, except as to

---

[1]  As used in this Order, the term "**Closing**" shall have the meaning ascribed thereto in the PSA and the term "**Closing Date**" shall mean the date that the Closing occurs pursuant to the PSA.

the Permitted Exceptions, free and clear of all Adverse Interests of any kind or nature whatsoever

or if the Buyer would, or in the future could, be liable for any of such Adverse Interests.

B.      The Trustee may sell the Property free and clear of all Adverse Interests against

the Debtor, the Estate, or against the Property (except as to any Permitted Exceptions as

specifically set forth in the PSA) because, in each case, one or more of the standards set forth in

Bankruptcy Code § 363(f)(1) through (5) has been satisfied.  Those holders of Adverse Interests

against or in the Debtor, the Estate, or the Property who did not object, or who withdrew their

objections, to the Sale or the Sale Motion are deemed to have consented pursuant to Bankruptcy

Code § 363(f)(2). Those holders of such Adverse Interests who did object fall within one or more

of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having

their Adverse Interests, if any, in each instance against the Debtor, the Estate, or the Property,

attach to the cash proceeds of the Sale (net of the payments authorized herein), in the same order

of priority, with the same validity, force and effect (if any) that such creditor or interest holder

had prior to the Sale, subject to any claims and defenses the Debtor or the Estate may possess

with respect thereto.

**VIII.   Compelling Circumstances for an Immediate Sale.**

A.      To maximize the value of the Property, it is essential that the Sale occur within

the time constraints set forth in the PSA.  The consummation of the Sale is necessary both to

preserve and maximize the value of the assets of the Estate and the Debtor for the benefit of the

Estate, its creditors, equity or other interest holders, and all other parties in interest, and to

provide the means for the Trustee to maximize creditor recoveries.  Time is of the essence in

consummating the Sale.

B.      The consummation of the transactions is legal, valid, and properly authorized

10

under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### General Provisions

1.      The relief requested in the Sale Motion is granted and approved, and the Sale contemplated by the PSA is approved and authorized as set forth in this Order.

2.      This Court's findings of fact and conclusions of law set forth herein and as stated by this Court on the record during the Sale and Settlement Hearings conducted on December 17, 2025, are incorporated into this Order by reference.

3.      This Court heard and considered the Akouete Objection and hereby overrules the Akouete Objection.

4.      Any and all other objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled by stipulation or agreement filed with the Court, and all reservations of rights included therein, are hereby overruled or the interests of such objections have been otherwise satisfied or adequately provided for.

### Approval of the PSA

5.      The PSA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved as set forth herein.

6.      Pursuant to Bankruptcy Code § 363(b), the Trustee is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Property to the Buyer pursuant to and in accordance with the terms and conditions of the PSA, (ii) close the

11

Sale as contemplated in the PSA and this Order, (iii) make any and all payments required by the PSA and required by the Settlement Agreement, and (iv) execute and deliver, perform under, consummate, implement, and close fully the PSA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the PSA and to close the Sale, including any ancillary documents, as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the PSA and such other ancillary documents.

7.      This Order shall be binding in all respects upon the Trustee, the Debtor, the Estate, all current and former holders of equity interests in the Debtor, all holders of any claim(s) (whether known or unknown) against the Estate, any holders of Adverse Interests against or on all or any portion of the Property, the Buyer and all successors and assigns of the Buyer, the parties to the Settlement Agreement, the Property, and any trustee(s), if any, subsequently appointed in this case. This Order and the PSA shall inure to the benefit of the Estate, its creditors, the Buyer, and each of their respective successors and assigns.

8.      By separate order of even date herewith, this Court has entered the Settlement Approval Order, which order approves the Settlement Agreement and authorizes all provisions thereof. The Trustee is authorized to give effect to all provisions of the Settlement Approval Order in connection with the Sale including, without limitation, making all payments required by the Settlement Agreement and taking all actions required by the Settlement Agreement.

**Transfer of the Property**

9.      Pursuant to Bankruptcy Code §§ 105(a), 363(b), and 363(f), the Trustee is authorized to transfer the Property on the Closing Date. The Property shall be transferred to the

Buyer upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding, and effective transfer of the Property and shall be free and clear of all Adverse Interests, except any Permitted Exceptions under the PSA.  Upon the Closing, the Buyer shall take title to and possession of the Property subject only to the Permitted Exceptions. Pursuant to Bankruptcy Code § 363(f), the transfer of title to the Property shall, except for Permitted Exceptions specifically set forth in the PSA, be free and clear of all Adverse Interests based on any theory including without limitation any successor or successor-in-interest liability theory.  Adverse Interests shall attach solely to the cash proceeds of the Sale, net of all payments authorized by this Order and required by the Settlement Agreement, with the same validity, priority, extent, and effect that they now have as against the Property, subject to any claims and defenses the Estate and the Debtor may possess with respect thereto.

