**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **In re:** | |
| **WESTBOROUGH SPE LLC,** | **Chapter 7**<br>**Case No. 23-40709-CJP** |
| **Debtor.** | |

**APPELLEE CHAPTER 7 TRUSTEE'S DESIGNATION OF**
**ADDITIONAL ITEMS TO BE INCLUDED IN RECORD ON APPEAL**
**(Re Appeal of Dkt. Nos. 1037, 1038, and 1058)**

Pursuant to Fed. R. Bankr. P. 8009(a)(2), appellee Jonathan R. Goldsmith (the "Trustee"), Chapter 7 Trustee of the bankruptcy estate (the "Estate") of Westborough SPE LLC (the "Debtor"), hereby designates additional items to be included in the record on appeal regarding the appeal by Lolonyon Akouete ("Akouete") of the Bankruptcy Court Orders entered at Docket Nos. 1037, 1038, and 1058. Akouete initiated the appeal with an initial notice of appeal and then amended that notice appeal with a second notice of appeal [*See* Dkt. No. 1050, as amended by Dkt. No. 1064] (together, the "USDC Appeal"). On January 27, 2026, Akouete filed a designation regarding items to be included in the record on appeal regarding the USDC Appeal [*See* Dkt. No. 1104]. The Trustee designates the following additional items to be included in the record regarding the USDC Appeal:

| Dkt. No. | Date | Additional Designated Items |
|---|---|---|
| 969 | 11/4/2025 | Certificate of Service |
| 972 | 11/5/2025 | Order dated 11/5/25 Scheduling Hearing Regarding Form of Notice of Trustee's Sale Motion and Trustee's Motion to Approve Settlement Agreement |
| 976 | 11/6/2025 | Certificate of Service |

| 977 | 11/7/2025 | Motion by Lolonyon Akouete for Expedited Hearing and Shortened Notice Period Regarding Trustee's Sale Motion and Trustee's Motion to Approve Settlement Agreement |
| 979 | 11/7/2025 | Order Converting 11/10/2025 Hearing to Telephonic Hearing |
| 980 | 11/7/2025 | Order Scheduling Hearing on Motion by Lolonyon Akouete for Expedited Hearing |
| 981 | 11/7/2025 | Certificate of Service |
| 990 | 11/10/2025 | Certificate of Service |
| 1015 | 12/4/2025 | Notice of Publication Regarding Proposed Sale |
| 1017 | 12/5/2025 | Supplemental Certificate of Service |
| 1018 | 12/8/2025 | Supplemental Certificate of Service |
| 1024 | 12/11/2025 | Emergency Motion by Lolonyon Akouete for Expedited Hearing |
| 1051 | 1/5/2026 | Court's Order Regarding Deficiency |
| 1052 | 1/5/2026 | Clerk's Notice of Fees Due |
| 1053 | 1/5/2026 | Notice of Appeal to District Court |
| 1079 | 1/12/2026 | Motion by Lolonyon Akouete for Reconsideration of Order Denying Administrative Expense Claim |
| 1093 | 1/21/2026 | Certification of Default |
| 1094 | 1/21/2026 | Transmittal (Re Certificate of Default) |
| 1097 | 1/23/2026 | Motion by Lolonyon Akouete to Excuse Default and for Extension of Time |

The Trustee has ordered the transcripts of the hearings conducted by the Bankruptcy Court on the following dates and the Trustee designates those transcripts for inclusion in the record regarding the USDC Appeal:

| Transcript[1] of Hearing conducted November 10, 2025 regarding Approval of Combined Form of Notice of Trustee's Sale Motion and Trustee's Motion to Approve Settlement Agreement |
|---|
| Transcript of Hearing conducted December 17, 2025 regarding Trustee's Sale Motion and Trustee's Motion to Approve Settlement Agreement |

Respectfully submitted,

**Jonathan R. Goldsmith,**
**Chapter 7 Trustee**

by his counsel,

_____/s/ Christine E. Devine_____
Christine E. Devine, BBO #566990
Angelina M. Savoia, BBO #715690
Nicholson Devine LLC
P.O. Box 7
Medway, MA 02053
Phone:  508-533-7240
Dated: February 10, 2026                                      Email:  christine@nicholsondevine.com

---

[1] This Bankruptcy Court has posted on the Bankruptcy Court's docket audio of the hearings designated by the Trustee [Dkt. Nos. 1126, 1130, 1131, and 1132]. Akouete has also designated these two hearings as part of the record on appeal [*See* Dkt. No. 1104], but Akouete has represented at various times that he is unable to pay for the preparation of written transcripts. Therefore, the Trustee has ordered the two transcripts noted.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

**WESTBOROUGH SPE LLC,**

      **Debtor.**

**Chapter 7**
**Case No. 23-40709-CJP**

## CERTIFICATE OF SERVICE

The undersigned, Christine E. Devine, hereby certifies that on this day I caused a copy of the following document to be served on all parties listed on the attached Service List in the manner noted thereon:

**APPELLEE CHAPTER 7 TRUSTEE'S DESIGNATION OF ADDITIONAL ITEMS TO BE INCLUDED IN RECORD ON APPEAL (Re Appeal of Dkt. Nos. 1037, 1038, and 1058)**

Dated: February 10, 2026

/s/ Christine E. Devine
Christine E. Devine, BBO #566990
Nicholson Devine LLC
P.O. Box 7
Medway, MA 02053
Phone: 508-533-7240
Email: christine@nicholsondevine.com

Electronic Mail Notice List

The following list of parties and attorneys have received electronic notice via the Court's CM/ECF noticing process:

- **Jeffrey T Blake**   jblake@k-plaw.com
- **Paul W. Carey**   pcarey@miricklaw.com, bankrupt@mirickoconnell.com
- **Jose C. Centeio**   jcc@natgolaw.com
- **Brian Charville**   bcharville@ferrisdevelopment.com
- **Christine E. Devine**   christine@nicholsondevine.com, devine.christiner109603@notify.bestcase.com;angelina@nicholsondevine.com;christine_492@ecf.courtdrive.com
- **Jonathan R. Goldsmith**   bankrdocs1@gkalawfirm.com, bankrdocs@gkalawfirm.com;Esq..JonathanR.G.B145355@notify.bestcase.com
- **Jonathan R. Goldsmith**   trusteedocs1@gkalawfirm.com, trusteedocs@gkalawfirm.com;mwolohan@gkalawfirm.com;MA43@ecfcbis.com
- **Stephen F. Gordon**   sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- **Richard King**   USTPRegion01.WO.ECF@USDOJ.GOV
- **Brian Lee**   blee@nutter.com
- **Samual A. Miller**   samual.miller@akerman.com
- **Brian W. Riley**   briley@k-plaw.com
- **Douglas B. Rosner**   drosner@goulstonstorrs.com
- **Angelina M. Savoia**   angelina@nicholsondevine.com, angelina@ecf.courtdrive.com
- **Roger L. Smerage**   rsmerage@k-plaw.com

Email List and / or First Class Mail

The following list of parties and attorneys have been served via as noted:

Lolonyon Akouete                         Via Email and First Class Mail
800 Red Mills Rd
Wallkill, NY 12589
info@smartinvestorsllc.com

Denise Edwards                           Via Email and First Class Mail
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com

Christopher Mulhern, Esq.                Via Email and First Class Mail
Law Office of Christopher Mulhern, Inc.
100 Centerville Rd.
Warwick, RI 02886
cmulhern@mulhernlawri.com

Peter J. Nicosia, Esq.                              Via Email and First Class Mail
Nicosia & Associates P.C.
259 Middlesex Rd
PO Box 721
Tyngsboro, MA 01879
nicosia@nicosia-associates.com

Mark S. Lichtenstein                                Via Email
Akerman LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
mark.lichtenstein@akerman.com

Lenard Benson Zide, Esq.
Butters Brazilian LLP                               Via Email and First Class Mail
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com

Jonathan La Liberte                                 Via Email
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
jclaliberte@sherin.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

**WESTBOROUGH SPE LLC,**

      **Debtor.**

**Chapter 7
Case No. 23-40709-CJP**

## CERTIFICATE OF SERVICE

The undersigned, Christine E. Devine, hereby certifies that on this day I caused a copy of the following to be served on all parties listed on the attached Service List in the manner noted thereon:

- **Trustee's Motion for Entry of Order Authorizing and Approving the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief (Expedited Determination Requested Regarding Approval of Form of Combined Notice); and**

- **Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019 (Expedited Determination Requested Regarding Approval of Form of Combined Notice)**

Dated: November 4, 2025

/s/ Christine E. Devine
Christine E. Devine, Esq.
Nicholson Devine LLC
P.O. Box 7
Medway, MA 02053
Phone: 508-533-7240
Email: christine@nicholsondevine.com

Electronic Mail Notice List

The following list of parties and attorneys have received electronic notice via the Court's CM/ECF noticing process:

- Jeffrey T Blake    jblake@k-plaw.com
- Paul W. Carey    pcarey@miricklaw.com, bankrupt@mirickoconnell.com
- Luis R. Casas    luis.casasmeyer@akerman.com
- Jose C. Centeio    jc@jcfirm.com
- Brian Charville    bcharville@ferrisdevelopment.com
- Christine E. Devine    christine@nicholsondevine.com, devine.christiner109603@notify.bestcase.com;angelina@nicholsondevine.com;christine_492@ecf.courtdrive.com
- Jonathan R. Goldsmith    bankrdocs1@gkalawfirm.com, bankrdocs@gkalawfirm.com;intern@gkalawfirm.com;Esq..JonathanR.G.B145355@notify.bestcase.com
- Jonathan R. Goldsmith    trusteedocs1@gkalawfirm.com, mwolohan@gkalawfirm.com;trusteedocs@gkalawfirm.com;intern@gkalawfirm.com;MA43@ecfcbis.com
- Stephen F. Gordon    sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- Richard King    USTPRegion01.WO.ECF@USDOJ.GOV
- Brian Lee    blee@nutter.com
- Samual A. Miller    samual.miller@akerman.com
- Brian W. Riley    briley@k-plaw.com
- Douglas B. Rosner    drosner@goulstonstorrs.com
- Angelina M. Savoia    angelina@nicholsondevine.com, angelina@ecf.courtdrive.com
- Roger L. Smerage    rsmerage@k-plaw.com

Email and/or First Class Mail Service List

The following list of parties and attorneys have been served in the manner as noted:

Lolonyon Akouete                    Via Email
800 Red Mills Rd
Wallkill, NY 12589
info@smartinvestorsllc.com


Denise Edwards                      Via Email
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com

Mark S. Lichtenstein                 Via Email
Akerman LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
mark.lichtenstein@akerman.com


Lenard Benson Zide, Esq.
Butters Brazilian LLP                Via Email
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com

Jonathan La Liberte                  Via Email
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
jclaliberte@sherin.com



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

      Westborough SPE LLC

               Debtor

Chapter 7
23-40709-CJP

## ORDER SCHEDULING HEARING

**MATTER:**

#968 Expedited Motion filed by Trustee Jonathan R. Goldsmith for Sale of Property free and clear of liens under Section 363(f) Re: 231 Turnpike Road, Westborough, Massachusetts Expedited Determination Requested Regarding Approval of Form of Combined Notice.

THE COURT HEREBY SCHEDULES THE REQUEST TO APPROVE THE FORM OF COMBINED NOTICE REGARDING THE SALE MOTION [ECF NO. 968] AND THE MOTION TO APPROVE THE SETTLEMENT AGREEMENT [ECF NO. 967], WHICH PROPOSED FORM OF NOTICE IS DESCRIBED IN THE SALE MOTION AND ATTACHED AS EXHIBIT B THERETO, FOR HEARING ON **NOVEMBER 10, 2025 AT 2:30 P.M.** (THE "FORM OF NOTICE HEARING").

THE FORM OF NOTICE HEARING WILL BE CONDUCTED IN COURTROOM 1, JOHN W. MCCORMACK POST OFFICE AND COURT HOUSE, 5 POST OFFICE SQUARE, BOSTON, MASSACHUSETTS 02109, WITH AN OPTION FOR PARTIES IN INTEREST TO APPEAR BY ZOOM VIDEO.

TO OBTAIN VIDEO ACCESS INFORMATION FOR THE FORM OF NOTICE HEARING, PARTIES IN INTEREST SHALL EMAIL THE COURTROOM DEPUTY AT CJP_COURTROOM_DEPUTY@MAB.USCOURTS.GOV NO LATER THAN NOVEMBER 10, 2025 AT 12:00 P.M., PROVIDING THE CONTACT INFORMATION FOR THE PARTY SEEKING TO APPEAR BY VIDEO.

**OBJECTIONS TO THE FORM OF NOTICE SHALL BE FILED BY NOVEMBER 10, 2025 AT 10:00 A.M.**

**ALL OTHER OBJECTIONS TO APPROVAL OF THE SALE MOTION AND SETTLEMENT AGREEMENT ARE RESERVED AND OBJECTION DEADLINES WITH RESPECT TO APPROVAL OF THE PROPOSED PRIVATE SALE SET FORTH IN THE SALE MOTION**

**AND MOTION TO APPROVE THE SETTLEMENT AGREEMENT WILL BE
ESTABLISHED AT THE FORM OF NOTICE HEARING.**

THE TRUSTEE SHALL PROVIDE NOTICE OF THIS SCHEDULING ORDER ON ALL PARTIES
ENTITLED TO NOTICE BY ECF OR EMAIL (OR, IF NO EMAIL ADDRESS IS AVAILABLE BY
TELEPHONE), AND SHALL FILE A CERTIFICATE OF SERVICE EVIDENCING SUCH
SERVICE HAS BEEN MADE.

Dated: 11/05/2025                          By the Court,

                                          Christopher J. Panos
                                          United States Bankruptcy Judge

143

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

**WESTBOROUGH SPE LLC,**

      **Debtor.**

**Chapter 7**
**Case No. 23-40709-CJP**

## CERTIFICATE OF SERVICE

    The undersigned, Angelina M. Savoia, hereby certifies that on this day I caused a copy of

the following to be served on all parties listed on the attached Service List in the manner noted

thereon:

- **Order Scheduling Hearing** [Dkt. No. 972].

Dated: November 6, 2025

/s/ Angelina M. Savoia, Esq.
Angelina M. Savoia (BBO #715690)
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA 02139
Phone: 508-533-7240
Email: angelina@nicholsondevine.com

Electronic Mail Notice List

The following list of parties and attorneys have received electronic notice via the Court's CM/ECF noticing process on 11/5/2025:

- **Jeffrey T Blake**  jblake@k-plaw.com
- **Paul W. Carey**  pcarey@miricklaw.com, bankrupt@mirickoconnell.com
- **Luis R. Casas**  luis.casasmeyer@akerman.com
- **Jose C. Centeio**  jc@jcfirm.com
- **Brian Charville**  bcharville@ferrisdevelopment.com
- **Christine E. Devine**  christine@nicholsondevine.com, devine.christiner109603@notify.bestcase.com;angelina@nicholsondevine.com;christine_492@ecf.courtdrive.com
- **Jonathan R. Goldsmith**  bankrdocs1@gkalawfirm.com, bankrdocs@gkalawfirm.com;intern@gkalawfirm.com;Esq..JonathanR.G.B145355@notify.bestcase.com
- **Jonathan R. Goldsmith**  trusteedocs1@gkalawfirm.com, mwolohan@gkalawfirm.com;trusteedocs@gkalawfirm.com;intern@gkalawfirm.com;MA43@ecfcbis.com
- **Stephen F. Gordon**  sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- **Richard King**  USTPRegion01.WO.ECF@USDOJ.GOV
- **Samual A. Miller**  samual.miller@akerman.com
- **Brian W. Riley**  briley@k-plaw.com
- **Douglas B. Rosner**  drosner@goulstonstorrs.com
- **Angelina M. Savoia**  angelina@nicholsondevine.com, angelina@ecf.courtdrive.com
- **Roger L. Smerage**  rsmerage@k-plaw.com

Email and/or First Class Mail Service List

Additionally, the following parties and attorneys have been served on 11/6/2025 as noted.

Lolonyon Akouete                                       Via Email
800 Red Mills Rd
Wallkill, NY 12589
info@smartinvestorsllc.com


Denise Edwards                                        Via Email
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com

Mark S. Lichtenstein, Esq.                        Via Email
Akerman LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
mark.lichtenstein@akerman.com


Lenard Benson Zide, Esq.
Butters Brazilian LLP                             Via Email
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com

Jonathan La Liberte, Esq.                         Via Email
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
jclaliberte@sherin.com

Christopher Mulhearn, Esq.                        Via Email
Law Office of Christopher M. Mulhearn, Inc.
100 Centerville Road, Suite 1
Warwick, RI  02886
cmulhearn@mulhearnlawri.com

Peter Nicosia, Esq.                               Via Email
Nicosia & Associates, PC
PO Box 721, 259 Middlesex Rd.
Tyngsboro, MA 01879
nicosia@nicosia-associates.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|                          |   |                        |
|--------------------------|---|------------------------|
|                          | ) |                        |
| In re:                   | ) | Chapter 7              |
|                          | ) | Case No. 23-40709-CJP  |
| WESTBOROUGH SPE LLC,     | ) |                        |
|                          | ) |                        |
| Debtor.                  | ) |                        |
|                          | ) |                        |

**MOTION FOR EXPEDITED HEARING AND SHORTENED NOTICE PERIOD
REGARDING SALE AND SETTLEMENT MOTIONS AND STATEMENT OF
OPERATING AGREEMENT COMPLIANCE**

Now comes Creditor Lolonyon Akouete ("Movant"), appearing *pro se,* and respectfully moves this
Honorable Court, pursuant to Fed. R. Bankr. P. 9006(c)(1) and MLBR 9013-1(g), to shorten the
notice period and schedule an expedited hearing on the Trustee's *Motion for Sale of Property Free
and Clear of Liens under 11 U.S.C. § 363(f)* [ECF No. 968] and *Motion to Approve Settlement
Agreement and Mutual Release* [ECF No. 967].
Movant further shows that the proposed sale and settlement are consistent with the governing
Limited Liability Company Agreement of Westborough SPE LLC ("Operating Agreement") and
that delay will cause further depletion of estate assets to the detriment of all creditors.

## I. Background

1. The Debtor, Westborough SPE LLC ("Company"), was formed under Delaware law on
   October 22, 1997, as a manager-managed limited liability company.
   Under § 1(d) of the Operating Agreement, Babcock & Brown Administrative Services, Inc.
   ("BBAS Inc.") was designated as the Manager.
2. Section 1(e) provides that "the overall management and control of the business and affairs
   of the Company, and the sole and exclusive authority to make all decisions and take all
   actions as to the business and affairs of the Company, shall be vested in the Manager," and
   that "the Members shall have no voting rights, consent or approval over or as to any such
   matters."
   Section 1(f) confirms that "No Member … shall have any authority, power or privilege to
   act on behalf of or to bind the Company."
   The Agreement therefore establishes that only the Manager—and not the Member—has
   authority to manage or dispose of Company assets.
3. Section 8(a)(ii) states that the Company is dissolved upon "the sale, disposition or
   abandonment of all or substantially all of the assets of the Company."
   Section 8(b) provides that, upon dissolution, "the Manager shall commence to wind up the
   affairs of the Company and to liquidate its assets," and § 8(c) requires the Manager to pay
   liabilities and "determine such reserves as may be reasonably necessary for any contingent
   or unforeseen liabilities" before distributing remaining proceeds to the Member.
4. These provisions demonstrate that a sale of substantially all Company assets and the
   liquidation and settlement of obligations are expressly contemplated events under the
   Operating Agreement. The current § 363 sale and the accompanying Settlement Agreement
   therefore conform to the Company's contractual framework for liquidation and wind-up.

147

## II. Grounds for Expedited Relief

5. This bankruptcy case has been pending over two years, during which the Property located at 231 Turnpike Road, Westborough, Massachusetts has remained vacant and unproductive. Each delay has increased costs for taxes, insurance, maintenance, and professional fees—directly reducing creditor recovery.

6. When Movant first filed a motion to vacate the Town's tax-title foreclosure in Land Court, total expenses were $638,755.20..
   Under the first proposed settlement (2024), the Town sought $1,165,000, and now under the new settlement seeks $1,640,000—a near half-million-dollar increase caused by prolonged delay. *See Exhibit 1*
   Similar growth has occurred in MobileStreet Trust charges and administrative costs. *See Exhibit 2*

7. The sale price of $5,111,111.11 is fair, exceeds prior valuations, and represents the highest and best offer presently available.
   Every additional month of delay risks higher expenses and potential deterioration of the property as winter approaches.

8. Under Rule 9006(c)(1), the Court may shorten the 21-day notice period "for cause."
   Cause exists because:
   o The estate continues to incur carrying costs and professional fees that erode value;
   o The Buyer is ready to close, and the PSA expressly contemplates prompt consummation;
   o Expediting approval will maximize estate value and allow distributions consistent with §§ 8(b)–(c) of the Operating Agreement;
   o All affected parties have long had notice of the property's status and will not be prejudiced by a reduced objection period.

9. The prior denial of Movant's 2024 motion to shorten time (Dkt. 196) rested on the absence of demonstrated cause and the Trustee's then-lack of request for expedition. Those facts have changed: the Trustee now seeks expedited approval of the form of notice, and measurable harm to the estate from continued delay is evident.

## III. Operating Agreement Compliance

10. The Operating Agreement grants exclusive management authority to the Manager (§§ 1(d)–(g)) and expressly removes voting rights from Members (§ 1(e)). Consequently, the Chapter 7 Trustee, standing in place of the Manager for estate administration, may lawfully implement the sale and settlement without Member consent.

11. The sale of the Property constitutes the "sale… of substantially all… assets" triggering liquidation under § 8(a)(ii). The Settlement Agreement, which resolves disputed claims and allocates proceeds among secured parties and the estate, is consistent with the Manager's duty under § 8(b) to "wind up the affairs of the Company and to liquidate its assets," and under § 8(c) to satisfy liabilities and maintain reserves before distributions.

12. Thus, approval of both the sale and the settlement would harmonize with—not contradict—the Company's governing contract, enabling completion of the wind-up that the Manager (and now the Trustee) is obligated to perform.

## Clarification of Movant's Position

13. For clarity, Movant supports the expedited approval of the sale because it will preserve estate value and is consistent with the Operating Agreement's requirement that the Manager

liquidate assets upon abandonment or disposition.
However, Movant intends to oppose the Settlement Agreement itself within the seven-day objection period. The opposition will be limited and straightforward:
- The Town of Westborough is to be paid $1,640,000.00 at closing, yet has provided no accounting or documentation to justify this amount;
- MobileStreet Trust is to receive $556,763.00 within ten days of closing, including $200,000.00 in fees likely divided as Stephen Gordon ($100,000.00) and Leonard B. Zide ($100,000.00), without any proof of actual expense or services rendered;
- Ferris Development Group and Lax Media LLC are each to receive $100,000.00 despite having previously attempted to acquire the Debtor's property for only $2.5 million, far below its fair market value of $5 million; and
- These distributions appear to reward parties who sought to acquire or control the Debtor's asset at undervalue, contrary to the estate's best interests.