10.     On or about the Closing Date, contemporaneous with the transfer of the Property to the Buyer, or shortly thereafter as provided by the Settlement Agreement, the Trustee is authorized and directed to pay:

    i.    At Closing, all ordinary and usual closing costs and expenses;

    ii.    At Closing, deed stamps or similar transfer taxes as required upon the sale of real property;

    iii.    To the Town of Westborough for the "Town Payment" as defined in the Settlement Agreement, $1,640,000 to be paid contemporaneous with Closing;

    iv.    To Durgaprasad Nagalla and Venkatesh Mohanraj, Trustees of The MobileStreet Trust, u/d/t dated December 11, 2014, recorded with the Worcester Registry of Deeds in Book 53141, Page 193 ("MobileStreet") for the "Use Modification Payment" as defined in the Settlement Agreement, $200,000 to be paid within ten (10) days after the Closing Date;

    v.    To MobileStreet for the "MobileStreet Maintenance Payment" as

13

defined in the Settlement Agreement, $556,763 to be paid within ten (10) days after the Closing Date;

vi.     To Ferris Development Group, LLC for the "Ferris Payment" as defined in the Settlement Agreement, $100,000 to be paid within ten (10) days after the Closing Date; and

vii.    To Lax Media LLC and Lax Media MA LLC for the "Lax Payment" as defined in the Settlement Agreement, $100,000 to be paid within ten (10) days after the Closing Date.

11.     Except as expressly provided by the PSA with respect to Permitted Exceptions, all persons and entities holding Adverse Interests in or to the Property arising under or out of, in connection with, or in any way relating to the Debtor, the Estate, or the Property, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer or its successors or assigns, their assets, or the Property, such persons' or entities' Adverse Interests in and to the Property.

12.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any applicable Adverse Interests and encumbrances of record.

13.     If any person or entity which has filed statements or other documents or agreements evidencing Adverse Interests in the Property shall not have delivered to the Trustee prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Adverse Interests (other than Permitted Exceptions), which the person or entity has or may assert with respect to the Property, the Buyer and the Trustee are hereby authorized to execute and file such statements, instruments, releases and other documents on

14

behalf of such person or entity with respect to the Property.

14.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the PSA.

### Other Provisions

15.     Effective upon the Closing Date and except as otherwise set forth in the PSA with respect to Permitted Exceptions or as specifically set forth in the Settlement Agreement, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, its successors and assigns, or the Property, with respect to any (a) Adverse Interests arising under, out of, in connection with, or in any way relating to the Debtor, the Estate, the Buyer, or the Property, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or assigns, assets, or properties; (ii) enforcing, attaching, collecting or recovering in any manner, any judgment, award, decree, or order against the Buyer, its successors or assigns, assets, or properties; (iii) creating,

perfecting, or enforcing any Adverse Interests against the Buyer, its successors or assigns, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer or its successors or assigns; or (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof.

16. Except for the Permitted Exceptions or as otherwise expressly set forth in the PSA, the Buyer shall not have any liability or other obligation of the Debtor of the Estate arising under or related to the Property or the PSA or the transactions related thereto. Without limiting the generality of the foregoing, and except for the Permitted Exceptions provided in the PSA, the Buyer shall not be liable for any claims or any other Adverse Interests against the Debtor or the Estate or any of either of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or the Estate or any obligations of the Debtor or the Estate arising prior to the Closing Date. The Buyer has given substantial consideration under the PSA for the benefit of the holders of any Adverse Interests. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Adverse Interests against or interests in the Debtor or the Property.

17. The transactions contemplated by the PSA are undertaken by the Buyer without collusion and in good faith, as that term is defined in Bankruptcy Code § 363(m) of the

16

Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the payment of the disbursements authorized on or after Closing pursuant to and required by the Settlement Agreement), unless such authorization and such Sale are duly stayed pending such appeal. The Buyer is a good faith Buyer within the meaning of Bankruptcy Code § 363(m) and, as such, is entitled to the full protections of Bankruptcy Code § 363(m).

18.     The consideration provided by the Buyer for the Property under the PSA is fair and reasonable, and the Sale may not be avoided under Bankruptcy Code § 363(n). The reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including, without limitation, the payment of the disbursements authorized on or after Closing pursuant to and required by the Settlement Agreement), unless such authorization is duly stayed pending such appeal. No governmental unit or regulatory authority may revoke or suspend any right, license, or other permission relating to the use of the Property sold, transferred, or conveyed to the Buyer on account of the pendency of this Case or the consummation of the Sale.

19.     No Order of any type or kind entered in any related proceeding subsequent to entry of this Order shall conflict with or derogate from the provisions of the PSA or the terms of this Order.

20.     The failure specifically to include any particular provisions of the PSA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the PSA be authorized and approved in its entirety.

21.     The failure specifically to include or describe any particular provisions of the

17

Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that, pursuant to the Settlement Approval Order entered contemporaneously herewith, the Settlement Agreement be approved in its entirety and that all actions required to be taken by the Trustee pursuant to the Settlement Agreement be authorized.

22.     Unless this Court orders otherwise, this Court shall retain exclusive jurisdiction to the fullest extent of applicable law to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the PSA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee or the Estate is a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

23.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24.     To the extent that this Order is inconsistent with the PSA or any prior order or pleading with respect to the Sale Motion in this Case, the terms of this Order shall govern.

By the Court,

Dated: December 24, 2025

_____
Christopher J. Panos
United States Bankruptcy Judge