Movant submits that the funds allocated under this Settlement should not come from the Debtor's assets and that a properly filed motion to vacate the foreclosure, costing only $11, would resolve the Town's title issue lawfully and efficiently. There was a clear due process violation in the foreclosure process, and such a motion could be granted within a single hearing. *See Exhibit 3*

## IV. Requested Relief

Movant respectfully requests that the Court:

1. Shorten the notice period for the Sale and Settlement Motions so that objections must be filed within seven (7) days of service of the Combined Notice or such period as the Court deems reasonable;
2. Schedule an expedited combined hearing at the earliest available date following service, to allow the sale to close before the 2025 holiday season;
3. Authorize notice by ECF and direct email as sufficient under Rule 9007;
4. Find that the proposed sale and settlement are consistent with the Westborough SPE LLC Operating Agreement and in the best interest of creditors; and
5. Grant such other and further relief as the Court deems just and proper.

## Conclusion

For more than two years, delay has only increased costs, interest, and legal fees, steadily depleting the estate. The Operating Agreement authorizes precisely this kind of sale and liquidation, and further delay would defeat the Manager's contractual duty to wind up the Company efficiently. Expedited approval will maximize value and bring long-overdue relief to creditors.

DATED: November 7, 2025, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Mills Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

result in the fastest possible payment on allowed claims in this case. A summary of the terms of the Settlement (as set forth in Exhibit A, with any conflict between the summary below and Exhibit A to be resolved in favor of Exhibit A subject to the Parties' submission of any amendment to the Settlement to resolve such conflict) are as follows:

1.      Settlement of issues involving the Town:

(a) Under the terms of the Settlement, the Town and Lax shall have a period of one hundred and twenty days (120) following the passage of 14 days after this Court's entry of an order allowing this Motion (hereinafter "Lax Exclusivity Period") to complete the sale of the Property to Lax for $2,500,0001.00 (hereinafter the "Lax Sale").

(b) The Town shall receive the proceeds of the Lax Sale the sum of $1,165,000.00 in full satisfaction of any claims the Town may hold against the Debtor or the Bankruptcy Estate. The balance of the Lax Sale proceeds ($1,335,000) will be turned over to the Trustee subject to distribution upon further order of this Court.

(c) Within (3) days following the expiration of 14 days after this Court's entry of an order allowing this Motion the following shall occur:

      (i)     The Trustee shall file in the Bankruptcy Court a withdrawal of the Debtor's Motion to Vacate Judgment in the Tax Foreclosure Action (provided, however, that if the Tax Foreclosure Action has been remanded to the Land Court prior to that time, the Trustee shall file a withdrawal of the Debtor's objection in the Land Court).

      (ii)    The Town will withdraw its Motion for Relief from Stay (Docket #20) and its Motion to Dismiss the Bankruptcy proceeding pursuant to 11 U.S.C. §707(a) (Docket #69), as well as its Motion to Remand and/or Abstain from Hearing Tax Foreclosure Action (AP #24-04006 Docket #2).

      (iii)   The Trustee on behalf of the Debtor shall execute and file a Voluntary Notice of Dismissal (with prejudice) in the Civil Action pending in the United States District Court for the District of Massachusetts, Worcester Division entitled: *Westborough SPE, LLC v. Town of Westborough, et al.*, Case No. 4:23-CV-12017-MR6.

6

Exhibit 2

any interest of an entity other than the estate if "(1) applicable nonbankruptcy law permits sale of property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute, or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

41.     The Trustee believes that, once the Town vacates its Foreclosure Judgment as contemplated by the Settlement Agreement, the Property may be sold free and clear of all liens, claims, encumbrances, and interests pursuant to, without limitation, Bankruptcy Code § 363(f)(2) and (3).

## Distribution of Sale Proceeds

42.     The Debtor proposes to make the following distributions from the sale proceeds on or shortly after the sale closing per the terms of the Settlement Agreement:

| Sale Price | $5,111,111.11 |
|---|---|
| **Less** | |
| Town of Westborough (paid at Closing) | ($1,640,000.00) |
| MobileStreet (within 10 days of Closing) | ($200,000.00) |
| MobileStreet (within 10 days of Closing) | ($556,763.00) |
| Ferris (within 10 days of Closing) | ($100,000.00) |
| Lax (within 10 days of Closing) | ($100,000.00) |
| Approximate cost of deed stamps and other estimated recording and closing costs | ($25,000.00) |
| **Net Sale Proceeds for Estate** | **$2,489,348.11** |

43.     The Net Proceeds shall be retained by the Trustee for the benefit of the Estate

13

Exhibit 3



Lolonyon Akouete <loloact2@gmail.com>

---

## 19 TL 000768 [231 Turnpike Road, Westborough]

---

**John R Harrington** <john.harrington@jud.state.ma.us>                     Wed, Jan 4, 2023 at 4:18 PM
To: "loloact2@gmail.com" <loloact2@gmail.com>
Cc: Iris Leahy <attyleahy@outlook.com>

Dear Mr. Akouete,


I am a staff attorney/title examiner at the Massachusetts Land Court assigned to the Tax Title Department.   In this capacity, I received earlier today at the front counter of the Court your motion to vacate the judgment of foreclosure in this case.   I provided to the person who presented the motion to the Court a receipt for the $11.00 check he gave to the Court to cover the filing fee.   Now that the motion has been filed (and soon will be docketed), you need to advise the Court as to the day and time when you want the hearing to be held.   The Land Court conducts hearings on motions in tax lien cases only on Thursdays and then in two sessions, one beginning at 10 AM and the other beginning at 2 PM.   Please pick the Thursday and the session on that Thursday which you prefer and advise the Court in writing as to your selection.   I am copying on this message Iris A. Leahy, Esq., because she is the attorney for the plaintiff Town of Westborough.   If you have not done so already, you must mail a copy of your motion to vacate to Ms. Leahy and provide a certificate to the Court as to when you have accomplished this necessary step.   Similarly, you must inform Ms. Leahy by mail as to the day and time when the hearing will take place (to be sent at least 10 days in  advance of this date).


I note that you have signed the motion to vacate on behalf of Westborough SPE, LLC, in your capacity as one of its managers.   Unless you are licensed to practice law in Massachusetts, you will have to engage counsel to appear for your limited liability company at the hearing.   If you have any questions, you can reach me by email or at (617) 788-7480.


Yours truly,

John Harrington

Land Court Tax Title Department



**Lolonyon Akouete <loloact2@gmail.com>**

---

## 19 TL 000768 [231 Turnpike Road, Westborough]

---

**Lolonyon Akouete** <loloact2@gmail.com>                                    Wed, Jan 4, 2023 at 7:44 PM
To: John R Harrington <john.harrington@jud.state.ma.us>
Cc: Iris Leahy <attyleahy@outlook.com>, denise Edwards <deniseedwards818@yahoo.com>

Dear Mr. Harrington,

Thursday, January 19, at 10 AM is fine for the hearing. (if it is open)
I have already sent Ms. Leahy an email with the motion to vacate, but I will mail it to her and provide a certificate to
the Court.
I will also inform Ms. Leahy by mail about the hearing once it is scheduled.

And, yes, we will retain an attorney to appear for us in the hearing.

Thank you,
Lolonyon Akouete
443-447-3276
[Quoted text hidden]

Exhibit 4


Lolonyon Akouete <info@smartinvestorsllc.com>

---

## Westborough SPE, LLC - 231 Turnpike - Westborough

---

**Durga Nagalla** <durganagalla@gmail.com>                               Mon, Apr 10, 2023 at 11:01 AM
To: Lolonyon Akouete <info@smartinvestorsllc.com>, venkatesh mohanraj <venki.mohanraj@gmail.com>

Hi Lolonyon, thanks for the call. As promised, we quickly checked with our accountant and here are the dues based on the easement agreement. I want to mention that to resolve this more amicably, we are willing to forgo the interest and attorney fees we incurred during these stranded years.

Also, please send us the Zoom link for the court hearing.

Regal paid for 8 Months. That said, ⅓ amount of 2017 = 111440.38/3 = 37,146.79

2018 = 79,406

2019 = 71,531.81

2020 = 68,008.12

2021 = 60,394

2022 = 77,360

Thanks,

Durga.

[Quoted text hidden]

| Debtor | Westborough SPE LLC | Case number (if known) |
|--------|---------------------|------------------------|
|        | Name                |                        |

## 13. Each petitioner's claim

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|--------------------|------------------------------|-------------------------------------------------|
| Nathanson & Goldberg, P.C. | Legal Fees and Costs | $ $100,507.83 |
| The MobileStreet Trust | CAM Charges | $ $356,681.00 |
| | | $ _____ |
| | Total of petitioners' claims | $ 457,188.83 |

If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.

## Part 4: Request for Relief

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

### Petitioners or Petitioners' Representative

**Name and mailing address of petitioner**

Nathanson & Goldberg, P.C.
Name

183 State Street, 5th FL
Number    Street

Boston, MA 02109
City            State        ZIP Code

**Name and mailing address of petitioner's representative, if any**

Scott A. Schlager, Esquire
Name

Nathanson & Goldberg, P.C., 183 State St., 5th FL
Number    Street

Boston, MA 02109
City            State        ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____
MM / DD / YYYY

✘ _Scott A. Schlager_  August 31, 2023
Signature of petitioner or representative, including representative's title

### Attorneys

Stephen F. Gordon, Esquire
Printed name

The Gordon Law Firm LLP
Firm name, if any

57 River Street, Suite 200
Number    Street

Wellesley, MA 02481
City            State        ZIP Code

Contact phone  617-456-1270    Email  sgordon@gordonfirm.com

Bar number  203600

State  MA

✘ /s/ Stephen F. Gordon
Signature of attorney

Date signed  8/31/2023
MM / DD / YYYY

## CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com



_____
Lolonyon Y Akouete



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

Westborough SPE LLC

Debtor

Chapter 7
23-40709-CJP

### ORDER CONVERTING 11/10/2025 HEARING TO TELEPHONIC HEARING

**MATTER:**

#968 Expedited Motion filed by Trustee Jonathan R. Goldsmith for Sale of Property free and clear of liens under Section 363(f) Re: 231 Turnpike Road, Westborough, Massachusetts Expedited Determination Requested Regarding Approval of Form of Combined Notice.

THE COURT HEREBY CONVERTS THE CONDUCT OF THE 2:30 P.M. HEARING SCHEDULED FOR 11/10/2025 ON THE REQUEST TO APPROVE THE FORM OF COMBINED NOTICE REGARDING THE SALE MOTION [ECF NO. 968] AND THE MOTION TO APPROVE THE SETTLEMENT AGREEMENT [ECF NO. 967] (THE "FORM OF NOTICE HEARING") DESCRIBED IN THE SCHEDULING ORDER ENTERED AT ECF NO. 972 FROM A HYBRID HEARING TO A HEARING BY TELEPHONE. TO PARTICIPATE, ATTENDEES SHALL DIAL (646) 828-7666 AND ENTER MEETING ID 160 201 6691 AND PASSCODE 536 553 WHEN PROMPTED.

THE TRUSTEE SHALL PROVIDE EMAILED NOTICE OF THIS ORDER AND SHALL FILE A CERTIFICATE OF SERVICE REGARDING THE SAME.

Dated: 11/07/2025

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

157



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:     Westborough SPE LLC | Chapter 7 |
| Debtor | 23-40709-CJP |

### ORDER SCHEDULING HEARING

**MATTER:**

#977 Motion filed by Creditor Lolonyon Akouete For Expedited Hearing and Shortened Notice Period Regarding Sale and Settlement Motions and Statement of Operating Agreement Compliance Re: 967 Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019 Re: 966 Settlement Agreement and Re: 968 Expedited Motion filed by Trustee Jonathan R. Goldsmith for Sale of Property free and clear of liens under Section 363(f) Re: 231 Turnpike Road, Westborough, Massachusetts.

THE COURT HEREBY SCHEDULES THE "MOTION FOR EXPEDITED HEARING AND SHORTENED NOTICE PERIOD REGARDING SALE AND SETTLEMENT MOTIONS AND STATEMENT OF OPERATING AGREEMENT COMPLIANCE" [ECF NO. 977] FOR HEARING ON NOVEMBER 10, 2025 AT 2:30 P.M. (THE "HEARING").

THE HEARING WILL BE CONDUCTED BY TELEPHONE. TO PARTICIPATE, ATTENDEES SHALL DIAL (646) 828-7666 AND ENTER MEETING ID 160 201 6691 AND PASSCODE 536 553 WHEN PROMPTED.

OBJECTIONS MAY BE MADE AT THE HEARING.

THE MOVANT SHALL PROVIDE NOTICE OF THE HEARING ON ALL PARTIES ENTITLED TO NOTICE BY EMAIL AND SHALL FILE A CERTIFICATE OF SERVICE EVIDENCING SUCH NOTICE HAS BEEN PROVIDED.

Dated: 11/07/2025

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

WESTBOROUGH SPE LLC,

Debtor.

Chapter 7
Case No. 23-40709-CJP

<u>CERTIFICATE OF SERVICE</u>

The undersigned, Angelina M. Savoia, hereby certifies that on this day I caused a copy of the following to be served on all parties listed on the attached Service List in the manner noted thereon:

- **Order Converting 11/10/2025 Hearing to Telephonic Hearing** [Dkt. No. 979].

Dated: November 7, 2025

/s/ Angelina M. Savoia, Esq.
Angelina M. Savoia (BBO #715690)
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA 02139
Phone: 508-533-7240
Email: angelina@nicholsondevine.com

<u>Electronic Mail Notice List</u>

The following list of parties and attorneys have received electronic notice via the Court's CM/ECF noticing process on 11/5/2025:

- **Jeffrey T Blake**    jblake@k-plaw.com
- **Paul W. Carey**    pcarey@miricklaw.com, bankrupt@mirickoconnell.com
- **Luis R. Casas**    luis.casasmeyer@akerman.com
- **Jose C. Centeio**    jc@jcfirm.com
- **Brian Charville**    bcharville@ferrisdevelopment.com
- **Christine E. Devine**    christine@nicholsondevine.com, devine.christiner109603@notify.bestcase.com;angelina@nicholsondevine.com;christine_492@ecf.courtdrive.com
- **Jonathan R. Goldsmith**    bankrdocs1@gkalawfirm.com, bankrdocs@gkalawfirm.com;intern@gkalawfirm.com;Esq..JonathanR.G.B145355@notify.bestcase.com
- **Jonathan R. Goldsmith**    trusteedocs1@gkalawfirm.com, mwolohan@gkalawfirm.com;trusteedocs@gkalawfirm.com;intern@gkalawfirm.com;MA43@ecfcbis.com
- **Stephen F. Gordon**    sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- **Richard King**    USTPRegion01.WO.ECF@USDOJ.GOV
- **Samual A. Miller**    samual.miller@akerman.com
- **Brian W. Riley**    briley@k-plaw.com
- **Douglas B. Rosner**    drosner@goulstonstorrs.com
- **Angelina M. Savoia**    angelina@nicholsondevine.com, angelina@ecf.courtdrive.com
- **Roger L. Smerage**    rsmerage@k-plaw.com

<u>Email and/or First Class Mail Service List</u>

Additionally, the following parties and attorneys have been served on 11/6/2025 as noted.

Lolonyon Akouete                                    Via Email
800 Red Mills Rd
Wallkill, NY 12589
info@smartinvestorsllc.com

Denise Edwards                                    Via Email
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com

Mark S. Lichtenstein, Esq.                    Via Email
Akerman LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
mark.lichtenstein@akerman.com


Lenard Benson Zide, Esq.
Butters Brazilian LLP                         Via Email
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com

Jonathan La Liberte, Esq.                     Via Email
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
jclaliberte@sherin.com

Christopher Mulhearn, Esq.                    Via Email
Law Office of Christopher M. Mulhearn, Inc.
100 Centerville Road, Suite 1
Warwick, RI  02886
cmulhearn@mulhearnlawri.com

Peter Nicosia, Esq.                           Via Email
Nicosia & Associates, PC
PO Box 721, 259 Middlesex Rd.
Tyngsboro, MA 01879
nicosia@nicosia-associates.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

**WESTBOROUGH SPE LLC,**

       **Debtor.**

**Chapter 7**
**Case No. 23-40709-CJP**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, Angelina M. Savoia, hereby certifies that on this day I caused a copy of the following to be served on all parties listed on the attached Service List in the manner noted thereon:[1]

- *Notice of: (I) Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Deadline for Filing Objections, and (III) Hearing Date; and (I) Proposed Settlement Agreement and Mutual Release, (II) Deadline for Filing Objections, and (III) Hearing Date* [Dkt. No. 989];

- *Settlement Agreement and Mutual Release* [Dkt. No. 966];

- *Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019* [Dkt. No. 967];

- *Trustee's Motion for Entry of an Order Approving and Authorizing the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief* [Dkt. No. 968]; and

- *Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968]* [Dkt. No. 978].

---

[1] The Trustee is also in the process of providing notice of the proposed sale and settlement by publication in multiple newspapers and will file a supplemental certificate of service when publication is completed.

Dated: November 12, 2025

/s/ Angelina M. Savoia, Esq.
Angelina M. Savoia (BBO #715690)
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA 02139
Phone: 508-533-7240
Email: angelina@nicholsondevine.com

## CM/ECF Notice List

The following list of parties and attorneys received electronic notice via the Court's CM/ECF noticing process upon each of the documents having been docketed:

- **Jeffrey T Blake**   jblake@k-plaw.com
- **Paul W. Carey**   pcarey@miricklaw.com, bankrupt@mirickoconnell.com
- **Luis R. Casas**   luis.casasmeyer@akerman.com
- **Jose C. Centeio**   jc@jcfirm.com
- **Brian Charville**   bcharville@ferrisdevelopment.com
- **Christine E. Devine**   christine@nicholsondevine.com, devine.christiner109603@notify.bestcase.com;angelina@nicholsondevine.com;christine_492@ecf.courtdrive.com
- **Jonathan R. Goldsmith**   bankrdocs1@gkalawfirm.com, bankrdocs@gkalawfirm.com;intern@gkalawfirm.com;Esq..JonathanR.G.B145355@notify.bestcase.com
- **Jonathan R. Goldsmith**   trusteedocs1@gkalawfirm.com, mwolohan@gkalawfirm.com;trusteedocs@gkalawfirm.com;intern@gkalawfirm.com;MA43@ecfcbis.com
- **Stephen F. Gordon**   sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- **Richard King**   USTPRegion01.WO.ECF@USDOJ.GOV
- **Samual A. Miller**   samual.miller@akerman.com
- **Brian W. Riley**   briley@k-plaw.com
- **Douglas B. Rosner**   drosner@goulstonstorrs.com
- **Angelina M. Savoia**   angelina@nicholsondevine.com, angelina@ecf.courtdrive.com
- **Roger L. Smerage**   rsmerage@k-plaw.com

## First Class Mail, Postage Prepaid per attached Service List

Service has been made via first class mail, postage prepaid on each person or entity identified on the Service List attached hereto as **Exhibit A**.

## First Class Mail, Postage Prepaid and/or email notice provided as noted[2]

Additionally, the following parties and attorneys have been served as noted:

| | | |
|---|---|---|
| Lolonyon Akouete<br>800 Red Mills Rd<br>Wallkill, NY 12589<br>info@smartinvestorsllc.com | Interested Party | Via Email and<br>via First Class mail per Exhibit A |

---

[2] The Trustee reserves all rights regarding the parties to whom the Trustee is providing notice herein and nothing in the descriptions in this certificate shall be deemed an admission of any party's interest.

| | | |
|---|---|---|
| Denise Edwards<br>137 North 25th Street<br>Wyandanch, NY 11798<br>deniseedwards818@yahoo.com | Interested Party | Via Email and<br>via First Class mail per Exhibit A |
| Mark S. Lichtenstein, Esq<br>Akerman LLP<br>1251 Avenue of the Americas<br>37th Floor<br>New York, NY 10020<br>mark.lichtenstein@akerman.com | Counsel to Babcock & Brown | Via Email and<br>via First Class mail per Exhibit A |
| Lenard Benson Zide, Esq<br>Butters Brazilian LL<br>420 Boylston Street, 4th Floor<br>Boston, MA 02116<br>zide@buttersbrazilian.com | Counsel to MobileStreet Trust | Via Email and<br>via First Class mail per Exhibit A |
| Jonathan La Liberte, Esq.<br>Sherin and Lodgen LLP<br>101 Federal Street, 30th Floor<br>Boston, MA 02110<br>jclaliberte@sherin.com | Counsel to Sherin and Lodgen LLP | Via Email |
| Sivanjali Karalasingham<br>Emily Barrett<br>Johnson Winter Slattery<br>GPO Box 9831<br>Sydney, 2000<br>Australia<br>Sivanjali.Karalasingham@jws.com.au<br>Emily.Barrett@jws.com.au | Counsel to David Lombe, the<br>liquidator of Babcock & Brown<br>Limited | Via Email |
| Christopher Mulhearn, Esq.<br>Law Office of Christopher M.<br>Mulhearn, Inc.<br>100 Centerville Road, Suite 1<br>Warwick, RI  02886<br>cmulhearn@mulhearnlawri.com | Counsel to LAX Media MA | Via Email and<br>Via First Class Mail per Exhibit A |
| Peter Nicosia, Esq.<br>Nicosia & Associates, PC<br>PO Box 721, 259 Middlesex Rd.<br>Tyngsboro, MA 01879<br>nicosia@nicosia-associates.com | Counsel to Proposed Buyer | Via Email and<br>Via First Class Mail per Exhibit A |
| Mignonette Investments Limited<br>2 Harrison Street, 6th Floor<br>San Francisco, CA 94105 | Potential equity holder of Debtor | Via First Class Mail per Exhibit A |
| Mignonette Investments Limited<br>Tropic Isle Building<br>PO Box 438<br>Road Town Tortola<br>British Virgin Islands | Potential equity holder of Debtor | Via First Class Mail per Exhibit A |
| Mignonette Investments Limited<br>c/o Claudette I. Francis<br>Tropic Isle Building<br>PO Box 438<br>Road Town Tortola<br>British Virgin Islands | Potential equity holder of Debtor | Via First Class Mail per Exhibit A |

165

| PENAGO PTY LTD<br>c/o QUANTUM PARTNERS<br>Suite 1 Level 1, 95-97 Grafton Street<br>Bondi Junction NSW 2022<br>Australia | Potential equity holder of<br>Mignonette Investments Ltd | Via First Class Mail per Exhibit A |
|---|---|---|
| PENAGO PTY LTD<br>c/o Paul Platus<br>15 St Leonards Avenue<br>St. Kilda VIC 3182<br>Australia | Potential equity holder of<br>Mignonette Investments Ltd | Via First Class Mail per Exhibit A |
| PENAGO PTY LTD<br>c/o Phillip Hartley Green<br>1C Wentworth Place<br>Point Piper NSW 2027<br>Australia | Potential equity holder of<br>Mignonette Investments Ltd | Via First Class Mail per Exhibit A |
| PENAGO PTY LTD<br>PO Box 2480<br>Bondi Junction NSW 1355<br>Australia | Potential equity holder of<br>Mignonette Investments Ltd | Via First Class Mail per Exhibit A |
| Phillip Hartley Green<br>1C Wentworth Place<br>Point Piper NSW 2027<br>Australia | Potential interested party regarding<br>Mignonette Investments Ltd and<br>Penago Pty Ltd | Via First Class Mail per Exhibit A |
| Milly Green<br>Unit 22, 17-19 Gowrie Avenue<br>Bondi Junction NSW 2022<br>Australia | Potential interested party regarding<br>Mignonette Investments Ltd and<br>Penago Pty Ltd | Via First Class Mail per Exhibit A |
| Phillip Green<br>Alceon Group Pty Limited<br>Level 26, 1 O'Connell Street<br>Sydney, New South Wales 2000<br>Australia<br>Phil.Green@alceon.com.au | Potential interested party regarding<br>Mignonette Investments Ltd and<br>Penago Pty Ltd | Via Email and<br>First Class Mail per Exhibit A |
| ABRAXAS INTERNATIONAL<br>LIMITED<br>36/F, Tower Two<br>Times Square, 1 Matheson Street<br>Causeway Bay<br>Hong Kong | Potential Interested Party identified<br>by Mr. Akouete | Via First Class Mail per Exhibit A |
| JULIE IP, ESQ.<br>31/F, Tower Two,<br>Times Square, 1 Matheson Street<br>Causeway Bay<br>Hong Kong<br>julie.ip@tmf-group.com | Potential Interested Party identified<br>by Mr. Akouete | Via Email and<br>First Class Mail per Exhibit A |
| Mignonette Investments Limited<br>c/o Insinger De Beaufort<br>16/F, Standard Chartered Bank<br>Building<br>4-4A Des Voeux Road<br>Hong Kong | Potential equity holder of<br>Mignonette Investments Ltd | Via First Class Mail per Exhibit A |
| Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101 | Taxing Authority | Via First Class Mail per Exhibit A |

| Massachusetts Dept of Revenue Bankruptcy Unit PO Box 7090 Boston, MA 02114-9564 | Taxing Authority | Via First Class Mail per Exhibit A |
|---|---|---|
| Virgin Islands International Tax Authority Peace House, Pickering Drive, Road Town, Tortola VG 1110 Virgin Islands | Taxing Authority | Via First Class Mail per Exhibit A |
| Duncan Chapman Keller Williams North Central Realty 670 Mechanic St Leominster MA 01453 | Commercial Real Estate Broker | Via First Class Mail per Exhibit A |
| Jammie Geddis Keller Williams North Central Realty 670 Mechanic St Leominster MA 01453 | Commercial Real Estate Broker | Via First Class Mail per Exhibit A |
| Glickman Kovago & Jacobs Attn: James Glickman, Principal 1 Mercantile Street, Suite 510 Worcester, MA 01608 | Commercial Real Estate Broker | Via First Class Mail per Exhibit A |
| Kelleher & Sadowsky Attn: William D. Kelleher, IV, Managing Partner 120 Front Street Worcester, MA 01608 | Commercial Real Estate Broker | Via First Class Mail per Exhibit A |
| Connect United Inc. c/o Matt Cuneo NAI Parsons Commercial Group Boston matt.cuneo@svn.com | Bidder for Property | Via Email |
| Pulte Homes of New England LLC c/o Mike Travaline Vice President of Land Acquisition Michael.Travaline@Pulte.com | Bidder for Property | Via Email |
| Enjoi 77 Holdings LLC c/o Zach Feldman zf@e77h.com | Bidder for Property | Via Email |

167

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: | CASE NO: 23-40709-CJP |
| WESTBOROUGH SPE LLC | **DECLARATION OF MAILING CERTIFICATE OF SERVICE** |
| | Chapter: 7 |
| | ECF Docket Reference No. 989 |

On 11/12/2025, I did cause a copy of the following documents, described below,

Notice of: (I) Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Deadline for Filing Objections, and (III) Hearing Date; and (I) Proposed Settlement Agreement ECF Docket Reference No. 989

Settlement Agreement and Mutual Release 966

Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019 967

Trustee's Motion for Entry of an Order Approving and Authorizing the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief 968

Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968] 978

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4). A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served electronically with the documents described herein per the ECF/PACER system.

DATED: 11/12/2025

/s/ /s/ Angelina M. Savoia
/s/ Angelina M. Savoia  715690

Nicholson Devine LLC
21 Bishop Allen Drive

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:

WESTBOROUGH SPE LLC

CASE NO: 23-40709-CJP

**CERTIFICATE OF SERVICE
DECLARATION OF MAILING**

Chapter: 7
ECF Docket Reference No. 989

On 11/12/2025, a copy of the following documents, described below,

Notice of: (I) Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Deadline for Filing Objections, and (III) Hearing Date; and (I) Proposed Settlement Agreement ECF Docket Reference No. 989

Settlement Agreement and Mutual Release 966

Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019 967

Trustee's Motion for Entry of an Order Approving and Authorizing the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief 968

Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968] 978

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto _____ Declaration of Certificate of Service and that it is true and correct to the best of my kno__

DATED: 11/12/2025

Miles Wood
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
/s/ Angelina M. Savoia
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA  02139

**(The following pages contain parties served via First Class USPS Mail Service unless stated otherwise.)**

LOLONYON AKOUETE
800 RED MILLS RD
WALLKILL NY 12589

DENISE EDWARDS
137 NORTH 25TH STREET
WYANDANCH NY 11798

MARK S LICHTENSTEIN ESQ
AKERMAN LLP
1251 AVENUE OF THE AMERICAS
37TH FLOOR
NEW YORK NY 10020

LENARD BENSON ZIDE ESQ
BUTTERS BRAZILIAN LL
420 BOYLSTON STREET 4TH FLOOR
BOSTON MA 02116

CHRISTOPHER MULHEARN ESQ
LAW OFFICE OF CHRISTOPHER M MULHEARN INC
100 CENTERVILLE ROAD SUITE 1
WARWICK RI  02886

PETER NICOSIA ESQ
NICOSIA  ASSOCIATES PC
PO BOX 721 259 MIDDLESEX RD
TYNGSBORO MA 01879

INTERNATIONAL

INTERNATIONAL

MIGNONETTE INVESTMENTS LIMITED
2 HARRISON STREET 6TH FLOOR
SAN FRANCISCO CA 94105

MIGNONETTE INVESTMENTS LIMITED
TROPIC ISLE BUILDING
PO BOX 438
ROAD TOWN TORTOLA
BRITISH VIRGIN ISLANDS

MIGNONETTE INVESTMENTS LIMITED
CO CLAUDETTE I FRANCIS
TROPIC ISLE BUILDING
PO BOX 438
ROAD TOWN TORTOLA
BRITISH VIRGIN ISLANDS

INTERNATIONAL

INTERNATIONAL

INTERNATIONAL

PENAGO PTY LTD
CO QUANTUM PARTNERS
SUITE 1 LEVEL 1 95-97 GRAFTON STREET
BONDI JUNCTION NSW 2022
AUSTRALIA

PENAGO PTY LTD
CO PAUL PLATUS
15 ST LEONARDS AVENUE
ST KILDA VIC 3182
AUSTRALIA

PENAGO PTY LTD
CO PHILLIP HARTLEY GREEN
1C WENTWORTH PLACE
POINT PIPER NSW 2027
AUSTRALIA

INTERNATIONAL

INTERNATIONAL

INTERNATIONAL

PENAGO PTY LTD
PO BOX 2480
BONDI JUNCTION NSW 1355
AUSTRALIA

PHILLIP HARTLEY GREEN
1C WENTWORTH PLACE
POINT PIPER NSW 2027
AUSTRALIA

MILLY GREEN
UNIT 22 1719 GOWRIE AVENUE
BONDI JUNCTION NSW 2022
AUSTRALIA

INTERNATIONAL

INTERNATIONAL

INTERNATIONAL

PHILLIP GREEN
ALCEON GROUP PTY LIMITED
LEVEL 26 1 OCONNELL STREET
SYDNEY NEW SOUTH WALES 2000
AUSTRALIA

ABRAXAS INTERNATIONAL LIMITED
36F TOWER TWO
TIMES SQUARE 1 MATHESON STREET
CAUSEWAY BAY
HONG KONG

JULIE IP ESQ
31F TOWER TWO
TIMES SQUARE 1 MATHESON STREET
CAUSEWAY BAY
HONG KONG

INTERNATIONAL

MIGNONETTE INVESTMENTS LIMITED
CO INSINGER DE BEAUFORT
16F STANDARD CHARTERED BANK BUILDING
4-4A DES VOEUX ROAD
HONG KONG

INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA PA 19101

MASSACHUSETTS DEPT OF REVENUE
BANKRUPTCY UNIT
PO BOX 7090
BOSTON MA 02114-9564

INTERNATIONAL

VIRGIN ISLANDS INTERNATIONAL TAX AUTHORITY
PEACE HOUSE PICKERING DRIVE
ROAD TOWN TORTOLA VG 1110
VIRGIN ISLANDS

DUNCAN CHAPMAN
KELLER WILLIAMS NORTH CENTRAL REALTY
670 MECHANIC ST
LEOMINSTER MA 01453

JAMMIE GEDDIS
KELLER WILLIAMS NORTH CENTRAL REALTY
670 MECHANIC ST
LEOMINSTER MA 01453

CASE INFO

GLICKMAN KOVAGO  JACOBS
ATTN JAMES GLICKMAN PRINCIPAL
1 MERCANTILE STREET SUITE 510
WORCESTER MA 01608

KELLEHER  SADOWSKY
ATTN WILLIAM D KELLEHER IV MANAGING PARTNER
120 FRONT STREET
WORCESTER MA 01608

 LABEL MATRIX FOR LOCAL NOTICING
NCRS ADDRESS DOWNLOAD
CASE 23-40709-CJP
DISTRICT OF MASSACHUSETTS
WED NOV 12 12-9-47 PST 2025

171

EXCLUDE

(U)BABCOCK  BROWN HOLDINGS  INC

EXCLUDE

(U)BABCOCK  BROWN INTERNATIONAL PTY LTD

EXCLUDE

(U)CALIFORNIA STATE CONTROLLERS OFFICE

EXCLUDE

(U)FERRIS DEVELOPMENT GROUP  LLC

GOULSTON  STORRS PC
ONE POST OFFICE SQUARE
BOSTON  MA 02109-2115

NATHANSON  GOLDBERG  PC
183 STATE STREET  5TH FL
BOSTON  MA 02109-2666

THE MOBILESTREET TRUST
12 COLE ROAD
WAYLAND  MA 01778-3145

EXCLUDE

(U)TOWN OF WESTBOROUGH

DEBTOR

WESTBOROUGH SPE LLC
231 TURNPIKE ROAD
WESTBOROUGH MA 01581-2807

EXCLUDE

WORCESTER
U S BANKRUPTCY COURT
595 MAIN STREET
WORCESTER  MA 01608-2060

ALLEN HIGHT
THE MOBILESTREET TRUST
12 COLE ROAD
WAYLAND  MA 01778-3145

DARIN CLAGG
24 KOBBS KORNER RD
PINE BUSH  NY 12566-5302

EXCLUDE

(D)DARIN CLAGG
24 KOBBS KORNER RD
PINE BUSH  NY 12566-5302

DAVID M FERRIS
FERRIS DEVELOPMENT GROUP  LLC
118 TURNPIKE RD  STE 300
SOUTHBOROUGH  MA 01772-2133

DENISE EDWARDS
137 NORTH 25TH STREET
WYANDANCH  NEW YORK  11798  11798-2002

FERRIS DEVELOPMENT GROUP  LLC
CO PAUL W CAREY  ESQ
MIRICK OCONNELL
100 FRONT STREET
WORCESTER  MA 01608-1425

INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA  PA 19101-7346

(P)LOLONYON AKOUETE
ATTN WESTBOROUGH SPE LLC
800 RED MILLS RD
WALLKILL NY 12589-3220

LOLONYON AKOUETTE
800 RED MILLS RD
WALLKILL  NY 12589-3220

MATTHEW A MORRIS SHERIN AND LODGEN LLP
101 FEDERAL STREET  30TH FLOOR
BOSTON  MA 02110-2109

NATHANSON  GOLDBERG  PC
ATTN  SCOTT SCHLAGER
183 STATE STREET  5TH FL
BOSTON  MA 02109-2666

SCOTT A SCHLAGER
NATHANSON  GOLDBERG  PC
183 STATE STREET  5TH FLOOR
BOSTON  MA 02109-2666

THE MOBILESTREET TRUST
225 TURNPIKE ROAD
WESTBOROUGH MA 01581-2807

TOWN OF WESTBOROUGH
34 WEST MAIN STREET
WESTBOROUGH  MA 01581-1998

WALTER HORST
BABCOCK  BROWN
1264 RIMER DRIVE
MORAGA  CA 94556-1727

COREY GUSTAFSON
CORE VALUES APPRAISAL  ADVISORY  INC
60 SURRY DRIVE
COHASSET  MA 02025-1024

CRAIG R JALBERT
AS LIQUIDATING SUPERVISOR
VERDOLINO  LOWEY PC
124 WASHINGTON STREET
FOXBOROUGH  MA 02035-1368

~~EXCLUDE~~

DENISE EDWARDS
137 NORTH 25TH STREET
WYANDANCH  NY 11798-2002

~~(U)DYANN BLAINE~~

JONATHAN R GOLDSMITH
GOLDSMITH  KATZ  ARGENIO  PC
1350 MAIN STREET
SUITE 1505
SPRINGFIELD  MA 01103-1676

~~EXCLUDE~~

~~(D)(P)LOLONYON AKOUETE~~
~~ATTN WESTBOROUGH SPE LLC~~
~~800 RED MILLS RD~~
~~WALLKILL NY 12589-3229~~

~~EXCLUDE~~

~~(D)(P)LOLONYON AKOUETE~~
~~ATTN WESTBOROUGH SPE LLC~~
~~800 RED MILLS RD~~
~~WALLKILL NY 12589-3229~~

~~EXCLUDE~~

~~(U)PETER BLAUSTEIN~~

~~EXCLUDE~~

~~(U)WALTER A HORST~~

RICHARD KING
OFFICE OF US TRUSTEE
446 MAIN STREET
14TH FLOOR
WORCESTER  MA 01608-2361

173

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

WESTBOROUGH SPE LLC,

　　　Debtor.

Chapter 7
Case No. 23-40709-CJP

TRUSTEE'S NOTICE OF PUBLICATION REGARDING PROPOSED
SALE OF 231 TURNPIKE ROAD, WESTBOROUGH, MASSACHUSETTS
AND PROPOSED SETTLEMENT AGREEMENT

NOW COMES Jonathan R. Goldsmith, the Chapter 7 trustee (the "Trustee") of the

bankruptcy estate (the "Estate") of Westborough SPE LLC (the "Debtor"), and, in compliance

with the Proceeding Memorandum and Order of this Court dated November 18, 2025 [Dkt. No.

992] hereby provides notice that the Trustee has published reasonable notice of the Trustee's

proposed sale of the bankruptcy estate's interest in real property at 231 Turnpike Road,

Westborough, MA for $5,111,111.11 (the "Sale") and the proposed settlement and payment of

certain claims per a proposed Settlement Agreement ("Settlement") as follows:

1. On November 20, 2025 publication of the proposed Sale and proposed Settlement ran
   in the Boston Globe (See **Exhibit A**);

2. On November 20, 2025 publication of the proposed Sale and the proposed Settlement
   ran in the national publication of The Wall Street Journal (See **Exhibit B**); and

3. On November 20, 2025 publication of the proposed Sale and the proposed Settlement
   ran in The Australian, a national Australian circulation newspaper (See **Exhibit C**).

Respectfully submitted,

**Jonathan R. Goldsmith,**
**Chapter 7 Trustee**

by his counsel,


_____/s/ Christine E. Devine_____
Christine E. Devine, BBO# 566990
Angelina M. Savoia, BBO# 715690
Nicholson Devine LLC
P.O. Box 7
Medway, MA 02053
Phone:  508-533-7240
Email:  christine@nicholsondevine.com

Dated: December 4, 2025

2

# EXHIBIT A

## TO GLOBE NEWSPAPER CO., INC.,

For Advertising in the Boston Globe

**Miller Advertising**

## <u>Legal Notice</u>



**BANKRUPTCY SALE NOTICE**

Jonathan Goldsmith, Ch 7 bankruptcy trustee of Westborough SPE LLC (Mass. Bankr. Case No. 23-40709) gives notice of a proposed sale of the bankruptcy estate's interest in real property at 231 Turnpike Road, Westborough, MA for $5,111,111.11 (Sale) and the proposed settlement and payment of certain claims per a proposed Settlement Agreement (Settlement). Any objection to the Sale or Settlement must be filed with the Mass. Bankruptcy Court (Court) by December 13, 2025 at 11:59 p.m., E.S.T. The Court will conduct a hearing on the Sale and Settlement on December 17, 2025 at 2:30 p.m. E.S.T. Objections must comply with the Court-approved Sale Notice. For copies of all relevant documents, including the Sale Notice, contact Trustee's counsel, Christine Devine at 508-533-7240 or christine@nichosondevine.com.

I, Jennifer Sunderland, hereby certify that I am a Classified Advertising Sales Representative of the Boston Globe, Media Partners, LLC., publishers of the Boston Globe; that the above advertisement has been inserted in said newspaper one time on Thursday, November 20, 2025 and that it is charged at the usual rates.

Boston, Mass – Dec 2, 2025

Personally appeared before me and made oath that the above statement subscribed to him is true........
Suffolk ss.

Christopher M. Zito
NOTARY PUBLIC
Commonwealth of
Massachusetts
My Commission Expires
November 8, 2030

Notary Public.
My Commission Expires      11 8 -2030

Ad# 759529/Bankruptcy Sale Notice 231 Turnpike St Westborough, MA

177

# EXHIBIT B

## AFFIDAVIT

STATE OF NEW JERSEY     )
                       ) ss:
CITY OF MONMOUTH JUNCTION, in the COUNTY OF MIDDLESEX )

I, Keith Oechsner, being duly sworn, depose and say that I am the Advertising Clerk of the Publisher

of THE WALL STREET JOURNAL, a daily national newspaper of general circulation throughout

the United States, and that the notice attached to this Affidavit has been regularly

published in THE WALL STREET JOURNAL for National distribution for

1   insertion(s) on the following date(s):

NOV-20-2025;

ADVERTISER: Y059 GOLDSMITH, KATZ & ARGENIO, P.C;

and that the foregoing statements are true and correct to the best of my knowledge.

Sworn to before me this
20   day of   November   2025

Notary Public



# NEW HIGHS AND LOWS

WSJ.com/newhighs

The following explanations apply to the New York Stock Exchange, NYSE Arca, NYSE American and Nasdaq Stock Market stocks that hit a new 52-week intraday high or low in the latest session. % CHG-Daily percentage change from the previous trading session.

Wednesday, November 19, 2025

## Highs

## Lows

# Biggest 1,000 Stocks

WSJ.com/stocks

Continued From Page 85

## Mutual Funds

Data provided by LSEG

### NOTICE TO READERS

Data as of Tuesday, November 18, 2025. Up-to-date mutual-fund data can be found at WSJ.com/market-data.

Top 250 mutual funds for Nasdaq-published share classes by net assets.

Explanatory notes: Quotations supplied by Lipper, a Thomson Reuters company, and the National Association of Securities Dealers. NAV stands for net asset value per share; a-b distribution. B-previous day's quotation. c-per share; a-b distribution apply. B-previous day's quotation. c-previous day's quotation. d-12b-1 and e apply. e-ex-distribution. f-previous day's quotation. NS-Fund didn't exist at point of count.

ADVERTISEMENT

# The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

## COMMERCIAL REAL ESTATE

### UCC PUBLIC SALE NOTICE

## COMMERCIAL REAL ESTATE

### NOTICE OF UCC PUBLIC AUCTION SALE

## BANKRUPTCIES

## BUSINESS OPPORTUNITIES

### BANKRUPTCY SALE NOTICE

### ROGALLERY WILL BUY YOUR ART

Want to sell some art?
RoGallery has you covered. We are
looking to buy, from single pieces to
entire collections and estates.
Art@RoGallery.com / 718-937-0901

### THE WALL STREET JOURNAL.

# THE MARKETPLACE

ADVERTISE TODAY
(800) 366-3975

© 2025 Dow Jones & Company, Inc.
All Rights Reserved.

## IPO Scorecard

Performance of IPOs, most-recent listed first

## Cash Prices

Wednesday, November 19, 2025

These prices reflect buying and selling of a variety of actual or "physical" commodities in the marketplace—separate from the futures price on an exchange, which reflects what the commodity might be worth in future months.

### Energy

### Metals

### Grains and Feeds

### Food

### Fibers and Textiles

### Fats and Oils

Source: Dow Jones Market Data

# EXHIBIT C

**AFFIDAVIT**

| | |
|---|---|
| Name | Mr Greg Wilson |
| Address | 2 Holt Street, Surry Hills NSW 2010 |
| Occupation | Client Success Manager, The Australian |
| Date | 3 December 2025 |

I, Greg Wilson, on oath affirm that:

1      I am the Client Success Manager for *The Australian*, a national Australian
       circulation newspaper publication of News Corp Australia of 2 Holt St, Surry Hills
       NSW Australia; and

2      Order Number 669104 for the client, GOLDSMITH, KATZ & ARGENIO, P.C.was
       published in the said newspaper in the issue dated 20 November 2025 (as
       attached).

AFFIRMED at Sydney,
Australia

| | |
|---|---|
| Signature of deponent | Greg Wilson |
| Name of witness | Louise Domenico |
| Address of witness | [ 2 HOLT ST, SURRY HILLS] NSW 2010   AUSTRALIA |
| Capacity of witness | Justice of the peace |

And as a witness, I certify the following matters concerning the person who made this affidavit (the **deponent**):

1      I saw the face of the deponent.

2      ~~#I have known the deponent for at least 12 months.~~ [OR, delete whichever option is inapplicable]
       #I have confirmed the deponent's identity using the following identification document:

NSW DRIVERS LICENCE

Identification document relied on (may be original or certified copy)

Signature of witness

182

THIS IS THE ATTACHMENT REFERRED TO IN THE AFFIDAVIT OF GREG WILSON OF 3 DECEMBER 2025.

LOUISE DE DOMENICO #214421
2 HOLT ST, SURREY HILLS NSW 2010 AUSTRALIA



# Banks drag ASX to six-month low

## EQUITIES

**CAMERON MICALLEF**

Australia's major banks continued their sell-off on Wednesday, as they dragged the overall sharemarket to its lowest level in almost six months.

The benchmark S&P/ASX 200 dipped 28.2 points, or 0.2 per cent, to 8447.6 points and the broader All Ordinaries fell 16.6 points, or 0.19 per cent, to 8714 points.

Wednesday's slip followed a rough Tuesday trading session when more than $50bn was wiped off the market.

But Australian super funds are on track for another solid year despite recent sharemarket turbulence, according to research firm Chant West.

The median growth super fund sits at a healthy 7.9 per cent return for 2025 with just six weeks left in the year. It comes as the ASX 200 experiences its biggest pullback since April. Chant West's Mano Mohankumar said a final result near 7.8 per cent would be a good outcome given the uncertain tone of the US on Thursday.

On an overall negative day on the local bourse, seven of the 11 sectors finished lower, dragged down by banking and technology stocks.

Commonwealth Bank dropped 1.25 per cent to $158.30.

Westpac shed 14 per cent to $37.34. National Australia Bank fell 0.69 per cent to $40.32 and ANZ lost 2.04 per cent to $35.42.

Technology shares continued their sell-off after they gave up almost 5 per cent would be a good outcome given the uncertain tone of the US on Thursday.

Capital.com senior financial market analyst Kyle Rodda said investors were selling off technology stocks ahead of a key update out of the US on Thursday.

"The markets continue to digest trading into positive jobs data and Nvidia's earnings after Wall Street's closing bell tomorrow," Mr Rodda said. "The dominant narratives in the market right now remain about the US rate outlook and the whiplash of artificial intelligence stocks."

### The market yesterday

| | S&P/ASX 200 | −0.2% |
|---|---|---|
| Energy | 0.86% | |
| Materials | 0.25% | |
| Real estate | 0.61% | |
| Cons staples | −0.26% | |
| Industrials | −0.17% | |
| Info tech | −0.3% | |
| Utilities | −0.5% | |
| Financials | −1.19% | |

Life360 fell 0.77 per cent to $33.00. Codan dropped 1.85 per cent to $24.44 and Megaport sank 5.56 per cent to $12.45.

Offsetting falls from the banks and technology names was a mixed gold price, which helped lift local producers. Northern Star Resources jumped 2.85 per cent to $25.39. Evolution Mining was up 2.63 per cent at $11.04 and Newmont added 1.28 per cent to close at $114.06.

AMP chief economist and head of investment strategy Shane Oliver called the market's valuation "stretched", but he pointed to positive signs for there with a long-term approach.

"Australian economic growth is gradually improving, which should lead to stronger ASX-listed company profits next year," Dr Oliver said. "So there is a risk of recession, which is important because major bear markets in shares tend to be associated with recession — although this is no guarantee as shares often lead the broad economy."

Webjet soared 36.56 per cent to 5% after Helloworld announced it was trying to take over the online travel agency.

CSL dipped 0.88 per cent to $179.22 after it announced plans to invest about $4.91bn ($2.5bn) as it could manufacture more therapies derived from blood products and had reflected in its US business.

Defence contractor Droneshield plunged 19.04 per cent to $1.91 on news that US chief executive Oleg Vornik had resigned, effective immediately. The stock has lost 66 per cent since the start of October.

## Barons count the costs of royalty

*Continued from Page 11*

said. "Unlike taxes, royalties are stripped from companies regardless of whether they are making a profit. These are challenging times for coal mining in Queensland as we face a perfect storm of negative impacts, both at home and abroad."

Mr Whelan, who founded QCoal in 1989, started shifting investment away from Queensland because of the royalties and BHP has put a brake on some new investments in the state.

BHP blamed the "unsustainable impact of the Queensland government's coal royalties on business returns" for the loss of 750 jobs at its operations.

The mining giant is putting the Saraji South mine minus 650 halls at the start of Dec ember.

Geraldine Slattery, BHP's president in Australia, because Queensland's political leaders of lacking the courage and vision to reset Queensland's attractiveness as an investment destination.

Ms Slattery said more than 11m campaigning against the Labor government after it legislated to close a QCoal mining camp, and was allowed to keep the foxhole open after Dowd Crisafulli led the LNP to victory in last year's election.

The LNP was victorious in all but one of the seats targeted by QCoal through its billboard-wherever.com tax campaign.



Lacking 'courage and vision' to reset state's attractiveness

GERALDINE SLATTERY
BHP PRESIDENT AUSTRALIA

Mr Choog, who has made his fortune in the resources industry and real estate, doubled down on his investments in Queensland a month after the LNP claimed victory. In November last year he agreed to pay $145m for Anglo American's stakes in two Queensland coal mines, Jellinbah and Lake Vermont.

Mr Choog, who has worked in the Queensland mining sector for several decades, owned the Jellinbah mine with subsidiaries of flagship group Marubeni and Anglo. Under the deal, via his private investment vehicle Zashvin, he scooped up Anglo's 33.3 per cent stake in Jellinbah Group which owns a 70 per cent interest in the Jellinbah Ltd and Lake Vermont metallurgical coal mines in Queensland.

The coal industry is now targeting regional voters in its campaign to convince governments to ax their tax agreements.

Whitehaven Coal boss Paul Flynn recently emailed the company's workforce, urging them to add their weight to a Resource Industry Network campaign against what he said was the highest royalty regime of its kind anywhere in the world.

"And, because it is levied on revenue, not profit, it means coal companies like ours are being deprived of the capital they rely upon to sustain existing operations and invest in new projects and new jobs," he said.

## Ziller's logic behind hefty 39pc annual returns

**DAVID ROGERS**
MARKETS EDITOR

Global markets are on edge before Nvidia's quarterly results and US jobs data. And doubts are mounting about whether the artificial intelligence spending boom will end in tears.

Yet Joseph Ziller, founder of Ziller Funds Management, is unplussed.

His fund has delivered a 39 per cent annual return since launching in November 2022 by backing an unfashionable investment thesis that companies run by their founders consistently outperform the market.

"We're a growth fund, and so we very much take a long-term view," says the Australian-based Ziller. "Clients that allocate with us think I want attractive long-term returns, but for this share of the portfolio I'm going long, I'm willing to look through some volatility."

Australia's S&P/ASX 200 closed down 0.25 per cent on Wednesday, after diving 1.9 per cent in the previous trading session and wiping off more than $50bn of value. It has tumbled as much as 3.5 per cent over four weeks — the biggest pullback since the tariff tantrum of March and April.

The Ziller Global Fund holds a concentrated portfolio of only 15 stocks, including two of the so-called Magnificent Seven — Nvidia and Tesla. But Ziller is quick to point out that 84 per cent of his portfolio sits outside that group of mega-cap technology stocks.

What distinguishes his approach is a rigorous assessment of founders. The medium chief executive tenure globally is real 4.8 years. The median founder-CEO tenure in Ziller's portfolio is 19 years — almost four times longer.

"These founders have been running the same company through multiple cycles," Ziller says. "We have this long track record to assess them and build confidence."

His team ranks founders across two dimensions: output and quality. Think of it like a plumbing system. Output measures how much a founder does. Quality measures the integrity of the system.

"You can have high output, but if you've got low quality, that's



The results of Jensen Huang's Nvidia are imminent, but Ziller will look past the noise

where you get the big financial distorters — organisations that ever right, but not what we want turn an investment point of view," Ziller says.

The quality assessment focuses on character and how founders operate under pressure.

"I would rather have low output and high integrity if I couldn't have both," Ziller says. "There's no use having high output if the system breaks."

This philosophy has been tested before. In late 2022, Nvidia fell about 60 per cent on chip excessively concerns. Palantir, another Ziller holding, fell 70 per cent. It was becoming a consulting business rather than a software monopoly. Both stocks

### 'There's no use having high output if the system breaks'

**JOSEPH ZILLER**
ZILLER FUNDS MANAGEMENT

are up 10-20 times from those lows.

The research backing founder-led investing is compelling. Ziller's analysis of S&P 500 companies shows founder-led stocks have outperformed other stocks by almost 4 per cent over 20 years since 1994.

Academic studies consistently show founder-led companies generate annual excess returns of between 2 per cent and 12 per cent.

On the current AI anxiety, Ziller sees both sides.

"AI is one of the most transformative technologies we'll see over the next few decades," he says. "But what we're seeing at the moment is very large capital expenditure spend, and only a small subset of that is creating real value from AI at the moment. That's the issue."

He sees much of today's AI spending generating no real return because most profitable use is low. But predicts even when AI creates enormous value — like cloud and mobile before it — that value doesn't always flow to the companies making the investments.

"Database processing is shifting from mainframes to Nvidia's graphics processing units because they're simply faster and cheaper. Social media recommendation

engines — think Facebook and TikTok — require massive computing power but generate real revenue.

Then there's Palantir, a top holding that epitomises AI's potential. The company creates a "digital twin" — a unified view of a business for connecting disparate systems.

AI spends can then optimise processes that were previously impossible to improve.

"If you look at Palantir's save-for-performance, there's nothing like it," Ziller says.

"This each user came to us, we did this for them, they saved 80x much, and we did it in 30 days, when no they used to do it in half a year."

The so-called circularity of tech financing — where Microsoft and Nvidia committed up to $100bn ($153bn) by Anthropic, which will probably spend much of it on Nvidia chips — doesn't concern him. "It's actually very necessary to do. But as the business doesn't have much cash at the moment that they can't spend it."

It's a capital allocation decision that makes sense at the current time.

His fund added cryptocurrency exchange Coinbase earlier this year after regulatory clarity emerged. But it isn't a pure AI bitcoin play.

"Coinbase is actually the leading US retail crypto broker and exchange," Ziller says.

"We really liked that passing of being the tech leader but also being the leader in trust, building in the most regulatory compliant way."

He uses Coinbase shifting from being transaction revenue to higher-quality services such as custody, wallets and infrastructure provision. "They're going to clip the ticket on this growing ecosystem. They're becoming the Amazon of crypto in terms of the services they provide," he says.

With Nvidia's results imminent, Ziller won't trade around short-term noise. "We tend not to trade too much in and out of results," he says.

If something happened in the results, and maybe we thought the results were strong and Nvidia fell, we might see it as an interesting opportunity to buy."

It's an approach grounded in long-term conviction rather than quarterly panic.

With markets now jittery, a focus on proven founders who have navigated through crises may prove its worth once again.

## A 'good heart'-felt apology from ANZ

*Continued from Page 11*

Ms Maksa said the global drive towards net zero by 2050 was going to be a "difficult journey to get there on time".

"The medium could kill the patient — so the transition has to be balanced," Mr Maksa said. He also told MPs that ANZ was fully committed to its net-zero target, revealing that the bank had lent $4bn to renewables and would sell to investors.

NAB chief executive Andrew Irvine also appeared before the committee, telling MPs that "Australia should be an energy superpower", while warning that higher energy costs were "holding back manufacturing growth and hurting households".

"We are blessed with incredible amounts of wind resources, with some hydro capacity and one of the world's largest reserves of natural gas," Mr Irvine said.

"The fact that we are in a situation where we have a possible issue with a supply and demand imbalance on energy is sad and shouldn't have happened."

The boss of Australia's biggest business bank also predicted that



Irvine

the cash rate would remain on hold and that inflation would remain "stubborn".

Mr Irvine said the only way out of this slump was by improving productivity. He presented a humble plan to MPs to achieve this: solve the housing crisis, cut red tape, harness the power of artificial intelligence and improve the nation's energy supply to drive down prices.

He said a key reason behind Australia's productivity crisis was the explosion in the number of public sector jobs over the past decade.

"Nine out of 10 jobs that we're creating are in the public sector, and the public sector typically has lower productivity work than in the private sector," Mr Irvine said, as he called on state and federal governments to rein in spending.

## Divided gas sector looks to sway market review

*Continued from Page 11*

The political economics appears to be swinging toward intervention. Junior figures involved in the talks say a form of gas reservation — targeted specifically at LNG exporters with significant domestic shortfalls — is "likely available".

"A gas reservation, most likely on the Queensland LNG exporters, I think is the most likely outcome," said one senior industry source who declined to be named. "That will hurt Santos. How much will depend on how much LNG has to contribute to the east-coast market."

Sums have suggested LNG exporters should make a domestic contribution worth some 15 per cent of the east coast market, a figure that would be expensive for Gladstone LNG. It would be forced to recreate drilling and/or purchase credits to meet its shortfalls.

In contrast, Australia Pacific LNG — which has to record 9 years supplied more than 20 per cent of the east coast market — would be free to unilaterally solve into the local reserved market.

Tensions strained when Santos endorsed a policy of curtailing exports of unrestricted LNG cargoes proposed by the Coalition. Such a policy would have severely restricted the returns of Australia Pacific LNG and Queensland Curtis LNG.

While the policy would create some division within the powerful industry. Labor is under pressure. Resources Minister Madeleine King said any domestic reservation scheme would be limited by legal precedent that high gas prices. Meanwhile, gas is increasingly setting the price of electricity, which has risen sharply.

The Perth assembly will test whether the industry can mount any meaningful final push to influence the outcome. Several sources and documents are expected to focus on the shape of any reservation mechanism, potential compensation, and the figure of domestic development to the Bowen and Strait basins.

Fears are hopeful of crafting a single pitch capable of swaying Canberra.

## Di Pilla stands firm on HMC

*Continued from Page 11*

and it would not be pushed into accepting low-ball offers from its next brand, rescuing rent cuts, which have been circulated as a demand by the hedge funds now in control of Healthscope.

He pointed to the errors private equity players had made as they came into the health sector over-leveraged, and flagged the fate would not engage with such groups and would instead seek out longer-term tenants.

Mr Kingdom — who is both a shareholder and banker of the company at its current price — quoted the famous line from the movie Jerry Maguire of "Show Me the Money" as he questioned

whether HMC Capital should pull back from doubling down on its relentless effort to grow funds under management to $50bn. He said it should instead consolidate and perhaps even look to crystallise some value.

"The sentiment of the investment is negative in my opinion, it's certainly too negative," he said, adding the market was simply not giving the complete credit for processing "cold hard cash".

While Mr Di Pilla had ruled out options including internalising the listed shopping centre fund, he said Home Consolidated REIT fund, Mr Kingdom suggested it was seen able to syndicate the energy assets, the market would reconsider, even if the fund is closing value.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

**WESTBOROUGH SPE LLC,**

        **Debtor.**

**Chapter 7**
**Case No. 23-40709-CJP**

## CERTIFICATE OF SERVICE

The undersigned, Christine E. Devine, hereby certifies that on this day I caused a copy of the following to be served on all parties listed on the attached Service List in the manner noted thereon:

**TRUSTEE'S NOTICE PUBLICATION REGARDING PROPOSED
SALE OF 231 TURNPIKE ROAD, WESTBOROUGH, MASSACHUSETTS
AND PROPOSED SETTLEMENT AGREEMENT**

Dated: December 4, 2025

/s/ Christine E. Devine
Christine E. Devine, Esq.
Nicholson Devine LLC
P.O. Box 7
Medway, MA 02053
Phone: 508-533-7240
Email: christine@nicholsondevine.com

184

<u>Electronic Mail Notice List</u>

The following list of parties and attorneys have received electronic notice via the Court's
CM/ECF noticing process:

- Jeffrey T Blake     jblake@k-plaw.com
- Paul W. Carey     pcarey@miricklaw.com, bankrupt@mirickoconnell.com
- Luis R. Casas     luis.casasmeyer@akerman.com
- Jose C. Centeio     jc@jcfirm.com
- Brian Charville     bcharville@ferrisdevelopment.com
- Christine E. Devine     christine@nicholsondevine.com,
  devine.christiner109603@notify.bestcase.com;angelina@nicholsondevine.com;christine_
  492@ecf.courtdrive.com
- Jonathan R. Goldsmith     bankrdocs1@gkalawfirm.com,
  bankrdocs@gkalawfirm.com;intern@gkalawfirm.com;Esq..JonathanR.G.B145355@notif
  y.bestcase.com
- Jonathan R. Goldsmith     trusteedocs1@gkalawfirm.com,
  mwolohan@gkalawfirm.com;trusteedocs@gkalawfirm.com;intern@gkalawfirm.com;M
  A43@ecfcbis.com
- Stephen F. Gordon     sgordon@gordonfirm.com,
  vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- Richard King     USTPRegion01.WO.ECF@USDOJ.GOV
- Brian Lee     blee@nutter.com
- Samual A. Miller     samual.miller@akerman.com
- Brian W. Riley     briley@k-plaw.com
- Douglas B. Rosner     drosner@goulstonstorrs.com
- Angelina M. Savoia     angelina@nicholsondevine.com, angelina@ecf.courtdrive.com
- Roger L. Smerage     rsmerage@k-plaw.com

<u>Email and/or First Class Mail Service List</u>

The following list of parties and attorneys have been served **<u>as noted</u>**:

Lolonyon Akouete                    Via Email
800 Red Mills Rd
Wallkill, NY 12589
info@smartinvestorsllc.com


Denise Edwards                    Via Email
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com

Mark S. Lichtenstein                    Via Email
Akerman LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
mark.lichtenstein@akerman.com


Lenard Benson Zide, Esq.
Butters Brazilian LLP                   Via Email
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com

Jonathan La Liberte                     Via Email
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
jclaliberte@sherin.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

In re:

**WESTBOROUGH SPE LLC,**

      **Debtor.**

**Chapter 7**
**Case No. 23-40709-CJP**

## SUPPLEMENTAL CERTIFICATE OF SERVICE

The undersigned, Angelina M. Savoia, hereby certifies that on this day I caused a copy of the following to be served on all parties listed on the attached Service List in the manner noted thereon:

- *Notice of: (I) Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Deadline for Filing Objections, and (III) Hearing Date; and (I) Proposed Settlement Agreement and Mutual Release, (II) Deadline for Filing Objections, and (III) Hearing Date* [Dkt. No. 989];

- *Settlement Agreement and Mutual Release* [Dkt. No. 966];

- *Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019* [Dkt. No. 967];

- *Trustee's Motion for Entry of an Order Approving and Authorizing the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief* [Dkt. No. 968]; and

- *Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968]* [Dkt. No. 978].

Dated: December 5, 2025

/s/ Angelina M. Savoia, Esq.
Angelina M. Savoia (BBO #715690)
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA 02139
Phone: 857-600-0508
Email: angelina@nicholsondevine.com

187

**First Class Mail, Postage Prepaid and/or email notice provided as noted**[1]

The following party has been served as noted:

| | | |
|---|---|---|
| Phillip Green<br>Level 37, The Chifley TowerLevel 2<br>Chifley Square<br>Sydney, New South Wales 2000<br>Australia | Potential interested party regarding Mignonette Investments Ltd and Penago Pty Ltd | Via First Class Mail per Exhibit A |

---

[1] The Trustee reserves all rights regarding the parties to whom the Trustee is providing notice herein and nothing in the descriptions in this certificate shall be deemed an admission of any party's interest.

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:

Westborough SPE LLC

CASE NO: 23-40709-CJP

**DECLARATION OF MAILING**
**CERTIFICATE OF SERVICE**

Chapter: 7
ECF Docket Reference No. 989

On 12/5/2025, I did cause a copy of the following documents, described below,

Notice of: (I) Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Deadline for Filing Objections, and (III) Hearing Date; and (I) Proposed Settlement Agreement ECF Docket Reference No. 989

Settlement Agreement and Mutual Release 966

Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019 967

Trustee's Motion for Entry of an Order Approving and Authorizing the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief 968

Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968] 978

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4). A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served electronically with the documents described herein per the ECF/PACER system.

DATED: 12/5/2025

/s/ /s/ Angelina M. Savoia
/s/ Angelina M. Savoia  715690

Nicholson Devine LLC
21 Bishop Allen Drive

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:

Westborough SPE LLC

CASE NO: 23-40709-CJP

**CERTIFICATE OF SERVICE
DECLARATION OF MAILING**

Chapter: 7
ECF Docket Reference No. 989

On 12/5/2025, a copy of the following documents, described below,

Notice of: (I) Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Deadline for Filing Objections, and (III) Hearing Date; and (I) Proposed Settlement Agreement ECF Docket Reference No. 989

Settlement Agreement and Mutual Release 966

Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019 967

Trustee's Motion for Entry of an Order Approving and Authorizing the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief  968

Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968] 978

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto ~~as~~ ... ... Declaration of Certificate of Service and that it is true and correct to the best of my kno~~wledge~~ ...

DATED: 12/5/2025

Miles Wood
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
/s/ Angelina M. Savoia
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA  02139

**(The following pages contain parties served via First Class USPS Mail Service unless stated otherwise.)**

INTERNATIONAL

PHILLIP GREEN
LEVEL 37, THE CHIFLEY TOWER
2 CHIFLEY SQUARE
SYDNEY   NSW 2000

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

**WESTBOROUGH SPE LLC,**

      **Debtor.**

**Chapter 7**
**Case No. 23-40709-CJP**

## SUPPLEMENTAL CERTIFICATE OF SERVICE

The undersigned, Angelina M. Savoia, hereby certifies that on this day I caused a copy of

the following to be served on all parties listed on the attached Service List in the manner noted

thereon:

- *Notice of: (I) Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Deadline for Filing Objections, and (III) Hearing Date; and (I) Proposed Settlement Agreement and Mutual Release, (II) Deadline for Filing Objections, and (III) Hearing Date* [Dkt. No. 989];

- *Settlement Agreement and Mutual Release* [Dkt. No. 966];

- *Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019* [Dkt. No. 967];

- *Trustee's Motion for Entry of an Order Approving and Authorizing the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief* [Dkt. No. 968]; and

- *Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968]* [Dkt. No. 978].

Dated: December 8, 2025

/s/ Angelina M. Savoia, Esq.
Angelina M. Savoia (BBO #715690)
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA 02139
Phone: 857-600-0508
Email: angelina@nicholsondevine.com

193

**First Class Mail, Postage Prepaid and/or email notice provided as noted**[1]

The following party has been served as noted:

| | | |
|---|---|---|
| Brian Lee, Esq.<br>Nutter, McClennen & Fish, LLP<br>Blee@nutter.com | Counsel to Peter Blaustein in his individual capacity and as guardian of Jan Blaustein | Via email |

---

[1] The Trustee reserves all rights regarding the parties to whom the Trustee is providing notice herein and nothing in the descriptions in this certificate shall be deemed an admission of any party's interest.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|                              |   |                        |
|------------------------------|---|------------------------|
|                              | ) |                        |
| In re:                       | ) | Chapter 7              |
|                              | ) | Case No. 23-40709-CJP  |
| WESTBOROUGH SPE LLC,         | ) |                        |
|                              | ) |                        |
|                    Debtor.   | ) |                        |
|                              | ) |                        |

## EMERGENCY MOTION FOR EXPEDITED HEARING AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM FOR POST-PETITION COSTAR SUBSCRIPTION

Movant Lolonyon Akouete respectfully moves, on an emergency basis, for entry of an order:

(i) shortening time and scheduling an expedited hearing on his Motion for Allowance and Payment of Administrative Expense Claim for Post-Petition CoStar Subscription (the "Admin Motion"); and

(ii) directing immediate payment of the allowed amount upon the Court's ruling, in light of Movant's imminent travel deadline and severe financial hardship.

In support, Movant states:

1. Movant has filed, contemporaneously herewith, the Admin Motion seeking allowance and payment of an administrative expense in the amount of **$5,028.30** for post-petition CoStar subscription charges incurred to obtain market data and comparables that materially increased the estate's realized or realizable value for the 231 Turnpike Road property.

2. The Trustee has taken the position, by email dated December 9, 2025, that "distribution to you at this time would not be appropriate," without disputing the factual basis of the CoStar expense or its link to the estate's enhanced valuation. The Trustee's refusal is based on litigation strategy and not on insolvency or inability of the estate to pay.

3. Movant faces **imminent irreparable harm** if the CoStar administrative expense is not promptly paid. He has scheduled international travel for Tuesday of next week and lacks funds even for essential pre-departure requirements (including mandatory vaccination and related travel costs). Absent immediate reimbursement, Movant will be unable to travel, losing both non-refundable arrangements and critical personal and family opportunities.

4. The amount requested—slightly over **$5,000**—is **de minimis** relative to the size of the estate and to the approximately $1.293 million in funds received from the California State Controller. By contrast, the benefit Movant's efforts conferred on the estate (millions of dollars in additional property value and bargaining leverage) is substantial and undisputed on this record.

5. An expedited hearing will not prejudice other parties in interest. The issue is narrow: whether this one, discrete, post-petition expense is compensable as an administrative expense. The relevant invoices are straightforward, and the Trustee has already articulated his opposition in general terms.

6. The same extraordinary circumstances that justify administrative-expense treatment under § 503(b)(1)(A) and Connolly-line authority—namely, a pro se creditor stepping into the

breach to prevent a collusive undervalued sale and to enforce the Trustee's duty to maximize value—also justify expedited consideration and immediate payment. The estate has already accepted the benefit of Movant's CoStar-driven work; delaying reimbursement serves no legitimate purpose and simply magnifies Movant's hardship.

## REQUESTED RELIEF

WHEREFORE, Movant respectfully requests that the Court:

A. Shorten notice and schedule an expedited hearing on the Admin Motion on the earliest practicable date prior to Movant's scheduled travel;

B. Upon such hearing, allow Movant's administrative expense claim in the amount of $5,028.30 and direct the Trustee to pay that amount immediately from estate funds; and

C. Grant such other and further relief as the Court deems just and proper.

DATED: December 11, 2025, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Mills Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

196

<u>CERTIFICATE OF SERVICE</u>

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com

_____
Lolonyon Y Akouete

197

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

---

In Re:   Westborough SPE LLC ,
       Debtor

Chapter: 7
Case No: 23–40709
Judge Christopher J. Panos

---

**ORDER
REGARDING DEFICIENT FILING**

Your recent filing of **#1050 Notice of Appeal** on **JANUARY 5, 2026** with the Court was deficient and/or defective as noted below:

☐    Certificate of Service

☐    Verification of Matrix. (This local form may be downloaded at www.mab.uscourts.gov.)

☐    Verified Statement or an Unsworn Declaration regarding schedules as required by Fed. R. Bankr. P.1008 and in accordance with 28 USC § 1746. Please file either **Official Form 106Dec** for individuals or **Official Form 202** for non–individuals as appropriate.

☐    Chapter 13 Agreement Between Debtor and Counsel **(Official Local Form 8)** as required by MLBR App. 1, Rule 13–2 (a)(8).

☐    Reaffirmation Agreement Cover Sheet, **(Official Form 427).**

☐    Motion for Relief from Stay – Real Estate Worksheet, **(Official Local Form 13)** pursuant to App. 1, Rule 13–16–1 of the MLBR.

☐    Disclosure of Compensation of Attorney for Debtor(s). **(Director Form 2030).**

☐    Debtor(s) Schedule of Disputed Payments in Opposition to Motion for Relief from Stay – Post Petition Transaction History.

☐    Motion to Amend Plan.

☐    Motion to Approve Stipulation.

☐    Certificate of Conference pursuant to App. 1, Rule 13–3 of the MLBR.

☐    Notice of Amendment to Schedules.

☐    Motion to Amend Schedules.

☐    Amended Summary of Schedules, **(Official Form 106Sum** for individuals or **Official Form 206** for non–individuals) is required.

☐    Adversary Proceeding Cover Sheet, **(Director Form 1040)** is required.

☐    Proposed Notice to the Objection to Claim MLBR 3007–1(b)(Chapters 7 and 11).

198

☐    Proposed Notice to the Objection to Claim and Certificate of Service. See MLBR 3007−1(b) and Appendix 1, Rule 13−13(e).

☐    Missing required name, address, telephone number or BBO number. See MLBR Rule 9011−1.

☐    Missing email address of ECF registered electronic filer. See MLBR Appendix 8, Rule 8(a).

☐    Original Signature is required. "/s/printed name" is not permitted. Please re−file with a scanned original signature.

☑    Other **Missing Official Form 417A.**

You are hereby **ORDERED** to file the above required documents(s) on or before **JANUARY 12, 2026** .

**YOU MUST FILE THESE DOCUMENTS AT THE CLERK'S OFFICE AS INDICATED BELOW. FAILURE TO COMPLY WILL RESULT IN FURTHER COURT ACTION INCLUDING BUT NOT LIMITED TO DENIAL OR DISMISSAL WITHOUT FURTHER NOTICE.**

| ○ United States Bankruptcy Court | ◉ United States Bankruptcy Court | ○ United States Bankruptcy Court |
|---|---|---|
| John W. McCormack Post Office and Court House 5 Post Office Square, Suite 1150 Boston, MA 02109−3945 | 211 Donohue Federal Building 595 Main Street Worcester, MA 01608−2076 | United States Courthouse 300 State Street, Suite 220 Springfield, MA 01105−2925 |

Date: 1/5/26

By the Court,

<u>Julie Piltzecker</u>
Deputy Clerk
508−770−8946

1051 − 1050

199

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

---

In Re:     Westborough SPE LLC ,
        Debtor

Chapter: 7
Case No: 23–40709
Judge Christopher J. Panos

---

### NOTICE OF FILING FEE DUE

On **JANUARY 5, 2026** you filed a **Notice of Appeal (Fee $298.00)** which requires the fee indicated. Please submit your payment by **JANUARY 20, 2026 .**

Date:  1/5/26

By the Court,

Julie Piltzecker
Deputy Clerk
508–770–8946

---

### PLEASE RETURN THIS FORM WITH YOUR PAYMENT

NOTE: DEBTORS CHECKS AND CASH ARE NOT ACCEPTED.

PLEASE INCLUDE NAME AND CASE NUMBER WITH PAYMENT AND SEND TO ADDRESS CHECKED.

FAILURE TO MAKE PAYMENT BY THE DUE DATE MAY RESULT IN DENIAL/DISMISSAL WITHOUT FURTHER NOTICE.

---

○ United States Bankruptcy Court
John W. McCormack Post
Office and Court House
5 Post Office Square, Suite 1150
Boston, MA 02109–3945

◉ United States Bankruptcy Court
211 Donohue Federal Building
595 Main Street
Worcester, MA 01608–2076

○ United States Bankruptcy Court
United States Courthouse
300 State Street, Suite 220
Springfield, MA 01105–2925

1052 – 1050

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re:   Westborough SPE LLC | Chapter 7<br>Bankruptcy Case 23–40709<br>Judge Christopher J. Panos |

## NOTICE OF FILING OF APPEAL TO DISTRICT COURT

On **JANUARY 5, 2026,** the appellant, Lolonyon Akouete filed a Notice of Appeal and an Election to have the appeal heard by the United States District Court for the District of Massachusetts in the above referenced case.

Please refer to 28 U.S.C. § 158(c)(1), Fed. R. Bankr. P. 8001 et seq., and Local Rule 203 of the District Court. Also, pursuant to Fed. R. Bankr. P. 8009, the appellant must file with the Clerk of the Bankruptcy Court a designation of the items to be included in the record on appeal and a statement of the issues to be presented within the deadline set forth in the rule and serve a copy on the appellee(s).

The appellee(s) may file a designation of additional items to be included in the record within fourteen (14) days after service of the appellant's designation and statement of issues. The parties shall consult Fed. R. Bankr. P. 8009 for deadlines applicable to cross–appeals.

Upon the filing of the designation of the items to be included in the record on appeal and the statement of issues to be presented, and after expiration of the fourteen (14) day period for the appellee(s) to file a designation of additional items, the Clerk's Office will forward the designation(s) and statement to the District Court electronically.

If a party to the appeal designates any document placed under seal to be part of the record on appeal, that party must file a motion with the District Court to accept the document under seal. If the District Court grants the motion, the movant must notify the Bankruptcy Court of the ruling. *See* Fed. R. Bankr. P. 8009(f).

It is the duty of the parties to order a transcript of the proceedings or relevant parts thereof. If no transcript is ordered, the parties must advise the Bankruptcy Court by filing "Certificate of No Transcript Ordered." *See* Fed. R. Bankr. P. 8009(b).

It is the duty of the parties to ensure that the record on appeal is complete.


Date:1/5/26

Mary P. Sharon
Clerk, U.S. Bankruptcy Court


By the Court,

Julie Piltzecker
Deputy Clerk
(508) 770– 8946

201

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## CREDITOR LOLONYON AKOUETE'S MOTION FOR RECONSIDERATION OF ORDER DENYING ADMINISTRATIVE EXPENSE CLAIM (Dkt. No. 1058)

### INTRODUCTION

Creditor Lolonyon Akouete ("Movant"), appearing pro se, respectfully moves for reconsideration of the Order entered January 5, 2026, denying his Motion for Allowance and Payment of Administrative Expense Claim for Post-Petition CoStar Subscription (Dkt. No. 1058), pursuant to Fed. R. Bankr. P. 9023.

Movant files this motion with full awareness of the standard governing reconsideration and the Court's repeated reliance on *In re Wedgestone Financial*, 142 B.R. 7 (Bankr. D. Mass. 1992). This motion is not an attempt to reargue issues previously decided. Rather, it identifies a manifest factual error and presents material information that was not addressed in the Order, which directly undermines a central premise of the Court's ruling.

### GOVERNING STANDARD UNDER *IN RE WEDGESTONE*

Under *Wedgestone*, reconsideration is appropriate where the movant demonstrates that the Court's order rests on:

1. a manifest error of law or fact, or
2. material information that was not previously considered and that could reasonably alter the outcome.

*Wedgestone* expressly prohibits motions that merely restate arguments already made or disagree with the Court's reasoning. It does not bar reconsideration where the Court relied on an incorrect factual premise or where the movant demonstrates that the Court misapprehended the record.

Movant submits that this motion falls squarely within the permitted scope of reconsideration under *Wedgestone*. Movant does not seek reweighing of discretion; he seeks correction of a demonstrable misapprehension of the procedural and factual record.

### THE COURT'S ORDER RESTS ON A MANIFEST ERROR OF FACT

The Order states:

202

"Akouete made no effort to seek approval from the Trustee or the Court to incur charges that would result in an administrative expense claim."

That statement is factually incorrect and contradicted by undisputed documentary evidence.

This is not a matter of interpretation, emphasis, or weight. It is a concrete factual assertion capable of objective verification. Either Movant sought Trustee engagement and approval regarding market testing and valuation expenditures, or he did not. The record demonstrates that he did.

### MATERIAL INFORMATION NOT ADDRESSED IN THE ORDER

Before incurring the CoStar subscription charges, Movant affirmatively sought Trustee action and approval regarding valuation methodology and market testing.

Specifically, on September 10, 2024, Movant sent a detailed written communication to:

• the Chapter 7 Trustee,
• counsel for the Town of Westborough,
• the United States Trustee, and
• multiple estate professionals and interested parties.

In that communication, Movant:

1. Requested that the Trustee refrain from pursuing yet another appraisal, explaining that two appraisals already existed and had failed to resolve valuation disputes;
2. Explained why a third appraisal would not advance the estate's interests, a prediction later confirmed when the third appraisal returned a value identical to the second;
3. Proposed market testing as the superior alternative, including use of professional market-data platforms such as CoStar;
4. Disclosed that he had already gathered market comparables and was prepared to provide them; and
5. Sought Trustee engagement and action, rather than acting unilaterally.

In that communication, Movant was not merely expressing disagreement with valuation strategy. He was proposing that the Trustee adopt market testing using professional market-data tools, and was thereby requesting that the Trustee authorize or assume responsibility for such market-testing costs. The Trustee's complete non-response left Movant with no mechanism to obtain formal approval or direction, despite Movant's explicit request for Trustee engagement on precisely the work later criticized as unauthorized. ***See Exhibit A***.

This communication — and the Trustee's complete non-response — was not addressed in the Order, yet it directly contradicts the Court's finding that Movant made "no effort" to seek approval or involvement.

That omission constitutes material information not previously considered within the meaning of *Wedgestone*.

### THE SEPTEMBER 10, 2024 COMMUNICATION BECAME MATERIAL ONLY BECAUSE OF THE COURT'S ORDER *(NEWLY INSERTED SECTION)*

Movant recognizes that the September 10, 2024 communication pre-dated the filing of the administrative expense motion. However, reconsideration is warranted because the Court's Order introduced a factual premise that rendered this communication newly material.

Movant did not anticipate that the Court would find that he made "no effort" to seek Trustee approval or engagement. Until the Order issued, there was no dispute that Movant had repeatedly communicated with the Trustee regarding valuation methodology and market testing. The Order's statement therefore created, for the first time, a direct factual conflict with the record.

Rule 59(e) permits reconsideration where a court's ruling rests upon a factual assumption that the movant could not reasonably have anticipated would be decisive. In such circumstances, evidence contradicting that assumption is properly presented on reconsideration, even if it existed earlier.

Movant does not seek to relitigate his motion with new arguments. He seeks only to correct a factual premise introduced by the Court that is contradicted by existing record evidence.

To hold otherwise would permit factual misstatements in judicial orders to become insulated from correction solely because the contradictory evidence pre-existed the ruling.

## THE COURT'S OWN ORDERS DIRECTED VALUATION TO BE LITIGATED THROUGH THE EVIDENTIARY HEARING PROCESS

The Court's finding that Movant failed to seek Court approval must also be evaluated in light of the procedural framework the Court itself established.

In its Order dated August 7, 2024 (Dkt. #222), the Court ruled that valuation issues were to be raised in the context of an objection to the Trustee's Motion to Approve Settlement and litigated through the evidentiary hearing process. The Court further stated that, if Movant wished to conduct his own appraisal, he should coordinate access with the Trustee.

Movant complied with that directive. In his Opposition to the Trustee's Settlement Motion (Dkt. #191), Movant devoted an entire section to "Lack of Comprehensive Market Testing," explaining in detail why market testing — not serial appraisal — was necessary to protect estate value.

Thus, Movant followed the procedural path the Court mandated. He did not pursue a separate valuation-expense approval motion because the Court had already instructed that valuation be addressed through evidentiary presentation in the settlement-approval process.

## MOVANT WAS FINANCIALLY UNABLE TO OBTAIN AN APPRAISAL AND REQUESTED TRUSTEE USE OF ESTATE FUNDS

At the time Movant was directed to present valuation evidence, he lacked the financial ability to retain a private appraiser. Movant informed the Trustee that approximately $1.2 million in funds traceable to the Debtor were in the Trustee's control and could be used to fund appropriate valuation or market-testing efforts on behalf of the estate.

The Trustee declined to use those funds for appraisal, broker analysis, or market testing, and did not propose any alternative valuation mechanism. Movant was therefore left with no practical means to comply with the Court's instruction to present valuation evidence other than by obtaining market data himself at personal expense.

Movant did not substitute his judgment for the Trustee's authority. He attempted to trigger Trustee action using estate funds. Only after the Trustee declined to act did Movant incur the CoStar expense personally.

### COSTAR WAS A NECESSARY SUBSTITUTE FOR AN APPRAISAL UNDER THE COURT'S PROCEDURAL FRAMEWORK

The Court later denied appointment of a court-appointed expert under Rule 706 (Dkt. #304), ruling that such relief was unavailable in bankruptcy. The Court had therefore foreclosed:

• court-appointed expert valuation,
• trustee-funded appraisal, and
• independent appraisal by Movant due to lack of funds.

In this procedural context, CoStar was not a discretionary litigation tool. It was the only viable evidentiary mechanism available to Movant to obtain professional-grade, verifiable market comparables and valuation benchmarks.

Thus, the CoStar expense was incurred not outside Court supervision, but within the exact evidentiary framework the Court itself imposed.

### THE "NO EFFORT TO SEEK COURT APPROVAL" FINDING CANNOT BE RECONCILED WITH THIS RECORD

When the Court states that Movant failed to seek Court approval, it overlooks that:

• The Court directed valuation disputes to be litigated through evidentiary hearing;
• The Court denied appointment of a court expert;
• The Court instructed Movant to coordinate appraisal access with the Trustee;
• The Trustee refused to fund valuation or market testing;
• Movant lacked funds to obtain an appraisal; and
• Movant therefore used CoStar to comply with the Court's directive to present valuation evidence.

Under these circumstances, Movant had no procedural mechanism to seek advance Court approval for market-testing expenses without contradicting the Court's own procedural instructions.

Accordingly, the finding that Movant failed to seek Court approval reflects a misapprehension of the procedural record, not a failure by Movant to follow Court authority.

### WHY THIS FACTUAL ERROR WAS MATERIAL TO THE OUTCOME

The Court relied on the asserted absence of notice or approval to conclude that:

• the CoStar expense was not "necessary," and
• the expense did not benefit the estate, but merely advanced Movant's own position.

Because the premise is incorrect, the inference drawn from it is unsound.

In reality:

205

• Movant sought Trustee engagement first;
• the Trustee declined to act or communicate;
• additional appraisal work proved duplicative and ineffective; and
• market testing — using CoStar — ultimately proved to be the mechanism that exposed undervaluation and preserved estate value.

Had the Court considered that Movant acted within the evidentiary framework imposed by the Court itself, and only after Trustee refusal to fund valuation, the characterization of the CoStar expense as unauthorized and unnecessary could not stand.

Under *Wedgestone*, reconsideration is warranted where a ruling is "premised upon a misunderstanding of the facts." 142 B.R. at 8. That is precisely the situation here.

### THIS MOTION IS NOT A REPETITION OF PRIOR ARGUMENTS

Unlike prior motions for reconsideration denied by the Court, this motion does not:

• reassert the same legal theory,
• reweigh the Court's discretionary judgment, or
• merely disagree with the Court's conclusions.

Instead, it identifies a specific factual finding, demonstrates that it is incorrect, explains why that error was material, and shows how the Court's own procedural orders were misapprehended.

Accordingly, denial on the ground that Movant has not presented "additional material information" would not be consistent with the record or with *Wedgestone*'s framework.

### CONCLUSION

Because the Order denying Movant's administrative expense claim rests on a manifest factual error and fails to account for material procedural and documentary record evidence demonstrating that Movant acted within the Court-mandated evidentiary framework and sought Trustee engagement and approval, reconsideration is warranted under Fed. R. Bankr. P. 9023 and *In re Wedgestone Financial*.

Movant respectfully requests that the Court vacate its January 5, 2026 Order denying the administrative expense claim, reconsider the Motion under a corrected factual record, and grant such relief as the Court deems just and proper.

DATED: January 11, 2026, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Mills Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

206

Exhibit A



Lolonyon Akouete <info@smartinvestorsllc.com>

---

## Request to Reconsider the Need for Appraisal and Focus on Market Testing for 231 Turnpike Rd, Westborough, MA

1 message

---

**Lolonyon Akouete** <info@smartinvestorsllc.com>                                    Tue, Sep 10, 2024 at 1:03 PM
To: Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>, "Roger L. Smerage" <rsmerage@k-plaw.com>
Cc: USTPRegion01.WO.ECF@usdoj.gov, Brian Riley <briley@k-plaw.com>, "Carey, Paul W."
<pcarey@mirickoconnell.com>, Stephen Gordon <sgordon@gordonfirm.com>, "Jeffrey T. Blake" <jblake@k-plaw.com>,
Denise Edwards <deniseedwards818@yahoo.com>, "Scott A. Schlager" <sas@natgolaw.com>, Mary Wolohan
<trusteedocs1@gkalawfirm.com>, Alvin Nathanson <asn@natgolaw.com>, Jose Centeio <jcc@natgolaw.com>, "Lenard
B. Zide" <zide@buttersbrazilian.com>, "Matthew A. Morris" <mmorris@sherin.com>, Darin Clagg <Dclagg@gmail.com>,
Dyann Blaine <dyann.blaine@gmail.com>, david@ferrisdevelopment.com, "Abromowitz, David M."
<dabromowitz@goulstonstorrs.com>, Durga Nagalla <durganagalla@gmail.com>, Allen Hight
<reomanagement11@gmail.com>, Peter Blaustein <pblaustein@gmail.com>, "Julia C. Royce" <JCRoyce@sherin.com>,
janscholes2@gmail.com, "Brian R. Charville" <bcharville@ferrisdevelopment.com>, venkatesh mohanraj
<venki.mohanraj@gmail.com>, mark.lichtenstein@akerman.com, samual.miller@akerman.com, Walter Horst
<walter.horst@babcockbrown.com>, sharlene.harrison-carera@akerman.com, "Ronan, Gary M."
<GRonan@goulstonstorrs.com>, EEnglander@ec-attorneys.com, Christine Devine <christine@nicholsondevine.com>

Dear Trustee Goldsmith and Town Representatives,

I hope you are all doing well.

As we are waiting on the court's response to your motion to obtain an appraisal for the property at **231 Turnpike
Road, Westborough, MA**, I would like to respectfully plead with you to reconsider the need for a new appraisal at this
stage. Conducting an additional appraisal at this point is unnecessary and a waste of resources, especially given the
availability of strong comparable sales data and the potential for **market testing**.

The **comparable sales approach** remains the best method for determining the market value of the property. I have
reviewed the comparable sales data used in the 2018 appraisal and compared it with the data I have gathered. The
comps I pulled are equally valid, if not superior, in terms of proximity to the subject property and relevance, as they are
also theater properties. Below is a comparison of the comps I pulled, including their sale prices, approximate
distances, and driving times from 231 Turnpike Rd:

---

## My Pulled Comps:

- **135 Brooks St, Worcester, MA** – Sold for **$8,750,000.00** on **7/1/2021**
  Distance: **~11 miles**, Driving time: **~20 minutes**

- **565 Squire Rd, Revere, MA** – Sold for **$49,800,000.00** on **5/18/2021**
  Distance: **~38 miles**, Driving time: **~45 minutes**

- **16 Pine St, Waltham, MA** – Sold for **$4,500,000.00** on **3/8/2023**
  Distance: **~24 miles**, Driving time: **~30 minutes**

- **100 Commerce Way, Seekonk, MA** – Sold for **$9,500,000.00** on **7/17/2024**
  Distance: **~47 miles**, Driving time: **~55 minutes**

- **1655 Boston Rd, Springfield, MA** – Sold for **$4,500,000.00** on **4/19/2023**
  Distance: **~60 miles**, Driving time: **~1 hour**

- **371 Lowell Ave, Haverhill, MA** – Sold for **$4,536,000.00** on **11/8/2021**
  Distance: **~55 miles**, Driving time: **~1 hour**

- **37 Doty St, West Wareham, MA** – Sold for **$5,200,000.00** on **12/7/2021**
  Distance: **~67 miles**, Driving time: **~1 hour 15 minutes**

207

- **850 Providence Hwy, Dedham, MA** – Sold for **$4,533,055.00** on **5/28/2021**
  Distance: **~35 miles**, Driving time: **~40 minutes**

- **85 Voluntown Rd, Pawcatuck, CT** – Sold for **$6,000,000.00** on **1/18/2023**
  Distance: **~78 miles**, Driving time: **~1 hour 30 minutes**

---

## 2018 Appraisal Comps:

- **6 Chickering St, Lawrence, MA** – Sold for **$3,000,000.00** on **4/18/2018**
  Distance: **~50 miles**, Driving time: **~55 minutes**

- **141 Winthrop Ave, Lawrence, MA** – Sold for **$2,800,000.00** on **12/20/2016**
  Distance: **~50 miles**, Driving time: **~55 minutes**

- **797 Washington St, Stoughton, MA** – Sold for **$1,450,000.00** on **10/18/2016**
  Distance: **~37 miles**, Driving time: **~45 minutes**

- **330 New Park Ave, Hartford, CT** – Sold for **$6,900,000.00** on **1/31/2018**
  Distance: **~73 miles**, Driving time: **~1 hour 20 minutes**

- **800 Fall River Ave, Seekonk, MA** – Offered at **$5,700,000.00**
  Distance: **~50 miles**, Driving time: **~1 hour**

---

As you can see, both sets of comps are equally relevant, with properties situated at comparable distances from the subject property. However, my comps reflect more recent market activity, indicating stronger market dynamics. **The sale of 565 Squire Rd, Revere, MA, for $49,800,000 in May 2021** is a prime example of how similar properties are commanding high prices in today's market.

Additionally, there are broader benefits to the town in pursuing a higher valuation for this property. **Amazon has been actively purchasing properties in Westborough**, driving up property values. For instance, Amazon acquired a theater property, demolished it, and built a new facility in its place, significantly increasing the property's value and thereby enhancing the town's **tax revenue**. The Town of Westborough stands to benefit greatly from a higher tax evaluation if the property is marketed effectively and sold at its full potential.

Given these facts, I firmly believe that what we need at this point is not another expensive and time-consuming appraisal but a **market test**. With platforms like **CoStar**, we can access comprehensive data, verified sales comps, and direct contacts with potential buyers who are likely to offer significantly higher prices for the property. I've already had discussions with CoStar representatives, and they are confident that with proper marketing, this property could sell for **$9 million or more within 30 days**.

Therefore, I respectfully request that we prioritize market testing over another appraisal, which will only delay the process further. If you would like to review the full details of the comps I've pulled or discuss this approach in more depth, I would be happy to provide additional information.

Thank you for your time and consideration.

Best regards,

Lolonyon Akouete
800 Red Milles Rd
Wallkill, NY 12589
info@smartinvestorsllc.com
(443) 447-3276

---

**2 attachments**

 **CoStar Walk-Through w_ Lolonyon Akouete.pdf**
193K

 **CoStar Proposal - Lolonyon Akouete.pdf**
1709K

<u>CERTIFICATE OF SERVICE</u>

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com



_____
Lolonyon Y Akouete

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

---

In Re:    Westborough SPE LLC

Chapter 7
Appellate Case No: 26–10037
Bankruptcy Case 23–40709
Judge Christopher J. Panos

---

### CERTIFICATION OF DEFAULT

On **JANUARY 5, 2026,** the appellant, Creditor Lolonyon Akouete filed a Notice of Appeal. In accordance with Fed. R. Bankr. P. 8009, the appellant was to file with the Bankruptcy Court Clerk a designation of the items to be included in the record on appeal and a statement of issues to be presented within the deadline set forth in the rule and serve a copy on the appellee(s). As provided in Fed. R. Bankr. P. 8003(a)(2), "an appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the United States District Court for the District of Massachusetts to act as it considers appropriate, including dismissing the appeal."

It is hereby certified to the United States District Court for the District of Massachusetts by the United States Bankruptcy Court for the District of Massachusetts that the appellant has not filed the designation of the items to be included in the record on appeal and a statement of issues to be presented within the deadline set forth in the rule.

Date:1/21/26

Mary P. Sharon
Clerk, U.S. Bankruptcy Court


By the Court,


Julie Piltzecker
Deputy Clerk
508–770–8946

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

---

In Re:   Westborough SPE LLC | Chapter 7
Appellate Case No: 26−10037
Bankruptcy Case 23−40709
Judge Christopher J. Panos

---

### CERTIFICATION OF DEFAULT

On **JANUARY 5, 2026,** the appellant, Creditor Lolonyon Akouete filed a Notice of Appeal. In accordance with Fed. R. Bankr. P. 8009, the appellant was to file with the Bankruptcy Court Clerk a designation of the items to be included in the record on appeal and a statement of issues to be presented within the deadline set forth in the rule and serve a copy on the appellee(s). As provided in Fed. R. Bankr. P. 8003(a)(2), "an appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the United States District Court for the District of Massachusetts to act as it considers appropriate, including dismissing the appeal."

It is hereby certified to the United States District Court for the District of Massachusetts by the United States Bankruptcy Court for the District of Massachusetts that the appellant has not filed the designation of the items to be included in the record on appeal and a statement of issues to be presented within the deadline set forth in the rule.

Date:1/21/26

Mary P. Sharon
Clerk, U.S. Bankruptcy Court

By the Court,

Julie Piltzecker
Deputy Clerk
508−770−8946

211

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: Westborough SPE LLC | Chapter: 7 |
| Debtor | Case No: 23−40709 −cjp |

### Initial Transmittal

The following is being transmitted to your court:

- ☐ Notice of Appeal with Order
- ☐ Bankruptcy Docket
- ☐ Election to have appeal heard in District Court
- ☐ Direct Appeal to Court of Appeals
- ☐ Motion for Leave to Appeal With/Without Objections
- ☑ Other Certification of Default

Date:  1/21/26

By the Court,

Julie Piltzecker
Deputy Clerk
508−770−8946

Receipt is acknowledged of the enclosures referred to above.

District/Appellate Court Docket Number:_____
Date:_____                                        By:_____
                                                                                    Deputy Clerk

212

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |

**CREDITOR-APPELLANT LOLONYON AKOUETE'S
MOTION TO EXCUSE DEFAULT AND FOR EXTENSION OF TIME
TO FILE DESIGNATION OF RECORD AND STATEMENT OF ISSUES**

Creditor-Appellant **Lolonyon Akouete**, proceeding pro se, respectfully moves this Court pursuant
to Fed. R. Bankr. P. 8003(a)(2), 8009, and 9006(b) for an order:

1. Excusing the default certified on January 21, 2026; and
2. Granting Appellant leave to file the Designation of Record and Statement of Issues out of
   time.

**I. BACKGROUND**

1. On January 5, 2026, Appellant timely filed a Notice of Appeal from this Court's orders
   approving a settlement and authorizing a sale of property.
2. Appellant is proceeding pro se in a complex bankruptcy appeal involving disputed
   authority, valuation, fiduciary responsibility, and jurisdiction.
3. Appellant did not timely file the Designation of Record and Statement of Issues under Fed.
   R. Bankr. P. 8009.
4. On January 21, 2026, the Clerk issued a Certification of Default pursuant to Fed. R. Bankr.
   P. 8003(a)(2).
5. That Rule expressly provides that failure to take any step other than timely filing a notice of
   appeal does not invalidate the appeal, but permits the court to determine appropriate relief.

**II. LACK OF DISTRICT COURT ECF ACCESS AND PRACTICAL FILING BARRIERS**

6. Appellant has applied for permission to file electronically in the United States District
   Court.
7. The District Court CM/ECF Help Desk expressly advised Appellant that he may not file
   documents electronically until the Court grants that motion.
8. As of the filing of this motion, Appellant still lacks District Court electronic filing
   privileges.
9. Because of this restriction, Appellant has been unable to file time-sensitive appellate
   motions electronically in the District Court, including a prepared Motion for Partial Stay
   Pending Appeal.

**III. PREPARED STAY MOTION AND INADVERTENT OMISSION OF RULE 8009
FILINGS**

10. Appellant has prepared a Motion for Partial Stay Pending Appeal pursuant to Fed. R. Bankr. P. 8007(b) for filing in the United States District Court.

11. That motion is complete and ready for filing, but cannot yet be submitted because Appellant's pro se CM/ECF filing privileges in the District Court have not been approved.

12. During this same period, Appellant was actively managing multiple related cases, appeals, motions, and emergency filings arising out of the same bankruptcy proceedings.

13. While focusing on preparation of jurisdiction-preserving appellate motions and addressing numerous overlapping procedural obligations, Appellant inadvertently failed to file the Designation of Record and Statement of Issues within the Rule 8009 deadline.

14. The omission was not intentional, strategic, or in bad faith, but resulted from the cumulative burden of simultaneous filings, procedural complexity, and pro se status.

15. Appellant will promptly act to correct the omission.

## IV. EXCUSABLE NEGLECT AND GOOD CAUSE

16. The omission was not willful, tactical, or in bad faith.

17. The Notice of Appeal was timely filed.

18. The delay was brief, procedural, and caused by structural filing limitations and good-faith procedural confusion.

19. No appellee has suffered prejudice.

20. Appellant will act promptly to cure the omission.

These facts constitute excusable neglect and good cause under Rules 8003(a)(2) and 9006(b).

## V. RELIEF REQUESTED

Appellant respectfully requests that the Court:

1. Excuse the Certification of Default dated January 21, 2026;

2. Grant Appellant leave to file the Designation of Record and Statement of Issues out of time; and

3. Direct that Appellant may file those documents within fourteen (14) days of the Court's order, or instanter upon the Court's direction.

## VI. CONCLUSION

This appeal was timely commenced. The omission was procedural, inadvertent, and caused by good-faith efforts to preserve appellate jurisdiction while navigating filing limitations as a pro se litigant. The interests of justice favor resolution on the merits rather than dismissal on technical grounds.

DATED: January 22, 2026, Respectfully submitted:

By creditor,



Lolonyon Akouete
800 Red Mills Rd
Wallkill NY 12589

214

info@smartinvestorsllc.com
(443) 447-3276



Lolonyon Akouete <info@smartinvestorsllc.com>

---

## Pro Se Motion for Permission to E-File – Case No. 26-cv-10037    <span style="color:red">Exhibit A</span>

2 messages

---

**Lolonyon Akouete** <info@smartinvestorsllc.com>    Wed, Jan 7, 2026 at 1:27 PM
To: ECFhelp@mad.uscourts.gov

Dear CM/ECF Help Desk,

I am a pro se appellant in the above-referenced matter pending before the U.S. District Court for the District of Massachusetts.

I recently submitted a NextGen CM/ECF electronic filing registration, which was rejected pending court permission for a pro se litigant to e-file. As instructed in the rejection notice, I have completed the required Motion for Permission to E-File.

Attached please find my completed Motion for Permission to E-File (Pro Se) for submission to the Court in:

In Re Westborough Spe, LLC et al
Case No. 26-cv-10037

Please let me know if any additional information is required. Thank you for your assistance.

Respectfully,

Lolonyon Akouete
Pro Se Appellant
Phone: (443) 447-3276
Email: info@smartinvestorsllc.com

---

📄 **Motion For Permission To E-file.pdf**
187K

---

**Help ECF** <ECFHelp@mad.uscourts.gov>    Wed, Jan 7, 2026 at 2:31 PM
To: Lolonyon Akouete <info@smartinvestorsllc.com>

Good afternoon,

Thank you for your email.

Please refrain from submitting documents to the CMECF Help Desk.

You must submit your documents in person or by mail only until your Motion is granted and privileges have been activated.

The court will not accept documents sent to the Help Desk.

Thank you,

CMECF Help Desk

_____

**From:** Lolonyon Akouete <info@smartinvestorsllc.com>
**Sent:** Wednesday, January 7, 2026 1:28 PM
**To:** Help ECF <ECFHelp@mad.uscourts.gov>
**Subject:** Pro Se Motion for Permission to E-File – Case No. 26-cv-10037

**CAUTION - EXTERNAL:**

[Quoted text hidden]

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening
attachments or clicking on links.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re:                                    )
                                          )
WESTBOROUGH SPE LLC,                      )      Case No. 1:26-CV-10037-WGY
                                          )
LOLONYON AKOUETE                          )
                                          )
        Appellant,                        )
v.                                        )
                                          )
JONATHAN R. GOLDSMITH,                    )
CHAPTER 7 TRUSTEE OF                      )
WESTBOROUGH SPE LLC, et                   )
al.,                                      )
                                          )
        Appellees.                        )
                                          )

**CREDITOR LOLONYON AKOUETE'S MOTION FOR PARTIAL STAY PENDING APPEAL PURSUANT TO FED. R. BANKR. P. 8007(b)**

**I. INTRODUCTION**

Creditor–Appellant Lolonyon Akouete ("Appellant"), appearing pro se, respectfully moves this Court pursuant to Federal Rule of Bankruptcy Procedure 8007(b) for a partial stay pending appeal of orders entered by the United States Bankruptcy Court for the District of Massachusetts approving a settlement and authorizing a sale of property in the above-captioned Chapter 7 case.

Appellant does not seek to stay the closing of the sale. He seeks only narrow, interim relief sufficient to preserve meaningful appellate review—specifically, a stay of (i) distribution of sale proceeds and (ii) implementation of settlement releases and dismissals—pending resolution of his appeal.

Absent such relief, consummation of the settlement and distribution of proceeds will irreversibly moot the appeal, depriving this Court of the ability to grant effective relief.

**II. JURISDICTION AND PROCEDURAL POSTURE**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

Appellant timely filed a Notice of Appeal from the following orders:

• Order approving the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019 [Bankr. Dkt. 1038]; and
• Order authorizing the private sale of property and disbursement of sale proceeds [Bankr. Dkt. 1037].

218

Appellant first sought a partial stay pending appeal in the Bankruptcy Court pursuant to Rule 8007(a). That motion was denied by Order dated January 5, 2026 [Bankr. Dkt. 1060].

Appellant thereafter sought reconsideration pursuant to Rule 9023. Reconsideration was denied by Order dated January 6, 2026 [Bankr. Dkt. 1063].

Relief is therefore unavailable from the Bankruptcy Court, and this motion is properly before the District Court pursuant to Rule 8007(b).

## III. STANDARD FOR STAY PENDING APPEAL

A motion for stay pending appeal is governed by the four-factor test articulated in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987):

1. likelihood of success on the merits (or, at minimum, serious legal questions);
2. irreparable harm absent a stay;
3. harm to other parties if a stay issues; and
4. the public interest.

In the bankruptcy context, these factors are applied flexibly, particularly where denial of a stay would render appellate review moot as a matter of law.

A stay applicant need not demonstrate certain success on appeal. It is sufficient to show either a likelihood of success or, at minimum, the presence of "serious legal questions" warranting review—especially where denial of relief would moot the appeal. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979).

The Supreme Court has made clear that the Hilton factors are not rigid or equally weighted. A stay is appropriate not only where a movant shows a strong likelihood of success, but also where the movant "can nonetheless demonstrate a substantial case on the merits," so long as the remaining factors favor relief. *Hilton*, 481 U.S. at 778. The Court emphasized that stay analysis "cannot be reduced to a set of rigid rules," but instead requires an individualized exercise of equitable judgment. Id. at 777.

The First Circuit has adopted this same sliding-scale approach. In *Providence Journal*, the court held that a movant "need not demonstrate that he is likely to prevail on the merits," but need only show that the appeal presents a "substantial case on the merits" and that the balance of hardships tips in his favor. 595 F.2d at 890. This framework recognizes that where denial of a stay would cause irreversible harm or moot appellate review, courts must not demand a mathematical probability of success.

Courts applying this standard routinely grant stays where serious legal questions exist and the equities favor preservation of the status quo. See *Washington Metro. Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977); *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953).

Under this doctrine, the stay factors merge into a balancing inquiry: the less certain the likelihood of success, the more heavily irreparable harm and inequity may tip the scale. *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 387–88 (7th Cir. 1984). The governing question is not whether success is assured, but whether the appeal presents a substantial legal case and denial of relief would cause irreparable, jurisdiction-destroying harm.

That is precisely the posture here. Appellant's appeal presents serious legal questions concerning authority, notice, fiduciary liability, valuation, and settlement structure. At the same time, denial of a partial stay will irreversibly moot the appeal through distribution of funds and implementation of releases. Under *Hilton* and *Providence Journal*, these circumstances compel application of the serious-legal-question standard and support issuance of a narrowly tailored stay to preserve meaningful appellate review.

## IV. ARGUMENT

### A. Absent a Partial Stay, the Appeal Will Be Mooted, Constituting Irreparable Harm

The irreparable harm here is not speculative—it is structural.

Courts in this District have repeatedly held that where a bankruptcy sale or settlement is consummated without a stay, appellate review becomes moot because the reviewing court lacks power to grant effective relief.

In *In re Whistler Corp. of Massachusetts*, the District Court held that once a sale closes without a stay, the appeal must be dismissed as moot because the court "has no remedy that it can fashion even if it would have determined the issues differently."
243 B.R. 573, 574–75 (D. Mass. 2000) (quoting *In re Stadium Mgmt. Corp.*, 895 F.2d 845, 847 (1st Cir. 1990)).

Similarly, in *In re Paolo Gucci*, the Second Circuit explained that 11 U.S.C. § 363(m) strips appellate courts of authority to grant meaningful relief once a sale is consummated without a stay.
105 F.3d 837, 839–41 (2d Cir. 1997).

Critically, courts have recognized that a stay may be warranted even where the likelihood of success is slim, when denial of a stay would moot the appeal. In *Buntzman v. Springfield Redevelopment Authority*, the District of Massachusetts granted a stay despite acknowledging the appellant's chances were "slender at best," because absent a stay "the entire appellate process would be mooted."
918 F. Supp. 29, 31–32 (D. Mass. 1996).

That is precisely the situation here.

Once proceeds are distributed and releases implemented, no appellate court—regardless of its view of the merits—can restore the status quo.

The mootness risk is triggered not merely by transfer of title, but by the irreversible implementation steps the Orders authorize: (i) distribution of net sale proceeds to multiple recipients, including non-debtor third parties; (ii) effectiveness of broad settlement releases; and (iii) dismissal with prejudice of related litigation. Once these steps occur, effective relief would require clawback of distributed funds, unwinding releases, and reinstating dismissed actions—remedies appellate courts routinely hold are unavailable as a practical and legal matter after consummation.

### B. Appellant Has a Substantial Likelihood of Success on the Merits

Appellant satisfies the likelihood-of-success factor—or, at minimum, presents serious, substantial questions on the merits—because the challenged orders rest on multiple legal and factual premises that are materially disputed, inadequately supported, and internally inconsistent.

**1. The Court's analysis relied on an inaccurate premise regarding IRS "responsible party" records that directly affected the authority and foreclosure determinations.**

A central issue underlying the Town's foreclosure, the Trustee's litigation posture, and the settlement structure is the challenge to Appellant's authority as manager of the Debtor. The Trustee adopted the Town's position in disputing Appellant's authority and in seeking to disallow Appellant's claim.

Appellant relies on delegated managerial authority, which can be corroborated through IRS administrative records reflecting entity control and responsible-party designation maintained in routine EIN administration, including Form SS-4 (Line 7) and Form 8822-B.

On December 1, 2025, the Bankruptcy Court ordered the Trustee to report at the December 17 hearing whether he had sought IRS records to assist in identifying a responsible party for Mignonette. (Dkt. 1011.) At the hearing, however, the Trustee represented that responsible-party records exist only if the IRS initiates an investigation and that no such records exist here. That representation is inaccurate as a matter of IRS procedure. Responsible-party information is created and maintained through ordinary compliance filings, independent of any investigation.

The Bankruptcy Court relied on that inaccurate premise in evaluating the authority dispute and approving a global settlement that extinguishes claims dependent on that unresolved issue. If the IRS records confirm Appellant's delegated authority, the Town's authority-based foreclosure narrative collapses, and the foreclosure judgment itself becomes subject to vacatur. The failure to obtain and consider this dispositive evidence before approving a settlement presents a substantial likelihood of success on appeal.

This error is compounded by a due-process violation. Rather than pursue readily available authority records necessary to provide notice reasonably calculated to reach the true interested parties, the Trustee relied on foreign mailings and publication notice, despite possessing means to identify the relevant parties more precisely. Due process does not permit such substitute notice where better notice is reasonably available, particularly in a case involving obscured ownership and disputed authority.

Together, these procedural and factual errors demonstrate that the settlement approval rests on materially inaccurate assumptions, constitutionally deficient notice, and unresolved authority disputes—establishing, at minimum, serious legal questions and a substantial likelihood of success on the merits.

**2. The settlement improperly reallocates fiduciary and tenant liabilities to the Debtor.**

Under the Reciprocal Easement Covenant, the tenant—not the Debtor—was responsible for common area maintenance, insurance, and related charges. Regal Cinemas paid those obligations during its tenancy. Regal vacated only after being unable to renew its lease due to gross mismanagement and breach of fiduciary duty by prior management.

Despite this, the settlement treats those accumulated costs as estate obligations while simultaneously releasing the prior manager from all fiduciary liability. This structure forces the Debtor to absorb losses caused by fiduciary misconduct while immunizing the fiduciary from accountability.

Such a reallocation is incompatible with Rule 9019 and presents a substantial question of abuse of discretion.

**3. The settlement improperly requires the estate to fund buyer-driven development costs.**

The use-restriction modification was required solely for the buyer's intended use. The Debtor did not cause the restriction, did not benefit from its modification, and had no contractual obligation to fund it. Yet estate funds are used to satisfy that cost.

This is not a compromise of estate liability; it is a subsidy of third-party development convenience, raising a serious question as to whether the settlement benefits the estate at all.

**4. The settlement disproportionately benefits the Town while providing no net estate benefit.**

The structure:

• preserves the Town's foreclosure recovery,
• secures releases for the Town and its officials,
• extinguishes constitutional and state-law claims,
• reallocates fiduciary and tenant liabilities to the estate, and
• eliminates alternative recovery avenues.

A Rule 9019 settlement must benefit the estate—not merely insulate a dominant creditor.

**5. The Court itself identified unresolved valuation and structural deficiencies.**

At the December 17 hearing, the Court questioned:

• whether Ferris and LAX payments were estate claims or Town-imposed closing costs;
• whether individual releases were properly valued; and
• whether settlement was truly indispensable to the sale.

Those questions remain unresolved in the written order.

**6. The denial of a partial stay rests on an erroneous premise of inseverability.**

The Court accepted the Trustee's assertion that "there is no sale without the settlement." That premise is legally and contractually contestable. The settlement contains post-closing payments, post-closing dismissals, and conditional release provisions that are structurally severable.

Denial of a partial stay based on a perceived absence of severability constitutes legal error.

**Conclusion on Likelihood of Success**

Appellant's appeal challenges:

• reliance on inaccurate factual premises;
• improper liability allocation;
• release of fiduciaries without valuation;
• subsidization of non-estate obligations;
• structural unfairness favoring the Town; and
• destruction of appellate jurisdiction through legal error.

At minimum, these constitute serious, substantial questions on the merits. Appellant therefore satisfies the likelihood-of-success requirement.

222

## C. A Partial Stay Is Available and Appropriate Under Rule 8007

Contrary to the Bankruptcy Court's conclusion, Rule 8007 expressly authorizes partial stays.

Courts routinely allow sales to close while staying:

• distributions of proceeds;
• implementation of releases; or
• dismissal of related actions,

to preserve appellate review.

Appellant seeks precisely that limited relief.

## D. The Balance of Harms and Public Interest Favor a Partial Stay

A partial stay imposes minimal harm:

• the sale may close;
• the purchaser may take title;
• funds are merely held temporarily.

By contrast, denial permanently extinguishes appellate rights.

The public interest favors meaningful appellate review and integrity of bankruptcy adjudication.

## E. The Court May Grant Jurisdiction-Preserving Relief Under the All Writs Act, 28 U.S.C. § 1651

Independently of Rule 8007, this Court possesses authority under the All Writs Act, 28 U.S.C. § 1651(a), to issue orders "necessary or appropriate in aid of [its] jurisdiction and agreeable to the usages and principles of law."

The All Writs Act does not create jurisdiction. Rather, it empowers a federal court to protect jurisdiction that already exists. Where, as here, appellate jurisdiction has attached, the Court may issue narrowly tailored injunctive relief to prevent actions that would defeat or materially impair its ability to render meaningful appellate review.

Federal courts routinely invoke the Act to preserve the status quo where consummation of challenged transactions would moot the appeal and render judicial review illusory. See, e.g., FTC v. Dean Foods Co., 384 U.S. 597, 604 (1966) (All Writs Act authorizes injunction to prevent actions that would defeat appellate jurisdiction); In re Baldwin–United Corp., 770 F.2d 328, 335 (2d Cir. 1985) (Act permits orders necessary to prevent frustration of court's jurisdiction); United States v. New York Tel. Co., 434 U.S. 159, 174 (1977).

This authority is especially appropriate where no other procedural mechanism remains available to preserve appellate jurisdiction. Appellant has exhausted Rule 8007 relief in the Bankruptcy Court. Without interim jurisdiction-preserving relief from this Court, the distribution of sale proceeds and implementation of settlement releases will irreversibly moot the appeal as a matter of law.

The relief requested here is precisely the type of limited, status-quo-preserving order contemplated by § 1651:

223

• It does not disturb the sale closing;
• It does not interfere with title transfer;
• It merely holds distributions and releases in abeyance to preserve appellate review.

Without such relief, this Court will be stripped of its ability to grant any effective remedy, even if Appellant prevails on the merits. The All Writs Act exists to prevent exactly that jurisdiction-destroying outcome.

Importantly, Appellant does not invoke § 1651 as a substitute for Rule 8007, but as a complementary jurisdiction-preservation authority. The requested order would not expand this Court's jurisdiction; it would protect it.

Accordingly, even if the Court were to conclude that the Rule 8007 factors alone do not compel a stay, the Court may and should issue limited injunctive relief under the All Writs Act to prevent irreversible impairment of its appellate jurisdiction.

**F. The Settlement Is Not a Global Compromise and Improperly Excludes Appellant, Whose Litigation Preserved the Estate's Interest in the Property**

The Property now being sold for approximately $5.1 million is the same Property whose recoverability and estate value were preserved through Appellant's Land Court action challenging the foreclosure. That litigation prevented the Debtor's interest from becoming permanently extinguished and preserved the asset for administration in this bankruptcy case. The Trustee now compromises and monetizes that preserved interest while denying Appellant any compensation and continuing to litigate Appellant's Proof of Claim.

A settlement under Rule 9019 must be fair, equitable, and in the best interests of the estate and all creditors. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424–25 (1968). It must represent a genuine compromise of estate controversies—not a selective distribution of estate value to some parties while isolating and prejudicing a contested claimant whose claim remains unresolved.

Here, the Trustee proposes to distribute estate value to other parties, secure releases for them, and extinguish their litigation exposure, while simultaneously denying Appellant any recovery and continuing to oppose Appellant's claim. That structure is not a global compromise. It is a selective payoff designed to remove opposition while preserving the Trustee's ability to litigate solely against Appellant.

Such a settlement violates fundamental principles of creditor equality and due process. If Appellant's claim remains unresolved, the estate may not be distributed in a manner that effectively prejudges and economically extinguishes that claim by exhaustion of estate assets. The Trustee cannot use estate funds to pay everyone else and then argue that Appellant is entitled to nothing.

Stated plainly, if Appellant is excluded from distribution, then no distribution should occur until Appellant's claim is adjudicated. Anything less converts compromise into forfeiture.

Because the settlement monetizes an asset preserved through Appellant's litigation while excluding Appellant from recovery and continuing to contest his claim, the settlement is structurally inequitable, legally defective under Rule 9019, and independently establishes a substantial likelihood of success on appeal.

224

This defect further demonstrates that consummation of the settlement and distribution of proceeds will irreversibly prejudice Appellant's rights and destroy meaningful appellate review, warranting issuance of a partial stay.

## V. RELIEF REQUESTED

Appellant respectfully requests that this Court enter an order:

• staying distribution of sale proceeds pending appeal;
• staying implementation of settlement releases, claim waivers, and dismissals pending appeal;

or, in the alternative,

• granting a brief administrative stay sufficient to allow full consideration of this motion.

• Alternatively, and independently pursuant to 28 U.S.C. § 1651(a), Appellant requests issuance of a jurisdiction-preserving administrative injunction temporarily maintaining the status quo as to distributions and settlement releases pending resolution of this appeal.

## VI. CONCLUSION

Because denial of interim relief will irreversibly moot the appeal and deprive this Court of jurisdiction to grant effective relief, Appellant respectfully requests that the Court grant a narrowly tailored partial stay pending appeal.

DATED: January 13, 2026,                    Respectfully submitted:

Lolonyon Akouete
800 Red Mills Rd
Wallkill NY 12589
(443) 447-3276
info@smartinvestorsllc.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 1:26-CV-10037-WGY |
| WESTBOROUGH SPE LLC, | ) | |
| | ) | |
| | ) | |
| LOLONYON AKOUETE | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | |
| | ) | |
| JONATHAN R. GOLDSMITH, | ) | |
| CHAPTER 7 TRUSTEE OF | ) | |
| WESTBOROUGH SPE LLC, et | ) | |
| al., | ) | |
| | ) | |
| Appellees. | ) | |

**LIST OF EXHIBITS**

| Exhibit | Description | No. of Pages |
|---|---|---|
| 1 | Order Denying Stay Pending Appeal (Dkt. 1060) | 1 |
| 2 | Order Denying Reconsideration (Dkt. 1063) | 1 |
| 3 | Bankruptcy Court Order Approving Settlement (Dkt. 1038) | 5 |
| 4 | Bankruptcy Court Order Approving Sale (Dkt. 1037) | 18 |
| 5 | Order re IRS Responsible Party Inquiry (Dkt. 1011) | 1 |

<span style="color:red">Exhibit 1</span>



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:    Westborough SPE LLC | Chapter 7 |
|          Debtor | 23-40709-CJP |

### ORDER

**MATTER:**

#1055 Creditor Lolonyon Akouete's Motion for Partial Stay Pending Appeal Pursuant to Fed. R. Bankr. P. 8007 (Re: 1050 Notice of Appeal and Statement of Election to District Court Filed by Creditor Lolonyon Akouete (RE: 1037 Order on Motion To Sell, 1038 Order)).

DENIED. FOR THE REASONS STATED ON THE RECORD AT THE HEARING WHEN THE COURT ENTERED THE ORDERS THAT ARE THE SUBJECT OF THE APPEAL, THE MOVANT IS NOT LIKELY TO SUCCEED ON THE MERITS OF THE APPEAL. *SEE, E.G., ACEVEDO-GARCÍA V. VERA-MONROIG*, 296 F.3D 13, 16 (1ST CIR. 2002) (DETERMINING THAT WHILE ALL FOUR APPLICABLE FACTORS MUST BE SATISFIED TO IMPLEMENT A STAY PENDING APPEAL, "[T]HE SINE QUA NON [OF THE STAY PENDING APPEAL STANDARD] IS WHETHER THE [MOVANT IS] LIKELY TO SUCCEED ON THE MERITS") (QUOTATION AND CITATION OMITTED)). WEIGHING THE OTHER FACTORS TO BE CONSIDERED, ALL FACTORS WEIGH STRONGLY AGAINST A STAY. THE MOVANT REQUESTS RELIEF THAT CANNOT BE GRANTED. HE SEEKS TO HAVE A SALE OF WHAT IS PRESENTLY NON-ESTATE PROPERTY CLOSE, BUT TO STAY IMPLEMENTATION OF THE SETTLEMENT NECESSARY TO BRING THAT PROPERTY INTO THE ESTATE TO EFFECT A SALE. AS THE EVIDENCE AT THE HEARING DEMONSTRATED, THE SALE CANNOT CLOSE ABSENT CONSUMMATION OF THE SETTLEMENT THAT WAS APPROVED. THERE IS NO MECHANISM TO SEVER THE APPROVALS IN THE MANNER THE MOVANT DESIRES. MOREOVER, THE RECORD DEMONSTRATED THAT THE APPROVAL OF BOTH THE SALE AND THE SETTLEMENT WAS APPROPRIATELY SUPPORTED AND IN THE BEST INTEREST OF THE ESTATE.

Dated: 01/05/2026                         By the Court,

                                          Christopher J. Panos
                                          United States Bankruptcy Judge

Exhibit 2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

In re:

Westborough SPE LLC

Debtor

Chapter 7
23-40709-CJP

**ORDER**

**MATTER:**

#1062 Creditor's Motion for Reconsideration of Order Denying Motion for Partial Stay Pending Appeal
Re: 1060 Order dated 1/5/2026 (Re: 1055 Creditor Lolonyon Akouete's Motion for Partial Stay
Pending Appeal Pursuant to Fed. R. Bankr. P. 8007).

DENIED. THE MOTION FOR RECONSIDERATION DOES NOT APPEAR TO ASSERT
ADDITIONAL MATERIAL INFORMATION THAT WAS NOT ALREADY CONSIDERED IN
ENTERING THE ORDER DENYING MOVANT'S REQUEST FOR PARTIAL STAY PENDING
APPEAL [ECF NO. 1060] (THE "SUBJECT ORDER") THAT WOULD DEMONSTRATE THAT
THE COURT MADE A MANIFEST ERROR OF LAW OR FACT WITH RESPECT TO THE
SUBJECT ORDER. *SEE IN RE WEDGESTONE FIN.*, 142 B.R. 7, 8 (BANKR. D. MASS. 1992)
(CITATIONS OMITTED).

Dated: 01/06/2026

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

Exhibit 3

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

**WESTBOROUGH SPE LLC,**

**Debtor.**

**Chapter 7**
**Case No. 23-40709-CJP**

**ORDER GRANTING TRUSTEE'S MOTION FOR ENTRY OF AN ORDER**
**APPROVING AND AUTHORIZING SETTLEMENT AGREEMENT AND MUTUAL**
**<u>RELEASE PURSUANT TO FED. R. BANKR. P. 9019, AS SUPPLEMENTED</u>**

This matter having come before this Court upon the *Trustee's Motion for Entry of an*

*Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R.*

*Bankr. P. 9019* [Dkt. No. 967] (the "**<u>Motion</u>**") filed by Jonathan R. Goldsmith, the Chapter 7

Trustee (the "**<u>Trustee</u>**") of the bankruptcy estate (the "**<u>Estate</u>**") of the above-captioned debtor

(the "**<u>Debtor</u>**") as supplemented by the *Supplement to Motion to Approve Settlement [Dkt. No.*

*967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No.*

*968]* (the "**<u>Sale and Settlement Motion Supplement</u>**" [Dkt. No. 978], together with the Motion,

the "**<u>Settlement Motion</u>**"), seeking approval of the *Settlement Agreement and Mutual Release*

[Dkt. No. 966] (the "**<u>Settlement Agreement</u>**") by and among the Trustee, the Town of

Westborough (the "**<u>Town</u>**"), Ferris Development Group, LLC ("**<u>Ferris</u>**"), Lax Media LLC and

Lax Media MA LLC (together, "**<u>Lax</u>**"), and Durgaprasad Nagalla and Venkatesh Mohanraj,

Trustees of The MobileStreet Trust, u/d/t dated December 11, 2014, recorded with the Worcester

Registry of Deeds in Book 53141, Page 193 ("**<u>MobileStreet</u>**") (each a "**<u>Party</u>**" and collectively

the "**<u>Parties</u>**"); and notice of the Settlement Motion and the Settlement Agreement having been

sufficient  under the circumstances pursuant to the *Notice of (i) Intended Private Sale of 231*

*Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims,*

1

*Encumbrances, and Interests, (ii) Deadline for Filing Objections, and (iii) Hearing Date and (i) Proposed Settlement Agreement and Mutual Release, (ii) Deadline for Filing Objections, and (iii) Hearing Date* [Dkt. 989] (the "**Sale and Settlement Notice**") and the certificates of service previously filed with the Court [Dkt. Nos. 990, 1017, and 1018] and the *Trustee's Notice of Publication Regarding Proposed Sale of 231 Turnpike Road, Westborough, Massachusetts and Proposed Settlement Agreement* [Dkt. No. 1015]; and this Court having conducted contemporaneous hearings on December 17, 2025 (the "**Sale and Settlement Hearings**") on the Settlement Motion and on the *Trustee's Motion for Entry of Order Authorizing and Approving the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief* (the "**Sale Motion**") [Dkt. No. 968] which sought authority to sell the Estate's right, title, and interest in the real property at 231 Turnpike Road, Westborough, Massachusetts (the "**Property**"), free and clear of all liens, claims, encumbrances, and interests, with such liens, claims, encumbrances and interests attaching to the net proceeds of the Sale as set forth in more detail in the Sale Motion and in the Purchase and Sale Agreement attached to the Sale Motion (the "**PSA**"); all parties in interest having been heard, or having had to the opportunity to be heard at the Sale and Settlement Hearings, at which evidence was taken; and the Court having contemporaneously considered and approved the Sale Motion and authorized the Sale of the Property pursuant to the PSA by entry of a separate order; and the Court having reviewed and considered the Settlement Motion, the Settlement Agreement, other evidence in support of the Settlement Motion and Settlement Agreement and the record before the Court; and the Court having heard, weighed, and considered at the Sale and Settlement Hearings the testimony of the Trustee, the evidentiary proffers made, the statements of counsel, and the statements of interested parties wishing to be heard; and the Court having

2

heard and considered the *Creditor Lolonyon Akouete's Objection to Trustee's Motion to Approve Settlement Agreement Pursuant to Fed. R. Bankr. P 9019* [Dkt. No. 1031] (the "**Akouete Objection**"); and due notice of the Sale Motion, the Sale, the Settlement Motion, the Settlement Agreement and all of the relief requested therein having been provided and no further notice being necessary; and the Court having determined that the relief sought in the Settlement Motion and the Trustee's entry into the Settlement Agreement are a reasonable exercise of the Trustee's business judgment, *see In re Healthco Int'l, Inc.*, 136 F.3d 45, 51 (1st Cir. 1998) (deference to Trustee's business judgment in connection with proposed settlement if it falls above "the lowest point in the range of reasonableness"), and is in the best interests of the Debtor's Estate; and the Court having jurisdiction over this matter; and that the legal and factual bases set forth in the Settlement Motion establish just cause for the relief granted herein; and after due deliberation thereon, and sufficient cause appearing therefor, for the reasons stated on the record and supplementing the Proceeding Memorandum and Order entered at Dkt. No. 1036 approving the Settlement Agreement and **IT IS HEREBY**:

    **ORDERED** that, the Settlement Motion is approved and authorized in all respects; it is further

    **ORDERED** that, the Akouete Objection is overruled; it is further

    **ORDERED** that, the Trustee is authorized to enter into the Settlement Agreement and to take any and all actions required by the Settlement Agreement; it is further

    **ORDERED** that, contemporaneous with the transfer of the Property to Bochasanwasi Shree Akshar Purushottam Swaminarayan Sanstha – Northeast, a Texas corporation, or its nominee (the "Buyer"), or shortly after the transfer of the Property as specifically provided by

3

231

the Settlement Agreement, the Trustee is authorized to make any and all payments required by

the Settlement Agreement including, without limitation, the following:

     i.     To the Town for the "Town Payment" as defined in the Settlement Agreement, $1,640,000 shall be paid contemporaneous with the Sale Closing[1];

     ii.     To Durgaprasad Nagalla and Venkatesh Mohanraj, Trustees of MobileStreet for the "Use Modification Payment" as defined in the Settlement Agreement, $200,000 shall be paid within ten (10) days after the Closing Date;

     iii.     To MobileStreet for the "MobileStreet Maintenance Payment" as defined in the Settlement Agreement, $556,763 shall be paid within ten (10) days after the Closing Date;

     iv.     To Ferris for the "Ferris Payment" as defined in the Settlement Agreement, $100,000 shall be paid within ten (10) days after the Closing Date; and

     v.     To Lax for the "Lax Payment" as defined in the Settlement Agreement, $100,000 shall be paid within ten (10) days after the Closing Date.

**ORDERED** that, contemporaneous with the transfer of the Property to the Buyer, or

shortly after the transfer of the Property as specifically provided by the Settlement Agreement,

the Trustee is authorized to take any and all actions required by the Settlement Agreement to

dispose of pending litigation including, without limitation, the following:

     i.     Executing and filing a voluntary notice of dismissal with prejudice of the following civil action pending in the United States District Court for the District of Massachusetts against the Town, the members of the Select Board of the Town, and Peter Blaustein: Westborough SPE, LLC v. Town of Westborough, et al., U.S. Dist. Ct. (D. Mass.), Case No. 4:23-cv-12017; and

     ii.     Executing and filing the voluntary stipulation of dismissal with prejudice of the following adversary proceeding pending before this Court against the Town of Westborough: Jonathan R. Goldsmith, Chapter 7 Trustee of Westborough SPE LLC v. Town of Westborough, (Bankr. D. Mass.),

---

[1] As used in this Order, the term "Closing" shall have the meaning ascribed thereto in the PSA and the term "Closing Date" shall mean the date that the Closing occurs pursuant to the PSA

Adversary Proceeding No. 25-04003-CJP.

**ORDERED** that, the failure specifically to include or describe any particular provisions of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Settlement Agreement is approved in its entirety and that all actions required to be taken by the Trustee pursuant to the Settlement Agreement are hereby authorized.  Absent further order of the Court, the Court retains exclusive jurisdiction to enforce and interpret the Settlement Agreement to the fullest extent of applicable law.

By the Court,

Dated: December 24, 2025

_____
Christopher J. Panos
United States Bankruptcy Judge

5

Exhibit 4

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| |
|---|
| In re:<br><br>**WESTBOROUGH SPE LLC,**<br><br>       Debtor. |

**Chapter 7**
**Case No. 23-40709-CJP**

**ORDER (I) AUTHORIZING THE PRIVATE SALE OF 231 TURNPIKE ROAD,
WESTBOROUGH, MASSACHUSETTS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; (II) APPROVING PURCHASE AND SALE
AGREEMENT; (III) AUTHORIZING DISBURSEMENTS OF SALE PROCEEDS
PURSUANT TO SETTLEMENT AGREEMENT AND MUTUAL RELEASE;
AND (IV) GRANTING RELATED RELIEF**

This matter having come before this Court upon the *Trustee's Motion for Entry of Order*

*Authorizing and Approving the Sale of 231 Turnpike Road, Westborough, Massachusetts Free*

*and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief* (the "**Motion**")

[Dkt. No. 968] filed by Jonathan R. Goldsmith, the Chapter 7 Trustee (the "**Trustee**") of the

bankruptcy estate (the "**Estate**") of the above-captioned debtor (the "**Debtor**") as supplemented

by the *Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale*

*of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968]* (the "**Sale and Settlement**

**Motion Supplement**" [Dkt. No. 978], together with the Motion, the "**Sale Motion**"), seeking

entry of an order (the "**Sale Order**") pursuant to sections 105(a) and 363 of title 11 of the

United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 9007, and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended from time to time, the "**Bankruptcy**

**Rules**") and Rule 6004-1 of the Massachusetts Local Bankruptcy Rules (the "**Local Rules**" or

"**MLBR**") authorizing the Trustee to (i) sell the Estate's right, title, and interest in the real

property at 231 Turnpike Road, Westborough, Massachusetts (the "**Property**") to Bochasanwasi

Shree Akshar Purushottam Swaminarayan Sanstha – Northeast, a Texas corporation, or its

nominee (the "**Buyer**") for the sum of Five Million One Hundred Eleven Thousand One

Hundred Eleven and 11/100 Dollars ($5,111,111.11) (the "**Purchase Price**") pursuant to the

Purchase and Sale Agreement dated November 3, 2025 and attached as Exhibit A to the Sale

Motion (the "**PSA**"), free and clear of all liens, claims, encumbrances, and interests, with such

liens, claims, encumbrances, and interests to attach to the net proceeds of the sale as set forth in

the Sale Motion (the "**Sale**"), (ii) distribute a portion of the proceeds of the Sale pursuant to the

*Settlement Agreement and Mutual Release* [Dkt. No. 966] (the "**Settlement Agreement**")

approved by separate order of this Court of even date herewith upon this Court's allowance of

the *Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement*

*and Mutual Release Pursuant to Fed. R. Bankr. P. 9019* [Dkt. No. 967], as supplemented by the

Sale and Settlement Motion Supplement (together, the "**Settlement Motion**"); and (iii) related

relief; and the Court having entered the *Proceeding Memorandum and Order* [Dkt. No. 992] (the

"**Sale and Settlement Procedures Order**") approving the combined form of the *Notice of (i)*

*Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All*

*Liens, Claims, Encumbrances, and Interests, (ii) Deadline for Filing Objections, and (iii)*

*Hearing Date and (i) Proposed Settlement Agreement and Mutual Release, (ii) Deadline for*

*Filing Objections, and (iii) Hearing Date* [Dkt. 989] (the "**Sale and Settlement Notice**"); and

this Court having conducted contemporaneous hearings on the Sale Motion and the Settlement

Motion on December 17, 2025 (the "**Sale and Settlement Hearings**"), which hearings were

evidentiary hearings; and all parties in interest having been heard, or having had to the

opportunity to be heard at the Sale and Settlement Hearings; and the Court having reviewed and

considered the Sale Motion, the PSA, other evidence in support of the Sale, and the record before

the Court; and the Court having heard, weighed, and considered at the Sale and Settlement

Hearings the testimony of the Trustee, the evidentiary proffers made, the statements of counsel,

and the statements of interested parties wishing to be heard; and the Court having heard and

considered the *Creditor Lolonyon Akouete's Objection to Trustee's Motion to Approve*

*Settlement Agreement Pursuant to Fed. R. Bankr. P 9019* [Dkt. No. 1031] (the "**Akouete**

**Objection**"); and due notice of the Sale Motion, the Sale, the Settlement Motion, the Settlement

Agreement and all of the relief requested therein having been provided under the circumstances

of the case and as reflected in the certificates of service filed with the Court, and no further

notice being necessary; and the Court having determined that the relief sought in the Sale

Motion, the Sale, and Trustee's entry into the PSA are in the best interests of the Debtor, the

Estate, the creditors of the Debtor and the Estate, and all other parties in interest of the Debtor

and the Estate; and the Court having jurisdiction over this matter; and that the legal and factual

bases set forth in the Sale Motion establish just cause for the relief granted herein; and after due

deliberation thereon,

IT IS HEREBY FOUND AND DETERMINED THAT:

**I.      Jurisdiction, Final Order, Statutory Predicates.**

A.      The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28

U.S.C. §§ 157(b)(l) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),

(N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.

B.      This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a).

3

C.      The statutory predicates for the relief requested in the Sale Motion are Bankruptcy
Code §§ 105(a) and 363(b), (f), and (m) and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c),
(e), (f), 9007, 9008 and 9014.

D.      The findings of fact and conclusions of law set forth herein constitute the Court's
findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to
this proceeding pursuant to Bankruptcy Rule 9014.

E.      To the extent any of the following findings of fact constitute conclusions of law,
they are hereby adopted as such. To the extent any of the following conclusions of law constitute
findings of fact, they are hereby adopted as such.

F.      Any and all findings of fact and conclusions of law stated orally by the Court on
the record at the Sale and Settlement Hearings are hereby incorporated into this Order as findings
of fact and conclusions of law, to the extent they are not inconsistent herewith.

G.      The Buyer and Trustee have acted at arm's length and in good faith as
contemplated by Bankruptcy Code § 363(m) at all times in negotiating and pursuing a closing of
the transactions contemplated by the PSA, including regarding compliance with the Sales and
Settlement Procedures Order.

II.    **Notice of the Sale Hearing, Sale Motion, Sale, Settlement Motion, and
       Settlement Agreement.**

A.      Actual written notice of the Sale Hearing, the Sale Motion, the Sale, the
Settlement Motion, and the Settlement Agreement, and a reasonable opportunity to object or be
heard with respect to the Sale Motion, the Settlement Motion, and to the relief requested therein,
has been afforded to all known interested persons and entities, including but not limited to the
following parties (the "**Notice Parties**"): (i) the Office of the United States Trustee for the
District of Massachusetts; (ii) the Internal Revenue Service; (iii) the Department of Revenue for

4

the Commonwealth of Massachusetts, (iv) counsel to the Buyer; (v) all entities known by the

Trustee that may have a lien, claim, encumbrance, or other interest in the Estate (for which

identifying information and addresses are available to the Trustee); (vi) all of the Estate's known

creditors; (vii) any governmental unit known to the Trustee to have a claim in this case; (viii) all

parties that have requested notice in this Chapter 7 case under Rule 2002; (ix) all parties to the

Settlement Agreement; (x) all persons and entities having submitted a bid to purchase the

Property; and (xi) all persons and entities known by the Trustee to potentially have an interest in

any surplus assets of the Estate.

B.      The Trustee provided all interested parties with timely and proper notice of the

Sale Motion, the proposed Sale, the PSA, the Settlement Motion, and the Settlement Agreement

including, without limitation, by providing a copy of the Sale and Settlement Notice to each of

the Notice Parties.

C.      As evidenced by the certificates of service previously filed with the Court [Dkt.

Nos. 990, 1017, and 1018] and the *Trustee's Notice of Publication Regarding Proposed Sale of

231 Turnpike Road, Westborough, Massachusetts and Proposed Settlement Agreement* [Dkt. No.

1015], timely and sufficient notice of the Sale Motion, the Sale, Settlement Motion, and the

Settlement Agreement has been provided under the circumstances of the case in accordance with

Bankruptcy Code §§ 102(1) and 363 and Bankruptcy Rules 2002, 6004, and 9014. The notice

and notices described in this Section II of this Order were good, sufficient, and appropriate under

the circumstances, and no other further notice of the Sale Motion, the Sale, Settlement Motion,

the Settlement Agreement, or of the Sale and Settlement Hearings is or was required.

5

D.      The disclosures made by the Trustee concerning the Sale Motion, the Sale,
Settlement Motion, the Settlement Agreement, and the Sale and Settlement Hearings were
complete and adequate.

E.      By separate order of even date herewith, this Court has granted the Settlement
Motion, approving and authorizing the Settlement Agreement (the "**Settlement Approval
Order**"). The Settlement Agreement is necessary to accomplish the Sale and the Trustee has
demonstrated good and sufficient cause and has exercised reasonable business judgment to
enter the Settlement Agreement, including without limitation, with respect to all of the
compromises contained within the Settlement Agreement and all of the payments required
by the Settlement Agreement.

**III.    Good Faith of the Buyer.**

A.      The Buyer is not an "insider" of the Debtor, as that term is defined in Bankruptcy
Code § 101(31).

B.      The Buyer is purchasing the Property in good faith and is a good faith buyer
withing the meaning of Bankruptcy Code § 363(m) and is therefore entitled to the full protection
of that provision in that, among other things: (i) the Buyer recognized that the Trustee solicited
bids for the Property from multiple parties and that Trustee was free to deal with any other party
interested in purchasing the Property, (ii) all payments to be made by the Buyer and other
agreements or arrangements entered into by the Buyer in connection with the Sale pursuant to the
PSA have been disclosed; (iii) the Buyer has not violated Bankruptcy Code § 363(n) by any
action or inaction; (iv) no common identity of directors or controlling stockholders or other
interest holders exists between the Buyer and the Debtor or the Buyer and the Trustee; and

6

(v) the negotiation and execution of the PSA and any other agreements or instruments related thereto were at arms' length and in good faith.

**IV.      Highest and Best Offer.**

A.      Prior to selecting the Buyer as the purchaser of the Property, the Trustee engaged in a bid solicitation process designed to target interested parties and maximize the value of the Property for the Estate. Based on the bid solicitation process described in the Sale Motion and the evidence at the Sale and Settlement Hearings, the bid solicitation process afforded a full, fair, and reasonable opportunity for any person or entity to make an offer to purchase the Property. The process conducted by the Trustee was conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity was provided to any interested party to object to the Sale based on, without limitation, the desire to submit a higher and better offer for the Property.

B.      The consideration to be provided by the Buyer under the PSA constitutes the highest and best offer for the Property and will provide a greater recovery for the estate than would be provided by any other available alternative. The Trustee's determination that the PSA constitutes the highest and best offer for the Property constitutes a valid and sound exercise of the Trustee's business judgment consistent with its fiduciary duties.

C.      The PSA represents a fair and reasonable offer to purchase the Property under the circumstances of this case. No other person or entity or group of entities has offered to purchase the Property for a greater economic value to the estate than the Buyer.

D.      Approval of the Sale Motion and the PSA and the consummation of the transactions contemplated thereby is in the best interests of the Debtor, the Estate, creditors of the Estate, equity holders of the Debtor, and any and all other parties in interest.

7

E.      The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale.

**V.      No Fraudulent Transfer; No Successor Liability.**

A.      The PSA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act). The consideration provided by the Buyer pursuant to the PSA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and any state (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

B.      By virtue of the consummation of the Sale, (i) the Buyer is not a continuation of the Debtor or its estate, there is no continuity between the Buyer and the Debtor, there is no common identity between the Debtor and the Buyer, there is no continuity of enterprise between the Debtor and the Buyer, and the Buyer is not a mere continuation of the Debtor or of the Estate, (ii) the Buyer is not holding itself out to the public as a continuation of the Debtor or of the Estate, and (iii) the Sale does not amount to a consolidation, merger or de facto consolidation or merger of the Buyer and the Debtor and/or the Estate. Accordingly, the Buyer is not and shall not be deemed a successor to the Debtor, for any purpose or under any theory, as a result of the consummation of the Sale.

**VI.     Validity of Transfer.**

A.      The Trustee and the Buyer each have full power and authority to execute and deliver the PSA and all other documents contemplated thereby, and no further consents or

8

approvals of this Court are required for the Trustee and the Buyer to consummate the

transactions contemplated by the PSA, except as otherwise set forth in the PSA.

B.     Subject only to the Town of Westborough vacating its foreclosure judgment

pursuant to the Settlement Agreement, the Property constitutes property of the Estate and, upon

the Town of Westborough vacating its foreclosure judgment, title to the Property shall be

property of the Estate within the meaning of Bankruptcy Code § 541(a).  The transfer of the

Property to the Buyer will be, as of the Closing[1], a legal, valid, and effective transfer of the

Property, and vests or will vest the Buyer with all right, title, and interest of the Estate to the

Property free and clear of all (a) liens (including but not limited to mechanics, artisans, suppliers,

design professionals, laborers, construction, constitutional, statutory or other liens whether

asserted, unasserted, perfected or unperfected), (b) encumbrances, pledges, mortgages, deeds of

trust, security interests, claims, options, rights of first refusal, condemnation, easements,

servitudes, proxies, voting trusts or agreements, or transfer restrictions under any agreement,

(c) claims (including, without limitation, all claims within the meaning of Bankruptcy Code

§§ 101(5) and 102(2)), and (d) liabilities, whether imposed by agreement, law, equity, or

otherwise and whether known or unknown, fixed, or contingent or arising prior to or subsequent

to the commencement of this case (each of the foregoing described in clauses (a), (b), (c), and

(d) collectively or individually, the "**Adverse Interests**"), except to the extent of any exceptions

thereto as specifically set forth in the PSA (the "**Permitted Exceptions**").

## VII.  Bankruptcy Code § 363(f) Is Satisfied.

A.     The Buyer would not have entered into the PSA and would not consummate the

transactions contemplated thereby if the Sale of the Property to the Buyer were not, except as to

---

[1]  As used in this Order, the term "**Closing**" shall have the meaning ascribed thereto in the PSA and the term
   "**Closing Date**" shall mean the date that the Closing occurs pursuant to the PSA.

9

the Permitted Exceptions, free and clear of all Adverse Interests of any kind or nature whatsoever

or if the Buyer would, or in the future could, be liable for any of such Adverse Interests.

      B.      The Trustee may sell the Property free and clear of all Adverse Interests against

the Debtor, the Estate, or against the Property (except as to any Permitted Exceptions as

specifically set forth in the PSA) because, in each case, one or more of the standards set forth in

Bankruptcy Code § 363(f)(1) through (5) has been satisfied. Those holders of Adverse Interests

against or in the Debtor, the Estate, or the Property who did not object, or who withdrew their

objections, to the Sale or the Sale Motion are deemed to have consented pursuant to Bankruptcy

Code § 363(f)(2). Those holders of such Adverse Interests who did object fall within one or more

of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having

their Adverse Interests, if any, in each instance against the Debtor, the Estate, or the Property,

attach to the cash proceeds of the Sale (net of the payments authorized herein), in the same order

of priority, with the same validity, force and effect (if any) that such creditor or interest holder

had prior to the Sale, subject to any claims and defenses the Debtor or the Estate may possess

with respect thereto.

**VIII.   Compelling Circumstances for an Immediate Sale.**

      A.      To maximize the value of the Property, it is essential that the Sale occur within

the time constraints set forth in the PSA. The consummation of the Sale is necessary both to

preserve and maximize the value of the assets of the Estate and the Debtor for the benefit of the

Estate, its creditors, equity or other interest holders, and all other parties in interest, and to

provide the means for the Trustee to maximize creditor recoveries. Time is of the essence in

consummating the Sale.

      B.      The consummation of the transactions is legal, valid, and properly authorized

under all applicable provisions of the Bankruptcy Code, including, without limitation,

sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such

sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED

THAT:

### General Provisions

1.      The relief requested in the Sale Motion is granted and approved, and the Sale

contemplated by the PSA is approved and authorized as set forth in this Order.

2.      This Court's findings of fact and conclusions of law set forth herein and as

stated by this Court on the record during the Sale and Settlement Hearings conducted on

December 17, 2025, are incorporated into this Order by reference.

3.      This Court heard and considered the Akouete Objection and hereby overrules the

Akouete Objection.

4.      Any and all other objections to the Sale Motion or the relief requested therein

that have not been withdrawn, waived, or settled by stipulation or agreement filed with the

Court, and all reservations of rights included therein, are hereby overruled or the interests of

such objections have been otherwise satisfied or adequately provided for.

### Approval of the PSA

5.      The PSA and all other ancillary documents, and all of the terms and conditions

thereof, are hereby approved as set forth herein.

6.      Pursuant to Bankruptcy Code § 363(b), the Trustee is authorized and empowered

to take any and all actions necessary or appropriate to (i) consummate the Sale of the Property to

the Buyer pursuant to and in accordance with the terms and conditions of the PSA, (ii) close the

11

Sale as contemplated in the PSA and this Order, (iii) make any and all payments required by the PSA and required by the Settlement Agreement, and (iv) execute and deliver, perform under, consummate, implement, and close fully the PSA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the PSA and to close the Sale, including any ancillary documents, as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the PSA and such other ancillary documents.

7. This Order shall be binding in all respects upon the Trustee, the Debtor, the Estate, all current and former holders of equity interests in the Debtor, all holders of any claim(s) (whether known or unknown) against the Estate, any holders of Adverse Interests against or on all or any portion of the Property, the Buyer and all successors and assigns of the Buyer, the parties to the Settlement Agreement, the Property, and any trustee(s), if any, subsequently appointed in this case. This Order and the PSA shall inure to the benefit of the Estate, its creditors, the Buyer, and each of their respective successors and assigns.

8. By separate order of even date herewith, this Court has entered the Settlement Approval Order, which order approves the Settlement Agreement and authorizes all provisions thereof. The Trustee is authorized to give effect to all provisions of the Settlement Approval Order in connection with the Sale including, without limitation, making all payments required by the Settlement Agreement and taking all actions required by the Settlement Agreement.

### Transfer of the Property

9. Pursuant to Bankruptcy Code §§ 105(a), 363(b), and 363(f), the Trustee is authorized to transfer the Property on the Closing Date. The Property shall be transferred to the

12

Buyer upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding, and effective transfer of the Property and shall be free and clear of all Adverse Interests, except any Permitted Exceptions under the PSA.  Upon the Closing, the Buyer shall take title to and possession of the Property subject only to the Permitted Exceptions. Pursuant to Bankruptcy Code § 363(f), the transfer of title to the Property shall, except for Permitted Exceptions specifically set forth in the PSA, be free and clear of all Adverse Interests based on any theory including without limitation any successor or successor-in-interest liability theory.  Adverse Interests shall attach solely to the cash proceeds of the Sale, net of all payments authorized by this Order and required by the Settlement Agreement, with the same validity, priority, extent, and effect that they now have as against the Property, subject to any claims and defenses the Estate and the Debtor may possess with respect thereto.

10.     On or about the Closing Date, contemporaneous with the transfer of the Property to the Buyer, or shortly thereafter as provided by the Settlement Agreement, the Trustee is authorized and directed to pay:

      i.     At Closing, all ordinary and usual closing costs and expenses;

      ii.    At Closing, deed stamps or similar transfer taxes as required upon the sale of real property;

      iii.   To the Town of Westborough for the "Town Payment" as defined in the Settlement Agreement, $1,640,000 to be paid contemporaneous with Closing;

      iv.   To Durgaprasad Nagalla and Venkatesh Mohanraj, Trustees of The MobileStreet Trust, u/d/t dated December 11, 2014, recorded with the Worcester Registry of Deeds in Book 53141, Page 193 ("MobileStreet") for the "Use Modification Payment" as defined in the Settlement Agreement, $200,000 to be paid within ten (10) days after the Closing Date;

      v.    To MobileStreet for the "MobileStreet Maintenance Payment" as

13

defined in the Settlement Agreement, $556,763 to be paid within ten (10) days after the Closing Date;

vi.     To Ferris Development Group, LLC for the "Ferris Payment" as defined in the Settlement Agreement, $100,000 to be paid within ten (10) days after the Closing Date; and

vii.    To Lax Media LLC and Lax Media MA LLC for the "Lax Payment" as defined in the Settlement Agreement, $100,000 to be paid within ten (10) days after the Closing Date.

11.     Except as expressly provided by the PSA with respect to Permitted Exceptions, all persons and entities holding Adverse Interests in or to the Property arising under or out of, in connection with, or in any way relating to the Debtor, the Estate, or the Property, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer or its successors or assigns, their assets, or the Property, such persons' or entities' Adverse Interests in and to the Property.

12.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any applicable Adverse Interests and encumbrances of record.

13.     If any person or entity which has filed statements or other documents or agreements evidencing Adverse Interests in the Property shall not have delivered to the Trustee prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Adverse Interests (other than Permitted Exceptions), which the person or entity has or may assert with respect to the Property, the Buyer and the Trustee are hereby authorized to execute and file such statements, instruments, releases and other documents on

14

behalf of such person or entity with respect to the Property.

14.     This Order is and shall be binding upon and govern the acts of all persons and

entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal and local officials, and all

other persons and entities who may be required by operation of law, the duties of their

office, or contract, to accept, file, register or otherwise record or release any documents or

instruments; and each of the foregoing persons and entities is hereby directed to accept for

filing any and all of the documents and instruments necessary and appropriate to

consummate the transactions contemplated by the PSA.

### Other Provisions

15.     Effective upon the Closing Date and except as otherwise set forth in the PSA with

respect to Permitted Exceptions or as specifically set forth in the Settlement Agreement, all

persons and entities are forever prohibited and permanently enjoined from commencing or

continuing in any manner any action or other proceeding, whether in law or equity, in any

judicial, administrative, arbitral or other proceeding against the Buyer, its successors and assigns,

or the Property, with respect to any (a) Adverse Interests arising under, out of, in connection

with, or in any way relating to the Debtor, the Estate, the Buyer, or the Property, or (b) successor

liability, including, without limitation, the following actions: (i) commencing or continuing in

any manner any action or other proceeding against the Buyer, its successors or assigns, assets, or

properties; (ii) enforcing, attaching, collecting or recovering in any manner, any judgment, award,

decree, or order against the Buyer, its successors or assigns, assets, or properties; (iii) creating,

15

perfecting, or enforcing any Adverse Interests against the Buyer, its successors or assigns, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer or its successors or assigns; or (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof.

16.     Except for the Permitted Exceptions or as otherwise expressly set forth in the PSA, the Buyer shall not have any liability or other obligation of the Debtor of the Estate arising under or related to the Property or the PSA or the transactions related thereto. Without limiting the generality of the foregoing, and except for the Permitted Exceptions provided in the PSA, the Buyer shall not be liable for any claims or any other Adverse Interests against the Debtor or the Estate or any of either of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or the Estate or any obligations of the Debtor or the Estate arising prior to the Closing Date. The Buyer has given substantial consideration under the PSA for the benefit of the holders of any Adverse Interests. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Adverse Interests against or interests in the Debtor or the Property.

17.     The transactions contemplated by the PSA are undertaken by the Buyer without collusion and in good faith, as that term is defined in Bankruptcy Code § 363(m) of the

16

Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the payment of the disbursements authorized on or after Closing pursuant to and required by the Settlement Agreement), unless such authorization and such Sale are duly stayed pending such appeal. The Buyer is a good faith Buyer within the meaning of Bankruptcy Code § 363(m) and, as such, is entitled to the full protections of Bankruptcy Code § 363(m).

18.     The consideration provided by the Buyer for the Property under the PSA is fair and reasonable, and the Sale may not be avoided under Bankruptcy Code § 363(n). The reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including, without limitation, the payment of the disbursements authorized on or after Closing pursuant to and required by the Settlement Agreement), unless such authorization is duly stayed pending such appeal. No governmental unit or regulatory authority may revoke or suspend any right, license, or other permission relating to the use of the Property sold, transferred, or conveyed to the Buyer on account of the pendency of this Case or the consummation of the Sale.

19.     No Order of any type or kind entered in any related proceeding subsequent to entry of this Order shall conflict with or derogate from the provisions of the PSA or the terms of this Order.

20.     The failure specifically to include any particular provisions of the PSA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the PSA be authorized and approved in its entirety.

21.     The failure specifically to include or describe any particular provisions of the

17

Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that, pursuant to the Settlement Approval Order entered contemporaneously herewith, the Settlement Agreement be approved in its entirety and that all actions required to be taken by the Trustee pursuant to the Settlement Agreement be authorized.

22.     Unless this Court orders otherwise, this Court shall retain exclusive jurisdiction to the fullest extent of applicable law to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the PSA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee or the Estate is a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

23.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24.     To the extent that this Order is inconsistent with the PSA or any prior order or pleading with respect to the Sale Motion in this Case, the terms of this Order shall govern.

By the Court,

Dated: December 24, 2025

Christopher J. Panos
United States Bankruptcy Judge

18

<span style="color:red">Exhibit 5</span>



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

      Westborough SPE LLC

                Debtor

Chapter 7
23-40709-CJP

## ORDER

**MATTER:**

#1007 Emergency Motion to Compel Chapter 7 Trustee to Submit IRS Disclosure Requests under 26 U.S.C. § 6103(e)(1)(D)(v) and IRM 11.3.2.4.3 for Mignonette Investments Limited and Westborough SPE LLC Prior to Approval of Proposed Sale filed by Creditor Lolonyon Akouete.

GRANTED IN PART AND DENIED IN PART. THE COURT WILL NOT ADDRESS MISSTATEMENTS OR MISUNDERSTANDINGS IN THE MOTION. THE MOTION TO COMPEL IS DENIED, BUT THE TRUSTEE IS ORDERED TO PROVIDE AN UPDATE REGARDING THE TRUSTEE'S EFFORTS TO LOCATE A REPRESENTATIVE OF MIGNONETTE, AND WHETHER THE TRUSTEE HAS SOUGHT RECORDS FROM THE IRS TO ASSIST IN IDENTIFYING A RESPONSIBLE PARTY FOR MIGNONETTE AT THE HEARING PRESENTLY SCHEDULED ON DECEMBER 17, 2025.

Dated: 12/01/2025

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

## CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that on the date set forth below, I served a true and correct copy of the foregoing filing as follows:

1. Through the Court's CM/ECF system on all counsel of record who are registered CM/ECF users;
2. By electronic mail on any party or counsel not registered for CM/ECF service; and
3. By first-class United States mail, postage prepaid, on any party or counsel not available for electronic service.

**Chapter 7 Trustee**
Jonathan R. Goldsmith, Esq.
c/o Christine E. Devine, Esq.
Nicholson Devine LLC
P.O. Box 7
Medway, MA 02053
Email: christine@nicholsondevine.com
Email: jgoldsmith@gkalawfirm.com
Email: Angelina@nicholsondevine.com
Phone: (508) 533-7240

**Ferris Development Group, LLC**
Paul W. Carey, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Email: pcarey@mirickoconnell.com
Phone: (508) 860-1590

**Town of Westborough**
Roger L. Smerage, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110
Email: rsmerage@k-plaw.com
Phone: (617) 654-1774

**Lax Media**
Christopher Mulhearn, Esq.
Law Office of Christopher M. Mulhearn, Inc.
100 Centerville Road, Suite 1
Warwick, RI 02886
Email: cmulhearn@mulhearnlawri.com
Phone: (401) 533-9330

**The MobileStreet Trust**
Lenard Benson Zide, Esq.
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
Email: zide@buttersbrazilian.com
Phone: (617) 367-2600

**BSAPSS**
**Peter J. Nicosia, Esq.**
Nicosia & Associates, P.C.
259 Middlesex Road, P.O. Box 721
Tyngsboro, MA 01879
Email: nicosia@nicosia-associates.com
Phone: (978) 649-4300

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Email: sgordon@gordonfirm.com
Phone: 617-261-0100



_____
Lolonyon Akouete

253